**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JILL BALLARD, on behalf of herself and the class members described herein, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | Jury Trial Demanded |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS INC., and NAVIENT SOLUTIONS, LLC, | ) ) ) ) | Electronically Filed |
| Defendants. | ) | |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.     Plaintiff Jill Ballard brings suit against Defendants, NAVIENT CORPORATION, NAVIENT SOLUTIONS INC., and NAVIENT SOLUTIONS, LLC, alleging Defendants 1) breached their servicing contract with the federal government, of which Plaintiffs were third party beneficiaries; 2) tortiously interfered with written agreements between the federal government and its student loan borrowers; and 3) violated various state and federal laws in connection with the servicing of Plaintiff's federal student loans.  Plaintiff alleges the following upon personal knowledge as to herself, and upon

1

information and belief as to all other matters, based on, among other things, the investigation of her counsel.

## BACKGROUND ON FEDERAL STUDENT LOANS

2.      Federal student loans are loans that are either funded or guaranteed by the federal government pursuant to Title IV of the Higher Education Act.  They come with an array of repayment options to fit a student borrower's short-term and long-term needs.

3.      The Department of Education offers several repayment plans for individuals with federal student loans.  The "standard repayment plan" is the default payment plan.  Under the standard repayment plan, monthly payments are calculated such that the borrower's balance is fully paid within 10-30 years. Borrowers who cannot afford payments under this plan are eligible to enroll in various income-driven repayment plans ("IDR plans") that offer significantly lower monthly payments.  For instance, under the "Pay As You Earn" plan, the borrower's monthly payments are capped at ten percent of discretionary income, and the remaining debt is discharged after twenty years of qualifying payments.  Under some IDR plans, monthly payments can be as low as zero dollars per month.

4.      Borrowers enroll in IDR plans by submitting an IDR request form, along with proof of their adjusted gross income, to their designated loan servicer. Loan servicers contract with the Department of Education to handle a multitude of

issues for student borrowers, including enrollment in the various IDR plans described above.

5.     Defendants are engaged in nationwide commercial student loan financial services, and service the loans of more than 12 million borrowers total and, with respect to federal student loans, over 6 million customer accounts under a contract with the Department of Education. In all, Defendants are responsible for servicing more than $300 billion in federal and private student loans, amounting to approximately 25 percent of the value of all outstanding student loans.

6.     As per the terms of their servicing contract with the Department of Education, Defendants are charged with assisting borrowers with the repayment of their loans, including the prompt and efficient processing of its borrowers' IDR plan requests.

7.     The Student Loan Ombudsman of the Consumer Financial Protection Bureau ("CFPB") received 3,900 complaints from federal student loan borrowers between March 1, 2016 and August 31, 2016 relating to problems managing or repaying federal student loans. Annual Report of the CFPB Ombudsman report, October 2016. An analysis of these complaints found that consumers with student loans identified a range of problems with customer service, borrower communications, and income-driven repayment (IDR) plan enrollment. *Id.*

8.     An analysis of 1,062 consumer complaints made against the top ten

student loan servicers found that the most commonly cited issue was problems involving the processing and management of IDR plans. *Id.* Indeed, 12% of all borrower complaints filed against Defendants between March 1, 2016 and August 31, 2016 related to the processing and management of IDR plans. *Id.*

9.      Between March 1, 2016 and August 31, 2016, the CFPB received more complaints from federal student loan borrowers against Navient than against any other loan servicer, with a total of 812 complaints. *Id.*

10.     As detailed in the aforementioned analyses, and as revealed through the independent investigation of Plaintiff's counsel, Defendants have violated federal and state law in connection with their servicing of federal student loans in that they failed to promptly process borrowers' requests to enroll, and re-enroll, in IDR plans, and unlawfully removed borrowers from their IDR plans due to administrative processing errors.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this lawsuit has been brought as a class action on behalf of proposed classes each in excess of 100 members; the aggregate claims of the Class members exceed $5 million exclusive of interest and costs; and one or more of the members of each Class is a citizen of a different state than one or more Defendants.

4

12.    This Court has personal jurisdiction over Navient Corp. because that defendant is located in this District; resides in this District; does business in this District; and/or a substantial part of the events or omissions giving rise to the claims occurred in this District.

