**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JILL BALLARD, REBECCA VARNO, | : | |
| and MARK POKORNI, on behalf of themselves | : | |
| and the class members described herein, | : | |
| | : | |
| Plaintiffs, | : | NO. 18-cv-00121-MEM |
| | : | |
| v. | : | |
| | : | |
| NAVIENT CORPORATION, | : | ELECTRONICALLY FILED |
| NAVIENT SOLUTIONS, INC. and | : | |
| NAVIENT SOLUTIONS, LLC, | : | |
| | : | |
| Defendants. | : | |

---

**DEFENDANTS' COMBINED MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS**

---

LOS_ANGELES/#42997

## TABLE OF CONTENTS

**Page**

I.    BACKGROUND ........................................................................................................ 3

    A.    Navient Corp ................................................................................................ 3

    B.    NSL And Its Loan Servicing Operations ..................................................... 4

    C.    Plaintiffs And Their Student Loans ............................................................. 5

        1.    Ballard ............................................................................................. 5

        2.    Varno .............................................................................................. 7

        3.    Pokorni ........................................................................................... 8

    D.    The Proposed Classes .................................................................................. 8

II.   ARGUMENT .......................................................................................................... 9

    A.    Given The Allegations At Issue, The Court Should Grant The Motion To Strike ........................................................................................................... 9

        1.    Based On Their Own Allegations, Plaintiffs Clearly Cannot Satisfy The Requirements of Rule 23(a) and Rule 23(b)(3) ................................ 9

        2.    Rule 23(b)(2) Is Inapplicable To This Action .......................................... 14

    B.    In Addition, Plaintiffs Fail To State A Claim Under Rules 12(b)(6) and 9(b) ............................................................................................................ 15

        1.    Plaintiffs' Have Failed to Adequately Allege Agency ............................ 15

        2.    Plaintiffs' Contract Claims Fail .............................................................. 16

        3.    Plaintiffs' Tortious Interference Claims Fail ........................................... 20

        4.    Ballard's CLRA Claim Fails ................................................................... 22

        5.    The UTCPA Claim Fails ......................................................................... 24

        6.    Varno's Section 349 Claim Fails ............................................................ 25

        7.    Pokorni's ICFA Claim Fails ................................................................... 26

III.  CONCLUSION ...................................................................................................... 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

AAA Life Ins. Co. v. Kneavel,
  2012 WL 895953 (M.D. Pa. Mar. 15, 2012)............................................................................20

Alborzian v. JPMorgan Chase Bank, N.A.,
  235 Cal. App. 4th 29 (2015) ...................................................................................................23

Amchem Prods. Inc. v. Windsor,
  521 U.S. 591 (1997)................................................................................................................11

Angelastro v. Prudential-Bache Secur., Inc.,
  113 F.R.D. 579 (D.N.J. 1986)..................................................................................................14

Aschcroft v. Iqbal,
  129 S. Ct. 1937 (2009)......................................................................................................15, 21

Astra USA, Inc. v. Santa Clara Cty.,
  563 U.S. 110 (2011)................................................................................................................18

Ayco Co., L.P. v. Lipton,
  2012 U.S. Dist. LEXIS 123044 (W.D. Pa. Aug. 29, 2012) .....................................................17

Bd. of Trs. of the S. Cal. Ibew-Neca Defined Contribution Plan v. Bank of N.Y.
  Mellon Corp.,
  287 F.R.D. 216 (S.D.N.Y. 2012) ............................................................................................11

Broder v. Cablevision Sys. Corp.,
  418 F.3d 187 (2d Cir. 2005)....................................................................................................25

C.R. Bard, Inc. v. Guidant Corp.,
  997 F. Supp. 556 (D. Del. 1998)..............................................................................................15

Camasta v. Jos. A. Bank Clothiers, Inc.,
  761 F.3d 732 (7th Cir. 2014) ..................................................................................................26

Chae v. SLM Corp.,
  593 F.3d 936 (9th Cir. 2010) ....................................................................................................5

Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington,
  699 F.2d 1274 (D.C. Cir. 1983)...............................................................................................20

Conboy v. AT&T Corp.,
  241 F.3d 242 (2d Cir. 2001)....................................................................................................25

Crivelli v. GMC,
   215 F.3d 386 (3d Cir. 2000)................................................................................21

In re Currency Conversion Fee Antitrust Litig.,
   230 F.R.D. 303 (S.D.N.Y. 2004) ...............................................................11, 12

Danvers Motor Co. v. Ford Motor Co.,
   543 F.3d 141 (3d Cir. 2008)................................................................................11

DuRocher v. NCAA,
   2015 U.S. Dist. LEXIS 41110 (S.D. Ind. Mar. 31, 2015)...................................10

Eagle v. Morgan,
   2011 WL 6739448 (E.D. Pa. Dec. 22, 2011)........................................................22

Edwards v. Ocwen Loan Servicing, LLC,
   24 F. Supp. 3d 21 (D.D.C. 2014) .........................................................................19

Eisen v. Carlisle & Jacquelin,
   417 U.S. 156 (1974)..............................................................................................14

Equal Rights Ctr. v. Kohl's Corp.,
   2015 U.S. Dist. LEXIS 71529 (N.D. Ill. June 3, 2015) ......................................10

Federal Nat'l Mortg. Ass'n v. LeCrone,
   868 F.2d 190 (6th Cir. 1989) ...............................................................................19

Gen. Tel. Co. of the Southwest v. Falcon,
   457 U.S. 147 (1982)..............................................................................................10

Gomez v. Resurgent Capital Servs., LP,
   129 F. Supp. 3d 147 (S.D.N.Y. 2015)..................................................................25

Griffin v. Green Tree Servicing, LLC,
   166 F. Supp. 3d 1030 (C.D.Cal. 2015) ................................................................23

Indianapolis Life Ins. Co. v. Hentz,
   2009 WL 36454 (M.D. Pa. Jan. 6, 2009)..............................................................16

Jamison v. Bank of Am., N.A.,
   194 F. Supp. 3d 1022 (E.D. Cal. 2016).................................................................23

Kearney v. JPC Equestrian, Inc.,
   2012 WL 3779354 (M.D. Pa. June 7, 2012).........................................................17

L'Ggrke v. Benkula,
   966 F.2d 1346 (10th Cir. 1992) ............................................................................18

Labickas v. Arkansas State Univ.,
   78 F.3d 333 (8th Cir. 1996) ...................................................................................................18

Lubold v. Univ. Veterinary Specialists, LLC,
   2017 WL 2834668 (W.D. Pa. June 30, 2017).........................................................................21

Luppe v. Cheswick Generating Station,
   2015 U.S. Dist. LEXIS 9791 (W.D. Pa. Jan. 28, 2015)..........................................................10

MacKenzie v. Flagstar Bank FSB,
   738 F.3d 486 (1st Cir. 2013)...................................................................................................18

Mazonas v. Nationstar Mortg., LLC,
   2016 WL 2344196 (N.D. Cal. May 4, 2016)...........................................................................23

McCulloch v. PNC Bank, Inc.,
   298 F.3d 1217 (11th Cir. 2002) ..............................................................................................18

Mendez v. Bank of America Home Loans Servicing, LP,
   840 F. Supp. 2d 639 (E.D.N.Y. 2012) ....................................................................................25

