# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI, on behalf of themselves and the class members described herein, | ) ) ) ) ) | Docket No. 3:18-cv-00121-MEM |
| Plaintiffs, | ) ) | (Judge Malachy E. Mannion) |
| v. | ) ) | ELECTRONICALLY FILED |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., and NAVIENT SOLUTIONS, LLC, | ) ) ) | |
| Defendants. | | |

## <u>BRIEF IN OPPOSITION OF DEFENDANTS' MOTION TO DISMISS AND DEFENDANTS' MOTION TO STRIKE</u>

s/ Carlo Sabatini
Carlo Sabatini, PA 83831
SABATINI FREEMAN, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
carlo@sabatinilawfirm.com

Daniel A. Edelman
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
ARDC # 00712094
dedelman@edcombs.com
cmiller@edcombs.com

i

Anthony Fiorentino
FIORENTINO LAW OFFICES LTD.
180 N. LaSalle Street, Suite 2440
Chicago, Illinois 60602
ARDC # 6281389
anthony@fiorentinolaw.com

*Counsel for Plaintiff and the Classes*

## TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................... iii

TABLE OF AUTHORITIES .................................................................................. iv

I.      INTRODUCTION .....................................................................................1

II.     BACKGROUND........................................................................................2

      A.   Student Loan Programs and Servicing Arrangements...........................2

      B.   The Formation of Navient Corporation ..................................................3

      C.   Income Driven Repayment Plans............................................................4

III.    ARGUMENT..............................................................................................6

      A.   Defendants have not shown that, as a matter of law, the FAC
          does not satisfy Rule 23(a) and 23(b) .....................................................6

      B.   Plaintiffs have alleged all elements of agency......................................13

      C.   Defendants are liable to Plaintiffs because the Promisory Note
          is a legally enforceable document........................................................15

      D.   Defendants are liable under the Promissory Note ...............................17

      E.   Defendants are liable to Plaintiffs as intended beneficiaries
          of the Servicing Contract ......................................................................20

      F.   Defendants are not entitled to dismissal under Rule 19.......................29

      G.   Plaintiffs have adequately pled a claim of tortious interference
          with the Promissory Note.....................................................................30

      H.   Plaintiff Jill Ballard has sufficiently pled a cause of action
          under the CLRA ....................................................................................32

      I.   Plaintiffs have sufficiently pled a cause of action
          under the UTPCPL................................................................................35

      J.   Rebecca Varno has sufficiently pled a claim under
          NY General Business Law §349............................................................37

      K.   Mark Pokorni has sufficiently pled a cause of action under the
          ICFDBA ................................................................................................38

IV.     CONCLUSION........................................................................................40

# TABLE OF AUTHORITIES

## Cases

Aircraft Guar. Corp. v. Strato-Lift, Inc., 991 F. Supp. 735 (E.D. Pa. 1998)..........31

Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997).....................................12

American Machine and Metals, Inc., v. De Bothezat Impeller Co.,
    166 F.2d 535 (2d Cir. 1948) ................................................... 16, 17

Anderson v. SeaWorld Parks & Entm't, Inc.,
    2016 WL 8929295 (N.D. Cal. Nov. 7, 2016)................................................35

Ashcroft v. Iqbal, 556 U.S. 662 (2009). .......................................................... 14, 31

Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.,
    2015 WL 401443 (W.D. Pa. Jan. 28, 2015) ...................................................41

Bible v. United Student Aid Funds, Inc.,
    799 F.3d 633 (7th Cir. 2015) ................................................... 15, 24, 26, 37

Broder v. Cablevision Sys. Corp., 418 F.3d 187 (2d Cir. 2005) ...........................37

Carter v. U.S., 102 Fed. Cl. 61 (2011).............................................................. 20, 26

Christopher v. First Mut. Corp., 2006 WL 166566 (E.D. Pa. Jan. 20, 2006)..........36

Claiborne v. Water of Life Cmty. Church,
    2017 WL 9565337 (C.D. Cal. Aug. 25, 2017) ..............................................34

Clark v. Bally's Park Place, Inc., 298 F.R.D. 188 (D.N.J. 2014)...........................12

Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington,
    699 F.2d 1274 (D.C. Cir. 1983)..............................................................29

College Loan Corp. v. SLM Corp., a Delaware Corp.,
    396 F.3d 588, 598 (4th Cir. 2005) ..........................................................27

Conboy v. AT&T Corp., 241 F.3d 242 (2d Cir. 2001)............................................37

Connick v. Suzuki Motor Co., Ltd.,
    174 Ill. 2d 482, 675 N.E.2d 584 (1996)..................................................40

Covington v. Int'l Ass'n of Approved Basketball Officials,
    710 F.3d 114 (3d Cir. 2013) ....................................................................14

Delaware & Hudson Ry. Co., Inc. v. Knoedler Mfrs., Inc.,
    781 F.3d 656 (3d Cir. 2015) ....................................................................15

Democratic Republic of the Congo v. Air Capital Group, LLC,
    614 Fed. Appx. 460 (11th Cir. 2015) ......................................................20

Eagle v. Morgan, 2011 WL 6739448 (E.D. Pa. Dec. 22, 2011)..............................31

Edwards v. Ocwen Loan Servicing, LLC, 24 F. Supp. 3d 21 (D.D.C. 2014) .........28

Fairbanks v. Superior Court, 205 P. 3d 201 (Cal. 2009) ........................................34

Fed. Nat. Mortg. Ass'n v. LeCrone, 868 F.2d 190 (6th Cir. 1989)..........................29

Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427 (E.D. Pa. 2002).....................35

Gomez v. Resurgent Capital Serv., 129 F. Supp. 3d 147 (S.D.N.Y 2015) .............37

Hall v. Best Buy Co., Inc., 274 F.R.D. 154 (E.D. Pa. 2011) ...................................12

Harte v. Ocwen Fin. Corp., 2014 WL 4677120 (E.D.N.Y. Spet. 19, 2014) ...........19

Herron v. Best Buy Stores, L.P., 2014 WL 465906 (E.D. Cal. Feb. 4, 2014).........32

In re Ins. Brokerage Antitrust Litig., 579 F.3d 241 (3d Cir. 2009) ..........................9

In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.,
        491 F.3d 638 (7th Cir. 2007) ....................................................................18

In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.,
        491 F.3d 638, 645 (7th Cir. 2007). ...........................................................19

In re Sch. Asbestos Litig., 789 F.2d 996 (3d Cir. 1986).........................................10

In re Sugar Indus. Antitrust Litig., 73 F.R.D. 322 (E.D. Pa. 1976)........................11

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516 (3d Cir. 2004).......... 9, 10, 12

Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,
        65 Fed. Appx. 803 (3d Cir. 2003).............................................................15

Kapsis v. Am. Home Mortg. Servicing Inc.,
        923 F. Supp. 2d 430 (E.D.N.Y. 2013)......................................................19

Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53 (3d Cir. 1992)...................................36

Kesten v. Ocwen Loan Servicing, LLC,
        2012 WL 426933 (N.D. Ill. Feb. 9, 2012).................................................19

Kiser v. General Electric Corp., 831 F.2d 423 (3d Cir.1987)................................41

Landman & Funk PC v. Skinder–Strauss Assoc., 640 F.3d 72 (3d Cir.2011).........6

Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997)...................................32

MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486 (1st Cir. 2013)...........................28

Mazonas v. Nationstar Mortg. LLC,
        2016 WL 2344196 (N.D. Cal. May 4, 2016)................................................35

Mazzei v. Money Store,
        308 F.R.D. 92 (S.D.N.Y. 2015), aff'd, 829 F.3d 260 (2d Cir. 2016) ............19

Messina v. Green Tree Servicing, LLC, 210 F. Supp. 3d 992 (N.D. Ill. 2016) ......39

Mirandette v. Nelnet, Inc., 720 Fed. Appx. 288 (6th Cir. 2018) ................ 17, 18, 20

Montana v. United States, 124 F.3d 1269 (Fed. Cir. 1997)....................................26

Montanez v. HSBC Mortg. Corp. (USA),
        876 F. Supp. 2d 504 (E.D. Pa. 2012)............................................................36

