**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JILL BALLARD, et al., | : | |
| | : | CIV NO. 3:18-CV-121 |
| | : | |
| Plaintiffs, | : | (Judge Mannion) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| NAVIENT CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

In litigation the procedural posture of a case often defines the scope of substantive relief that may be afforded to a party. So it is here. The plaintiffs have filed a putative nationwide class action lawsuit on behalf of a class of student loan borrowers whose income-driven repayment program requests have allegedly been mishandled by Navient to their detriment and to the financial benefit of the defendants. These allegations are set forth in a 59-page, 180-paragraph amended complaint, which is accompanied by more than 160 pages of exhibits. (Doc. 29).

Notwithstanding this fulsome pleading, the defendants have filed a motion to dismiss the complaint, and to strike its class action allegations, alleging that the complaint is legally inadequate on a host of grounds. This motion has been comprehensively briefed by the parties, (Docs. 40, 45. 48, 51, 55), and was the

1

subject of oral argument before the district court. (Doc. 53). We have now carefully considered the parties' voluminous submissions, but with our discretion cabined and confined by the well-pleaded facts set forth in the amended complaint, for the reasons set forth below we recommend that the motion to strike the class action allegations be DENIED. We further recommend that the motion to dismiss be GRANTED as to the tortious interference with contract claim but DENIED in all other respects.

## II.    Statement of Facts and of the Case

### A. Substantive Allegations in the Plaintiff's Complaint

Our analysis of the instant motion is governed by the well-pleaded facts in the amended complaint. By way of introduction, the amended complaint explains that:

> 2. Student loan debt is now the largest category of non-housing related consumer debt in the United States with more than $1.34 trillion outstanding at the end of June 2017. The overwhelming majority of student loans in the United States are owned or guaranteed by the federal government through the U.S. Department of Education.
>
> 3. Since June 2009, Defendant Navient Corp. and its predecessors in interest, through their subsidiaries, Navient Solutions, LLC ("NSL") and Navient Solutions, Inc. ("NSI") acting in the capacity of agents on behalf of their principal, Navient Corp., have served as one of four primary servicers of federal student loan debt.
>
> 4. Loan servicers who contract with the Department of Education perform all tasks associated with loan repayment, such as collecting payments, responding to customer service inquiries, providing loan documents to borrowers, handling applications for loan deferment or forbearance based on financial hardship, and administering repayment programs designed to help borrowers effectively manage the increasing

2

cost of higher education. These programs include the various Income-Driven Repayment Plans ("IDR plans") offered by the federal government, which provide qualifying borrowers with relief from student loan debt by adjusting their payments to a reasonably affordable amount based on their income, occupation, and family size. Borrowers enrolled in IDR plans can also apply to have their federal loans forgiven after a certain number of payments.

5. Navient Corp. and its predecessors in interest, and/or their duly appointed agents, NSL and NSI, received and continue to receive monthly servicing fees for the federal loans that they administer. Thus, Navient Corp. has a strong financial interest in keeping loans active for as long as possible to continue collecting these monthly fees. To that end, Navient Corp. and its predecessors in interest, through their duly appointed agents, NSL and NSI, delayed or failed to process IDR plan applications in order to generate additional monthly servicing fees. Because loan payments only count toward forgiveness once a borrower's application is processed, this practice extended the duration of loans in the various IDR programs, and injured borrowers who were required to make additional payments on loans that otherwise would have been forgiven at an earlier date.

6. Navient Corp. and its predecessors in interest, through their duly appointed agents, NSL and NSI, also improperly placed borrowers making timely loan payments into deferment or forbearance status–a designation typically reserved for situations where the borrower seeks relief from its payment obligations due to financial hardship. Borrowers who are in deferment or forbearance cannot make qualifying payments that count towards loan forgiveness under the various IDR plans, even though Navient Corp. continues to collect fees or servicing their loans. Thus, Navient Corp.'s abuse of the deferment and forbearance process, through its agents, NSL and NSI, improperly increased Navient Corp.'s revenue and extended the duration of the borrowers' loans in the various IDR programs. Moreover, at the conclusion of each forbearance, any accrued interest is "capitalized," or added to the borrower's principal loan balance, which may increase ethe borrower's debt considerably. Thus, Navient Corp.'s abuse of the forbearance process, through its agents, NSL and NSI, improperly increased the principal loan balance of its borrowers, putting them deeper and deeper into debt.

7. Navient Corp. had a financial incentive to increase its borrowers' loan balances because two of its subsidiaries –Pioneer Credit Recovery ("Pioneer") and General Revenue Corporation ("GRC") –provide collection and rehabilitation services on defaulted federal student loans. Under the current compensation structure for companies that provide such rehabilitation services, collectors earn nearly $40 in compensation for every $1 in cash recovered through certain rehabilitations.

