# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL BALLARD, on behalf of herself and the class members described herein, | : : | |
| Plaintiffs | : | CIVIL ACTION NO. 3:18-121 |
| v. | : | (JUDGE MANNION) |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC. AND NAVIENT SOLUTIONS, LLC., | : : | |
| Defendants | : | |

## **O R D E R**

Pending before the court is the report of United States Magistrate Judge Martin C. Carlson, which recommends that the defendants' motion to dismiss and to strike class allegations (Doc. 39), be granted, in part, and denied, in part. Specifically, Judge Carlson recommends the motion to strike the class action allegations should be denied; the motion to dismiss be granted as to the tortious interference with contract claim; and the motion to dismiss should be denied in all other respects. (Doc. 56). No objections have been filed to the report.

Where no objection is made to a report and recommendation, the court should, as a matter of good practice, "satisfy itself that there is no clear error

on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also <u>Univac Dental Co. v. Dentsply Intern., Inc.</u>, 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing <u>Henderson v. Carlson</u>, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

The uncontested factual background of the instant action is set forth as follows:

> Our analysis of the instant motion is governed by the well-pleaded facts in the amended complaint. By way of introduction, the amended complaint explains that:
>
> 2. Student loan debt is now the largest category of non-housing related consumer debt in the United States with more than $1.34 trillion outstanding at the end of June 2017. The overwhelming majority of student loans in the United States are owned or guaranteed by the federal government through the U.S. Department of Education.
>
> 3. Since June 2009, Defendant Navient Corp. and its predecessors in interest, through their subsidiaries, Navient Solutions, LLC ("NSL") and Navient Solutions, Inc. ("NSI") acting in the capacity of agents on behalf of their principal, Navient Corp., have served as one of four primary servicers of federal student loan debt.

4. Loan servicers who contract with the Department of Education perform all tasks associated with loan repayment, such as collecting payments, responding to customer service inquiries, providing loan documents to borrowers, handling applications for loan deferment or forbearance based on financial hardship, and administering repayment programs designed to help borrowers effectively manage the increasing cost of higher education. These programs include the various Income-Driven Repayment Plans ("IDR plans") offered by the federal government, which provide qualifying borrowers with relief from student loan debt by adjusting their payments to a reasonably affordable amount based on their income, occupation, and family size. Borrowers enrolled in IDR plans can also apply to have their federal loans forgiven after a certain number of payments.

5. Navient Corp. and its predecessors in interest, and/or their duly appointed agents, NSL and NSI, received and continue to receive monthly servicing fees for the federal loans that they administer. Thus, Navient Corp. has a strong financial interest in keeping loans active for as long as possible to continue collecting these monthly fees. To that end, Navient Corp. and its predecessors in interest, through their duly appointed agents, NSL and NSI, delayed or failed to process IDR plan applications in order to generate additional monthly servicing fees. Because loan payments only count toward forgiveness once a borrower's application is processed, this practice extended the duration of loans in the various IDR programs, and injured borrowers who were required to make additional payments on loans that otherwise would have been forgiven at an earlier date.

6. Navient Corp. and its predecessors in interest, through their duly appointed agents, NSL and NSI, also improperly placed borrowers making timely loan payments into deferment or forbearance status–a designation typically reserved for situations where the borrower seeks relief from its payment obligations due to financial hardship. Borrowers who are in deferment or forbearance cannot make qualifying payments that count towards loan forgiveness under the various IDR plans, even though Navient Corp. continues to collect fees on servicing their loans. Thus, Navient Corp.'s abuse of the deferment and

forbearance process, through its agents, NSL and NSI, improperly increased Navient Corp.'s revenue and extended the duration of the borrowers' loans in the various IDR programs. Moreover, at the conclusion of each forbearance, any accrued interest is "capitalized," or added to the borrower's principal loan balance, which may increase the borrower's debt considerably. Thus, Navient Corp.'s abuse of the forbearance process, through its agents, NSL and NSI, improperly increased the principal loan balance of its borrowers, putting them deeper and deeper into debt.

7. Navient Corp. had a financial incentive to increase its borrowers' loan balances because two of its subsidiaries – Pioneer Credit Recovery ("Pioneer") and General Revenue Corporation ("GRC") – provide collection and rehabilitation services on defaulted federal student loans. Under the current compensation structure for companies that provide such rehabilitation services, collectors earn nearly $40 in compensation for every $1 in cash recovered through certain rehabilitations. (Id., ¶¶ 2-7). According to the plaintiffs' complaint, Navient has a documented, and widespread, history of mishandling student loan IDR requests and accounts and has been the subject of thousands of complaints over its deficiencies in the processing of these accounts. (Id., ¶¶ 9-14).

Cast against this factual backdrop, the plaintiffs' amended complaint sets forth in their pleading a series of detailed substantive factual averments. (Id., ¶¶ 43-86). These averments explain that, with the rising cost of college education, students seeking higher education opportunities have been compelled to increasingly rely upon student loans to finance their education. (Id., ¶¶ 43-44). These loans then come with an array of repayment plans.

Burdened by academic debt, many student loan borrowers cannot afford the monthly payments prescribed by standard repayment plans and must turn to various income-driven repayment plans. (Id., ¶¶ 45-47). Such income-driven repayment plans, or IDRs, must be renewed annually by the student, and the failure to timely renew the IDR can result in increased

payments and added interest expense. (Id.) In order to assist students loan borrowers in avoiding these financial-penalties, student loan servicers are required to timely process IDR requests within 10 to 15 business days. (Id., ¶ 48). In contrast to these IDR plans, student loan borrowers may also be placed into a temporary loan forbearance status by loan servicers. Such temporary forbearance is more lucrative for the loan servicer, according to the plaintiffs, but has financial disadvantages for the borrowers. (Id., ¶ 49).