13.    This Court has personal jurisdiction over Navient Solutions Inc. ("NSI") because NSI is located in this District; resides in this District; does business in this District; and/or a substantial part of the events or omissions giving rise to the claims occurred in this District.

14.    This Court has personal jurisdiction over Navient Solutions LLC ("NSL") because NSL is located in this District; resides in this District; does business in this District; and/or a substantial part of the events or omissions giving rise to the claims occurred in this District.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 139l(b) because a substantial part of the events or omissions giving rise to the unlawful conduct alleged in this Complaint occurred in this District.

## PLAINTIFF

16.    Jill Ballard is a resident of San Diego, California, where she resided at all times relevant hereto. Between 2004 and 2008 she took out a series of federal "Stafford" loans pursuant to the Federal Family Educational Loan Program (FFELP).  The loans are governed by two written agreements, each entitled "Master

Promissory Note" ("MPN").  The first MPN was executed in 2004, and applies to all loans taken out from 2004 to 2007. *See* 2004 MPN attached as <u>Exhibit A</u>.  The second MPN was executed in 2008, and applies to all loans disbursed during that year. *See* 2008 MPN attached as <u>Exhibit B</u>. Because the terms and conditions of both notes are identical in all relevant respects, the term "MPN" or "MPNs" as used herein will reference both notes.

**D<small>EFENDANTS</small>**

17.    In 1972, Congress created a government sponsored enterprise ("GSE"), the Student Loan Marketing Association (commonly referred to as "Sallie Mae"), to support the guaranteed student loan program created by the Higher Education Act of 1965 ("HEA"). In 1984, Sallie Mae became a publicly-traded company, trading under the ticker symbol SLM. From approximately 1997 to 2004, Sallie Mae transitioned from a GSE into a private company, during which time SLM Holding Corporation was incorporated and eventually became SLM Corporation.

18.    Sallie Mae became fully privatized by 2004, with SLM Corporation as the parent company, and Sallie Mae, Inc. as its subsidiary, which was responsible for most of the company's servicing and collections businesses. From 2004 until April 2014, SLM Corporation and its subsidiaries operated through one corporate structure that originated loans issued under the Federal Family

6

Education Loan Program ("FFELP"). SLM developed and implemented lending policies; marketed student loan packages to schools and students; funded and distributed loans; and serviced and collected loans. In 2014, however, these business activities were split into two separate corporate structures.

19.     In April 2014, the former SLM Corporation separated into two publicly-traded entities: (i) Defendant Navient Corporation ("Navient Corp."), a servicing and debt collection business, and (ii) a new SLM Corporation, a student lending business.

20.     Navient Corp. is a Delaware corporation with its principal executive offices located at 123 Justison Street, Wilmington, Delaware 19801. Navient Corp. is a publicly-traded corporation trading under the symbol NAVI. Navient Corp. is located in this District, resides in this District, and does business in this District, with, among other facilities, a major national call center located in Wilkes-Barre, PA.

21.     Pursuant to the terms of the 2014 split, Navient Corp. assumed responsibility for liabilities resulting from the pre-reorganization conduct of old SLM Corporation and its subsidiaries related to servicing student loans. Navient Corp. is therefore included in this Complaint for servicing misconduct occurring prior to 2014, as a successor to SLM Corporation, as well as the

7

similar conduct that Navient Corp. engaged in after it was formed as a stand-alone entity.

22.     The 2014 corporate split also provided for the transfer of Sallie Mae, Inc. to Navient Corp. and its subsidiaries. Sallie Mae, Inc. then changed its name to Navient Solutions, Inc. (''NSI'').

23.     NSI, formerly Sallie Mae, Inc., is a Delaware corporation and a wholly-owned subsidiary of Navient Corp. NSI is located in this District, resides in this District, and does business in this District, with, among other facilities, a major national call center located in Wilkes-Barre, PA.

24.     NSI is the main servicing subsidiary of Navient Corp. Today, NSI services more than $300 billion in student loans for more than 12 million borrowers. Allegations in this Complaint that address conduct of Sallie Mae, Inc. and/or NSI, are attributed herein to NSI.

25.     In connection with an internal corporate reorganization, NSI recently changed its name, effective January 31, 2017, to Navient Solutions, LLC ("NSL") (collectively, with Navient Corp. and NSI, "Navient" or "Defendants").