Nat'l Union Fire Ins. Co. of Pittsburgh PA v. Rite Aid of South Carolina, Inc.,
   210 F.3d 246 (4th Cir. 2000) ..................................................................................................19

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   259 F.3d 154 (3d Cir. 2001)....................................................................................................10

Nguyen v. U.S. Catholic Cong.,
   719 F.2d 52 (3d Cir. 1983)......................................................................................................17

Parks Sch. of Business, Inc. v. Symington,
   51 F.3d 1480 (9th Cir. 1995) ..................................................................................................18

Pearson v. Component Tech. Corp.,
   247 F.3d 471 (3d Cir. 2001)....................................................................................................16

Perez v. Monster, Inc.,
   149 F. Supp. 3d 1176 (N.D. Cal. 2016) ..................................................................................24

Perron v. JP Morgan Chase Bank, N.A.,
   2014 WL 931897 (S.D. Ind. Mar. 10, 2014)...........................................................................19

Phoenix Canada Oil Co. v. Texaco, Inc.,
   842 F.2d 1466 (3d Cir. 1988)..................................................................................................15

Rivera v. Bank of Am. Home Loans,
   2011 U.S. Dist. LEXIS 43138 (E.D.N.Y. April 21, 2011) .............................................17, 18

Rockford Memorial Hosp. v. Havrilesko,
   368 Ill. App. 115 (Ill. App. 2006) ....................................................................................26

Rodriguez v. Nat'l City Bank,
   726 F.3d 372 (3d Cir. 2013) ............................................................................................11

Ruder v. Pequea Valley Sch. Dist.,
   790 F. Supp. 2d 377 (E.D. Pa. 2011) ..............................................................................21

Sanon v. Dep't of Higher Ed.,
   453 F. App'x 28 (2d Cir. 2011) .......................................................................................18

Slovinec v. DePaul Univ.,
   332 F.3d 1068 (7th Cir. 2003) .........................................................................................18

Stearns v. Select Comfort Retail Corp.,
   2009 U.S. Dist. LEXIS 112971 (N.D. Cal. Dec. 4, 2009) ...............................................10

Thomas M. Cooley Law Sch. v. ABA,
   459 F.3d 705 (6th Cir. 2006) ..........................................................................................18

Travelers Indem. Co. v. Household Int'l, Inc.,
   775 F. Supp. 518 (D. Conn. 1991) ..................................................................................20

U.S. v. Bestfoods,
   524 U.S. 51 (1998) ..........................................................................................................16

Wal-Mart Stores, Inc. v. Dukes,
   131 S. Ct. 2541 (2011) ....................................................................................9, 10, 11, 14

Walkup v. Santander Bank, N.A.,
   147 F. Supp. 3d 349 (E.D. Pa. 2015) ..............................................................................24

Williams v. Nat'l Sch. of Health Tech., Inc.,
   836 F. Supp. 273 (E.D. Pa. 1993) ...................................................................................18

Woodard v. FedEx Freight E., Inc.,
   250 F.R.D. 178 (M.D. Pa. 2008)......................................................................................10

Zarichny v. Complete Payment Recover Servs., Inc.,
   80 F. Supp. 3d 610 (E.D. Pa. 2015) ................................................................................16

Zinser v. Accufix Research Inst., Inc.,
   253 F.3d 1180 (9th Cir. 2001) ...........................................................................11, 12, 14

**Statutes**

20 U.S.C. §§ 1070(b), 1082(a)(1) ...........................................................................................18

20 U.S.C. § 1071.................................................................................................................4

20 U.S.C. §§ 1082(a)(1).....................................................................................................5

20 U.S.C. § 1087a............................................................................................................4, 5

20 U.S.C. § 1087e...............................................................................................................5

20 U.S.C. § 1098(a)(1), (b)(1) ...........................................................................................5

Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq....................................2, 3, 22, 23

Health Care and Education Reconciliation Act, Pub. L. 111-152, § 2201 et seq.
   (Mar. 30, 2010) ...........................................................................................................4, 5

Higher Education Act of 1965 (Pub.L. 89-329) ...............................................................4

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ...............2, 3, 26

New York General Business Law, N.Y. G.B.L. § 349, et seq..........................................2

Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. §
   201-1, et seq.................................................................................................................2, 24

Rosenthal Act, California Civil Code § 1788.17 ......................................................2, 3, 13

**Other Authorities**

34 C.F.R. § 682.202............................................................................................................5

34 C.F.R. § 682.205...........................................................................................................20

34 C.F.R. § 682.208............................................................................................................5

34 C.F.R. § 682.209............................................................................................................5

34 C.F.R. §§ 682.210-211...................................................................................................5

34 C.F.R. § 682.700............................................................................................................5

34 C.F.R. § 682.706............................................................................................................5

34 C.F.R. § 682.215.........................................................................................................6, 7

77 Fed. Reg. 42,086-01 (July 17, 2012) ...........................................................................5

Federal Rule of Civil Procedure 9 ..............................................................................15, 26

Federal Rule of Civil Procedure 12 ..................................................................................15

Federal Rule of Civil Procedure 19 ........................................................................................19, 20

Federal Rule of Civil Procedure 23 ................................................................................. *passim*

Local Rule 7.1 ............................................................................................................................1

Restatement (Second) of Contracts § 313(2) ..............................................................................17

LOS_ANGELES/#42997

Pursuant to M.D. Pa. Local Rule 7.1, counsel for defendants have conferred with counsel for plaintiffs, who indicated that they do not concur with the relief sought in this motion.

Defendant Navient Corporation ("Navient Corp.") is a holding company and the parent of defendant Navient Solutions, LLC, formerly known as Navient Solutions, Inc. ("NSL" and together with Navient Corp., "Defendants"). NSL is a servicer of federally owned or guaranteed student loans pursuant to a servicing agreement with the United States Department of Education ("ED"). In the First Amended Class Action Complaint (the "Amended Complaint"), plaintiffs Jill Ballard ("Ballard"), Rebecca Varno ("Varno") and Mark Pokorni ("Pokorni," and collectively with Ballard and Varno, "Plaintiffs") allege that income driven repayment ("IDR") programs on federal student loans, which are created and offered by the Department of Education ("ED"), but administered by Defendants, provide significant financial benefits to borrowers. For example, given the circumstances pertaining to a particular borrower, his or her monthly payment in an IDR program can be significantly reduced. However, according to Plaintiffs, Defendants improperly failed to enroll them and other borrowers in, or removed them and other borrowers from, such programs by, among other things, mishandling initial and renewal applications.[1]

From these allegations, Plaintiffs assert claims against Defendants for: (1) breach of Defendants' loan servicing contract with ED (the "Servicing Contract") based on a third-party beneficiary theory or, in the alternative, for breach of the covenant of good faith and fair dealing, on behalf of a nationwide class; (2) breach of, or tortious interference with, the Master

---

[1]    Plaintiffs allege, without differentiating between them, that Defendants service student loans pursuant to the Servicing Contract. (Amended Complaint ¶¶ 50-55). However, as Plaintiffs effectively concede, Navient Corp. does not, in fact, engage in loan servicing activities. Instead, Plaintiffs purport to tie Navient Corp. to the asserted claims through a principal/agent relationship with NSL. As explained below, Plaintiffs fail to allege the existence of such a relationship.