Morgan v. AT&T Wireless Servs.,
        177 Cal. App. 4th 1235, 99 Cal. Rptr. 3d 768 (2009) ..................................32

Morgan v. Markerdowne Corp., 976 F. Supp. 301 (D.N.J. 1997)..................... 26, 37

Nat'l Union Fire Ins. Co. of Pittsburgh PA v. Rite Aid of South Carolina, Inc.,
        210 F.3d 246 (4th Cir. 2000) .......................................................................29

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
        259 F.3d 154 (3d Cir. 2001) .........................................................................9

Opelika Mfg. Corp. v. City of Hawkinsville, Georgia,
        525 F.2d 941 (5th Cir. 1976) .......................................................................16

Perez v. Monster Inc., 149 F. Supp. 3d 1176 (N.D. 2016) ......................................33

Perron v. JP Morgan Chase Bank, N.A.,
    2014 WL 931897 (S.D. Ind. Mar. 10, 2014) .................................................28

Peters v. JP Morgan Chase Bank, N.A., 600 Fed.Appx. 220 (5th Cir. 2015) .........16

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) ................................6

Phoenix Canada Oil Co. Ltd. v. Texaco, Inc., 842 F.2d 1466 (3d Cir. 1988).........14

Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,
    148 F.3d 283 (3d Cir. 1998) .......................................................................10

Ramirez v. Smart Corp., 371 Ill. App. 3d 797 (3d Dist. 2007) ...............................39

Robinson v. Toyota Motor Credit Corp.,
    201 Ill. 2d 403, 775 N.E.2d 951 (2002).....................................................39

Russ v. Apollo Grp., Inc., 2009 WL 10674112 (C.D. Cal. Sept. 23, 2009)............34

Seldon v. Home Loan Services, Inc., 647 F. Supp. 2d 451 (E.D. Pa. 2009)...........35

Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,
    559 U.S. 393, 130 S. Ct. 1431 (2010) ........................................................32

Siegel v. Shell Oil Co., 612 F.3d 932 (7th Cir. 2010) .............................................39

Smith v. Wash. Post. Co., 962 F. Supp. 2d 79 (D.D.C.2013) ..................................6

Travelers Indem. Co. v. Household Int'l, Inc.,
    775 F. Supp. 518 (D. Conn. 1991).............................................................29

U.S.A., Inc. v. Santa Clara Cty., 563 U.S. 110 (2011) ..................................... 24, 25

Western Gas Processors, Ltd. v. Woods Petroleum Corp.,
    15 F.3d 981 (10th Cir. 1994) ...............................................................16

Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012) ..........................16

Zeno v. Ford Motor Co., Inc., 238 F.R.D 173 (W.D. Pa. 2006)................... 8, 14, 19

**Statutes**

20 U.S.C. § 1070.......................................................................................27

20 U.S.C. § 1077(a)(2)(A) ........................................................................38

20 U.S.C. § 1082................................................................................ passim

73 P.S. § 201-2........................................................................................36

73 Pa. Stat. § 201-9.2 ...............................................................................35

815 ILCS 505/2.......................................................................................39

Cal. Civ. Code § 1761(b) ..........................................................................34

Cal. Civ. Code § 1788.13(e) ......................................................................11

Cal. Civ. Code § 1788.2(c) ........................................................................11

NY General Business Law § 349................................................................. 37, 38

## Rules

Federal Rule of Civil Procedure 19 ........................................................................29

Federal Rule of Civil Procedure 23(a) ................................................................7, 9

Federal Rule of Civil Procedure 23(b) ...............................................................7, 9

Federal Rule of Civil Procedure 23(c) ...................................................................6

Federal Rule of Civil Procedure 8 ........................................................................14

## Treatises

Restatement (Second) of Contracts, § 313(2) ................................................. 21, 22

## Regulations

34 C.F.R. § 682.215 (e)(8)(ii) ..............................................................................33

34 C.F.R. 685.201(c)(1) ........................................................................................24

34 C.F.R. 685.213(b)(4)(iv)(B) ............................................................................24

x

## I.    INTRODUCTION

This class action seeks compensation for Defendants' improper delay and cancellation of millions of federal student loan borrowers' Income-Driven Repayment (IDR) plans, which resulted in the improper addition of fees and interest charges, the loss of benefits associated with such plans, and delayed progress toward loan forgiveness.  Plaintiffs bring claims against Defendants for breach of their Promissory Notes, which are student loan agreements between borrowers and the Department of Education (ED), serviced by Defendants, and also for breach of Defendants' Servicing Contract with ED, of which Plaintiffs are third party beneficiaries.  Plaintiffs also bring claims under state consumer protection statutes (California, New York, Illinois).

Defendants submit a combined Motion to Dismiss and Motion to Strike Class Action Allegations, in which they make premature and conclusory arguments regarding the certifiability of the classes under Rule 23 prior to the discovery necessary to support such arguments.  With respect to Plaintiffs' contract claims under the Promissory Note, Defendants assert that they are not liable because they are not signatories thereto, and that, in the alternative, Plaintiffs have not sufficiently pled a claim of tortious interference therewith.  As to Plaintiffs' contract claims under the Servicing Contract, Defendants assert that Plaintiffs are not intended third party beneficiaries.  These arguments fail because 1) by entering

1

into the Servicing Contract, which incorporates the terms of the Promissory Note, Defendants accepted a delegation of duties required under the Promissory Note, making them liable thereunder; and 2) the plain language of the Servicing Contract, as well as controlling precedent, make clear that Plaintiffs are third party beneficiaries of the Servicing Contract.

Regarding Plaintiffs' consumer protection claims, Defendants primarily argue that the Higher Education Act (HEA) does not afford a private right of action; that Plaintiffs have not alleged any actual "misrepresentations" within the meaning of the statutes cited; and that such statutes do not apply to loan servicers. These arguments fail because 1) Plaintiffs' claims arise under contracts and state law, not the HEA; 2) Defendants' actions as alleged in the First Amended Complaint ("FAC") clearly constitute the deceptive practices proscribed by the state consumer laws cited; and 3) these laws – in line with their broad remedial purposes – do apply, *and have been applied*, to loan servicers. Finally, Defendants incorrectly argue that ED must be joined as an indispensable party.

## II.    BACKGROUND

### A. Student Loan Programs and Servicing Arrangements

Plaintiffs took out student loans funded or guaranteed by the federal government. (FAC, ¶¶ 17-19). Federal student loans are governed by a form contract - a "Promissory Note" - between the borrower and ED which sets forth all

2

the terms of the loan, including repayment plan options and interest rates.  (Id.).
The Promissory Note is identical in all material respects as to each Plaintiff and
member of the classes.  Once a borrower's loan goes into repayment, the loan is
assigned to a loan servicer to administer it.  One of the largest of these companies
was Sallie Mae – formerly SLM Corporation.  (FAC ¶¶ 20-22).  ED awarded a
servicing contract to SLM Corp. in 2009 to administer repayment of federal loans.
(FAC ¶ 50).  The contract was modified in 2014 and remains in force today. (FAC
¶ 36).

### B. The Formation of Navient Corporation

Navient Corp. was formed in 2014, when the former SLM Corp. was split
into separate loan origination and servicing corporations.  (FAC ¶ 24).  As
successor to SLM Corp., Navient Corp., became responsible for the student loan
servicing obligations under the Servicing Contract and further assumed
responsibility for any loan servicing misconduct of SLM Corp. and its subsidiaries
which occurred prior to the 2014 re-organization.  (FAC ¶¶ 28, 37).  Navient
Solutions, Inc. ("NSI"), a wholly-owned subsidiary of Navient Corp., performed
the loan servicing obligations of Navient Corp, until it changed its name to Navient
Solutions, LLC ("NSL") on January 31, 2017, at which time NSL began fulfilling
those obligations. (FAC ¶¶ 29-31, 38).