(Id., ¶¶ 2-7).

According to the plaintiffs' complaint, Navient has a documented, and widespread, history of mishandling student loan IDR requests and accounts and has been the subject of thousands of complaints over its deficiencies in the processing of these accounts. (Id., ¶¶ 9-14).

Cast against this factual backdrop, the plaintiffs' amended complaint sets forth in their pleading a series of detailed substantive factual averments. (Id., ¶¶ 43-86). These averments explain that, with the rising cost of college education, students seeking higher education opportunities have been compelled to increasingly rely upon student loans to finance their education. (Id., ¶¶ 43-44). These loans then come with an array of repayment plans.

Burdened by academic debt, many student loan borrowers cannot afford the monthly payments prescribed by standard repayment plans and must turn to various income-driven repayment plans. (Id., ¶¶ 45-47). Such income-driven repayment plans, or IDRs, must be renewed annually by the student, and the failure to timely renew the IDR can result in increased payments and added interest expense. (Id.) In

4

order to assist students loan borrowers in avoiding these financial-penalties, student loan servicers are required to timely process IDR requests within 10 to 15 business days. (Id., ¶ 48). In contrast to these IDR plans, student loan borrowers may also be placed into a temporary loan forbearance status by loan servicers. Such temporary forbearance is more lucrative for the loan servicer, according to the plaintiffs, but has financial disadvantages for the borrowers. (Id., ¶ 49).

The plaintiffs allege that Navient's financial incentives for mishandling student IDR applications and accounts stem from the structure of its contract with the Department of Education. (Id., ¶¶ 50-55). That contract compensates Navient on a per unit basis for the student loan accounts it manages, and pays Navient at a higher rate for accounts that are in forbearance, thus creating incentives to place accounts in forbearance status and minimize the number of accounts which are forgiven or discharged. (Id.)

The amended complaint then details the experience of the three named plaintiffs with Navient at their loan servicer. (Id., ¶¶ 56-86). In each instance it is alleged that Navient mishandled the named plaintiffs' IDR account by failing to meet processing deadlines, improperly placing accounts in forbearance status, erroneously capitalizing interest payments, and failing to acknowledge and process timely student borrower IDR renewal applications. (Id.)

## B. **The Plaintiffs' Class Action Averments**

Having lodged these substantive allegations, the amended complaint then sets forth a series of class action averments. (Id., ¶¶ 87-98). The class action allegations state that the injuries suffered by the named plaintiffs due to the actions and inaction of Navient are emblematic of a broader nationwide pattern of IDR application and agreement mishandling. The complaint notes that there have been thousands of complaints by student loan borrowers that Navient has failed to timely process applications and IDR renewals and that Navient is alleged to have improperly placed tens of thousands of student loan borrowers into forbearance status, to their financial detriment but to Navient's benefit. Specifically, the complaint alleges that the following four classes of plaintiffs exist in this case:

NATIONWIDE CLASS

All individuals with federal student loans serviced by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date six years prior to the filing of this action, 1) were enrolled in an IDR plan, and timely submitted a request to renew the plan, which was nonetheless cancelled due to Navient's failure to process the renewal prior to the plan's expiration, or 2) submitted a request for enrollment in an IDR plan that was not processed within 25 business days.

CALIFORNIA CLASS

All California residents with federal student loans serviced by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date four years prior to the filing of this action, were enrolled in an IDR plan, and timely submitted a request to renew the plan, which was nonetheless cancelled due to Navient's failure to

6

process the renewal prior to the plan's expiration.

## NEW YORK CLASS

All New York residents with federal student loans serviced by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date six years prior to the filing of this action, were enrolled in an IDR plan, and timely submitted a request to renew the plan, which was nonetheless cancelled due to Navient's failure to process the renewal prior to the plan's expiration.

## ILLINOIS CLASS

All Illinois residents with federal student loans serviced by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date ten years prior to the filing of this action, submitted a request for enrollment in an IDR plan that was not processed within 25 business days.

(Id., ¶ 88).