The plaintiffs allege that Navient's financial incentives for mishandling student IDR applications and accounts stem from the structure of its contract with the Department of Education. (Id., ¶¶ 50-55). That contract compensates Navient on a per unit basis for the student loan accounts it manages, and pays Navient at a higher rate for accounts that are in forbearance, thus creating incentives to place accounts in forbearance status and minimize the number of accounts which are forgiven or discharged. (Id.)

The amended complaint then details the experience of the three named plaintiffs with Navient as their loan servicer. (Id., ¶¶ 56-86). In each instance it is alleged that Navient mishandled the named plaintiffs' IDR account by failing to meet processing deadlines, improperly placing accounts in forbearance status, erroneously capitalizing interest payments, and failing to acknowledge and process timely student borrower IDR renewal applications. (Id.)

(Doc. 56, pp. 2-5).

Judge Carlson proceeds to outline the class action allegations, which relate to a nationwide class, in addition to California, New York and Illinois classes, as well as the seven claims and causes of action the plaintiffs have brought on behalf of themselves and the putative classes that they claim to represent. The plaintiffs' claims include breach of contract claims alleging

that Navient's conduct has violated the terms of both its contract with the Department of Education, as well as student promissory notes. Moreover, the plaintiffs allege that Navient's IDR loan processing practices tortiously interfere with these contracts. The plaintiffs also allege five causes of action based upon California, Pennsylvania, Illinois, and New York consumer protection statutes. The plaintiffs request that the court certify this class action, find that Navient's actions are unlawful, enjoin these practices, and award the plaintiff class compensatory and punitive damages along with attorneys' fees.

In their motion to dismiss, defendants seek to strike the plaintiffs' class action allegations. Considering Fed.R.Civ.P. 12(f) and related case law as applied to class action allegations, Judge Carlson has determined that, if the evidence supports what the plaintiffs have alleged, then class certification may well be appropriate here. Given this, he determined that striking the plaintiffs' class allegations without the benefit of class discovery would be premature and improper, and as such, the defendants' motion to strike should be denied.

The defendants' motion also seeks to dismiss the plaintiffs' breach of contract and tortious interference of contract claims. In considering the arguments related to these claims, Judge Carlson has determined that the

loan servicing agreement and federal law both seem to expressly contemplate that Navient will perform its loan servicing duties in accordance with federal regulations to the benefit of student borrowers, and that the contract and the statutes contemplate potential third party liability by Navient to these student borrowers. As such, Judge Carlson found that the student borrowers have plausibly alleged that they qualify as third party beneficiaries under this servicing agreement and are entitled to assert breach of contract claims if Navient breaches its duties to them under that agreement. Further, Judge Carlson determined that the plaintiffs have plausibly alleged breach of contract claims pursuant to the promissory agreement between the student borrowers and the United States which would allow the plaintiffs' claims to go forward at this stage of the proceedings.

To the extent that the plaintiffs allege in the alternative that Navient tortiously interfered with the contracts, Judge Carlson determined that the fact that there was a favorable ruling on the plaintiffs' breach of contract claims means that the tortious interference with contract claim fails, since it is well established that Navient cannot tortiously interfere with a contract to which it was a party. As such, Judge Carlson recommends that this claim be dismissed.

To the extent the defendants argue that the breach of contract claims are subject to dismissal under Fed.R.Civ.P. 19 because the plaintiffs have failed to name the Department of Education, a necessary and indispensable party, Judge Carlson has determined that, given the explicit statutory prohibition forbidding assessment of damages against the United States for errors by student loan servicers like Navient, the Department of Education's absence from this litigation simply does not deny the putative plaintiffs complete relief. Moreover, Judge Carlson determined that the failure to join the Department of Education as a defendant would not in any way prejudice the parties to this litigation or deny the putative plaintiffs an adequate judgment in the event that they prevailed in this lawsuit. Finally, Judge Carlson determined that, while the Department of Education is not a necessary party in this lawsuit, nothing would prevent the joinder of the Department of Education as a party in this case if the current parties deemed joinder to be appropriate. As such, he found that, under Fed.R.Civ.P. 19(a) and (b), the Department of Education is neither a necessary nor indispensable party.

Finally, to the extent defendants seek to have plaintiffs' state consumer protection law claims dismissed, Judge Carlson determined that the

allegations of the plaintiffs' amended complaint are sufficient considering caselaw construing these various state consumer protection statutes.

The court has carefully considered the defendants' motion to dismiss and related materials, as well as Judge Carlson's rulings on the matters raised therein, and finds no clear error of law. Moreover, the court agrees with the sound reasoning which has led Judge Carlson to the conclusions in his report. As such, the report and recommendation will be adopted in its entirety as the opinion of the court.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**(1)** The report and recommendation of Judge Carlson **(Doc. 56)** is **ADOPTED IN ITS ENTIRETY AS THE RULING OF THE COURT**.

**(2)** The defendants' motion to dismiss and to strike class allegations **(Doc. 39)** will be **GRANTED, IN PART, AND DENIED, IN PART**.

**(3)** The motion to strike the class action allegations will be **DENIED**.

**(4)** The motion to dismiss be **GRANTED** as to the tortious interference with contract claim and **DENIED** in all other respects.

**(5)** The instant action is **REMANDED** to Judge Carlson for all future pre-trial proceedings.

                                                      *s/ Malachy E. Mannion*
                                                      **MALACHY E. MANNION**
                                                      **United States District Judge**

**DATE: April 28, 2021**
18-121-03