26.     Since their founding, there has been significant overlap between the corporate governance and management of Navient Corp. and NSI/NSL.

Many of the directors and officers of NSI/NSL have also served as directors or officers of Navient Corp.

27.     Navient Corp. often makes no meaningful distinction between it and its subsidiaries. Rather, it conflates the entities, naming only "Navient" in at least the following ways:

a.     Both Navient Corp. and NSI utilize the same website-www.navient.com.  The website is registered to NSI but is identified as Navient Corp.'s website, including in Navient Corp.'s filings with the United States Securities and Exchange Commission ("SEC");

b.     The company has one publicly available Code of Business Conduct that is addressed generically to "Navient Employee[s]" and refers throughout to all Navient companies, including Navient Corp. and NSI;

c.     At least certain personnel at Navient Corp. and NSI use ''navient.com" email addresses;

d.     Navient Corp.'s SEC filings repeatedly hold out "Navient" as the "leading loan management, servicing and asset recovery company" rather than NSI or any other Navient Corp. subsidiary.

28.     In public statements, including annual 10-K filings with the SEC, Navient (including its predecessor SLM Corporation) touted its alleged capabilities with respect to student loan servicing, including helping borrowers navigate the

path to financial success and select the appropriate payment plan for their circumstances.  Navient Corporation has also indicated that it is responsible for overseeing the strategic direction and business goals of its subsidiaries. For instance, Navient Corporation's 2015 10-K filing includes the following statements:

      a.    "Navient [Corporation] is the nation's leading loan management, servicing and asset recovery company, committed to helping customers navigate the path to financial success. Servicing more than $300 billion in education loans, Navient [Corporation] supports the educational and economic achievements of more than 12 million customers."

      b.    "Navient [Corporation] services loans for more than 12 million... customers, including 6.3 million customers whose accounts are serviced under Navient [Corporation]'s contract with ED. We help our customers navigate the path to financial success through proactive outreach and emphasis on identifying the payment plan that best fits their individual budgets and financial goals."

      c.    "The Navient [Corporation] board of directors and its standing committees oversee our strategic direction, including setting our risk management philosophy, tolerance and parameters; and establishing procedures for assessing

the risks our businesses face as well as the risk management practices our management team develops and implements."

> d.     "Each business area within our organization is primarily responsible for managing its specific risks following processes and procedures developed in collaboration with our executive management team and internal risk management partners."

29.     Navient Corp. issues consolidated annual reports and SEC filings which include consolidated financial statements and balance sheets for itself and its subsidiaries.

30.     Navient Corp. owns or leases the offices used by its subsidiaries.

31.     Navient Corp. controls and directs the hiring of employees for its subsidiaries.

32.     Navient Corp. consents to and, with knowledge of, approves of, directs, and controls the policies, practices, and acts of its subsidiaries, including the misconduct described herein.

## FACTUAL ALLEGATIONS

33.     Federal student loans are loans that are either funded or guaranteed by the federal government pursuant to Title IV of the Higher Education Act of 1965 ("HEA").  Federal student loans come with an array of repayment options, including IDR plans, which cap the borrower's monthly payment at between 10% and 20% of

11

discretionary income.  Depending on the specific plan, the balance of the loan is forgiven after the borrower has made 20 or 25 years of payments.

34.    To enroll in an IDR plan, borrowers must submit an IDR request form and proof of income to their loan servicer, which is responsible for processing enrollment in, and annual renewal of, IDR plans.

35.    Loan servicers administer federal student loans issued pursuant to the Federal Family Education Loan Program (FFELP) as well as loans issued pursuant to the Federal Direct Loan program.  Whereas loans under the former program were made by private lenders and guaranteed by the federal government, loans under the latter program are made directly by the federal government.

36.    The administration of IDR plans for loans issued pursuant to the FFELP program are governed by 34 C.F.R. § 682.215.  The administration of IDR plans for loans issued pursuant to the Federal Direct Loan program are governed by 34 C.F.R. § 685.205.  Both sections are identical in pertinent part.

37.    When borrowers enroll in an IDR plan, the plan is effective for a one-year period.  To renew the plan for each subsequent year, borrowers must annually recertify their income by submitting a new IDR request form, with proof of income, to their loan servicer.  34 C.F.R. § 682.215 (e)(3).