Promissory Note ("MPN"), which is entered into by ED and federal student loan borrowers or, in the alternative, breach of the covenant of good faith and fair dealing, on behalf of the nationwide class; (3) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA"), by Ballard on behalf of a California class; (4) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, et seq. ("UTCPL"), on behalf of a nationwide class; (5) violation of New York General Business Law, N.Y. G.B.L. § 349, et seq. ("Section 349"), by Varno on behalf of a New York class; (6) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA"), by Pokorni on behalf of an Illinois class; and (7) violation of the Rosenthal Act, California Civil Code § 1788.17 ("Rosenthal Act"), by Ballard on behalf of a California class.  Notably, taking into account all of the claims and the various proposed classes, there purportedly are "tens to hundreds of thousands" or perhaps "millions" of class members.  (Amended Complaint ¶ 89).

However, while the Amended Complaint is lengthy -- consisting of 59 pages and 180 paragraphs -- the allegations affirmatively demonstrate that this action cannot proceed as framed. As an initial matter, and very clearly, the Court should strike the class allegations.  Those allegations turn upon actions that Defendants supposedly took, or did not take, regarding the initial and renewal applications submitted by thousands or millions of borrowers for IDR programs.  Assessing those actions would require a highly fact-specific, case-by-case analysis that is not appropriate for class certification.  In fact, as explained below, each of the three named Plaintiffs had a materially different experience with respect to their applications for IDR.  Thus, Plaintiffs cannot meet the requirements of commonality, predominance and superiority under Rule 23, and no class could be certified.

Further, each of Plaintiffs' claims fails as a matter of law.  First, Plaintiffs do not plead sufficient facts to justify any claim against Navient Corp. as NSL's corporate parent.  All claims against Navient Corp. therefore should be dismissed.  But, even if that were not so, Plaintiffs do not allege a valid claim against either Defendant.  The breach of contract and tortious interference claims fail because there is no contractual relationship between Plaintiffs and Defendants, Plaintiffs are not third-party beneficiaries of the contract between Defendants and ED, and Plaintiff failed to join ED, a necessary party.  Meanwhile, the CLRA claim is defective because Plaintiffs do not allege that they sent the pre-litigation letter demanding a cure, which is required to pursue a damages claim.  Further, the CLRA, UTCPL, Section 349, and ICFA claims are inapplicable because, although Plaintiffs recite that Defendants somehow made misrepresentations about IDR programs, they fail to state what those misrepresentations were or how they were material.  Instead, Plaintiffs simply complain about Defendants' supposed failure to process what they believe to be timely applications.  (See e.g., Am. Comp. ¶¶ 138-39, 148, 160-61).  Finally, the claim under the Rosenthal Act fails because Defendants are not debt collectors and, in any event, there is no allegation that false statements were used to collect a debt.

## I.    Background

### A.    Navient Corp.

According to Plaintiffs, Sallie Mae Corporation ("SLM Corp.") was a private company responsible for federal loan servicing and collection.  (Amended Complaint ¶ 23).  In April 2014, SLM Corp. split into two businesses:  Navient Corp. and a new SLM Corp.  (Amended Complaint ¶ 24).  This 2014 split allegedly transferred NSL, formerly known as Sallie Mae, Inc., to Navient Corp.  (Amended Complaint ¶ 29).

Navient Corp. is a holding company and the parent of NSL. Plaintiffs contend that Navient Corp. has a servicing contract with ED, whereby ED pays Navient Corp. and/or its agent, NSL, an average monthly fee for each of the loans serviced. (Amended Complaint ¶ 52). Plaintiffs allege that the payment structure gives Navient Corp. a financial incentive to minimize the number of borrowers who receive loan forgiveness or discharge their loans. (Amended Complaint ¶ 53). Plaintiffs further allege that Defendants therefore delayed or failed to process IDR applications because doing so generates additional monthly servicing fees. (Amended Complaint ¶ 5). Additionally, Plaintiffs allege that Defendants deprived borrowers of the opportunity to make monthly payments that count toward loan forgiveness. (Amended Complaint ¶ 55). Rather, Plaintiffs assert, Defendants improperly placed borrowers' accounts into deferment or forbearance. (Amended Complaint ¶ 55).

### B.    NSL And Its Loan Servicing Operations

As noted above, NSL is a servicer of federally owned or guaranteed student loans. (Amended Complaint ¶ 5). With respect to federal loans, more than 50 years ago, Congress enacted the Higher Education Act of 1965 (Pub.L. 89–329) ("HEA") and began to "provide financial assistance for students in postsecondary and higher education." Pub. L. No. 89-329, 79 Stat. 1219 (1965). The "financial assistance for students" is covered in Title IV of the HEA. Thus, for instance, until 2010, loans were originated under the Federal Family Education Loan Program, 20 U.S.C. § 1071, et seq. ("FFELP"). On FFELP loans, the federal government acts as the ultimate guarantor. NSL continues to service those loans.[2] Additionally, loans are originated under the William D. Ford Direct Loan Program, 20 U.S.C. § 1087a, et seq. ("Direct Loan Program"). On Direct Loans, the federal government is the lender. NSL services some of those

---

[2]    In 2010, Congress terminated lending under FFELP. Health Care and Education Reconciliation Act, Pub. L. 111-152, § 2201 et seq. (Mar. 30, 2010). No new FFELP Loans were disbursed after June 30, 2010. Id.

loans as well, and "loans made to borrowers [under the Direct Loan Program] shall have the same terms, conditions, and benefits, and be available in the same amounts, as loans made to borrows under [the FFELP]."  20 U.S.C. § 1087e(a)(1).

The servicing of these federal loans is highly regulated under the HEA and regulations promulgated pursuant to the HEA.  See Chae v. SLM Corp., 593 F.3d 936, 945 (9th Cir. 2010) (noting that Congress "instruct[ed]" ED to "[e]stablish a set of rules that will apply across the board.").  Through a public notice and comment process, detailed and extensive regulations have been promulgated prescribing every aspect of federal student loan servicing, including charges to borrowers (34 C.F.R. § 682.202, § 685.202), repayment plans (34 C.F.R. § 682.209, § 685.208), deferment and forbearance (34 C.F.R. §§ 682.210-211, §§ 685.204-205) and due diligence in seeking payments (34 C.F.R. § 682.208).  ED may limit the participation of a federal student loan servicer that violates any statutory provision, regulation or agreement (34 C.F.R. § 682.700(a)).  In some circumstances, it can terminate participation entirely (34 C.F.R. § 682.706).  ED administers the program and has broad and exclusive authority to prescribe servicer requirements.  20 U.S.C.   §§ 1082(a)(1), 1087a, 1087e.  ED's rules are the product of statutorily required "negotiated rulemakings" in which ED develops regulations in public meetings with representatives of interested parties.  20 U.S.C. § 1098(a)(1), (b)(1).  Recent negotiated rulemaking sessions have developed rules for alternative repayment options, forbearance and electronic notices to borrowers.  See, e.g., 77 Fed. Reg. 42,086-01 (July 17, 2012).