3

### C. Income Driven Repayment Plans

Federal student loans come with an array of repayment options. Under the "standard repayment plan," monthly payments are calculated such that the borrower's balance is fully paid within 10-30 years. (FAC, ¶ 45). Borrowers who cannot afford payments under the standard plan often enroll in the various IDR plans that offer significantly lower monthly payments. (Id.). For instance, under the "Income Based Repayment" plan, the borrower's monthly payments are capped at 15% of discretionary income, and the remaining debt is discharged after 25 years of qualifying payments. (Id.). To enroll in an IDR plan, the borrower must send an IDR application and proof of income to her loan servicer. (FAC ¶ 46). Once received, the loan servicer must "promptly" determine the new monthly payment. (FAC ¶ 48). Accordingly, ED has directed loan servicers to process IDR applications within 10-15 business days. (Id.).

Once a borrower is enrolled in an IDR plan, it is effective for a one-year period. To renew the plan for each subsequent year, the borrower must annually recertify her income by sending her loan servicer an IDR renewal application and proof of income before a specified deadline. (FAC, ¶¶ 46-47). If the borrower fails to do so, the loan servicer may increase her monthly payments to the amount required under the standard repayment plan. (Id.). Additionally, any accrued interest is "capitalized," or added to the borrower's principal loan balance. (Id.).

4

If, however, the borrower timely submits her IDR renewal application and proof of income, the loan servicer must maintain the borrower's income-driven payment amount until the application is processed.  (FAC, ¶ 65).

In contrast to IDR plans, which provide affordable monthly payments, borrowers may have their loans placed into forbearance, which halts monthly payments.  (FAC, ¶ 49).  Forbearances, however, undermine progress toward repayment because they prevent the borrower from making qualifying payments toward loan forgiveness, and trigger costly interest capitalizations.  (Id.).  On the other hand, forbearances can be lucrative for the loan servicer because they extend the period of repayment.  This generates additional monthly servicing fees, and higher debt collection revenue if and when the loan defaults.  (Id.).

To generate additional servicing fees and debt collection revenue, Defendants engaged in the abusive practice of delaying Plaintiffs' enrollment in IDR plans, and unlawfully cancelling such plans.  Reports published by the Consumer Financial Protection Bureau (CFPB) describe nearly identical complaints from thousands of borrowers nationwide, identifying a common course of conduct that was aimed at maximizing Defendants' profits at the expense of borrowers.  As a result, numerous borrowers suffered significant damages, including the addition of accrued interest to their principal loan balance, and delayed progress toward loan forgiveness.  (FAC, ¶ 111).

## III.   ARGUMENT

### A. Defendants have not shown that, as a matter of law, the FAC does not satisfy Rule 23(a) and 23(b).

Courts discourage motions to strike class allegations at the pleading stage. See Landman & Funk PC v. Skinder–Strauss Assoc., 640 F.3d 72, 93 (3d Cir. 2011) (noting that the cases are "few where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."). See also Smith v. Wash. Post. Co., 962 F. Supp. 2d 79, 89–90 (D.D.C. 2013) ("Courts rarely grant motions to dismiss or strike class allegations before there is a chance for discovery."). In 2003, Rule 23(c) was amended to require that the certification decision be made "at an early practicable time," rather than "as soon as practicable after commencement of the action." This amendment reflects the reality that "time may be needed to gather information necessary to make the certification decision," and that "it is appropriate to conduct controlled discovery into the merits, limited to those aspects relevant to making the certification decision on an informed basis." Fed. R. Civ. P. 23, advisory committee note.

As for Defendants' Rule 12(b)(6) Motion to Dismiss, the complaint must be construed in the light most favorable to Plaintiffs, and the motion must be denied if, under any reasonable reading of the complaint, Plaintiffs may be entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

6

Without any pre-certification discovery, Defendants insist that no class could ever be certified in this matter, regardless of the facts.  Defendants argue that the proposed classes do not satisfy Rule 23(a)'s requirement that there be common questions of law or fact, or Rule 23(b)'s requirement that such questions predominate over those issues affecting only individual members, because the "analysis of liability will require a highly fact-intensive and individualized analysis."  (Defendants' Memorandum in Support of Motion to Dismiss and Strike Class Allegations, Dkt. No. 39-1 ("Def. Memo"), p. 12.)

To the contrary, Plaintiffs' claims reflect a systematic and uniform course of conduct that is reasonably susceptible of class wide proof.  A ministerial review of each borrower's account summary and loan portfolio would conclusively show that: (1) the borrower was enrolled in an IDR plan, (2) the borrower submitted an application to renew the plan on a given date, and (3) Defendants failed to process the application prior to the expiration of the plan, which (4) resulted in a capitalization of the borrower's accrued interest, and (5) a cancellation of the borrower's income-driven payments.

These elements of proof are highly objective, uniform, and provable through account records alone.  Documentation of these facts is likely to exist because, pursuant to their obligations under the Servicing Contract, Defendants are required to "correctly record all transactions on their database and to post summary

7

transactions to the . . . general ledger [of the Department of Education's Office of Federal Student Aid] on the same business day they are generated." (FAC, Exhibit D, page 29). Defendants must also "maintain both the posting date and effective date of the transactions on their system" and "provide an audit trail that efficiently links their detailed transactions . . . to summarized transactions in [the Federal Student Aid office's] general ledger." Id. Thus, because all necessary proof is based on documents in the custody of Defendants *and* ED, the classes would be easily administrable.

Cases arising out of "form contracts" and "generalized extrinsic evidence" are particularly appropriate for class certification. Zeno v. Ford Motor Co., Inc., 238 F.R.D 173 (W.D. Pa. 2006). Because the Promissory Note is a form contract, and account records would show who was affected by the practices complained of, Plaintiffs' claims are eminently suited for class treatment.

Defendants point to minor and irrelevant factual differences between the named Plaintiffs in arguing that the "varied nature" of the claims renders class treatment inappropriate. (Def. Memo, p. 12). For instance, Defendants point out that Mark Pokorni's IDR application was misprocessed at the initial point of enrollment, whereas the other Plaintiffs' applications were misprocessed during the annual renewal period. Such minor differences do not negate a finding of commonality. See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 531–32

8

(3d Cir. 2004) ("Typicality, as with commonality, does not require that all putative class members share identical claims."); <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 183 (3d Cir. 2001) ("Rule 23(a) does not require that class members share every factual and legal predicate to meet the commonality and typicality standards.")(quotations and citations omitted).

In any event, Defendants overstate the "varied nature" of Plaintiffs' claims. The factual allegations pertaining to Ms. Ballard and Ms. Varno are, in pertinent part, identical. In both cases: 1) Plaintiffs submitted timely IDR renewal applications, and 2) Defendants failed to renew their plans before their expiration. Defendants then: 3) improperly capitalized accrued interest, and 4) unlawfully cancelled income-driven repayment amounts, which 5) required Plaintiffs to either pay a higher monthly bill or agree to a forbearance. Defendants note that, unlike Ms. Ballard, who made a higher monthly payment when her IDR plan was cancelled, Ms. Varno placed her loans into forbearance. This points to nothing more than a difference in *damages*.[1] Courts have consistently held that differences in damages do not militate against a finding of predominance. <u>See</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 579 F.3d 241, 269 (3d Cir. 2009)(holding that Rule 23(b)(3)'s predominance requirement was met because the claims were

---

[1] Defendants also claim that Ms. Ballard's claim is unique in that she alone alleged a deficient refund. Again, this difference affects only damages.

"susceptible to common proof, even if the amount of damage that each plaintiff suffered could not be established by common proof."). See also In re Sch. Asbestos Litig., 789 F.2d 996, 1010 (3d Cir. 1986) ("Resolution of common issues need not guarantee a conclusive finding on liability, nor is it a disqualification that damages must be assessed on an individual basis.")(internal citation omitted).

The fact that Plaintiffs' complaint includes both a nationwide class, as well as three subclasses composed of residents of California, New York, and Illinois also does not bar a finding of predominance or commonality. See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 529–30 (3d Cir. 2004) ("The fact that there may be variations in the rights and remedies available to injured class members under the various laws of the fifty states in this matter does not defeat commonality and predominance."). See also Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 315 (3d Cir. 1998) (granting class certification despite minor variances in state law). Notably, Defendants point to no *actual* differences between the various state laws that would complicate the liability analysis. Similarly, Defendants assert that the California class definition is not "tied to the requirements of the Rosenthal Act" (Def. Memo., p. 13), but they offer no explanation for this claim. In fact, the criteria of the California class are the very elements that give rise to a claim under the Rosenthal Act, which prohibits the false representation that a "consumer debt may be increased by the addition of . . .