### C. **The Plaintiffs' Claims and Causes of Action**

The plaintiffs' amended complaint then sets forth seven claims and causes of action on behalf of themselves and the putative classes that they claim to represent. This claims include breach of contract claims alleging that Navient's conduct has violated the terms of both its contract with the Department of Education, as well as the student promissory notes. (Id., Counts I and II). In the alternative, the plaintiffs allege that Navient's IDR loan processing practices tortiously interfere with these contracts. (Id.) The amended complaint also sets forth five causes of action based upon California, Pennsylvania, Illinois, and New York consumer protection statutes. (Id., Counts III-VII). The plaintiffs then request that the court certify this class

7

action, find that Navient's actions are unlawful, enjoin these practices, and award the plaintiff class compensatory and punitive damages along with attorneys' fees. (<u>Id.</u>)

### D. <u>The Defendants' Motion to Dismiss and to Strike Class Allegations</u>

Presented with this robust and sweeping amended complaint, the defendants have filed a robust and sweeping motion to dismiss and to strike class action allegations. (Doc. 39). In this motion, the defendants allege that the plaintiffs' class action allegations are so fatally deficient that they should be stricken from the complaint entirely. The defendants then challenge the various claims and causes of action set forth in this complaint on multiple grounds, arguing that this fulsome complaint fails to state any claims upon which relief may be granted, and further fails to join the Department of Education, an indispensable party to this lawsuit. (<u>Id.</u>) This motion has been exhaustively briefed by the parties, (Docs. 40, 45. 48, 51, 55), and was the subject of an oral argument before the district court. (Doc. 53). Accordingly, this motion is ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss be granted, in part, and denied, in part, as follows: first, the motion to strike the class action allegations should be DENIED; in addition, the motion to dismiss should be GRANTED  as to the tortious interference with contract claim, but DENIED in all other respects.

8

## III.    Discussion

### A. The Motion to Strike Class Allegations Should be Denied

At the outset, in their motion the defendants invite us to completely transform this case, a putative nationwide class action, by striking the class action averments from the complaint. In effect, this course if adopted by the court would convert a case that purports to bring systemic claims on behalf of tens of thousands of student loan borrowers into three very narrow and specific individual allegations. The defendants extend this invitation to us at the outset of the litigation, based solely upon the well-pleaded facts in the complaint, arguing both that the complaint is too fact-specific to sustain class action status and too sweeping in its scope to constitute a manageable class action.

We should decline this invitation at this juncture. As a general matter, Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike pleadings and provides, in part, that:

> (f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f).

While rulings on motions to strike rest in the sound discretion of the court, Von Bulow v. Von Bulow, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987), that discretion is guided by certain basic principles. Because striking a pleading is viewed as a

drastic remedy, such motions are "generally disfavored." <u>Kaiser Aluminum &</u>

<u>Chemical Sales, Inc. v. Avondale Shipyards, Inc.</u>, 677 F.2d 1045, 1057 (5th Cir.

1982). As one court has aptly observed:

> [S]triking a party's pleadings is an extreme measure, and, as a result, . . . "[m]otions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted." <u>Lunsford v. United States</u>, 570 F.2d 221, 229 (8th Cir.1977) (citing 5 <u>Wright & Miller, Federal Practice and Procedure. Civil</u> § 1380 at 783 (1969)). <u>See also</u>, <u>Resolution Trust Corp. v. Gibson</u>, 829 F.Supp. 1103, 1106 (W.D. Mo.1993); 2 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 12.37[1] (3d ed. 2000).

<u>Stanbury Law Firm v. I.R.S.</u>, 221 F.3d 1059, 1063 (8th Cir. 2000). In practice,

generally courts should exercise this discretion and strike pleadings only when those

pleadings are both "redundant, immaterial, impertinent, or scandalous" and unfairly

prejudicial to the opposing party. <u>Ruby v. Davis Foods, Inc.</u>, 269 F.3d 818, 820 (7th

Cir. 2001).

These cautionary principles apply with particular force to motions to strike

class action allegations based upon the pleadings alone. With respect to such

motions, it has been said as a general rule that:

> It is unlikely that a defendant can show the class allegations constitute "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter[,]" FED. R. CIV. P. 12(f), that should be stricken from the complaint. <u>See</u> Timothy A. Daniels, <u>Challenging Class Certification at the Pleading Stage: What Rule Should Govern and What Standard Should Apply?</u>, 56 S. Tex. L. Rev. 241, 264 (2014) ("A complaint seeking class certification certainly does not raise an 'insufficient defense,' nor does it typically contain 'redundant,' 'impertinent,' or 'scandalous' matters."). It is recognized, however, that "[a]n order granting a motion to strike class allegations is tantamount