38.    Two to three months prior to the expiration of the IDR plan, the loan servicer must send the borrower a written notice of the "annual deadline" by which

12

the borrower must recertify the plan in order to continuing making income-based payments. 34 C.F.R. § 682.215 (e)(3)(i).  This notice must include the consequences of failing to renew the IDR by the stated deadline.  One of these consequences includes an increase in monthly payments from a low affordable amount to the amount dictated by the standard ten-year repayment plan. 34 C.F.R. § 682.215 (e)(7). Moreover, when an IDR plan is cancelled any accrued interest is capitalized, or added to the principal loan balance.  34 C.F.R. § 682.215 (b)(5).

39.     In view of these consequences, federal law provides certain protections for student borrowers enrolled in IDR plans.  For instance, when a borrower timely submits his or her recertification materials, the loan servicer must "promptly" determine the new monthly payment amount. 34 C.F.R. § 682.215 (e)(8)(i).  Thus, the loan servicer has an affirmative duty to efficiently process the student borrower's recertification materials to ensure smooth re-enrollment from one year to the next.

40.     Additionally, when the loan servicer receives a student borrower's IDR renewal request prior to the annual deadline, the loan servicer is prohibited from cancelling the IDR plan while the request is being processed.  Rather, the loan servicer "must maintain the borrower's current scheduled monthly payment amount" until all materials and documents necessary to process the request have been completed and reviewed.  34 C.F.R. § 682.215 (e)(8)(ii).

41.    Another important protection for borrowers renewing their IDR plans is the statutory right to an administrative forbearance under subsection 34 C.F.R. § 682.215(b)(9).    Under this provision, a borrower is entitled to a 60-day administrative forbearance, with no capitalization of interest, if the purpose of the forbearance is to allow the loan holder to collect and process documentation supporting the borrower's request for a "change in repayment plan." 34 C.F.R. § 682.215(b)(9).    Because the annual recertification process for IDR plans often involves a change in the monthly repayment amount (due to changes in income and family size), and *always* involves a change in the annual payment period, the administrative forbearance provided for under 34 C.F.R 682.215(b)(9) applies to the recertification process. All administrative forbearances must be granted "without requiring documentation from the borrower."  34 C.F.R. § 682.215 (b).

### NAVIENT'S CONTRACT WITH THE DEPARTMENT OF EDUCATION TO SERVICE FEDERAL STUDENT LOANS

42.    The Department of Education awarded SLM Corporation a servicing contract in 2009 ("servicing contract"). See Servicing Contract attached as Exhibit C. The servicing contract continues to be in force to the present, subject to various modifications.  As a result of the 2014 corporate reorganization, Navient became the entity responsible for fulfilling the obligations owed the Department of Education pursuant to the servicing contract.

43.     The servicing contract states that "[s]pecific compliance activities for servicing federally held assets include, but are not limited to, Attachments A-1 through A-3," which are attached thereto. *Id.* at pg. 19.

44.     Under Attachment A-1, servicers are required to "meet all statutory and legislative requirements." *Id.* at Attachment A-1. Moreover, "the servicer's procedures and systems shall include a system of internal controls that ensures resource use is consistent with laws, regulations and policies." *Id.* at Attachment A-1.

45.     Under Attachment A-2, loan servicers may only promote services if they meet legislative and regulatory requirements. *Id.* at Attachment A-2.

46.     Finally, the servicing contract requires the loan servicer to be "responsible for maintaining a full understanding of all federal and state laws and regulations" and "ensuring that all aspects of the service continue to remain in compliance as changes occur."  See servicing contract at pg. 20.

## CLASS REPRESENTATIVE ALLEGATIONS

47.     Jill Ballard is a resident of California, where she received a college education that was financed by federal loans issued pursuant to the FFELP program.

48.     The terms and conditions of Ms. Ballard's loans are set forth in her master promissory notes, or MPNs. See MPNs attached as Exhibits A and B. Both

MPNs state that they are to be interpreted in accordance with the applicable federal statutes and regulations.  See Exhibits A and B at pg. 2.

49.   The MPNs provide that Ms. Ballard may repay her loans under an "Income-Sensitive Repayment Plan," under which her monthly payments would be based on her total monthly gross income.  See Exhibits A and B at pg. 5.