C.    **Plaintiffs And Their Student Loans**

1.    **Ballard**

Ballard, a California resident, obtained a series of federal student loans to pay for her education.  (Amended Complaint ¶ 17).  Ballard completed her education in 2008 and her loans

went into deferment status -- meaning that she owed no payments -- until 2012.  (Amended Complaint ¶ 56).  In 2012, she submitted an IDR request form and proof of her income to SLM Corp., which serviced her loan through Sallie Mae, Inc.  (Amended Complaint ¶ 56).  Sallie Mae, Inc. approved the application and enrolled Ballard in an IDR plan.  (Amended Complaint ¶ 57).

Ballard contends that, to continue her IDR plan for another year, she mailed an IDR request form and proof of income to Defendants several weeks before the deadline of December 18, 2013.  (Amended Complaint ¶ 57).  However, in February 2014, NSL sent a letter stating that her IDR plan had been canceled because she did not meet the deadline.  (Amended Complaint ¶ 58).  Ballard alleges that she subsequently re-submitted the application, and her IDR plan was renewed.  (Amended Complaint ¶ 59).

Further, Ballard alleges that, in July 2017, she learned that $4,686.57 had been improperly added to her principal loan balance as of January 2014.  (Amended Complaint ¶ 60). Ballard states that she spoke with a loan servicing representative, who explained that this amount represented capitalized interest that accrued because her IDR plan was not renewed before the deadline.  (Amended Complaint ¶ 61).  Ballard avers that this interest would not have accrued if Defendants had timely processed her IDR application.  (Amended Complaint ¶¶ 60-61).  Around December 2017, Ballard sent a complaint to NSL's Office of Consumer Advocate, which informed her that the capitalized interest would be deducted from her balance.  (Amended Complaint ¶¶ 62-63).  However, according to Ballard, Defendants failed to provide the full refund (Amended Complaint ¶ 64), and she also was deprived of the federal government's interest subsidy, provided by 34 CFR § 682.215(b)(4), because it is only available to borrowers enrolled in an IDR plan for three years from the start of repayment (Amended Complaint ¶ 65).

### 2.    Varno

Varno is a New York resident who combined her multiple federal student loans into a single consolidation loan.  (Amended Complaint ¶ 18).  In 2016, she submitted an IDR request form to Defendants and was enrolled in a financially favorable IDR plan with payments of $710.00 per month.  (Amended Complaint ¶ 69).  Varno contends that, to continue her IDR plan for another year, she mailed her IDR request form and proof of her and her husband's income to Defendants before the deadline.  (Amended Complaint ¶ 70).  Varno asserts that, in May 2017, she called Defendants to inquire into the status of her IDR plan.  (Amended Complaint ¶ 71).  She states that a loan servicing representative told her that her renewal application had been approved, but that it would not be applied to her account for several months, so her monthly payment would increase.  (Amended Complaint ¶ 71).  Varno asserts that because she could not afford the payments, Defendants put her account into forbearance and that all interest accrued during that time was added to her principal loan balance.  (Amended Complaint ¶ 71).

Varno alleges that Defendants did not renew her IDR plan until July 16, 2017.  (Amended Complaint ¶ 72).  Varno contends that Defendants failed to timely process her IDR request, and did not apply an administrative forbearance to her account while it processed her IDR request, which would not have resulted in capitalized interest.  (Amended Complaint ¶¶ 72-73).  Varno claims that Defendants improperly placed her account into forbearance instead, which did result in capitalized interest.  (Amended Complaint ¶ 74).

She further alleges that she was deprived of the federal government's interest subsidy, provided by 34 CFR § 682.215(b)(4), because it is only available to borrowers enrolled in the IDR plan for three years from the start of repayment.  (Amended Complaint ¶ 65).  Varno also alleges that because Defendants placed her loans into forbearance, she was unable to make qualifying payments toward loan forgiveness.  (Amended Complaint ¶ 76).

### 3.  Pokorni

Pokorni is an Illinois resident who combined multiple federal student loans into a single federal consolidation loan.  (Amended Complaint ¶ 19).  According to Pokorni, on or before February 20, 2016, he submitted an IDR plan application.  (Amended Complaint ¶ 78).  Pokorni states that, on February 22, 2016, Defendants sent an email notifying him that it could take between 22 and 25 days to process his IDR application.  (Amended Complaint ¶ 79).  Pokorni further states that, on March 11, 2016, he received a second email stating that his IDR request was still being processed.  (Amended Complaint ¶ 80).  He alleges that Defendants processed his request on or about April 5, 2016, and sent him an email on April 6, 2016, stating that he had been approved for enrollment in an IDR plan.  (Amended Complaint ¶ 81).

Pokorni asserts that Defendants' processing of his IDR application was longer than the time period established by ED guidelines.  (Amended Complaint ¶ 82).  He further alleges that, in March 2016, because his IDR was not yet approved, he could not make a qualifying payment toward loan forgiveness, which extended the duration of his loans.  (Amended Complaint ¶ 83). Pokorni also states that his loans were placed in forbearance while his IDR application was being processed, which resulted in capitalized interest.  (Amended Complaint ¶ 84).

### D.  The Proposed Classes

Plaintiffs seek to represent one nationwide class and three state-specific subclasses, defined as follows:

> **Nationwide Class:**  All individuals with federal student loans serviced by Navient Corp, NSL, NSI and/or their predecessors in interest, who, at any time on or after a date <u>six years</u> prior to the filing of this action, <u>1) were enrolled in an IDR plan, and timely submitted a request to renew the plan, which was nonetheless cancelled due to [Defendants'] failure to process the renewal prior to the plan's expiration, or 2) submitted a request for enrollment in an IDR plan that was not processed within 25 business days.</u>

**California Class:**  All California residents with federal student loans serviced by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date <u>four years</u> prior to the filing of this action, <u>were enrolled in an IDR plan, and timely submitted a request to renew the plan, which was nonetheless cancelled due to [Defendants'] failure to process the renewal prior to the plan's expiration</u>.

**New York Class:**  All New York residents with federal student loans serviced by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date <u>six years</u> prior to the filing of this action, <u>were enrolled in an IDR plan, and timely submitted a request to renew the plan, which was nonetheless cancelled due to [Defendants'] failure to process the renewal prior to the plan's expiration</u>.

**Illinois Class:**  All Illinois residents with federal student loans services by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date <u>ten years</u> prior to the filing of this action, <u>submitted a request for enrollment in an IDR plan that was not processed within 25 business days</u>.

(Amended Complaint ¶ 87) (emphasis added).  As noted above, Plaintiffs allege that the classes are composed of "tens to hundreds of thousands (if not millions) of individuals."  (Amended Complaint ¶ 89).

## II.    Argument

### A.    Given The Allegations At Issue, The Court Should Grant The Motion To Strike.

#### 1.    Based On Their Own Allegations, Plaintiffs Clearly Cannot Satisfy The Requirements of Rule 23(a) and Rule 23(b)(3).

Class actions under Federal Rule 23 are "exception[s] to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2550 (2011).  Thus, as an initial matter, Rule 23(a) requires a plaintiff to establish numerosity, commonality, typicality and adequacy of representation; these requirements "limit the class claims to those fairly encompassed by the named plaintiff's claims."  <u>Dukes</u>, 131 S. Ct. at 2550 (quotations omitted). The requirements of Rule 23(b) also must be met (and Plaintiffs purport to pursue the classes under 23(b)(3)).  (Amended Complaint

9

¶ 97).    Under Rule 23(c)(1), "a certification determination [must] be made '(a)s soon as practicable after commencement of the action.'"  See Fed. R. Civ. P. 23(c)(1).