10

charges if, in fact, such fees or charges may not legally be added to the existing obligation." Cal. Civ. Code § 1788.13(e). Defendants also deny that they are "debt collectors" within the meaning of the Rosenthal Act. (Def. Memo., p. 3). The Act defines "debt collector" as "any person [including corporations and LLCs] who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). Given that Defendants are clearly engaged in the business of collecting student loan debts, this contention is unsupportable.

Defendants assert in conclusory fashion that it is "obvious" that class litigation would be "entirely inappropriate and unmanageable." (Def. Memo., p. 14). However, speculative manageability concerns should not be raised in a motion to dismiss, as they precede any opportunity for discovery. See In re Sugar Indus. Antitrust Litig., 73 F.R.D. 322, 356 (E.D. Pa. 1976) ("Consideration of future manageability is by necessity limited because discovery has not advanced to the point where certain judgments can be made regarding the relative ease or difficulty with which the litigation will progress."). Nevertheless, class action treatment is not only a superior means of adjudication of the instant case – it is the *only* practicable means.

The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to

11

bring a solo action prosecuting his or her rights. A class action solves this problem by "aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617 (1997)(quotations omitted). As the complaint demonstrates, average damages for individual class members will likely range from several hundred to several thousand dollars, making the costs of litigation outweigh the potential recovery. Such "negative value" cases are particularly well-suited for class treatment. See Clark v. Bally's Park Place, Inc., 298 F.R.D. 188, 202 (D.N.J. 2014) ("A claim's negative value is the most compelling rationale for finding superiority in a class action.")(internal quotations omitted). See also Hall v. Best Buy Co., Inc., 274 F.R.D. 154, 166 (E.D. Pa. 2011) (finding class action treatment to be a superior means of adjudication because "the value of individual claims of class members is likely far less than the cost of bringing such claims."). Indeed, a comprehensive review of all cases currently pending against Defendants has revealed *not a single individual case involving allegations similar to those of Plaintiffs*, despite findings from the CFPB that the practices alleged in the FAC are pervasive. This lack of individual cases supports class treatment. See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534 (3d Cir. 2004) (finding that class action treatment was a superior method of adjudication because the relatively small number of individual lawsuits pending against Defendants showed a lack of

12

interest in individual prosecution of claims.)   Hence, Defendants have fallen far short of their burden of demonstrating that Plaintiffs' classes, as a matter of law, cannot satisfy Rule 23.

### B. Plaintiffs have alleged all elements of agency.

Defendants argue that Plaintiffs have failed to sufficiently plead that Navient Corp. acted through its agent, NSL, noting that "the corporate form shields parent corporations from liability arising from ownership of a subsidiary." (Def. Memo., p. 16.)   But Plaintiffs have not alleged that Navient Corp.'s liability arises from its *ownership* of NSL.   Rather, the FAC clearly states that Navient Corp. is *directly* liable to Plaintiffs as a signatory to the Servicing Contract, of which Plaintiffs are intended beneficiaries.  (FAC, ¶ 37).[2]

To divert attention from Navient Corp.'s direct liability, Defendants cite a series of cases brought under *federal statutes*.  (Def. Memo., pp. 15-16).  None of these cases involved allegations that a parent corporation was *directly* liable under a contract to which it was a signatory.  In fact, the only case that Defendants cite in support of their agency argument that *does* involve a contract is Phoenix Canada

---

[2] Defendants assert that Plaintiffs "effectively concede [that] Navient Corp. does not, in fact, engage in loan servicing activities." (Def. Memo., p. 1).  To the contrary, Defendants do not dispute Plaintiffs' allegations that Navient Corp. is, in fact, the only signatory to the Servicing Contract, and therefore, Defendants concede that Navient Corp. is the sole obligor thereunder.

13

Oil Co. Ltd. v. Texaco, Inc., 842 F.2d 1466 (3d Cir. 1988), which raised the question of whether "liability may attach to the principal corporation *even though it is not a party named in the agreement*." Id. at 1477 (emphasis added). Obviously, Phoenix Canada has no bearing on cases where the parent corporation *is* such a party.

In any event, Plaintiffs have, in fact, pled an agency relationship between Navient Corp. and NSL. Under Rule 8, Plaintiffs need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent. Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 120 (3d Cir. 2013). The FAC alleges that Navient Corp. is a signatory to the Servicing Contract (FAC, ¶¶ 34-37); that NSL is a wholly-owned subsidiary of Navient Corp. (FAC, ¶¶ 30-31); and that NSL undertook performance of Navient Corp.'s contractual loan servicing obligations (FAC, ¶ 29). The *only* plausible inference to be drawn from these allegations is that NSL (which is *not* a signatory to the Servicing Contract) was acting on behalf of Navient Corp. in performing the latter's loan servicing obligations. See Zeno v. Ford Motor Co., Inc., 480 F. Supp. 2d 825, 842 (W.D. Pa. 2007) ("It is not necessary . . . to furnish direct evidence of the specific authority

14

[granted to an agent] if it can be reasonably inferred from the circumstances of the case.")   Thus, Plaintiffs have satisfied their Rule 8 pleading requirements. However, to the extent that additional factual support might be necessary to establish agency, the Court should permit discovery on that issue.  See Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 Fed. Appx. 803, 808 (3d Cir. 2003) ("Because the existence of an agency relationship hinges largely on the particular facts of each case, discovery [is] essential to the preparation of an agency theory argument.").

**C. Defendants are liable to Plaintiffs because the Promissory Note is a legally enforceable document.**

Where a federal statute contemplates or requires the execution of notes, loan agreements or other contracts with private parties, the existence of a private right of action under the statute itself is not relevant.  A "promissory note" or "contract" executed pursuant to statute contemplates a legally enforceable document with the usual attributes of a "promissory note" or "contract."  Bible v. United Student Aid Funds, Inc., 799 F.3d 633 (7th Cir. 2015) (Higher Education Act does not provide private right of action, but repayment agreement executed by coborrower is legally enforceable by borrower); Delaware & Hudson Ry. Co., Inc. v. Knoedler Mfrs., Inc., 781 F.3d 656 (3d Cir. 2015) (there is no private right of action for railroad equipment suppliers for violation of the Locomotive Inspection Act, but a contract

15

requiring provision of equipment that complies with the Act is enforceable); Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012) (no private right of action under the Home Affordable Modification Program, but promises and representations resulting from implementation of the program are enforceable under state law relating to contracts and deceptive practices).  Surely Defendants do not suggest that Plaintiffs' notes are not enforceable *against* Plaintiffs.

Defendants are directly liable to Plaintiffs under the Promissory Note, which provides: "Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this [Promissory Note]."  (FAC, Exhibit A, p. 3).

One attribute of a loan agreement or contract is that in the event of a dispute as to the amount due or extent of the obligation, a party is entitled to bring suit to obtain a judicial declaration of the matter.  Peters v. JP Morgan Chase Bank, N.A., 600 Fed.Appx. 220 (5th Cir. 2015); Western Gas Processors, Ltd. v. Woods Petroleum Corp., 15 F.3d 981 (10th Cir. 1994); Opelika Mfg. Corp. v. City of Hawkinsville, Georgia, 525 F.2d 941 (5th Cir. 1976); American Machine and Metals, Inc., v. De Bothezat Impeller Co., 166 F.2d 535 (2d Cir. 1948); Auto Club Group v. Wimbush, 285 Fed.Appx. 328 (8th Cir. 2008). If there is a dispute as to what is due, a party is not required to refuse to perform and imperil himself if his view of the obligation is wrong; he can obtain a judicial determination in advance

16

of breach.  American Machine and Metals, Inc., v. De Bothezat Impeller Co., supra. Plaintiffs are obligated under loan agreements, which require them to pay money, and are obviously intended to be legally enforceable.  An action to determine what is owed, or whether the borrower has been overcharged, is a standard contract remedy.