10

to a denial of class certification after a motion to certify.' " Smith v. Merial Ltd., No. 10-cv-439, 2012 WL 2020361, at *6 (D.N.J. June 5, 2012) (quoting 1 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS § 3:4 (15th ed. 2018)); Richardson v. Verde Energy USA, Inc., 354 F.Supp.3d 639, 654 (E.D. Pa. 2018) ("[A] motion to strike is 'for all practical purposes, identical to an opposition to a motion for class certification.") (quoting Korman v. The Walking Co., 503 F.Supp.2d 755, 762-63 (E.D. Pa. 2007)); Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 110 n.2 (4th Cir. 2013) ("[W]e have jurisdiction to review the district court's grant of Family Dollar's motion to dismiss or strike the class allegations because the district court's ruling is the functional equivalent of denying a motion to certify the case as a class action.") (citing In re Bemis Co., Inc., 279 F.3d 419, 421 (7th Cir. 2002) (holding the rejection of a position in an answer with respect to whether class treatment was suitable in a case was the "functional equivalent" of denying a motion for class certification)). Thus, a court's consideration of a motion to strike class allegations should not be analyzed [solely] under Rule 12(f) under which the movant the burden of proof; rather, a court should [also] consider a motion to strike class allegations under the pertinent provisions of Rule 23, which governs class certification.

In re Ry. Indus. Emp. No-Poach Antitrust Litig., 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019). However, even when we are invited to review these allegations under the guiding principles defined by Rule 23, we should proceed cautiously when asked to strike class allegations from a pleading without the benefit of a full factual record. In this setting, it has long been recognized that:

To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a "rigorous analysis." In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 309 (3d Cir.2008). In doing so, a "court may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.' " Id. at 316 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 167 (3d Cir.2001)). Particularly when a court considers predominance, it may have to venture into the territory of a

11

claim's merits and evaluate the nature of the evidence. Id. at 310–11. In most cases, some level of discovery is essential to such an evaluation. In Weiss v. Regal Collections, 385 F.3d 337 (3d Cir. 2004), we emphasized the importance of discovery as part of the class certification process. "It seems appropriate," we said, "that the class action process should be able to 'play out' according to the directives of Rule 23 and should permit due deliberation by the parties and the court on the class certification issues." Weiss, 385 F.3d at 347–48 (footnote omitted). Accordingly, "[a]llowing time for limited discovery supporting certification motions may ... be necessary for sound judicial administration." Id. at 347 n. 17.

Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011). Thus, as a general rule motions to strike class action claims should be granted only in "the rare few where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Id. at 93 n. 30.

This caution is driven by the very nature of class action determinations. Class actions, which the Supreme Court has recognized "serve an important function in our system of justice," Gulf Oil Co. v. Barnard, 452 U.S. 89, 99 (1981), are governed by Rule 23 of the Federal Rules of Civil Procedure. "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiff's and counsel's ability to fairly and adequately protect class interests." In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 308 (3d Cir. 1998) (quoting In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig., 55 F.3d 768, 799 (3d Cir. 1995)).While Rule 23 calls upon us to determine class certification issues "[a]t an early practicable time after a person

12

sues or is sued as a class representative," Fed. R. Civ. P. 23(c)(1)(A), the class

certification process fact-intensive and calls upon us to examine whether:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The very nature of this fact-bound inquiry is such that it is rarely amenable to

a resolution on the pleadings alone. Simply put, questions of numerosity,

commonality, typicality, and adequacy of representation routinely require factual

development and may only be resolved based solely upon the pleadings in extremely

rare cases.

In our view, this is not one of those rare cases where class certification could

be denied through the expedient of striking class action averments at the outset of

the litigation as legally insufficient. Fairly construed, the plaintiffs' amended

complaint describes a widespread pattern of behavior by this student loan servicer

which systematically harms borrowers to the economic advantage of the defendants.

The amended complaint makes it clear that the putative class of affected student

loaner borrowers is significant and so widespread that joinder of individual plaintiffs

is impracticable. Further, the various alleged methods used to disadvantage student

borrowers are described as falling in several common patterns, thus satisfying Rule

13

23's commonality requirement as a matter of pleading. In addition, the assertions made by the individual plaintiffs indicate that their personal experience may be typical of that experienced many other putative class members. Finally, given the skill and vigor with which these claims have been pursued by the plaintiffs and their counsel, it cannot be said that it is apparent on the face of the complaint that Rule 23's adequacy of representation requirement is not satisfied here.

Simply put, if the evidence supports what the plaintiffs have alleged, then class certification may well be appropriate here. Given this fact, striking these class allegations without the benefit of class discovery would be premature and improper. Therefore this motion to strike should be denied.

### B. **Motion to Dismiss Standard of Review**

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.