50.   The MPNs also states as follows: "If I choose an income-sensitive repayment plan but do not provide the required documentation within the lender-specified time frame, my lender will require that I repay the loan under a standard repayment plan." *Id.*

51.   The "Payment of Interest" section of the MPNs states as follows: "Capitalized interest increases the principal balance of my loans and the total amount of interest charges I must pay. Interest will be capitalized on my loans as provided under the [Higher Education] Act [of 1965]."  *Id.* at pg. 6.

52.   The "Credit Bureau Notification" section of the MPNs states as follows: "Information concerning the amount, disbursement, and repayment status (current or delinquent) of loans will be reported to one or more national credit bureau organizations on a regular basis." *Id.* at page 7.

53.   Ms. Ballard completed her higher education in 2008.  Her loans went into deferment status until 2012, at which time she entered into repayment status. Thereupon, Ms. Ballard submitted an IDR request form and proof of income to her

designated loan servicer, Navient.  Navient approved her request and enrolled Ms. Ballard in an IDR plan that would remain in effect for 2013.

54.     The IDR plan was set to expire on January 22, 2014 unless Ms. Ballard renewed it by submitting a new IDR request form with proof of income. The deadline by which Navient was to receive these materials was December 18, 2013. Ms. Ballard mailed her IDR request form and proof of income to Navient several weeks prior to that deadline.

55.     In early February of 2014, Navient sent Ms. Ballard a letter notifying her that her IDR plan was cancelled because she did not submit her IDR renewal request before the annual deadline.  The letter indicated that Ms. Ballard would now be required to make monthly payments of $902.55 (under the standard ten-year repayment plan) beginning on February 22, 2014.  Accordingly, Ms. Ballard made a one-time payment of $902.55.

56.     On February 11, 2014, Ms. Ballard sent Navient an additional IDR request form with proof of income, accompanied by a letter explaining that she had already mailed in these materials several weeks earlier.  After Navient received and processed Ms. Ballard's second IDR request with proof of income, her IDR plan was renewed.

57.     In July of 2017, Ms. Ballard learned that $4,686.57 had been added to her principal loan balance on January 22, 2014.  She called Navient's customer

17

service telephone line to inquire as to the basis of this charge.   A Navient representative informed her that she incurred an "interest capitalization" because her IDR plan was not renewed prior the annual deadline.   The representative also advised that the IDR request form that Ms. Ballard had submitted in 2013 was received by Navient on November 25, 2013.   Nonetheless, $4,686.57 was added to Ms. Ballard's principal balance because Navient failed to timely process her IDR request.

58.   At no time in 2013 or 2014 did Navient apply an administrative forbearance to Ms. Ballard's loans while it continued to process her IDR request and supporting documentation.

59.   In or around December of 2017, Ms. Ballard sent a written complaint to Navient's Office of Consumer Advocate, claiming that the interest capitalization in the amount of $4,686.57, which was processed on January 22, 2014, was in error.

60.   In or around December of 2017, Navient's Office of Consumer Advocate informed Ms. Ballard that the interest capitalization of $4,686.57 was determined to be improper, and that this amount would be deducted from her principal loan balance.

61.   On November 26, 2017, Navient sent Ms. Ballard a billing statement showing an unpaid principal balance of $90,129.55. On December 25, 2017, Navient sent Ms. Ballard a billing statement showing an unpaid principal balance of

$85,852.85. This amount reflected a reduction of principal in the amount of $4,276.70. Thus, Navient failed to refund the full $4,686.57.

62.     When Navient improperly cancelled Ms. Ballard's IDR plan in January of 2014, she was deprived of the federal government's interest subsidy provided pursuant to 34 CFR 682.215 (b)(4), which is only available to borrower's enrolled in an IDR plan for a period of three years from the start date of repayment. Navient has made no offer to compensate Ms. Ballard for this loss.

## CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3) on behalf of the following proposed Classes:

### NATIONWIDE FAILURE TO PROCESS CLASS

All individuals with federal student loans serviced by Navient Solutions Inc. who, at any time between January 1, 2014 and the present, were enrolled in an IDR plan, and timely submitted a request to re-enroll in the plan, but were removed from the plan.