Against this background, and particularly in view of Rule 23(c)(1)'s requirement of a prompt determination, the United States Supreme Court has reasoned that class certification issues are sometimes "plain enough from the pleadings" that discovery is not necessary to dispose of a proposed class.  Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160 (1982); accord Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 191 (3d Cir. 2001). Thus, when presented with appropriate circumstances, courts will strike class allegations at the pleading stage.  See, e.g., Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 182 (M.D. Pa. 2008); Luppe v. Cheswick Generating Station, 2015 U.S. Dist. LEXIS 9791, at *19 (W.D. Pa. Jan. 28, 2015); Equal Rights Ctr. v. Kohl's Corp., 2015 U.S. Dist. LEXIS 71529, *9 (N.D. Ill. June 3, 2015); DuRocher v. NCAA, 2015 U.S. Dist. LEXIS 41110, *42 (S.D. Ind. Mar. 31, 2015); Stearns v. Select Comfort Retail Corp., 2009 U.S. Dist. LEXIS 112971, at *45 (N.D. Cal. Dec. 4, 2009).

This action certainly presents the appropriate circumstances for striking the class allegations because, given the allegations at issue, Plaintiffs simply cannot demonstrate commonality, predominance or superiority.  Under Rule 23(a), there must be "questions of law or fact common to the class."  But a common question of law "does not mean merely that [the class members] have all suffered a violation of the same provision of law."  Dukes, 131 S. Ct. at 2551.  Rather, the claim must depend on a "common contention" that is "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  "What matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but, rather the

10

capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id.

Moreover, the Third Circuit has held that "the commonality requirement is subsumed by the predominance requirement" of Rule 23(b)(3). Danvers Motor Co. v. Ford Motor Co., 543 F.3d 141, 148 (3d Cir. 2008); Fed. R. Civ. P. Rule 23(b)(3). Thus, a court should "consider the Rule 23(a) commonality requirement to be incorporated into the more stringent Rule 23(b)(3) predominance requirement, and therefore deem it appropriate to 'analyze the two factors together, with particular focus on the predominance requirement.'" Ins. Broker. Antitrust Litig., 579 F.3d 241, 266 (3d Cir. 2009); see also Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623-24 (1997) (Rule 23(b)(3) is "far more demanding" than Rule 23(a) and "tests whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation"). Accordingly, commonality is defeated when plaintiffs cannot show that the class was subjected to the challenged practice "in roughly the same manner." Rodriguez v. Nat'l City Bank, 726 F.3d 372, 383 (3d Cir. 2013) (citing Dukes, 131 S. Ct. at 2555-56); see also id. at 383-84 (plaintiffs failed to show that defendant's grant of discretion to managers "constitute[d] a 'specific practice' that affected all the class members in the same general fashion"; rather, "plaintiffs encountered different managers making different types of [ ] decisions for different reasons").

"[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate. . . . Moreover, when individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing 7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (2d ed. 1986)); Bd. of Trs. of

11

the S. Cal. Ibew-Neca Defined Contribution Plan v. Bank of N.Y. Mellon Corp., 287 F.R.D. 216, 226 (S.D.N.Y. 2012) (denying class certification where "individual issues of fact predominate and generalized proof would not suffice"); In re Currency Conversion Fee Antitrust Litig., 230 F.R.D. 303, 309 (S.D.N.Y. 2004) ("[A] plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof."). Indeed, courts have held that, when even a single essential element of a proposed class claim must be resolved on an individual basis, predominance is defeated. See, e.g., Zinser, 253 F.3d at 1189.

Here, Plaintiffs' proposed classes do not meet the requisite standards because the ultimate analysis of liability will require a highly fact-intensive and individualized analysis of the interactions that NSL had with potentially millions of borrowers. In fact, the varied nature of Plaintiffs' individual claims shows precisely why class treatment is inappropriate. Although each Plaintiff claims that he or she was wrongly denied the opportunity to proceed with an IDR plan, their claims turn on the nature of the communications and interactions each individual Plaintiff allegedly had with NSL -- i.e., even among the three Plaintiffs, there is no uniform way to determine liability. Ballard's claims are related to the allegations that her IDR plan was canceled despite her timely submission of the request. (Amended Complaint ¶¶ 57-58). Ballard also contends that NSL improperly capitalized the interest on her loan, and failed properly to process a refund. (Amended Complaint ¶¶ 60-64). Meanwhile, Varno alleges that she submitted an IDR renewal application that was approved, but because it would not be applied to her account for several months, she improperly was placed into forbearance. (Amended Complaint ¶¶ 71-72). And Pokorni avers that he submitted an IDR plan application, but NSL exceeded the applicable time frame for processing that application, causing him to miss out on the opportunity

12

to make a qualifying payment toward his loan forgiveness.  (Amended Complaint ¶¶ 82-83). Because each of these claims is materially distinct from a factual and legal standpoint, they must be analyzed on a case-by-case basis, demonstrating that no class could be certified.

Likewise, the classes purport to include individuals nationwide as well as subclasses in California, New York and Illinois who, for all different time periods, submitted an IDR renewal request that was either canceled or not processed within a certain time period.  (Amended Complaint ¶ 87).  According to Plaintiffs, the classes are composed of "tens to hundreds of thousands (if not millions) of individuals."  (Amended Complaint ¶ 89).  To determine if each borrower has a claim, the Court would need to undertake the same individualized analysis that is required for each of the Plaintiffs, evaluating the nature of the borrower's loan and whether the borrower was eligible for IDR, whether the borrower sent the renewal paperwork to NSL before the deadline, whether the borrower was eligible for renewal, and whether the borrower was properly removed from the IDR plan.

Further, class certification is particularly inappropriate with respect to Count VII of the Amended Complaint, relating to the Rosenthal Act.  As Ballard correctly points out, the Rosenthal Act "prohibits the false representation that the consumer debt may be increased by the addition of any charges if, in fact, such fees or charges may not legally be added to the existing obligation" and "prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt."  (Amended Complaint ¶ 173).  Ballard alleges that the capitalized interest added to her statement constitutes a Rosenthal Act violation.  (Amended Complaint ¶ 174).  Ballard purports to bring a similar claim on behalf of the California class, but the definition of that class is in no way tied to the requirements of the Rosenthal Act or Ballard's claims -- rather, it includes all individuals who were "enrolled in an IDR plan, and timely

13

submitted a request to renew the plan, which was nonetheless cancelled due to [Defendants'] failure to process the renewal prior to the plan's expiration." (Amended Complaint ¶ 87).

Moreover, a request for certification here would fail the requirement of superiority. The superiority element tests whether the prevalence of individual issues will render certification inappropriate. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" Zinser, 253 F.3d at 1192. The superiority factor "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 164 (1974). Here, it is obvious that class litigation of Plaintiffs' Amended Complaint would be entirely inappropriate and unmanageable. There are supposedly thousands or millions of potential class members, each of whom would have had a unique experience with respect to IDR, such as those set forth in the Amended Complaint. The need to evaluate each of these claims individually creates an insurmountable hurdle to class certification, and the requirement of superiority could not be met.