Here, Plaintiffs allege that Defendants have been improperly servicing their loan agreements, with the result that their purported obligations under those contracts are not as large as claimed by Defendants.  Judicial resolution of the issue is appropriate.

### D. Defendants are liable under the Promissory Note.

Defendants argue that, because they are not signatories to the Promissory Note, Plaintiffs have not alleged facts "that would require Defendants to take on ED's contractual obligations." (Def. Memo., p. 20).  But courts have held that loan servicers *do* take on such obligations through partial assignment of the loan agreement.

The Sixth Circuit has directly addressed the question of whether federal loan servicers are liable to borrowers under the Promissory Note, and has found that such liability exists. Mirandette v. Nelnet, Inc., 720 Fed. Appx. 288, 290 (6th Cir. 2018) (holding that a federal loan servicer was directly liable to a borrower under the Promissory Note because of the servicer's "acceptance of the asserted

17

delegation of the duty to service the loan."). The <u>Mirandette</u> court reasoned that loan servicers must be liable under the Promissory Note because otherwise "loan borrowers would have no contract remedies if loan servicers overcharge them (aside, perhaps, from not paying, facing suit by the servicer, and raising an affirmative defense – a risky endeavor."). <u>Id</u>. at 293. This reasoning is consistent with 20 U.S.C. § 1082, which precludes actions for damages against the federal government arising from the actions of loan servicers with whom it contracts. Thus, Defendants are liable to Plaintiffs under the Promissory Note.

Also, instructive is Judge Posner's opinion in <u>In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.</u>, 491 F.3d 638 (7th Cir. 2007), which involved a mortgagor's contract claim against a loan servicer that was not a signatory to the loan agreement alleged to have been breached. In holding the loan servicer directly liable under the loan agreement, Judge Posner reasoned that the mortgagee's contractual servicing obligations were "partially assigned" to the servicer.

> "[S]ervicing refers to the exercise of rights that are conferred by a partial assignment of a mortgage by the mortgagee. Instead of assigning the entire mortgage to [the loan servicer], the mortgagee in this case assigned some of the rights created by the mortgage contract—the "servicing rights"—to [the loan servicer] . . . If an original mortgagee can be sued under state law for breach of contract, so may the partial assignee if he violates the

18

> terms of the part of the mortgage contract that has been assigned to him."

In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig., 491 F.3d 638, 645 (7th Cir. 2007). See also Kesten v. Ocwen Loan Servicing, LLC, 11 C 6981, 2012 WL 426933, at *7 (N.D. Ill. Feb. 9, 2012) ("[Plaintiffs'] factual allegations do state a claim for breach of contract under the theory that certain obligations under the [loan] contract were assigned to [the loan servicer]."

Other courts have reached the same conclusion, holding that an assignment of loan servicing obligations establishes privity between a loan servicer and the borrower. See Mazzei v. Money Store, 308 F.R.D. 92, 110 (S.D.N.Y. 2015), aff'd, 829 F.3d 260 (2d Cir. 2016) ("Privity will depend on the nature of the relationship between the servicer and the borrower and whether there has been a valid assignment of contractual duties to the servicer."); Kapsis v. Am. Home Mortg. Servicing Inc., 923 F. Supp. 2d 430, 452 (E.D.N.Y. 2013) (holding that a loan servicer is liable under a loan agreement if "the loan servicer was acting as the agent for someone who was in privity and that privity could be imputed to it."); Zeno v. Ford Motor Co., 238 F.R.D. 173, 192-93 (W.D. Pa. 2006) ("An agency relationship can establish an exception to the general requirement of privity"); Harte v. Ocwen Fin. Corp., 2014 WL 4677120, at *6 (E.D.N.Y. Spet. 19, 2014)

("[The loan servicer] can be held liable for breach of contract based on a relationship with Plaintiff constituting the functional equivalent of privity.").

Plaintiffs are in privity with Defendants because the Servicing Contract assigns ED's contractual loan servicing obligations to Navient Corp.  Indeed, servicers of federal student loans are directly liable to borrowers under a federal Promissory Note by virtue of the assignment of contractual loan servicing obligations.  Mirandette v. Nelnet, Inc., 720 Fed. Appx. 288, 290 (6th Cir. 2018).

**E. Defendants are liable to Plaintiffs as intended beneficiaries of the Servicing Contract.**

Defendants argue that Plaintiffs cannot recover as intended third party beneficiaries of the Servicing Contract because they are merely "participants in government programs" that "by their very nature benefit the public." (Def. Memo, p.17).  To the contrary, the ED is a *market participant* engaged in consumer lending transactions.  Courts have readily made this distinction when a government is acting in a profit-making capacity.  See Democratic Republic of the Congo v. Air Capital Group, LLC, 614 Fed. Appx. 460, 469 (11th Cir. 2015) (holding that governments are more akin to private entities when they "engage in consumer transactions the way private actors do.").  See also Carter v. U.S., 102 Fed. Cl. 61 (2011) (noting that a government acts in its sovereign capacity when it is not "entering into the marketplace" and "[does] not derive a benefit" from its own

20

contract.)   The government derives a *significant* benefit from making interest-bearing loans.  The Congressional Budget Office has estimated that, over the next decade, federal student loan programs will yield the Department of Education $135 billion in profits.  See "Fair-Value Estimates of the Cost of Selected Federal Credit Programs for 2015 to 2024," available at https://www.cbo.gov/publication/45383 (last visited August 8, 2018).   Thus, the Servicing Contract is clearly distinguishable from government contracts that simply benefit the general public.

Defendants gloss over this distinction by quoting only a *portion* of the applicable section of the Restatement (Second) of Contracts, § 313(2) (Def. Memo., p. 17).  The complete section reads as follows:

> In particular, a promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform *unless* (a) the terms of the promise provide for such liability; or (b) *the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach*."

Restatement (Second) of Contracts, § 313(2) (emphasis added).  Defendants omit sub-section (2)(b) from their discussion of the Restatement because it clearly applies to this case.  First, the ED (the "promisee") is subject to liability to members of the public, as any remedy involving a reduction in the borrower's loan

21

balance will amount to a loss for the government.  Second, a direct action against

Defendants (the "promisor") is consistent with the terms of the contract.  A 2014

modification to the Servicing Contract (which is referenced in the FAC) included

the following language:

> The contractor shall provide a complete copy of any complaint served on the contractor in a *lawsuit by an individual* for conduct alleged to have occurred *in the course of servicing activity under the contract* . . . . The contractor need not provide such a complaint if the contractor determines that the conduct alleged did not occur *in the course of the contractor's servicing activities under the contract* . . .

See "Modification"   at   https://studentaid.ed.gov/sa/sites/default/files/fsawg/

datacenter/library/ED-FSA-09-D-0015_MOD_0085_Navient.pdf   (last   visited

August 9, 2018) (emphasis added). This language unambiguously shows that the

contracting parties contemplated private litigation against Defendants in

connection with the Servicing Contract.  Further support is found in the original

2009 Servicing Contract, which directs Defendants to retain records relating to

"litigation or the settlement of claims arising under or relating to this contract."

(FAC, Exhibit D, p. 20.)

Finally, intended beneficiary status of borrowers is consistent with the policy

of law authorizing the Servicing Contract because federal law holds ED harmless

for the misconduct of loan servicers.  See 20 U.S.C. § 1082 ("In no case shall

22

damages be assessed against the United States for the actions or inactions of [loan] servicers."). If both the federal government *and* loan servicers are immunized from liability for the latter's misconduct, the only parties to absorb the costs of Defendants' unlawful conduct would be the borrowers themselves. Such a result cannot have been intended by Congress in enacting 20 U.S.C. § 1082. Thus, Defendants are liable to Plaintiffs as intended third party beneficiaries of the Servicing Contract pursuant to Section 313 of the Restatement (Second) of Contracts.