14

2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has

15

underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court

16

must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129

17

S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

C. **The Defendants' Motion to Dismiss Should be Granted in Part and Denied in Part**

1. **The Motion to Dismiss the Plaintiffs' Breach of Contract Claims Should Be Denied, but the Motion Should Be Granted as to the Plaintiffs' Tortious Interference with Contract Claim.**

At the outset, the plaintiffs' amended complaint brings breach of contract claims on behalf of the putative class. These claims are premised upon the notion that Navient's IDR loan processing practices violate both the loan servicing agreement between Navient and the Department of Education, as well as the promissory note between the student and Department of Education. Thus, these breach of contract claims are grounded, in part, upon the idea that the student borrowers are third party beneficiaries to Navient's servicing contract with the Department of Education. In their motion to dismiss, Navient challenges this legal premise, arguing as a matter of law that the plaintiff student-borrowers are not third party beneficiaries to the loan servicer agreement between Navient and the Department of Education. We disagree.

The principles which govern the third party beneficiary doctrine in government contract cases are familiar ones. At the outset, "[f]ederal law governs the interpretation of contracts entered pursuant to federal law where the federal government is a party." GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n, 671 F.3d 1027, 1032 (9th Cir. 2012) quoting

19

Chickaloon–Moose Creek Native Ass'n, Inc. v. Norton, 360 F.3d 972, 980 (9th

Cir.2004).

> Under federal common law, this court looks to "general principles for interpreting contracts." Klamath Water Users Prot. Assoc. v. Patterson, 204 F.3d 1206, 1210 (9th Cir.1999). One such general principle is that only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach. See Far West Fed. Bank, S.B. v. Office of Thrift Supervision–Dir., 119 F.3d 1358, 1363 (9th Cir.1997).

GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship, 671 F.3d at 1033.

These general principles of contract law are embodied in the Restatement,

Second, Contracts, including:

> Restatement (Second) of Contracts § 302, which allows for third-party intended beneficiaries to sue for breach of contract "even though the actual parties to the contract did not express an intent to benefit the third party." Shumate v. Twin Tier Hospitality, LLC, 655 F. Supp. 2d 521, 535 (M.D. Pa. 2009) (quoting Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 168 (3d Cir. 2008)). Section 302 provides that:

>> (1) Unless otherwise agreed between promisor and promise, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

>> (a) the performance of the promise will satisfy an obligation of the promise to pay money to the beneficiary; or

>> (b) the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance.

20

To meet the requirements, a plaintiff must satisfy a two-prong test:

> (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promise to pay money to the beneficiary" or "the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance."

Id. (quoting Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs., 39 F. Supp. 2d 517, 535 (M.D. Pa. 1999)) (citing Scarpitti v. Weborg, 530 Pa. 366, 609 A.2d 147, 150 (1992)) (quoting Guy v. Liederbach, 501 Pa. 47, 459 A.2d 744, 751 (1983)). The first element is essentially one of standing, which is a matter for the Court to determine. Williams Controls, 39 F. Supp. 2d at 535.

The second question distinguishes intended third-party beneficiaries, who have rights enforceable under Section 302, from incidental third-party beneficiaries, who do not have rights under Section 302. Id.

New Prime, Inc. v. Brandon Balchune Constr., No. 3:14-CV-2410, 2017 WL 2114556, at *4 (M.D. Pa. Apr. 27, 2017), report and recommendation adopted sub nom. New Prime, Inc. v. Brandon Balchune Constr. Co., No. 3:14-CV-2410, 2017 WL 2113733 (M.D. Pa. May 15, 2017). Beyond these general principles defining third party beneficiaries to an agreement, Section 313(2) of the Restatement provides for third-party liability under a government contract when "a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach." Restatement (Second) Contracts, § 313(2).

Here, it seems that the parties to the loan servicing agreement specifically contemplated third party lawsuits for breaches of Navient's servicing duties since the 2014 modification of the servicing agreement specifically alluded to such lawsuits, stating that:

> The contractor shall provide a complete copy of any complaint served on the contractor in a lawsuit by an individual for conduct alleged to have occurred in the course of servicing activity under the contract. . . . The contractor need not provide such a complaint if the contractor determines that the conduct alleged did not occur in the course of the contractor's servicing activities under the contract. . . .

(Doc. 45, at 32). Further, federal law expressly recognized the potential, and exclusive, liability of Navient to student borrowers as a loan servicer when it provided that the Department of Education was authorized to:

> prescribe such regulations as may be necessary to carry out the purposes of this part, including regulations applicable to third party servicers (including regulations concerning financial responsibility standards for, and the assessment of liabilities for program violations against, such servicers) to establish minimum standards with respect to sound management and accountability of programs under this part, except that in no case shall damages be assessed against the United States for the actions or inactions of such servicers.