### CALIFORNIA FAILURE TO PROCESS CLASS

All California residents with federal student loans serviced by Navient Solutions Inc. who, at any time between Jannanry 1, 2014 and the present, were enrolled in an IDR plan, and timely submitted a request to re-enroll in the plan, but were removed from the plan.

19

64.    The Classes exclude Defendants and any entity in which Defendants have a controlling interest, and their officers, directors, legal representatives, successors and assigns.

65.    The Classes are composed of tens to hundreds of thousands (if not millions) of individuals and thus are so numerous that joinder of all members is impracticable.

66.    The Classes can be readily ascertained through the records maintained by Defendants.

67.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

68.    Plaintiff's claims are typical of the claims of members of the Classes.

69.    As alleged herein, Plaintiff and members of the Classes sustained damages arising out of Defendants' common course of unlawful conduct.

70.    There are questions of law and fact common to the Classes, the answers to which will advance the resolution of the claims of all class members.

71.    These and other questions of law and/or fact are common to the Classes and predominate over any questions affecting only individual class members.

72.     Plaintiff will fairly and adequately represent and protect the interests of members of the Classes. Plaintiff has no claims antagonistic to those of members of the Classes. Plaintiff has retained counsel competent and experienced in complex nationwide class actions, including all aspects of litigation. Plaintiff's counsel will fairly, adequately and vigorously protect the interests of members of the Classes.

73.     Class action status is also warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I – BREACH OF CONTRACT

**(Plaintiff and the Nationwide Failure-to-Process Class against Defendants for Breach of the Servicing Contract)**

74.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

75.     Plaintiff brings this Count on behalf of members of the nationwide Failure-to-Process Class.

76.    At all relevant times, Plaintiff and members of the nationwide Failure-to-Process Class were third-party beneficiaries of the servicing contract entered into between Defendants and the Department of Education.

77.    Pursuant to the terms of the servicing contract, Defendants agreed to comply with all applicable federal statutes and regulations.  Under applicable federal law, if a loan servicer receives a borrower's recertification materials prior to the specified recertification deadline, the loan servicer is prohibited from changing the borrower's loan to the standard ten-year plan while it processes those materials. Rather, the servicer must maintain the borrower's current scheduled monthly payment amount until the loan holder determines the new monthly payment amount.

78.    Plaintiff made a timely submission of her recertification materials, but was nonetheless removed from her IDR plan due to Defendants' administrative processing errors and delays.  When this occurred, Navient placed Plaintiff back onto the standard ten-year repayment plan, which imposed significantly higher monthly payments, and triggered a costly interest capitalization.

79.    By removing Plaintiff from her IDR plan, despite her timely submission of recertification materials, Navient violated 34 C.F.R. § 682.215 (e)(8)(ii).

80.    By failing to promptly and efficiently process Plaintiff's IDR application, Navient violated 34 C.F.R. § 682.215 (e)(8)(i).

81.    By failing to apply an administrative forbearance to Plaintiff's account

22

while her application was processed, pursuant to 34 C.F.R. § 682.215(b)(9), Navient violated 34 C.F.R. § 682.211(a)(1).

82. Because the servicing contract requires compliance with all applicable federal regulations, the aforementioned violations also constitute a breach of the servicing contract.

83.   Because Plaintiff was an intended third-party beneficiary of the servicing contract, Defendants are liable to Plaintiff for its breaches thereof.

84.   As a result of Defendants' breaches of the express terms of the servicing contract, Plaintiff and members of the nationwide Failure-to-Process Class have suffered the same sizeable damages, including, but not limited to (i) the difference in the amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iv) the financial harm associated with delayed progress towards certain loan forgiveness programs.

85.   Alternatively, even if it is determined that the above misconduct did not constitute a breach of the express terms of the servicing contract, it nonetheless constituted a breach of the covenant of good faith and fair dealing implied in the servicing contract.  And, as a result of this breach, Plaintiff and members of the

23

nationwide Failure-to-Process Class suffered the same sizeable damages, including, but not limited to, (i) the difference in the amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iv) the financial harm associated with delayed progress towards certain loan forgiveness programs.