### 2. Rule 23(b)(2) Is Inapplicable To This Action.

Under Rule 23(b)(2), a plaintiff must demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class," so that final injunctive or declaratory relief is appropriate for the class as a whole. However, Rule 23(b)(2) certification does "not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2) Advisory Committee Note; see also Dukes, 131 S. Ct. at 2557 (holding certification under Rule 23(b)(2) improper where "the monetary relief is not incidental to injunctive or declaratory relief" and "each class member would be entitled to an individualized award of monetary damages"); accord Angelastro v. Prudential-Bache Secur., Inc., 113 F.R.D. 579, 583 (D.N.J. 1986).

14

Here, although Plaintiffs do seek injunctive relief, Plaintiffs' primary focus is on obtaining money damages.  Accordingly, Rule 23(b)(2) does not apply.

**B.      In Addition, Plaintiffs Fail To State A Claim Under Rules 12(b)(6) and 9(b).**

It is axiomatic that, to survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Aschcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  Ashcroft, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. at 1949 (citing Twombly, 550 U.S. at 557).

**1.      Plaintiffs Have Failed To Adequately Allege Agency.**

Plaintiffs attempt to allege that Navient Corp. acted through its "agent," NSL, with respect to IDR.  (See e.g., Amended Complaint ¶¶ 5, 6, 8).  However, under either pure agency or piercing of the corporate veil, Plaintiffs have not pled sufficient facts to demonstrate that Navient Corp. has acted through any agent.  First, "[o]ne corporation whose shares are owned by a second corporation does not, by that fact alone, become the agent of the second company." Phoenix Canada Oil Co. v. Texaco, Inc., 842 F.2d 1466, 1477 (3d Cir. 1988).  Instead, in applying the agency theory, "a court should focus its inquiry on the arrangement between the parent and the subsidiary, the authority given in that arrangement, and the relevance of that arrangement to the plaintiff's claim."  C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 560

15

(D. Del. 1998).  Here, Plaintiffs simply state in a conclusory fashion that Navient Corp. acted through its agent, NSL.  That is not enough to plead an agency relationship.  See Indianapolis Life Ins. Co. v. Hentz, No. 1:06-cv-2152, 2009 WL 36454, at *4 (M.D. Pa. Jan. 6, 2009) (conclusory allegations regarding agency relationship between parent and subsidiary are insufficient).

Second, corporate form "shields parent corporations from liability arising from ownership of a subsidiary."  Zarichny v. Complete Payment Recover Servs., Inc., 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015); see U.S. v. Bestfoods, 524 U.S. 51, 69 (1998).  Thus, Plaintiffs must allege enough facts to show that the corporate veil should be pierced in order to hold Navient Corp. -- the holding and parent company -- liable for the acts of NSL.  They have not done so. The limited circumstances under which a plaintiff may hold a parent corporation accountable involve: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a façade for the operations of the dominant stockholder." Zarichny, 80 F. Supp. 3d at 619.  As the Third Circuit has stated, the test "is meant to be an inquiry into whether the subsidiary's corporate form is little more than a legal fiction."  Pearson v. Component Tech. Corp., 247 F.3d 471, 485 (3d Cir. 2001).  In the Amended Complaint, Plaintiffs have utterly failed to allege any such facts, nor could they.

### 2.      Plaintiffs' Contract Claims Fail.

Plaintiffs allege in Count I that Defendants have breached the Servicing Contract.[3]  But Plaintiffs are not parties to that contract, meaning they can only take action with respect to an

---

[3] Plaintiffs allege, in the alternative, that Defendants also breached the duty of good faith and fair dealing.  (Amended Complaint ¶ 112).  But "[s]ince there is no separate cause of action under

alleged breach if they are third-party beneficiaries.  Pursuant to settled law, a third-party beneficiary can be either an intended or incidental beneficiary when "the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Ayco Co., L.P. v. Lipton, 2012 U.S. Dist. LEXIS 123044, *9 (W.D. Pa. Aug. 29, 2012) (citing Restatement (Second) of Contracts § 302 (1979)).  However, the relevant precedent further holds that participants in government programs, like Plaintiffs, are incidental, rather an intended, beneficiaries of contracts between the government and its vendors and, therefore, cannot pursue remedies for alleged breach directly against the vendor.  The reasoning is straightforward:  Government contracts by their very nature benefit the public, but individual members of the public are only incidental beneficiaries with no right to sue for breach unless the contract or the law authorizing the contract manifests a contrary intent.  See Restatement (Second) of Contracts § 313(2) ("[A] promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform" unless the contract itself or the applicable law indicates otherwise); see also Rivera v. Bank of Am. Home Loans, 2011 U.S. Dist. LEXIS 43138, *13 (E.D.N.Y. April 21, 2011) (adopting analysis in Restatement § 313(2)); Nguyen v. U.S. Catholic Cong., 719 F.2d 52, 55-56 (3d Cir. 1983) (same).  Accordingly, "a plaintiff claiming to be the intended third party beneficiary of a government contract must show that he was 'intended to benefit from the contract and that third-party beneficiary claims are consistent with the terms of

Pennsylvania law for breach of the duties of good faith and fair dealing . . . a claim for breach of the duties of good faith and fair dealing is merely a claim for breach of the underlying contract." Kearney v. JPC Equestrian, Inc., No. 11-cv-1419, 2012 WL 3779354, at *10 (M.D. Pa. June 7, 2012).

17

the contract and the policy underlying it.'"   Rivera, 2011 U.S. Dist. LEXIS 43138 at *14.

Further, the Supreme Court has concluded that a beneficiary of a government program may not

sue to enforce a government contract when the statute giving rise to the contract provides no

private right of action.   Astra USA, Inc. v. Santa Clara Cty., 563 U.S. 110 (2011).   As the

Supreme Court explained, "[t]he absence of a private right to enforce the statutory . . .

obligations would be rendered meaningless if [participants in government programs] could

overcome that obstacle by suing to enforce the contract's . . . obligations instead."   Id. at 119.

Under Astra USA, Rivera and the Restatement, Plaintiffs are not third-party beneficiaries

of the Servicing Contract since no contract term or statute allows for such status.   There is no

provision in the Servicing Contract that renders a servicer liable to borrowers for any alleged

failure related to IDR programs, nor is there any statutory right of action under the HEA.   In fact,

courts universally acknowledge that the HEA affords no private right of action to individual

borrowers like Plaintiffs.   See Sanon v. Dep't of Higher Ed., 453 F. App'x 28, 30 (2d Cir. 2011);

Thomas M. Cooley Law Sch. v. ABA, 459 F.3d 705, 710-11 (6th Cir. 2006); Slovinec v. DePaul

Univ., 332 F.3d 1068, 1069 (7th Cir. 2003); McCulloch v. PNC Bank, Inc., 298 F.3d 1217, 1225

(11th Cir. 2002); Labickas v. Arkansas State Univ., 78 F.3d 333, 334 (8th Cir. 1996); Parks Sch.

of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); L'Ggrke v. Benkula, 966

F.2d 1346 (10th Cir. 1992); Williams v. Nat'l Sch. of Health Tech., Inc., 836 F. Supp. 273, 278-

80 (E.D. Pa. 1993).   Rather, the HEA confers upon the Secretary of ED exclusive authority to

implement and enforce the HEA, including with respect to third-party servicers.   See, e.g., 20

U.S.C. §§ 1070(b), 1082(a)(1).