The Restatement, however, is not the only basis for finding that borrowers are intended beneficiaries of the Servicing Contract. As mentioned above, the Promissory Note vests the borrower with "rights, remedies, and defenses" under "applicable state law." (FAC, Exhibit A, p. 3). *This language is incorporated by reference into the Servicing Contract*, which requires compliance with "all statutory and legislative requirements." (FAC, Exhibit D, p. 26). Among these requirements are 20 U.S.C. § 1082, which provides that "each loan made under a master promissory note . . . be separately enforceable in all Federal and State courts in accordance with the terms of the master promissory note."; 34 C.F.R. 685.213(b)(4)(iv)(B), which states that Federal Direct Loans are payable "under the terms of the promissory note"; and 34 C.F.R. 685.201(c)(1), which states that

23

the promissory note for a Direct Consolidation Loan "sets forth the terms and conditions" of the loan.

Thus, the Servicing Contract incorporates by reference the terms of the Promissory Note, which the borrower may enforce as a matter of contract. See Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 644 (7th Cir. 2015) ("We agree with [the borrower] that the [Master Promissory Note] incorporated the HEA and its associated regulations. Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by the reference as a part of the contract and, therefore, may properly be considered in the construction of the contract.").

Defendants seek to avoid liability under the Servicing Contract by relying on Astra U.S.A., Inc. v. Santa Clara Cty., 563 U.S. 110 (2011), in which a hospital was barred from suing a drug company as a beneficiary of the latter's pricing agreement with the federal government. Central to the court's holding in Astra, however, was the fact that the enabling statute created a regulatory scheme that "centralized enforcement [of the contract] in the government." Id. at 119. For instance, if a drug manufacturer overcharged a health care provider, the government could require the manufacturer to reimburse the latter, and thereby compensate the injured third party. Id. at 115. To that point, the Astra court highlighted the fact that Congress had "assigned no auxiliary enforcement role" to

24

the injured third parties.  Id. at 117.  By contrast, the Servicing Contract contains no governmental mechanism for compensating injured borrowers such as Plaintiffs.[3]  Rather, Congress created a *decentralized* enforcement scheme for federal loans by requiring the execution of loan agreements enforceable under state law, and vesting borrowers with rights and remedies under "applicable state law."  Moreover, the statute involved in Astra had prohibited the federal government from disclosing its pricing agreements, which was an "indication of the incompatibility of private suits with the statute."  Id. at 121.  The Promissory Note, however, states that the borrower is "entitled to an exact copy of this [Master Promissory Note] and the Borrower's Rights and Responsibilities Statement" (FAC, Exhibit A, p. 1) and the Servicing Contract is publicly available online.

More importantly, though, Astra does not even apply when a government contract has "more of the appearance of a commercial arrangement than a contract facilitating the government's provision of utilities or other general services."

---

[3] Defendants argue that federal regulations prescribe "every aspect of federal loan servicing." (Def. Memo., p. 5).  They cannot, however, point to a single provision of law that addresses how to compensate borrowers for the injuries alleged in the complaint.  Indeed, no such provision exists because Congress left this to "applicable state law."

25

Carter v. U.S., 102 Fed. Cl. 61, 71 (2011). [4] Carter held that, in such cases, the more appropriate test for intended third party beneficiary status is the one set forth in Montana v. United States, 124 F.3d 1269 (Fed. Cir. 1997). Id. at 71-72. Montana requires only that the government contract "reflect the express or implied intention of the parties to benefit the third-party." Id. at 1273. Such an intention is express in the instant case, as the Servicing Contract states that its core mission is to ensure that "eligible individuals benefit from federal financial assistance." (FAC, Exhibit D, p. 22).

Defendants also attempt to circumvent liability under the Servicing Contract by arguing that "the HEA affords no private right of action to individual borrowers like Plaintiffs." (Def. Memo., p. 18). This argument is a red herring, as Plaintiffs' claims arise under legally enforceable contracts, not the HEA. Morgan v. Markerdowne Corp., 976 F. Supp. 301, 318 (D.N.J. 1997) ("A fair reading of the HEA demonstrates that Congress did not mean to prevent students from proceeding under provisions of state law which would not conflict with the purposes or provisions of the HEA or the regulations implementing the statute."); Bible v. United Student Aid Funds, Inc. ), supra, at 639 (holding that a federal student loan borrower was not preempted by the HEA because her state law claims

---

[4] In view of the government's aforesaid $135 billion in projected profit from student loans, the commercial nature of the contract can hardly be questioned.

did not conflict with federal law).  When a statute requires execution of "notes," "loan agreements," and other legally enforceable documents, a statutory right of action is not relevant.  Nonetheless, Defendants cite a litany of cases that were brought *exclusively* under the HEA.  (Def. Memo., p. 18).  Because these cases did not involve claims arising under contract or state law, they are inapposite.

Defendants' reliance on §§ 1070 (b) and 1082(a)(1) of the HEA for the proposition that "the HEA confers upon the Secretary of ED exclusive authority to implement and enforce the HEA, including with respect to third-party loan servicers" is also unavailing (Def. Memo., p. 18).  In fact, no such exclusivity is thereby granted.  Section 1082(a)(1)  merely states that the Secretary "*may* prescribe such regulations as may be necessary to carry out the purposes" of the FFELP loan program.  (emphasis added).  Notably, this section also bars damages against the government for the conduct of loan servicers, evincing a legislative intent that the latter be held directly liable.  Section 1070(b) applies to federal grants, not loans, and prescribes no exclusive enforcement authority in any event. In fact, in College Loan Corp. v. SLM Corp., a Delaware Corp., 396 F.3d 588, 598 (4th Cir. 2005), the court flatly rejected the notion that the promulgation of "extensive regulations pursuant to the HEA" precludes related breach of contract claims:

27

> "Nor does the fact that only the Secretary [of Education] is authorized to enforce the HEA compel the conclusion that [plaintiff's] pursuit of its state law claims, relying in part on violations of the HEA or its regulations, will obstruct the federal scheme.  To the contrary, the Supreme Court (and this Court as well) has recognized that the availability of a state law claim is even *more* important in an area where no federal private right of action exists . . ."

Finally, Defendants maintain that courts have "rejected efforts by borrowers to assert rights under government contracts with loan servicers," citing MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486 (1st Cir. 2013).  (Def. Memo., p. 18.)  In MacKenzie, however, the plaintiffs could not claim intended beneficiary status because the contract at issue stated that it would "inure to the benefit of and be binding upon the parties to the Agreement."  Id. at 492.  Because they did not "fall within a class clearly intended by the parties to benefit from the contract," the plaintiffs were not intended beneficiaries.  Id.  By sharp contrast, the stated intent of the Servicing Contract is that "eligible individuals benefit from federal financial assistance."   (FAC, Exhibit D, p. 22).  Notably, Defendants point to no language in the Servicing Contract that is analogous to that at issue in MacKenzie.  Also distinguishable are Edwards v. Ocwen Loan Servicing, LLC, 24 F. Supp. 3d 21, 28 (D.D.C. 2014) and Perron v. JP Morgan Chase Bank, N.A., 2014 WL 931897 (S.D. Ind. Mar. 10, 2014), which did not involve intended beneficiary claims; and Fed.

28

<u>Nat. Mortg. Ass'n v. LeCrone</u>, 868 F.2d 190, 193 (6th Cir. 1989), which was brought exclusively under federal statutes rather than contracts.

### F.  Defendants are not entitled to dismissal under Rule 19.

Defendants argue that the FAC should be dismissed because joinder of the federal government is required under Rule 19.   However, 20 U.S.C. §1082 demonstrates that loan servicers and not the federal government are liable for servicing errors.   Furthermore, joinder of a necessary party is not grounds for dismissal.

Rule 19 states, that "[i]f a person who is required to be joined if feasible *cannot be joined*, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b) (emphasis added).  Defendants have not alleged that joinder of the federal government would be impossible, nor could they.  The ED is both amenable to process and subject to the jurisdiction of this Court.