20 U.S.C. § 1082(a)(1). Thus, the loan servicing agreement, and federal law, both seem to expressly contemplate that Navient will perform its loan servicing duties in accordance with federal regulations to the benefit of student borrowers. Further, it is apparent that the contract and the statutes contemplate potential third party liability by Navient to these student borrowers. As such, the student borrowers have plausibly

22

alleged that they qualify as third party beneficiaries under this servicing agreement and therefore are entitled to assert breach of contract claims if Navient breaches its duties to them under that agreement.

We note that we are not alone in embracing this view. For example, in <u>Olsen v. Nelnet, Inc.</u>, 392 F. Supp. 3d 1006, 1014–15 (D. Neb. 2019), the court applied the third party beneficiary doctrine to a similar student loan contracting dispute, holding that:

> The amended complaint alleges that the servicing contract requires the defendants to comply with the regulations governing the Department of Education's income-based repayment plan program found at 34 C.F.R. § 685.221. Filing 37 at 11-12. The purpose for this program is to give a borrower experiencing a partial financial hardship the opportunity to pay a portion of their student loan debt, and with successful participation in a plan, qualify for loan forgiveness. <u>Id</u>. The plaintiffs plausibly allege facts showing that the servicing contract, by reference to the relevant federal regulations, contemplated that borrowers, like the plaintiffs, may experience financial hardship. To address that likelihood, a program was devised to specifically benefit such borrowers by providing an affordable loan repayment plan along with possible debt forgiveness upon successful completion of the repayment plan. The Court finds that the plaintiffs have sufficiently alleged facts showing that their interests, as financially distressed borrowers, were contemplated and the contract provision allowing for affordable repayment plans was made for them as well as other similarly situated financially distressed borrowers. The Court finds that the plaintiffs have sufficiently alleged facts showing that they are third-party beneficiaries of the servicing contract between the Department of Education and the defendants.

<u>Id.</u>

23

Likewise, we believe that the plaintiffs have plausibly alleged breach of contract claims pursuant to the promissory agreement between the student borrowers and the United States. As we read the plaintiffs' amended complaint, it asserts that there has been a partial assignment of the promissory notes' loan servicing obligations from the United States to Navient. Given these averments, as a matter of pleading the amended complaint sufficiently alleges that there is privity of contract between the borrowers and Navient under the promissory notes to allow this claim to proceed forward. See e.g., Mirandette v. Nelnet, Inc., 720 F. App'x 288, 293 (6th Cir. 2018); Olsen v. Nelnet, Inc., 392 F. Supp. 3d 1006, 1017 (D. Neb. 2019).[1]

While we find that the plaintiffs have plausibly alleged breach of contract claims based upon their third party beneficiary status under Navient's servicing contract and the partial assignment by the United States of the promissory note loan servicing obligations to Navient, we note that the plaintiffs have pleaded in the

---

[1] The defendants have also sought to dismiss Navient from this lawsuit, arguing that the plaintiffs' amended complaint fails to sufficiently allege an agency relationship between Navient and its alleged agent, NSL. (Doc. 40, at 23-24). At this stage, however, where we are confined to an assessment of the adequacy of the plaintiffs' pleadings as opposed to an evaluation of the sufficiency of their proof, we conclude that the plaintiffs have plausibly alleged an agency relationship between Navient and NSL. At the motion to dismiss stage, nothing further is necessary to sustain this claim since our review is cabined by the well-pleaded facts in this case. See Brit. Telecommunications PLC v. IAC/InteractiveCorp, 356 F. Supp. 3d 405, 412 (D. Del. 2019). The question of whether the plaintiffs can prove what they have pleaded regarding an agency relationship between NSL and Navient must await another day.

alternative that Navient has tortiously interfered with these contracts through its alleged mishandling of these loans. In our view, this averment warrants only brief consideration. The fact that we have found in favor of the plaintiffs on their breach of contract claims means that this tortious interference with contract claim fails since it is well established that Navient "as a party to the contract, may not tortiously interfere with the contract." Motise v. Parrish, 297 F. App'x 149, 152 (3d Cir. 2008) (citing CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d Cir. 2004) (stating requirements for tortious interference with contract under Pennsylvania law)). Therefore, the plaintiffs' success on their breach of contract claims compels the dismissal of this tort claim.