## <u>COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT</u>

**(Plaintiff and the Nationwide Failure-to-Process Class against Defendants for Tortious Interference with the MPN)**

86.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

87.     Plaintiff brings this Count on behalf of members of the nationwide Failure-to-Process Class.

88.     At all relevant times, Plaintiff and members of the nationwide Failure-to-Process Class were in a contractual relationship with the federal Department of Education by virtue of their legally binding MPNs.

89.  The terms of the MPNs state that they are governed by applicable federal law, as well as and state law that is not preempted by conflicting federal law.

90.     Under federal law, if a loan servicer receives a borrower's

24

recertification materials prior to the specified recertification deadline, the loan servicer is prohibited from changing the borrower's loan to the standard ten-year plan while it processes those materials.  Rather, the servicer must maintain the borrower's current scheduled monthly payment amount until the loan holder determines the new monthly payment amount.

91.    Plaintiff made a timely submission of her recertification materials, but was nonetheless removed from her IDR plan due to Defendants' administrative processing errors and delays.  When this occurred, Navient placed Plaintiff back onto the standard ten-year repayment plan, which imposed significantly higher monthly payments, and triggered a costly interest capitalization.

92.    By removing Plaintiff from her IDR plan, despite Plaintiff's timely submission of her recertification materials, Navient intentionally, tortiously and improperly interfered with Plaintiff's contract with the federal government by preventing compliance with 34 C.F.R. § 682.215 (e)(8)(ii), as required by Plaintiff's MPN.

93.    By failing to promptly and efficiently process Plaintiff's IDR application, Navient intentionally, tortiously, improperly, and without justification or privilege, interfered with Plaintiff's contract with the federal government by preventing compliance with 34 C.F.R. 34 § 682.215 (e)(8)(i), as required by Plaintiff's MPN.

94.    By failing to apply an administrative forbearance to Plaintiff's account while her application was processed, Navient intentionally, tortiously, improperly, and without justification or privilege, interfered with Plaintiff's contract with the federal government by preventing compliance with 34 C.F.R. § 682.215(b)(9), as required by Plaintiff's MPN.

95.    As a result of Defendants' tortious interference with the performance of Plaintiff's contract with the federal government, Plaintiff and members of the Nationwide Failure-to-Process Class have suffered the same sizeable damages, including, but not limited to (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iv) the financial harm associated with delayed progress towards certain loan forgiveness programs.

96.    Alternatively, even if it is determined that the above misconduct did not constitute a breach of the express terms of the MPN, it nonetheless constituted a breach of the covenant of good faith and fair dealing implied in the MPN.  And, as a result of this breach, Plaintiff and members of the Failure-to-Process Class suffered the same sizeable damages, including, but not limited to, (i) the difference in the

amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iv) the financial harm associated with delayed progress towards certain loan forgiveness programs.

## COUNT III - VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT

### California Civil Code § 1750 et seq ("CLRA")

**(Plaintiff, California Failure-to-Process Class, Against Defendants)**

97.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

98.     Plaintiff brings this Count on behalf of members of the California Failure-to-Process Class.

99.     Defendants are "persons" within the meaning of California Civil Code § 1761 (c).

100.    Section 1770(a)(14) of the Consumer Legal Remedies Act ("CLRA") prohibits "representing that a transaction confers or involves rights, remedies, or obligations . . . which are prohibited by law."

101.    By informing Plaintiff that she was removed from her IDR plan because

27

she failed to submit her recertification materials in a timely fashion, despite the fact that her materials were received by Navient prior to the annual deadline, Navient represented that such conduct constituted a lawful remedy, which was in fact prohibited by law.

102.   Section 1770(a)(5) of the CLRA prohibits representing that services have "sponsorship" or "approval" which they do not have.

103.   By informing Plaintiff that she was removed from her IDR plan because she failed to submit her recertification materials in a timely fashion, despite the fact that her materials were received by Navient prior to the annual deadline, Navient represented that such conduct had the approval or sponsorship of the federal government, which it did not have.

104.   Navient thus violated the Consumer Legal Remedies Act by representing that:

a.   it had the right to remove Plaintiff from her IDR plan when such conduct was in fact prohibited by federal law,

b.   such actions had the approval or sponsorship of the federal government.

105.   Navient knew or should have known that its conduct violated the CLRA.

106.   As a result of Defendants' violations of the CLRA, Plaintiff and

28

members of the California Failure-to-Process Class have suffered the same sizeable damages, including, but not limited to (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iv) the financial harm associated with delayed progress towards certain loan forgiveness programs.