Moreover, and unsurprisingly, courts consistently reject efforts by borrowers to assert

rights under government contracts with loan servicers.   See, e.g., MacKenzie v. Flagstar Bank

18

FSB, 738 F.3d 486, 492 (1st Cir. 2013) (finding that borrower is not a third-party beneficiary of agreement between loan servicer and Fannie Mae under federal Home Affordable Modification Program); Federal Nat'l Mortg. Ass'n v. LeCrone, 868 F.2d 190, 193 (6th Cir. 1989) ("[N]o express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies").  Instead, loan servicers have been exposed to liability only when a separate contract exists with the borrower, or when there is assumption of liability on the borrower's note. See, e.g., Edwards v. Ocwen Loan Servicing, LLC, 24 F. Supp. 3d 21, 28 (D.D.C. 2014); Perron v. JP Morgan Chase Bank, N.A., No. 1:12-cv-01853, 2014 WL 931897, at *4 (S.D. Ind. Mar. 10, 2014).

Nonetheless, even if Plaintiffs could establish a breach of the Servicing Contract, the claim should be dismissed under Federal Rule of Civil Procedure 19 for failure to join ED as a necessary and indispensable party.  Rule 19 provides, in relevant part, that a party must be joined if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(B).

Both prongs of Rule 19(a)(1)(B) are satisfied here.  ED is, of course, a party to the Servicing Contract, so interpreting the contract without ED's involvement would impair ED's ability to protect its own interests and would subject NSL to a risk of inconsistent obligations.  In fact, it is beyond dispute that all parties to a contract must be involved in litigation interpreting that contract.  See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh PA v. Rite Aid of South Carolina, Inc., 210 F.3d 246, 251-52 (4th Cir. 2000) (contracting party has direct interest in action seeking

19

declaration of rights under contract); <u>Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington</u>, 699 F.2d 1274, 1279-80 (D.C. Cir. 1983) (breach of contract action properly dismissed where party to contract not able to be joined); <u>AAA Life Ins. Co. v. Kneavel</u>, No. 1:10-CV-00158, 2012 WL 895953, at 3 (M.D. Pa. Mar. 15, 2012) ("[I]n breach-of contract actions, all parties to the contract should be joined."); <u>Travelers Indem. Co. v. Household Int'l, Inc.</u>, 775 F. Supp. 518, 527 (D. Conn. 1991) ("[P]recedent supports the proposition that a contracting party is the paradigm of an indispensable party.").

Joinder is also required under Rule 19(a)(1)(B)(ii). NSL may be exposed to inconsistent obligations to ED and to the proposed nationwide class if the MPN is interpreted as requiring services or notices different than the services and notices required by the regulations promulgated by ED and/or its contract with ED. <u>See, e.g.</u>, 34 C.F.R. § 682.205(a)(3) (required disclosures during repayment); 34 C.F.R. § 682.205(a)(4) (required disclosures for borrowers having difficulty making payments); 34 C.F.R. § 682.205(a)(5) (required disclosures for borrowers who are 60-days delinquent in making payments on a loan); 34 C.F.R. § 682.205(b) (exception to disclosure requirement); 34 C.F.R. § 682.205(d) (method of disclosure). As ED is a necessary and indispensable party, Plaintiff should be compelled to join ED or Count I should be dismissed.

### 3. Plaintiffs' Tortious Interference Claims Fail.

In Count II, Plaintiffs allege that Defendants are liable for breaching the MPNs between Plaintiffs and ED and/or for tortiously interfering with those contracts. Again, Defendants are not parties to the alleged contracts and Plaintiffs do not allege any set of facts that would require Defendants to take on ED's contractual obligations. Accordingly, the Court should treat Count II as a claim for tortious interference.

20

To establish tortious interference with a contract under Pennsylvania law, the plaintiff must allege "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." Crivelli v. GMC, 215 F.3d 386, 394 (3d Cir. 2000). Here, Plaintiffs contend that Defendants interfered with ED's performance of the MPN by improperly processing Plaintiffs' IDR applications. (Amended Complaint ¶¶ 118-22).

Very simply, though, Plaintiffs cannot meet the elements of the claim. In order to establish the second element, Plaintiffs must allege that there was a specific intent to harm the contractual relationship. "In determining whether there was an intent to harm by interfering with a contractual relationship, the focus is on whether a defendant's conduct was proper under the circumstances." Ruder v. Pequea Valley Sch. Dist., 790 F. Supp. 2d 377, 396 (E.D. Pa. 2011) (internal citations omitted). Further, to determine if certain conduct was proper, a court will consider: "(a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the proximity or remoteness of the actor's conduct to the interference; and (e) the relations between the parties." Id. (Internal quotation marks omitted). In the Amended Complaint, Plaintiffs do nothing more than assert conclusory allegations regarding Defendants' motives, which are not enough to survive a motion to dismiss. "Where the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1949. See Ruder, 790 F. Supp. 2d at 396 (dismissing tortious interference claim based on only conclusory allegations); Lubold v. Univ. Veterinary Specialists,

LLC, No. 17-cv-0507, 2017 WL 2834668, at *3 (W.D. Pa. June 30, 2017) (dismissing tortious interference claim where "there are no allegations that Defendant . . . took any purposeful action specifically intended to harm the existing relation[ship]) (internal quotation marks omitted).

Further, the fourth element of the cause of action requires a plaintiff to plead actual legal damage. "Actual legal damage is pecuniary loss flowing from the alleged interference with the contract." Eagle v. Morgan, No. 11-cv-4303, 2011 WL 6739448, at *15 (E.D. Pa. Dec. 22, 2011) (internal quotation marks omitted). Here, Plaintiffs once again assert conclusory allegations and speculative damages, which are not enough to survive a motion to dismiss. Therefore, Plaintiffs' claim for tortious interference fails as a matter of law and should be dismissed.[4]

### 4.    Ballard's CLRA Claim Fails.

The true nature of Plaintiffs' complaint is that Defendants allegedly have, in various ways, failed to properly service their student loan accounts, particularly with respect to IDR. These are the claims that relate to the facts alleged in the Amended Complaint and that are embodied by Counts I and II. Perhaps realizing how tenuous and unsupported these claims are, Plaintiffs also have attempted to bring into the Amended Complaint various state law consumer protection claims relating to alleged "misrepresentations" by Defendants. The problem, of course, is that Plaintiffs have alleged no such "misrepresentations" -- and they certainly have not alleged any statements made on a classwide basis. This case simply does not fall within the scope of these statutes and, thus, the state law claims, beginning with the CLRA claim in Count III, should be dismissed.

---

[4] Plaintiffs again argue, in the alternative, that the Court should find a breach of the covenant of good faith and fair dealing. As stated in supra n. 3, this is not a separate, viable cause of action.

22

In Count III, Ballard (as a resident of California) alleges that Defendants have violated the CLRA.  As an initial matter, although the Amended Complaint seeks both compensatory and punitive damages (Amended Complaint at Prayer for Relief), Ballard fails to allege compliance with the statutory provisions of the CLRA that require pre-suit notice.  Under Cal. Civ. Code § 1782(a), a plaintiff must provide written notice to the defendant at least 30 days before filing an action under the CLRA seeking damages.  For this reason alone, the CLRA count is defective.