Defendants cite <u>Nat'l Union Fire Ins. Co. of Pittsburgh PA v. Rite Aid of South Carolina, Inc.</u>, 210 F.3d 246 (4th Cir. 2000); <u>Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington</u>, 699 F.2d 1274 (D.C. Cir. 1983); and <u>Travelers Indem. Co. v. Household Int'l, Inc.</u>, 775 F. Supp. 518 (D. Conn. 1991) in support of their Motion.   In all three cases, however, the extraordinary remedy of dismissal was appropriate only because joinder of the absent party

destroyed complete diversity of citizenship, which was the only basis of the federal court's subject matter jurisdiction.  Here, however, subject matter jurisdiction is based on numerous federal questions, as well as minimal diversity under Class Action Fairness Act.  Thus, dismissal would not be warranted, as joinder of the federal government would have no effect on this Court's subject matter jurisdiction.

### G. Plaintiffs have adequately pled a claim of tortious interference with the Promissory Note.

Defendants argue that Plaintiffs have not pled a tortious interference claim under Pennsylvania law because they have not alleged "a specific intent to harm the contractual relationship." (Def. Memo., p. 21.)  To the contrary, Plaintiffs have pled with great specificity the way in which Defendants' profit incentive was the animating principle of their unlawful practices that interfered with the performance of the Promissory Note.  For instance, Plaintiffs allege that Defendants "delayed or failed to process IDR plan applications in order to generate additional monthly servicing fees." (FAC, ¶ 5); that Defendants' abuse of the deferment and forbearance process "improperly increased Navient Corp.'s revenue" (FAC, ¶ 6); and that Defendants "had a financial incentive to increase borrowers' loan balances, making its collection and rehabilitation services more profitable if and when borrowers went into default." (FAC, ¶ 7).  These allegations are more than

30

enough to satisfy federal pleading requirements, which "do not require detailed factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Defendants also argue that Plaintiffs have not sufficiently pled "actual legal damage" and that "speculative damages" are not enough to survive a motion to dismiss. (Def. Memo., p. 22). This argument is impossible to square with the FAC, which is replete with *actual dollar figures* representing the improper fees and costs assessed to Plaintiffs. For instance, Ms. Ballard alleges that she was forced to make a monthly payment of $902.55 as a result of Defendants' unlawful cancellation of her repayment plan. (FAC, ¶ 58.) She also alleges that $4,686.57 was added to her principal loan balance as a result of Defendants' processing delay. (FAC, ¶ 60). Similarly, Ms. Varno and Mr. Pokorni allege that they incurred improper interest capitalizations due to forbearances that were necessitated by Defendants' processing delays. Id. at ¶¶, 71, 84. Although the latter do not plead an exact dollar amount, they are not required to. Under Pennsylvania law, damages are speculative if the uncertainty concerns the *fact* of damages, not the amount. Aircraft Guar. Corp. v. Strato-Lift, Inc., 991 F. Supp. 735, 739–40 (E.D. Pa. 1998). In fact, the only case Defendants cite as an illustration of speculative damages is Eagle v. Morgan, 2011 WL 6739448, at *2 (E.D. Pa. Dec. 22, 2011). In that case, the plaintiff alleged damage to reputation

31

and diminution to the fair market value of her name. Such allegations are speculative indeed, and wholly distinguishable from those alleged in the FAC.

### H. Plaintiff Jill Ballard has sufficiently pled a cause of action under the CLRA.

Defendants argue that Jill Ballard may not proceed on her CLRA claim because she did not comply with § 1782(a), which requires written notice to Defendants of the alleged violations at least thirty days before filing an action seeking damages thereunder. (Def. Memo., p. 23). But Plaintiff was not required to comply with the pre-suit notice provision of the CLRA because it conflicts with the procedural mechanism of Rule 23. Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 U.S. 393, 130 S. Ct. 1431 (2010) ("Rule 23 permits all class actions that meet its requirements, and a State cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements."); Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997). However, even if § 1782(a) applied, the appropriate remedy would be a dismissal of the CLRA claim *without* prejudice, allowing Plaintiffs to renew the CLRA claim more than 30 days after providing notice. Morgan v. AT&T Wireless Servs., 177 Cal. App. 4th 1235, 99 Cal. Rptr. 3d 768 (2009); Herron v. Best Buy Stores, L.P., 2014 WL 465906, at *4–5 (E.D. Cal. Feb. 4, 2014).

32

Defendants also argue that Ms. Ballard's CLRA claim fails because she has not alleged any actual "misrepresentations." (Def. Memo., p. 22). This argument is without merit. Section 1770(a)(14) of the CLRA prohibits "representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." In the FAC, Plaintiffs cite 34 C.F.R. § 682.215 (e)(8)(ii), which prohibits loan servicers from cancelling the income-driven payments of a borrower who timely renews her IDR plan. (FAC, ¶ 48). Ms. Ballard also alleged that, despite a timely renewal of her IDR plan, Defendants sent her a letter stating that her income-driven payments were cancelled, and that she "would now be required to make monthly payments of $902.55 …." (FAC, ¶ 58). *This letter included two material misrepresentations regarding obligations that are prohibited by law*: 1) the false representation that Defendants had the right to cancel Ms. Ballard's income-driven payments despite her timely renewal of the plan; and 2) the false representation that Defendants had the right to bill Ms. Ballard in the amount of $902.55. These allegations fall squarely within the language of § 1770(a)(14) of the CLRA.

Nonetheless, Defendants argue that these misrepresentations are not cognizable under the CLRA, citing Perez v. Monster Inc., 149 F. Supp. 3d 1176 (N.D. 2016). But that case addressed a deficient pleading of the elements of § 1770(a)(7) of the CLRA, which is not at issue in this case. Defendants also argue

that the CLRA, by its own terms, "has no application to loan servicers." (Defendants Motion, p. 23). To the contrary, the services provided by Defendants fall within the statute's definition of "services" because they were "services for other than a commercial or business use." Cal. Civ. Code § 1761(b). See also § 1760 (statute "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices…"). In fact, the CLRA has been specifically applied to claims concerning student loans. See Russ v. Apollo Grp., Inc., 2009 WL 10674112, at *1 (C.D. Cal. Sept. 23, 2009) (where students alleged failure of university to provide meaningful notice of student loan repayment terms, the court found "insufficient grounds" to rule that "education is not a service under the plain language of the CLRA" or that "the legislative history of the CLRA shows that education is not a 'service'."). See also Claiborne v. Water of Life Cmty. Church, EDCV1700771VAPKKX, 2017 WL 9565337, at *10 (C.D. Cal. Aug. 25, 2017) (holding that financial services fell within the CLRA's definition of "services.").[5] Thus, Plaintiff Jill Ballard has sufficiently pled a cause of action under the CLRA.

---

[5] Fairbanks v. Superior Court, 205 P. 3d 201 (Cal. 2009) is not to the contrary. It held that an insurer that sold life insurance along with ancillary services was not covered by the CLRA because insurance is not a tangible chattel as defined under the CLRA. Id. at 282. The cases Defendants cite (Def. Memo., p. 23) have extended this reasoning to mortgage services because mortgages, like insurance,

34

### I.  Plaintiffs have sufficiently pled a cause of action under the UTPCPL.

Defendants assert that Plaintiffs are not entitled to relief under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), which applies only to "purchases or leases [of] goods or services primarily for personal, family or household use."  (Def. Memo., p. 24, citing 73 Pa. Stat. § 201-9.2).   This definition, however, extends to loans financing the purchases of services, such as educational services, for personal use.  See Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427, 433 (E.D. Pa. 2002) (holding that "a different approach would insulate all kinds of practices from [the UTPCPL], such as debt collection, which occur after entering an agreement and which were not a basis for the original agreement."  Id.  See also Seldon v. Home Loan Services, Inc., 647 F. Supp. 2d 451, 471 (E.D. Pa. 2009) (holding that improper loan services gave rise to "a viable claim [under the UTPCPL] on the basis of misrepresentations involving

---

are not tangible chattels.  See, e.g., Mazonas v. Nationstar Mortg. LLC, 2016 WL 2344196, at *4 (N.D. Cal. May 4, 2016).  However, Fairbanks and the cases relying on it "neither expressly addressed nor analyzed the phrase 'services for other than a commercial or business use.'"  Anderson v. SeaWorld Parks & Entm't, Inc., 2016 WL 8929295, at *11 (N.D. Cal. Nov. 7, 2016).  In Anderson, the court analyzed the CLRA's legislative history and concluded that the term "services" encompasses "educational services."  Id. at 12.  Similarly, here, student loans concern educational services and fall under the ambit of services defined under the CLRA.  Importantly, the California Supreme Court has not applied the Fairbanks reasoning to student loan servicers.