### 2. **The Breach of Contract Claims in the Amended Complaint Are Not Subject to Dismissal under Rule 19**

The defendants have also moved to dismiss the breach of contract claims on the grounds that the plaintiffs have failed to name the Department of Education, a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure, as a defendant. Rule 12(b)(7) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). A motion to dismiss based the alleged failure to join an indispensable party under Rule 19 necessarily involves both legal analysis and a careful, searching evaluation of the factual circumstances in a case. Accordingly:

In reviewing a Rule 12(b)(7) motion to dismiss, the court must accept

all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. <u>Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc.</u>, 669 F.Supp.2d 613, 618 (W.D. Pa. 2009). A court making a Rule 19 determination may consider evidence outside the pleadings. <u>Id.</u> (citing <u>Jurimex Kommerz Transit G.M.B.H. v. Case Corp.</u>, 201 F.R.D. 337, 339–40 (D. Del. 2001)). The moving party bears the burden of showing that a nonparty is both necessary and indispensable. <u>Pittsburgh Logistics</u>, 669 F.Supp.2d at 618 (citing <u>Develcom Funding, LLC v. Am. Atl. Co.</u>, Civ. A. No. 09–1839, 2009 WL 2923064, *2 (D.N.J. Sept. 9, 2009)).

<u>State Auto. Mut. Ins. Co. v. Frameworkers.com, Inc.</u>, No. CIV.A. 11-3271, 2011 WL 3204838, at *2 (E.D. Pa. July 27, 2011).

With respect to the fact-specific inquiry called for by Rule 19, that rule, in turn, defines parties who must be joined in litigation in the following terms:

> Under Rule 19(a), the joinder of parties is compulsory or "necessary" if their joinder is "feasible." Specifically, the rule states in material part:
>
>> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
>
> Courts treat clauses (1) and (2) in the disjunctive just as the rule phrases them. <u>See</u> <u>Koppers</u>, 158 F.3d at 175 ("As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied, the absent party is a necessary party that should be joined if possible."). Additionally, ..., a holding that joinder is compulsory under Rule 19(a) is a necessary predicate to a district court's discretionary determination under Rule

26

19(b) that it must dismiss a case because joinder is not feasible (i.e.,
will defeat diversity) and the party is indispensable to the just resolution
of the controversy. See Janney Montgomery Scott, 11 F.3d at 405.

Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312–13 (3d Cir. 2007).

Yet, while Rule 19's definition of "necessary" parties defines the first step in

any analysis of a motion to dismiss for failure to join "indispensable parties," there

is a necessary second step to this analysis. In conducting this analysis:

> [W]e first must determine whether the absent [non-joined parties]
> should be joined as "necessary" parties under Rule 19(a). If they should
> be joined, but their joinder is not feasible inasmuch as it would defeat
> diversity of citizenship ..., we next must determine whether the absent
> parties are "indispensable" under Rule 19(b). Should we answer this
> question in the affirmative, the action cannot go forward. Janney
> Montgomery Scott, 11 F.3d at 404 (citing Bank of Am. Nat'l Trust &
> Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1053–54 (3d
> Cir. 1988)).
>
> Put another way, [only] a finding of indispensability under Rule 19(b)
> necessitates dismissal for lack of subject matter jurisdiction. Under
> Rule 19(b), the four factors listed, though not exhaustive, are "the most
> important considerations" in determining whether a party is
> indispensable. Gardiner v. V.I. Water & Power Auth., 145 F.3d 635,
> 640 (3d Cir. 1998). These factors are: first, to what extent a judgment
> rendered in the person's absence might be prejudicial to the person or
> those already parties; second, the extent to which, by protective
> provisions in the judgment, by the shaping of relief, or other measures,
> the prejudice can be lessened or avoided; third, whether a judgment
> rendered in the person's absence will be adequate; fourth, whether the
> plaintiff will have an adequate remedy if the action is dismissed for non
> joinder. Fed. R. Civ. P. 19(b).

Gen. Refractories Co., 500 F.3d at 312, 319.

These two related determinations regarding whether: first, joinder of party is

27

"necessary" under Rule 19, and, second, whether that non-joined party is also "indispensable," compelling dismissal of an action, are governed by separate legal standards of review. Thus, to the extent that the court premises its decision on a Rule 19(a) determination that the absent party's joinder was "necessary," this conclusion of law is subject to plenary review. Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir.1993). By contrast, the district court's Rule 19(b) determination that absent parties are indispensable, and dismissal is required because their joinder would destroy subject matter jurisdiction in diversity, rests in the sound discretion of the court and will be set aside only upon an abuse of discretion. Gen. Refractories Co., 500 F.3d at 312.

In our view, Navient errs when it suggests that the Department of Education is a necessary and indispensable party in this lawsuit. We reach this conclusion cognizant of the fact that in the regulatory and contractual regime which governs student loan processing, the Department of Education plays a significant role. Nonetheless, in our view this significant role does not mean that the Department of Education is a necessary and indispensable party in this case as that term is defined by Rule 19.