107.   Plaintiff and members of the California Failure-to-Process Class seek an order enjoining Navient's unfair, unlawful, and/or deceptive practice, declaratory relief, attorney's fees, and any other just and proper relief available under the CLRA.

## COUNT IV - VIOLATIONS OF
## CALIFORNIA BUS. & PROF. CODE § 17200

**(Plaintiff, California Failure-to-Process Classes, Against Defendants)**

108.   Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

109.   Plaintiff brings this Count on behalf of members of the California Failure-to-Process Class.

110.   Defendants engaged in unfair and unlawful practices, in violation of California Business and Professional Code § 17200 et seq. by:

a.    Informing Plaintiff that she was removed from her IDR plan because she failed to submit her recertification materials in a timely fashion, despite the fact that her materials were received by Navient prior to the deadline.

b.    Removing Plaintiff from her IDR plan because she failed to submit her recertification materials in a timely fashion, despite the fact that her materials were received by Navient prior to the deadline.

111.   As a result of Defendants' violations, Plaintiff and members of the California Failure-to-Process Class have suffered the same sizeable damages, including, but not limited to (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iv) the financial harm associated with delayed progress towards certain loan forgiveness programs.

112.   Plaintiff and members of the California Failure-to-Process Class seek an order enjoining Navient's unfair, unlawful, and/or deceptive practice, declaratory relief, attorney's fees, and any other just and proper relief available under the CLRA.

30

## COUNT V - VIOLATIONS OF 73 Pa. Stat. § 201-1 et seq.

### (Plaintiff, National Failure-to-Process Classes, Against Defendants)

113.   Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

114.   Plaintiff brings this Count on behalf of members of the National Failure-to-Process Class.

115.   Defendants violated 73 Pa. Stats. § 201-1 et seq. by:

a.   Informing Plaintiff that she was removed from her IDR plan because she failed to submit her recertification materials in a timely fashion, despite the fact that her materials were received by Navient prior to the deadline.

b.   Informing Plaintiff that she was removed from her IDR plan because she failed to submit her recertification materials in a timely fashion, despite the fact that her materials were received by Navient prior to the deadline.

116.   All of these actions were decided upon, and misrepresented from, Defendants' headquarters in Pennsylvania.

117.   As a result of Defendants' violations, Plaintiff and members of the National Failure-to-Process Class have suffered the same sizeable damages, including, but not limited to (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts

31

accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iv) the financial harm associated with delayed progress towards certain loan forgiveness programs.

118.   The corresponding financial benefit to Defendants was received by them at their headquarters in Pennsylvania.

119.   Plaintiff and members of the Class seek an order enjoining Navient's unfair, unlawful, and/or deceptive practice, declaratory relief, attorney's fees, and any other just and proper relief available.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Court enter a judgment against Defendants and in favor of Plaintiff:

A.   Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as representative of the Classes and Plaintiff's counsel as counsel for the Classes;

B.   Declaring, adjudging, and decreeing the conduct alleged herein as unlawful;

C.   Enjoining Defendants from continuing to commit the above-cited violations of law;

32

D.      Awarding compensatory and punitive damages along with pre- and

post-judgment interest;

E.      Granting Plaintiff the costs of suit, including reasonable attorneys'

fees and expenses; and;

F.      Affording Plaintiff with such other, further, and different relief as

the nature of the case may require or as may be determined to be just,

equitable, and proper by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


SABATINI LAW FIRM, LLC

s/ Carlo Sabatini
Carlo Sabatini, PA 83831
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
carlo@sabatinilawfirm.com
*Counsel for Plaintiff and the Classes*

admission pro hac vice to be requested:

EDELMAN, COMBS, LATTURNER, & GOODWIN, LLC

_____
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Frances R. Green
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
ARDC # 00712094
*Counsel for Plaintiff and the Classes*


FIORENTINO LAW OFFICES, LTD.

_____
Anthony Fiorentino
FIORENTINO LAW OFFICES LTD.
180 N. LaSalle Street, Suite 2440
Chicago, Illinois 60602
ARDC # 6281389
anthony@fiorentinolaw.com
*Counsel for Plaintiff and the Classes*