Even if these prerequisites were met, the CLRA applies only to "transaction[s] intended to result or that result[] in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  By its own terms, the statute has no application to loan servicers because they do not sell or lease or offer to sell or lease any goods or services to consumers.  See, e.g., Jamison v. Bank of Am., N.A., 194 F. Supp. 3d 1022, 1032 (E.D. Cal. 2016) ("mortgage services do not fall within the coverage of the CLRA"); Mazonas v. Nationstar Mortg., LLC, No. 06-00660, 2016 WL 2344196, at *3-4 (N.D. Cal. May 4, 2016) (same); Griffin v. Green Tree Servicing, LLC, 166 F. Supp. 3d 1030, 1054-55 (C.D.Cal. 2015) (dismissing CLRA claims against mortgage loan servicer and mortgagee because "mortgage loan is not a good or service as those terms are defined in the CLRA"); Alborzian v. JPMorgan Chase Bank, N.A., 235 Cal. App. 4th 29, 39-40 (2015) (debt collection efforts do not involve "goods or services" for purposes of CLRA).

Finally, as noted above, Ballard fails to allege facts to suggest that any Defendant "[r]epresent[ed] that goods or services are of a particular standard, quality, or grade, . . . if they are of another," as required to state a claim under Cal. Civ. Code § 1770(a)(7).  The conduct alleged as the basis for the CLRA claim in Count III -- canceling Ballard's income-driven payment (Amended Complaint ¶ 131) -- cannot fairly be understood as misrepresentations

23

concerning the "standard, quality, or grade" of "goods or services."  See Perez v. Monster, Inc., 149 F. Supp. 3d 1176, 1182 (N.D. Cal. 2016) (§ 1770 (a)(7) requires allegation that product sold does not have qualities advertised).  Indeed, there is no mention of the standard, quality or grade of goods or services anywhere in the Amended Complaint.

### 5.     The UTCPA Claim Fails.

In Count IV, Plaintiffs attempt to avail themselves of the consumer protection laws in the state of Pennsylvania, but this claim fares no better.  A private cause of action exists under the UTCPL only where the claim is one for "purchases or leases [of] goods or services primarily for personal, family or household purposes"  (73 Pa. Stat. § 201-9.2) and the plaintiff suffers an ascertainable loss "as a result of the defendant's prohibited action."  Walkup v. Santander Bank, N.A., 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015) (dismissing UTCPL claim).  "In sum, to sustain a claim under the UTCPL, a private plaintiff must:  (1) allege ascertainable loss by 'point[ing] to money or property that he would have had but for the defendant's fraudulent actions, and (2) plead facts to support the conclusion that reliance on the defendant's actions was justifiable."  Id. (internal citation omitted).  Here, Plaintiffs simply state that Defendants violated the statute by "representing that the[ir] . . . actions had the approval or sponsorship of the federal government." (Amended Complaint ¶ 139).  But Plaintiffs do not allege how any of the specific actions that Defendants took, or did not take, amount to "unfair or deceptive acts or practices" under the statute. See 73 Pa. Stat. § 201-2.  Nor do Plaintiffs identify any specific misrepresentations.  This is probably so because the UTCPL protects consumers from misrepresentations in the marketplace; it does not address individualized questions related to loan servicing and account management.  Plaintiffs' claim under the UTCPL therefore should be dismissed.

24

### 6.    Varno's Section 349 Claim Fails.

In Count V, Varno also takes a run at a state law deception claim, with the same flawed result. Varno's Section 349 claim is nothing more than an attempt to circumvent the lack of a direct statutory remedy. It is well settled that a plaintiff cannot overcome the lack of a private right of action by recasting her allegations as a claim to remedy deceptive acts or practices under Section 349. See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 199 (2d Cir. 2005); Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001). As stated above, there is no private right of action for alleged violation of the HEA. See supra pp. 19. Nor is there a private right of action in New York for alleged abusive debt collection practices. See Gomez v. Resurgent Capital Servs., LP, 129 F. Supp. 3d 147, 158-59 (S.D.N.Y. 2015). Varno cannot circumvent the lack of a statutory remedy by recasting her claims as a violation of Section 349. Id.

Moreover, Varno fails to allege facts that plausibly suggest that she was misled in any material way, as required to state a claim under Section 349. Conboy, 241 F.3d at 258 ("[A] Section 349 violation requires a defendant to mislead the plaintiff in some material way"); Mendez v. Bank of America Home Loans Servicing, LP, 840 F. Supp. 2d 639, 659 (E.D.N.Y. 2012) (dismissing claim under Section 349 where plaintiff failed to allege facts supporting inference that deceptive acts were misleading in material way). Varno alleges that Defendants (1) "delay[ed] the implementation of Plaintiff's IDR plan for several months, in violation of federal law, while representing that said actions had the approval of the federal government," (2) "increase[ed] Plaintiff's monthly payment amount while her IDR renewal request was being processed, in violation of federal law, while representing that said action had the approval of the federal government," and (3) "appl[ied] a forbearance to Plaintiff's account during the processing of her IDR application, in violation of federal law, while representing to Plaintiff that said action had the approval of the federal government." (Amended Complaint ¶ 149). But

25

Varno does not explain how these alleged circumstances (even if true and even if considered "deceptive") were materially misleading, nor does she explain what she would have done differently but for her reliance on these statements. Thus, Varno fails to allege specific facts which plausibly suggest detrimental reliance on a material misrepresentation and such failure compels dismissal of Count V.

### 7.    Pokorni's ICFA Claim Fails.

Once more, "[t]he elements of a private cause of action for damages based on a violation of the Act are: (1) a deceptive act or practice; (2) intent by the defendant that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) the plaintiff's injury was proximately caused by the fraud complained of." Rockford Memorial Hosp. v. Havrilesko, 368 Ill. App. 115, 121 (Ill. App. 2006). Claims under ICFA must be analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732, 736-37 (7th Cir. 2014).

Here, the only "deceptive acts" by Defendants are that they allegedly: (1) told Pokorni that it would take 22-25 days to process his IDR application, and (2) told Pokorni that his application might be delayed based on high volume. (Amended Complaint ¶ 161). Neither of these statements is deceptive -- in fact, they demonstrate Defendants' transparency in keeping Pokorni advised of the status of his application. Even if they were somehow deceptive, Pokorni cannot show (and has not even alleged) that Defendants intended for him to rely on these statements in some way. Moreover, Pokorni has not pled, nor could he plead, that **these statements** caused any harm to him. Pokorni may believe that the delay in processing his application caused him harm, but that has no relation to these allegedly deceptive statements. Thus, this claim fails and should be dismissed.

26

**III.** **Conclusion**

For the foregoing reasons, the Court should grant the Motion to Strike and/or the Motion to Dismiss.

Respectfully submitted,

/s/ Lisa M. Simonetti

Lisa M. Simonetti (Admitted Pro Hac Vice)
1925 Century Park East, Suite 1900
Los Angeles, CA  90067
T:  424-204-7738
F:  424-204-7702
lsimonetti@vedderprice.com
*Attorneys for Defendants*
*Navient Solutions, LLC and Navient*
*Corporation*

Attorneys for Defendants,
Navient Corporation and Navient Solutions,
LLC, formerly known as Navient Solutions,
Inc.

Dated:  July 12, 2018

27