[a] repayment plan."). Moreover, to bring a claim under the UTPCPL, there need not be "strict technical privity between the party suing and the party sued." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 56 (3d Cir. 1992). Thus, Defendants' assertion that the UTPCPL does not address "questions related to loan servicing" (Def. Memo., p. 24) is unsupportable.

Defendants also argue that the FAC does not allege actions that constitute "unfair or deceptive acts or practices" within the meaning of the statute. (Def. Memo., p. 24). In fact, Plaintiffs clearly allege that the UTPCPL prohibits the act of "representing that goods or services have sponsorship or approval that they do not have," pursuant to 73 P.S. § 201-2(4)(v) of the Act. (FAC, ¶ 138). As the complaint makes clear, *all* of Defendants' actions related to the servicing of federal loans carry the implication that said practices have the approval of the ED because Defendants are disclosed agents thereof. (FAC, ¶ 139). By acting *on behalf of* the ED in a manner that *violates* the ED's rules, Defendants are, at a minimum, engaging in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4)(xxi). See also Christopher v. First Mut. Corp., CIV.A. 05-01149, 2006 WL 166566, at *3 (E.D. Pa. Jan. 20, 2006) ("An act or a practice is deceptive or unfair if it has the capacity or tendency to deceive."). See also Montanez v. HSBC Mortg. Corp. (USA), 876 F. Supp. 2d 504, 520 (E.D. Pa. 2012) ("Deception is defined as intentional misleading by

36

falsehood spoken or acted."). Thus, Defendants' unlawful actions of cancelling Plaintiffs' income-driven payments create a "likelihood of confusion" regarding the legality of such actions. Accordingly, Plaintiffs have sufficiently pled a cause of action under the UTPCPL.

**J. Rebecca Varno has sufficiently pled a claim under NY General Business Law § 349.**

Defendants argue that Plaintiff Rebecca Varno's claim under NY General Business Law § 349 is "an attempt to overcome the lack of a private action [under the HEA]." (Def. Memo., p. 25, citing Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198 (2d Cir. 2005); Conboy v. AT&T Corp., 241 F.3d 242 (2d Cir. 2001); and Gomez v. Resurgent Capital Serv., 129 F. Supp. 3d 147 (S.D.N.Y 2015). Once again, Defendants miss the mark. None of these cases apply here, where the cause of action stems from a loan agreement – a document which is clearly intended to be legally enforceable. Morgan v. Markerdowne Corp., 976 F. Supp. 301, 318 (D.N.J. 1997) ("A fair reading of the HEA demonstrates that Congress did not mean to prevent students from proceeding under provisions of state law which would not conflict with the purposes or provisions of the HEA or the regulations implementing the statute. 20 U.S.C. § 1077(a)(2)(A)."); Bible., supra at 639 (holding that a federal student loan borrower was not preempted by the HEA because her state law claims did not conflict with federal law.).

37

Defendants further argue that Ms. Varno's § 349 claims are deficient because she did not allege that she was "misled in any material way" or that she "would have done anything differently but for her reliance on these statements." (Def. Memo., pp. 25-26). In fact, Ms. Varno alleges that she enrolled in an IDR plan with income-based payments of $710 (FAC, ¶ 69); that she timely submitted a renewal application with proof of income for the following year (FAC, ¶ 70); and that, in May of 2017, Defendants unlawfully canceled the plan and *falsely represented* a new payment amount of approximately $1,800 (FAC, ¶ 71). Relying on these false representations, Ms. Varno enrolled in a costly forbearance during the prolonged processing of her IDR renewal application. (FAC, ¶ 71). Thus, the materiality of these falsities, and Ms. Varno's detrimental reliance thereon, has been sufficiently pled.

### K. Mark Pokorni has sufficiently pled a cause of action under the ICFDBA.

Defendants argue that Plaintiff Mark Pokorni is not entitled to relief under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFDBA) because none of the statements he alleges are deceptive. (Def. Memo., p. 26). Leaving this question aside, application of the ICFDBA is not limited to "deceptive statements." Rather, it prohibits "unfair methods of competition and unfair or deceptive acts or practices." 815 ILCS 505/2. A plaintiff may allege that conduct

38

is unfair under the ICFDBA without alleging that it is deceptive.  Siegel v. Shell Oil Co., 612 F.3d 932 (7th Cir. 2010).  See also Ramirez v. Smart Corp., 371 Ill. App. 3d 797, 806 (3d Dist. 2007) ("Recovery [under the ICFDBA] may be had for unfair as well as deceptive practices.").  When a plaintiff alleges unfair conduct, courts consider three factors: 1) whether the practice offends public policy; 2) whether it is immoral, unethical, oppressive, or unscrupulous; and 3) whether it causes substantial injury to consumers.'"  Robinson v. Toyota Motor Credit Corp., 201 Ill. 2d 403, 417–18, 775 N.E.2d 951, 961 (2002).  Even very small individual harms can be considered substantial, if they are part of a practice that, in the aggregate, causes substantial losses to the public as a whole. Messina v. Green Tree Servicing, LLC, 210 F. Supp. 3d 992, 1005 (N.D. Ill. 2016)

Mr. Pokorni has in fact sufficiently pled an unfair practice under the ICFDBA.  First, he alleges that Defendants' practice of delaying implementation of his IDR plan for 45 days offends the public policy of the federal government, which directs loan servicers to process such applications within 15 days.  (FAC, ¶¶ 81-82).  Second, he alleges that Defendants acted immorally and unethically in that they "delayed or failed to process IDR plan applications in order to generate additional monthly servicing fees."  (FAC, ¶ 5).  Third, he pleads a substantial injury because he alleges that Defendants' delay tactics "extended the duration of

39

his loans" and "delayed the date on which [he] will become eligible for loan forgiveness."   (FAC, ¶ 83).

Nonetheless, Defendants claim that Mr. Pokorni has not pled that Defendants "intended for him to rely" on their unfair practices.  (Def. Memo., p. 26). However, the FAC makes clear that Defendants' intent in delaying the implementation of IDR plans was to induce borrowers to place their loans into forbearance and deferment status, which increased Defendants' revenue.  (FAC, ¶ 55).  Indeed, Mr. Pokorni himself was so induced.  (FAC, ¶ 84).

Defendants also argue that Mr. Pokorni has not pled that Defendants' statements "caused any harm to him." (Def. Memo., p. 26, emphasis in original). In fact, Plaintiff's actual reliance is not an element of statutory consumer fraud under the ICFDBA.  Connick v. Suzuki Motor Co., Ltd., 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996).  All Plaintiff need allege is that Defendants' *unfair practice* caused his damages.  As mentioned above, Mr. Pokorni has pled that Defendants' delay tactics extended the duration of his loans and delayed his eligibility for loan forgiveness.   (FAC, ¶ 83).  Thus, he has sufficiently pled his claim under Illinois law.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motions should be denied in their entirety.  In the alternative, Plaintiffs should be given an opportunity to cure any

40

remediable deficiencies in the FAC.  Bell v. Cheswick Generating Station, Genon Power Midwest, L.P., CIV.A. 12-929, 2015 WL 401443, at *6 (W.D. Pa. Jan. 28, 2015).  (holding that, under Rule 15, courts should "freely" grant Plaintiffs leave to amend the complaint, unless leave to amend would be futile.); Kiser v. General Electric Corp., 831 F.2d 423, 427 (3d Cir.1987) ("Even after a responsive pleading has been filed ... great liberality in allowing amendment of an initial pleading is often appropriate, especially when amendment will further the ends of justice, effectuate presentation of a suit's merits and not prejudice the opposing party.")

41

## <u>Certification Regarding Word Count</u>

The substantive portion of this brief contains 9,595 words.

<u>s/ Carlo Sabatini</u>
Carlo Sabatini

## <u>Certificate of Service</u>

Defendants are being served through the CM/ECF system.

<u>s/ Carlo Sabatini</u>
Carlo Sabatini