The Department of Education is not a necessary and indispensable party for several reasons. First, at bottom, this amended complaint alleges widespread loan servicing errors by Navient and seeks both compensatory and punitive damages from

28

Navient. Given the relief sought here—damages from Navient—the Department of Education simply cannot be deemed a necessary party under Rule 19 since it cannot be said that in the Department's "absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Quite the contrary, federal law makes it clear that liability for student loan servicing errors rests exclusively with the loan servicer and the Department of Education cannot be held civilly liable for damages in this setting. Specifically, 20 U.S.C. § 1082(a)(1), which defines the powers and responsibilities of the Department of Education in this field, provides that this agency may:

> (1) prescribe such regulations as may be necessary to carry out the purposes of this part, including regulations applicable to third party servicers (including regulations concerning financial responsibility standards for, and the assessment of liabilities for program violations against, such servicers) to establish minimum standards with respect to sound management and accountability of programs under this part, *except that in no case shall damages be assessed against the United States for the actions or inactions of such servicers.*

Id. (emphasis added).

Given this explicit statutory prohibition forbidding assessment of damages against the United States for errors by student loan servicers like Navient, the Department of Education's absence from this litigation simply does not deny the putative plaintiffs complete relief. Nor would the failure to join the Department of Education as a defendant in any way prejudice the parties to this litigation or deny the putative plaintiffs an adequate judgment in the event that they prevailed in this

29

lawsuit. Further, we believe that, while the Department of Education is not a necessary party in this lawsuit, nothing would prevent the joinder of the Department of Education as a party in this case if the current parties deemed joinder to be appropriate. Therefore, under Rule 19(a) and (b), the Department of Education is not deemed to be either a necessary or indispensable party, and the defendants' efforts to dismiss this count of the complaint under Rule 19 should be denied.

### 3. **The Plaintiffs' State Consumer Protection Law Claims Also Survive.**

Finally, in their motion to dismiss the defendants attack the legal sufficiency of the various state consumer protection law claims asserted by the plaintiffs under Pennsylvania, California, Illinois, and New York law. Once again, at this preliminary stage of this litigation, where our consideration is limited to an evaluation of the sufficiency of the plaintiffs' pleadings, we are constrained to disagree.

Our disagreement with Navient and reluctance to dismiss these state consumer law claims at this early stage of the litigation is driven, to a large degree, by caselaw construing these various state consumer protection statutes. In many of these jurisdictions, courts have declined to dismiss state law consumer protection claims that have arisen in the context of student loan servicing disputes. For example, in a companion case involving Navient, this court has declined to dismiss a claim brought under Pennsylvania's Unfair Trade Practices and Consumer Protection Law

30

based solely upon the pleadings. <u>Pennsylvania v. Navient Corp.</u>, 354 F. Supp. 3d 529, 559 (M.D. Pa. 2018), <u>aff'd,</u> 967 F.3d 273 (3d Cir. 2020). Similarly, it has been held that a claim under the Illinois Consumer Fraud and Deceptive Practices Act may be grounded upon misleading and unfair student loan servicing practices. <u>See</u> <u>Nelson v. Great Lakes Educ. Loan Servs., Inc.</u>, 928 F.3d 639, 642 (7th Cir. 2019). Likewise, N.Y. Business Law § 349, which protects consumers from "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state," has also been applied to prohibit deceptive student loan servicing practices. <u>Travis v. Navient Corp.</u>, 460 F. Supp. 3d 269, 285 (E.D.N.Y. 2020). Further, while the question of whether California's consumer protection statute applies to loan services is the subject of some dispute, <u>compare</u> <u>Jamison v. Bank of Am., N.A.</u>, 194 F. Supp. 3d 1022, 1030 (E.D. Cal. 2016) <u>with</u> <u>Poghosyan v. First Fin. Asset Mgmt., Inc.</u>, 2020 WL 433083, at *3 (E.D. Cal. Jan. 28, 2020), at this juncture we agree with those courts that have "decline[d] to preemptively cabin a statute that, by design, is to be construed and applied liberally." <u>Poghosyan</u> 2020 WL 433083, at *3 n.1. Therefore, we recommend that the motion to dismiss these state law claims also be denied at this time.

## IV.   <u>Recommendation</u>

For the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss and to strike class allegations (Doc. 39), be GRANTED, in part,

31

and DENIED, in part, as follows: The motion to strike the class action allegations should be DENIED; the motion to dismiss be GRANTED as to the tortious interference with contract claim; and the motion to dismiss should be DENIED in all other respects.

The parties are hereby placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations, or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 31st day of March, 2021.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

32