# **ATTACHMENT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JILL BALLARD, REBECCA VARNO,    )
and MARK POKORNI, on behalf of    )
themselves and the class members    )
described herein,    )    Docket 3:18-cv-00121-MEM-MCC
    )
    Plaintiffs,    )    (Judge Malachy E. Mannion)
    )
v.    )    (Magistrate Judge Martin C.
    )    Carlson)
NAVIENT CORPORATION,    )
NAVIENT SOLUTIONS, INC., and    )
NAVIENT SOLUTIONS, LLC,    )    ELECTRONICALLY FILED

    Defendants.

## SECOND AMENDED COMPLAINT – CLASS ACTION

1.    Plaintiffs Jill Ballard, Rebecca Varno, and Mark Pokorni bring suit against Defendants, NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., and NAVIENT SOLUTIONS, LLC, alleging that Defendants 1) breached their servicing contract with the federal government, of which Plaintiffs were third party beneficiaries; 2) breached and/or tortiously interfered with written agreements between the federal government and Plaintiffs; and 3) violated various state and federal laws in connection with the servicing of Plaintiffs' federal student loans.  Plaintiffs allege the following upon personal knowledge as to themselves, and upon information and belief as to all other matters, based on, among other things, the investigation of their counsel.

## <u>NATURE OF THE ACTION</u>

2.    Student loan debt is now the largest category of non-housing related consumer debt in the United States with more than $1.34 trillion outstanding at the end of June 2017. The overwhelming majority of student loans in the United States are owned or guaranteed by the federal government through the U.S. Department of Education.

3.    Since June 2009, Defendant Navient Corp. and its predecessors in interest, through their subsidiaries, Navient Solutions, LLC ("NSL") and Navient Solutions, Inc. ("NSI") acting in the capacity of agents on behalf of their principal, Navient Corp., have served as one of four primary servicers of federal student loan debt.

4.    Loan servicers who contract with the Department of Education perform all tasks associated with loan repayment, such as collecting payments, responding to customer service inquiries, providing loan documents to borrowers, handling applications for loan deferment or forbearance based on financial hardship, and administering repayment programs designed to help borrowers effectively manage the increasing cost of higher education. These programs include the various Income-Driven Repayment Plans ("IDR plans") offered by the federal government, which provide qualifying borrowers with relief from student loan debt by adjusting their payments to a reasonably affordable amount based on

2

their income, occupation, and family size. Borrowers enrolled in IDR plans can also apply to have their federal loans forgiven after a certain number of payments.

5.     Navient Corp. and its predecessors in interest, and/or their duly appointed agents, NSL and NSI, received and continue to receive monthly servicing fees for the federal loans that they administer.  Thus, Navient Corp. has a strong financial interest in keeping loans active for as long as possible to continue collecting these monthly fees.  To that end, Navient Corp. and its predecessors in interest, through their duly appointed agents, NSL and NSI, delayed or failed to process IDR plan applications in order to generate additional monthly servicing fees.  Because loan payments only count toward forgiveness once a borrower's application is processed, this practice extended the duration of loans in the various IDR programs, and injured borrowers who were required to make additional payments on loans that otherwise would have been forgiven at an earlier date.

6.     Navient Corp. and its predecessors in interest, through their duly appointed agents, NSL and NSI, also improperly placed borrowers making timely loan payments into deferment or forbearance status – a designation typically reserved for situations where the borrower seeks relief from its payment obligations due to financial hardship. Borrowers who are in deferment or forbearance cannot make qualifying payments that count towards loan forgiveness under the various IDR plans, even though Navient Corp. continues to collect fees

3

for servicing their loans. Thus, Navient Corp.'s abuse of the deferment and forbearance process, through its agents, NSL and NSI, improperly increased Navient Corp.'s revenue and extended the duration of the borrowers' loans in the various IDR programs. Moreover, at the conclusion of each forbearance, any accrued interest is "capitalized," or added to the borrower's principal loan balance, which may increase the borrower's debt considerably. Thus, Navient Corp.'s abuse of the forbearance process, through its agents, NSL and NSI, improperly increased the principal loan balance of its borrowers, putting them deeper and deeper into debt.

7.     Navient Corp. had a financial incentive to increase its borrowers' loan balances because two of its subsidiaries – Pioneer Credit Recovery ("Pioneer") and General Revenue Corporation ("GRC") – provide collection and rehabilitation services on defaulted federal student loans. Under the current compensation structure for companies that provide such rehabilitation services, collectors earn nearly $40 in compensation for every $1 in cash recovered through certain rehabilitations. *See* Annual Report of the CFPB Ombudsman, October 2016, p.5 available at [https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/102016_cfpb_Transmittal_DFA_1035_Student_Loan_Ombudsman_Report.pdf](https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/102016_cfpb_Transmittal_DFA_1035_Student_Loan_Ombudsman_Report.pdf) (last visited May 11, 2018). Federal law also permits collectors to recover "reasonable collection costs" from a borrower by assessing a fee of up to 16

percent of the unpaid principal and accrued interest. *Id*.  In other words, the higher the principal balance is on a defaulted loan, the more Pioneer and GRC are paid for collecting that loan.  Thus, Navient Corp. had a financial incentive to increase borrowers' loan balances, making its collection and rehabilitation services more profitable if and when borrowers went into default.

8.    According to an analysis by the Consumer Federation of America, more than 3,000 borrowers default on their federal student loans every day.  *See* Tom Anderson, *More than 1.1 million borrowers defaulted on their federal student loans last year*, CNBC, available at https://www.cnbc.com/2017/03/14/more-than-11-million-borrowers-defaulted-on-their-federal-student-loans-last-year.html   (last visited May 11, 2018).  Moreover, the number of people who have defaulted on their federal student loans increased by seventeen percent from 2015 to 2016.  *Id*. Thus, by increasing student loan balances across the board, Navient Corp., through its agents, NSL and NSI, was able to generate far higher collection fees on the many loans that defaulted.  Accordingly, the CFPB has raised the question of "whether the economic incentives that drive collector and servicer practices throughout the default-to-IDR transition are properly aligned."  *See* Annual Report of   the   CFPB   Ombudsman,   October   2016,   available   at https://www.consumerfinance.gov/about-us/blog/cfpb-ombudsmans-office-2016-annual-report/ (last visited May 3, 2018).

9.     Reports published by the Consumer Financial Protection Bureau ("CFPB") describe complaints from borrowers nationwide of identical, widespread misconduct by Navient in its exploitation of the various IDR programs. Specifically, the Student Loan Ombudsman of the Consumer Financial Protection Bureau ("CFPB") received 3,900 complaints from federal student loan borrowers between March 1, 2016 and August 31, 2016 relating to problems managing or repaying federal student loans. *See* Annual Report of the CFPB Ombudsman report, October 2016, available at https://www.consumerfinance.gov/about-us/blog/cfpb-ombudsmans-office-2016-annual-report/ (last visited May 3, 2018). An analysis of these complaints found that consumers with student loans identified a range of problems with customer service, borrower communications, and IDR plan enrollment. *Id.*

10.    An analysis of 1,062 consumer complaints made against the top ten student loan servicers found that the most commonly cited issue was problems involving the processing and management of IDR plans. *Id.* Indeed, 12% of all borrower complaints filed against Navient between March 1, 2016 and August 31, 2016 related to the processing and management of IDR plans. *Id.*

11.    Between March 1, 2016 and August 31, 2016, the CFPB received more complaints from federal student loan borrowers against Navient than against any other loan servicer, with a total of 812 complaints. *Id.*

6

12.     Between September 1, 2016 and August 31, 2017, the CFPB handled approximately 12,900 federal student loan complaints.  *See* Annual Report of the CFPB    Ombudsman    report,    October    2017,    available    at https://www.consumerfinance.gov/data-research/research-reports/annual-report-cfpb-student-loan-ombudsman-2017/. According to the CFPB's report of these complaints, *"*borrowers seeking to enroll in IDR plans submitted complaints to the Bureau describing a range of servicing practices that delayed or deterred access to promised payment relief." *Id*. A recurring complaint detailed in the report was student loan servicers' "unfair practice of denying, or failing to approve, IDR applications that should have been approved on a regular basis." *Id.* One specific example of this was Navient's practice of rejecting forms income documentation that were acceptable under federal guidelines.

13.     Between September 1, 2016 and August 31, 2017, the federal loan servicer that generated the highest number of written complaints from its borrowers was "Navient," with a total 6,274 complaints, which accounted for 61% of all complaints made by federal student loan borrowers. *Id*.

14.     The CFPB's 2017 report also noted the following: "Borrowers report experiencing servicing obstacles when trying to enroll in an IDR plan, such as unexpected delays, lost paperwork, poor customer service, and inconsistent application processing. Borrowers describe how these obstacles can increase loan

7

costs, reduce benefits, and extend repayment terms for consumers." *Id*.

15.    The aforementioned practices caused borrowers to suffer measurable financial harm when: (a) the duration of their loans was extended; (b) interest accrued on the principal balance of loans during unnecessary periods of deferment or forbearance; (c) monthly payments under IDR programs were billed at inaccurate levels; and (d) borrowers were charged additional fees due to the delay in processing their applications for IDR programs.  As a result, Plaintiffs and the Class have: lost out on months or years of qualifying loan payments that would have brought them closer to loan forgiveness under their IDR programs; been overcharged; or been otherwise disadvantaged when they were unable to utilize federal programs designed to make their education more affordable.

16.    Based on the continuing complaints described by the CFPB and pervasive nature of the misconduct set forth herein, Plaintiffs believe that further evidentiary support for their claims will be revealed after a reasonable opportunity for discovery.

### PLAINTIFF – JILL BALLARD

17.    Jill Ballard is a resident of San Diego, California, where she resided at all times relevant hereto. Between 2004 and 2008 she took out a series of federal "Stafford" loans.  Each of these loans is governed by a federal promissory note,

attached as Exhibit A.  The promissory note states that it is to be governed by applicable federal law, as well as state law that is not preempted by federal law.

**PLAINTIFF – REBECCA VARNO**

18.     Rebecca Varno is a resident of Schenectady, New York, where she resided at all times relevant hereto.  In 2006, she combined her multiple federal student loans into a federal consolidation loan.  The terms of the consolidation loan are set forth in a federal promissory note, attached as Exhibit B.  The note provides that it is to be governed by applicable federal law, as well as state law that is not preempted by federal law.

**PLAINTIFF – MARK POKORNI**

19.     Mark Pokorni is a resident of Chicago, Illinois, where he resided at all times relevant hereto.  In 2006, he combined his multiple federal student loans into a federal consolidation loan.  The terms of the consolidation loan are set forth in a federal promissory note, attached as Exhibit C. The note provides that it is to be governed by applicable federal law, as well as state law that is not preempted by federal law.

**DEFENDANTS**

20.     In 1972, Congress created a government sponsored enterprise ("GSE"), the Student Loan Marketing Association (commonly referred to as "Sallie Mae"), to support the guaranteed student loan program created by the

9

Higher Education Act of 1965 ("HEA"). In 1984, Sallie Mae became a publicly-traded company, trading under the ticker symbol SLM.

21.   In or around 1997, SLM Holding Corporation was established, marking the beginning of Sallie Mae's transition from a GSE to a private company. As part of that process, SLM Holding Corporation eventually became SLM Corp.

22.   By 2004 Sallie Mae had become fully privatized, with SLM Corp. as the parent company of Sallie Mae Inc., a subsidiary that was responsible for most of the company's federal loan servicing and collections businesses.

23.   From 2004 until April 2014, SLM Corp. and its subsidiaries operated through one corporate structure that originated loans issued under the Federal Family Education Loan Program ("FFELP"). SLM Corp. developed and implemented lending policies; marketed student loan packages to schools and students; funded and distributed loans; and serviced and collected loans. In 2014, however, these business activities were split into two separate corporate structures.

24.   In April of 2014, the former SLM Corporation separated into two publicly-traded entities: Defendant Navient Corporation ("Navient Corp."), a loan servicing and debt collection business, and a new SLM Corporation, a private student lending business.

25.    According to Navient Corp.'s Section 10-K filings with the Securities and Exchange Commission, SLM Corp. was merged into a limited liability company and became a subsidiary of Navient Corp., changing its name to "Navient, LLC."  On October 16, 2014, Navient, LLC was merged with and into Navient Corp., which became the surviving corporation.

26.    Navient Corp. is an independent, publicly traded company that operates the loan management, servicing and asset recovery businesses previously operated by SLM Corp.

27.    According to Navient Corp.'s Section 10-K filings with the Securities and Exchange Commission, Navient Corp. is comprised primarily of a portfolio of education loans that were previously held by SLM Corp., as well as servicing and asset recovery activities related to those loans.

28.    Pursuant to the terms of the 2014 split, Navient Corp. assumed responsibility for liabilities resulting from the pre-reorganization conduct of SLM Corp. and its subsidiaries related to the servicing of federal student loans.

29.    The 2014 corporate split provided for the transfer of Sallie Mae, Inc. – which had previously been responsible for most of SLM Corp.'s loan servicing and collections businesses – to Navient Corp. and its subsidiaries. Sallie Mae, Inc. then changed its name to Navient Solutions, Inc. (''NSI'').

11

30.     According to Navient Corp.'s Section 10-K filings with the Securities and Exchange Commission, NSI, which is a wholly owned subsidiary of Navient Corp., serviced substantially all of the latter's education loans.

31.     As of January 31, 2017, in connection with an internal corporate reorganization, NSI changed its name to Navient Solutions, LLC ("NSL").

32.     Navient Corp.'s 2014 10-K filings with the SEC, available at https://www.sec.gov/Archives/edgar/data/1593538/000119312515070145/d832950 d10k.htm (last visited May 3, 2018), includes the following statements regarding Navient Corp.'s loan servicing operations:

    a.     "Since the second quarter of 2009, we have been one of four large servicers awarded a servicing contract by ED to service federal loans owned by ED. We service approximately 6.2 million accounts under this servicing contract as of December 31, 2014. The servicing contract spans five years with the possibility of one five-year renewal at the option of ED. On August 27, 2014, ED extended its servicing contract with Navient to service federal loans for five more years." *Id*. at 8.

    b.     "Navient services its own portfolio of education loans, as well as those owned by banks, credit unions, non-profit education lenders and ED. Navient is one of four large servicers to ED under its Direct Student Loan Program ("DSLP")." *Id.*

12

c.    "Navient services loans for more than 12 million [Direct Student Loan Program] Loan, FFELP Loan and Private Education Loan customers (including cosigners), including 6.2 million customer accounts serviced under Navient's contract with ED." *Id* at 4.

d.    "We have been a partner in ED's campaign to inform federal student loan customers about income-driven repayment plans, and have played a leadership role in helping customers understand their options and make an informed choice." *Id*.

e.    "Navient is currently the largest servicer and collector of loans made under the FFELP program, and the majority of our income has been derived, directly or indirectly, from our portfolio of FFELP Loans and servicing we have provided for FFELP Loans." *Id*. at 6.

## JURISDICTION AND VENUE

33.    This Court has subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this lawsuit has been brought as a class action on behalf of proposed classes each in excess of 100 members; the aggregate claims of the Class members exceed $5 million exclusive of interest and costs; and one or more of the members of each Class is a citizen of a different state than one or more Defendants.

### PERSONAL JURISDICTION

13

34.    SLM Corp. was a signatory to a 2009 servicing contract with the Department of Education, under which Plaintiffs' federal student loans were serviced.   *See* Exhibit D, page 1 (designating "SLM Corporation" as the "contractor/offeror.")   On the contract, SLM Corp. listed its address as, "c/o Monetary Processing, P.O. Box 4600, Wilkes Barre, PA 187734600." *See id.*

35.    As part of SLM Corp.'s 2014 corporate reorganization, SLM Corp. was merged into a limited liability company and became a subsidiary of Navient Corp., changing its name to "Navient, LLC."

36.    On August 27, 2014, Navient, LLC entered into a written agreement with the Department of Education, modifying and extending the 2009 servicing contract.   *See* 2014 Modification of Contract, attached as Exhibit E. On the contract, Navient, LLC listed its address as, "c/o Monetary Processing, P.O. Box 4600, Wilkes Barre, PA 187734600." *See id.*

37.    On October 16, 2014, Navient, LLC was merged with and into Navient Corp., which became the surviving corporation.  As a result of this merger, the assets and liabilities associated with the loan management and servicing businesses of SLM Corp. – and subsequently of Navient, LLC – were transferred directly to Navient Corp.  Thus, Navient Corp. is the direct successor of interest in

the 2009 servicing contract, as modified and extended in 2014, and is liable for any breaches thereof, both before and after, by its own acts or those of its agents.

38.    NSL and NSI are subsidiaries of Navient Corp. that acted in the capacity of agents on behalf of their principal, Navient Corp., in the performance of the latter's obligations under the servicing contract.

39.    Pursuant to their obligations under the servicing contract, Navient Corp. and/or its predecessors in interest, through their duly appointed agents, NSL and NSI, have purposefully availed themselves of the privilege of conducting business in this District in the following ways:

      a.    servicing Plaintiffs' loans in this District;

      b.    directing Plaintiffs to send account-related correspondence to this District;

      c.    processing Plaintiffs' loan payments in this District;

      d.    processing Plaintiffs' repayment plan applications in this District; and

      e.    providing Plaintiffs with telephone customer assistance from this District.

40.    Plaintiffs' causes of action arise from the following commercial activities that Navient Corp. and/or its predecessors in interest have

purposefully directed to, and performed within, this District through their duly appointed agents, NSL and NSI:

     a.    Improperly delaying the processing of Plaintiff Jill Ballard's IDR plan renewal application in November and December of 2013 (*see* Jill Ballard's letter to "Sallie Mae" dated February 11, 2014, attached as Exhibit F);

     b.    Improperly cancelling Plaintiff Jill Ballard's income-driven repayment amount in 2014 in violation of federal law;

     c.    Improperly billing Plaintiff Jill Ballard an excessive amount of $902.55 in 2014 in violation of federal law;

     d.    Improperly delaying the processing of Plaintiff Rebecca Varno's IDR application in 2017 (*see* Rebecca Varno's IDR plan request dated April 18, 2017, attached as Exhibit G);

     e.    Improperly cancelling Plaintiff Rebecca Varno's income-driven repayment amount in 2017 in violation of federal law;

     f.    Improperly placing Plaintiff Rebecca Varno's loans into forbearance status pursuant to a phone call with a Navient representative that took place at a call center located in Wilkes-Barre, Pennsylvania, which was owned and operated by Navient Corp. and/or its agents, NSL and NSI; and

g.      Improperly delaying the processing of Plaintiff Mark Pokorni's IDR plan application  in February of 2016.

41.     In addition to the foregoing, Navient Corp. and/or its predecessors in interest, through their duly appointed agents, NSL and NSI, have maintained regular, continuous, and systematic contacts with citizens of this District in the following ways:

a.      operating a major national call center in Wilkes-Barre, Pennsylvania, where customer service representatives provide student loan borrowers with telephone assistance;

b.      maintaining offices in Wilkes-Barre, Pennsylvania, where loan servicing functions, such as the processing of payment and borrower applications, are performed; and

c.      receiving and processing mail in Wilkes-Barre, Pennsylvania, where borrowers are directed to send loan payments, repayment plan applications, and all account-related correspondence.

## VENUE

42.     Venue is proper in this District pursuant to 28 U.S.C. § 139l(b) because a substantial part of the events or omissions giving rise to the unlawful conduct alleged in this Complaint occurred in this District, as set forth above.

## SUBSTANTIVE ALLEGATIONS

17

43.    The average annual cost of higher education in the United States has increased at a significantly greater rate than inflation for several decades. For example, a recent study by the College Board shows that the inflation-adjusted cost of attending a private four-year, public four year, or public two-year institution has more than tripled since 1970.  See *Tuition and Fees and Room and Board over Time*, Table 2, (Released 2017), The CollegeBoard, available at https://trends.collegeboard.org/college-pricing/figures-tables/tuition-fees-room-and-board-over-time (last visited May 3, 2018).

44.    Students have increasingly come to rely on student loans to pay for their higher education.  The overwhelming majority of student loans in the United States are owned or guaranteed by the federal government through the U.S. Department of Education.  They come with an array of repayment options to fit a student borrower's short-term and long-term needs.

45.    The "standard repayment plan" for federal student loans is the default payment plan.  Under the standard repayment plan, monthly payments are calculated such that the borrower's balance is fully paid within 10-30 years. Many borrowers who cannot afford payments under the standard plan enroll in various IDR plans that offer significantly lower monthly payments.  For instance, under the "Income Based Repayment" plan, the borrower's monthly payments are capped at fifteen percent of discretionary income, and the remaining debt is

18

discharged after twenty-five years of qualifying payments.  Under some IDR plans, monthly payments can be as low as zero dollars per month.

46.     When borrowers enroll in an IDR plan, the plan is effective for a one-year period.  To renew the plan for each subsequent year, borrowers must annually recertify their income by submitting a new IDR request form with proof of income to their loan servicer.

47.     Two to three months prior to the expiration of the IDR plan, the loan servicer must send the borrower a written notice of the "annual deadline" by which the borrower must recertify the plan in order to continuing making income-driven payments. This notice must include the consequences of failing to renew the IDR plan by the stated deadline.  One of these consequences includes an increase in monthly payments from a low affordable amount to the amount dictated by the standard ten-year repayment plan. *See* 34 C.F.R. § 682.215 (e)(7). Additionally, any accrued interest is capitalized, or added to the borrower's principal loan balance, when an IDR plan is not timely renewed before its expiration.  *See* 34 C.F.R. § 682.215 (b)(5).

48.     In view of these consequences, federal law provides certain protections for borrowers enrolled in IDR plans.  First, when the loan servicer receives a borrower's timely request to renew the plan, the loan servicer is prohibited from cancelling the borrower's income-driven payment amount while

19

the request is being processed.   Rather, the loan servicer "must maintain the borrower's current scheduled monthly payment amount" until the request has been fully processed.   *See* 34 C.F.R. § 682.215 (e)(8)(ii). Second, the loan servicer must "promptly" determine the new monthly payment amount.   *See* 34 C.F.R. § 682.215 (e)(8)(i).   To that end, the Department of Education has directed loan servicers to process IDR requests within 10-15 business days.   *See* Danielle Douglas-Gabriel, *Delays. Backlogs. Confusing applications. Obama's latest student loan plan is having growing pains*.   Washington   Post,   Apr.   5,   2016, https://www.washingtonpost.com/news/grade-point/wp/2016/04/05/delays-backlogs-confusing-applications-obamas-latest-student-loan-plan-is-having-growing-pains/?utm_term=.194acfbabf88 (last visited May 21, 2018); *see also* U.S. Department of Education, Memorandum from U.S. Department of Education Under Secretary Ted Mitchell on Policy Direction on Federal Student Loan Servicing (July 20, 2016), available at http://www2.ed.gov/documents/press-releases/loanservicing-policy-memo.pdf. (last visited May 3, 2018).

49.    In contrast to IDR plans, which provide affordable monthly payments, borrowers may have their loans placed into discretionary forbearance status.   *See* 34 C.F.R. §682.211(a).   This allows borrowers to temporarily cease making

payments during periods of hardship.[1]  *See id*.  A loan servicer may only apply a discretionary forbearance "upon receipt of a request and sufficient supporting documentation from a borrower." *See* 34 CFR § 682.211 (h)(2).

50.   The only time a discretionary forbearance may be applied *without* the borrower's written consent is after the borrower's loans have gone into default status, but before the loans have been transferred to collections. *See* 34 CFR § 682.211 (d)(1). In this situation, a limited, 120-day forbearance may be based on the borrower's "oral affirmation." *Id*. at (d)(2)(i).

51.   Discretionary forbearances, however, delay progress toward loan forgiveness and can be very costly for borrower.  This is because any unpaid interest that accrues during the forbearance gets "capitalized," or added to the borrower's loan balance.  *See* 34 C.F.R. 682.211(a)(4).

52.   On the other hand, there is one type of forbearance that is specifically authorized when a non-defaulted borrower's IDR application is being processed: a 60-day administrative forbearance when the loan servicer is processing paperwork in connection with a borrower's request to make a "change in repayment plan." *See*

---

[1] Although the regulation does not use the word "discretionary," Navient uses the term "discretionary hardship" when referring to forbearances used when a borrower is "unable to make their payments" due to "financial hardship." (Exhibit N, Stine dep., p. 33, ll. 2-12). Accordingly, Plaintiffs use the term "discretionary forbearance" when referring to forbearances based on the borrower's financial hardship.

34 CFR 682.211(f)(11). With an administrative forbearance, any interest that accrues during the 60-day forbearance period "is not capitalized." *Id*.

53.   <u>Enrolling borrowers in discretionary forbearances is </u>highly lucrative for the loan servicer because they extend the period of repayment, generating additional monthly servicing fees.  Moreover, for loan servicers that also provide collection and rehabilitation services for defaulted loans, the capitalization of interest after a discretionary forbearance increases the collection costs that may later be assessed on the borrower if and when the loan goes into default.

### NAVIENT CORP.'S CONTRACT WITH THE DEPARTMENT OF EDUCATION

54.   The Department of Education awarded SLM Corp. a servicing contract in 2009 ("servicing contract"). *See* servicing contract attached as Exhibit D.  The servicing contract continues to be in force to the present, subject to various modifications.   As a result of the 2014 corporate reorganization, Navient Corp. became the entity directly responsible for fulfilling the obligations owed to the Department of Education under the servicing contract.

55.   The servicing contract requires Navient Corp. to maintain a full understanding of all applicable federal regulations, meet all statutory and legislative requirements, and ensure that all aspects of the service continue to remain in compliance as changes occur.  It also states that borrowers whose loans are not being serviced in compliance with the "requirements, policy and

22

procedures" for servicing federally held debt will not be billable to the Government from the initial point of non-compliance. *Id*. at page 12.

56.     Under the servicing contract, the Department of Education pays Navient Corp. and/or its agents, NSL and NSI, an average monthly fee for each of the borrowers that Navient Corp. services. That fee depends on the status of the loan and the total volume of loans from the category being serviced. For example, the contract's fee schedule is represented in the table below. This table includes a "unit price," or monthly payment due to the loan servicer, for loans in seven different status categories, including "in-school status," "grace or current repayment status," "deferment or forbearance," and varying durations of delinquency:

**FIGURE 1**

| Status | Volume Low | Volume High | Unit Price |
|--------|-----------|-------------|------------|
| Borrowers in in-school status | N/A | N/A | $1.05 |
| Borrowers in grace or current repayment status | 1 | 3,000,000 | $2.11 |
| | 3,000,001 | UP | $1.90 |
| Borrowers in deferment or forbearance | 1 | 1,600,000 | $2.07 |
| | 1,600,000 | UP | $1.73 |
| Borrowers 31-90 days delinquent | N/A | N/A | $1.62 |
| Borrowers 91-150 days delinquent | N/A | N/A | $1.50 |
| Borrowers 151-270 days | N/A | N/A | $1.37 |

| delinquent | | | |
|---|---|---|---|
| Borrowers 270+ days delinquent | N/A | N/A | $0.50 |

57.     As illustrated in Figure 1, Navient Corp. and/or its agents, NSL and NSI, are compensated on a "per unit" basis, with a directly proportional relationship between revenue and the number of borrowers that maintain an active loan balance. This fee structure gives Navient Corp. a financial incentive to maintain or increase the number of borrowers in its portfolio, while minimizing the number of borrowers who successfully earn loan forgiveness or otherwise discharge their loans. These loan programs are supposed to benefit borrowers by making higher education more affordable. However, helping borrowers get out of debt sooner directly conflicted with Navient Corp.'s own financial interest in keeping loans active for as long as possible to continue collecting monthly servicing fees.  In other words, while borrowers enroll in IDR plans to earn loan forgiveness, and maintain affordable monthly loan payments, Navient Corp. has the opposite incentive: to keep loans active for as long as possible to continue earning servicing fees.  From Navient Corp.'s perspective, every time a borrower repays her loan in full, or receives loan forgiveness under one of the federal programs it administers, Navient Corp. loses a loan from its servicer portfolio, a vital source of its revenue.

58.    The servicing contract also created a financial incentive to place borrowers into deferment or forbearance status to further increase servicing fees. For example, Figure 1 shows that the unit price paid to Navient Corp., and or its agents, NSL and NSI, for servicing each loan depends on its status (*e.g.*, current repayment, deferment, or forbearance) and the total number of loans in its portfolio that are part of the same category.  Under the fee schedule, once the total amount of loans in active repayment or grace period status exceeded 3,000,001, Navient Corp. received a *lower* unit price per loan than it did for loans in deferment or forbearance. Thus, once the 3,000,001-loan threshold was reached, each loan that Navient Corp. moved from active repayment or grace period status into deferment or forbearance generated additional revenue, even though this move prevented borrowers from making qualified payments toward loan forgiveness. (The Department of Education subsequently revised the contract in 2014 to remove this incentive by lowering the amount it paid for loans in deferment or forbearance to an amount below that of loans in active repayment.  However, it maintained the same overall structure of compensating Navient Corp. based on the number of loans in its portfolio, continuing to motivate Navient Corp. to ensure that borrowers remained in debt as long as possible.)

59.    The failure of Navient Corp., through its agents, NSL and NSI, to timely and properly process IDR plan applications deprived borrowers of the

opportunity to make qualifying monthly payments that count toward loan forgiveness. To accommodate these processing delays, and increase its own revenue, Navient Corp., through its agents, NSL and NSI, puts borrowers' accounts into deferment or forbearance status under circumstances that are not permitted by federal law, which prevented these borrowers from making monthly payments. These borrowers have therefore lost out on months or years that would otherwise count toward achieving loan forgiveness.

## CLASS REPRESENTATIVE ALLEGATIONS – JILL BALLARD

60.     Jill Ballard's college education was financed by federal loans issued pursuant to the FFELP program.  She completed her college education in 2008, and her loans went into deferment status until 2012, at which time she entered into repayment.  At or around that time, Ms. Ballard submitted an IDR request form and proof of income to her designated loan servicer, SLM Corp., which serviced her loans through its agent/subsidiary, Sallie Mae, Inc.  Ms. Ballard sent her IDR request to Post Office Box 9500 in Wilkes-Barre, Pennsylvania, the address designated as Sallie Mae's correspondence address.

61.     Sallie Mae processed Ms. Ballard's IDR request at its offices in Wilkes-Barre, Pennsylvania.  The request was approved, and Ms. Ballard was enrolled in the Income-Based Repayment Plan (IBR plan), with monthly payments based on her income level.  The IBR plan would remain in effect for one year, and

would expire on January 22, 2014 unless timely renewed.  The deadline to renew the plan for the following year was December 18, 2013.  Several weeks prior to the annual deadline, Ms. Ballard mailed in her IDR renewal form to Post Office Box 9500 in Wilkes-Barre, Pennsylvania.

62.     In early February of 2014, SLM Corp., through its agent, Sallie Mae Inc., sent Ms. Ballard a letter notifying her that her income-based payments were cancelled because she did not submit her IDR renewal request before the annual deadline.  The letter indicated that Ms. Ballard would now be required to make monthly payments of $902.55 (under the standard ten-year repayment plan) beginning on February 22, 2014.   Accordingly, Ms. Ballard sent a one-time payment of $902.55 to Sallie Mae Inc.'s "Borrower Payment Address" of Post Office Box 9533 in Wilkes-Barre, Pennsylvania, where said payment was processed.

63.     On February 11, 2014, Ms. Ballard sent an additional IDR request form to Post Office Box 9500 in Wilkes-Barre, Pennsylvania, the address designated as Sallie Mae's correspondence address.   The request form was accompanied by a letter explaining that Ms. Ballard had already mailed in these materials several weeks earlier.   *See* Jill Ballard's letter to "Sallie Mae" dated February 11, 2014, attached as Exhibit F.  SLM Corp. received and processed Ms.

Ballard's second IDR request at its offices in Wilkes-Barre, and the IDR plan was eventually renewed.

64.    On November 26, 2017, Navient sent Ms. Ballard an account summary which showed $15,295.10 in capitalized interest.   *See* November 26, 2017 statement, attached as Exbibit H.   This figure included $4,686.57 that was added to Ms. Ballard's principal loan balance as a result of Navient's processing delay in 2014.

65.    In or around November of 2017, Ms. Ballard called the customer service telephone line of Navient, which had since replaced SLM Corp. as her loan servicer, to inquire as to the basis of this charge. She spoke with a Navient representative employed at Navient's call center in Wilkes-Barre, Pennsylvania. The representative informed Ms. Ballard that she incurred an "interest capitalization" because her IDR plan was not renewed prior the annual deadline. The representative also advised that the IDR request form that Ms. Ballard submitted in 2013 was received on November 25, 2013, well before the renewal deadline.   Nonetheless, $4,686.57 was added to Ms. Ballard's principal loan balance because SLM Corp., through its agent, Sallie Mae. Inc., failed to timely process her IDR request.

66.    In or around December of 2017, Ms. Ballard sent a written complaint to Post Office Box 9600 in Wilkes-Barre, Pennsylvania, the correspondence

address for Navient's Office of Consumer Advocate.  The letter indicated that the interest capitalization in the amount of $4,686.57, which was processed on January 22, 2014, was in error.  *See* Jill Ballard's letter to Sallie Mae, attached as Exhibit F.

67.    Ms. Ballard's complaint was reviewed and processed at Navient's "Office of the Customer Advocate" in Wilkes-Barre, Pennsylvania.  On December 20, 2017, Jeri N. Russell, a representative from this office, informed Ms. Ballard in writing that the interest capitalization of $4,686.57 was determined to be improper, and that this amount would be deducted from her principal loan balance.  *See* Letter from Jeri N. Russell, attached as Exhibit I.  The refund was processed at Defendants' offices in Wilkes-Barre, Pennsylvania.

68.    On December 25, 2017, Navient Corp., individually or through its agent, NSL, sent Ms. Ballard a billing statement showing an unpaid principal balance of $85,852.85.  *See* December 25, 2017 Account Statement, attached as Exhibit J.  This amount reflected a reduction in principal of $4,276.70 as compared to her previous account statement.  Thus, Navient Corp. failed to refund the full $4,686.57 that it had promised to refund.  Moreover, Navient Corp. has not offered to refund Ms. Ballard's one-time payment of $902.55, for which she was improperly billed.

69.    Under federal law, if a loan servicer receives a borrower's IDR renewal application prior to the annual deadline, the loan servicer is prohibited

29

from switching the borrower to the standard ten-year plan while it processes the application. Rather, the servicer must maintain the borrower's current scheduled monthly payment amount until the new monthly payment amount is calculated. *See* 34 C.F.R. § 682.215 (e)(8)(ii). Ms. Ballard timely submitted her IDR renewal application, but her income-driven payments were nonetheless cancelled due to the processing delays of Navient Corp., through its agents, NSL and NSI, and/or Navient Corp.'s predecessors in interest. This improper removal violated 34 C.F.R. § 682.215 (e)(8)(ii).

70.     By failing to promptly and efficiently process Ms. Ballard's IDR renewal application, Navient Corp., through its agents, NSL and NSI, and/or its predecessors in interest, violated 34 C.F.R. § 682.215 (e)(8)(i).

71.     Because the servicing contract requires compliance with all applicable federal regulations, the aforementioned violations also constitute a breach of the servicing contract, of which Ms. Ballard was an intended third-party beneficiary.

72.     Because Ms. Ballard's promissory note requires compliance with federal law, these statutory violations, committed by Navient Corp., through its agents, NSL and NSI, and/or its predecessors in interest, constituted intentional and tortious interference with the promissory note.

### CLASS REPRESENTATIVE ALLEGATIONS – REBECCA VARNO

73.     In 2016, Rebecca Varno applied to enroll in the Income-Based Repayment plan ("IBR plan") by sending an IDR request form to Navient Corp. and/or its agents, NSL and/or NSI, at their offices in Wilkes-Barre, Pennsylvania.

74.     Navient rejected Varno's application because it was accompanied by only by a single pay statement, rather than two consecutive paystubs. However, federal guidelines require only one piece of documentation per source of income.

75.     Because Varno's first application was improperly rejected, she submitted a second IDR request form with additional proof of income. The second request was approved, and Ms. Varno was enrolled in an IBR plan with monthly payments of approximately $710 per month.  The plan was to remain in effect for a one-year period.

76.     In April of 2017, Ms. Varno submitted an IDR renewal application to Navient's Department of Education Loan Servicing, Post Office Box 9760 in Wilkes-Barre, Pennsylvania, in order to renew her IBR plan for the following year. The IDR request was accompanied by proof of her and her spouse's income.  *See* Rebecca Varno's IDR plan request dated April 18, 2017, attached as Exhibit G. These materials were received by Navient Corp. and/or its duly appointed agent, NSL, prior to the annual renewal deadline.

77.     In May of 2017, Ms. Varno called the Navient customer service line to inquire as to the status of her IBR plan.  A Navient representative, speaking to

Ms. Varno from Defendants' call center in Wilkes-Barre, Pennsylvania, informed Ms. Varno that her renewal application had been approved, but it would not be "applied to her account" for several more months.  Until such time, Ms. Varno's monthly payment amount would be increased to approximately $1,800 under the standard repayment plan. Because she could not afford payments in that amount, Navient Corp., through its duly appointed agent, NSL, placed Ms. Varno's loans into forbearance status until her IBR plan was renewed, even though she never submitted a written request for the forbearance.  This action was taken by Navient Corp., through its agent, NSL, at their offices in Wilkes-Barre, Pennsylvania.  All interest that accrued during this forbearance period was capitalized, or added to Ms. Varno's principal loan balance.

78.    Navient Corp., through its duly appointed agent, NSL, processed Ms. Varno's IDR request at their offices in Wilkes-Barre, Pennsylvania.  They did not, however, renew Ms. Varno's IBR plan until July 16, 2017 – nearly three months after her IDR request had been received – even though the Department of Education had previously directed federal loan servicers to process these requests within 10 business days.  *See* Memo from Ted Mitchell, Undersecretary of Education, available at https://www2.ed.gov/documents/press-releases/loan-servicing-policy-memo.pdf (last visited May 3, 2018).

79.     When a federal loan servicer receives a borrower's timely request to renew an IDR plan, the loan servicer is prohibited from cancelling the borrower's income-based payment amount while the request is being processed.  Rather, the loan servicer "must maintain the borrower's current scheduled monthly payment amount" until the request has been processed.  *See* 34 C.F.R. § 682.215 (e)(8)(ii). By failing to maintain Ms. Varno's income-driven payment amount while her IBR renewal request was under review, Navient Corp., through its agent, NSL, violated federal law.

80.     Navient Corp., through its agent, NSL, also violated federal law by placing Ms. Varno's loans into discretionary forbearance status while it processed her IDR renewal request.   Discretionary forbearances trigger costly interest capitalizations, which increase a borrower's loan balance significantly. Accordingly, such forbearances are not authorized simply to provide loan servicers with additional time to process a borrower's IDR application. Instead, that is when a 60-day administrative forbearance should be used, with no resulting interest capitalization.

81.     Under 34 C.F.R. §682.211(a), a discretionary forbearance is permitted only when the borrower is unable to make scheduled payments "due to poor health or other acceptable reasons."  *Id.*   Ms. Varno was willing and able to make scheduled payments toward her IBR plan, as evidenced by her timely request to

renew the plan, but Navient Corp., through its agent, NSL, failed to process her application in a timely fashion, and improperly increased her payments. Thus, the forbearance was in violation of 34 C.F.R. §682.211(a).

82.    There were other occasions in 2015 and 2016 when Varno was improperly enrolled in discretionary forbearances, even though she was applying for a change in repayment plan, and was therefore entitled to a 60-day administrative forbearance, with no resulting capitalization of interest.

83.    Pursuant to the terms of its servicing contract, Navient Corp. agreed to refrain from any loan services that did not comply with the "requirements, policy and procedures" for servicing federally held debt. By failing to process Ms. Varno's IDR request in a timely fashion, and unlawfully increasing her monthly payments while her application was being processed, Navient Corp., through its agent, NSL, breached the servicing contract.

84.    Because Navient Corp., through its agent, NSL, failed to process Ms. Varno's IDR request in a timely fashion, and placed her loans into forbearance status for approximately three months, she was unable to make any qualifying payments toward loan forgiveness, and the interest that accrued during this period was capitalized, increasing her principal loan balance significantly.

85.    Ms. Varno's federal promissory note required compliance with all applicable federal law. By violating the Department of Education's regulations

and guidelines for the servicing of federal loans, Navient Corp., through its agent, NSL, breached, and intentionally and tortiously interfered with the performance of, Ms. Varno's promissory note.

### CLASS REPRESENTATIVE ALLEGATIONS – MARK POKORNI

86.    On or before February 20, 2016, Mark Pokorni applied for enrollment in the Income-Based Repayment plan by electronically submitting an IDR plan application.  Navient received this application on or before said date.

87.    On February 22, 2016, Navient sent Mr. Pokorni an email stating that it could take between 22 and 25 days to process his IDR application.  *See* February 22, 2016 email, attached as Exhibit K.

88.    On March 11, 2016, Navient sent Mr. Pokorni an email stating, "We wanted to send you this quick update on your recent request for an Income-Driven Repayment Plan.  An unexpected increase in volume has caused us to fall behind on our completion date.  This means your form is still being processed."  *See* March 11, 2016 email, attached as Exhibit L.

89.    On or about April 5, 2016 – *45 days after Navient received Mr. Pokorni's IDR application* – Navient finally processed Mr. Pokorni's IDR plan application.  On or about April 6, 2016, Navient sent Mr. Pokorni an email stating that he had been approved for enrollment in an IBR plan, and that his new monthly

payment amount of $239.01 would be first due on April 13, 2016.  *See* April 6, 2016 email, attached as Exhibit M.

90.     The Department of Education has directed loan servicers to process IDR requests within 10-15 days.  See Danielle Douglas-Gabriel, *Delays. Backlogs. Confusing applications. Obama's latest student loan plan is having growing pains*. Washington Post, Apr. 5, 2016, https://www.washingtonpost.com/news/grade-point/wp/2016/04/05/delays-backlogs-confusing-applications-obamas-latest-student-loan-plan-is-having-growing-pains/?utm_term=.194acfbabf88 (last visited May 21, 2018); *see also* U.S. Department of Education, Memorandum from U.S. Department of Education Under Secretary Ted Mitchell on Policy Direction on Federal Student Loan Servicing (July 20, 2016), available at http://www2.ed.gov/documents/press-releases/loanservicing-policy-memo.pdf. (last visited May 3, 2018).  Thus, Navient's processing period of 45 days was *three to four times greater than the allowable processing period established by DOE guidelines*.

91.     By enrolling Mr. Pokorni in the Income-Based Repayment plan a month and a half after receiving his IDR plan application, Navient Corp., through its agents, NSI and NSL, prevented him from making a qualifying payment toward loan forgiveness in the month of March of 2016, which thereby extended the duration of his loans.  In other words, because Navient delayed the processing of

Mr. Pokorni's IDR plan application, the date on which Mr. Pokorni will become eligible for loan forgiveness has been delayed by a month. This delay, however, also generated an additional monthly servicing fee for Navient Corp.

92.    Mr. Pokorni's loans were placed in forbearance status while his IDR application was being processed. Because all interest that accrues during periods of forbearance is capitalized, a larger sum was added to Mr. Pokorni's principal loan balance than would have been added if the IDR application had been processed within the period established by the Department of Education's guidelines.

93.    Navient's servicing contract states that all loans must be serviced in compliance with the "requirements, policy and procedures" for servicing federally held debt. *See* Exhibit D at page 12. Because Navient Corp., through its agents, NSI and NSL, failed to process Mr. Pokorni's IDR application in accordance with the Department of Education's guidelines, it breached the servicing contract, of which Mr. Pokorni was an intended third-party beneficiary.

94.    Mr. Pokorni's promissory note requires that the servicing of his loans comply with all applicable federal regulations, including the Department of Education's guidelines pertaining to the appropriate processing period for IDR applications. Thus, Navient's failure to process Mr. Pokorni's IDR application in

accordance with the Department's guidelines constitutes a breach of, and tortious

interference with, Mr. Pokorni's promissory note.

**CLASS ACTION ALLEGATIONS**

95.     Plaintiffs bring this action pursuant to Federal Rules of Civil

Procedure 23(a), (b)(2) and (b)(3) on behalf of the following proposed Classes:

**"Improper IDR Cancellation" Class:**

a. The borrower was enrolled in an IDR plan.
b. Prior to the annual renewal deadline, Navient received an IDR renewal application from the borrower to recertify the plan.
c. On or after the passage of the deadline, the borrower's income-driven payments were canceled, and the borrower's accrued interest was capitalized.
d. When the borrower's application was thereafter processed, it was deemed complete and timely, and the IDR plan was recertified.

**California sub-class**: Members of the Class who were living in California when the events stated in subpart c. occurred.

**"Forbearance without Written Consent" Class:**

a. The borrower was enrolled in an IDR plan.
b. The income-driven payments were cancelled when the plan was not renewed before the annual renewal deadline.
c. Within 60 days thereafter, Navient enrolled the borrower in a discretionary forbearance.
d. At the time of enrollment in the discretionary forbearance, the loan was not in default, and Navient had not received a written request from the borrower for a discretionary forbearance.
e. The interest that accrued during the forbearance was capitalized.

**New York sub-class**: Members of the Class who were living in New York when the events stated in subpart c. occurred.

**Illinois sub-class**: Members of the Class who were living in Illinois when the events stated in subpart c. occurred.

**"No Administrative Forbearance" Class:**

a. Navient received notice that the borrower was applying for initial enrollment in an IDR plan, or was changing repayment plans.
b. Within 60 days after receiving such notice, Navient enrolled the borrower in a discretionary interest-capitalizing forbearance.
c. At least some interest that accrued during any part of the 60-day period following such notice was capitalized.

**New York sub-class**: Members of the Class who were living in New York when the events stated in subpart b. occurred.

**"Improper Delay" Class:**

a. The borrower applied to enroll in, or to renew, an IDR plan.
b. The borrower submitted a completed IDR application, accompanied by proof of income, which was subsequently approved by Navient.
c. Navient did not fully process the application until 45 days or more after it was received.

**Illinois sub-class**: Members of the Class who were living in Illinois when the events in subpart c. occurred.

**"Income Documentation" Class:**

a. The borrower was enrolled in an IDR plan.
b. Navient timely received one paystub and the borrower's application to renew the plan.
c. Navient did not process the application.
d. Navient sent the borrower a written communication stating that the application could not be processed because the borrower did not submit two paystubs.
e. That communication did not identify any other deficiency with the application.
f. Thereafter, the borrower's partial financial hardship status expired and the standard repayment plan amount took effect.

**New York sub-class**: Members of the Class who were living in New York when the events stated in subpart f. occurred

96.     The Classes exclude Defendants and any entity in which Defendants have a controlling interest, and their officers, directors, legal representatives, successors and assigns. Also excluded from the Class is the Judge presiding over this action, his or her law clerks, spouse, any other person within the third degree of relationship living in the Judge's household, the spouse of such person, and the United States Government.

97.     The Classes are composed of tens to hundreds of thousands (if not millions) of individuals and thus are so numerous that joinder of all members is impracticable.

98.     The Classes can be readily ascertained through the records maintained by Defendants.

99.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

100.    Plaintiff's claims are typical of the claims of members of the Classes.

101.    As alleged herein, Plaintiff and members of the Classes sustained damages arising out of Defendants' common course of unlawful conduct.  The injuries and damages of each member of the Class were directly caused by

Defendants' wrongful conduct in violation of the laws as alleged herein, and occurred in, and was directed from, this District.

102.   There are questions of law and fact common to the Classes, the answers to which will advance the resolution of the claims of all class members.

103.   These and other questions of law and/or fact are common to the Classes and predominate over any questions affecting only individual class members, including, without limitation:

a.   Whether the Defendants have a common and pervasive practice of misprocessing and delaying applications for IDR plans;

b.   Whether the misconduct of Defendants caused injuries to Plaintiffs and the Class by causing them to pay unnecessary interest, fees, and other charges;

c.   Whether the misconduct of Defendants violates state consumer protection statutes;

d.   Whether the misconduct of Defendants violates the common law;

e.   Whether the misconduct of Defendants constitutes a breach of the servicing contract; and

f.   Whether the misconduct of Defendants constitutes a breach of, and/or tortious interference with, the promissory notes held by federal student loan borrowers.

104. Plaintiffs will fairly and adequately represent and protect the interests of members of the Classes. Plaintiffs have no claims antagonistic to those of members of the Classes. Plaintiffs have retained counsel competent and experienced in complex nationwide class actions, including all aspects of litigation. Plaintiffs' counsel will fairly, adequately and vigorously protect the interests of members of the Classes.

105. Class action status is also warranted under Rule 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many class members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the court system of adjudication of such individualized litigation would be substantial. The prosecution of separate actions by individual members of the Class

would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

106.  Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I – BREACH OF CONTRACT

### (Nationwide Class against Defendants for Breach of the Servicing Contract)

107.  Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

108.  Plaintiffs bring this Count on behalf of members of the Nationwide Classes.

109.  For purposes of this Count, any reference to "Defendants" includes all named Defendants as well as their predecessors in interest.

110.  At all relevant times, Plaintiffs and members of the Nationwide Classes were intended third-party beneficiaries of the servicing contract entered into between Defendants and the Department of Education.

111.  Pursuant to the terms of the servicing contract, Defendants agreed to comply with all applicable federal statutes, regulations, procedures, and policies.

112.   Under the Department of Education's guidelines, IDR plan applications should be processed within 10-15 business days.   Nonetheless, Defendants failed to process Plaintiff Mark Pokorni's IDR application until 45 days after the date on which it was received.   Defendants thereby breached the servicing contract, of which Plaintiff Mark Pokorni was an intended third-party beneficiary.

113.   Under federal law, if a loan servicer receives a borrower's IDR renewal application prior to the annual renewal deadline, the loan servicer is prohibited from billing the borrower under the standard ten-year plan while it processes those materials.   Rather, the servicer must maintain the borrower's current scheduled monthly payment amount until the loan holder determines the new monthly payment amount.

114.   Plaintiffs Jill Ballard and Rebecca Varno timely submitted their IDR renewal applications, but their income-driven payment amounts were nonetheless cancelled due to unreasonable processing delays that were the fault of Defendants. When this occurred, Defendants increased Plaintiffs' monthly payment amounts significantly, and capitalized the accrued interest.

115.   By cancelling Plaintiffs' income-driven payment amount while processing their IDR requests, despite timely submission of the same, Defendants violated 34 C.F.R. § 682.215 (e)(8)(ii).

44

116.    By failing to promptly and efficiently process Plaintiffs' IDR renewal applications, Defendants violated 34 C.F.R. § 682.215 (e)(8)(i).

117.    Because the servicing contract requires compliance with all applicable federal regulations, the aforementioned violations also constitute a breach of the servicing contract.

118.    Because Plaintiffs were intended third-party beneficiaries of the servicing contract, Defendants are liable to Plaintiffs for its breaches thereof.

119.    As a result of Defendants' breaches of the express terms of the servicing contract, Plaintiffs and members of the Nationwide Class have suffered the same sizeable damages, including, but not limited to (i) the difference in the amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with delayed progress towards certain loan forgiveness programs.

120.    Alternatively, even if it is determined that the above misconduct did not constitute a breach of the express terms of the servicing contract, it nonetheless constituted a breach of the covenant of good faith and fair dealing implied in the servicing contract.   And, as a result of this breach, Plaintiffs and members of the Nationwide Class have suffered the same sizeable damages, including, but not

limited to, (i) the difference in the amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with delayed progress towards certain loan forgiveness programs.

## <u>COUNT II – BREACH OF CONTRACT</u>

**(Nationwide Class against Defendants for
Breach of, and/or interference with, the Promissory Note)**

121.  Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

122.  Plaintiffs bring this Count on behalf of members of the Nationwide Classes.

123.  For purposes of this Count, any reference to "Defendants" includes all named Defendants as well as their predecessors in interest.

124.  At all relevant times, Plaintiffs and members of the Nationwide Classes were in a contractual relationship with the federal Department of Education by virtue of their legally binding promissory notes.

125.  The promissory notes require that federal student loans be serviced in accordance with all applicable federal statutes and regulations.

126.   Under the Department of Education's guidelines, IDR plan applications should be processed within 10-15 business days.   Nonetheless, Navient did not process the IDR application of Plaintiff Mark Pokorni until 45 days after the date on which Defendants received it.   Defendants thereby breached, and/o tortiously interfered with, the promissory note.

127.   Under federal law, if a loan servicer receives a borrower's IDR renewal application prior to the annual deadline, the loan servicer is prohibited from switching the borrower to the standard repayment plan while it processes those materials.   Rather, the servicer must maintain the borrower's scheduled monthly payment amount until the new monthly payment amount is determined.

128.   Plaintiffs Jill Ballard and Rebecca Varno made a timely submission of their IDR renewal applications, but their income-driven repayment amounts were nonetheless canceled due to Defendants' unreasonable processing delays.   When this occurred, Defendants billed Plaintiffs under the standard ten-year repayment plan, which imposed significantly higher monthly payments, and triggered costly interest capitalizations.   By failing to promptly and efficiently renew Plaintiffs' IDR plans, and cancelling their income-driven payment amounts in violation of federal law, Defendants breached, and/or tortiously interfered with, Plaintiffs' contracts with the federal government.

129.   The terms of the promissory notes are binding on Defendants.

130.   Even if the promissory notes were not binding on Defendants, Defendants intentionally, tortiously and improperly interfered with the federal government's performance of the promissory notes.

131.   As a result of Defendants' breach of, and/or tortious interference with, Plaintiffs' contracts with the federal government, Plaintiffs and members of the Nationwide Classes have suffered the same sizeable damages, including, but not limited to (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with delayed progress towards certain loan forgiveness programs.

132.   Alternatively, even if it is determined that the above misconduct did not constitute breach of, and/or tortious interference with, the express terms of the promissory note, it nonetheless constituted a breach of, and/or tortious interference with, the covenant of good faith and fair dealing implied therein.  And, as a result, Plaintiffs and members of the Nationwide Class have suffered the same sizeable damages, including, but not limited to (i) the difference in the amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the

48

financial harm associated with delayed progress towards certain loan forgiveness programs.

## COUNT III - VIOLATIONS OF CONSUMER LEGAL REMEDIES ACT

**California Civil Code § 1750 et seq ("CLRA")**
**(Jill Ballard, California Class, Against Defendants)**

133.   Plaintiff Jill Ballard repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

134.   Plaintiff Jill Ballard brings this Count on behalf of members of the California Class.

135.   For purposes of this Count, any reference to "Defendants" includes all named Defendants as well as their predecessors in interest.

136.   Defendants are "persons" within the meaning of California Civil Code § 1761 (c).

137.   Section 1770(a)(14) of the CLRA prohibits representing that a transaction involves obligations that are prohibited by law.

138.   At all times relevant hereto, Defendants represented that their transactions with their borrowers involved obligations that, in fact, are prohibited by law, namely the obligation to make payments under the standard repayment plan when borrowers were under no such obligation.

139.   Section 1770(a)(5) of the CLRA prohibits representing that goods or services have sponsorship or approval that they do not have.  Defendants violated the CLRA by falsely representing that the following actions had the sponsorship or approval of the federal Department of Education:

a.      Cancelling Plaintiff's income-driven payment amount, and billing her under the standard repayment plan, because of Defendants' processing delays; and

b.      capitalizing the accrued interest on Plaintiff's loans because of Defendants' processing delays.

140.   Defendants engaged in this conduct because it increased their revenue through additional monthly servicing fees as well as increased collection fees for defaulted student loans.

141.   As a result of Defendants' violations of the CLRA, Plaintiff and members of the California Class have suffered the same sizeable damages, including, but not limited to (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with delayed progress towards certain loan forgiveness programs.

142.   Plaintiff and members of the California Class seek an order enjoining

Defendants' unfair, unlawful, and/or deceptive practice, declaratory relief, attorney's fees, and any other just and proper relief available under the CLRA.

## COUNT IV - VIOLATIONS OF THE PENNSYLVANIA
## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 Pa. Stat. § 201-1 et seq.

### (Plaintiffs, National Class, Against Defendants)

143.   Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

144.   Plaintiffs bring this Count on behalf of members of the National Classes.

145.   For purposes of this Count, any reference to "Defendants" includes all named Defendants as well as their predecessors in interest.

146.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law prohibits deceptive acts or practices in the conduct of any trade or commerce. This includes representing that goods or services have sponsorship or approval that they do not have.

147.   Defendants violated 73 Pa. Stats. § 201-1 et seq. by falsely representing that the following actions had the approval or sponsorship of the federal government:

   a.      processing Mark Pokorni's IDR application 45 days after the date on which it was received;

51

b.      cancelling the income-driven payment amounts of Jill Ballard and Rebecca Varno because Defendants failed to process their IDR renewal applications in a timely fashion;

c.      delaying the processing and implementation of Plaintiffs' IDR plans;

d.      increasing Jill Ballard's and Rebecca Varno's monthly payment amounts during Defendants' processing delays; and

e.      improperly placing Rebecca Varno's loans into forbearance status during Defendants' processing delays.

148.   All of these actions were decided upon, and misrepresented from Defendants' offices in Pennsylvania.

149.   Defendants engaged in this conduct because it increased their revenue through additional monthly servicing fees as well as increased collection fees for defaulted student loans.

150.   As a result of Defendants' violations, Plaintiffs and members of the National Class have suffered the same sizeable damages, including, but not limited to (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with

delayed progress towards certain loan forgiveness programs.

151.   The corresponding financial benefit to Defendants was received by them at their offices in Pennsylvania.

152.   Plaintiff and members of the Class seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practice, declaratory relief, attorney's fees, and any other just and proper relief available.

## COUNT V - VIOLATIONS NEW YORK GENERAL BUSINESS LAW
### NY GBL Sec. 349

### (Rebecca Varno and the New York Class)

153.   Plaintiff Rebecca Varno repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

154.   Plaintiff Rebecca Varno brings this Count on behalf of members of the New York Classes.

155.   For purposes of this Count, any reference to "Defendants" includes all named Defendants as well as their predecessors in interest.

156.   New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

157.   In the course of Defendants' business, they engaged in the following deceptive acts and practices:

a.      delaying the implementation of Plaintiff's IDR plan for several

months, in violation of federal law, while representing that said actions had the approval of the federal government;

b.    increasing Plaintiff's monthly payment amount while her IDR renewal request was being processed, in violation of federal law, while representing that said action had the approval of the federal government; and

c.    applying a forbearance to Plaintiff's account during the processing of her IDR application, in violation of federal law, while representing to Plaintiff that said action had the approval of the federal government.

158.   Defendants engaged in this conduct because it increased their revenue through additional monthly servicing fees as well as increased collection fees for defaulted student loans.

159.   The actions set forth above occurred in the conduct of trade or commerce.

160.   Because Defendants' deception takes place within the context of the federal student loan program, its affects the public interest.  Further, Defendants' unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

161.   Defendants' conduct proximately caused injuries to Plaintiff and the New York class members.

162.   As a result of these deceptive practices, Plaintiff and members of the New York classes have suffered the same sizeable damages, including, but not limited to (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with delayed progress towards certain loan forgiveness programs.

163.   These injuries are the direct and natural consequence of Defendants' misrepresentations, omissions, and campaign to increase the likelihood of default to generate additional profit.

## COUNT VI - VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILCS 505/2

### (Mark Pokorni and the Illinois Class)

164.   Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

165.   Plaintiff brings this Count on behalf of members of the Illinois Classes.

166.   For purposes of this Count, any reference to "Defendants" includes all named Defendants as well as their predecessors in interest.

167.   Defendants are "person[s]" within the meaning of 815 ILCS 505/1(c).

168.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

169.    In the course of their business, Defendants committed the following unfair and/or deceptive acts or practices in violation of the ICFDBPA:

a.    Deceptively and unfairly representing to Mark Pokorni that his IDR application would be processed in 22-25 days when the Department of Education required that such applications be processed within 10-15 days; and;

b.    deceptively and unfairly representing to Mark Pokorni that the processing of his IDR application could be further delayed due to a "high volume" of applications when, in fact, the Department of Education's applicable guidelines make no such exception.

162.    Defendants knew or should have known that their conduct was unlawful.

56

163.   Defendants' unfair and deceptive practices were material to Plaintiff and members of the Illinois Classes.

164.   Plaintiff and members of the Illinois Classes suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' deceptive and unfair practices, including, but not limited to (i) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (ii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

165.   Defendants' violations present a continuing risk for financial harm to Plaintiff, members of the Classes, and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

166.   Plaintiff and members of the Class seek damages under the ICFDBPA for injury resulting from the direct and natural consequences of Defendants' unlawful conduct.

167.   Plaintiff and members of the Classes also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under the ICFDBPA.

168.   Defendants engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

57

## COUNT VII - VIOLATIONS OF THE ROSENTHAL ACT
## California Civil Code § 1788.17

### (Jill Ballard and the California Class)

169.   Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

170.   Plaintiff brings this Count on behalf of members of the California Class.

171.   For purposes of this Count, any reference to "Defendants" includes all named Defendants as well as their predecessors in interest.

172.   Defendants are "debt collectors" under the Rosenthal Act.

173.   The Rosenthal Act prohibits the false representation that the consumer debt may be increased by the addition of any charges if, in fact, such fees or charges may not legally be added to the existing obligation.  The Rosenthal Act also prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

174.   On November 26, 2017, Navient sent Ms. Ballard an account summary which showed $15,295.10 in capitalized interest.  This figure included $4,686.57 that was unlawfully added to her principal loan balance as a result of Navient's processing delay in 2014.  Accordingly, this false representation violated the Act.

175.   In addition to the foregoing, the Rosenthal Act requires that every debt collector collecting or attempting to collect a debt comply with Sections 1692b through 1692j, inclusive, of Title 15 of the United States Code, commonly referred to as the Fair Debt Collections Practices Act ("FDCPA"), and shall be subject to the remedies in Section 1692k for violations thereof.

176.   Section 1692f of Title 15 of the United States Code prohibits the use of any unfair or unconscionable means to collect or attempt to collect any debt, including the attempt to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

177.   Because the November 26, 2017 statement included $4,686.57 in capitalized interest that was not authorized by the promissory note or permitted by law, it did not comply with 15 U.S.C. § 1692f, and therefore violated the Rosenthal Act.

178.   Section 1692e of Title 15 of the United States Code prohibits the communication to any person of credit information which is known or should be known to be false.  Upon information and belief, as recently as 2017, Defendants reported to credit reporting agencies that Plaintiff's principal loan balance included $4,686.57 which, in fact, was not permitted by law, thereby violating the Rosenthal Act.

179.   As a proximate result of Defendants' violations enumerated above, Plaintiff and members of the California Class have been damaged in amounts which are subject to proof.

180.   Because Defendants knowingly and willfully violated the Rosenthal Act, Plaintiff and members of the Class are therefore entitled to statutory damages; actual damages; attorney's fees; and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Court enter a judgment against Defendants and in favor of Plaintiff:

A.     Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as representatives of the Classes and Plaintiffs' counsel as counsel for the Classes;

B.     Declaring, adjudging, and decreeing the conduct alleged herein as unlawful;

C.     Enjoining Defendants from continuing to commit the above-cited violations of law;

D.     Awarding compensatory and punitive damages along with pre- and post-judgment interest;

E.     Granting Plaintiffs the costs of suit, including reasonable attorneys' fees and expenses; and

60

F.      Affording Plaintiffs with such other, further, and different relief as

the nature of the case may require or as may be determined to be just,

equitable, and proper by this Court.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.


SABATINI LAW FIRM, LLC

_____
Carlo Sabatini, PA 83831
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
carlo@sabatinilawfirm.com
*Counsel for Plaintiff and the Classes*


EDELMAN, COMBS,
LATTURNER, & GOODWIN, LLC


_____
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Frances R. Green
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500

Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
ARDC # 00712094
*Counsel for Plaintiff and the Classes*

FIORENTINO LAW OFFICES, LTD.

_____

Anthony Fiorentino
FIORENTINO LAW OFFICES LTD.
432 N. Clark St., Suite 202
Chicago, Illinois 60654
ARDC # 6281389
anthony@fiorentinolaw.com
*Counsel for Plaintiff and the Classes*

Exhibit A

(Ballard Promissory Notes)

Exhibit A

6/6/2008 021

## Federal Family Education Loan Program (FFELP)

# Federal Stafford Loan
# Master Promissory Note

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both, under the United States Criminal Code and 20 U.S.C. 1097.

**Guarantor, Program, or Lender Identification**

OMB No. 1845-0006
Form approved
Exp. date 2-29-2008

**GUARANTEE SERVICES**
California Student Aid Commission/EDFUND - GUARANTOR
2008 MAY 30  AM 8: 13

## Borrower Information

*Please print neatly or type. Read the instructions carefully.*

| 1. Last Name | First Name | MI | 2. Social Security Number |
|---|---|---|---|
| BALLARD | JILL | C | ███-7735 |

| 3. Permanent Street Address (if P.O. Box, see instructions.) | | | | 4. Home Area Code/Telephone Number | 5. Date of Birth (Month/Day/Year) |
|---|---|---|---|---|---|
| 4644 FLORIDA STEET | | | | ███ | 09/05/██ |

| City | State | Zip Code | 6. Driver's License State and Number | 7. E-mail Address |
|---|---|---|---|---|
| SAN DIEGO | CA | 92116 | State CA  █████1138 | BALLARJC@TJSL.EDU |

| 8. Lender Name | City | State | Zip Code | 9. Lender Code, if known |
|---|---|---|---|---|
| WILMINGTON TRUST/SLMA ET/LSC/FL   Rancho Cordova | | CA | 95741-9046 | 80221800 |

**10. References:** You must provide two separate references with different U.S. addresses. The first reference should be a parent (if living) or legal guardian. Both references must be completed in full.

| | A. | B. |
|---|---|---|
| Name | LORELEI BALLARD | ERNESTINE BALLARD |
| Permanent Address | 13232 DAX COURT | 2029 W. VINE AVENUE |
| City, State, Zip Code | SAN DIEGO, CA 92129 | VISALIA, CA 93291 |
| E-mail Address | | |
| Area Code/Telephone Number | (████ | (████ |
| Relationship to Borrower | Parent | Relative |

**11. Requested Loan Amount:** I request a total amount of subsidized and unsubsidized loans under this Master Promissory Note not to exceed the allowable maximums under the Higher Education Act. My school will notify me of the type(s) and amount(s) of loan(s) that I am eligible to receive. I may cancel any loan or request a lower amount by contacting my lender or school. Additional information about my right to cancel a loan or request a lower amount is included in the Borrower's Rights and Responsibilities Statement and Disclosure Statements that have been or will be provided to me.

**12. Interest Payments (Optional):**

☑ I want to pay unsubsidized interest while I am in school.

## Borrower Certifications and Authorizations

*Read carefully before signing below.*

**13. Under penalty of perjury I certify that:**

**A.** The information I have provided on this Master Promissory Note and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

**B.** I will immediately repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis at the school that certified my loan eligibility.

**C. (i)** I do not now owe an overpayment on a Federal Pell Grant, Supplemental Educational Opportunity Grant, or a Leveraging Educational Assistance Partnership Grant (formerly State Student Incentive Grant); or, if I owe an overpayment, I have made repayment arrangements with the holder to repay the amount owed. **(ii)** I am not now in default on any loan received under the Federal Perkins Loan Program (including NDSL loans), the Federal Direct Loan Program, or the Federal Family Education Loan Program ("FFELP" as defined in the Borrower's Rights and Responsibilities Statement); or **(iii)** I am in default on a loan, and I have made satisfactory arrangements with the holder of the defaulted loan.

**14.** For all subsidized and unsubsidized Federal Stafford Loans (as described in the additional MPN provisions and the Borrower's Rights and Responsibilities Statement) I receive under this Master Promissory Note, and for certain other loans as described below, I make the following authorizations:

**A.** I authorize my school to certify my eligibility for loans under this Master Promissory Note.

**B.** I authorize my school to transfer loan proceeds received by electronic funds transfer (EFT) or master check to my student account.

**C.** I authorize my school to pay to the lender any refund that may be due up to the full amount of the loan(s).

**D.** I authorize the lender, the guarantor, or their agents, to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.

**E.** I request and authorize my lender to: **(i)** during the in-school and grace periods of any loans made under this Master Promissory Note, defer and align the repayment of principal on all of my FFELP loans that are in repayment status; and **(ii)** add unpaid interest that accrues on all my FFELP loans to the principal balance of such loans ("capitalization") including such loans made under this Master Promissory Note, during forbearance periods, and for unsubsidized loans, during in-school, grace, and deferment periods as provided under the Act. "Capitalization" will increase the principal balance on my loans and the total amount of interest charges I must pay.

**F.** I authorize the release of information pertinent to my loans: **(i)** by the school, the lender, and the guarantor, or their agents, to the references on the applicable loans and to members of my immediate family unless I submit written directions otherwise; and, **(ii)** by and among my schools, lenders, guarantors, the Department of Education, and their agents.

**G.** So that the loans requested can be approved, I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to the school, the lender, and to state agencies and nonprofit organizations that administer financial aid programs under the FFELP.

## Promise to Pay

*In this Master Promissory Note (MPN), "lender" refers to, and this MPN benefits, the original lender and its successors and assigns, including any subsequent holder of this MPN.*

**15.** I promise to pay to the order of the lender all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN. I understand that multiple loans may be made to me under this MPN. I understand that by accepting any disbursements issued at any time under this MPN, I agree to repay the loans. I understand that, within certain time frames, I may cancel or reduce the amount of any loan by refusing to accept or by returning all or a portion of any disbursement that is issued. Unless I make interest payments, interest that accrues on my unsubsidized loans during in-school, grace, and deferment periods will be added as provided under the Act to the principal balance of such loans. If I do not make any payment on any loan made under this MPN when it is due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees. I will not sign this MPN before reading the entire MPN, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this MPN and the Borrower's Rights and Responsibilities Statement. My signature certifies I have read, understand, and agree to the terms and conditions of this MPN, including the Borrower Certifications and Authorizations printed above, the Notice About Subsequent Loans Made Under This MPN, and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT I MAY RECEIVE ONE OR MORE LOANS UNDER THIS MPN, AND THAT I MUST REPAY ALL LOANS THAT I RECEIVE UNDER THIS MPN.**

E-SIGN TOKEN: etdata%3D551797735BA19740905&timestamp%3D2008-05-29 12.18.51.3&vas%3D0180&fullname%3DBALLARD,JILL,C&attempts%3D1&status%3DUser Passed&e-signsource%3DG706

| 16. Borrower's Signature ELECTRONIC SIGNATURE ON FILE | 17. Today's Date (Month/Day/Year) 05/29/2008 |
|---|---|

*Additional MPN provisions follow*

# Master Promissory Note *(continued)*

**Disclosure of Loan Terms**

This MPN applies to both subsidized and unsubsidized Federal Stafford Loans described in the Interest section below. I agree that the lender may sell or assign this MPN and/or my loans and acknowledge that any loan may be assigned independently of any other loan to which this MPN applies. I agree that each loan is separately enforceable based on a true and exact copy of this MPN. Loans disbursed under this MPN are subject to the annual and aggregate loan limits specified in the Higher Education Act of 1965, as amended, 20 U.S.C. 1070, et seq., and applicable U.S. Department of Education regulations (collectively referred to as the "Act"). Under this MPN, the principal amount that I owe, and am required to repay, will be the sum of all disbursements issued (unless I revoke or cancel any disbursements as provided below).

My lender will determine whether to make any loan under this MPN after my loan eligibility is determined by the school where I am enrolled on at least a half-time basis. At or before the time of the first disbursement for each loan, a disclosure statement will be sent to me identifying the amount of the loan and additional terms of the loan. Important additional information is also disclosed in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The Borrower's Rights and Responsibilities Statement and any disclosure statement I receive in connection with any loan under this MPN are hereby incorporated into this MPN.

I may request additional loan funds for my educational costs (up to the annual and aggregate loan limits). If my school determines that I am eligible for any additional or adjusted loan amount, my school may certify such amount. My eligibility for subsidized and/or unsubsidized loans may change based on changes in my financial circumstances. My school will notify me of any changes in my eligibility. I will be notified of any changes or additions to my subsidized and/or unsubsidized loans in a separate disclosure statement.

**Loan Cancellation**

I may pay back all or a part of a disbursement within timeframes set by the Act, as explained in the Borrower's Rights and Responsibilities Statement or other disclosure statement I receive at or before disbursement. In such case, the origination fee and guarantee fee will be reduced or eliminated in proportion to the amount of the disbursement returned within those timeframes. I will not have to pay interest charges if I return the full loan amount as provided in the Act.

**Interest**

Unless my lender notifies me in writing of a lower rate(s), the rate(s) of interest for my loans are those specified in the Act. The interest rate information is presented in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The interest rate is presented in a disclosure statement that is issued to me.

Interest accrues on the unpaid principal balance of each loan from the date of disbursement by the lender until the loan is paid in full. I agree to pay all interest charges on my subsidized Federal Stafford Loans except interest payable by the federal government under the Act. I agree to pay all interest charges on my unsubsidized Federal Stafford Loans. If I fail to make required payments of interest before the beginning or resumption of principal repayment, or during a period of deferment or forbearance, I agree that the lender may capitalize such interest as provided under the Act. There is no federal interest subsidy on unsubsidized loans, so the total amount of interest I am required to repay on unsubsidized loans will be higher than on subsidized loans.

**Origination Fee and Guarantee Fee**

For each subsidized and unsubsidized loan, the federal government charges an origination fee equal to the amount required by the Act. The guaranty agency(ies) that guarantee(s) my loan(s) (in each case, the "guarantor") may charge a per loan guarantee fee not to exceed a maximum amount specified in the Act. I will pay these fees, as

identified in the disclosure statement, which will be deducted proportionately from each disbursement of my loans. I understand the origination and guarantee fees may be refundable only to the extent permitted by the Act.

**Late Charges and Collection Costs**

The lender may collect from me: **(i)** a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after it becomes due, and **(ii)** any other charges and fees that are permitted by the Act for the collection of my loans. If I default on any loans, I will pay reasonable collection fees and costs, plus court costs and attorney fees.

**Repayment**

I must repay the full amount of the loans made under this MPN and accrued interest. Federal Stafford Loans have a repayment grace period, which will be disclosed in my disclosure statement. I will repay the principal of each loan in periodic installments during a repayment period that begins on the day immediately following the end of the applicable grace period. Payments submitted by me or on my behalf (exclusive of refunds) may be applied first to charges and collection costs that are due, then to accrued interest that has not been capitalized, and finally to the principal amount.

I understand that the school's certification of my loan eligibility determines whether my loans must be repaid as subsidized and/or unsubsidized loans.

The lender will provide me with a repayment schedule that identifies my payment amounts and due dates. Except as otherwise provided in the Act, the minimum annual payment required on all my FFELP loans is $600 or the amount of interest due and payable, whichever is larger. My lender must provide me with a choice of repayment plans consistent with the provisions of the Act.

If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance. The lender may align payment dates on my loans or grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled payments.

I may prepay all or any part of the unpaid balance on my loans at any time without penalty. If I do not specify which loans I am prepaying, the lender will determine how to apply the prepayment in accordance with the Act. Upon prepayment in full of each loan under this MPN, I agree to accept written notification of such loan payoff in place of receiving the original MPN.

**Acceleration and Default**

At the option of the lender, the entire unpaid balance of the applicable loan(s) made under this MPN will become immediately due and payable, (this is called "acceleration"), upon the occurrence of any one of the following events: **(i)** I fail to enroll as at least a half-time student at the school that certified my loan eligibility, **(ii)** I fail to use the proceeds of the loan solely for educational expenses, **(iii)** I make a false representation(s) that results in my receiving a loan for which I am not eligible, or **(iv)** I default on the loan.

The following events shall constitute a default on my loan: **(i)** I fail to pay the entire unpaid balance of the applicable loans after the lender has exercised its option under items (i), (ii), or (iii) in the preceding paragraph; **(ii)** I fail to make installment payments when due, provided my failure has persisted for at least 270 days for payments due monthly or 330 days for payments due less frequently than monthly; or **(iii)** I fail to comply with other terms of the loans, and the lender or guarantor reasonably concludes I no longer intend to honor my repayment obligation. If I default, the guarantor may purchase my loans and capitalize all then-outstanding interest into a new principal balance, and collection fees will become immediately due and payable.

If I default, the default will be reported to all national credit bureaus and will significantly and adversely affect my credit history. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, the loans may be subject to income-contingent repayment (including potential collection of amounts in excess of the principal and interest) in accordance with the Act.

**Governing Law and Notices**

The terms of this MPN will be interpreted in accordance with the applicable federal statutes and regulations, and the guarantor's policies. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN.

If a particular loan under this MPN is made by the school, or if the proceeds of a particular loan made under this MPN are used to pay tuition and charges of a for-profit school that refers loan applicants to the lender, or that is affiliated with the lender by common control, contract, or business arrangement, any lender holding such loan is subject to all claims and defenses that I could assert against the school with respect to such loan. My recovery under this provision shall not exceed the amount I paid on such loan.

If I reside in the state in which the principal office of the guarantor is located, the guarantor may sue to enforce the applicable loans in the county in which the guarantor's office is located. However, if I object to being sued there and I mail a written objection to the guarantor that is postmarked no later than 30 days after I am served with the suit, the guarantor will either have the court transfer the suit to the county in which I live or will dismiss the lawsuit.

Any notice required to be given to me will be effective if sent by first class mail to the latest address the lender has for me or by electronic means to an electronic address that I have provided. I will immediately notify the lender of any change of address or status as specified in the Borrower's Rights and Responsibilities Statement. Failure by the lender to enforce or insist on compliance with any term on this MPN shall not be a waiver of any right of the lender. No provision of this MPN may be modified or waived except in writing. If any provision of this MPN is determined to be unenforceable, the remaining provisions shall remain in force.

---

**Notice About Subsequent Loans Made Under This Master Promissory Note**

This Master Promissory Note authorizes the lender to disburse multiple loans during the multi-year term of this MPN upon my request and upon the school's certification of my loan eligibility. Subsequent loans may be made under this MPN for the same or subsequent periods of enrollment only at schools designated by the Secretary of the U.S. Department of Education.

I understand that no subsequent loans will be made under this MPN after the earliest of the following dates: **(i)** the date my lender receives my written notice that no further loans may be disbursed under the MPN; **(ii)** one year after the date of my signature on this MPN if no disbursement is made during such twelve month period; or **(iii)** ten years after the date of my signature on this MPN or the date the lender receives this MPN.

Any amendment to the Act governs the terms of any loans disbursed on or after the effective date of such amendment, and such amended terms are hereby incorporated into this MPN.

| Federal Family Education Loan Program (FFELP) **Federal Stafford Loan Master Promissory Note Instructions and Notices** | Guarantor, Program, or Lender Identification |
|---|---|

## Instructions for Completing Promissory Note

*This is a Master Promissory Note under which you may receive multiple subsidized and unsubsidized Federal Stafford Loans over a maximum ten year period. Except for interest charges the federal government pays on your behalf on subsidized Federal Stafford Loans while you are in school and during your grace and deferment periods, you are responsible for paying interest on the principal amount of your loans from the date of disbursement until the loans are paid in full.*

*Use a dark ink ball point pen or typewriter. Do not complete this form in pencil. If an item has been completed for you and any part of it is incorrect, cross out the incorrect information and print the correct information. Incorrect, incomplete, or illegible information may cause your loan to be delayed.*

**Item 1:** Enter your last name, then your first name and middle initial.

**Item 2:** Enter your nine-digit Social Security Number. If this item has been completed for you, review it for correctness. If it is incorrect, cross out the entire incorrect number and print the entire correct Social Security Number in this box. Your loan(s) cannot be processed without a Social Security Number. Read the Privacy Act and the Financial Privacy Act Notices below before completing this item.

**Item 3:** Enter your permanent home street address, apartment number, city, state, and zip code. If you have a Post Office Box and a street address, list both. A temporary school address is not acceptable.

**Item 4:** Enter the area code and telephone number for the address listed in Item 3. If you do not have a telephone, enter N/A.

**Item 5:** Using only numbers, enter the month, day, and four-digit year of your birth, (For example, for June 24, 1982, you would enter 06/24/1982). Be careful not to enter the current year.

**Item 6:** Enter the two-letter abbreviation for the state that issued your driver's license followed by the driver's license number. If you do not have a driver's license, enter N/A.

**Item 7:** Enter your preferred e-mail address if you have one. You are not required to provide this information. If you do, we may use your e-mail address to communicate with you. If you do not have an e-mail address or do not wish to provide one, write N/A.

**Item 8:** Enter the name and address of the lender from which you wish to borrow. If you do not have a lender, contact your school's financial aid office, a bank or other financial institution, or the guarantor or program listed on this form for information on lenders willing to make loans to students attending your school.

**Item 9:** If you know the lender code, enter it here. Otherwise, leave this item blank.

**Item 10:** Enter the requested reference information for two adults who do not share a common address. The first reference should be a parent (if living), legal guardian, or an adult relative. References with addresses outside the U.S. are not acceptable. Both references must be completed in full.

If a reference does not have a telephone or an e-mail address or does not wish to provide an e-mail address, write N/A. If you provide an e-mail address for a reference, the lender or holder of your loan(s) may use it to communicate with the reference. All requested items must be completed or your loan(s) will be delayed.

**Item 11:** Your school will notify you of the amount of subsidized and unsubsidized Federal Stafford loans you are eligible to receive for this and subsequent academic periods. You may decline a loan or request a lower amount by contacting your lender or school. Additional information is included under "Loan Cancellation" in the Borrower's Rights and Responsibilities Statement.

**Item 12:** Check this box only if you want to make interest payments while in school.

**Items 13, 14, and 15:** Read these items carefully.

**Item 16:** Sign your legal name, including your first name, middle initial, and last name. Use a dark ink ballpoint pen, if you are completing a paper copy of this MPN.

**Item 17:** Enter the date you are signing this MPN.

## Important Notices

### Privacy Act Notice

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §428(b)(2)(A) et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1078(b)(2)(A) et seq.) and the authority for collecting and using your Social Security Number (SSN) is §484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)). Participating in the Federal Family Education Loan Program (FFELP) and giving us your SSN is voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge or forgiveness) under the FFELP, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed to third parties as authorized under routine uses in the appropriate systems of records. The routine uses of this information include its disclosure to federal, state, or local agencies, to other federal agencies under computer matching programs, to agencies that we authorize to assist us in administering our loan programs, to private parties such as relatives, present and former employers, business and personal associates, to credit bureau organizations, to educational and financial institutions, to guaranty agencies and to contractors in order to verify your identity, to determine your eligibility to receive a loan(s) or a benefit on a loan(s), to permit the servicing or collection of your loan(s), to counsel you in repayment efforts, to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, to locate you if you become delinquent in your loan payments or if you default, to provide default rate calculations, to provide financial aid history information, to assist program administrators with tracking refunds and cancellations, or to provide a standardized method for educational institutions efficiently to submit student enrollment status.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

### Financial Privacy Act Notice

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), the U.S. Department of Education will have access to financial records in your student loan file maintained by the lender in compliance with the administration of the Federal Family Education Loan Program.

### Paperwork Reduction Notice

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0006. The time required to complete this information is estimated to average 1.0 hours (60 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. **If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to the U.S. Department of Education, Washington, DC 20202-4651.**

**If you have questions regarding the status of your submission of this form, contact the lender, guarantor, or program identified in the upper right-hand corner of this form.**

# Borrower's Rights and Responsibilities Statement

**Important Notice:** The Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of loans you receive under the Federal Stafford Loan Master Promissory Note (MPN). Please keep a copy of this statement because it applies to present and subsequent loans received under the MPN. You may contact your lender at any time for another copy of this statement.

The Federal Family Education Loan Program (FFELP) includes the following loans:

- Subsidized Federal Stafford Loan (formerly known as Guaranteed Student Loan [GSL]),
- Unsubsidized Federal Stafford Loan,
- Federal Insured Student Loan (FISL),
- Federal Supplemental Loans for Students (SLS), also known as ALAS,
- Federal PLUS (parent) Loan,
- Federal Consolidation Loan.

The FFELP is authorized by Title IV, Part B of the Higher Education Act of 1965, as amended.

**1. Governing Law** – Loans disbursed under this Master Promissory Note (MPN) are subject to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U. S. Department of Education regulations (collectively referred to as the "Act"). **NOTE: Any change to the Act applies to the terms of any loans made on or after the effective date of the change.**

**2. Use of this MPN** – I may receive more than one loan under this MPN over a period of up to ten years. Whether I may receive loans under this MPN for only one academic period, or for multiple academic periods, depends on the school I am attending. I may receive loans under this MPN from the original lender, or a lender who assumes the right to offer loans under this MPN, even if I change my school (provided the school is authorized to certify subsequent loans under this MPN) and even if my guaranty agency changes. I must sign a new MPN if I wish to receive loans from a lender other than my original lender, or a lender who assumes the right to offer me loans under this MPN.

**3. Subsidized and Unsubsidized Loans** – There are two types of Federal Stafford Loans that I may be eligible for under this MPN: subsidized and unsubsidized. The subsidized Federal Stafford Loan is based on need. If I qualify, the government pays the lender the interest due on my subsidized loans while I am in school and during grace and deferment periods ("lender" refers to the original lender and its successors, including any subsequent holder of this MPN). I am otherwise responsible for interest that accrues on my subsidized loan. The unsubsidized Federal Stafford Loan is not based on need. I am responsible for all interest that accrues on my unsubsidized loans.

**4. Maximum Program Loan Amounts** – Under the Federal Stafford Loan Program (including both subsidized and unsubsidized loans), I may borrow amounts under this MPN up to and including the dollar amounts shown in the chart on this page (Federal Stafford Loan Maximums).

I am subject to the limits on these loan amounts on the basis of the following:

| Federal Stafford Loan Maximums[1] | | |
|---|---|---|
| **DEPENDENT UNDERGRADUATES**[2] | **Subsidized** | **Total** (Subsidized & Unsubsidized)[3] |
| First Year | $2,625 | $2,625 |
| Second Year | $3,500 | $3,500 |
| Third Year and Beyond | $5,500 | $5,500 |
| **INDEPENDENT UNDERGRADUATES** (and dependents whose parents are unable to borrow under the PLUS program) | | |
| First Year | $2,625 | $6,625 |
| Second Year | $3,500 | $7,500 |
| Third Year and Beyond | $5,500 | $10,500 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $8,500 | $18,500 |
| **AGGREGATE LIMITS**[3] | | |
| **DEPENDENT UNDERGRADUATES** | $23,000 | $23,000 |
| **INDEPENDENT UNDERGRADUATES** (and dependents whose parents are unable to borrow under the PLUS program) | $23,000 | $46,000 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $65,500 | $138,500 |

[1]   Certain health professions students may qualify for higher limits.
[2]   All undergraduate annual loan limits are subject to proration.
[3]   If the borrower does not have financial need for a subsidized Federal Stafford Loan using expected family contribution (EFC), or has reached the aggregate limit in subsidized Federal Stafford Loans, the borrower may receive up to and including this entire amount in unsubsidized Federal Stafford Loans assuming he or she has remaining eligibility for the loan.

- My academic level (freshman, sophomore, etc.),
- My status as a dependent student or independent student,
- The length of the academic program in which I am enrolled,
- The length of the remainder of my undergraduate program of study if it is less than one academic year, and
- As otherwise authorized by the Act.

**5. Maximum Individual Loan Limits** – For each academic period, my school determines the maximum loan amount I am eligible to receive by considering the factors in Section 4 above and other factors such as my Cost of Attendance, Expected Family Contribution, and other financial aid awarded to me. If my school awards both subsidized Federal Stafford Loans and unsubsidized Federal Stafford Loans, it is required to determine my eligibility for a subsidized Federal Stafford Loan before determining my eligibility for an unsubsidized Federal Stafford Loan.

If I have received student loans from more than one lender or from other federal student loan programs, I am responsible for informing my school and my lender of my other student loans. In some cases, I may not be eligible for loans for which I have applied.

**6. Use of Loan Money** – I must use the loan money for authorized educational expenses for attendance at the school that certified my eligibility for the time period shown on my disclosure statement. Authorized expenses include the following:

- Tuition,
- Room,
- Board,
- Institutional fees,
- Books,
- Supplies,
- Equipment,
- Dependent child care,
- Transportation,
- Commuting expenses,
- Rental or purchase of a personal computer,
- Origination fee and guarantee fee, and/or
- Other documented, authorized costs.

**7. Loan Fees** – I may be charged an origination fee and/or a guarantee fee for each loan made under this MPN. Neither fee may exceed the rate as specified in the Act. The amount of these fees will be deducted proportionally from each disbursement.

**8. Disbursement of Loan Money** – Generally, my loan money will be disbursed to my school in multiple installments based on the academic terms at my school. If my school does not have academic terms, my loan money will generally be disbursed in at least two installments, one at the beginning and one at the midpoint of my enrollment period for the applicable loans.

If I am enrolled in a foreign school, or in a study abroad program through a school in the U.S. (home institution), the disbursement requirements stated above do not apply and:

- The loan money may be sent in one installment directly to me, or
- I may provide my foreign school or home institution, as applicable, a written authorization designating an individual not affiliated with the foreign school or home institution as my power-of-attorney to negotiate any loan disbursements on my behalf.

Loan money may be credited to my account at my school or disbursed by a check or other means made payable to me.

If this is my first student loan under either the Direct Loan Program or the FFELP, I must receive entrance counseling before the first disbursement of my subsidized or unsubsidized Federal Stafford Loan can be made.

**9. Change of Status –** I must notify my school and/or lender of certain changes.

I must notify my school's financial aid office if any of the following events take place:

- I reduce my enrollment status to less than half time,
- I withdraw from school,
- I stop attending classes,
- I fail to re-enroll for any term,
- I have a change in my expected graduation date, and/or
- I change my name, local address, permanent address, or e-mail address.

Shortly before my enrollment ends, I must participate in exit counseling with my school, during which I will update my loan records about my:

- Permanent address,
- E-mail address,
- Telephone number,
- Future employer, and
- References.

I must notify the lender of a particular loan if I fail to enroll with respect to such loan:

- At least half time for the loan period certified, or
- At the school that certified my eligibility.

I must promptly notify my lender(s) if any of the following events occur before loans held by my lender(s) are repaid:

- I change my address, telephone number, or e-mail address
- I change my name (for example, maiden name to married name),
- I withdraw from school or begin attending less than half time,
- I transfer from one school to another school,
- I change my employer or my employer's address or telephone number changes, and/or
- I have any other change in status that would affect my

loan (for example, the loss of eligibility for an unemployment deferment by obtaining a job).

**10. Effect of Loans on Other Student Aid –** Federal law requires that before receiving a Federal Stafford Loan, my school must receive a determination of my Pell Grant eligibility. Also, because an unsubsidized loan is more expensive to borrow than a subsidized loan, my school must determine my subsidized loan eligibility before I am offered an unsubsidized loan.

**11. Grace Period –** I will receive a 6-month grace period before the first payment of my Federal Stafford Loan must be made. The grace period begins the day after I cease to be enrolled at least half time at an eligible school.

My grace period does not include any period up to 3 years during which I am called or ordered to active duty for more than 30 days from a reserve component of the Armed Forces of the United States, including the period necessary for me to resume enrollment at the next available regular enrollment period.

**12. Repayment –** All of my loans made under this MPN must be repaid.

The repayment period for my loans begins the day after my 6-month grace period ends. My lender will notify me of the date my first payment is due.

I must make payments on my loans even if I do not receive a bill or repayment notice. Billing information is sent to me as a convenience, and I am obligated to make payments even if I do not receive any notice. My minimum annual payment required on all my FFELP loans will not, unless the lender otherwise agrees, be less than $600, except as provided in a graduated or income-sensitive repayment plan. Notwithstanding the preceding sentence, my minimum annual payment will never be less than the amount of interest due and payable.

My repayment period for each loan lasts at least 5 years but may not exceed 10 years (except under an extended repayment plan) from the day after the grace period ends.

I will be given the opportunity to choose one of the following repayment plans (for the following repayment plans, the time limits shown do not include periods of deferment and forbearance):

- **Standard Repayment Plan –** Under this plan, I will make fixed monthly payments and repay my loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. Payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period.
- **Graduated Repayment Plan –** Under this plan, I will usually make lower monthly payments at first, and my payments will increase over time. No single payment will be more than three times greater than any other payment.
- **Extended Repayment Plan –** Under this plan, I will make monthly payments based on fixed annual or graduated repayment amounts over a period not to exceed 25 years. Payments must be at least $50 a

month and will be more, if necessary, to repay the loan within the required time period. I am only eligible for this plan if **(i)** at the time I obtain a loan under this MPN I have no outstanding balance on a FFELP loan made before October 7, 1998, and **(ii)** I accumulate outstanding FFELP Program loans exceeding $30,000.

- **Income-Sensitive Repayment Plan –** If I choose this plan, my monthly payments will be adjusted annually, based on my expected total monthly gross income from all sources. I may call my lender at any time for more information about this repayment plan option.

Under each plan, the number or amount of the payments may need to be adjusted to reflect annual changes in the variable interest rate.

These repayment plans will be explained in more detail during my exit counseling session. If I do not choose an income-sensitive, graduated, or extended repayment plan within 45 days after notification of my repayment choices, or if I choose an income-sensitive repayment plan but do not provide the required documentation within the lender-specified time frame, my lender will require that I repay the loan under a standard repayment plan. I may change the repayment plan on my loan(s) once a year.

There will be no penalty for prepaying any portion of my loans.

All payments and prepayments may be applied in the following order: late charges, fees, and collection costs first, outstanding interest second, and outstanding principal last.

If I fail to make any part of an installment payment within 15 days after it becomes due, I may owe a late charge. This charge may not exceed six cents for each dollar of each late installment.

**13. Interest Rates –** The interest rate on a Federal Subsidized Stafford Loan and a Federal Unsubsidized Stafford Loan is a variable rate that is based on a formula established in the Act. The interest rate may be adjusted each year on July 1. As a result, my interest rate may change annually, but it will never exceed 8.25 percent. After reviewing the actual interest rate, I may cancel or reduce any loan obtained under this MPN in accordance with the "Loan Cancellation" section that follows.

**14. Payment of Interest –** My lender will, during the in-school, grace, and deferment periods and during any period in which I am on active-duty military service, defer and align principal payments on my outstanding FFELP loans. Interest that accrues on all my subsidized FFELP loans during authorized forbearance periods, and on all my unsubsidized FFELP loans during periods when I am not making regularly scheduled payments may, unless precluded by the Act, be capitalized (added to the principal of my loans) — unless I pay the interest as it accrues.

Except for interest charges the federal government pays on my behalf for subsidized Federal Stafford

Loans (while I am in school at least half time, for up to 3 years during active duty service in the Armed Forces as described in the Grace Period section above, during the grace period after I leave school, or during any period of authorized deferment), it is my responsibility to pay interest on the principal amount of my loans from the date of disbursement until the loans are paid in full. For all other periods and for unsubsidized Federal Stafford Loans, it is my responsibility to pay interest on my loans.

If I inform my lender that I wish to pay interest as it accrues, but I do not submit the payments, my lender may capitalize that interest.

Capitalized interest increases the principal balance of my loans and the total amount of interest charges I must pay. Interest will be capitalized on my loans as provided under the Act. Generally, capitalization may occur no more frequently than quarterly. However interest that accrues on my unsubsidized Federal Stafford Loans during in-school, grace or deferment periods may only be capitalized at the end of such periods. In addition, interest may not be capitalized if my lender grants an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation. (See the chart entitled, "Capitalization of Federal Stafford Loan Interest," for further information on capitalization.)

The charts entitled Repaying Your Loans allow me to estimate the cost of capitalization and estimate the effect of capitalization on my monthly payments. If necessary, I must add two or more estimates of my payments together to approximate more closely the total monthly payment.

I may be able to claim a federal income tax deduction for interest payments I make on my FFELP loans. For further information, I may refer to the IRS Publication 970, which is available at http://www.irs.usreas.gov.

**15. Loan Cancellation –** I understand that the terms of a full or partial loan cancellation depend on when I request the cancellation.

At any time before my loan money is disbursed, I may decline all or part of my loan money by notifying my school or lender. No origination fee, guarantee fee or interest will be charged on the amount of the loan that is cancelled.

■ If my school credits my loan to my student account, **I may cancel all or a part of my loan by informing my school within 14 days** after the date my school sends me a disbursement notice, or by the first day of the school's payment period, whichever is later. (My school can tell me the first day of the payment period.) If I cancel all or a portion of my loan as described in this paragraph, my school will return to my lender the cancelled amount of the loan money and the loan fees will be reduced or eliminated in proportion to the amount returned.

■ At any time within 120 days of disbursement, I may pay back all or a part of my loan. The loan fees will be reduced or eliminated in proportion to the amount returned.

**16. Sale or Transfer of Loans –** The lender may sell or otherwise transfer one or all of my loans without my consent. Should ownership of a loan be transferred, I will be notified of the name, address, and telephone number of the new lender if the address to which I make my payments changes. Sale or transfer of my loans does not affect my rights and responsibilities under such loans. If the lender sells my loans to another originating lender, the lender may also transfer the right to offer subsequent loans under the MPN to such purchaser. I always have the right to terminate a lender's ability to make loans to me under this MPN by written notice to the lender.

**17. Loan Discharge –** My loans will be discharged if documentation of my death is submitted to my lender. My loan(s) may also be discharged if a physician certifies that I am totally and permanently disabled as

defined by the Act. In addition, I must meet certain income requirements and may not receive any additional FFELP, Direct, or Federal Perkins Loans during a 3-year conditional discharge period. I may not receive a discharge due to total and permanent disability based on a condition that existed before I applied for that loan, unless a physician certifies that the condition substantially deteriorated after the loan was made.

My loan will not automatically be discharged in bankruptcy. In order to discharge a loan in bankruptcy, I must prove undue hardship in an adversary proceeding before the bankruptcy court.

In certain cases, the Act provides for loan discharge for borrowers who are unable to complete a course of study because the institution closes, or borrowers whose loan eligibility was falsely certified by the institution. The Act also provides for loan discharge in the amount of any required refund that my school failed to make to my lender on my behalf.

Neither the lender, the guarantor, nor the Department of Education vouch for the quality or suitability of the academic programs offered by participating schools. Unless I qualify for loan discharge under the Act, I must repay the loans even if I do not complete my education, I am unable to obtain employment in my field of study, or I am dissatisfied with, or do not receive, the education I paid for with the loans.

For additional information, I should contact my lender or guarantor.

**18. Consequences of Default –** Default is defined in detail in my MPN. If I default, the entire unpaid balance and any accrued collection fees on the applicable loans will become immediately due and payable. Failure to repay loans made under this MPN may result in any or all of the following:
■ Loss of federal and state income tax refunds,
■ Loss of other federal or state payments,
■ Legal action against me,

## Capitalization of Federal Stafford Loan Interest

**What Is Capitalization?**

Capitalization is a process whereby a lender adds unpaid interest to the principal balance of a loan. You are responsible for paying the interest due on your loan as described in Item 3 of this Rights and Responsibilities Statement.

If you fail to make required interest payments before the beginning or resumption of principal repayment, or if you are granted a deferment (on an unsubsidized Federal Stafford Loan) or forbearance, your lender may capitalize such interest as provided under the Act. The principal balance of your loan will increase each time your lender capitalizes unpaid interest. As a result, you will pay more interest charges over the life of the loan. When you leave school and begin repaying your loan, your monthly payment amount will be higher or, if your loan is subject to the $50 minimum payment, you will make more payments.

This chart compares the monthly payments on unsubsidized Federal Stafford Loans where interest is paid while the borrower is in school and loans where the interest is capitalized. This example uses the maximum interest rate for Federal Stafford Loans, 8.25%. This is an estimate only. The actual interest capitalized will depend on factors such as disbursement date, number of disbursements, and the variable interest rate.

| Treatment of Interest | Loan Amount | Capitalized Interest for 12 months | Principal to be Repaid | Monthly Payment | Number of Payments | Total Amount Repaid |
|---|---|---|---|---|---|---|
| When you pay the interest | $15,000 | $    0 | $15,000 | $184 | 120 | $23,315* |
| When you don't pay the interest | $15,000 | $1,238 | $16,238 | $199 | 120 | $23,900 |

*Total amount repaid includes $1,238 of interest paid by the borrower before the borrower entered repayment.

**Result:** During repayment, you pay $15 less per month and $585 less over the lifetime of your loan(s) when you pay the interest as it is charged.

*Contact your lender if you have questions or need more information.*

- Collection charges (including attorney fees) being assessed against me,
- Loss of my professional license,
- An increase in my interest rate,
- Loss of eligibility for other student aid and assistance under most federal benefit programs,
- Loss of eligibility for loan deferments,
- Negative credit reports to credit bureaus, and/or
- My employer withholding part of my wages to give them to my guarantor (administrative wage garnishment).

**19. Credit Bureau Notification –** Information concerning the amount, disbursement, and repayment status (current or delinquent) of loans will be reported to one or more national credit bureau organizations on a regular basis. If I default on any loans made under this MPN, that default also will be reported to all national credit bureaus. Before any guaranty agency reports such a default, I will be given at least 30 days notice that default information will be disclosed to the credit bureaus unless I enter into repayment arrangements within 30 days of the date on the notice. The guarantor will give me a chance to ask for a review of the debt(s) before the default is reported. My lender and guarantor must provide a timely response to a request from any credit organization regarding objections I might raise with that organization about the accuracy and completeness of information reported by the lender or guarantor.

**20. Special Repayment Arrangements –**
- A Federal Consolidation Loan Program is available under which I (or my spouse and I jointly) may consolidate (combine) into one debt federal education loans received from different lenders and/ or under different education loan programs. Depending on the amount I borrow, this program may result in an extension of my repayment period. Consolidation permits multiple debts to be combined into one monthly payment. For additional information, I should contact my lender or guarantor.
- Under certain circumstances, military personnel may have their educational loans repaid by the Secretary of Defense. Questions should be addressed to the local service recruiter. This is a recruiting program and does not pertain to prior service individuals or those not eligible for enlistment in the Armed Forces.
- In addition, volunteers who complete service in an approved national or community service project can earn an educational award. The award can be used to repay a Federal Stafford Loan. If I receive an educational award, I am responsible for providing my lender with information and documentation regarding my term of service and the award.
- If I have no outstanding loan balance on a FFEL or Direct Loan Program loan on October 1, 1998, or if I have no outstanding loan balance on the date I obtain a loan after October 1, 1998, I may be eligible for teacher loan forgiveness. The Department of Education will repay a fixed amount of my subsidized and unsubsidized Federal Stafford Loans if I have worked as a full-time teacher for five consecutive

school years, and if I meet all other eligibility requirements under the Act. If I am in default on a FFELP loan or a Direct loan, I am not eligible for forgiveness on that loan(s) unless I have made satisfactory repayment arrangements.
- If I am a full-time child care provider and I had no outstanding balance on a FFELP loan or a Direct loan on October 7, 1998, or I had no outstanding balance on a FFELP loan on the date I obtained a loan after October 7, 1998, I may qualify for loan forgiveness under a demonstration program set forth in the Act. I understand that I must meet other eligibility requirements under the Act and that this program requires annual federal funding.

**21. Deferments –** Under certain circumstances, I have a right to defer (postpone) repayment. The types of deferments that are available to me depend on when I first obtained a FFELP loan. Upon request, my lender will provide me with a deferment application that explains the eligibility requirements. If I am in default on my loan(s), I am not eligible for a deferment.

If all of my outstanding FFELP loans were made on or after July 1, 1993, and when my first FFELP loan was made on or after July 1, 1993, I had no outstanding FFELP loans that were made before July 1, 1993, a deferment is available to me while I am:

- Enrolled at least half time at an eligible school,
- Engaged in a full-time course of study in a graduate fellowship program,
- Engaged in a full-time rehabilitation training program for individuals with disabilities (if the program is approved by the Department of Education),
- Conscientiously seeking, but unable to find, full-time employment (for up to three years),
- Experiencing an economic hardship as determined by federal law (for up to three years).

My lender will process an in-school deferment based on **(i)** my request along with documentation verifying my eligibility, or **(ii)** the lender's receipt of a school certification of eligibility in connection with a new loan, or **(iii)** the lender's receipt of student status information indicating that I am enrolled on at least a half-time basis.

In all other cases, I must provide my lender with a deferment request and evidence that verifies my eligibility.

If at the time I obtain a loan under this MPN I have an outstanding FFELP loan disbursed before July 1, 1993, information on applicable deferment opportunities will be found in my earlier promissory note materials.

**22. Forbearance –** If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called a forbearance. Interest charges continue to accrue during a forbearance period. The lender may grant me a forbearance in the following circumstances:

- Financial hardship, and/or
- Illness.

My lender is generally not required to grant a forbearance and may require me to provide my reasons for the request and other information. The lender may grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled installment payments. My lender may grant me an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation.

Circumstances that require my lender to grant me a forbearance include:

- Serving in a medical or dental internship or residency program, if I meet certain criteria.
- Serving in a national service position for which I receive a national service education award under the National and Community Service Trust Act of 1993. In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service.
- Qualifying for partial repayment of my loans under the Student Loan Repayment Program, as administered by the Department of Defense.
- Qualifying for loan forgiveness under the Teacher Loan Forgiveness Program, if I meet certain criteria (for up to five years).
- Qualifying for loan forgiveness under the Child Care Provider Loan Forgiveness Program (for up to five years).
- Having a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of my total monthly gross income (for up to three years).

Upon request, my lender will provide me with forbearance information and a forbearance request form.

**Repayment information follows**

*Important Notice: Please retain this statement because it applies to present and subsequent loans received under the Master Promissory Note.*

**Repaying My Loans**

Follow these steps to estimate your loan payment.

## Step 1: Calculate Your Monthly Interest Charges

Round your balance up to the nearest $500. If your loan amount is not on the table, follow the example below to estimate your monthly accrued interest.

**Example:**
Federal Stafford Loan of $5,479 at 6% interest.
Round up to nearest $500 = $5,500.

$5,000 = $25.00/month
+ 500 =   2.50/month
_____
$27.50/month

Your Monthly Interest  $ _____.

### Approximate Monthly Interest

| Loan Amount | 5.0% | 6.0% | 7.0% | 8.0% | 9.0% |
|---|---|---|---|---|---|
| $500 | $2.08 | $2.50 | $2.92 | $3.33 | $3.75 |
| $1,000 | $4.17 | $5.00 | $5.83 | $6.67 | $7.50 |
| $3,000 | $12.50 | $15.00 | $17.50 | $20.00 | $22.50 |
| $5,000 | $20.83 | $25.00 | $29.17 | $33.33 | $37.50 |
| $6,000 | $25.00 | $30.00 | $35.00 | $40.00 | $45.00 |
| $7,000 | $29.17 | $35.00 | $40.83 | $46.67 | $52.50 |
| $9,000 | $37.50 | $45.00 | $52.50 | $60.00 | $67.50 |
| $10,000 | $41.67 | $50.00 | $58.33 | $66.67 | $75.00 |
| $15,000 | $62.50 | $75.00 | $87.50 | $100.00 | $112.50 |
| $20,000 | $83.33 | $100.00 | $116.67 | $133.33 | $150.00 |
| $25,000 | $104.17 | $125.00 | $145.83 | $166.67 | $187.50 |

## Step 2: Estimate Your Capitalized Interest

Complete this step only if you will capitalize interest on a Federal Stafford Loan. **This is an estimate only.** Actual interest capitalized will depend on factors such as disbursement dates, number of disbursements, and the variable interest rate.

| | Monthly Interest (From Step One) | | Number of Months in deferment or forbearance | | Estimate of Capitalized Interest |
|---|---|---|---|---|---|
| Example | $ 27.50 | X | $ 22 | = | $ 605.00 |
| Your Capitalized Interest | $ _____ | X | $ _____ | = | $ _____ |

## Step 3: Estimate Your Monthly Payment

Round your loan up to the nearest $500. If your principal amount is not on the table, follow the example below to estimate your monthly payment. If you previously had interest capitalized, add it to the original loan amount to get the new principal amount.

**Example:**
Federal Stafford Loan of $6,105.00 (5,500 + 605.00) at 6% interest.
Round up to nearest $500 = $6,500.

$6,000 = $66.61/month
+ 500 =   5.55/month
_____
$72.16/month

Estimated monthly payment = $72.16

*Minimum monthly payment = $50 or amount of interest accruing each month

### Estimated Monthly Payments *(10 Year Term)*

| Loan Amount | 5.0% | 6.0% | 7.0% | 8.0% | 9.0% |
|---|---|---|---|---|---|
| $500* | $5.30 | $5.55 | $5.81 | $6.07 | $6.33 |
| $1,000* | $10.61 | $11.10 | $11.61 | $12.13 | $12.67 |
| $3,000* | $31.82 | $33.31 | $34.83 | $36.40 | $38.00 |
| $5,000 | $53.03 | $55.51 | $58.05 | $60.66 | $63.34 |
| $6,000 | $63.64 | $66.61 | $69.67 | $72.80 | $76.01 |
| $7,000 | $74.25 | $77.71 | $81.28 | $84.93 | $88.67 |
| $9,000 | $95.46 | $99.92 | $104.50 | $109.19 | $114.01 |
| $10,000 | $106.07 | $111.02 | $116.11 | $121.33 | $126.68 |
| $15,000 | $159.10 | $166.53 | $174.16 | $181.99 | $190.01 |
| $20,000 | $212.13 | $222.04 | $232.22 | $242.66 | $253.35 |
| $25,000 | $265.16 | $277.55 | $290.27 | $303.32 | $316.69 |

| | Loan Amount | | Estimate of Capitalized Interest (From Step Two) | | New Principal Balance | | Estimated Monthly Payment |
|---|---|---|---|---|---|---|---|
| Example | $ 5,500 | + | $ 605.00 | = | $ 6,105.00 | | $ 72.16 |
| Your Monthly Payment | $ _____ | + | $ _____ | = | $ _____ | | $ _____ |

**Federal Family Education Loan Program (FFELP)**

# Federal Stafford Loan
# Master Promissory Note

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both, under the United States Criminal Code and 20 U.S.C. 1097.

| Guarantor, Program, or Lender Identification | OMB No. 1845-0006 |
|---|---|
| CALIFORNIA STUDENT AID COMMISSION/EdFUND - GUARANTOR | Form approved Exp. date 9-30-2005 |

82420600
BANK ONE LSC FLORIDA
PO BOX 59012
PANAMA CITY, FL 32412
888-272-5543

## Borrower Information
*Please print neatly or type. Read the instructions carefully.*

**1. Last Name** BALLARD, JILL C **First Name** **MI** **2. Social Security Number** -7735

**3. Permanent Street Address (if P.O. Box, see instructions.)** 4460 36TH STREET, APT. D

**4. Home Area Code/Telephone Number** **5. Date of Birth (Month/Day/Year)** 09/05/

**City** SAN DIEGO, CA **State** **Zip Code** 92116

**6. Driver's License State and Number** CA A7061138 **State**

**7. E-mail Address**

**8. Lender Name** BANK ONE LSC FLORIDA **City** PANAMA CITY, FL **State** 32412 **Zip Code** **9. Lender Code, if known** 82420600

**10. References:** You must provide two separate references with different U.S. addresses. The first reference should be a parent (if living) or legal guardian. Both references must be completed in full.

| | A. | B. |
|---|---|---|
| Name | Lorelei Ballard | Ernestine Ballard |
| Permanent Address | 13232 Dax Court | 2029 W. Vine Avenue |
| City, State, Zip Code | San Diego, CA 92129 | Visalia, CA 93291 |
| E-mail Address | N/A | N/A |
| Area Code/Telephone Number | | |
| Relationship to Borrower | Mother | Grandmother |

**11. Requested Loan Amount:** I request a total amount of subsidized and unsubsidized loans under this Master Promissory Note not to exceed the allowable maximums under the Higher Education Act. My school will notify me of the type(s) and amount(s) of loan(s) that I am eligible to receive. I may cancel my loan or request a lower amount by contacting my lender or school. Additional information about my right to cancel a loan or request a lower amount is included in the Borrower's Rights and Responsibilities Statement and Disclosure Statements that have been or will be provided to me.

**12. Interest Payments (Optional):**
☒ I want to pay unsubsidized interest while I am in school.

## Borrower Certifications and Authorizations.
*Read carefully before signing below.*

**13. Under penalty of perjury I certify that:**

**A.** The information I have provided on this Master Promissory Note and as updated by me from time to time is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

**B.** I will immediately repay any loan proceeds that cannot be attributed to educational expenses for attendance on at least a half-time basis at the school that certified my loan eligibility.

**C. (i)** I do not now owe an overpayment on a Federal Pell Grant, Supplemental Educational Opportunity Grant, or a Leveraging Educational Assistance Partnership Grant (formerly State Student Incentive Grant); or, if I owe an overpayment, I have made repayment arrangements with the holder to repay the amount owed. **(ii)** I am not now in default on any loan received under the Federal Perkins Loan Program (including NDSL loans), the Federal Direct Loan Program, or the Federal Family Education Loan Program ("FFELP" as defined in the Borrower's Rights and Responsibilities Statement); or (if I am in default on a loan, and I have made satisfactory arrangements with the holder of the defaulted loan.

**14.** For all subsidized and unsubsidized Federal Stafford Loans (as described in the additional MPN provisions and the Borrower's Rights and Responsibilities Statement) I receive under this Master Promissory Note, and for certain other loans as described below, I make the following authorizations:

**A.** I authorize my school to certify my eligibility for loans under this Master Promissory Note.

**B.** I authorize my school to transfer loan proceeds received by electronic funds transfer (EFT) or master check to my student account.

**C.** I authorize my school to pay to the lender any refund that may be due up to the full amount of the loan(s).

**D.** I authorize the lender, the guarantor, or their agents, to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.

**E.** I request and authorize my lender to: (i) during the in-school and grace periods of any loans made under this Master Promissory Note, defer and align the repayment of principal on all of my FFELP loans that are in repayment status; and (ii) add unpaid interest that accrues on all my FFELP loans to the principal balance of such loans ("capitalization") including such loans made under this Master Promissory Note, during forbearance periods, and for capitalization loans, during in-school, grace, and deferment periods as provided under the Act. "Capitalization" will increase the principal balance on my loans and the total amount of interest charges I must pay.

**F.** I authorize the release of information pertinent to my loans: (i) by the school, the lender, and the guarantor, or their agents, to the references on the applicable loans and to members of my immediate family unless I submit written directions otherwise; and, (ii) by and among my schools, lenders, guarantors, the Department of Education, and their agents.

**G.** So that the loans requested can be approved, I authorize the Department of Education to send any information about me that is under its control, including information from the Free Application for Federal Student Aid, to the school, the lender, and to state agencies and nonprofit organizations that administer financial aid programs under the FFELP.

## Promise to Pay
*In this Master Promissory Note (MPN), "lender" refers to, and this MPN benefits, the original lender and its successors and assigns, including any subsequent holder of this MPN.*

**15.** I promise to pay to the order of the lender all loan amounts disbursed under the terms of this MPN, plus interest and other charges and fees that may become due as provided in this MPN. **I understand that multiple loans may be made to me under this MPN.** I understand that by accepting any disbursements issued at any time under this MPN, I agree to repay the loans. I understand that, within certain time frames, I may cancel or reduce the amount of any loan by refusing to accept or by returning all or a portion of any disbursement that is issued. Unless I make interest payments, interest that accrues on my unsubsidized loans during in-school, grace, and deferment periods will be added as provided under the Act to the principal balance of such loans. If I do not make any payment on any loan made under this MPN when it is due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees. I will not sign this MPN before reading the entire MPN, even if I am told not to read it, or told that I am not required to read it. I am entitled to an exact copy of this MPN and the Borrower's Rights and Responsibilities Statement. My signature certifies I have read, understand, and agree to the terms and conditions of this MPN, including the Borrower Certifications and Authorizations printed above, the Notice About Subsequent Loans Made Under This MPN, and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT I MAY RECEIVE ONE OR MORE LOANS UNDER THIS MPN, AND THAT I MUST REPAY ALL LOANS THAT I RECEIVE UNDER THIS MPN.**

**16. Borrower's Signature** Jill C. Ballard **17. Today's Date (Month/Day/Year)** 05/23/04

**LENDER COPY** *Additional MPN provisions follow*

# Master Promissory Note *(continued)*

**Disclosure of Loan Terms**

This MPN applies to both subsidized and unsubsidized Federal Stafford Loans described in the Interest section below. I agree that the lender may sell or assign this MPN and/or my loans and acknowledge that any loan may be assigned independently of any other loan to which this MPN applies. I agree that each loan is separately enforceable based on a true and exact copy of this MPN. Loans disbursed under this MPN are subject to the annual and aggregate loan limits specified in the Higher Education Act of 1965, as amended, (the Act) 20 U.S.C. 1070, et seq., and applicable U.S. Department of Education regulations (collectively referred to as the "Act"). Under this MPN, the principal amount that I owe, and am required to repay, will be the sum of all disbursements issued (unless I reduce or cancel any disbursements as provided below).

My lender will determine whether to make any loan under this MPN after my loan eligibility is determined by the school where I am enrolled on at least a half-time basis. At or before the time of the first disbursement for each loan, a disclosure statement will be sent to me identifying the amount of the loan and additional terms of the loan. Important additional information is also disclosed in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The Borrower's Rights and Responsibilities Statement and any disclosure statement I receive in connection with any loan under this MPN are hereby incorporated into this MPN.

I may request additional loan funds for my educational costs (up to the annual and aggregate loan limits). If my school determines that I am eligible for any additional or adjusted loan amount, my school may certify such amount. My eligibility for subsidized and/or unsubsidized loans may change based on changes in my financial circumstances. My school will notify me if any changes in my eligibility. I will be notified of any changes or additions to my subsidized and/or unsubsidized loans in a separate disclosure statement.

**Loan Cancellation**

I may pay back all or a part of a disbursement within timeframes set by the Act, as explained in the Borrower's Rights and Responsibilities Statement or other disclosure statement I receive at or before disbursement. In such case, the origination fee and guarantee fee will be reduced or eliminated in proportion to the amount of the disbursement returned within those timeframes. I will not have to pay interest charges if I return the full loan amount as provided in the Act.

**Interest**

Unless my lender notifies me in writing of a lower rate(s), the rate(s) of interest for my loans are those specified in the Act. The interest rate information is presented in the Borrower's Rights and Responsibilities Statement accompanying this MPN. The interest rate is presented in a disclosure statement that is issued to me.

Interest accrues on the unpaid principal balance of each loan from the date of disbursement by the lender until the loan is paid in full. I agree to pay all interest charges on my subsidized Federal Stafford Loans except interest payable by the federal government under the Act. I agree to pay all interest charges on my unsubsidized Federal Stafford Loans. If I fail to make required payments of interest before the beginning or resumption of principal repayment, or during a period of deferment or forbearance, I agree that the lender may capitalize such interest as provided under the Act. There is no federal interest subsidy on unsubsidized loans, so the total amount of interest I am required to repay on unsubsidized loans will be higher than on subsidized loans.

**Origination Fee and Guarantee Fee**

For each subsidized and unsubsidized loan, the federal government charges an origination fee equal to the amount required by the Act. The guaranty agency(ies) that guarantee(s) my loan(s) (in each case, the "guarantor") may charge a per loan guarantee fee not to exceed a maximum amount specified in the Act. I will pay these fees, as

identified in the disclosure statement, which will be deducted proportionately from each disbursement of my loans. I understand the origination and guarantee fees may be refundable only to the extent permitted by the Act.

**Late Charges and Collection Costs**

The lender may collect from me: **(i)** a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after it becomes due, and **(ii)** any other charges and fees that are permitted by the Act for the collection of my loans. If I default on any loans, I will pay reasonable collection fees and costs, plus court costs and attorney fees.

**Repayment**

I must repay the full amount of the loans made under this MPN and accrued interest. Federal Stafford Loans have a repayment grace period, which will be disclosed in my disclosure statement. I will repay the principal of each loan in periodic installments during a repayment period that begins on the day immediately following the end of the applicable grace period. Payments submitted by me or on my behalf (exclusive of refunds) may be applied first to charges and collection costs that are due, then to accrued interest that has not been capitalized, and finally to the principal amount.

I understand that the school's certification of my loan eligibility determines whether my loans must be repaid as subsidized and/or unsubsidized loans.

The lender will provide me with a repayment schedule that identifies my payment amounts and due dates. Except as otherwise provided in the Act, the minimum annual payment required on all my FFELP loans is $600 or the amount of interest due and payable, whichever is larger. My lender must provide me with a choice of repayment plans consistent with the provisions of the Act.

If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance. The lender may align payment dates on my loans or grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled payments.

I may prepay all or any part of the unpaid balance on my loans at any time without penalty. If I do not specify which loans I am prepaying, the lender will determine how to apply the prepayment in accordance with the Act. Upon repayment in full of each loan under this MPN, I agree to accept written notification of such loan payoff in place of receiving the original MPN.

**Acceleration and Default**

At the option of the lender, the entire unpaid balance of the applicable loan(s) made under this MPN will become immediately due and payable, (this is called "acceleration"), upon the occurrence of any one of the following events: **(i)** I fail to enroll as at least a half-time student at the school that certified my loan eligibility, **(ii)** I fail to use the proceeds of the loan solely for educational expenses, **(iii)** I make a false representation(s) that results in my receiving a loan for which I am not eligible, or **(iv)** I default on the loan.

The following events shall constitute a default on my loan: **(i)** I fail to pay the entire unpaid balance of the applicable loans after the lender has exercised its option under items (i), (ii), or (iii) in the preceding paragraph; **(ii)** I fail to make installment payments when due, provided my failure has persisted for at least 270 days for payments due monthly or 330 days for payments due less frequently than monthly; or **(iii)** I fail to comply with other terms of the loans, and the lender or guarantor reasonably concludes I no longer intend to honor my repayment obligation. If I default, the guarantor may purchase my loans and capitalize all then-outstanding interest into a new principal balance, and collection fees will become immediately due and payable.

If I default, the default will be reported to all national credit bureaus and will significantly and adversely affect my credit history. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, the loans may be subject to income-contingent repayment (including potential collection of amounts in excess of the principal and interest) in accordance with the Act.

**Governing Law and Notices**

The terms of this MPN will be interpreted in accordance with the applicable federal statutes and regulations, and the guarantor's policies. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN.

If a particular loan under this MPN is made by the school, or if the proceeds of a particular loan made under this MPN are used to pay tuition and charges of a for-profit school that refers loan applicants to the lender, or that is affiliated with the lender by common control, contract, or business arrangement, any lender holding such loan is subject to all claims and defenses that I could assert against the school with respect to such loan. My recovery under this provision shall not exceed the amount I paid on such loan.

If I reside in the state in which the principal office of the guarantor is located, the guarantor may sue to enforce the applicable loans in the county in which the guarantor's office is located. However, if I object to being sued there and I mail a written objection to the guarantor that is postmarked no later than 30 days after I am served with the suit, the guarantor will either have the court transfer the suit to the county in which I live or will dismiss the lawsuit.

Any notice required to be given to me will be effective if sent by first class mail to the latest address the lender has for me or by electronic means to an electronic address that I have provided. I will immediately notify the lender of any change of address or status as specified in the Borrower's Rights and Responsibilities Statement. Failure by the lender to enforce or insist on compliance with any term on this MPN shall not be a waiver of any right of the lender. No provision of this MPN may be modified or waived except in writing. If any provision of this MPN is determined to be unenforceable, the remaining provisions shall remain in force.

---

**Notice About Subsequent Loans Made Under This Master Promissory Note**

This Master Promissory Note authorizes the lender to disburse multiple loans during the multi-year term of this MPN upon my request and upon the school's certification of my loan eligibility. Subsequent loans may be made under this MPN for the same or subsequent periods of enrollment only at schools designated by the Secretary of the U.S. Department of Education.

I understand that no subsequent loans will be made under this MPN after the earliest of the following dates: **(i)** the date my lender receives my written notice that no further loans may be disbursed under the MPN; **(ii)** one year after the date of my signature on this MPN if no disbursement is made during such twelve month period; or **(iii)** ten years after the date of my signature on this MPN or the date the lender receives this MPN.

Any amendment to the Act governs the terms of any loans disbursed on or after the effective date of such amendment, and such amended terms are hereby incorporated into this MPN.

| Federal Family Education Loan Program (FFELP) **Federal Stafford Loan Master Promissory Note Instructions and Notices** | Guarantor, Program, or Lender Identification |
|---|---|

## Instructions for Completing Promissory Note

*This is a Master Promissory Note under which you may receive multiple subsidized and unsubsidized Federal Stafford Loans over a maximum ten year period. Except for interest charges the federal government pays on your behalf on subsidized Federal Stafford Loans while you are in school and during your grace and deferment periods, you are responsible for paying interest on the principal amount of your loans from the date of disbursement until the loans are paid in full.*

*Use a dark ink ball point pen or typewriter. Do not complete this form in pencil. If an item has been completed for you and any part of it is incorrect, cross out the incorrect information and print the correct information. Incorrect, incomplete, or illegible information may cause your loan to be delayed.*

**Item 1:** Enter your last name, then your first name and middle initial.

**Item 2:** Enter your nine-digit Social Security Number. If this item has been completed for you, review it for correctness. If it is incorrect, cross out the entire incorrect number and print the entire correct Social Security Number in this box. Your loan(s) cannot be processed without a Social Security Number. Read the Privacy Act and the Financial Privacy Act Notices below before completing this item.

**Item 3:** Enter your permanent home street address, apartment number, city, state, and zip code. If you have a Post Office Box and a street address, list both. A temporary school address is not acceptable.

**Item 4:** Enter the area code and telephone number for the address listed in Item 3. If you do not have a telephone, enter N/A.

**Item 5:** Using only numbers, enter the month, day, and four-digit year of your birth, (For example, for June 24, 1982, you would enter 06/24/1982). Be careful not to enter the current year.

**Item 6:** Enter the two-letter abbreviation for the state

that issued your driver's license followed by the driver's license number. If you do not have a driver's license, enter N/A.

**Item 7:** Enter your preferred e-mail address if you have one. You are not required to provide this information. If you do, we may use your e-mail address to communicate with you. If you do not have an e-mail address or do not wish to provide one, write N/A.

**Item 8:** Enter the name and address of the lender from which you wish to borrow. If you do not have a lender, contact your school's financial aid office, a bank or other financial institution, or the guarantor or program listed on this form for information on lenders willing to make loans to students attending your school.

**Item 9:** If you know the lender code, enter it here. Otherwise, leave this item blank.

**Item 10:** Enter the requested reference information for two adults who do not share a common address. The first reference should be a parent (if living), legal guardian, or an adult relative. References with addresses outside the U.S. are not acceptable. Both references must be completed in full.

If a reference does not have a telephone or an e-mail address or does not wish to provide an e-mail address, write N/A. If you provide an e-mail address for a reference, the lender or holder of your loan(s) may use it to communicate with the reference. All requested items must be completed or your loan(s) will be delayed.

**Item 11:** Your school will notify you of the amount of subsidized and unsubsidized Federal Stafford loans you are eligible to receive for this and subsequent academic periods. You may decline a loan or request a lower amount by contacting your lender or school. Additional information is included under "Loan Cancellation" in the Borrower's Rights and Responsibilities Statement.

**Item 12:** Check this box only if you want to make interest payments while in school.

**Items 13, 14, and 15:** Read these items carefully.

**Item 16:** Sign your legal name, including your first name, middle initial, and last name. Use a dark ink ballpoint pen, if you are completing a paper copy of this MPN.

**Item 17:** Enter the date you are signing this MPN.

## Important Notices

**Privacy Act Notice**

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §428(b)(2)(A) et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1078(b)(2)(A) et seq.) and the authority for collecting and using your Social Security Number (SSN) is §484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)). Participating in the Federal Family Education Loan Program (FFELP) and giving us your SSN is voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge or forgiveness) under the FFELP, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed to third parties as authorized under routine uses in the appropriate systems of records. The routine uses of this information include its disclosure to federal, state, or local agencies, to other federal agencies under computer matching programs, to agencies that we authorize to assist us in administering our loan

programs, to private parties such as relatives, present and former employers, business and personal associates, to credit bureau organizations, to educational and financial institutions, to guaranty agencies and to contractors in order to verify your identity, to determine your eligibility to receive a loan(s) or a benefit on a loan(s), to permit the servicing or collection of your loan(s), to counsel you in repayment efforts, to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, to locate you if you become delinquent in your loan payments or if you default, to provide default rate calculations, to provide financial aid history information, to assist program administrators with tracking refunds and cancellations, or to provide a standardized method for educational institutions to efficiently submit student enrollment status.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**Financial Privacy Act Notice**

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), the U.S. Department of Education will have access to financial records in your student loan file maintained by the lender in compliance with the administration of the Federal Family Education Loan Program.

**Paperwork Reduction Notice**

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0006. The time required to complete this information is estimated to average 1.0 hours (60 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. **If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to the U.S. Department of Education, Washington, DC 20202-4651.**

**If you have questions regarding the status of your submission of this form, contact the lender, guarantor, or program identified in the upper right-hand corner of this form.**

# Borrower's Rights and Responsibilities Statement

**Important Notice:** The Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of loans you receive under the Federal Stafford Loan Master Promissory Note (MPN). Please keep a copy of this statement because it applies to present and subsequent loans received under the MPN. You may contact your lender at any time for another copy of this statement.

The Federal Family Education Loan Program (FFELP) includes the following loans:

- Subsidized Federal Stafford Loan (formerly known as Guaranteed Student Loan [GSL]),
- Unsubsidized Federal Stafford Loan,
- Federal Insured Student Loan (FISL),
- Federal Supplemental Loans for Students (SLS), also known as ALAS,
- Federal PLUS (parent) Loan,
- Federal Consolidation Loan.

The FFELP is authorized by Title IV, Part B of the Higher Education Act of 1965, as amended.

**1. Governing Law –** Loans disbursed under this Master Promissory Note (MPN) are subject to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U. S. Department of Education regulations (collectively referred to as the "Act"). **NOTE: Any change to the Act applies to the terms of any loans made on or after the effective date of the change.**

**2. Use of this MPN –** I may receive more than one loan under this MPN over a period of up to ten years. Whether I may receive loans under this MPN for only one academic period, or for multiple academic periods, depends on the school I am attending. I may receive loans under this MPN from the original lender, or a lender who assumes the right to offer loans under this MPN, even if I change my school (provided the school is authorized to certify subsequent loans under this MPN) and even if the guaranty agency changes. I must sign a new MPN if I wish to receive loans from a lender other than my original lender, or a lender who assumes the right to offer me loans under this MPN.

**3. Subsidized and Unsubsidized Loans –** There are two types of Federal Stafford Loans that I may be eligible for under this MPN: subsidized and unsubsidized. The subsidized Federal Stafford Loan is based on need. If I qualify, the government pays the lender the interest due on my subsidized loans while I am in school and during grace and deferment periods ("lender" refers to the original lender and its successors, including any subsequent holder of this MPN). I am otherwise responsible for interest that accrues on my subsidized loan. The unsubsidized Federal Stafford Loan is not based on need. I am responsible for all interest that accrues on my unsubsidized loans.

**4. Maximum Program Loan Amounts –** Under the Federal Stafford Loan Program (including both subsidized and unsubsidized loans), I may borrow amounts under this MPN up to and including the dollar amounts shown in the chart on this page (Federal Stafford Loan Maximums).

I am subject to the limits on these loan amounts on the basis of the following:

| Federal Stafford Loan Maximums[1] | | |
|---|---|---|
| **DEPENDENT UNDERGRADUATES[2]** | **Subsidized** | **Total** (Subsidized & Unsubsidized)[3] |
| First Year | $2,625 | $2,625 |
| Second Year | $3,500 | $3,500 |
| Third Year and Beyond | $5,500 | $5,500 |
| **INDEPENDENT UNDERGRADUATES** (and dependents whose parents are unable to borrow under the PLUS program) | | |
| First Year | $2,625 | $6,625 |
| Second Year | $3,500 | $7,500 |
| Third Year and Beyond | $5,500 | $10,500 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $8,500 | $18,500 |
| **AGGREGATE LIMITS[3]** | | |
| **DEPENDENT UNDERGRADUATES** | $23,000 | $23,000 |
| **INDEPENDENT UNDERGRADUATES** (and dependents whose parents are unable to borrow under the PLUS program) | $23,000 | $46,000 |
| **GRADUATE AND PROFESSIONAL STUDENTS** | $65,500 | $138,500 |

1   Certain health professions students may qualify for higher limits.
2   All undergraduate annual loan limits are subject to proration.
3   If the borrower does not have financial need for a subsidized Federal Stafford Loan using expected family contribution (EFC), or has reached the aggregate limit in subsidized Federal Stafford Loans, the borrower may receive up to and including this entire amount in unsubsidized Federal Stafford Loans assuming he or she has remaining eligibility for the loan.

- My academic level (freshman, sophomore, etc.),
- My status as a dependent student or independent student,
- The length of the academic program in which I am enrolled,
- The length of the remainder of my undergraduate program of study if it is less than one academic year, and
- As otherwise authorized by the Act.

**5. Maximum Individual Loan Limits –** For each academic period, my school determines the maximum loan amount I am eligible to receive by considering the factors in Section 4 above and other factors such as my Cost of Attendance, Expected Family Contribution, and other financial aid awarded to me. If my school awards both subsidized Federal Stafford Loans and unsubsidized Federal Stafford Loans, it is required to determine my eligibility for a subsidized Federal Stafford Loan before determining my eligibility for an unsubsidized Federal Stafford Loan.

If I have received student loans from more than one lender or from other federal student loan programs, I am responsible for informing my school and my lender of my other student loans. In some cases, I may not be eligible for loans for which I have applied.

**6. Use of Loan Money –** I must use the loan money for authorized educational expenses for attendance at the school that certified my eligibility

for the time period shown on my disclosure statement. Authorized expenses include the following:

- Tuition,
- Room,
- Board,
- Institutional fees,
- Books,
- Supplies,
- Equipment,
- Dependent child care,
- Transportation,
- Commuting expenses,
- Rental or purchase of a personal computer,
- Origination fee and guarantee fee, and/or
- Other documented, authorized costs.

**7. Loan Fees –** I may be charged an origination fee and/or a guarantee fee for each loan made under this MPN. Neither fee may exceed the rate as specified in the Act. The amount of these fees will be deducted proportionally from each disbursement.

**8. Disbursement of Loan Money –** Generally, my loan money will be disbursed to my school in multiple installments based on the academic terms at my school. If my school does not have academic terms, my loan money will generally be disbursed in at least two installments, one at the beginning and one at the midpoint of my enrollment period for the applicable loans.

If I am enrolled in a foreign school, or in a study abroad program through a school in the U.S. (home institution), the disbursement requirements stated above do not apply and:

■ The loan money may be sent in one installment directly to me, or
■ I may provide my foreign school or home institution, as applicable, a written authorization designating an individual not affiliated with the foreign school or home institution as my power-of-attorney to negotiate any loan disbursements on my behalf.

Loan money may be credited to my account at my school or disbursed by a check or other means made payable to me.

If this is my first student loan under either the Direct Loan Program or the FFELP, I must receive entrance counseling before the first disbursement of my subsidized or unsubsidized Federal Stafford Loan can be made.

**9. Change of Status –** I must notify my school and/or lender of certain changes.

I must notify my school's financial aid office if any of the following events take place:

■ I reduce my enrollment status to less than half time,
■ I withdraw from school,
■ I stop attending classes,
■ I fail to re-enroll for any term,
■ I have a change in my expected graduation date, and/or
■ I change my name, local address, permanent address, or e-mail address.

Shortly before my enrollment ends, I must participate in exit counseling with my school, during which I will update my loan records about my:

■ Permanent address,
■ E-mail address,
■ Telephone number,
■ Future employer, and
■ References.

I must notify the lender of a particular loan if I fail to enroll with respect to such loan:

■ At least half time for the loan period certified, or
■ At the school that certified my eligibility.

I must promptly notify my lender(s) if any of the following events occur before loans held by my lender(s) are repaid:

■ I change my address, telephone number, or e-mail address
■ I change my name (for example, maiden name to married name),
■ I withdraw from school or begin attending less than half time,
■ I transfer from one school to another school,
■ I change my employer or my employer's address or telephone number changes, and/or
■ I have any other change in status that would affect my

loan (for example, the loss of eligibility for an unemployment deferment by obtaining a job).

**10. Effect of Loans on Other Student Aid –** Federal law requires that before receiving a Federal Stafford Loan, my school must receive a determination of my Pell Grant eligibility. Also, because an unsubsidized loan is more expensive to borrow than a subsidized loan, my school must determine my subsidized loan eligibility before I am offered an unsubsidized loan.

**11. Grace Period –** I will receive a 6-month grace period before the first payment of my Federal Stafford Loan must be made. The grace period begins the day after I cease to be enrolled at least half time at an eligible school.

My grace period does not include any period up to 3 years during which I am called or ordered to active duty for more than 30 days from a reserve component of the Armed Forces of the United States, including the period necessary for me to resume enrollment at the next available regular enrollment period.

**12. Repayment –** All of my loans made under this MPN must be repaid.

The repayment period for my loans begins the day after my 6-month grace period ends. My lender will notify me of the date my first payment is due.

I must make payments on my loans even if I do not receive a bill or repayment notice. Billing information is sent to me as a convenience, and I am obligated to make payments even if I do not receive any notice. My minimum annual payment required on all my FFELP loans will not, unless the lender otherwise agrees, be less than $600, except as provided in a graduated or income-sensitive repayment plan. Notwithstanding the preceding sentence, my minimum annual payment will never be less than the amount of interest due and payable.

My repayment period for each loan lasts at least 5 years but may not exceed 10 years (except under an extended repayment plan) from the day after the grace period ends.

I will be given the opportunity to choose one of the following repayment plans (for the following repayment plans, the time limits shown do not include periods of deferment and forbearance):

■ **Standard Repayment Plan –** Under this plan, I will make fixed monthly payments and repay my loan in full within 10 years (not including periods of deferment or forbearance) from the date the loan entered repayment. Payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period.
■ **Graduated Repayment Plan –** Under this plan, I will usually make lower monthly payments at first, and my payments will increase over time. No single payment will be more than three times greater than any other payment.
■ **Extended Repayment Plan –** Under this plan, I will make monthly payments based on fixed annual or graduated repayment amounts over a period not to exceed 25 years. Payments must be at least $50 a

month and will be more, if necessary, to repay the loan within the required time period. I am only eligible for this plan if (i) at the time I obtain a loan under this MPN I have no outstanding balance on a FFELP loan made before October 7, 1998, and (ii) I accumulate outstanding FFELP Program loans exceeding $30,000.
■ **Income-Sensitive Repayment Plan –** If I choose this plan, my monthly payments will be adjusted annually, based on my expected total monthly gross income from all sources. I may call my lender at any time for more information about this repayment plan option.

Under each plan, the number or amount of the payments may need to be adjusted to reflect annual changes in the variable interest rate.

These repayment plans will be explained in more detail during my exit counseling session. If I do not choose an income-sensitive, graduated, or extended repayment plan within 45 days after notification of my repayment choices, or if I choose an income-sensitive repayment plan but do not provide the required documentation within the lender-specified time frame, my lender will require that I repay the loan under a standard repayment plan. I may change the repayment plan on my loan(s) once a year.

There will be no penalty for prepaying any portion of my loans.

All payments and prepayments may be applied in the following order: late charges, fees, and collection costs first, outstanding interest second, and outstanding principal last.

If I fail to make any part of an installment payment within 15 days after it becomes due, I may owe a late charge. This charge may not exceed six cents for each dollar of each late installment.

**13. Interest Rates –** The interest rate on a Federal Subsidized Stafford Loan and a Federal Unsubsidized Stafford Loan is a variable rate that is based on a formula established in the Act. The interest rate may be adjusted each year on July 1. As a result, my interest rate may change annually, but it will never exceed 8.25 percent. After reviewing the actual interest rate, I may cancel or reduce any loan obtained under this MPN in accordance with the "Loan Cancellation" section that follows.

**14. Payment of Interest –** My lender will, during the in-school, grace, and deferment periods and during any period in which I am on active-duty military service, defer and align principal payments on my outstanding FFELP loans. Interest that accrues on all my subsidized FFELP loans during authorized forbearance periods, and on all my unsubsidized FFELP loans during periods when I am not making regularly scheduled payments may, unless precluded by the Act, be capitalized (added to the principal of my loans) — unless I pay the interest as it accrues.

Except for interest charges the federal government pays on my behalf for subsidized Federal Stafford

Loans (while I am in school at least half time, for up to 3 years during active duty service in the Armed Forces as described in the Grace Period section above, during the grace period after I leave school, or during any period of authorized deferment), it is my responsibility to pay interest on the principal amount of my loans from the date of disbursement until the loans are paid in full. For all other periods and for unsubsidized Federal Stafford Loans, it is my responsibility to pay interest on my loans.

If I inform my lender that I wish to pay interest as it accrues, but I do not submit the payments, my lender may capitalize that interest.

Capitalized interest increases the principal balance of my loans and the total amount of interest charges I must pay. Interest will be capitalized on my loans as provided under the Act. Generally, capitalization may occur no more frequently than quarterly. However interest that accrues on my unsubsidized Federal Stafford Loans during in-school, grace or deferment periods may only be capitalized at the end of such periods. In addition, interest may not be capitalized if my lender grants an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation. (See the chart entitled, "Capitalization of Federal Stafford Loan Interest," for further information on capitalization.)

The charts entitled Repaying Your Loans allow me to estimate the cost of capitalization and estimate the effect of capitalization on my monthly payments. If necessary, I must add two or more estimates of my payments together to approximate more closely the total monthly payment.

I may be able to claim a federal income tax deduction for interest payments I make on my FFELP loans. For further information, I may refer to the IRS Publication 970, which is available at http://www.irs.ustreas.gov.

**15. Loan Cancellation –** I understand that the terms of a full or partial loan cancellation depend on when I request the cancellation.

At any time before my loan money is disbursed, I may decline all or part of my loan money by notifying my school or lender. No origination fee, guarantee fee or interest will be charged on the amount of the loan that is cancelled.

■ If my school credits my loan to my student account, **I may cancel all or a part of my loan by informing my school within 14 days** after the date my school sends me a disbursement notice, or by the first day of the school's payment period, whichever is later. (My school can tell me the first day of the payment period.) If I cancel all or a portion of my loan as described in this paragraph, my school will return to my lender the cancelled amount of the loan money and the loan fees will be reduced or eliminated in proportion to the amount returned.

■ At any time within 120 days of disbursement, I may pay back all or a part of my loan. The loan fees will be reduced or eliminated in proportion to the amount returned.

**16. Sale or Transfer of Loans –** The lender may sell or otherwise transfer one or all of my loans without my consent. Should ownership of a loan be transferred, I will be notified of the name, address, and telephone number of the new lender if the address to which I make my payments changes. Sale or transfer of my loans does not affect my rights and responsibilities under such loans. If the lender sells my loans to another originating lender, the lender may also transfer the right to offer subsequent loans under the MPN to such purchaser. I always have the right to terminate a lender's ability to make loans to me under this MPN by written notice to the lender.

**17. Loan Discharge –** My loans will be discharged if documentation of my death is submitted to my lender. My loan(s) may also be discharged if a physician certifies that I am totally and permanently disabled as

defined by the Act. In addition, I must meet certain income requirements and may not receive any additional FFELP, Direct, or Federal Perkins Loans during a 3-year conditional discharge period. I may not receive a discharge due to total and permanent disability based on a condition that existed before I applied for that loan, unless a physician certifies that the condition substantially deteriorated after the loan was made.

My loan will not automatically be discharged in bankruptcy. In order to discharge a loan in bankruptcy, I must prove undue hardship in an adversary proceeding before the bankruptcy court.

In certain cases, the Act provides for loan discharge for borrowers who are unable to complete a course of study because the institution closes, or borrowers whose loan eligibility was falsely certified by the institution. The Act also provides for loan discharge in the amount of any required refund that my school failed to make to my lender on my behalf.

Neither the lender, the guarantor, nor the Department of Education vouch for the quality or suitability of the academic programs offered by participating schools. Unless I qualify for loan discharge under the Act, I must repay the loans even if I do not complete my education, I am unable to obtain employment in my field of study, or I am dissatisfied with, or do not receive, the education I paid for with the loans.

For additional information, I should contact my lender or guarantor.

**18. Consequences of Default –** Default is defined in detail in my MPN. If I default, the entire unpaid balance and any accrued collection fees on the applicable loans will become immediately due and payable. Failure to repay loans made under this MPN may result in any or all of the following:
■ Loss of federal and state income tax refunds,
■ Loss of other federal or state payments,
■ Legal action against me,

## Capitalization of Federal Stafford Loan Interest

**What Is Capitalization?**

Capitalization is a process whereby a lender adds unpaid interest to the principal balance of a loan. You are responsible for paying the interest due on your loan as described in Item 3 of this Rights and Responsibilities Statement.

If you fail to make required interest payments before the beginning or resumption of principal repayment, or if you are granted a deferment (on an unsubsidized Federal Stafford Loan) or forbearance, your lender may capitalize such interest as provided under the Act. The principal balance of your loan will increase each time your lender capitalizes unpaid interest. As a result, you will pay more interest charges over the life of the loan. When you leave school and begin repaying your loan, your monthly payment amount may be higher or, if your loan is subject to the $50 minimum payment, you will make more payments.

This chart compares the monthly payments on unsubsidized Federal Stafford Loans where interest is paid while the borrower is in school and loans where the interest is capitalized. This example uses the maximum interest rate for Federal Stafford Loans, 8.25%. This is an estimate only. The actual interest capitalized will depend on factors such as disbursement date, number of disbursements, and the variable interest rate.

| Treatment of Interest | Loan Amount | Capitalized Interest for 12 months | Principal to be Repaid | Monthly Payment | Number of Payments | Total Amount Repaid |
|---|---|---|---|---|---|---|
| When you pay the interest | $15,000 | $    0 | $15,000 | $184 | 120 | $23,315* |
| When you don't pay the interest | $15,000 | $1,238 | $16,238 | $199 | 120 | $23,900 |

*Total amount repaid includes $1,238 of interest paid by the borrower before the borrower entered repayment.

**Result:** During repayment, you pay $15 less per month and $585 less over the lifetime of your loan(s) when you pay the interest as it is charged.

*Contact your lender if you have questions or need more information.*

- Collection charges (including attorney fees) being assessed against me,
- Loss of my professional license,
- An increase in my interest rate,
- Loss of eligibility for other student aid and assistance under most federal benefit programs,
- Loss of eligibility for loan deferments,
- Negative credit reports to credit bureaus, and/or
- My employer withholding part of my wages to give them to my guarantor (administrative wage garnishment).

**19. Credit Bureau Notification** – Information concerning the amount, disbursement, and repayment status (current or delinquent) of loans will be reported to one or more national credit bureau organizations on a regular basis. If I default on any loans made under this MPN, that default also will be reported to all national credit bureaus. Before any guaranty agency reports such a default, I will be given at least 30 days notice that default information will be disclosed to the credit bureaus unless I enter into repayment arrangements within 30 days of the date on the notice. The guarantor will give me a chance to ask for a review of the debt(s) before the default is reported. My lender and guarantor must provide a timely response to a request from any credit organization about the accuracy and completeness of information reported by the lender or guarantor.

**20. Special Repayment Arrangements –**
- A Federal Consolidation Loan Program is available under which I (or my spouse and I jointly) may consolidate (combine) into one debt federal education loans received from different lenders and/or under different education loan programs. Depending on the amount I borrow, this program may result in an extension of my repayment period. Consolidation permits multiple debts to be combined into one monthly payment. For additional information, I should contact my lender or guarantor.
- Under certain circumstances, military personnel may have their educational loans repaid by the Secretary of Defense. Questions should be addressed to the local service recruiter. This is a recruiting program and does not pertain to prior service individuals or those not eligible for enlistment in the Armed Forces.
- In addition, volunteers who complete service in an approved national or community service project can earn an educational award. The award can be used to repay a Federal Stafford Loan. If I receive an educational award, I am responsible for providing my lender with information and documentation regarding my term of service and the award.
- If I have no outstanding loan balance on a FFEL or Direct Loan Program loan on October 1, 1998, or if I have no outstanding loan balance on the date I obtain a loan after October 1, 1998, I may be eligible for teacher loan forgiveness. The Department of Education will repay a fixed amount of my subsidized and unsubsidized Federal Stafford Loans if I have worked as a full-time teacher for five consecutive school years, and if I meet all other eligibility requirements under the Act. If I am in default on a FFELP loan or a Direct loan, I am not eligible for forgiveness on that loan(s) unless I have made satisfactory repayment arrangements.
- If I am a full-time child care provider and I had no outstanding balance on a FFELP loan or a Direct loan on October 7, 1998, or I had no outstanding balance on a FFELP loan on the date I obtained a loan after October 7, 1998, I may qualify for loan forgiveness under a demonstration program set forth in the Act. I understand that I must meet other eligibility requirements under the Act and that this program requires annual federal funding.

**21. Deferments –** Under certain circumstances, I have a right to defer (postpone) repayment. The types of deferments that are available to me depend on when I first obtained a FFELP loan. Upon request, my lender will provide me with a deferment application that explains the eligibility requirements. If I am in default on my loan(s), I am not eligible for a deferment.

If all of my outstanding FFELP loans were made on or after July 1, 1993, and when my first FFELP loan was made on or after July 1, 1993, I had no outstanding FFELP loans that were made before July 1, 1993, a deferment is available to me while I am:

- Enrolled at least half time at an eligible school,
- Engaged in a full-time course of study in a graduate fellowship program,
- Engaged in a full-time rehabilitation training program for individuals with disabilities (if the program is approved by the Department of Education),
- Conscientiously seeking, but unable to find, full-time employment (for up to three years),
- Experiencing an economic hardship as determined by federal law (for up to three years).

My lender will process an in-school deferment based on **(i)** my request along with documentation verifying my eligibility, or **(ii)** the lender's receipt of a school certification of eligibility in connection with a new loan, or **(iii)** the lender's receipt of student status information indicating that I am enrolled on at least a half-time basis.

In all other cases, I must provide my lender with a deferment request and evidence that verifies my eligibility.

If at the time I obtain a loan under this MPN I have an outstanding FFELP loan disbursed before July 1, 1993, information on applicable deferment opportunities will be found in my earlier promissory note materials.

**22. Forbearance –** If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called a forbearance. Interest charges continue to accrue during a forbearance period. The lender may grant me a forbearance in the following circumstances:

- Financial hardship, and/or
- Illness.

My lender is generally not required to grant a forbearance and may require me to provide my reasons for the request and other information. The lender may grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled installment payments. My lender may grant me an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation.

Circumstances that require my lender to grant me a forbearance include:

- Serving in a medical or dental internship or residency program, if I meet certain criteria.
- Serving in a national service position for which I receive a national service education award under the National and Community Service Trust Act of 1993. In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service.
- Qualifying for partial repayment of my loans under the Student Loan Repayment Program, as administered by the Department of Defense.
- Qualifying for loan forgiveness under the Teacher Loan Forgiveness Program, if I meet certain criteria (for up to five years).
- Qualifying for loan forgiveness under the Child Care Provider Loan Forgiveness Program (for up to five years).
- Having a monthly debt burden for Title IV loans that collectively equals or exceeds 20% of my total monthly gross income (for up to three years).

Upon request, my lender will provide me with forbearance information and a forbearance request form.

**Repayment information follows**

---

*Important Notice: Please retain this statement because it applies to present and subsequent loans received under the Master Promissory Note.*

Exhibit B

(Varno Promissory Note)

# Signature Education Loan℠ Program for NYU Students
### from Sallie Mae

**Call With Questions:**
1-800-695-3324

**Mail Applications To:**
Sallie Mae Servicing Corp.
PO Box 59030
Panama City, FL 32412-9030

Lender: Chase Manhattan Bank, Usa    City, ST: Wilmington, DE    Lender Code: 516745

## Section A: Student Applicant Section: Please complete all information in this section.

1. Loan Type: (Choose one)   Signature Student ☒    2. Cosigned? Yes ☐ No ☒    3. Loan Amount Requested $

4. Full Name   Last: Oldenburgh Rebecca   First   MI   Jr./Sr.    5. Social Security Number -6079    6. Date of Birth (month/day/year) 04/27/

7. Permanent Home Street Address: 87 Butler St Apt 4f   Apt #   Post Office Box   City   State: Brooklyn, NY   Zip Code: 11231-4723

8. Address While in School   Apt #   Post Office Box   City   State   Zip Code    9. Discipline (3 letter code)

10. Driver's License Number / State of Issuance: 2538/NY    11. Home Phone    12. Citizenship (Check One): US Citizen or National ☒   Permanent Resident ☐   Foreign Student ☐   (Permanent Residents must submit a copy of the front and back of their INS card. Foreign Students must have a US Citizen or Permanent Resident cosigner and submit a copy of your student visa.)

13. Total Student Loan Education Debt (Do not include amount requested on this application.)   Private $   Federal $   Other $

14. Have you ever defaulted on a student loan? Yes ☐ No ☒ (If yes, submit documentation regarding current status of the loan with your application.)    15. Academic period this loan will fund. (Month/Year) From: 09/07/1999 To: 05/11/2000    16. Work Phone

17. Reference: (Do not use cosigner.) Name: Kristin Harper    18. Reference's Permanent Address: 115 Tejah Ave Syr NY 13210    19. Reference's Home Phone: 0336    20. Relationship: Mother

## Section B: Cosigner Information Section: Please complete all information in this section if applying with a U.S. Citizen or Permanent Resident cosigner.

21. Full Name   Last   First   MI    22. Date of Birth (month/day/year)    23. Social Security Number

24. Current Street Address   Apt #   Post Office Box   City   State   Zip Code    25. Home Phone

26. How Long at Current Address   years   months    27. Gross Monthly Income $    28. Other Monthly Income $   Source: Note: You do not have to reveal alimony, child support or maintenance income unless you wish it to be considered as a basis for loan repayment.    29. Monthly Housing Payment ☐ Own ☐ Rent $    30. Total Other Monthly Payments $

31. Employer's Name    32. How Long Employed   years   months    33. Work Phone    34. Employer's Address

35. Reference: Nearest relative not living with you (Do not use borrower) Name:    36. Reference's Permanent Address    37. Reference's Home Phone    38. Relationship

39. Checking Account #   Savings Account #   Bank Name   Banking Relationships    40. Citizenship (Check One) US Citizen ☐   Permanent Resident ☐ (Permanent Residents must submit a copy of the front and back of your INS card.)

AS A COSIGNER, YOU ARE NOT REQUIRED TO ADD YOUR SPOUSE AS A SECOND COSIGNER, however, if you want your spouse's income and debts to be considered in the loan decision please have him/her complete boxes 41-45 and sign below.

41. Full Name   Last   First   MI   Jr./Sr.    42. Date of Birth (mm/dd/yy)    43. Social Security Number    44. Gross Monthly Income    45. Total Monthly Payments

## Section C: Borrower and Cosigner(s) Signatures:

46. I/We have read the Promissory Note attached to this application. (You may call 1-800-695-3324 to speak with a Signature Education Loan representative.) I Promise to pay: I/We promise to pay the lender or any other holder of this loan all sums disbursed under the terms of this application, plus interest and all other charges, which may become due as provided for by the Promissory Note. The terms and conditions set forth in this application and the Promissory Note constitute the entire agreement between you and me. I/We declare that the information provided above is true and complete to the best of my/our knowledge and belief.

Signature of Borrower: Rebecca A. Olden    Date: Sept 11, 99    Signature of Second Cosigner (If you completed boxes 41-45)    Date

Signature of Cosigner    Date

## Section D: School Section: Must be completed by an authorized school official.

47. School Name: New York Univ - School Of Social    48. School Code/Branch: 002785/0005    49. Program Code

51. Grade level A (Choose One)
**Undergraduate:**
01 - First Year   02 - Second Year   03 - Third Year
04 - Fourth Year   05 - Fifth Year
**Graduate:**
A - First Year   B - Second Year
C - Third Year   D - Fourth Year

52. Loan period (month/day/year) From: 09/07/1999 To: 05/11/2000

53. Anticipated Graduation Date (month/year): 05/17/2000

54. Enrollment Status:
☒ Full Time
☐ At Least Half Time
☐ Less Than Half Time

50. Authorized Loan Amounts and Disbursement Dates

| | month/day/year | Amount |
|---|---|---|
| 1st Disbursement | 08/25/1999 | $ 1,769.00 |
| 2nd Disbursement | 01/05/2000 | $ 1,769.00 |
| 3rd Disbursement | | $ |
| 4th Disbursement | | $ |
| Total Approved Amount | | $ |

55. I hereby certify that the student named in Section A is accepted for enrollment or is enrolled and in good standing and making satisfactory progress in an educational program determined to be eligible for the Signature Education Loan Program, that the student is eligible for the loan, and that the "Authorized Loan Amount" does not exceed the student's cost of education (minus other financial aid). I further certify that the School will, at the request of the loan holder or servicer, provide the loan holder or servicer with subsequent information regarding the student's whereabouts, that the institution will comply with all applicable policies and provisions, and that the information provided in Sections A, B, and D is true, complete and correct to the best of my knowledge and belief.

**School Certification:** I have read and agree with above paragraph.    Certification Sent Electronically ☒

Signature of authorized school official:    Print or type name and title:    Phone

Date: 09/03/1999   School Electronic Certification

*The SMART LOAN® Account*

**SallieMae**
Education leads us™
SMART LOAN Consolidation Center
P.O. Box 5600
Wilkes-Barre, PA 18773

# Application/Promissory Note
(Incomplete information can result in processing delays.)

## Section IA: Personal Information (Applicant)

1. LAST NAME **Oldenburgh**  FIRST NAME **Rebecca**  MIDDLE INITIAL **G**
2. NUMBER AND STREET **87 Butler St   Apt 4F**
   CITY **Brooklyn**  STATE **NY**  ZIP **11231**
3. PRIOR NAME
4. DATE OF BIRTH (MONTH/DAY/YEAR) **09/27/__**
   SOCIAL SECURITY NUMBER **6079**

5. DAYTIME TELEPHONE _____  FACSIMILE (FAX – optional) _____
6. GRADUATION DATE **5/14/00**
7. DRIVER'S LICENSE NUMBER AND STATE

Name and Address of a Relative Who Does Not Live, With Me:
9. LAST NAME **Harper**  FIRST NAME **Kristin**  MIDDLE INITIAL **L**
   NUMBER AND STREET **116 Tejah Ave**
   CITY **Syracuse**  STATE **NY**  ZIP **13210**

Name and Address of a Non-Relative:
10. LAST NAME **Myers**  FIRST NAME **Emily**  MIDDLE INITIAL
    NUMBER AND STREET **87 Butler St  Apt 4F**
    CITY **Brooklyn**  STATE **NY**  ZIP **11231**

My Employer Is:
8. COMPANY NAME **New York University**
   NUMBER AND STREET **25 W. 4th St  Rm 405**
   CITY **New York**  STATE **NY**  ZIP **10012**

## Section IB: Personal Information (Spouse) *Complete only if a spouse is jointly consolidating his/her student loans.*

11. LAST NAME ____  FIRST NAME ____  MIDDLE INITIAL ____
    NUMBER AND STREET ____
    CITY ____  STATE ____  ZIP ____
12. PRIOR NAME
13. SOCIAL SECURITY NUMBER
14. DATE OF BIRTH (MONTH/DAY/YEAR)
15. DAYTIME TELEPHONE ____  FACSIMILE (FAX – optional) ____
16. GRADUATION DATE
17. DRIVER'S LICENSE NUMBER AND STATE

My Employer Is:
18. COMPANY NAME ____  NUMBER AND STREET ____  CITY ____  STATE ____  ZIP ____

## Section II: Student Loan Information *Please read instructions carefully. If you need to list more than 8 loans, please use the "Supplemental Loan Listing Sheet" you will find in this package.*

| 19. | 20. NAME AND ADDRESS OF LOAN HOLDER/SERVICER | GRACE END DATE MONTH/DAY | 21. TO BE CON-SOLIDATED YES No | 22. TYPE OF LOAN (Stafford/GSL,etc) | 23. INTEREST RATE | 24. DATE OF DISBURSEMENT MONTH/DAY/YEAR | 25. ACCOUNT NUMBER | 26. EST. CURRENT OUTSTANDING BALANCE | 27. B=BORROWER S=SPOUSE J=JOINT |
|---|---|---|---|---|---|---|---|---|---|
| 1. | Sallie Mae PO Box 59012 Panama City FL 32412 | 12/18/00 | X | Signature | 7.75 | 10/15/99 | | 3,538 | B |
| 2. | Sallie Mae PO Box 59012 Panama City FL 32412 | 12/1/00 | X | Stafford Sub | 7.59 | 8/25/99 | | 8,500 | B |
| 3. | Sallie Mae PO Box 59012 Panama City FL 32412 | 12/1/00 | X | Stafford Unsub | 7.59 | 8/25/99 | | 10,000 | B |
| 4. | USA Group Loan Services Inc PO Box 771 Indianapolis, IN 46207 | 12/14/00 | X | Education | 6.32 | | | 15,419 | B |
| 5. | AFSA Data Corp P.O. Box 7051 Utica, NY 13504 | 12/14/00 | X | Fed Staf | 6.96 | | | 12,568 | B |
| 6. | AFSA Data Corp P.O. Box 7051 Utica, NY 13504 | 12/14/00 | X | Fed Staf | 6.32 | | | 15,424 | B |
| 7. | PNC Trust Po Box 2460 Harrisburg PA 17105 | 11/30/00 | X | Stafford | | 8/23/96 | | 5,500 | B |
| 8. | Chatham College Coraopolis PA 15108 c/o ECSI 171 Monture Rd | 3/31/00 | X | education | 9.33 | 3/28/96 | | 2,000 | B |

To Sallie Mae: By means of this application, I am applying to have my loans consolidated into a SMART LOAN Account at Sallie Mae, as allowed under Section 428C of the Higher Education Act of 1965, as amended ("The Act"). If Sallie Mae accepts this application, it is my understanding Sallie Mae will advance funds on my behalf to holders of the eligible loans named above which I herein select for consolidation in my SMART LOAN Account. The funds so advanced by Sallie Mae will be disbursed to the holders of the loans designated above in order to pay off those loans. If the amount that Sallie Mae advances to my loan holders exceeds the amount needed to pay off any balance, I understand that the holder will refund the excess to Sallie Mae for application against the outstanding balance of my SMART LOAN Account. If the amount that Sallie Mae advances to my loan holders is less than the amount needed to pay off my balance, I agree to pay off the remaining balance or take such actions as Sallie Mae deems appropriate to authorize Sallie Mae to include the remaining amount in my SMART LOAN Account.

## Section III: Repayment Options (Please choose one)

28.
- [ ] MAX-2 OPTION with two years of interest-only payments
- [ ] MAX-4 OPTION with four years of interest-only payments
- [ ] LEVEL PAYMENT PLAN
- [ ] INCOME SENSITIVE REPAYMENT PLAN
- [ ] EXTENDED REPAYMENT PLAN with level payments
- [ ] EXTENDED REPAYMENT PLAN with two years of interest-only payments
- [X] EXTENDED REPAYMENT PLAN with four years of interest-only payments

## Section IV: General Information *Please read and sign in all appropriate places indicated.*

29. **PROMISE TO PAY**
I, the undersigned borrower, promise to pay to the order of the Student Loan Marketing Association (Sallie Mae), or a subsequent holder of this promissory note, at such address as is designated by Sallie Mae, or a subsequent holder of this promissory note, such loan amount as is advanced on my behalf, to pay fully simple interest on the unpaid principal balance thereof at the rate provided on the reverse side hereof, all in accordance with the terms of this promissory note, such loan amount is advanced on my behalf, to pay all late charges and to pay reasonable attorney's fees and other costs permitted by law and incurred by Sallie Mae, or a subsequent holder of this promissory note, in the collection of any amount not paid when due. I understand that the amount of my loan will be based on the pay-off balance of loans selected for consolidation as provided for the holders of such loans and may exceed my estimate of such pay-off balances. My signature below certifies that I have read, understood and agreed to the conditions and authorizations stated in the terms herein and on the reverse side hereof and have retained a copy of this application/promissory note.

If I am applying for consolidation with my spouse, I confirm that my spouse and I are legally married and that we each understand and agree that each of us will be liable for the entire amount of the debt represented by this consolidation loan without regard to the amount of our respective loan obligations being consolidated and without regard to any subsequent change in our marital status. We each understand that this means either of us may be required to pay the entire amount due if my spouse is unable or refuses to pay. If applying for a loan with my spouse, I, the borrower, understand that the Federal Consolidation Loan I am applying for will be canceled only if both my spouse and I die or become totally and permanently disabled. I further understand that I may postpone repayment of the loan if both my spouse and I elect to do so, but only if both my spouse and I submit a written request that confirms Federal Consolidation Loan program deferment or forbearance eligibility for both my spouse and me.

**APPLICANT(S) CERTIFICATION**
By my signature, I certify that all of the loans selected for consolidation have been made to me to finance my education. I also certify that I have no consolidation loan application pending with another lender. If all my loans are with one FFELP holder, and that holder is not Sallie Mae, I may consolidate with Sallie Mae if I am unable to provide me with a consolidation loan with an income-sensitive repayment schedule that is satisfactory to me. If my FFELP loans are with multiple lenders or I have no FFELP loans, Sallie Mae may consolidate my loans. I further certify that I do not owe a refund on any Federal Pell Grant or Supplemental Educational Opportunity Grant, and that if I am selecting for consolidation a loan that is in default, I have made satisfactory repayment arrangements before submitting this application.

I certify that the above information is true and correct. I have read the material and understand my rights and responsibilities under the loan consolidation program.
This application/promissory note will be governed by federal law applicable to consolidation loans.

**COMBINED PAYMENT PLAN AUTHORIZATION**
If I have HEAL loans serviced by Sallie Mae, I authorize Sallie Mae to establish a Combined Payment Plan on my behalf.

**CRIMINAL PENALTIES**
WARNING: Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment under the United States Criminal Code and Section 490 of the Act.

**THIS IS A LOAN THAT MUST BE REPAID.**

30a. X APPLICANT SIGNATURE *Rebecca Olden*   DATE **9-29-00**
30b. X SPOUSE SIGNATURE (IF JOINTLY CONSOLIDATING)   DATE
   SLMA O

**PERMISSION TO VERIFY LOAN BALANCES**
To Whom It May Concern: I hereby authorize you to release to Sallie Mae, for purposes of verifying student loan information in order that I may consolidate my student loans into a combined payment plan pursuant to the Higher Education Act of 1965, as amended, any information concerning my student loans that Sallie Mae requests in connection with such loan consolidation or combined payment plan. This information is for the use of Sallie Mae in consolidating my student loans. A copy of this authorization may be deemed to be an original.
Your prompt reply and cooperation will help us to expedite my loan consolidation. Thank you.

31a. X APPLICANT SIGNATURE *Rebecca Olden*   DATE **9-29-00**  SSN **6079**
31b. X SPOUSE SIGNATURE (IF JOINTLY CONSOLIDATING)   DATE   SSN

**SALLIE MAE COPY** (Return to Sallie Mae)

◄ Remove this copy along perforated line and return to Sallie Mae. ►

Loan Consolidation Center
P.O. Box 5600
Wilkes-Barre, PA 18773

# Supplemental Loan Listing Sheet

Application/Promissory Note

(Use this form only to list additional applicant and/or spouse loans to be included in your consolidation loan or considered for extending your repayment term.
If you use this form, you must return it with your completed Application/Promissory Note. Please print neatly or type. Follow Application/Promissory Note Instructions.)

## Section IA:
Personal Information (Applicant)

| BORROWER NAME | SOCIAL SECURITY NUMBER |
|---|---|
| Rebecca Oldenburgh | ████ 6079 |

## Section IB:
Personal Information (Spouse)  (Do not complete unless you are consolidating with your spouse.)

| SPOUSE NAME | SOCIAL SECURITY NUMBER |
|---|---|

## Section II:
Supplemental Listing of Education Loans
(See Section II on the Application/Promissory Note Instructions for information on the loans you should list. Loans already listed on your Application/Promissory Note should not be listed again.)

| NAME AND ADDRESS OF LOAN HOLDER/SERVICER | 20. GRACE END DATE MONTH/YEAR | 21. TO BE CON-SOLIDATED Yes | No | 22. TYPE OF LOAN (Stafford/GSL, etc) | 23. INTEREST RATE | 24. DATE OF DISBURSEMENT MONTH/DAY/YEAR | 25. ACCOUNT NUMBER | 26. EST. CURRENT OUTSTANDING BALANCE | 27. B=BORROWER S=SPOUSE J=JOINT |
|---|---|---|---|---|---|---|---|---|---|
| 9. PNC Bank PO Box 78208 Phoenix, AZ 85062 | 12/1/00 | X | | FSL | 7.81 | | ███ 079-1 | 25,625 | B |
| 10. | | | | | | | | | |
| 11. | | | | | | | | | |
| 12. | | | | | | | | | |
| 13. | | | | | | | | | |
| 14. | | | | | | | | | |
| 15. | | | | | | | | | |
| 16. | | | | | | | | | |

APPLICANT'S SIGNATURE

X _Rebecca Oldenburgh_                    DATE 9-29-00

SPOUSE'S SIGNATURE (if applicable)

X _____                DATE _____

**INSTRUCTIONS:** If you used this form to list additional education loans that you wish to be consolidated or taken into consideration in calculating your maximum repayment period, please include it with your application. Please keep a copy of this form, along with the pink Applicant Copy of the Application/Promissory Note, for your files.

| **Federal Family Education Loan Program (FFELP)** | Guarantor, Program, or Lender Identification | **WEB** | OMB No. 1845-0036<br>Form approved<br>Exp. date 10/31/2006 |
|---|---|---|---|

# Federal Consolidation Loan
# Application and Promissory Note

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both, under the United States Criminal Code and 20 U.S.C. 1097.

## Before You Begin

Read the Instructions for Completing the Federal Consolidation Loan Application and Promissory Note. Print using dark ink or type. This form must be signed and dated by the applicant(s).

## Section A. Borrower Information

| 1. Last Name | First Name | MI | 2. Social Security Number |
|---|---|---|---|
| OLDENBURGH | REBECCA | G | ███6079 |

**3A.** Permanent Street Address (Include Number, Street, Apartment Number, City, State, Zip Code)

1774 WENDELL AVE          SCHENECTADY          NY     12308

**3B.** Permanent Mailing Address, if different (Include P.O. Box, RFD, or General Delivery, City, State, Zip Code)

| 4. Home Area Code/Telephone Number | 5. Former Name(s) |
|---|---|
| ███████ | |

| 6. Date of Birth (Month/Day/Year) | 7. Driver's License State and Number |
|---|---|
| 4/27/1976 | State          #  N/A |

**8.** Fax Number and E-mail Address (Optional)

Fax (    )                 E-mail Address

**9.** Employer Name

NEW YORK STATE BAR ASSOCIATION

Address

1 ELK ST

| City | State | Zip Code | Employer Area Code/Telephone Number |
|---|---|---|---|
| ALBANY | NY | 12207 | ███████ |

| 10. Consolidating Lender Name | 11. Lender Code, if known |
|---|---|
| Sallie Mae | |

## Section B. Spouse Information

***Only complete this section if your spouse has eligible loans and you both wish to consolidate jointly.*** If you complete Section B, also include your spouse's loan(s) in Sections D.1 and D.2. Your spouse must also sign and date Item 38 in Section G.

| 12. Last Name | First Name | MI |
|---|---|---|
| | | |

| 13. Social Security Number | 14. Date of Birth (Month/Day/Year) |
|---|---|
| | |

| 15. Former Name(s) | 16. Driver's License State and Number |
|---|---|
| | State          # |

**17.** Fax Number and E-mail Address (Optional)

Fax (    )                 E-mail Address

**18.** Employer Name

Address

| City | State | Zip Code | Employer Area Code/Telephone Number |
|---|---|---|---|
| | | | (    ) |

## Section C. Reference Information

You must provide two separate references with different U.S. addresses. Do not include individuals who live with you (e.g., spouse) or live outside the United States.  Both references must be completed fully and should be relatives or acquaintances you (or you and your spouse, if consolidating jointly) have known for at least three years.

| | A. | B. |
|---|---|---|
| 19. Name | ANDREW  VARNO | KRISTIN  HARPER |
| Permanent Address | 1774 WENDELL AVE | 115 TEJAH AVE |
| City, State, Zip Code | ALBANY, NY 12308 | SYRACUSE, NY 13210 |
| E-mail Address (Optional) | | |
| Area Code/Telephone Number | ( ████████ | ( ███████ |
| Relationship to Borrower | | |

| Borrower's Name | OLDENBURGH | REBECCA | G | Social Security Number | ▮6079 |

Spouse's Name _____   Social Security Number _____
(Please print. Enter spouse's information only if you completed Section B.)

## Section D.1. Education Loan Indebtedness — Loans You Want to Consolidate

***Read the instructions before completing this section.*** List all education loans you want to consolidate, including loans currently held by the lender that will be consolidating your loans. Use the Loan Codes listed in the instructions. If you need to list additional loans, use the Additional Loan Listing Sheet included in this package. Include your spouse's loans only if Section B has been completed. **ONLY LIST LOANS THAT YOU WANT TO CONSOLIDATE IN THIS SECTION.**

| 20. Loan Code (See Instructions) | 21. Loan Holder Name and Mailing Address | 22. B=Borrower S=Spouse J=Joint | 23. Loan Account Number | 24. Interest Rate | 25. Payoff Amount |
|---|---|---|---|---|---|
| CNSS | SALLIE MAE TRUST - LSC/FL<br>1002 ARTHUR DRIVE<br>LYNN HAVEN, FL | B | ▮9-1-05 | 8.125 | $46,208.46 |
| CNSL | SALLIE MAE TRUST - LSC/FL<br>1002 ARTHUR DRIVE<br>LYNN HAVEN, FL | B | ▮9-1-06 | 8.125 | $46,096.80 |
| STF3 | SALLIE MAE TRUST - LSC/FL<br>1002 ARTHUR DRIVE<br>LYNN HAVEN, FL | B | ▮9-1-07 | 7.14 | $5,239.36 |
| STFS | SALLIE MAE TRUST - LSC/FL<br>1002 ARTHUR DRIVE<br>LYNN HAVEN, FL | B | ▮9-1-08 | 7.14 | $1,480.01 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

**26. Grace Period End Date –** If any of the loans that you have selected for consolidation are in a grace period and you wish to delay processing until you have completed your grace period, enter your expected grace period end date. If you do not wish to delay processing, leave this field blank.   **(Month/Year)** _____

Borrower's Name    OLDENBURGH        REBECCA     G     Social Security Number    ███ 5079

Spouse's Name
(Please print. Enter spouse's information only if you completed Section B.)      Social Security Number

## Section D.2. Education Loan Indebtedness — Loans You Do Not Want to Consolidate

*Read the instructions before completing this section.* List all education loans that you are not consolidating but want considered in calculating your maximum repayment period. Remember to include loans held by the lender that will be making the Federal Consolidation Loan, but that you do not want to include in the Federal Consolidation Loan. Use the Loan Codes listed in the instructions. If you need to list additional loans, use the Additional Loan Listing Sheet included in this package. Include your spouse's loans only if Section B has been completed. **ONLY LIST LOANS THAT YOU DO NOT WANT TO CONSOLIDATE IN THIS SECTION.**

| 27. Loan Code (See Instructions) | 28. Loan Holder Name and Mailing Address | 29. B=Borrower S=Spouse J=Joint | 30. Loan Account Number | 31. Interest Rate | 32. Current Balance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## Section E. Repayment Plan Selection

**Item 33:** You may choose one of the repayment options described below for your Federal Consolidation Loan. The maximum repayment period will be 10 to 30 years depending on your student loan debt. You can request a payment period that is shorter than the maximum period allowed. If you do not notify your lender of your choice of payment plans or do not provide your lender with the required documentation for an income-sensitive schedule, your lender will establish a standard payment schedule.

**33. Repayment Options** (select one):

- [ ] STANDARD PAYMENT PLAN
- [ ] GRAD CHOICE™ 2 with two years of reduced payments
- [ ] GRAD CHOICE™ 3 with three years of reduced payments
- [ ] GRAD CHOICE™ 4 with four years of reduced payments
- [ ] GRAD CHOICE™ 5 with five years of reduced payments
- [ ] INCOME-SENSITIVE PAYMENT PLAN
- [ ] EXTENDED PAYMENT PLAN with standard payments
- [ ] EXTENDED PAYMENT PLAN with two years of interest-only payments
- [x] EXTENDED PAYMENT PLAN with four years of interest-only payments

Borrower's Name  OLDENBURGH          REBECCA      G      Social Security Number _____ ▮6079

Spouse's Name _____   Social Security Number _____
(Please print. Enter spouse's information only if you completed Section B.)

## Section F. Borrower Certification and Authorization

(In the case of a Federal Consolidation Loan made to a married couple, all references to "I," "me," "my," "you," and "your" in the Promissory Note; Borrower's Rights and Responsibilities Statement; Borrower Certification and Authorization; as well as other materials provided in connection with this loan apply equally to the borrower and the borrower's spouse unless otherwise stated.)

**34.** I declare under penalty of perjury that the following is true and correct:

**A.** The information I have provided on this Federal Consolidation Loan Application and Promissory Note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

**B.** (i) I do not owe an overpayment on a Federal Pell Grant, Federal Supplemental Educational Opportunity Grant, or a Leveraging Educational Assistance Partnership Grant (formerly State Student Incentive Grant), or if I owe an overpayment, I have made satisfactory arrangements with the holder to repay the amount owed. (ii) I am not now in default on any loan that I am consolidating or, if I am in default, I have either (a) made satisfactory arrangements with the holder of the defaulted loan(s) to repay the amount owed, or (b) for Federal Stafford, SLS, PLUS, or Consolidation loans, I agree to repay the Federal Consolidation Loan under income-sensitive repayment terms.

**C.** The loans I am requesting to consolidate are in grace or in repayment status (including loans in deferment or forbearance).

**D.** I do not have any other application pending for a Federal Consolidation Loan with any other lender. If all of my FFELP loans are with one holder who is not the consolidating lender, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from the holder of my loans, or the holder declined to provide me with an income-sensitive repayment schedule.

**E.** If I have an outstanding Federal Consolidation Loan, I am eligible for another Federal Consolidation Loan because: (i) I have subsequently borrowed another eligible loan(s), or (ii) I am consolidating a Federal Consolidation Loan with at least one other eligible loan.

**F.** All of the loans selected for consolidation have been used to finance my education or my child's education.

**G.** I am not subject to a judgment secured through litigation or to an order for wage garnishment, except as I have disclosed.

**H.** If I am applying jointly with my spouse, we are legally married to each other.

**35.** I also make the following authorizations and statements of understanding:

**A.** I understand that the amount of my Federal Consolidation Loan will be based on the payoff amounts of my outstanding eligible loans that I selected for consolidation, as provided by the holders of those loans, and may exceed my estimate of such payoff amounts. The actual payoff amounts may differ from the estimated payoff amounts because the holders will include unpaid principal, unpaid accrued interest, and other costs as permitted by federal regulations in the payoffs reported to the consolidating lender. I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of the Federal Consolidation Loan and, in the case of Federal Stafford, SLS, PLUS, or Consolidation loans in default and held by a

guaranty agency, may not exceed 18.5 percent of the outstanding principal and interest on the loan at the time the holders certify the payoff amounts.

**B.** I understand that I may no longer be eligible for some deferment types and for subsidized deferment periods on some loans being consolidated. I also understand that I may no longer be eligible for some loan discharges and types of forgiveness that were available on the loans being consolidated. If I am applying jointly with my spouse, I further understand that my Federal Consolidation Loan will be fully discharged only if both of us qualify for discharge and may be partially discharged if only one of us qualifies for discharge. I also understand that I may postpone repayment of the loan only if I provide the lender with a request that confirms deferment or forbearance eligibility for both of us at the same time.

**C.** I authorize the consolidating lender to contact the holders identified on my application to determine the eligibility and/or payoff amounts for the loans I have selected for consolidation. I further authorize those holders to release that information.

**D.** I authorize the consolidating lender to send the proceeds of my Federal Consolidation Loan to each holder of the loans I have identified to pay off the debts.

**E.** If the amounts my consolidating lender sends to my holders exceed the amounts needed to pay off the balances of the selected loans, I understand that the holders will refund the excess to my consolidating lender to be applied against the outstanding balance of this loan. If the amounts my consolidating lender sends to my holders are less than the amounts needed to pay off the balances of the loans selected for consolidation, I will be responsible for notifying my consolidating lender about the remaining amounts. I authorize the consolidating lender to include the remaining amounts in this Federal Consolidation Loan, unless I pay off the remaining balances.

**F.** I authorize the consolidating lender, the guarantor, or their agents to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.

**G.** I authorize the release of information pertinent to this loan: (i) by the school(s), the lender, and the guarantor, or their agents, to the references on this loan and to members of my immediate family unless I submit written directions otherwise; and (ii) by and among my schools, lenders, guarantors, the Department of Education, and their agents.

**H.** I authorize the Department of Education and its agent(s) to verify my Social Security Number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct Social Security Number to these parties.

**I.** If I have HEAL loans serviced by the consolidating lender and such loans are not included in this Federal Consolidation Loan, I authorize the establishment of a combined payment plan on my behalf.

## Section G. Promissory Note  (continued on next page)  To be completed and signed by the borrower and spouse, if applicable.

(In this Promissory Note, "lender" refers to, and this Promissory Note benefits, the original consolidating lender and its successors and assigns, including any subsequent holder of this Promissory Note.)

**36. Promise to Pay:**

I promise to pay to the order of the lender, all sums disbursed (hereafter "loan") under the terms of this Promissory Note (hereafter "Note") to pay off my prior loan obligations, plus interest and other charges and fees that may become due as provided in this Note. Unless I make interest payments, interest that accrues on my loan during forbearance periods and on the unsubsidized portion of my loan during deferment periods will be added, as provided under the Act, to the principal balance of the loan. If I fail to make any payments on this Note when due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees.

If I am applying jointly with my spouse, I understand and agree that I am and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Consolidation Loan without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. I understand this means that I may be required to pay the entire amount due if my spouse is unable or refuses to pay.

I understand that this is a Promissory Note. I will not sign this Note before reading the entire Note even if I am otherwise advised. I am entitled to an exact copy of this Note and the Borrower's Rights and Responsibilities Statement. My signature certifies I have read, understand, and agree to the terms and conditions of this Note, including the Borrower Certification and Authorization and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT THIS IS A LOAN THAT I MUST REPAY.**

**37.** Borrower's Signature  REBECCA G VARNO _____     Today's Date (Month/Day/Year)  12062006

E39C74F2B4A8E7DA7654114983BDCA4E

**38.** Spouse's Signature (If consolidating jointly) _____     Today's Date (Month/Day/Year) _____

# Federal Consolidation Loan Application and Promissory Note *(continued)*

## Disclosure of Terms

This Note applies to Federal Consolidation Loans made under the Federal Family Education Loan Program. In this Note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq., and applicable U.S. Department of Education regulations are referred to as the "Act."

At or about the time my Federal Consolidation Loan is disbursed, a disclosure statement and repayment schedule ("disclosure") will be provided to me. This disclosure will identify my Federal Consolidation Loan amount and additional terms of the loan. If I have questions about the information disclosed, I will contact the lender. If the information in this Note conflicts with information in the disclosure, the specific terms and information in the disclosure apply to my loan.

Important additional terms of this loan are disclosed in the Borrower's Rights and Responsibilities Statement accompanying this Note.

I agree that the lender may assign my loan to another holder.

## Interest

Unless my lender notifies me in writing of a lower rate(s), the rate(s) of interest for my loan is that specified in the Act. Interest rate information is presented in the Borrower's Rights and Responsibilities Statement accompanying this Note. The interest rate is presented in a disclosure that is issued to me.

Interest accrues on the unpaid principal balance of my Federal Consolidation Loan from the date of disburse-ment by the lender until the entire principal balance is paid in full. This includes interest accruing during any period of deferment or forbearance. I agree to pay all interest charges on my loan except for interest payable by the federal government under the Act.

I will be responsible for the interest that begins accruing upon disbursement of my loan. If I do not make payments of interest before the beginning of principal payment, or during a period of authorized deferment or forbearance, I agree that the lender may capitalize such interest to the extent permitted by the Act.

Except for any portion of the Federal Consolidation Loan attributable to a HEAL Loan, this loan will bear simple interest at an annual rate that is fixed for the term of the loan. The maximum interest rate on this loan will be equal to the weighted average of the interest rates (as certified by the holder) on the loans being consolidated, rounded up to the nearest higher one-eighth of one percent, not to exceed 8.25 percent.

If I choose to consolidate a fixed rate Federal ALAS/SLS Loan(s) or Federal PLUS Loan(s), I request that the existing interest rate of each loan be converted before consolidation to the refinancing rate provided for in the Act, if that rate is lower than the existing rate. If my lender grants this request, I understand there will be no separate document evidencing this refinancing.

For the portion of the Federal Consolidation Loan attributable to a HEAL loan (if applicable), the interest rate is a variable rate and is adjusted annually on July 1.

The variable rate for each 12-month period will be equal to the average of the bond equivalent rates of the 91-day Treasury Bills auctioned for the quarter ending June 30, plus 3.0 percent; there is no maximum interest rate on this portion of the loan.

## 180 Day Add-On Provision

If I do not consolidate all of my eligible loans at this time, I understand that I may later add to this Federal Consolidation Loan eligible loans made before or after the date of this consolidation. To add an additional loan(s), I understand I must complete a Request to Add Loans form which is available from the lender and which must be received by the lender within 180 days of the date this Federal Consolidation Loan is disbursed. If I add a loan during this period, the lender will disclose new terms to me. The new terms and information will supersede the terms and information in any prior disclosure. After the 180-day period, no loan can be added to this Federal Consolidation Loan.

## Late Charges and Collection Costs

The lender may collect from me: **(i)** a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after it becomes due, and **(ii)** any other charges and fees that are permitted by the Act for the collection of my loans. If I default on the loan, I will pay reasonable collection fees and costs, plus court costs and attorney's fees.

## Repayment

I am obligated to repay the full amount of the loan made under this Note and the interest that accrues on that amount. Repayment begins upon disbursement of the loan, and my first payment will be due within 60 days after the disbursement.

Payments will be scheduled in monthly installments according to the disclosure my lender will provide to me. The disclosure will state my payment amounts and due dates. The maximum scheduled repayment period may be up to 30 years in length, depending upon the amount of my student loan indebtedness and my repayment plan. The minimum payment on my loan must equal at least the amount of interest that accrues between scheduled payments.

Payments submitted by me or on my behalf (exclusive of refunds) may be applied first to late charges and collection costs that are due, then to accrued interest that has not been capitalized, and finally to the principal amount.

If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce my loan payment is called forbearance. I agree my lender may grant me a forbearance for purposes of aligning payment due dates on my loans or to eliminate any delinquency that persists even though I am making payments.

I may prepay all or any part of the unpaid balance on my loan at any time without penalty.

Upon payment in full of this Note, I agree to accept written notification of the payoff in place of receiving the original Note.

## Acceleration and Default

At the option of the lender, the entire unpaid balance will become immediately due and payable when either of the following events occurs: **(i)** I make a false representation that results in my receiving a loan for which I am not eligible, or **(ii)** I default on the loan.

The following events shall constitute a default on my loan: **(i)** I fail to pay the entire unpaid balance after the lender has exercised its option under the preceding paragraph, **(ii)** I fail to make installment payments when due and my failure persists for at least 270 days, or **(iii)** I fail to comply with other terms of the loan, and the lender or guarantor reasonably concludes I no longer intend to honor my repayment obligation. If I default, the guarantor may purchase my loan and capitalize all outstanding interest into a new principal balance. The new principal balance and collection fees will become immediately due and payable.

If I default, the default will be reported to all national credit bureaus and will significantly and adversely affect my credit history. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, the loan may be subject to income-contingent repayment (including potential collection of amounts in excess of the principal and interest) in accordance with the Act.

## Governing Law and Notices

The terms of this Note will be interpreted according to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), other applicable federal statutes and regulations, and the guarantor's policies. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note.

If I reside in the state where the guarantor's principal office is located, the guarantor may sue to enforce the loan in the county where the guarantor's office is located. However, if I object to being sued there and I mail a written objection to the guarantor that is postmarked no later than 30 days after I am served with the lawsuit, the guarantor will either have the court transfer the lawsuit to the county where I live or will dismiss the lawsuit.

Any notice required to be given to me will be effective if sent by first class mail to the latest address the lender has for me or by electronic means to an address that I have provided. I will immediately notify the lender of any change of address or status as specified in the Borrower's Rights and Responsibilities Statement. Failure by the lender to enforce or insist on compliance with any term of this Note shall not waive any right of the lender. No provision of this Note may be modified or waived except in writing by the lender of the Note. If any provision of this Note is determined to be unenforceable, the remaining provisions shall remain in force.

| Federal Family Education Loan Program (FFELP) | Guarantor, Program, or Lender Identification | WEB |
|---|---|---|
| **Instructions for Completing the Federal Consolidation Loan Application and Promissory Note** | 055686079  10295200 | |

## Before You Begin

Before beginning, gather all of your education loan records, account statements, and bills so that you have the information you need to complete the Federal Consolidation Loan Application and Promissory Note.

Complete the form using dark ink or type. This form must be signed and dated by the applicant(s). If an item has been completed for you and it is incorrect, cross out the incorrect information and print the correct information. Incorrect or incomplete information may delay processing of your application.

If you have any questions about completing this application, contact the entity identified above.

## Section A. Borrower Information

**Item 1:** Enter your last name, then your first name and middle initial.

**Item 2:** Enter your nine-digit Social Security Number. If this item has been completed for you, review it for correctness.

**Item 3:** Enter your permanent home address (number, street, apartment number, city, state, zip code). If your mailing address is an RFD, post office box, or general delivery, you must list both the street address and mailing address.

**Item 4:** Enter the area code and telephone number for the address listed in Item 3. If you do not have a telephone, enter N/A.

**Item 5:** Enter any former names under which one or more of your loans may have been disbursed. If you do not have a former name, enter N/A.

**Item 6:** Enter the month, day, and four-digit year of your birth. Use only numbers. Be careful not to enter the current year.

**Item 7:** Enter the two-letter abbreviation for the state that issued your driver's license followed by the driver's license number. If you do not have a driver's license, enter N/A.

**Item 8:** Enter your fax number and the e-mail address you use most frequently. These may be used to communicate with you. If you do not have a fax number or e-mail address, or do not wish to provide this information, enter N/A.

**Item 9:** *It is important that the consolidating lender is able to reach you during the process of making this loan and during repayment.* Enter your employer's name, address, including city, state, and zip code, and telephone number. If you are self-employed, enter the name, address, and telephone number of your business. If you are not employed, enter N/A.

**Item 10:** Enter the name of the lender you would like to finance your Federal Consolidation Loan.

**Item 11:** If you know the lender code, enter it here. Otherwise, leave this field blank.

## Section B. Spouse Information

**Note:** Complete this section only if you are married and you both wish to consolidate your loans jointly. Include your spouse's loan(s) in Section D. Your spouse must sign and date item 38 in Section G. Remember, if you take out a joint Federal Consolidation Loan, you are both responsible for repaying the total Federal Consolidation Loan, even if you become separated or divorced.

**Item 12:** Enter your spouse's last name, then your spouse's first name and middle initial.

**Item 13:** Enter your spouse's nine-digit Social Security Number. If this item has been completed for you, review it for correctness.

**Item 14:** Enter the month, day, and four-digit year of your spouse's birth. Use only numbers. Be careful not to enter the current year.

**Item 15:** Enter any former names under which one or more of your spouse's loans may have been disbursed. If your spouse does not have a former name, enter N/A.

**Item 16:** Enter the two-letter abbreviation for the state that issued your spouse's driver's license followed by the driver's license number. If your spouse does not have a driver's license, enter N/A.

**Item 17:** Enter your spouse's fax number and the e-mail address your spouse uses most frequently. These may be used to communicate with your spouse. If your spouse does not have a fax number or e-mail address, or does not wish to provide this information, enter N/A.

**Item 18:** *It is important that the consolidating lender is able to reach your spouse during the process of making this loan and during repayment.* Enter your spouse's employer's name, address (including city, state, and zip code), and telephone number.

If your spouse is self-employed, enter the name, address, and telephone number of your spouse's business. If your spouse is not employed, enter N/A.

## Section C. Reference Information

**Note: You must provide two separate references with different U.S. addresses. Do not include individuals who live with you or live outside the U.S. Both references must be completed fully and should be relatives or acquaintances you (or you and your spouse, if consolidating jointly) have known for at least three years.**

**Items 19A and 19B:** Enter the requested reference information for two adults who do not share a common address. References with addresses outside the U.S. are not acceptable. Both references must be completed in full. If a reference does not have a telephone or an e-mail address, or does not wish to provide an e-mail address, write N/A. If you provide an e-mail address for a reference, the holder of your Federal Consolidation Loan may use it to communicate with your reference as part of collecting on the loan. All requested items must be completed or your loan will be delayed.

## Section D. Education Loan Indebtedness

### Education Loans

The following types of education loans (except those represented by the code OTHR) are eligible for consolidation:

| Loan Code | Education Loans |
|---|---|
| SS | Subsidized Federal Stafford Loans, formerly Guaranteed Student Loans (GSL) |
| DSS | Direct Subsidized Stafford/Ford Loans |
| US | Unsubsidized and Nonsubsidized Federal Stafford Loans |
| DUS | Direct Unsubsidized Stafford/Ford Loans |
| SLS | Federal Supplemental Loans for Students, formerly Auxiliary Loans to Assist Students (ALAS) and Student PLUS Loans |
| PERK | Federal Perkins Loans, formerly National Defense/National Direct Student Loans (NDSL) |
| HPSL | Health Professions Student Loans, including Loans for Disadvantaged Students |
| HEAL | Health Education Assistance Loans |
| FISL | Federal Insured Student Loans |
| PLUS | Federal PLUS Loans |
| DPLUS | Direct PLUS Loans |
| SCON | Subsidized Federal Consolidation Loans |
| DSCON | Direct Subsidized Consolidation Loans |
| UCON | Unsubsidized Federal Consolidation Loans |
| DUCON | Direct Unsubsidized Consolidation Loans, including Direct PLUS Consolidation Loans |
| NSL | Federal Nursing Loans |
| OTHR | Other education loans not eligible for consolidation that you want used to calculate the maximum repayment period |

Information you need to answer items in this section is available in loan documents, such as:
- The last monthly billing statement you received,
- Your quarterly interest statement or annual statement,
- Your coupon book, or
- The Internet site of your loan holder or servicer.

If you are unsure of the correct information on your loans, call your loan holder or servicer, or check the most recent correspondence from them.

*Continued on next page.*

**Step 1:** Begin by listing (according to the instructions that follow for Items 20-26) eligible loan(s) that you (or you and your spouse jointly) wish to consolidate, including any loan(s) currently held by the lender that will be consolidating your loan(s). You may consolidate a Federal Consolidation Loan only if you are combining that loan with at least one other eligible loan.

If you are in default on any loan that you wish to consolidate, you must have made satisfactory repayment arrangements with the holder to repay the loan before it is eligible for consolidation. Satisfactory arrangements usually involve making a series of payments on the defaulted loan. For Federal Stafford, Federal SLS, Federal PLUS, or Federal Consolidation loans, satisfactory repayment arrangements involve making a series of reasonable and affordable payments or agreeing to repay the new Federal Consolidation Loan under an income-sensitive repayment plan. Contact the holder of your defaulted loan for specific information.

**Item 20:** Enter the code that corresponds to the loan type from the Education Loans list. If you are not sure about the loan type, leave this item blank.

**Item 21:** Enter the full name and mailing address of each holder of your education loans or the holder's servicer. (This is the address to which you are or will be sending your payments.) If the loan is in default, enter the full name and address of the guarantor or the guarantor's servicer. If the loan is a Perkins Loan, enter the full name and address of the school or school's servicer. Do not use initials instead of full names.

**Item 22:** Enter "B" for each loan that is yours, "S" for each loan that is your spouse's, and "J" for each loan that belongs to both you and your spouse.

**Item 23:** Enter the account number for each loan. This may be listed on your monthly billing statement or coupon or in other information your holder or holder's servicer provides.

**Item 24:** Enter the interest rate you are paying on each loan.

**Item 25:** Enter the estimated payoff amount, including any unpaid interest, late fees, and collection costs.

**Item 26:** If you are in your grace period (specified period of time after a student graduates or leaves school during which loan payments are not required and during which interest on loans may be payable by the federal government) for any of the loans selected for consolidation and you wish to delay processing until you have completed your grace period, enter the month and year that your grace period ends. If you request such a delay, processing of the Federal Consolidation Loan will begin approximately 60-90 days before the latest grace period end date. If you do not wish to delay processing, leave this field blank.

**Step 2:** The maximum length of your Federal Consolidation Loan repayment period is determined by your total education loan debt, including:
■ Loans you are consolidating,
■ Loans eligible for consolidation that you are not consolidating, and
■ Loans not eligible for consolidation.

In **Items 27-32,** list both eligible loans you do not wish to consolidate and outstanding education loans not eligible for consolidation that you want used to determine your maximum repayment period. Outstanding education loans not eligible for consolidation must have been made exclusively to finance postsecondary education by an entity such as a bank, school, or state agency under a public or private loan program. Personal loans from family or friends or loans in default may not be listed. The amount of the loans that are not included in the Federal Consolidation Loan but are used to determine your repayment period will not exceed the amount of the loans consolidated.

### Section E. Repayment Plan Selection

**Item 33:** You may choose one of the repayment options described below for your Federal Consolidation Loan. The maximum repayment period will be 10 to 30 years depending on your student loan debt. You can request a payment period that is shorter than the maximum period allowed.

STANDARD PAYMENT PLAN – This option provides equal monthly payments over the term of the loan. Payments cover all principal and interest due that month.

GRADUATED PAYMENT PLAN – This option provides reduced payments that may be as low as interest only for a specified number of years. Payments then increase to standard payments of principal and interest for the remaining term.

GRAD CHOICE℠ 2 – Reduced payments for two years.

GRAD CHOICE℠ 3 – Reduced payments for three years.

GRAD CHOICE℠ 4 – Reduced payments for four years.

GRAD CHOICE℠ 5 – Reduced payments for five years.

INCOME-SENSITIVE PAYMENT PLAN – This option establishes payments annually based on your expected total monthly gross income from employment and all other sources. If you and your spouse jointly consolidate your loans, payments will be based on your total household income from all sources.

EXTENDED PAYMENT PLAN – This option allows borrowers with debt in excess of $30,000 to repay over a 25-year period on either a standard or graduated schedule.

If you have education debt of $60,000 or more and wish to repay over a 30-year period, you should select one of the other repayment options.

If you do not notify your lender of your choice of payment plans or do not provide your lender with the required documentation for an income-sensitive schedule, your lender will establish a standard payment schedule.

**Note:** If all of your FFELP loans are with one holder and you certify that you have been unable to obtain a Federal Consolidation Loan or a Federal Consolidation Loan with income-sensitive repayment terms from your current holder, you may apply for a Federal Consolidation Loan from another FFELP lender. If you have FFELP loans with more than one holder, you may apply for a Federal Consolidation Loan from any FFELP lender. Alternatively, if you have an outstanding balance on a FFELP loan and you are unable to obtain a Federal Consolidation Loan or a Federal Consolidation Loan with income-sensitive repayment terms that are acceptable to you, you may apply for a Federal Direct Consolidation Loan from the U.S. Department of Education.

### Section F. Borrower Certification and Authorization

**Items 34 and 35:** Read these items carefully. The statements confirm the accuracy of the information that you supply, authorize various parties to perform certain functions, and certify your understanding and acceptance of certain terms and conditions of the loan.

### Section G. Promissory Note

**This is a legally binding contract.**

**Item 36:** Carefully read the entire Promissory Note, Borrower Certification and Authorization, Borrower's Rights and Responsibilities Statement, and the other materials provided in connection with this loan.

**Item 37:** Sign and date the Promissory Note.

**Item 38:** If you and your spouse are jointly consolidating your loans, your spouse must also sign and date the Promissory Note. If you and your spouse are not jointly consolidating your loans, your spouse should not sign the Promissory Note.

**Note:** Signature(s) is required. If you (or you and your spouse, if consolidating jointly) fail to sign the Promissory Note, your application will be delayed.

### Submitting Your Application and Promissory Note

Review all information on your Federal Consolidation Loan Application and Promissory Note. Return your completed application and promissory note to your consolidating lender for processing. Keep a copy for your records. If you are applying with your spouse, you and your spouse should each keep a copy for your records. **Remember to continue making your regularly scheduled education loan payments until your consolidating lender notifies you that the consolidation is complete.** If you would like to temporarily postpone your payments while your Federal Consolidation Loan is being processed, contact your holder regarding forbearance. When your loans are consolidated, you will receive a repayment schedule and disclosure statement for your Federal Consolidation Loan. It will provide information about your new loan and instructions on where to send your monthly payments.

**Mailing Instructions:** Mail the original copy of the Federal Consolidation Loan Application and Promissory Note and the Additional Loan Listing Sheet, if applicable, to your consolidating lender.

# Borrower's Rights and Responsibilities Statement

**Important Notice:** The Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of your Federal Consolidation Loan. Please retain this Statement for your records. You may contact your lender at any time for another copy of this Statement.

FFELP Definition - The Federal Family Education Loan Program (FFELP) includes the following loans:

- Subsidized Federal Stafford Loan [formerly known as Guaranteed Student Loan (GSL)],
- Unsubsidized Federal Stafford Loan,
- Federal Insured Student Loan (FISL),
- Federal Supplemental Loans for Students (SLS), also known as ALAS,
- Federal PLUS Loan, and
- Federal Consolidation Loan.

The FFELP is authorized by Title IV, Part B of the Higher Education Act of 1965, as amended.

**1. Governing Law** – A loan disbursed under this Federal Consolidation Loan Promissory Note ("Note") is subject to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U.S. Department of Education regulations (collectively referred to as the "Act").

**2. Change of Status** – I must notify my lender (or any subsequent holder of my loan) if any of the following events take place before my loan is repaid:

- I change my permanent address, e-mail address, or telephone number,
- I change my name (for example, maiden name to married name),
- I change my employer or my employer's address or telephone number changes, and/or
- I have any other change in status that would affect my loan (for example, the loss of eligibility for an unemployment deferment by obtaining a job).

**3. Interest Rate** – The interest rate on my Federal Consolidation Loan will be based on the weighted average of the interest rates on the loans being consolidated rounded up to the nearest higher one-eighth of one percent, but will not exceed 8.25 percent. This fixed interest rate will remain the same throughout the life of the loan. For the portion of the Federal Consolidation Loan attributable to a HEAL Loan (if applicable), the interest rate is a variable rate and is adjusted annually on July 1. The variable rate for each 12-month period will be equal to the average of the bond equivalent rates of the 91-day Treasury Bills auctioned for the quarter ending June 30, plus 3.0 percent; there is no maximum interest rate on this portion of the loan. The interest rate that applies to my Federal Consolidation Loan will be disclosed to me by my lender at or about the time my loan is disbursed.

**4. Payment of Interest** – Interest will be charged from the date my Federal Consolidation Loan is disbursed. It is my responsibility to pay interest on my loan. The federal government will pay interest that accrues during deferment on the portion of my Federal Consolidation Loan that repays subsidized Federal Stafford Loans, subsidized Federal Direct Stafford Loans, subsidized FISL loans, subsidized Federal Consolidation loans, and subsidized Federal Direct Consolidation Loans. I will be responsible for interest that accrues during deferment on the portion of my Federal Consolidation Loan that repays other loan types.

I am responsible for paying the interest that accrues during a forbearance period.

If I choose not to pay the interest that accrues on my loan during any period of authorized deferment or forbearance, the interest may be capitalized to the extent permitted by the Act. Capitalization of interest will result in the unpaid interest being added to the principal balance of the loan and increase the total cost of my loan.

I may be able to claim a federal income tax deduction for interest payments I make on my FFELP loans. For further information, I may refer to the IRS Publication 970 available at http://www.irs.gov.

**5. Sale or Transfer of Loan** – The lender may sell or otherwise transfer my loan without my consent. Should ownership of my loan be transferred, I will be notified of the name, address, and telephone number of the new lender if the address to which I make my payments changes. Sale or transfer of my loan does not affect my rights and responsibilities under the loan.

**6. Consequences of Default** – Default is defined in detail in my Note. If I default, the entire unpaid balance and collection fees will become immediately due and payable. Failure to repay this loan according to its terms and conditions may result in any or all of the following:

- Loss of federal and state income tax refunds,
- Loss of other federal or state payments,
- My employer withholding part of my wages to give them to my guarantor (administrative wage garnishment),
- Legal action against me,
- Collection charges (including attorney's fees) being assessed against me,
- Loss of my professional license,
- An increase in my interest rate,
- Loss of eligibility for other student aid and assistance under most federal benefit programs,
- Loss of eligibility for loan deferments, and
- Negative credit reports to credit bureaus.

**7. Credit Bureau Notification** – Information concerning the amount, disbursement, and repayment status (current or delinquent) of my loan will be reported by my lender to one or more national credit bureaus on a regular basis. If I default on my loan, the guarantor will report the default to all national credit bureaus. Before the guarantor reports such a default, it will give me at least 30 days notice that default information will be disclosed to the credit bureaus unless I enter into a repayment arrangement within 30 days of the date of the notice. The guarantor will give me a chance to ask for a review of the debt before the default is reported. My lender or guarantor, as applicable, must provide a timely response to a request from any credit organization regarding objections I might raise with that organization about the accuracy and completeness of information reported by the lender or guarantor.

**8. Loan Discharge & Forgiveness** – My loan will be discharged if documentation of my death is submitted to my lender. If I am consolidating a PLUS Loan and the dependent student for whom I borrowed the PLUS Loan dies, the portion of my Federal Consolidation Loan attributable to that PLUS Loan will be discharged if documentation of the dependent student's death is submitted to my lender.

My loan may also be discharged if a physician certifies that I am totally and permanently disabled as defined by the Act. In addition, I must meet certain income requirements and may not receive any additional FFELP, Direct, or Federal Perkins loans during a 3-year conditional discharge period. I may not receive a discharge due to total and permanent disability based on a condition that existed before I applied for this loan, unless a physician certifies that the condition substantially deteriorated after the disbursement dates on the loans that are consolidated.

I understand that I may not qualify for a disability discharge of my Federal Consolidation Loan if any loan I am consolidating does not meet the discharge conditions.

My loan will not be automatically discharged in bankruptcy. In order to discharge a loan in bankruptcy, I (and my spouse, if a joint consolidation co-maker) must prove undue hardship in an adversary proceeding before the bankruptcy court.

In certain cases, the Act provides discharge of all or a portion of my Federal Consolidation Loan if I was unable to complete a course of study because my school closed, or my eligibility was falsely certified by my school. The Act also provides for loan discharge in the amount of any required refund that my school failed to make to my lender on my behalf.

Neither the lender, the guarantor, nor the Department of Education vouch for the quality or suitability of the academic programs offered by participating schools. Unless I qualify for loan discharge under the Act, I must repay this loan even if I do not complete my education, I am unable to obtain employment in my field of study, or I am dissatisfied with, or do not receive, the education I paid for with the loan(s) being consolidated.

If I am a full-time teacher and at the time I obtained a subsidized or unsubsidized Stafford Loan that I am consolidating I had no outstanding balance on a Title IV loan disbursed before October 1, 1998, I may be eligible for forgiveness under the Teacher Loan Forgiveness Program. A fixed amount of my Stafford Loan(s) that I am consolidating may be repaid if I have worked as a full-time teacher for five consecutive school years and if I meet all other eligibility requirements under the Act.

I understand that, by consolidating, I may forego some discharges that might otherwise be available for the loan(s) being consolidated.

If I am applying with my spouse for a joint consolidation Loan will be fully discharged or forgiven only if both of us qualify for the same or a different discharge or forgiveness. However, the loan may be partially discharged or forgiven under certain circumstances, if only one of us qualifies for a discharge or forgiveness.

**9. Deferment** – Under certain circumstances, I have a right to defer (postpone) repayment. Upon request, my lender will provide me with a deferment application that explains the eligibility requirements. If I am in default on my Federal Consolidation Loan, I am not eligible for deferment unless I make payment arrangements satisfactory to my lender before the payment of a default claim on my loan.

If I consolidate my loans jointly with my spouse, we both must simultaneously qualify for the same or different deferments in order to postpone repayment on the loan. The maximum periods authorized for deferment on Federal Consolidation Loans are determined by the Act. The total deferment period combined for the borrower and spouse cannot exceed these limits.

If I consolidate all of my eligible FFELP loans, deferments are available while I am:

■ Enrolled at least half time at an eligible school,

■ Engaged in a full-time course of study in a graduate fellowship program,

■ Engaged in a full-time rehabilitation training program for individuals with disabilities (if the program is approved by Department of Education),

■ Conscientiously seeking, but unable to find, full-time employment (for up to three years),

■ Experiencing an economic hardship (including Peace Corps service) as defined by federal law (for up to three years).

My lender will process an in-school deferment based on (i) my request along with documentation verifying my eligibility, (ii) my lender's receipt of information from my school about my eligibility in connection with a new loan, or (iii) my lender's receipt of student status information indicating that I am enrolled on at least a half-time basis. For all other deferment types, I must provide my lender with a deferment request and evidence that verifies my eligibility.

If I did not consolidate all of my FFELP loans, the deferment options available to me for this Federal Consolidation Loan will be based on the deferment provisions that are in effect for any outstanding loan(s) not consolidated, provided the deferment is authorized for Federal Consolidation Loans. (See Item 4, "Payment of Interest.") My lender can provide additional information about deferment eligibility.

**10. Forbearance** – If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called a forbearance. Interest charges continue to accrue during a forbearance period.

The lender may grant me forbearance due to poor health or other acceptable reasons.

My lender is generally not required to grant a forbearance and may require me to provide my reasons for the request and other information.

The lender may grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled installment payments. My lender may grant me an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation.

Circumstances that require my lender to grant me forbearance include:

■ Serving in a medical or dental internship or residency program, if I meet certain criteria.

■ Serving in a national service position for which I receive a national service education award under the National and Community Service Trust Act of 1993. In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service.

■ Qualifying for partial repayment of my loans under the Student Loan Repayment Program, as administered by the Department of Defense.

■ Having a monthly debt burden for Title IV loans that collectively equals or exceeds 20 percent of my total monthly gross income (for up to three years).

■ Being called to active duty in the U.S. Armed Forces.

If my spouse and I are consolidating jointly, we must simultaneously qualify for the same or a different forbearance in order to forbear repayment of the loan.

If I choose not to pay the interest that accrues on my loan during any period of authorized forbearance, the interest may be capitalized to the extent permitted by the Act. Capitalization of interest will result in the unpaid interest being added to the principal balance of the loan.

**11. Applicability to Aggregate Loan Limits** – If the loans I have selected for consolidation were made under the Federal or Direct Stafford (subsidized, nonsubsidized, or unsubsidized), SLS, Perkins, or HPSL loan programs, a percentage of the outstanding balance on my Federal Consolidation Loan will be counted towards the aggregate loan limit for each type of loan selected.

**12. Adding Loans** – If I do not consolidate all eligible loans at this time, I understand that I may include an additional eligible loan(s) by submitting a request to my lender. My lender must receive my request within 180 days after the date on which my Federal Consolidation Loan is disbursed. After this period of time, I will need to apply for a new Federal Consolidation Loan to consolidate any eligible loan(s).

**IMPORTANT NOTICES**

**Privacy Act Notice**

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §428(b)(2)(A) et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1078(b)(2)(A) et seq.), and the authority for collecting and using your Social Security Number (SSN) is §484(a)(4)(B) of the HEA (20 U.S.C. 1078-2(f)). Participating in the Federal Family Education Loan Program (FFELP) and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan(s) or a benefit on a loan(s) (such as a deferment, forbearance, discharge, or forgiveness) under the FFELP, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect on your loan(s) if your loan(s) becomes delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed to third parties as authorized under routine uses in the appropriate systems of records. The routine uses of this information include its disclosure to federal, state, or local agencies, to other federal agencies under computer matching programs, to agencies that we authorize to assist us in administering our loan programs, to private parties such as relatives, present and former employers, business and personal associates, to credit bureau organizations, to educational and financial institutions, to guaranty agencies, and to contractors in order to verify your identity, to determine your eligibility to receive a loan(s) or a benefit on a loan(s), to permit the servicing or collection of your loan(s), to counsel you in repayment efforts, to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, to locate you if you become delinquent in your loan payments or if you default, to provide default rate calculations, to provide financial aid history information,

to assist program administrators with tracking refunds and cancellations, or to provide a standardized method for educational institutions to efficiently submit student enrollment status.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**Financial Privacy Act Notice**

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), the U.S. Department of Education will have access to financial records in your student loan file maintained by the lender in compliance with the administration of the Federal Family Education Loan Program.

**Paperwork Reduction Notice**

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0036. The time required to complete this information is estimated to average 1.0 hours (60 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. **If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to:**

U.S. Department of Education
Washington, DC 20202-4651

**If you have any comments or concerns regarding the status of your individual submission of this form, contact the lender, guarantor, or program identified in the upper right-hand corner of this form.**

**Addendum to the Federal Consolidation Loan Application and Promissory Note**
**Federal Family Education Loan Program**

The Higher Education Reconciliation Act of 2005 (HERA) and the Emergency Supplemental Appropriations Act of 2006 changed some of the terms of Federal Consolidation Loans made under the Federal Family Education Loan Program (FFELP). As a result, certain terms of the loan you receive under the accompanying Federal Consolidation Loan Application and Promissory Note (Application and Promissory Note) differ from the terms in the Application and Promissory Note and Borrower's Rights and Responsibilities Statement.

This Addendum describes the changes made to the loan terms by the HERA and the Emergency Supplemental Appropriations Act. Your loan is subject to those changes. The changes set forth in this Addendum are incorporated into and made a part of the accompanying Application and Promissory Note that you sign and the Borrower's Rights and Responsibilities Statement.

- **Section B., Spouse Information, and all references throughout the Application and Promissory Note to consolidating jointly with your spouse.** *Effective for Applications and Promissory Notes received on or after July 1, 2006,* a married couple may no longer borrow a Federal Consolidation Loan as joint borrowers. You do not need to complete Section B of the Application and Promissory Note or provide other information relating to your spouse or your spouse's loans.

- **Section F., Borrower Certification and Authorization.** *Effective for Applications and Promissory Notes signed on or after July 1, 2006,* by signing your Application and Promissory Note, you are certifying, under penalty of perjury, that if you have been convicted of, or have pled *nolo contendere* or guilty to, a crime involving fraud in obtaining federal student assistance under Title IV of the Higher Education Act of 1965, as amended, you have completed the repayment of such funds to the U.S. Department of Education, or to the loan holder in the case of a Title IV federal student loan.

- **Section F., Borrower Certification and Authorization, Paragraph 34.D.** Paragraph 34.D. is revised to read as follows: "I do not have any other application pending for a Federal Consolidation Loan."

- **Instructions for Completing the Federal Consolidation Loan Application and Promissory Note, Section E., Repayment Plan Selection.** The Note at the end of Section E is revised to read as follows: "You may apply for a Federal Consolidation Loan from a lender that holds your FFELP loan(s) or from another FFELP lender. Alternatively, if you are eligible for a FFELP consolidation loan and you are unable to obtain a Federal Consolidation Loan or a Federal Consolidation Loan with income-sensitive repayment terms that are acceptable to you, you may apply for a Federal Direct Consolidation Loan from the U.S. Department of Education."

- **Borrower's Rights and Responsibilities Statement, Item 8, Loan Discharge & Forgiveness.** *Effective July 1, 2006,* all or a portion of a Federal Consolidation Loan is also eligible for discharge if it is determined that the borrower's eligibility for one or more FFELP or William D. Ford Federal Direct Loan Program loans that were consolidated was falsely certified as a result of a crime of identity theft.

- **Borrower's Rights and Responsibilities Statement, Item 9, Deferment.** *Effective July 1, 2006,* if all of the Title IV loans included in the Federal Consolidation Loan were first disbursed on or after July 1, 2001, a borrower may receive a deferment for a period of up to three years during which the borrower is serving on active duty during a war or other military operation or national emergency, or performing qualifying National Guard duty during a war or other military operation or national emergency.

Exhibit C

(Pokorni Promissory Note)

Exhibit C

# Federal Family Education Loan Program (FFELP)
# Federal Consolidation Loan
# Application and Promissory Note

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both, under the United States Criminal Code and 20 U.S.C. 1097.

Guarantor, Program, or Lender Identification          WEB

▓▓▓▓▓ 9211158

OMB No. 1845-0038
Form approved
Exp. date 10/31/2008

## Before You Begin

Read the Instructions for Completing the Federal Consolidation Loan Application and Promissory Note. Print using dark ink or type. This form must be signed and dated by the applicant(s).

## Section A. Borrower Information

| 1. Last Name | First Name | MI | 2. Social Security Number |
|---|---|---|---|
| POKORNI | MARK | A | ▓▓▓▓▓ |

3A. Permanent Street Address (Include Number, Street, Apartment Number, City, State, Zip Code)
4520 N RICHMOND ST                    CHICAGO                IL       60625

3B. Permanent Mailing Address, if different (Include P.O. Box, RFD, or General Delivery, City, State, Zip Code)

| 4. Home Area Code/Telephone Number | 5. Former Name(s) |
|---|---|
| ▓▓▓▓▓ | |

| 6. Date of Birth (Month/Day/Year) | 7. Driver's License State and Number |
|---|---|
| 1/10/▓▓▓▓ | State        # |

8. Fax Number and E-mail Address (Optional)
Fax (    )                            E-mail Address

9. Employer Name

Address

| City | State | Zip Code | Employer Area Code/Telephone Number |
|---|---|---|---|
| | | | (    ) |

| 10. Consolidating Lender Name | 11. Lender Code, if known |
|---|---|
| Sallie Mae | |

## Section B. Spouse Information

*Only complete this section if your spouse has eligible loans and you both wish to consolidate jointly. If you complete Section B, also include your spouse's loan(s) in Sections D.1 and D.2. Your spouse must also sign and date Item 38 in Section G.*

| 12. Last Name | First Name | MI |
|---|---|---|
| | | |

| 13. Social Security Number | 14. Date of Birth (Month/Day/Year) |
|---|---|
| | |

| 15. Former Name(s) | 16. Driver's License State and Number |
|---|---|
| | State        # |

17. Fax Number and E-mail Address (Optional)
Fax (    )                            E-mail Address

18. Employer Name

Address

| City | State | Zip Code | Employer Area Code/Telephone Number |
|---|---|---|---|
| | | | (    ) |

## Section C. Reference Information

You must provide two separate references with different U.S. addresses. Do not include individuals who live with you (e.g., spouse) or live outside the United States. Both references must be completed fully and should be relatives or acquaintances you (or you and your spouse, if consolidating jointly) have known for at least three years.

| 19. Name | A. DEMETRI PAVLATOS | B. ANGELO PAVLATOS |
|---|---|---|
| Permanent Address | 2741 WEST FARRAGUT | 614 KIMBALL |
| City, State, Zip Code | CHICAGO, IL 60625 | CHICAGO, IL 60625 |
| E-mail Address (Optional) | | |
| Area Code/Telephone Number | ( ▓▓▓▓▓ | ( ▓▓▓▓▓ |
| Relationship to Borrower | | |

| Borrower's Name | POKORNI | MARK | A | Social Security Number | ▮▮▮▮▮ |

| Spouse's Name | | | | Social Security Number | |
(Please print. Enter spouse's information only if you completed Section B.)

## Section D.1. Education Loan Indebtedness — Loans You Want to Consolidate

*Read the instructions before completing this section.* List all education loans you want to consolidate, including loans currently held by the lender that will be consolidating your loans. Use the Loan Codes listed in the instructions. If you need to list additional loans, use the Additional Loan Listing Sheet included in this package. Include your spouse's loans only if Section B has been completed. **ONLY LIST LOANS THAT YOU WANT TO CONSOLIDATE IN THIS SECTION.**

| 20. Loan Code (See Instructions) | 21. Loan Holder Name and Mailing Address | 22. B=Borrower S=Spouse J=Joint | 23. Loan Account Number | 24. Interest Rate | 25. Payoff Amount |
|---|---|---|---|---|---|
| STFS | SALLIE MAE TRUST - LSC/FL 1002 ARTHUR DRIVE LYNN HAVEN, FL | B | ▮▮▮▮▮▮ | 8 | $3,846.44 |
| STFS | SALLIE MAE TRUST - LSC/FL 1002 ARTHUR DRIVE LYNN HAVEN, FL | B | ▮▮▮▮▮▮ | 6.1 | $3,488.65 |
| STFS | SALLIE MAE TRUST - LSC/FL 1002 ARTHUR DRIVE LYNN HAVEN, FL | B | ▮▮▮▮▮▮ | 6.1 | $7,379.41 |
| STFS | SALLIE MAE TRUST - LSC/FL 1002 ARTHUR DRIVE LYNN HAVEN, FL | B | ▮▮▮▮▮▮ | 6.1 | $7,430.58 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**26. Grace Period End Date** – If any of the loans that you have selected for consolidation are in a grace period and you wish to delay processing until you have completed your grace period, enter your expected grace period end date. If you do not wish to delay processing, leave this field blank.   (Month/Year) _____

Borrower's Name  POKORNI          MARK     A        Social Security Number ▮▮▮▮▮▮

Spouse's Name _____  Social Security Number _____
(Please print. Enter spouse's information only if you completed Section B.)

## Section D.2. Education Loan Indebtedness — Loans You Do Not Want to Consolidate

*Read the instructions before completing this section.* List all education loans that you are not consolidating but want considered in calculating your maximum repayment period. Remember to include loans held by the lender that will be making the Federal Consolidation Loan, but that you do not want to include in the Federal Consolidation Loan. Use the Loan Codes listed in the instructions. If you need to list additional loans, use the Additional Loan Listing Sheet included in this package. Include your spouse's loans only if Section B has been completed. ONLY LIST LOANS THAT YOU DO NOT WANT TO CONSOLIDATE IN THIS SECTION.

| 27. Loan Code (See Instructions) | 28. Loan Holder Name and Mailing Address | 29. B=Borrower S=Spouse J=Joint | 30. Loan Account Number | 31. Interest Rate | 32. Current Balance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## Section E. Repayment Plan Selection

**Item 33:** You may choose one of the repayment options described below for your Federal Consolidation Loan. The maximum repayment period will be 10 to 30 years depending on your student loan debt. You can request a payment period that is shorter than the maximum period allowed. If you do not notify your lender of your choice of payment plans or do not provide your lender with the required documentation for an income-sensitive schedule, your lender will establish a standard payment schedule.

**33.** Repayment Options (select one):

- [ ] GRAD CHOICE℠ 2 with two years of reduced payments
- [ ] GRAD CHOICE℠ 4 with four years of reduced payments
- [x] INCOME-SENSITIVE PAYMENT PLAN
- [ ] EXTENDED PAYMENT PLAN with two years of interest-only payments
- [ ] STANDARD PAYMENT PLAN
- [ ] GRAD CHOICE℠ 3 with three years of reduced payments
- [ ] GRAD CHOICE℠ 5 with five years of reduced payments
- [ ] EXTENDED PAYMENT PLAN with standard payments
- [ ] EXTENDED PAYMENT PLAN with four years of interest-only payments

| Borrower's Name | POKORNI | MARK | A | Social Security Number | |
|---|---|---|---|---|---|

Spouse's Name _____   Social Security Number _____
(Please print. Enter spouse's information only if you completed Section B.)

## Section F. Borrower Certification and Authorization

(In the case of a Federal Consolidation Loan made to a married couple, all references to "I," "me," "my," "you," and "your" in the Promissory Note; Borrower's Rights and Responsibilities Statement; Borrower Certification and Authorization; as well as other materials provided in connection with this loan apply equally to the borrower and the borrower's spouse unless otherwise stated.)

34.  I declare under penalty of perjury that the following is true and correct:

A.  The information I have provided on this Federal Consolidation Loan Application and Promissory Note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

B.  (i) I do not owe an overpayment on a Federal Pell Grant, Federal Supplemental Educational Opportunity Grant, or a Leveraging Educational Assistance Partnership Grant (formerly State Student Incentive Grant), or if I owe an overpayment, I have made satisfactory arrangements with the holder to repay the amount owed. (ii) I am not now in default on any loan that I am consolidating or, if I am in default, I have either (a) made satisfactory arrangements with the holder of the defaulted loan(s) to repay the amount owed, or (b) for Federal Stafford, SLS, PLUS, or Consolidation loans, I agree to repay the Federal Consolidation Loan under income-sensitive repayment terms.

C.  The loans I am requesting to consolidate are in grace or in repayment status (including loans in deferment or forbearance).

D.  I do not have any other application pending for a Federal Consolidation Loan with any other lender. If all of my FFELP loans are with one holder who is not the consolidating lender, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from the holder of my loans, or the holder declined to provide me with an income-sensitive repayment schedule.

E.  If I have an outstanding Federal Consolidation Loan, I am eligible for another Federal Consolidation Loan because: (i) I have subsequently borrowed another eligible loan(s), or (ii) I am consolidating a Federal Consolidation Loan with at least one other eligible loan.

F.  All of the loans selected for consolidation have been used to finance my education or my child's education.

G.  I am not subject to a judgment secured through litigation or to an order for wage garnishment, except as I have disclosed.

H.  If I am applying jointly with my spouse, we are legally married to each other.

35.  I also make the following authorizations and statements of understanding:

A.  I understand that the amount of my Federal Consolidation Loan will be based on the payoff amounts of my outstanding eligible loans that I selected for consolidation, as provided by the holders of those loans, and may exceed my estimate of such payoff amounts. The actual payoff amounts may differ from the estimated payoff amounts because the holders will include unpaid principal, unpaid accrued interest, and other costs as permitted by federal regulations in the payoffs reported to the consolidating lender. I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of the Federal Consolidation Loan and, in the case of Federal Stafford, SLS, PLUS, or Consolidation loans in default and held by a

guaranty agency, may not exceed 18.5 percent of the outstanding principal and interest on the loan at the time the holders certify the payoff amounts.

B.  I understand that I may no longer be eligible for some deferment types and for subsidized deferment periods on some loans being consolidated. I also understand that I may no longer be eligible for some loan discharges and types of forgiveness that were available on the loans being consolidated. If I am applying jointly with my spouse, I further understand that my Federal Consolidation Loan will be fully discharged only if both of us qualify for discharge and may be partially discharged if only one of us qualifies for discharge. I also understand that I may postpone repayment of the loan only if I provide the lender with a request that confirms deferment or forbearance eligibility for both of us at the same time.

C.  I authorize the consolidating lender to contact the holders identified on my application to determine the eligibility and/or payoff amounts for the loans I have selected for consolidation. I further authorize those holders to release that information.

D.  I authorize the consolidating lender to send the proceeds of my Federal Consolidation Loan to each holder of the loans I have identified to pay off the debts.

E.  If the amounts my consolidating lender sends to my holders exceed the amounts needed to pay off the balances of the selected loans, I understand that the holders will refund the excess to my consolidating lender to be applied against the outstanding balance of this loan. If the amounts my consolidating lender sends to my holders are less than the amounts needed to pay off the balances of the loans selected for consolidation, I will be responsible for notifying my consolidating lender about the remaining amounts. I authorize the consolidating lender to include the remaining amounts in this Federal Consolidation Loan, unless I pay off the remaining balances.

F.  I authorize the consolidating lender, the guarantor, or their agents to investigate my credit record and report information concerning my loan status to persons and organizations permitted by law to receive such information.

G.  I authorize the release of information pertinent to this loan: (i) by the school(s), the lender, and the guarantor, or their agents, to the references on this loan and to members of my immediate family unless I submit written directions otherwise; and (ii) by and among my schools, lenders, guarantors, the Department of Education, and their agents.

H.  I authorize the Department of Education and its agent(s) to verify my Social Security Number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct Social Security Number to these parties.

I.  If I have HEAL loans serviced by the consolidating lender and such loans are not included in this Federal Consolidation Loan, I authorize the establishment of a combined payment plan on my behalf.

## Section G. Promissory Note  (continued on next page)  To be completed and signed by the borrower and spouse, if applicable.

(In this Promissory Note, "lender" refers to, and this Promissory Note benefits, the original consolidating lender and its successors and assigns, including any subsequent holder of this Promissory Note.)

36. Promise to Pay:

I promise to pay to the order of the lender, all sums disbursed (hereafter "loan") under the terms of this Promissory Note (hereafter "Note") to pay off my prior loan obligations, plus interest and other charges and fees that may become due as provided in this Note. Unless I make interest payments, interest that accrues on my loan during forbearance periods and on the unsubsidized portion of my loan during deferment periods will be added, as provided under the Act, to the principal balance of the loan. If I fail to make any payments on this Note when due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees.

If I am applying jointly with my spouse, I understand and agree that I am and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Consolidation Loan without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. I understand this means that I may be required to pay the entire amount due if my spouse is unable or refuses to pay.

I understand that this is a Promissory Note. I will not sign this Note before reading the entire Note even if I am otherwise advised. I am entitled to an exact copy of this Note and the Borrower's Rights and Responsibilities Statement. My signature certifies I have read, understand, and agree to the terms and conditions of this Note, including the Borrower Certification and Authorization and the Borrower's Rights and Responsibilities Statement.

I UNDERSTAND THAT THIS IS A LOAN THAT I MUST REPAY.

| 37. Borrower's Signature | MARK POKORNI | | Today's Date (Month/Day/Year) | 6/5/2006 |
|---|---|---|---|---|
| | 01.01.01 | 7f530591cf938c3aca2c90dd0055e8da | | |

| 38. Spouse's Signature (if consolidating jointly) | | Today's Date (Month/Day/Year) | |
|---|---|---|---|

## Federal Consolidation Loan Application and Promissory Note *(continued)*

### Disclosure of Terms

This Note applies to Federal Consolidation Loans made under the Federal Family Education Loan Program. In this Note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq., and applicable U.S. Department of Education regulations are referred to as the "Act."

At or about the time my Federal Consolidation Loan is disbursed, a disclosure statement and repayment schedule ("disclosure") will be provided to me. This disclosure will identify my Federal Consolidation Loan amount and additional terms of the loan. If I have questions about the information disclosed, I will contact the lender. If the information in this Note conflicts with information in the disclosure, the specific terms and information in the disclosure apply to my loan.

Important additional terms of this loan are disclosed in the Borrower's Rights and Responsibilities Statement accompanying this Note.

I agree that the lender may assign my loan to another holder.

### Interest

Unless my lender notifies me in writing of a lower rate(s), the rate(s) of interest for my loan is that specified in the Act. Interest rate information is presented in the Borrower's Rights and Responsibilities Statement accompanying this Note. The interest rate is presented in a disclosure that is issued to me.

Interest accrues on the unpaid principal balance of my Federal Consolidation Loan from the date of disbursement by the lender until the entire principal balance is paid in full. This includes interest accruing during any period of deferment or forbearance. I agree to pay all interest charges on my loan except for interest payable by the federal government under the Act.

I will be responsible for the interest that begins accruing upon disbursement of my loan. If I do not make payments of interest before the beginning of principal payment, or during a period of authorized deferment or forbearance, I agree that the lender may capitalize such interest to the extent permitted by the Act.

Except for any portion of the Federal Consolidation Loan attributable to a HEAL Loan, this loan will bear simple interest at an annual rate that is fixed for the term of the loan. The maximum interest rate on this loan will be equal to the weighted average of the interest rates (as certified by the holder) on the loans being consolidated, rounded up to the nearest higher one-eighth of one percent, not to exceed 8.25 percent.

If I choose to consolidate a fixed rate Federal ALAS/SLS Loan(s) or Federal PLUS Loan(s), I request that the existing interest rate of each loan be converted before consolidation to the refinancing rate provided for in the Act, if that rate is lower than the existing rate. If my lender grants this request, I understand there will be no separate document evidencing this refinancing.

For the portion of the Federal Consolidation Loan attributable to a HEAL loan (if applicable), the interest rate is a variable rate and is adjusted annually on July 1.

The variable rate for each 12-month period will be equal to the average of the bond equivalent rates of the 91-day Treasury Bills auctioned for the quarter ending June 30, plus 3.0 percent; there is no maximum interest rate on this portion of the loan.

### 180 Day Add-On Provision

If I do not consolidate all of my eligible loans at this time, I understand that I may later add to this Federal Consolidation Loan eligible loans made before or after the date of this consolidation. To add an additional loan(s), I understand I must complete a Request to Add Loans form which is available from the lender and which must be received by the lender within 180 days of the date this Federal Consolidation Loan is disbursed. If I add a loan during this period, the lender will disclose new terms to me. The new terms and information will supersede the terms and information in any prior disclosure. After the 180-day period, no loan can be added to this Federal Consolidation Loan.

### Late Charges and Collection Costs

The lender may collect from me: (i) a late charge for each late installment payment if I fail to make any part of a required installment payment within 15 days after it becomes due, and (ii) any other charges and fees that are permitted by the Act for the collection of my loans. If I default on the loan, I will pay reasonable collection fees and costs, plus court costs and attorney's fees.

### Repayment

I am obligated to repay the full amount of the loan made under this Note and the interest that accrues on that amount. Repayment begins upon disbursement of the loan, and my first payment will be due within 60 days after the disbursement.

Payments will be scheduled in monthly installments according to the disclosure my lender will provide to me. The disclosure will state my payment amounts and due dates. The maximum scheduled repayment period may be up to 30 years in length, depending upon the amount of my student loan indebtedness and my repayment plan. The minimum payment on my loan must equal at least the amount of interest that accrues between scheduled payments.

Payments submitted by me or on my behalf (exclusive of refunds) may be applied first to late charges and collection costs that are due, then to accrued interest that has not been capitalized, and finally to the principal amount.

If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce my loan payment is called forbearance. I agree my lender may grant me a forbearance for purposes of aligning payment due dates on my loans or to eliminate any delinquency that persists even though I am making payments.

I may prepay all or any part of the unpaid balance on my loan at any time without penalty.

Upon payment in full of this Note, I agree to accept written notification of the payoff in place of receiving the original Note.

### Acceleration and Default

At the option of the lender, the entire unpaid balance will become immediately due and payable when either of the following events occurs: (i) I make a false representation that results in my receiving a loan for which I am not eligible, or (ii) I default on the loan.

The following events shall constitute a default on my loan: (i) I fail to pay the entire unpaid balance after the lender has exercised its option under the preceding paragraph, (ii) I fail to make installment payments when due and my failure persists for at least 270 days, or (iii) I fail to comply with other terms of the loan, and the lender or guarantor reasonably concludes I no longer intend to honor my repayment obligation. If I default, the guarantor may purchase my loan and capitalize all outstanding interest into a new principal balance. The new principal balance and collection fees will become immediately due and payable.

If I default, the default will be reported to all national credit bureaus and will significantly and adversely affect my credit history. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, the loan may be subject to income-contingent repayment (including potential collection of amounts in excess of the principal and interest) in accordance with the Act.

### Governing Law and Notices

The terms of this Note will be interpreted according to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), other applicable federal statutes and regulations, and the guarantor's policies. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note.

If I reside in the state where the guarantor's principal office is located, the guarantor may sue to enforce the loan in the county where the guarantor's office is located. However, if I object to being sued there and I mail a written objection to the guarantor that is postmarked no later than 30 days after I am served with the lawsuit, the guarantor will either have the court transfer the lawsuit to the county where I live or will dismiss the lawsuit.

Any notice required to be given to me will be effective if sent by first class mail to the latest address the lender has for me or by electronic means to an address that I have provided. I will immediately notify the lender of any change of address or status as specified in the Borrower's Rights and Responsibilities Statement. Failure by the lender to enforce or insist on compliance with any term of this Note shall not waive any right of the lender. No provision of this Note may be modified or waived except in writing by the lender of the Note. If any provision of this Note is determined to be unenforceable, the remaining provisions shall remain in force.

# Federal Family Education Loan Program (FFELP)

## Instructions for Completing the Federal Consolidation Loan Application and Promissory Note

| Guarantor, Program, or Lender Identification | |
|---|---|
| | WEB |
| ▓▓▓▓▓ 9211158 | |

### Before You Begin

Before beginning, gather all of your education loan records, account statements, and bills so that you have the information you need to complete the Federal Consolidation Loan Application and Promissory Note.

Complete the form using dark ink or type. This form must be signed and dated by the applicant(s). If an item has been completed for you and it is incorrect, cross out the incorrect information and print the correct information. Incorrect or incomplete information may delay processing of your application.

If you have any questions about completing this application, contact the entity identified above.

### Section A. Borrower Information

**Item 1:** Enter your last name, then your first name and middle initial.

**Item 2:** Enter your nine-digit Social Security Number. If this item has been completed for you, review it for correctness.

**Item 3:** Enter your permanent home address (number, street, apartment number, city, state, zip code). If your mailing address is an RFD, post office box, or general delivery, you must list both the street address and mailing address.

**Item 4:** Enter the area code and telephone number for the address listed in Item 3. If you do not have a telephone, enter N/A.

**Item 5:** Enter any former names under which one or more of your loans may have been disbursed. If you do not have a former name, enter N/A.

**Item 6:** Enter the month, day, and four-digit year of your birth. Use only numbers. Be careful not to enter the current year.

**Item 7:** Enter the two-letter abbreviation for the state that issued your driver's license followed by the driver's license number. If you do not have a driver's license, enter N/A.

**Item 8:** Enter your fax number and e-mail address you use most frequently. These may be used to communicate with you. If you do not have a fax number or e-mail address, or do not wish to provide this information, enter N/A.

**Item 9:** *It is important that the consolidating lender is able to reach you during the process of making this loan and during repayment.* Enter your employer's name, address, including city, state, and zip code, and telephone number. If you are self-employed, enter the name, address, and telephone number of your business. If you are not employed, enter N/A.

**Item 10:** Enter the name of the lender you would like to finance your Federal Consolidation Loan.

**Item 11:** If you know the lender code, enter it here. Otherwise, leave this field blank.

### Section B. Spouse Information

**Note:** Complete this section only if you are married and you both wish to consolidate your loans jointly. Include your spouse's loan(s) in Section D. Your spouse must sign and date Item 38 in Section G. Remember, if you take out a joint Federal Consolidation Loan, you are both responsible for repaying the total Federal Consolidation Loan, even if you become separated or divorced.

**Item 12:** Enter your spouse's last name, then your spouse's first name and middle initial.

**Item 13:** Enter your spouse's nine-digit Social Security Number. If this item has been completed for you, review it for correctness.

**Item 14:** Enter the month, day, and four-digit year of your spouse's birth. Use only numbers. Be careful not to enter the current year.

**Item 15:** Enter any former names under which one or more of your spouse's loans may have been disbursed. If your spouse does not have a former name, enter N/A.

**Item 16:** Enter the two-letter abbreviation for the state that issued your spouse's driver's license followed by the driver's license number. If your spouse does not have a driver's license, enter N/A.

**Item 17:** Enter your spouse's fax number and the e-mail address your spouse uses most frequently. These may be used to communicate with your spouse. If your spouse does not have a fax number or e-mail address, or does not wish to provide this information, enter N/A.

**Item 18:** *It is important that the consolidating lender is able to reach your spouse during the process of making this loan and during repayment.* Enter your spouse's employer's name, address (including city, state, and zip code), and telephone number.

If your spouse is self-employed, enter the name, address, and telephone number of your spouse's business. If your spouse is not employed, enter N/A.

### Section C. Reference Information

**Note:** You must provide two separate references with different U.S. addresses. Do not include individuals who live with you or live outside the U.S. Both references must be completed fully and should be relatives or acquaintances you (or you and your spouse, if consolidating jointly) have known for at least three years.

**Items 19A and 19B:** Enter the requested reference information for two adults who do not share a common address. References with addresses outside the U.S. are not acceptable. Both references must be completed in full. If a reference does not have a telephone or an e-mail address, or does not wish to provide an e-mail address, write N/A. If you provide an e-mail address for a reference, the holder of your Federal Consolidation Loan may use it to communicate with your reference as part of collecting on the loan. All requested items must be completed or your loan will be delayed.

### Section D. Education Loan Indebtedness

**Education Loans**

The following types of education loans (except those represented by the code OTHR) are eligible for consolidation:

| Loan Code | Education Loans |
|---|---|
| SS | Subsidized Federal Stafford Loans, formerly Guaranteed Student Loans (GSL) |
| DSS | Direct Subsidized Stafford/Ford Loans |
| US | Unsubsidized and Nonsubsidized Federal Stafford Loans |
| DUS | Direct Unsubsidized Stafford/Ford Loans |
| SLS | Federal Supplemental Loans for Students, formerly Auxiliary Loans to Assist Students (ALAS) and Student PLUS Loans |
| PERK | Federal Perkins Loans, formerly National Defense/National Direct Student Loans (NDSL) |
| HPSL | Health Professions Student Loans, including Loans for Disadvantaged Students |
| HEAL | Health Education Assistance Loans |
| FISL | Federal Insured Student Loans |
| PLUS | Federal PLUS Loans |
| DPLUS | Direct PLUS Loans |
| SCON | Subsidized Federal Consolidation Loans |
| DSCON | Direct Subsidized Consolidation Loans |
| UCON | Unsubsidized Federal Consolidation Loans |
| DUCON | Direct Unsubsidized Consolidation Loans, including Direct PLUS Consolidation Loans |
| NSL | Federal Nursing Loans |
| OTHR | Other education loans not eligible for consolidation that you want used to calculate the maximum repayment period |

Information you need to answer items in this section is available in loan documents, such as:
- The last monthly billing statement you received,
- Your quarterly interest statement or annual statement,
- Your coupon book, or
- The Internet site of your loan holder or servicer.

If you are unsure of the correct information on your loans, call your loan holder or servicer, or check the most recent correspondence from them.

*Continued on next page.*

**Step 1:** Begin by listing (according to the instructions that follow for Items 20-26) eligible loan(s) that you (or you and your spouse jointly) wish to consolidate, including any loan(s) currently held by the lender that will be consolidating your loan(s). You may consolidate a Federal Consolidation Loan only if you are combining that loan with at least one other eligible loan.

If you are in default on any loan that you wish to consolidate, you must have made satisfactory repayment arrangements with the holder to repay the loan before it is eligible for consolidation. Satisfactory arrangements usually involve making a series of payments on the defaulted loan. For Federal Stafford, Federal SLS, Federal PLUS, or Federal Consolidation loans, satisfactory repayment arrangements involve making a series of reasonable and affordable payments or agreeing to repay the new Federal Consolidation Loan under an income-sensitive repayment plan. Contact the holder of your defaulted loan for specific information.

**Item 20:** Enter the code that corresponds to the loan type from the Education Loans list. If you are not sure about the loan type, leave this item blank.

**Item 21:** Enter the full name and mailing address of each holder of your education loans or the holder's servicer. (This is the address to which you are or will be sending your payments.) If the loan is in default, enter the full name and address of the guarantor or the guarantor's servicer. If the loan is a Perkins Loan, enter the full name and address of the school or school's servicer. Do not use initials instead of full names.

**Item 22:** Enter "B" for each loan that is yours, "S" for each loan that is your spouse's, and "J" for each loan that belongs to both you and your spouse.

**Item 23:** Enter the account number for each loan. This may be listed on your monthly billing statement or coupon or in other information your holder or holder's servicer provides.

**Item 24:** Enter the interest rate you are paying on each loan.

**Item 25:** Enter the estimated payoff amount, including any unpaid interest, late fees, and collection costs.

**Item 26:** If you are in your grace period (specified period of time after a student graduates or leaves school during which loan payments are not required and during which interest on loans may be payable by the federal government) for any of the loans selected for consolidation and you wish to delay processing until you have completed your grace period, enter the month and year that your grace period ends. If you request such a delay, processing of the Federal Consolidation Loan will begin approximately 60-90 days before the latest grace period end date. If you do not wish to delay processing, leave this field blank.

**Step 2:** The maximum length of your Federal Consolidation Loan repayment period is determined by your total education loan debt, including:
- Loans you are consolidating,
- Loans eligible for consolidation that you are not consolidating, and
- Loans not eligible for consolidation.

In Items 27-32, list both eligible loans you do not wish to consolidate and outstanding education loans not eligible for consolidation that you want used to determine your maximum repayment period. Outstanding education loans not eligible for consolidation must have been made exclusively to finance postsecondary education by an entity such as a bank, school, or state agency under a public or private loan program. Personal loans from family or friends or loans in default may not be listed. The amount of the loans that are not included in the Federal Consolidation Loan but are used to determine your repayment period will not exceed the amount of the loans consolidated.

**Section E. Repayment Plan Selection**

**Item 33:** You may choose one of the repayment options described below for your Federal Consolidation Loan. The maximum repayment period will be 10 to 30 years depending on your student loan debt. You can request a payment period that is shorter than the maximum period allowed.

STANDARD PAYMENT PLAN – This option provides equal monthly payments over the term of the loan. Payments cover all principal and interest due that month.

GRADUATED PAYMENT PLAN – This option provides reduced payments that may be as low as interest only for a specified number of years. Payments then increase to standard payments of principal and interest for the remaining term.

GRAD CHOICE℠ 2 – Reduced payments for two years.

GRAD CHOICE℠ 3 – Reduced payments for three years.

GRAD CHOICE℠ 4 – Reduced payments for four years.

GRAD CHOICE℠ 5 – Reduced payments for five years.

INCOME-SENSITIVE PAYMENT PLAN – This option establishes payments annually based on your expected total monthly gross income from employment and all other sources. If you and your spouse jointly consolidate your loans, payments will be based on your total household income from all sources.

EXTENDED PAYMENT PLAN – This option allows borrowers with debt in excess of $30,000 to repay over a 25-year period on either a standard or graduated schedule.

If you have education debt of $60,000 or more and wish to repay over a 30-year period, you should select one of the other repayment options.

If you do not notify your lender of your choice of payment plans or do not provide your lender with the required documentation for an income-sensitive schedule, your lender will establish a standard payment schedule.

Note: If all of your FFELP loans are with one holder and you certify that you have been unable to obtain a Federal Consolidation Loan or a Federal Consolidation Loan with income-sensitive repayment terms from your current holder, you may apply for a Federal Consolidation Loan from another FFELP lender. If you have FFELP loans with more than one holder, you may apply for a Federal Consolidation Loan from any FFELP lender. Alternatively, if you have an outstanding balance on a FFELP loan and you are unable to obtain a Federal Consolidation Loan or a Federal Consolidation Loan with income-sensitive repayment terms that are acceptable to you, you may apply for a Federal Direct Consolidation Loan from the U.S. Department of Education.

**Section F. Borrower Certification and Authorization**

**Items 34 and 35:** Read these items carefully. The statements confirm the accuracy of the information that you supply, authorize various parties to perform certain functions, and certify your understanding and acceptance of certain terms and conditions of the loan.

**Section G. Promissory Note**

This is a legally binding contract.

**Item 36:** Carefully read the entire Promissory Note, Borrower Certification and Authorization, Borrower's Rights and Responsibilities Statement, and the other materials provided in connection with this loan.

**Item 37:** Sign and date the Promissory Note.

**Item 38:** If you and your spouse are jointly consolidating your loans, your spouse must also sign and date the Promissory Note. If you and your spouse are not jointly consolidating your loans, your spouse should not sign the Promissory Note.

Note: Signature(s) is required. If you (or you and your spouse, if consolidating jointly) fail to sign the Promissory Note, your application will be delayed.

**Submitting Your Application and Promissory Note**

Review all information on your Federal Consolidation Loan Application and Promissory Note. Return your completed application and promissory note to your consolidating lender for processing. Keep a copy for your records. If you are applying with your spouse, you and your spouse should each keep a copy for your records. Remember to continue making your regularly scheduled education loan payments until your consolidating lender notifies you that the consolidation is complete. If you would like to temporarily postpone your payments while your Federal Consolidation Loan is being processed, contact your holder regarding forbearance. When your loans are consolidated, you will receive a repayment schedule and disclosure statement for your Federal Consolidation Loan. It will provide information about your new loan and instructions on where to send your monthly payments.

**Mailing Instructions:** Mail the original copy of the Federal Consolidation Loan Application and Promissory Note and the Additional Loan Listing Sheet, if applicable, to your consolidating lender.

# Borrower's Rights and Responsibilities Statement

**Important Notice:** The Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of your Federal Consolidation Loan. Please retain this Statement for your records. You may contact your lender at any time for another copy of this Statement.

**FFELP Definition** - The Federal Family Education Loan Program (FFELP) includes the following loans:

■ Subsidized Federal Stafford Loan [formerly known as Guaranteed Student Loan (GSL)],

■ Unsubsidized Federal Stafford Loan,

■ Federal Insured Student Loan (FISL),

■ Federal Supplemental Loans for Students (SLS), also known as ALAS,

■ Federal PLUS Loan, and

■ Federal Consolidation Loan.

The FFELP is authorized by Title IV, Part B of the Higher Education Act of 1965, as amended.

**1. Governing Law** – A loan disbursed under this Federal Consolidation Loan Promissory Note ("Note") is subject to the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), and applicable U.S. Department of Education regulations (collectively referred to as the "Act").

**2. Change of Status** – I must notify my lender (or any subsequent holder of my loan) if any of the following events take place before my loan is repaid:

■ I change my permanent address, e-mail address, or telephone number,

■ I change my name (for example, maiden name to married name),

■ I change my employer or my employer's address or telephone number changes, and/or

■ I have any other change in status that would affect my loan (for example, the loss of eligibility for an unemployment deferment by obtaining a job).

**3. Interest Rate** – The interest rate on my Federal Consolidation Loan will be based on the weighted average of the interest rates on the loans being consolidated rounded up to the nearest higher one-eighth of one percent, but will not exceed 8.25 percent. This fixed interest rate will remain the same throughout the life of the loan. For the portion of the Federal Consolidation Loan attributable to a HEAL loan (if applicable), the interest rate is a variable rate and is adjusted annually on July 1. The variable rate for each 12-month period will be equal to the average of the bond equivalent rates of the 91-day Treasury Bills auctioned for the quarter ending June 30, plus 3.0 percent; there is no maximum interest rate on this portion of the loan. The interest rate that applies to my Federal Consolidation Loan will be disclosed to me by my lender at or about the time my loan is disbursed.

**4. Payment of Interest** – Interest will be charged from the date my Federal Consolidation Loan is disbursed. It is my responsibility to pay interest on my loan. The federal government will pay interest that accrues during deferment on the portion of my Federal Consolidation Loan that repays subsidized Federal Stafford Loans, subsidized Federal Direct Stafford Loans, subsidized FISL Loans, subsidized Federal Consolidation Loans, and subsidized Federal Direct Consolidation Loans. I will be responsible for interest that accrues during deferment on the portion of my Federal Consolidation Loan that repays other loan types.

I am responsible for paying the interest that accrues during a forbearance period.

If I choose not to pay the interest that accrues on my loan during any period of authorized deferment or forbearance, the interest may be capitalized to the extent permitted by the Act. Capitalization of interest will result in the unpaid interest being added to the principal balance of the loan and increase the total cost of my loan.

I may be able to claim a federal income tax deduction for interest payments I make on my FFELP loans. For further information, I may refer to the IRS Publication 970 available at http://www.irs.gov.

**5. Sale or Transfer of Loan** – The lender may sell or otherwise transfer my loan without my consent. Should ownership of my loan be transferred, I will be notified of the name, address, and telephone number of the new lender if the address to which I make my payments changes. Sale or transfer of my loan does not affect my rights and responsibilities under the loan.

**6. Consequences of Default** – Default is defined in detail in my Note. If I default, the entire unpaid balance and collection fees will become immediately due and payable. Failure to repay this loan according to its terms and conditions may result in any or all of the following:

■ Loss of federal and state income tax refunds,

■ Loss of other federal or state payments,

■ My employer withholding part of my wages to give them to my guarantor (administrative wage garnishment),

■ Legal action against me,

■ Collection charges (including attorney's fees) being assessed against me.

■ Loss of my professional license,

■ An increase in my interest rate,

■ Loss of eligibility for other student aid and assistance under most federal benefit programs,

■ Loss of eligibility for loan deferments, and

■ Negative credit reports to credit bureaus.

**7. Credit Bureau Notification** – Information concerning the amount, disbursement, and repayment status (current or delinquent) of my loan will be reported by my lender to one or more national credit bureaus on a regular basis. If I default on my loan, the guarantor will report the default to all national credit bureaus. Before the guarantor reports such a default, it will give me at least 30 days notice that default information will be disclosed to the credit bureaus unless I enter into a repayment arrangement within 30 days of the date of the notice. The guarantor will give me a chance to ask for a review of the debt before the default is reported. My lender or guarantor, as applicable, must provide a timely response to a request from any credit organization regarding objections I might raise with that organization about the accuracy and completeness of information reported by the lender or guarantor.

**8. Loan Discharge & Forgiveness** – My loan will be discharged if documentation of my death is submitted to my lender. If I am consolidating a PLUS Loan and the dependent student for whom I borrowed the PLUS Loan dies, the portion of my Federal Consolidation Loan attributable to that PLUS Loan will be discharged if documentation of the dependent student's death is submitted to my lender.

My loan may also be discharged if a physician certifies that I am totally and permanently disabled as defined by the Act. In addition, I must meet certain income requirements and may not receive any additional FFELP, Direct, or Federal Perkins loans during a 3-year conditional discharge period. I may not receive a discharge due to total and permanent disability based on a condition that existed before I applied for this loan, unless a physician certifies that the condition substantially deteriorated after the disbursement dates on the loans that are consolidated.

I understand that I may not qualify for a disability discharge of my Federal Consolidation Loan if any loan I am consolidating does not meet the discharge conditions.

My loan will not be automatically discharged in bankruptcy. In order to discharge a loan in bankruptcy, I (and my spouse, if a joint consolidation co-maker) must prove undue hardship in an adversary proceeding before the bankruptcy court.

In certain cases, the Act provides discharge of all or a portion of my Federal Consolidation Loan if I was unable to complete a course of study because my school closed, or my eligibility was falsely certified by my school. The Act also provides for loan discharge in the amount of any required refund that my school failed to make to my lender on my behalf.

Neither the lender, the guarantor, nor the Department of Education vouch for the quality or suitability of the academic programs offered by participating schools. Unless I qualify for loan discharge under the Act, I must repay this loan even if I do not complete my education, I am unable to obtain employment in my field of study, or I am dissatisfied with, or do not receive, the education I paid for with the loan(s) being consolidated.

If I am a full-time teacher and at the time I obtained a subsidized or unsubsidized Stafford Loan that I am consolidating I had no outstanding balance on a Title IV loan disbursed before October 1, 1998, I may be eligible for forgiveness under the Teacher Loan Forgiveness Program. A fixed amount of my Stafford Loan(s) that I am consolidating may be repaid if I have worked as a full-time teacher for five consecutive school years and if I meet all other eligibility requirements under the Act.

I understand that, by consolidating, I may forego some discharges that might otherwise be available for the loan(s) being consolidated.

If I am applying with my spouse for a joint consolidation loan, I further understand that the Federal Consolidation Loan will be fully discharged or forgiven only if both of us qualify for the same or a different discharge or forgiveness. However, the loan may be partially discharged or forgiven under certain circumstances, if only one of us qualifies for a discharge or forgiveness.

**9. Deferment** – Under certain circumstances, I have a right to defer (postpone) repayment. Upon request, my lender will provide me with a deferment application that explains the eligibility requirements. If I am in default on my Federal Consolidation Loan, I am not eligible for deferment unless I make payment arrangements satisfactory to my lender before the payment of a default claim on the loan.

If I consolidate my loans jointly with my spouse, we both must simultaneously qualify for the same or different deferments in order to postpone repayment on the loan. The maximum periods authorized for deferment on Federal Consolidation Loans are determined by the Act. The total deferment period combined for the borrower and spouse cannot exceed these limits.

If I consolidate all of my eligible FFELP loans, deferments are available while I am:

■ Enrolled at least half time at an eligible school.

■ Engaged in a full-time course of study in a graduate fellowship program.

■ Engaged in a full-time rehabilitation training program for individuals with disabilities (if the program is approved by Department of Education).

■ Conscientiously seeking, but unable to find, full-time employment (for up to three years).

■ Experiencing an economic hardship (including Peace Corps service) as defined by federal law (for up to three years).

My lender will process an in-school deferment based on (i) my request along with documentation verifying my eligibility, (ii) my lender's receipt of information from my school about my eligibility in connection with a new loan, or (iii) my lender's receipt of student status information indicating that I am enrolled on at least a half-time basis. For all other deferment types, I must provide my lender with a deferment request and evidence that verifies my eligibility.

If I did not consolidate all of my FFELP loans, the deferment options available to me for this Federal Consolidation Loan will be based on the deferment provisions that are in effect for any outstanding loan(s) not consolidated, provided the deferment is authorized for Federal Consolidation Loans. (See Item 4, "Payment of Interest.") My lender can provide additional information about deferment eligibility.

**10. Forbearance** – If I am unable to make my scheduled loan payments, the lender may allow me to reduce my payment amount, to extend the time for making payments, or to temporarily stop making payments as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called a forbearance. Interest charges continue to accrue during a forbearance period.

The lender may grant me forbearance due to poor health or other acceptable reasons.

My lender is generally not required to grant a forbearance and may require me to provide my reasons for the request and other information.

The lender may grant me a forbearance to eliminate a delinquency that persists even though I am making scheduled installment payments. My lender may grant me an administrative forbearance for up to 60 days in order to collect and process documentation supporting my request for a deferment, forbearance, change in repayment plan, or consolidation.

Circumstances that require my lender to grant me forbearance include:

■ Serving in a medical or dental internship or residency program, if I meet certain criteria.

■ Serving in a national service position for which I receive a national service education award under the National and Community Service Trust Act of 1993. In some cases, the interest that accrues on a qualified loan during the service period will be paid by the Corporation for National and Community Service.

■ Qualifying for partial repayment of my loans under the Student Loan Repayment Program, as administered by the Department of Defense.

■ Having a monthly debt burden for Title IV loans that collectively equals or exceeds 20 percent of my total monthly gross income (for up to three years).

■ Being called to active duty in the U.S. Armed Forces.

If my spouse and I are consolidating jointly, we must simultaneously qualify for the same or a different forbearance in order to forbear repayment of the loan.

If I choose not to pay the interest that accrues on my loan during any period of authorized forbearance, the interest may be capitalized to the extent permitted by the Act. Capitalization of interest will result in the unpaid interest being added to the principal balance of the loan.

**11. Applicability to Aggregate Loan Limits** – If the loans I have selected for consolidation were made under the Federal or Direct Stafford (subsidized, nonsubsidized, or unsubsidized), SLS, Perkins, or HPSL loan programs, a percentage of the outstanding balance on my Federal Consolidation Loan will be counted towards the aggregate loan limit for each type of loan selected.

**12. Adding Loans** – If I do not consolidate all eligible loans at this time, I understand that I may include an additional eligible loan(s) by submitting a request to my lender. My lender must receive my request within 180 days after the date on which my Federal Consolidation Loan is disbursed. After this period of time, I will need to apply for a new Federal Consolidation Loan to consolidate any eligible loan(s).

IMPORTANT NOTICES

Privacy Act Notice

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §428(b)(2)(A) et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1078(b)(2)(A) et seq.), and the authority for collecting and using your Social Security Number (SSN) is §484(a)(4)(B) of the HEA (20 U.S.C. 1078-2(f)). Participating in the Federal Family Education Loan Program (FFELP) and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan(s) or a benefit on a loan(s) (such as a deferment, forbearance, discharge, or forgiveness) under the FFELP, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect on your loan(s) if your loan(s) becomes delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed to third parties as authorized under routine uses in the appropriate systems of records. The routine uses of this information include its disclosure to federal, state, or local agencies, to other federal agencies under computer matching programs, to agencies that we authorize to assist us in administering our loan programs, to private parties such as relatives, present and former employers, business and personal associates, to credit bureau organizations, to educational and financial institutions, to guaranty agencies, and to contractors in order to verify your identity, to determine your eligibility to receive a loan(s) or a benefit on a loan(s), to permit the servicing or collection of your loan(s), to counsel you in repayment efforts, to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, to locate you if you become delinquent in your loan payments or if you default, to provide default rate calculations, to provide financial aid history information,

to assist program administrators with tracking refunds and cancellations, or to provide a standardized method for educational institutions efficiently to submit student enrollment status.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

Financial Privacy Act Notice

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), the U.S. Department of Education will have access to financial records in your student loan file maintained by the lender in compliance with the administration of the Federal Family Education Loan Program.

Paperwork Reduction Notice

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0036. The time required to complete this information is estimated to average 1.0 hours (60 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to:

U.S. Department of Education
Washington, DC 20202-4651

If you have any comments or concerns regarding the status of your individual submission of this form, contact the lender, guarantor, or program identified in the upper right-hand corner of this form.

Exhibit D

(2009 Servicing Contract)

| SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS | 1. REQUISITION NUMBER | PAGE 1 OF 72 |
|---|---|---|
| *OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30* | EDOFSA-09-000622 | |

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|
| ▉▉-0015 | JUN 17, 2009 | | | |

| 7. FOR SOLICITATION INFORMATION CALL: | a. NAME Nicholas Chung  nicholas.chung@ed.gov | b. TELEPHONE NUMBER *(No collect calls)* ▉▉ | 8. OFFER DUE DATE/ LOCAL TIME |
|---|---|---|---|

| 9. ISSUED BY | CODE | FSA-FS2 |
|---|---|---|

United States Department of Education
Federal Student Aid/Mission Support Group
830 First St NE - Suite 91F3
Washington DC 20202

10. THIS ACQUISITON IS

☐ UNRESTRICTED OR   ☐ SET ASIDE:   ____ % FOR:

☐ SMALL BUSINESS   ☐ EMERGING SMALL BUSINESS

☐ HUBZONE SMALL BUSINESS

NAICS:

SIZE STANDARD:   ☐ SERVICE-DISABLED VETERAN-OWNNED SMALL BUSINESS   ☐ 8(A)

| 11. DELIVERY FOR FOB DESTINA-TION UNLESS BLOCK IS MARKED | 12. DISCOUNT TERMS 0 Days 0% Net 30 | 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | 13b. RATING |
|---|---|---|---|
| ☐ SEE SCHEDULE | | | 14. METHOD OF SOLICITATION ☐ RFQ   ☐ IFB   ☐ RFP |

| 15. DELIVER TO | CODE | 16. ADMINISTERED BY | CODE | FSA-FS2 |
|---|---|---|---|---|

United States Department of Education
Federal Student Aid/Mission Support Group
830 First St NE - Suite 91F3

| 17a. CONTRACTOR/ OFFEROR | CODE 00018575 | FACILITY CODE | 18a. PAYMENT WILL BE MADE BY | CODE |
|---|---|---|---|---|

SLM CORPORATION
C/O MONETRAY PROCESSING
P.O. BOX 4600
WILKES BARRE PA 187734600

TIN: 522013874
CAGE: 3GKW7
DUNS: 160002218

TELEPHONE NO. ▉▉4633

☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED   ☐ SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| Please | see continuation page for line item details. | | | | |

*(Use Reverse and/or Attach Additional Sheets as Necessary)*

| 25. ACCOUNTING AND APPROPRIATION DATA See Schedule | 26. TOTAL AWARD AMOUNT *(For Govt. Use Only)* $5,000,000.00 |
|---|---|

| ☒ 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52 212-1, 52.212-4. FAR 52.212 3 AND 52.212 5 ARE ATTACHED.  ADDENDA | ☐ ARE | ☒ ARE NOT ATTACHED |
|---|---|---|
| ☐ 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212 4.  FAR 52 212-5 IS ATTACHED.  ADDENDA | ☒ ARE | ☐ ARE NOT ATTACHED |

☒ 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ___1___ COPIES TO ISSUING OFFICE.  CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED

29. AWARD OF CONTRACT: REF. _____ OFFER DATED _____ YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA *(SIGNATURE OF CONTRACTING OFFICER)* |
|---|---|

| 30b. NAME AND TITLE OF SIGNER *(Type or print)* | 30c. DATE SIGNED 6/17/09 | 31b. NAME OF CONTRACTING OFFICER *(Type or print)* Mike Whisler | 31c. DATE SIGNED 6/17/09 |
|---|---|---|---|

AUTHORIZED FOR LOCAL REPRODUCTION
PREVIOUS EDITION IS NOT USABLE

STANDARD FORM 1449 (REV. 3/2005)
Prescribed by GSA  FAR (48 CFR) 53.212

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | | | | | |

32a. QUANTITY IN COLUMN 21 HAS BEEN

☐ RECEIVED        ☐ INSPECTED        ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED: _____

| 32b. SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE | 32c. DATE | 32d. PRINTED NAME AND TITLE OF AUTHORIZED GOVERNMENT REPRESENTATIVE |
|---|---|---|
| 32e. MAILING ADDRESS OF AUTHORIZED GOVERNMENT REPRESENTATIVE | | 32f. TELPHONE NUMBER OF AUTHORZED GOVERNMENT REPRESENTATIVE |
| | | 32g. E-MAIL OF AUTHORIZED GOVERNMENT REPRESENTATIVE |

| 33. SHIP NUMBER | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR | 36. PAYMENT | 37. CHECK NUMBER |
|---|---|---|---|---|
| PARTIAL    FINAL | | | ☐ COMPLETE    ☐ PARTIAL    ☐ FINAL | |

| 38. S/R ACCOUNT NO. | 39. S/R VOUCHER NUMBER | 40. PAID BY |
|---|---|---|

| 41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT | 42a. RECEIVED BY *(Print)* |
|---|---|
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER | 41c. DATE | |
| | | 42b. RECEIVED AT *(Location)* |
| | | 42c. DATE REC'D *(YY/MM/DD)* | 42d. TOTAL CONTAINERS |

**STANDARD FORM 1449** (REV. 3/2005) **BACK**

**SCHEDULE  Continued**

| ITEM NO. | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE $ | AMOUNT $ |
|---|---|---|---|---|---|
| | Accounting and Appropriation Data: | | | | |
| | 0198M2009.A.2009.ENB00000.6P2.2572A.C26.000.0000 000000 | | | | |
| | Cost Applied: $5,000,000.00 | | | | |
| | | | | | |
| 0001 | IDIQ Base Ordering Period Award Minimum Guarantee | 1.00 | SE | 5,000,000.00 | 5,000,000.00 |
| | | | | | |
| | Period of Performance:  06/17/2009 - 06/16/2014 | | | | |
| | | | | | |
| 0002 | OPTION - Optional Ordering Period | 1.00 | EA | 0.00 | 0.00 |
| | | | | | |
| | Optional Period of Performance:  06/17/2014 - 06/16/2019 | | | | |

**A.      ADDENDUM 1 – SF 1449 CONTINUATION PAGE**

(This page left blank intentionally.)

**B.      ADDENDUM 2 – 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (MAR 2009)**

**B.1    52.212-4       Contract Terms And Conditions—Commercial Items (Mar 2009)—TAILORED**

(c)(1)  *Changes.* The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:

     (i)       Description of services to be performed.
     (ii)      Time of performance (i.e., hours of the day, days of the week, etc.).
     (iii)     Place of performance of the services.

   (2)     If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.

   (3)     The Contractor must assert its right to an adjustment under this clause within 30 days from the date of receipt of the written order. However, if the Contracting Officer decides that the facts justify it, the Contracting Officer may receive and act upon a proposal submitted before final payment of the contract.

   (4)     If the Contractor's proposal includes the cost of property made obsolete or excess by the change, the Contracting Officer shall have the right to prescribe the manner of the disposition of the property.

   (5)     Failure to agree to any adjustment shall be a dispute under the Disputes clause. However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

**B.2    52.252-2       Clauses Incorporated By Reference (Feb 1998)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. The full text of a clause may also be accessed electronically at: http://www.arnet.gov/far/

- 52.203-13  Contractor Code of Business Ethics and Conduct (Dec 2008)
- 52.203-14  Display of Hotline Poster(s) (Dec 2007)
- 52.209-6   Protecting the Government's Interest when Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (SEP 2006)
- 52.216-18 Ordering (OCT 1995)
  - (a)     the effective date of award,  the end of the current period of performance
- 52.216-19 Ordering Limitations (OCT 1995)
  - (a)     One Borrower
  - (b)(1)  Five Million Borrowers
  - (b)(2)  Five Million Borrowers
  - (b)(3)  Two Days
  - (d)     One Day
- 52.216-22  Indefinite Quantity (OCT 1995)

(d)    the end of the current period of performance

- 52.216-27  Single Or Multiple Awards (OCT 1995)
- 52.217-8   Option To Extend Services (NOV 1999)
- 52.217-9   Option to Extend the Term of the Contract (MAR 2000)
- 52.224-1   Privacy Act Notification (APR 1984)
- 52.224-2   Privacy Act (APR 1984)

## B.3    EDAR 3452.202-1    Definitions (Aug 1987) – TAILORED

(a) The term "Secretary" or "Head of the Agency" (also called "Agency Head") means the Secretary of the Department of Education; and the term "his/her duly authorized representative" means any person, persons, or board authorized to act for these officials.

(b) "Chief Acquisition Officer" or "CAO" means the official responsible for monitoring the agency's acquisition activities, evaluating them based on applicable performance measurements, increasing the use of full and open competition in agency acquisitions, making acquisition decisions consistent with applicable laws, and establishing clear lines of authority, accountability, and responsibility for acquisition decision-making and developing and maintaining a acquisition career management program.

(c) "Chief of the Contracting Office" means an official serving in the contracting activity (CAM or FSA Acquisitions) as the manager of a group that awards and administers contracts for a principal office of the Department. See also definition of "Head of Contracting Activity" below.

(d) "Contracting Officer's Representative" or "COR" means a government employee appointed in writing ONLY by a contracting officer and delegated limited responsibilities to perform specified contract management duties related to technical oversight and administration of a specific contract.  CORs may serve in a full-time or part-time capacity.  The COR performs the contract management duties assigned by the CO in a written "Contracting Officer's Representative Designation Memorandum" for each particular contract.  Multiple CORs may be appointed for a single contract when the area of expertise necessary requires such appointments.  The CO may appoint alternate or assistant CORs to serve in the COR's absence.  For the purpose of this program, the term Contracting Officer's Technical Representative (COTR) will be used for assistant CORs.

(e) "Head of the Contracting Activity" or "HCA" means those officials within the Department of Education who have responsibility for and manage an acquisition organization and usually hold unlimited procurement authority.  The Director, Federal Student Aid Acquisitions, is the HCA for FSA. The Director, Contracts and Acquisitions Management (CAM) is the HCA for all other Departmental program offices and all boards, commissions, and councils under the management control of the Department.

(f) "Performance-Based Organization" or "PBO" is the office within the Department that is mandated by Public Law 105-244 to carry out Federal student assistance or aid programs and report to Congress on an annual basis.  It may also be referred to as "Federal Student Aid."

(g) "Senior Procurement Executive" or "SPE" means the single agency official appointed as such by the head of the agency and delegated broad responsibility for acquisition functions, including issuing agency acquisition policy and reporting on acquisitions agency-wide.  The SPE also acts as the official one level above the contracting officer when the HCA is acting as a contracting officer.

(h) "Department" or "ED" means the United States Department of Education.

**B.4     ED 307-17     Conflicts Of Interest (Aug 2007)**

(a) The contractor, subcontractor, employee or consultant, has certified that, to the best of their knowledge and belief, there are no relevant facts or circumstances which could give rise to an organizational or personal conflict of interest, (see FAR Subpart 9.5 for organizational conflicts of interest), (or apparent conflict of interest) for the organization or any of its staff, and that the contractor, subcontractor, employee or consultant has disclosed all such relevant information if such a conflict of interest appears to exist to a reasonable person with knowledge of the relevant facts (or if such a person would question the impartiality of the contractor, subcontractor, employee or consultant). Conflicts may arise in the following situations:

(1) Unequal access to information – a potential contractor, subcontractor, employee or consultant has access to non-public information through its performance on a government contract.

(2) Biased ground rules – a potential contractor, subcontractor, employee or consultant has worked, in one government contract, or program, on the basic structure or ground rules of another government contract,

(3) Impaired objectivity – a potential contractor, subcontractor, employee or consultant, or member of their immediate family (spouse, parent or child) has financial or other interests that would impair, or give the appearance of impairing, impartial judgment in the evaluation of government programs, in offering advice or recommendations to the government, or in providing technical assistance or other services to recipients of Federal funds as part of its contractual responsibility.

"Impaired objectivity" includes but is not limited to the following situations that would cause a reasonable person with knowledge of the relevant facts to question a person's objectivity:

(i) financial interests or reasonably foreseeable financial interests in or in connection with products, property, or services that may be purchased by an educational agency, a person, organization, or institution in the course of implementing any program administered by the Department;

(ii) significant connections to teaching methodologies that might require or encourage the use of specific products, property or services; or

(iii) significant identification with pedagogical or philosophical viewpoints that might require or encourage the use of a specific curriculum, specific products, property or services,

Offerors must provide the disclosure described above on any actual or potential conflict (or apparent conflict of interest) of interest regardless of their opinion that such a conflict or potential conflict (or apparent conflict of interest) would not impair their objectivity.

In a case in which an actual or potential conflict (or apparent conflict of interest) is disclosed, the Department will take appropriate actions to eliminate or address the actual or potential conflict (or apparent conflict of interest), including but not limited to mitigating or neutralizing the conflict, when appropriate, through such means as ensuring a balance of views, disclosure with the appropriate disclaimers, or by restricting or modifying the work to be performed to avoid or reduce the conflict. In this clause, the term "potential conflict" means reasonably foreseeable conflict of interest.

(b) The contractor, subcontractor, employee or consultant agrees that if "impaired objectivity, or an actual or potential conflict of interest (or apparent conflict of interest) is discovered after the award is made, it will make a full disclosure in writing to the Contracting Officer. This disclosure shall include a description of actions that the Contractor has taken or proposes to take, after consultation with the Contracting Officer, to avoid, mitigate, or neutralize the actual or potential conflict (or apparent conflict of interest).

(c) Remedies - The Government may terminate this contract for convenience, in whole or in part, if it deems such termination necessary to avoid the appearance of a conflict of interest. If the Contractor was aware of a potential conflict of interest prior to award or discovered an actual or potential conflict (or apparent conflict of interest) after award and did not disclose or misrepresented relevant information to the Contracting Officer, the Government may terminate the contract for default, or pursue such other remedies as may be permitted by law or this contract. These remedies include imprisonment for up to five years for violation of Title 18, U.S. Code, § 1001 and fines of up to $5000 for violation of Title 31, U.S. Code, § 3802. Further remedies include suspension or debarment from contracting with the federal government. The Contractor may also be required to reimburse the Department for costs the Department incurs arising from activities related to conflicts of interest. An example of such costs would be those incurred in processing Freedom of Information Act requests related to a conflict of interest.

(d) In cases where remedies short of termination have been applied, the contractor, subcontractor, employee or consultant agrees to eliminate the organizational conflict of interest, or mitigate it to the satisfaction of the Contracting Officer.

(e) The Contractor further agrees to insert in any subcontract or consultant agreement hereunder, provisions which shall conform substantially to the language of this clause, including specific mention of potential remedies and this paragraph (e).

## B.5    EDAR 3452.208-70   Printing (Aug 1987)

Unless otherwise specified in this contract, the contractor shall not engage in, nor subcontract for, and printing (as that term is defined in Title I of the Government Printing and Binding Regulations in effect on the effective date of this contract) in connection with the performance of work under this contract; except that performance involving the reproduction of less than 5,000 production units of any one page, or less than 25,000 production units in the aggregate of multiple pages, shall not be deemed to be printing. A production unit is defined as one sheet, size 8 1/2 by 11 inches, and one side and color only.

## B.6    FSA 24-1      Release Of Information Under The Freedom Of Information Act (Jan 2008)—TAILORED

By entering into a contract with the Department of Education and as permitted/authorized by existing statutes and applicable case law, without regard to proprietary markings, the contractor approves the release of the entire contract and all related modifications and task orders, including, but not limited to:

(1)    Unit prices, including labor rates,

(2)    Statements of Work/Performance Work Statement generated by the contractor,

(3)    Performance requirements, including incentives, performance standards, quality levels and service level agreements,

(4)     Reports, deliverables and work products delivered in performance of the contract (including quality of service, performance against requirements/standards/service level agreements),

(5)     Any and all information, data, software and related documentation first provided under the contract,

(6)     Proposals or portions of proposals incorporated by reference, and

(7)     Other terms and conditions.


**B.7     FSA 27-1        Labeling Of Documents (June 2007)—TAILORED**

The Contractor shall not label any data, as defined in the clause at 52.227-14, produced in performance of this contract in a way that would restrict the Government's right to use or release the information.  If applicable, the Contractor shall include a legend that identifies sensitive data that should not be released for security reasons.  Under FAR 52.227-14, Rights in Data-General (or 52.227-15, -16, -17) clause, this data may be used for any public purpose. Deliverables shall not contain vendor-specific logos, mottos, watermarks, or holograms.

The Contractor shall not use, particularly for proposals, U.S. Government logos, such as the U.S. Department of Education or Federal Student Aid.


**B.8     FSA 27-2        Limitations On The Use Or Disclosure Of Government-Furnished Information Marked With Restrictive Legends (Dec 2006)**

(a)  For contracts under which data are to be produced, furnished, or acquired, the terms "limited rights" and "restricted rights" are defined in the Rights in Data - General clause of this contract.

(b)  Proprietary data, technical data or computer software provided to the Contractor as Government furnished information (GFI) under this contract may be subject to restrictions on use, modification, reproduction, release, performance, display, or further disclosure.

(1)  *Proprietary data with legends that serve to restrict disclosure or use of data.* The Contractor shall use, modify, reproduce, perform, or display proprietary data received from the Government with proprietary or restrictive legends only in the performance of this contract. The Contractor shall not, without the express written permission of the party who owns the data, release or disclose such data or software to any person.

(2)  *GFI marked with limited or restricted rights legends.* The Contractor shall use, modify, reproduce, perform, or display technical data received from the Government with limited rights legends or computer software received with restricted rights legends only in the performance of this contract. The Contractor shall not, without the express written permission of the party whose name appears in the legend, release or disclose such data or software to any person.

(3)  *GFI marked with specially negotiated license rights legends.* The Contractor shall use, modify, reproduce, release, perform, or display proprietary data, technical data or computer software received from the Government with specially negotiated license legends only as permitted in the license. Such data or software may not be released or disclosed to other persons unless permitted by the license and, prior to release or disclosure, the intended recipient has completed the use and non-disclosure agreement. The Contractor shall modify paragraph (1)(c) of the use and non-disclosure agreement to reflect the recipient's obligations regarding use, modification, reproduction, release,

performance, display, and disclosure of the data or software.

(c) Indemnification and creation of third party beneficiary rights.

   (1) The Contractor agrees to indemnify and hold harmless the Government, its agents, and employees from every claim or liability, including attorneys fees, court costs, and expenses, arising out of, or in any way related to, the misuse or unauthorized modification, reproduction, release, performance, display, or disclosure of proprietary data, technical data or computer software received from the Government with restrictive legends by the Contractor or any person to whom the Contractor has released or disclosed such data or software.

   (2) The Contractor agrees that the party whose name appears on the restrictive legend, in addition to any other rights it may have, is a third party beneficiary who has the right of direct action against the Contractor, or any person to whom the Contractor has released or disclosed such data or software, for the unauthorized duplication, release, or disclosure of proprietary data, technical data or computer software subject to restrictive legends.

**B.9   FSA 27-3   Use And Non-Disclosure Agreement**

(a) Except as provided in paragraph (b) of this clause, proprietary data, technical data or computer software delivered to the Government with restrictions on use, modification, reproduction, release, performance, display, or disclosure may not be provided to third parties unless the intended recipient completes and signs the use and non-disclosure agreement at paragraph (c) of this clause prior to release or disclosure of the data.

   (1) The specific conditions under which an intended recipient will be authorized to use, modify, reproduce, release, perform, display, or disclose proprietary data or technical data subject to limited rights, or computer software subject to restricted rights must be stipulated in an attachment to the use and non-disclosure agreement.

   (2) For an intended release, disclosure, or authorized use of proprietary data, technical data or computer software subject to special license rights, modify paragraph (1)(d) of the use and non-disclosure agreement to enter the conditions, consistent with the license requirements, governing the recipient's obligations regarding use, modification, reproduction, release, performance, display or disclosure of the data or software.

(b) The requirement for use and non-disclosure agreements does not apply to Government contractors which require access to a third party's data or software for the performance of a Government contract that contains the clause, Limitations on the Use or Disclosure of Government Furnished Information Marked with Restrictive Legends.

(c) The prescribed use and non-disclosure agreement is:

## USE AND NON-DISCLOSURE AGREEMENT

The undersigned, ___(Insert Name) ___, an authorized representative of the ___(Insert Company Name) ___, (which is hereinafter referred to as the "Recipient") requests the Government to provide the Recipient with proprietary data, technical data or computer software (hereinafter referred to as "Data") in which the Government's use, modification, reproduction, release, performance, display or disclosure rights are restricted. Those Data are identified in an attachment to this Agreement. In consideration for receiving such Data, the Recipient agrees to use the Data strictly in accordance with this Agreement:

 (1)The Recipient shall —

    (a) Use, modify, reproduce, release, perform, display, or disclose Data marked with SBIR data rights legends only for government purposes and shall not do so for any commercial purpose. The Recipient shall not release, perform, display, or disclose these Data, without the express written permission of the contractor whose name appears in the restrictive legend (the "Contractor"), to any person other than its subcontractors or suppliers, or prospective subcontractors or suppliers, who require these Data to submit offers for, or perform, contracts with the Recipient. The Recipient shall require its subcontractors or suppliers, or prospective subcontractors or suppliers, to sign a use and non-disclosure agreement prior to disclosing or releasing these Data to such persons. Such agreement must be consistent with the terms of this agreement.

    (b) Use, modify, reproduce, release, perform, display, or disclose proprietary data or technical data marked with limited rights legends only as specified in the attachment to this Agreement. Release, performance, display, or disclosure to other persons is not authorized unless specified in the attachment to this Agreement or expressly permitted in writing by the Contractor.

    (c) Use computer software marked with restricted rights legends only in performance of Contract Number ___(insert contract number(s)) ___. The Recipient shall not, for example, enhance, decompile, disassemble, or reverse engineer the software; time share, or use a computer program with more than one computer at a time. The recipient may not release, perform, display, or disclose such software to others unless expressly permitted in writing by the licensor whose name appears in the restrictive legend.

    (d) Use, modify, reproduce, release, perform, display, or disclose Data marked with special license rights legends (To be completed by the contracting officer. See (a)(2) of the Use and Non-Disclosure Agreement clause. Omit if none of the Data requested is marked with special license rights legends).

(2) The Recipient agrees to adopt or establish operating procedures and physical security measures designed to protect these Data from inadvertent release or disclosure to unauthorized third parties.

(3) The Recipient agrees to accept these Data "as is" without any Government representation as to suitability for intended use or warranty whatsoever. This disclaimer does not affect any obligation the Government may have regarding Data specified in a contract for the performance of that contract.

(4) The Recipient may enter into any agreement directly with the Contractor with respect to the use, modification, reproduction, release, performance, display, or disclosure of these Data.

(5) The Recipient agrees to indemnify and hold harmless the Government, its agents, and employees from every claim or liability, including attorneys fees, court costs, and expenses arising out of, or in any way related to, the misuse or unauthorized modification, reproduction, release, performance, display, or disclosure of Data received from the Government with restrictive legends by the Recipient or any person to whom the Recipient has released or disclosed the Data.

(6) The Recipient is executing this Agreement for the benefit of the Contractor. The Contractor is a third party beneficiary of this Agreement who, in addition to any other rights it may have, is intended to have the rights of direct action against the Recipient or

any other person to whom the Recipient has released or disclosed the Data, to seek damages from any breach of this Agreement or to otherwise enforce this Agreement.

(7) The Recipient agrees to destroy these Data, and all copies of the Data in its possession, no later than 30 days after the date shown in paragraph (8) of this Agreement, to have all persons to whom it released the Data do so by that date, and to notify the Contractor that the Data have been destroyed.

(8) This Agreement shall be effective for the period commencing with the Recipient's execution of this Agreement and ending upon ___(Insert Date) ___. The obligations imposed by this Agreement shall survive the expiration or termination of the Agreement.

_____
Recipient's Business Name

_____          _____
Authorized Representative                                                  Date

_____
Representative's Typed Name and Title

## B.10    FSA 31-1        Proposal Cost And/Or Pricing Data (August 2008)

Federal Student Aid intends to collect cost, pricing and technical information submitted in response to proposals. Information will be evaluated and stored in Federal Student Aid's Cost Library in order to expand the organizations historical pricing data and cost estimating capabilities.

## B.11    FSA 32-1        Invoice Procedures (August 2007)

The Contractor must submit a physical invoice via either mail, fax or e-mail for this contract in order to be paid for products and/or services rendered.

Federal Student Aid's "designated billing office" is:

> US Department of Education
> Union Center Plaza
> Federal Student Aid Administration
> 830 First Street, NE, Suite 54B1
> Washington, D.C. 20202-0001
>
> E-mail: ███████████████
> Fax: ████████████

The Contractor shall also simultaneously submit copies of the invoice to the Contracting Officer and one to the Contracting Officer's Representative (COR). The CO and COR should receive copies via the same means as the invoice sent to the Budget Group.

When submitting an invoice via mail, the Contractor shall submit the original invoice AND two copies of the invoice.

At a minimum the following items must be addressed in order for the invoice to be considered "proper" for payment:

(1) Name and Address of the Contractor.
(2) Invoice Number and Invoice Date (Date invoices as close as possible to the date of mailing or transmission. The date and actual submission must occur after receipt, inspection and acceptance of the supplies or services.)
(3) The Contract number, contract line item, and if applicable, the order number must be included on the invoice and be correct.
(4) Description, quantity, unit of measure, unit price, and extended price of the item delivered must agree with the contract or order.
(5) Terms of any prompt payment discount offered.
(6) Name, title, and phone number of persons to be notified in event of defective invoice.
(7) The period of time covered by the invoice must include the first and last day of the period.
(8) Totals must be supported by subtotals and subtotals should be supported by detail, (i.e. documentation for categories of labor, hours performed, unit prices) and deliverables provided.
(9) If required by this contract or order, receipts must be provided to support documentation of "other direct costs" (ODCs) or materials.

## B.12   AMERICAN RECOVERY AND REINVESTMENT ACT OF 2009 (Pub.L. 111-5)

In the event funds are utilized on this contract originating from the American Recovery and Reinvestment Act of 2009, or other discrete legislation, the following clauses, or similar clauses, shall apply:

- 52.203-15      Whistleblower Protections Under The American Recovery And Reinvestment Act Of 2009 (Mar 2009)
- 52.204-11      American Recovery And Reinvestment Act—Reporting Requirements (Mar 2009)
- 52.212-5      Contract Terms and Conditions Required to Implement Statutes or Executive Orders—Commercial Items (Mar 2009)—Alternate II (Mar 2009)
- 52.215-2      Audit And Records—Negotiation—Alternate I (Mar 2009)
- EDAR 3403-1 Self Reporting Of Violations – Recovery Act (Feb 2009)
  The contractor and subcontractor shall promptly refer to an appropriate inspector general any credible evidence that a principal, employee, agent, contractor, sub-grantee or subcontractor has committed a violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 U.S.C. or a violation of the civil False Claims Act (31 U.S.C. 3729-3733).

## B.13   ADDITIONAL TERMS AND CONDITIONS

A. **Contract Type**—Indefinite Delivery/Indefinite Quantity (IDIQ).  During the course of the basic ordering period, the Government will provide a minimum of $5,000,000.00 in revenue, provided that the contractor is in compliance with the requirements for servicing federally held debt, and the maximum volume for the basic ordering period agreement will be 50 million borrowers.  The Optional Ordering Period will have a minimum of $0 and a maximum of an additional 50 million borrowers

B. **Ordering Period**—The ordering period for this contract will be one (1), five (5) year Base Ordering Period, with one (1) additional five (5) year Optional Ordering Period.

C. **Requirements Deadlines**—The contractor shall comply with the following compliance requirements deadlines:

    (1) The contractor shall meet the Initial Requirements by August 31, 2009 for servicing federally held debt. If these are met, FFEL servicing may begin.

    (2) The contractor shall meet the Intermediate Requirements by March 31, 2010 (unless otherwise noted within the Intermediate Requirements document), for servicing federally held debt. If all requirements are not met, the Government may elect to not assign further volume to the contractor. Furthermore, the Government may transfer currently held accounts to another servicer. The contractor losing the accounts shall bear the costs of any such transfer.

    (3) The contractor shall meet the Full Requirements by August 31, 2010 for Direct Loan servicing. If the Government determines the requirements are not met, the Government may elect to not assign further volume to the contractor. Furthermore, the Government may transfer currently held accounts to another servicer. The contractor losing the accounts shall bear the costs for any such transfer.

D. **Quarterly Compliance Monitoring**—[Reserved]

E. **Annual Compliance Audit**—[Reserved]

F. **Allocation Methodology**—See Attachments A-4 and A-5.

G. **Allocation Metrics**— See Attachments A-4 and A-5.

H. **Performance Incentives/Metrics**—[Reserved]

I. **Price Definitions**—See Attachment A-6.

J. **Work Performed Outside the Continental United States**—The Contractor has represented to the Department that it will perform all work required under this Contract within the United States. If, at any time, the Contractor wishes to perform any Contract work outside the United States, the Contractor shall inform the Contracting Officer, in advance and in writing, of its intention and request the Department's approval. The Contractor shall not perform any Contract work outside the United States unless and until it has received the Contracting Officer's explicit, written approval to perform such work. In order to give proper consideration to the Contractor's request, the Department may ask for, and the Contractor shall provide, information relevant to the proposed performance outside the United States, including but not limited to a detailed description of the physical, personnel and management resources to be used and any potential difficulties or constraints in performing in the foreign jurisdiction. The Department may refuse to approve Contract performance outside the United States to the extent that, solely in the Department's judgment, the Contractor has not shown that performance outside the United States would satisfy the Contract requirements and would not impair or degrade performance. Further, the Department may refuse to approve any performance outside the United States for any other reason, or for no reason, except as otherwise required by the laws and treaties of the United States. The Department also may approve performance outside the United States subject to certain conditions, to which conditions the Contractor shall strictly adhere. Neither performance within the United States, nor the Department's refusal to allow performance outside the United States shall ever constitute a change to this Contract or give rise to any entitlement to additional compensation or excuse any failure of performance by the Contractor. Nothing in this clause shall be interpreted to impose any obligation on the Department to allow or to refuse a request for performance of this Contract outside the United States.

K. **Branding/Marketing Material**—Contractors may not solicit or promote other services/products they, or their affiliates, offer while servicing Department of Education borrowers, or Federally held debt. This includes all communication channels and touch points, such as but not limited to: inbound and outbound calls/email, web pages, any mailings specific to the status of their account, direct personal and automated interaction, etc.

Scenarios: (1) if the servicer services Federally and non-Federally held debt and offers combined billing, no marketing envelopes or inserts for other services/products may be issued; (2) if the servicer services Federally and non-Federally held debt and does NOT use combined billing, normal marketing may be provided for non- Federally held debt for other services/products; and (3) if the servicer services Federally and non-Federally held debt and is in personal contact, no marketing for other services/products may be discussed. If a borrower with in-school status seeks information regarding other products or services from the servicer, the borrower shall be directed to their school's Student Financial Assistance Office.

Any exception or ambiguity regarding the above shall be reviewed and approved by the Contracting Officer in advance.

L. **Invoicing and Non-Compliance** – Borrowers whose loans are not being serviced in compliance with the Requirements, Policy and Procedures for servicing federally held debt due to the fault of the servicer (i.e. correct interest calculations, correct balances, interest determination and calculations, notices sent properly, proper due diligence, etc.), will not be billable to the Government from the initial point of non-compliance.  Any funds that have been invoiced for these borrowers and paid shall be returned to the Government via a credit on the next invoice.

M. **Contracting Officer's Representative** – The following individual is designated as Contracting Officer's Representative (COR) for this contract:

> Mr. James McMahon
> Federal Student Aid
> 830 First Street, NE
> Suite 111G5
> Washington, DC 20202
> Email:
> Phone:

N. **Additional Terms:**

1. The Title IV Servicing contracts are for any potential services to manage all types of Title IV student aid obligations, including, but not limited to, servicing and consolidation of outstanding debt.  However, they are not Requirements contracts.
2. Each contractor will provide, at a minimum, the services provided within their proposal, in accordance with the pricing identified in Term #3 below.
3. The Government will set and manage the common pricing, including tier structure, below:

| Status | Volume Low | Volume High | Unit Price |
|---|---|---|---|
| Borrowers in In-school Status | N/A | N/A | $ 1.050 |
| Borrowers in Grace or Current Repayment Status | 1 | 3,000,000 | $ 2.110 |
| | 3,000,001 | UP | $ 1.900 |
| Borrowers in Deferment or Forbearance | 1 | 1,600,000 | $ 2.070 |
| | 1,600,001 | UP | $ 1.730 |
| Borrowers 31-90 Days Delinquent | N/A | N/A | $ 1.620 |
| Borrowers 91-150 Days Delinquent | N/A | N/A | $ 1.500 |
| Borrowers 151-270 Days Delinquent | N/A | N/A | $ 1.370 |
| Borrowers 270+ Days Delinquent | N/A | N/A | $ 0.500 |

Out year pricing will follow the methodology described utilizing the subsequent terms. There will be no set declination in pricing at the time of award.

4. The Government has included an escalation methodology based upon the Bureau of Labor Statistics' (BLS) Employment Cost Index (ECI) for Total Compensation, Private Industry, Service Occupations (Not Seasonally Adjusted), to account for significant inflation and/or deflation. When the ECI exceeds 3.0% (plus or minus) in any given year the Government will adjust the established common pricing by any amount in excess of this rate. The calculated rate of escalation will equal the average of the 12-month percent change for the previous four quarters, ending June 30th. This ECI escalation will be applied beginning in September of the same calendar year. Further, this escalation will compound for all remaining years of the Base and Optional Ordering Periods.

For example, ECI rate released in June 2010 is 3.6%. The Government will increase unit pricing by .6% for the contract beginning September 1, 2010 and all remaining years of the Base Ordering Period, as well as the Optional Ordering Period.

A decreasing rate of inflation would follow the same pattern as above. For example, if the ECI decreases by more than 3.0%, then the unit prices for the remaining out-years will also decrease by the percentage in excess of 3.0%. For example, ECI rate released in June 2010 is -4.2%. The Government will decrease unit pricing by 1.2% for the contract period beginning September 1, 2010 and all remaining years of the Base Ordering Period, as well as the Optional Ordering Period.

5. Common pricing includes all supplies, services and other costs to deliver Title IV servicing under this contract, including:
   - Costs for bringing contractor systems into compliance for handling federally held debt.
   - Costs for legislative, regulatory or policy changes that affect the FFEL community as a whole, as is commercially accepted practice in the FFEL community.
   - For all other costs, the Department and the contractor(s) may come to an agreement via change order process or negotiation, as necessary.

6. The Government makes no guarantee to any contractor that their organization will retain their current loan servicing volume. In addition, the Government makes no minimum

volume guarantees to any contractor. The Government does guarantee a minimum dollar/revenue amount of $5,000,000 over the base ordering period under this Indefinite Delivery, Indefinite Quantity contract, regardless of the number of loans serviced by a contractor.

7. The Government reserves the right to periodically review and equitably adjust the rate structure to maintain effectiveness of the services provided (i.e., different volume breaks, different ties, cost allocations, etc)

8. The Government reserves the right to equitably introduce, eliminate, or modify loan deliverables/status items that are in the best interest of the Government or Borrower. (i.e., in-school deferments moved into the In-School deliverable; new deferment or forbearance categories; etc).

9. The Government reserves the right to unilaterally shift borrowers in the best interest of the Government or Borrowers, at no additional cost to the Government.  It is anticipated that this will be done only with reasonable and prudent cause.

10. The Government retains the unilateral right to resolve split-borrowers as deemed appropriate by the Government, at no additional cost to the Government.

**B.14   52.212-5      Contract Terms And Conditions Required To Implement Statutes Or Executive Orders—Commercial Items (Dec 2008)**

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.233-3, Protest After Award (Aug 1996) (31 U.S.C. 3553).

(2) 52.233-4, Applicable Law for Breach of Contract Claim (Oct 2004) (Pub. L. 108-77, 108-78)

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

_X_ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 253g and 10 U.S.C. 2402).

_X_ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Dec 2008) (Pub. L. 110 252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

__ (3) 52.219-3, Notice of Total HUBZone Set-Aside (Jan 1999) (15 U.S.C. 657a).

__ (4) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (July 2005) (if the offeror elects to waive the preference, it shall so indicate in its offer) (15 U.S.C. 657a).

__ (5) [Reserved]

__ (6)(i) 52.219-6, Notice of Total Small Business Set-Aside (June 2003) (15 U.S.C. 644).

    __ (ii) Alternate I (Oct 1995) of 52.219-6.

    __ (iii) Alternate II (Mar 2004) of 52.219-6.

__ (7)(i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

    __ (ii) Alternate I (Oct 1995) of 52.219-7.

    __ (iii) Alternate II (Mar 2004) of 52.219-7.

_X_ (8) 52.219-8, Utilization of Small Business Concerns (May 2004) (15 U.S.C. 637(d)(2) and (3)).

_X_ (9)(i) 52.219-9, Small Business Subcontracting Plan (Apr 2008) (15 U.S.C. 637(d)(4)).

    __ (ii) Alternate I (Oct 2001) of 52.219-9.

    _X_ (iii) Alternate II (Oct 2001) of 52.219-9.

__ (10) 52.219-14, Limitations on Subcontracting (Dec 1996) (15 U.S.C. 637(a)(14)).

__ (11) 52.219-16, Liquidated Damages—Subcontracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

__ (12)    (i) 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (Oct 2008) (10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).

    __ (ii) Alternate I (June 2003) of 52.219-23.

__ (13) 52.219-25, Small Disadvantaged Business Participation Program—Disadvantaged Status and Reporting (Apr 2008) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

__ (14) 52.219-26, Small Disadvantaged Business Participation Program— Incentive Subcontracting (Oct 2000) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

__ (15) 52.219-27, Notice of Total Service-Disabled Veteran-Owned Small Business Set-Aside (May 2004) (15 U.S.C. 657 f).

__ (16)  52.219-28, Post Award Small Business Program Rerepresentation (June 2007) (15 U.S.C. 632(a)(2)).

_X_ (17)  52.222-3, Convict Labor (June 2003) (E.O. 11755).

_X_ (18)  52.222-19, Child Labor—Cooperation with Authorities and Remedies (Feb 2008) (E.O. 13126).

_X_ (19)  52.222-21, Prohibition of Segregated Facilities (Feb 1999).

_X_ (20)  52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

_X_ (21)  52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sept 2006) (38 U.S.C. 4212).

_X_ (22)  52.222-36, Affirmative Action for Workers with Disabilities (Jun 1998) (29 U.S.C. 793).

_X_ (23)  52.222-37, Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sept 2006) (38 U.S.C. 4212).

_X_ (24)  52.222-39, Notification of Employee Rights Concerning Payment of Union Dues or Fees (Dec 2004) (E.O. 13201).

_X_ (25)   (i) 52.222-50, Combating Trafficking in Persons (Aug 2007) (Applies to all contracts).
__ (ii) Alternate I (Aug 2007) of 52.222-50.

__ (26)   (i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Items (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)).
__ (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)).

__ (27)  52.223-15, Energy Efficiency in Energy-Consuming Products (Dec 2007) (42 U.S.C. 8259b).

__ (28)   (i) 52.223-16, IEEE 1680 Standard for the Environmental Assessment of Personal Computer Products (Dec 2007) (E.O. 13423).
__ (ii) Alternate I (Dec 2007) of 52.223-16.

__ (29) 52.225-1, Buy American Act—Supplies (June 2003) (41 U.S.C. 10a-10d).

__ (30)   (i) 52.225-3, Buy American Act—Free Trade Agreements—Israeli Trade Act (Aug 2007) (41 U.S.C. 10a-10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, Pub. L 108-77, 108-78, 108-286, 109-53 and 109-169).
__ (ii) Alternate I (Jan 2004) of 52.225-3.
__ (iii) Alternate II (Jan 2004) of 52.225-3.

__ (31)  52.225-5, Trade Agreements (Nov 2007) (19 U.S.C. 2501, et seq., 19 U.S.C. 3301 note).

_X_ (32)  52.225-13, Restrictions on Certain Foreign Purchases (June 2008) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

__ (33)  52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

__ (34)  52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007) (42 U.S.C. 5150).

__ (35)  52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

__ (36)  52.232-30, Installment Payments for Commercial Items (Oct 1995) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

_X_ (37)  52.232-33, Payment by Electronic Funds Transfer—Central Contractor Registration (Oct 2003) (31 U.S.C. 3332).

__ (38)  52.232-34, Payment by Electronic Funds Transfer—Other than Central Contractor
        Registration (May 1999) (31 U.S.C. 3332).

__ (39)  52.232-36, Payment by Third Party (May 1999) (31 U.S.C. 3332).

_X_ (40) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

__ (41)    (i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb
        2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631).

        __ (ii) Alternate I (Apr 2003) of 52.247-64.

(c)  The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to
commercial services, that the Contracting Officer has indicated as being incorporated in this
contract by reference to implement provisions of law or Executive orders applicable to
acquisitions of commercial items:

_X_ (1) 52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, et seq.).

_X_ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 1989) (29 U.S.C. 206
and 41 U.S.C. 351, et seq.).

_X_ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act—Price Adjustment
(Multiple Year and Option Contracts) (Nov 2006) (29 U.S.C. 206 and 41 U.S.C. 351, et
seq.).

__ (4)  52.222-44, Fair Labor Standards Act and Service Contract Act—Price Adjustment (Feb
2002) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

__ (5)  52.222-51, Exemption from Application of the Service Contract Act to Contracts for
Maintenance, Calibration, or Repair of Certain Equipment—Requirements (Nov 2007)
(41 U.S.C. 351, et seq.).

__ (6)  52.222-53, Exemption from Application of the Service Contract Act to Contracts for
Certain Services—Requirements (Nov 2007) (41 U.S.C. 351, et seq.).

__ (7)  52.237-11, Accepting and Dispensing of $1 Coin (Sept 2008) (31 U.S.C. 5112(p)(1)).

(d)  *Comptroller General Examination of Record*. The Contractor shall comply with the
provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in
excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2,
Audit and Records—Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the
Comptroller General, shall have access to and right to examine any of the Contractor's
directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records,
materials, and other evidence for examination, audit, or reproduction, until 3 years after
final payment under this contract or for any shorter period specified in FAR Subpart 4.7,
Contractor Records Retention, of the other clauses of this contract. If this contract is
completely or partially terminated, the records relating to the work terminated shall be
made available for 3 years after any resulting final termination settlement. Records
relating to appeals under the disputes clause or to litigation or the settlement of claims
arising under or relating to this contract shall be made available until such appeals,
litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and
practices, and other data, regardless of type and regardless of form. This does not require

the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e) (1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in paragraphs (e)(1)(i) through (xi) of this paragraph in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

(i)   52.203-13, Contractor Code of Business Ethics and Conduct (Dec 2008) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

(ii)  52.219-8, Utilization of Small Business Concerns (May 2004) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $550,000 ($1,000,000 for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(iii) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

(iv)  52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sept 2006) (38 U.S.C. 4212).

(v)   52.222-36, Affirmative Action for Workers with Disabilities (June 1998) (29 U.S.C. 793).

(vi)  52.222-39, Notification of Employee Rights Concerning Payment of Union Dues or Fees (Dec 2004) (E.O. 13201).

(vii) 52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, et seq.).

(viii)  52.222-50, Combating Trafficking in Persons (Aug 2007) (22 U.S.C. 7104(g)).

Flow down required in accordance with paragraph (f) of FAR clause 52.222-50.

(ix)  52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment-Requirements (Nov 2007) (41 U.S.C. 351, et seq.).

(x)   52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services-Requirements (Nov 2007) (41 U.S.C. 351, et seq.).

(xi)  52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

## C.  STATEMENT OF OBJECTIVES (SOO)

### C.1  General Description Of Scope/Purpose

### C.1.1  Federal Student Aid Background/Overview

Federal Student Aid (FSA), an office of the Department, plays a central and essential role in America's postsecondary education community.

FSA's core mission is to ensure that all eligible individuals benefit from federal financial assistance—grants, loans and work-study programs—for education beyond high school. The programs FSA administers comprises the nation's largest source of student aid: during the 2007-08 school year alone, FSA provided approximately $83 billion in new aid to nearly 10 million postsecondary students and their families. FSA's staff of 1,100 is based in 10 cities, in addition to its Washington, D.C. headquarters.

### C.1.2  Current Need

With the current economic and liquidity uncertainty facing financial markets, many student loan lenders are dropping out of the market. With more than $65 billion in 2008-09 loans and approximately $130 billion in eligible 2003-07 student loans on bank balance sheets and auction rate securitizations, the capital markets are currently unable to generate adequate funds at prices that will ensure 2009-10 loans can be made.

Recent legislation including the College Cost Reduction Authorization Act of 2008 (CCRAA) (Pub. Law 110-84) and the Ensuring Continued Access to Student Loans Act of 2008 (ECASLA) (Pub. Law 110-227) enabled the Department to accept former Federal Family Education Loan Program (FFELP) loans in the form of additional Direct Loan (DL) capacity, and to purchase FFELP loans as far back as 2003, in an effort to bring liquidity and stability back to the student loan market.

With the sudden increase in current and potential loan volume that the Department will be responsible for servicing, the need for increasing the Title IV student aid servicing vehicles is determined appropriate at this time.

### C.1.3  Objective

Acquire efficient and effective commercial contract services to manage all types of Title IV student aid obligations, including, but not limited to, servicing and consolidation of outstanding debt.

### C.1.4  Constraints

**C.1.4.1** Specific compliance activities for servicing Federally held assets include, but are not limited to, Attachments A-1 through A-3 provided herein.

**C.1.4.2** In order to manage the costs associated with such a potentially large portfolio, the service must provide innovative measures to ensure portfolio growth is not the key driver of total cost. Contractor incentives must be based on performing assets, rather than transaction or activity based delinquency incentives. Costs may also be managed through redistribution of customers to self-service options, as approved by the Government. Performance measures will help ensure that the complete service operates as efficiently and effectively as possible and that it is achieving the desired

business outcomes. These measurements will be flexible to allow for regular reviews and revisions as necessary.

**C.1.4.3** The contractor(s) will be responsible for maintaining a full understanding of all federal and state laws and regulations and FSA requirements and ensuring that all aspects of the service continue to remain in compliance as changes occur.

**C.1.4.4** The contractor(s) will provide a service flexible enough to handle new requirements generated by Congress and respond to legislative mandates and policy changes. Please see Appendix A – Standards and Relevant Documents for historical and current representative information.

**C.1.4.5** The contractor(s) will provide timely (as defined by FSA and contractor) responses to Office of Inspector General (OIG), General Accounting Office (GAO), budget, data, and management requests.

**C.1.4.6** It is understood and mutually agreed that the Department of Education has exclusive ownership of all information stored in, retrieved, modified, and/or archived in as part of this service. The contractor shall have no rights in such information and no rights to such information shall vest on the contractor by virtue of its performance of this contract. No other party has the right to copy, delete, archive, or transfer such information without the prior express written consent of the Department of Education. The contractor shall not use such information for any marketing or solicitation purpose including, but not limited to, commercial advertising, credit offers, or similar campaigns.

**C.2**    **Attachments/Supplemental Documents**

| Number | Title |
|--------|-------|
| A-1 | Additional Servicer—Initial Requirements Document (Version 21.0) |
| A-2 | Additional Servicer—Intermediate Requirements Document (Version 6.0) |
| A-3 | Additional Servicer—Full Requirements Document (Version 6.0) |
| A-4 | Ongoing Allocation Methodology |
| A-5 | Sample—Ongoing Allocation Metric Calculation |
| A-6 | Servicing Pricing Definitions (Version 9.0) |

# Additional Servicer INITIAL Requirements

All_InitialReq_v21.0.doc

Attachment A-1

# <u>Additional Servicer – Initial Requirements</u>

Required by 8/31/09 unless otherwise noted

## <u>TABLE OF CONTENTS</u>

General Statement ................................................................................................................ 3

Financial Reporting .............................................................................................................. 3

Treasury ............................................................................................................................... 5

Transaction Management ...................................................................................................... 6

Internal Controls .................................................................................................................. 7

Accounting ........................................................................................................................... 9

Reconciliations ..................................................................................................................... 9

Additional Reporting .......................................................................................................... 12

Security .............................................................................................................................. 12

NSLDS ............................................................................................................................... 13

Unique Client/Lender Requirements for Federally Serviced Portfolio ........... 14

Loan Conversion ............................................................................................................... 16

**Attachment A-1**

## General Statement

It is the intent of the Department to procure a performance-based contract(s) that promotes competition and provides best of business services. To achieve this goal, the Department expects each servicer to provide commercially available services that will yield high performing portfolios and high levels of customer satisfaction. The following statements apply:

- Servicers will be required to meet all statutory and legislative requirements.
- Servicers will use their own discretion in deciding to provide services or business functionality that is recommended but not required.
- Servicers may leverage all borrower repayment channels while maintaining existing branding provided all federally held loans are clearly distinguished and identified, and borrowers are directed to make payment directly to the Department via a U.S. Treasury lockbox or electronic payment service.
- Small differences due to rounding in various calculations are understood and accepted providing the calculation itself is in compliance with federal regulation.
- The Department will allocate volume based on defined and understood performance metrics.
- The Department does not intend to provide additional service level requirements. The Department does, however, expect best of business practices to be deployed.
- The Department will not require the use of the Department or FSA logo on letters, web sites, etc.
- Servicers will have full discretion to promote or not promote services as long as they meet legislative and regulatory requirements and are cost neutral to the Government.
- Servicers will have discretion to provide services to schools.
- Servicers may use their own authentication process as long as the process is fully compliant with federal IT security guidelines.
- With regard to split borrowers, it is acceptable for servicers to handle requests, phone calls, etc. for all loans being serviced by that servicer, regardless of the holder (Federal or Non-Federal), as long as all federal laws and regulations are met.

## Financial Reporting

1. The servicer shall uniquely identify each specific activity (e.g., Collection of Principal, Collection of Interest, etc.) in the transaction level data.
2. The servicer shall provide required accounting reports. A preliminary list is presented below.
   a) Trial Balance by Fund & a Working Trial Balance By Fund
   b) Detailed Trial Balance by Transaction Type
   c) Sub ledger Reconciliation Reports
   d) Transaction Tables and mapping (Crosswalk) to the Department's general ledger system, the Financial Management System (FMS), including transaction descriptions and amount fields.
   e) Cash Receipt Detail
   f) Cash Disbursement Detail
   g) Report of Debts Assigned by Assignor (Lender, GA, Intra-Fund Transfers)

Attachment A-1

   h) Report of Loans Consolidated (by Fund, Cohort Year, Loan Program Type, Risk Category)
   i) Report of Loans Rehabilitated (if applicable)
   j) Loan portfolio performance reports (by Fund, Loan Type, cohort year and risk category).
   k) Collection Activity Report - The report summarizes by Current Month, Current Quarter, and Year to Date for each Loan Type, the number of loans and the amount of loans for each delinquency stage.
   l) Loans Transferred to and from the Department's Default Management Collection System (DMCS)- The report has 3 parts:

        a. Loans Transferred to DMCS - Displays by transfer date the total number of borrowers, total number of loans, total principal balance at time of transfer, and date DMCS accepts the loans for each weekly transmission to DMCS.
        b. Rejected and Re-transfer to DMCS - Displays by re-transfer date the total number of loans, total number of borrowers, total principal balance, and date DMCS accepts the loans for each weekly transmission to DMCS.
        c. Transfers by Loan Type - Displays by transfer date, total number of borrowers, and total number of PLUS, Stafford, and Consolidation.

   m) DMCS Recall and Rehabilitation Tracking Report - The report displays by month/year the total number of borrowers recalled from DMCS, total number of loans recalled, total number of Rehabilitated loans and borrowers received from DMCS.
   n) System Balancing Reporting of daily, weekly and monthly activity sent and received with each interfacing partner at the Batch level and at the Transaction Type, Transaction Count, Transaction Amount levels.  Reports activity sent and activity received; and balances activity received to activity accepted and rejected.
   o) Financial Transactions Reconciliation Report of all daily, weekly and monthly transactions posted on the servicing system for each interfacing partner. Displays summary data by financial transaction type, number, and dollar amounts.
   p) Work in Process Reports of activity received and accepted into the servicing system, but not posted to borrower accounts for each interfacing partner. Displays detail level transactions at the loan level for all financial transactions received but not posted.  Includes applicable dollar amounts and reflects aging of each transaction.  Reporting can include, but is not limited to, pending disbursements, loan adjustments, consolidation payoffs, etc.  (See below for specific unapplied cash reporting).  Daily cumulative reporting with the last daily report for the month reflecting the WIP balances as of month end.
   q) Unapplied Cash Payment Recycle report:  Payment and Payment adjustment activity received and accepted into the servicing system but not posted to borrower accounts.   Reporting is by payment source (including, but not limited to: lockbox, electronic debit, IPAC, etc.)  Displays detail level cash payment and payment return/adjustment transactions at the borrower level and includes

## Attachment A-1

Treasury document information (schedule number, schedule amount and schedule type) and aging of each transaction. Daily cumulative reporting with the last daily report for the month reflecting the WIP balances as of month end.

r)   Ad-hoc reporting capability and access for the Department (see "Reconciliations").

## Treasury

3.  The servicer shall require entities making payments on Government loans (borrowers, lenders, etc) to direct payments to a Treasury designated service including:

a)  Treasury lockbox
b)  Pay.gov
c)  Remittance Express
d)  IPAC.
    *Note: Receipts must be processed in accordance with guidance provided in Treasury Financial Management (TFM), available at www.fms.treas.gov/tfm/index.htm*

4.  The servicer shall establish an interface with the Treasury lockbox service for the receipt of payment posting file and returned payments files.

5.  The servicer shall establish an interface with Pay.gov for the receipt of ACH debits and credit card payments.

6.  The servicer shall establish an interface for Remittance Express (REX) to support receipt of ACH credits. REX provides FSA and the servicer with download capability of an activity file with optional fields for identifying borrower accounts.

7.  The servicer shall establish an interface for the receipt and processing of Inter-Governmental Payment and Collection (IPAC) systems payments. IPAC provides FSA and the servicer with download capability of an activity file with optional fields for identifying borrower accounts.

8.  The servicer shall post payments to the borrower accounts on the same date of receipt of payment information from Treasury. If the servicer directly receives payments, those payments will be deposited to Treasury on the day of receipt.

9.  The servicer shall maintain a recycle or unapplied file of any payment/payment return transactions that cannot be posted to a borrower account. The servicer shall perform due diligence to research payments held in suspense for the purpose of resolving the unposted items including: posting payment to appropriate borrower account; refunding to remitter; or escheatment to Treasury.

10. The servicer shall obtain daily deposit information from Treasury's Ca$hLinkII system to support accounting processes and controls, such as daily and monthly reconciliations.

11. The servicer shall maintain proper controls over payment posting and accounting activities, and perform daily and monthly required reconciliations.

12. Issuance of Refunds - The servicer shall promptly manage credit balance accounts, and other payments and accounts requiring a refund. The Servicer shall process refund transactions to borrowers (borrower overpayments), lenders (such as consolidation overpayments), etc.

Attachment A-1

a) The servicer shall establish an interface and process payments refunds via interface via interface with FSA's Financial Management System (FMS) using the FMS standard file format (see FMS Attachment A).
b) Batches of refunds shall be subject to FSA review and approval.
c) The servicer shall receive and work from a Treasury Confirmation Report available through Treasury's Government-Wide Accounting System (GWA). This confirmation data will be used to provide information to borrower inquiries on refund status.  The GWA report confirms the completion of processing on a batch, and provides the first and last check number for the batch.
d) The servicer shall receive a report of Treasury Cancellations, maintain cancellation data, and shall provide information for borrower inquiries and support re-issuance of refunds.
e) The servicer shall perform due diligence on cancelled refunds, on issuance of validated refunds, and will follow Treasury guidelines for escheatment.
f) The servicer shall request FSA to cancel refunds, when appropriate.
g) The servicer shall use FSA's student application internet gateway (SAIG) to transmit refund requests to FMS.
h) The servicer shall pass Treasury cancellation data to FMS using the FMS standard file format (see FMS Attachment A).

## Transaction Management

13. The servicer shall establish a system and processes to correctly record all transactions on their database and to post summary transactions to the FSA's general ledger (FMS) on the same business day they are generated.
14. All servicer transactions shall include all fields as required by FMS and all amounts applicable to each transaction type.
15. All servicer transactions must pass all FMS edits for posting into the general ledger.
16. The servicer shall ensure all transactions are reversible.
17.  The servicer shall provide unique transaction reporting for each type of loan activity.
18. All servicer transactions will be accurately translated (mapped) from the Servicer's subsidiary ledger to FSA's general ledger (FMS).
19. The servicer shall maintain both the posting date and effective date of the transactions on their system.
20. The servicer shall provide an audit trail that efficiently links their detailed transactions in the subsidiary ledger to summarized transactions in FSA's general ledger. Transactions must have sufficient audit trail to support efficient tracing.
21. The servicer shall include original Treasury document numbers on applicable transactions, in addition to any system created document numbers (including but not limited to:  SF215, SF5515, SF1166, SF1098, and SF1081).  The usage of Treasury documents is described on the web site http://fms.treas.gov/index.html.
22. The servicer shall assign and retain the Credit Reform Code (CRC), recording and reporting on all loan related transactions at the CRC level.  Federal Credit Reform Act legislation and Treasury guidelines for reporting are described on the web site http://fms.treas.gov/index.html. Appendix A (CRC Codes) of Attachment C (FMS File Layouts) describes how CRC codes are generated.

Attachment A-1

## Internal Controls

23. The servicer shall incorporate a system of internal controls consistent with federal laws, regulations, policies and authoritative guidance. These laws, regulations, and guidances include, but are not limited to: Federal Financial Management Improvement Act (FFMIA); Federal Managers' Financial Integrity Act (FMFIA); CFO Act; Government Performance and Results Act (GPRA); GAO's Green Book; OMB Circulars A-123, 1-127, and A-130; Joint Financial Management Improvement Program (JFMIP); and Treasury Financial Manual (TFM).

24. The servicer's procedures and systems shall include a system of internal controls that ensures resource use is consistent with laws, regulations and policies; resources are safeguarded against waste, loss, and misuse; and reliable data are obtained, maintained, and disclosed in reports. Appropriate internal controls shall be applied to all system inputs, processing and outputs.
    Examples of Internal Control Standards to be implemented by the servicer include the following:
    a) Review and Reconciliation: Records are examined and reconciled to determine that transactions were properly processed and approved.
    b) Execution of Transactions: Independent evidence is required to be maintained to ensure that authorizations are issued by persons acting within the scope of their authority and transactions conform with such authority.
    c) Segregation of Duties: Proper segregation of duties is required to exist among functions including: authorization, execution, recording and reviewing transactions, custody of assets, and performing reconciliations.
    d) Qualified and continuous supervision is required to be provided to ensure that proper internal control is maintained.
    e) Access to and Accountability for Resources: Access to resources and custody and use of resources is required to be assigned and maintained.

25. The servicer shall provide FSA with supporting documentation for FSA's OMB Circular A-123 annual review, the annual Financial Statement Audit, and other audits and reviews (as further described in the Requirement #29 below on Audit Support Services and in Audit Attachment A, "Audit Support Requirements").

26. The servicer shall consult with FSA during FSA's OMB Circular A-123 annual review process and for other audits, so that FSA can: (a) maintain its understanding of the servicers controls (in the context of GAO Internal Control Standards and the Committee on Sponsoring Organizations (COSO) control framework), (b) maintain FSA documentation depicting the servicer's controls and process flows (as further described in Requirement #29 below on Audit Support Services and in the attachment, "Audit Support Requirements"), and (c ) maintain FSA's test plan, which will call for the provision of supporting materials from the servicer.

27. The servicer shall be responsible for resolving all deficiencies identified during audits and participating in corrective action plans as needed.

28. The servicer shall provide FSA with support for conducting FSA site visits to servicer centers of operation. The purpose of the site visits will be to enable and enhance FSA's plans for the conduct of its A-123 review. In addition, during the site visit, FSA

Attachment A-1

will observe the execution of selected processes for compliance with stated procedures and system function.

29. The servicer shall provide Audit Support Services, upon request, including but not limited to the following audits and reviews.  The "Audit Support Requirements" document attached provides additional information on the annual Financial Statement Audit and describes the "Prepared by client" (or PBC) process that will be used by the auditor and/or FSA to submit requests for documentation, data, and/or walkthroughs and for the servicer to fulfill these requests.:

   a) FSA's annual Financial Statement audits;
   b) Assessments of internal controls in accordance with FMFIA and OMB Circular A-123, Appendix A;
   c) Program-specific financial and compliance audits conducted by GAO, OIG, and/or OMB;
   d) FISMA audits;
   e) Certification and Accreditation reviews;
   f) Internal reviews;
   g) Contract oversight activities; and
   h) Agreed Upon Procedures Audits for Loan Purchase Programs.
   *This support generally includes, but is not limited to: making resources and facilities available, participating in audit planning (such as to determine when resources would be made available and for what purpose), responding to "prepared-by-client" (PBC) requests, reporting status, and remediating deficiencies identified. At a minimum, PBC requests will include: interviews, access to process and system documentation, standard and ad hoc queries and reports, and general questions on processes, systems, data, and/or other matters.*

30. The servicer shall meet requirements for a Type II SAS 70 audit. It is anticipated that performance of the Type II SAS 70 audit with an unqualified opinion and submission of the resulting work papers will eliminate or substantially reduce audit work performed by various auditors, internal and external to the Department, as part of the Department-wide and Government-wide annual audits. As part of their contracts with various lenders, servicers also normally have a SAS 70 audit performed annually by a qualified independent auditor.

   a) For IT controls, the servicer shall supplement the Type II SAS 70 with additional agreed-upon procedures resulting in an audit consistent with GAO's Federal Information System Control Audit Manual (FISCAM).  The results of these procedures should be conducted and reported at least annually, with a year-end of 6/30.  Further, the servicer shall provide FSA with a "bridge letter" covering the period from 6/30 to 9/30 indicating no changes to the control environment.

   b) For operational controls, the servicer shall ensure that the Type II SAS 70 covers all GAO Internal Control Standards or COSO Components (e.g., control environment, risk assessment, control activities, information and communication, and monitoring) for those transactions processed by the servicer.  The results of these procedures should be conducted and reported at least semi-annually covering the periods 1/1 – 6/30 and 7/1 – 12/31.

## Attachment A-1

### Accounting

31. The servicer shall create a financial interface between the FSA servicer and FSA Financial Management System (FMS) to provide financial data to FMS on a daily, weekly and monthly basis.
    a) The data and data layouts to be provided within this interface are described in the FMS Attachment C – FMS File Layouts
    b) Submission / send rules for these transmissions are:
        1. In addition to daily transaction files, servicer shall send weekly (summary) and monthly (interest and adjustment) files to FMS.
        2. Servicer shall use secure FSA's SAIG mailbox to place daily, weekly and monthly files on the FMS server for processing in FMS.
32. The servicer shall conduct accountancy, ensuring that transactions of the servicer's subsidiary ledger are accurately recorded in the FMS general ledger, to include:
    a) Managing the accounting transaction processing between the subsidiary ledger and the general ledger.
    b) Preparing procedural instructions and execution of manual procedures related to the preparation of accounting transactions.
    c) Reconciling cash, accounts receivable, accounts payable, and other general ledger accounts.
    d) Correcting all differences between the subsidiary ledger balances and the control account balances in the general ledger.
    e) Assisting FSA, FMS, and CFO in posting financial data and recommending alternatives to resolve rejected activity and variances.

### Reconciliations

33. The servicer shall perform reconciliations of balances and activity as requested, that meet the following general requirements:
    a) Reconciliation activity should demonstrate that all required data is transmitted to the Department and that all omissions, duplications of data, and recording errors are detected and corrected timely.
    b) All reconciliations and financial accounting will be inclusive of principal, interest and fee amounts.
    c) Monthly reconciliation between Servicing Trial Balance by Portfolio and FSA's general ledger (FMS) trial balance for each individual balance sheet account (balances and activity).
    d) All programs are to be accounted, reported and reconciled individually (distinct portfolios).
    e) Portfolio balances must be supportable at the loan level.
    f) Unless otherwise instructed, all reconciliation processes must identify and define specific transactions causing differences.
    g) Unless otherwise instructed, all requirements apply to each portfolio.
    h) Monthly reconciliations are due to FSA by the 8th calendar day of the subsequent month. (e.g. Reconciliations for the month of June are due July 8th.)
    i) Monthly reconciliations require contractor review by at least one level of management.

Attachment A-1

j)  Monthly reconciliations require the signature of the preparer and reviewer and the date of signatures.

k)  Signed monthly reconciliations and all necessary supporting documentation are to be provided to FSA in Adobe .pdf format.

l)  The servicer shall provide reports in the file format requested by FSA. File format types would include, but are not limited to: the Microsoft Office Professional Suite (Excel, Word, Access, etc.), Adobe (.pdf), text (.txt), comma delimited (.csv) etc.

m) Daily reconciliations are not standard deliverables to FSA but are considered operational processes and subject to internal control testing.

n)  Unless otherwise instructed, all reconciling items arising from monthly reconciliations are to be researched and cleared within the month subsequent to the reconciled period. For example, reconciling items for the month of June must be cleared within July. This eliminates repeat reconciling items.

o)  Unless otherwise instructed, all reconciling items arising from daily reconciliations are to be researched and cleared within 48 hours.

p)  Daily reconciliations include tracking and resolution of all work in process activity.

34. The servicer shall reconcile loan sales as follows:

a)  Perform daily 3-way reconciliation between invoice (pre-sale report), Bill of Sale from selling lender, and conversion reports from servicing system. Offeror must be able to produce the reconciliation at the deal, invoice, lender and summary level.

b)  Perform daily and monthly over/underpayment reconciliation between the Selling lender, servicing system, FMS and Treasury.

c)  Maintain resulting accounts receivable/accounts payable reconciliation of over/underpayment activity between the Selling lender & FMS.  To include:

1. Maintain balance of receivables from sellers and payables to sellers.
2. Invoice sellers for accounts receivables.
3. Process FMS accounts payable refund request to sellers (see Refund Reconciliations for specific requirements).
4. Process overpayment refund collections from Selling lenders.
5. Maintain clear audit trail of overpayment refund transactions processed to Treasury deposits.

d)  Daily reconciliation to assure that the FMS net funding transactions purchasing loans equal the net loans accepted and either posted or pending posting (traceable in work in process files) to the servicing system by the next day.

e)  Daily reconciliation of activity sent from sellers to accepted and either posted or pending posting (traceable in work in process files) on the servicing system.

35. The servicer shall reconcile transfers as follows:

a)  Servicer will provide for loan exchange and reconciliations between servicing system and FSA servicing systems. Servicer will maintain portfolio integrity upon re-entry into the servicing system.

b)  Perform daily reconciliation on transfers of loans between the Servicing system and each FSA servicing system.

Attachment A-1

   c)  Perform monthly reconciliation of transfers of loans between the servicing system and each FSA servicing system.

36. The servicer shall reconcile cash collections as follows:

> NOTE:  The terms  "recycle file", "suspense account" and "unapplied file" are defined as the transactional level cash payments and payment adjustments received but not posted to borrower accounts on the servicing system.

   a)  Record all incoming check & electronic collections received (deposits) to the cash clearing account (level 1); reverse collection transactions from cash clearing account when posted to borrower accounts (level 2).

   b)  The application process for postable cash payments and payment returns must be completed within 48 hours of collection receipt.

   c)  Reconcile all cash activity to Treasury daily. This includes, but is not limited to: electronic funds transfer (EFT), checks (SF 1166), Intra-governmental Payment and Collection (IPAC) System/SF 1081 payments, internal electronic cash transactions, and any other payments to or deposits with Treasury.

   d)  Perform daily collection reconciliation among the various Treasury receipt channels (i.e. Lockbox, Pay.gov, Remittance Express, and IPAC), servicing system and FMS general ledger. Collection transactions are to be posted to FMS daily.

   e)  Daily reconciliation to ensure Total Cash Received (check and electronic) = (Total Cash Payments Posted to Borrower's accounts + New Recycle File Items).

   f)  Daily reconciliation to ensure Outstanding Recycle File Balance = Beginning Recycle File Balance + New Recycle File Items - Recycle File Items Posted to Borrower Accts - Refunds of Misdirected Payments - Treasury Escheatment.

   g)  Monthly reconciliation of the Servicer's unapplied cash payment recycle file balance at the servicing system to the FMS Unapplied Collections general ledger account.

   h)  Monthly reconciliation of Treasury bank statement to FMS and Treasury.

37. The servicer shall reconcile refunds as follows:

   a)  Maintain daily and monthly three-way reconciliation of refund activity among the servicing system, FMS accounts payable system and Treasury.

     1.  Process overpayment refunds, refund cancellations, and stop payments posted to borrower accounts.

     2.  Refund transactions processed on the servicing system for misdirected payments.

     3.  Track and reconcile refund transactions to refund requests (FMS accounts payables) to Treasury confirmations.

     4.  Track and reconcile refund cancellation transactions processed on servicing to refund reversals in FMS to Treasury cancellations.

38. The servicer shall provide ad hoc reporting tools to support reconciliations: Servicing Trial Balance by Portfolio – using FSA/FMS transactional account mapping, must be capable of producing daily, weekly, ad hoc, and monthly trial balances at a summary and detailed transactional. If multiple databases are employed each database will be reported individually as well as on a consolidated basis.

Attachment A-1

39. The servicer shall perform daily, weekly and monthly system balancing of all data transmitted to and from the servicing system.
   a) Balancing will be done at the transaction type, transaction count and transaction amount(s) levels.
   b) Balancing will ensure data sent = data received; and data received will = the sum of data accepted and rejected.
   c) Rejected data will be researched, resolved/resent by the originating system.

## Additional Reporting

40. The servicer shall provide a data file (daily for the previous day's activity, monthly for previous month's activity) to FSA containing standard data elements needed for additional financial and portfolio analysis.  FSA will determine the type of file, transfer specifications, and specific data elements to be included in the file.
41. The Servicer shall ensure that the balances reported to FSA within the daily/monthly data files reconcile to the balances reported in the Servicer's servicing system as well as to the Servicer's FMS accounting interface file.
42. The servicer shall provide reasonable additional support as needed (e.g., data files, reports, source documents) to substantiate reported activity and balances.

## Security

43. The Servicer shall restrict access to FSA held loans being serviced from all other loans on their system.  Access must be limited to personnel who have obtained proper clearances and who are specifically authorized to view or perform transactions and services on loans held by FSA.
44. The servicer shall provide previous security information from the past three years to include a discussion of security incidents; and audits like SAS 70s, Sarbanes Oxley reviews, independent security assessments, risk assessments, and/or internal reviews along with the applicable remediation plans.
45. The servicer shall provide its system's most current vulnerability scan results, and remediation plan.
46. The servicer shall provide existing security documentation like its security organizational structure, its system's boundary, existing security policy, procedures, and plans.
47. The servicer shall complete personnel background screening requirements ASAP.
   a) All personnel are required to complete a federal background clearance based on their position risk level. Background clearances are submitted on line via Office of Personnel Management (OPM)'s Electronic Questionnaire for Investigations Process (e-Qip). Contractor employees who have undergone appropriate personnel security screening for another federal agency may submit proof of personal security screening for validation. (Attached Security Attachment A - Department of Education's Directive for Contractor Employee Personnel Security Screenings.)
   b) Preliminary clearances must be completed for high-risk positions prior to working on Federal Student Aid systems or data (This process can take 2-6 weeks).

Attachment A-1

Moderate and low risk positions must submit background clearance paperwork prior to working on Federal Student Aid computer resources.

c) Non-U.S. Citizen may be assigned to a High Risk IT (6C) level position, provided: he/she is a Lawful Permanent Resident of the United States and has resided continuously in the United States for a minimum of three (3) years. Non-U.S. Citizens living outside of the United States cannot have the capability to access Federal Student Aid systems or data.

48. The servicer shall complete a self-assessment of it's system and facilities based on NIST SP 800-53 controls, identify security deficiencies/gaps, and create a remediation plan for the identified deficiencies.

49. The servicer shall agree to provide support for all actions required for a formal security authorization and continuous monitoring program as defined by NIST SP 800-37.

50. The servicer shall create a project plan that they will follow to develop a NIST SP 800-18 compliant System Security Plan created in the Department of Education format.

51. The servicer shall bundle the requested information in requirements 39 - 45 above as attachments to a discussion document that provides a discussion for each requirement and artifact submitted. The cover page for this package will include a self-certification document identifying the system's security posture to include its overall security risk. The cover page will be signed by the servicer's senior security official and program manager attesting that the information within the package is accurate.

## NSLDS

52.   The servicer shall report in the same format as a Guaranty Agency (GA) for all loans serviced for Federal Student Aid by creating an NSLDS data base extract file containing FFEL loans and transmit the FFEL Loans data to NSLDS using the reporting requirements detailed in the GA Data Provider Instructions with minimal differences.   The Servicers will be provided a GA and Lender Code to be associated with each loan.  The Servicers will report the date of default and loan status for default as day 271, using NSLDS loans status fields. The Cohort Default Rate date will be reported at day 361, using the NSLDS Claim Payment fields.  A list of these filed changes will be provided.    The GA Data Provider Index of fields that are required of the FFEL servicers in addition to more information on Guaranty Agency Data Provider Instructions can be found at the GA DPI Link (http://ifap.ed.gov/nsldsmaterials/0605DPInstNSLDS.html).

53. The servicer shall use the NSLDS provided DataPrep software (or equivalent) to perform Extract Validation and create a Submittal file.

54. The servicer shall send the submittal file to NSLDS on an established weekly schedule.

55. Once loans have been reported, the servicer shall report to NSLDS all FFEL open loans. Closed loans must be continually reported until closed status is successfully accepted by NSLDS. This includes loans that are closed prior to initial NSLDS reporting.

**Attachment A-1**

56. The servicer shall retrieve the Load Process Error file from NSLDS for each submittal. The servicer must review errors and correct as many as possible before the next weekly submittal.
57. The servicer shall identify when key borrower indicators have change and report on both the old data and the new data.
58. The servicer shall work with other data providers—including other GAs, the Direct Loan Program, the Debt Management Collection System, Perkins schools, and the Common Origination Disbursement System—to resolve identifier conflicts including assigning pseudo SSNs where appropriate (see NSLDS DPI).
59. The servicer shall update date, amount and reason for defaults based on current default criteria if the loans are transferred to DMCS or CDDTS. Once a loan has transferred to DMCS or CDDTS, stop reporting on the loan unless it is transferred back. When transferring loans the borrower and loan identifiers must be the same identifiers reported to NSLDS. For Rehabilitated Loans, the Date or Maturity should not change.
60. The servicer shall report as a GA for all loans serviced for Federal Student Aid.
61. The servicer shall utilize NSLDS on-line updating functionality to resolve customer service issues and to report loan discharge and Teacher Loan Forgiveness information.
62. The Servicer shall transmit data to and from NSLDS via the Student Aid Internet Gateway (SAIG) or other approved secure transmission methods.  Additional information on SAIG transmissions can be found at https://www.fsadownload.ed.gov/mainframeguide.htm.
63. The servicer shall meet NSLDS reporting requirements and quality standards. All data submitted to NSLDS must be as complete and correct as possible.
64. The servicer shall accept and store enrollment data and updates from NSLDS as the official source of such data.
65. The servicer shall continue to follow Common Manual Delinquency reporting to schools.
66. The servicer shall provide additional data elements to the re-engineered NSLDS. These elements will include, but not be limited to: delinquency data, discharge data, forgiveness data, and school/ISIR data. This data has been worked through the community on the FFEL Data Standards Team and can be found online.
67. The servicer shall work with FSA data providers on changes to interfaces as re-engineering projects occur.
68. The servicer shall accept a file from NSLDS when receiving loans from DMCS and CDDTS in order to update the records with missing data elements.

## Unique Client/Lender Requirements for Federally Serviced Portfolio

69. The servicer shall use the client name Department of Education for this portfolio.
70. The servicer shall use the Government assigned client LID for this portfolio.
71. The servicer shall use the Government assigned Guarantor Code for this portfolio.
72. Each servicer will be assigned a unique code.

## Attachment A-1

73. The servicer shall maintain unique standard reporting for loans within each Program (i.e. 08/09 Loan Purchase Program, Puts from 08/09 Participation Program, 09/10 Loan Purchase program, Conduit, Direct Loan, etc.)
74. The servicer shall process refunds via Treasury checks. Refunds are required for overpayments greater than or equal to $5.00.
75. The servicer shall perform small balance processing as follows:
    a) Overpaid Amount – Small balance write-ups of overpaid balances less than $5.00.
    b) Underpaid Amount – Small balance write-off of underpaid balances less than $25.00.
76. The servicer shall have the ability to charge late charges, but no assessment of late charges on loans in the ED portfolio is to be assessed at this time.
77. The servicer shall have the ability to charge other fees (i.e. NSF), but no charges for other fees on loans in the ED portfolio are to be assessed at this time.
78. The servicer shall have the ability to support borrower benefit plans required by each loan purchase (PUT) program.
79. 799/LARS reporting is not required for ED portfolio.
80. The servicer shall have the ability to perform collection and due diligence activities "as required by legislation and/or regulations." Servicers will be required to provide collection and default aversion activity on loans serviced under this contract as long as the loan remains on the servicer's system. If a borrower reaches the 360 days delinquent, the servicer will be required to transfer the loan to the DMCS.
    a) The servicer shall send and electronic transfer file to DMCS with required information about the defaulted borrower and the defaulted loan.
    b) The servicer shall provide access to all required collateral information for the defaulted loan.
    c) The servicer shall accept and resolve rejected records received from DMCS.
81. The servicer shall process discharge transactions with required supporting documentation following the required regulatory guidelines. The servicer is required to facilitate the timely and accurate processing of discharge requests by ensuring that complete loan discharge documentation for the individual is submitted. The servicer is also required to make a determination based on complete loan discharge documentation and applicable guidelines. Depending on the discharge type, the Department reviews discharge decisions through a sampling methodology or conducts a complete review.
82. The servicer shall transfer loans to the Conditional Disability and Discharge System once loans have been determined as eligible to be transferred.
83. The servicer shall obtain school information needed from the Postsecondary Education Participants System (PEPS).
84. The servicer shall be prepared to provide procedure and/or training materials when requested by ED. ED may review these documents to ensure regulatory and legislative requirements are met.
85. The servicer shall be required to transfer loans to, or accept loans from, another servicer at the request of ED.

**Attachment A-1**

86. The servicer shall provide access to account level information and collateral for all federally held loans using technology supported by ED (web-based, terminal emulation, etc.).

## Loan Conversion

The loan conversion process occurs when a seller requests ED to purchase loans, and ED validates the seller's approval to participate, checks the eligibility of the loans, provides payment to the seller, and takes ownership of the loans as federally held assets.

Below are the requirements a servicer must complete in addition to the existing requirements to service an FFEL loan:

87. The servicer shall create and maintain a Loan Purchases Tracking Log - to include: Checklist of loan purchase activities, status of activities, and loan counts/amounts. SEE Conversion ATTACHMENT A – Sample of Loan Purchases Tracking Log.
88. The servicer shall provide Loan Purchases Tracking Log to FSA, CFO, and OCFO on a periodic basis.
89. The servicer shall accept 45-day notices submitted by sellers via email. SEE Conversion ATTACHMENT B – Sample of 45 Day Notice.
90. The servicer shall inform FSA when a 45-day notice has been received.
91. The servicer shall send an acknowledgement of receipt of the 45 Day notice to the Seller via email.
92. The servicer shall validate, with FSA contact, the status of the seller's Master Loan Sales Agreement (MLSA).
93. The servicer shall notify seller if any additional MSLA approvals or documentation are needed for the sale and schedule the sale date with the seller's Servicer.
94. The servicer shall notify FSA of the status of the MLSA package, if necessary.
95. The servicer shall perform testing of the loan conversion transfer file process with sellers. SEE Conversion ATTACHMENT C – Sample of a loan conversion transfer file layout.
96. The servicer shall receive loan conversion transfer file from the seller via FTP or other approved transfer method.
97. The servicer shall review the loan conversion transfer file and notify FSA, CFO, OCFO of differences between the 45-day notice and loan conversion file as needed.
98. The servicer shall perform edits on the loan conversion transfer file.  Note: edits may vary based on purchase program.
99. The servicer shall prepare report identifying any errors with the loan conversion file and/or any loans not eligible for sale.
100.   The servicer shall provide results of edit errors to the seller, FSA, and designated parties. The servicer shall work with the seller to resolve errors.
101.   The servicer shall send an acknowledgement of receipt of the 45 Day notice to the Seller via email."
102.   The servicer shall work with the Seller to confirm sales parameters, including but not limited to:
     a)  Identify any loans in the sale have any liens on them.

## Attachment A-1

    b)  Identify if the loans are part of a Put from Participation or a straight Put to the Department.
    c)  Identify timing for receipt of Loan Conversion Transfer file from the Servicer, if needed.

103.   The servicer shall calculate pre-sale totals and final purchase price after errors have been resolved.

104. The servicer shall create a pre-sale detail loan report including loan details for all loans included in the sale. SEE Conversion ATTACHMENT D – Sample of pre-sale detail loan report.

105. The servicer shall transmit pre-sale detail loan schedule to seller for validation by seller.

106. The servicer shall create invoice total file and submit to SAIG mailbox to be 'swept' by FSA CFO. SEE ATTACHMENT Conversion E – Invoice total file layout.

107. The servicer shall receive Bill of Sale and related documents. SEE Master Loan Sale Agreement – Exhibit B – Sample of Bill of Sale.

108. The servicer shall validate Bill of Sale package is authorized and complete.

109. The servicer shall validate Schedule and Security Release Certificate (SRC) has been received if loans are subject to a security lien. SEE Master Loan Sale Agreement – Exhibit E – Sample of Schedule and SRC.

110. The servicer shall flag loans subject to a security lien in Tracking Log.

111. The servicer shall accept Notice of Assignments from seller and notify FSA that payment will be sent to designee if a Notice of Assignment is received. SEE Conversion ATTACHMENT F – Sample of Notice of Assignment.

112. The servicer shall compare FSA Servicer pre-sale totals to seller's pre-sale detailed listing of loans sold - identify and resolve differences.

113. The servicer shall request seller to provide updated Bill of Sale documents as needed.

114. The servicer shall validate FSA approves/disapproves invoice of payment.

115. The servicer shall process the loan sale transaction on servicing system when notified payment has been made. Loans now reside on FSA Servicer's system.

116. The servicer shall reconcile the Servicing System balance and activity to FMS for each purchase deal. Resolve and differences and provide the reconciliation to FSA.

117. The servicer shall reconcile the Servicing System balance and activity to FMS on a monthly basis. Resolve and differences and provide the reconciliation to FSA.

118. The servicer shall receive collateral documentation and review for completeness.

119. The servicer shall identify and notify seller of missing collateral documentation, work with seller to obtain required documentation.

120. The servicer shall notify FSA of receipt of collateral and completeness of documentation.

121. The servicer shall provide storage for, and access to, collateral documentation.

122. The servicer shall accept, edit and process loan adjustment files from Servicer after close of sale.

123. The Servicer shall coordinate with the Seller to receive and process any sales transition and post sale transactions, including but not limited to, borrower

Attachment A-1

payments, loan cancellations, school refunds, NSF transactions for loans purchased by the Department.

124. The Servicer shall provide a process to Put any ineligible loans back to the Seller, as needed (process "Unput" transactions).



Additional
Servicer
**INTERMEDIATE**
Requirements

All_IntermediateReq_v6.0

Attachment A-2

# <u>Additional Servicer – <span style="color:blue">Intermediate</span> Requirements</u>

Required by 3/31/10 unless otherwise noted

## **TABLE OF CONTENTS**

General Statement........................................................................................3
Financial Reporting......................................................................................4
Treasury .......................................................................................................4
Transaction Management .............................................................................5
Internal Controls ..........................................................................................5
Accounting ...................................................................................................5
Reconciliations.............................................................................................5
Additional Reporting ...................................................................................5
Security.........................................................................................................6
NSLDS........................................................................................................10
Additional Requirements for Federally Held Portfolio............................10
Loan Conversion ........................................................................................11
Records Management..................................................................................11

Attachment A-2

**General Statement**

It is the intent of the Department to procure a performance based contract(s) that promotes competition and provides best of business services.   To achieve this goal, the Department expects each servicer to provide commercially available services that will yield high performing portfolios and high levels of customer satisfaction. The following statements apply:

- Servicers will be required to meet all statutory and legislative requirements.
- Servicers will use their own discretion in deciding to provide services or business functionality that is recommended but not required.
- Servicers may leverage all borrower repayment channels while maintaining existing branding provided all federally held loans are clearly distinguished and identified.
- Small differences due to rounding in various calculations are understood and accepted providing the calculation itself is in compliance with federal regulation.
- The department will allocate volume based on defined and understood performance metrics.
- The Department does not intend to provide additional service level requirements.  The Department does, however, expect best of business practices to be deployed.
- The Department will not require the use of the Department or FSA logo on letters, web sites, etc.
- Servicers will have full discretion to promote or not promote services as long as they meet legislative and regulatory requirements and are cost neutral to the government.
- Servicers will have discretion to provide services to schools.
- Services may use their own authentication process as long as the process is fully compliant with federal IT security guidelines.
- With regard to split borrowers, it is acceptable for servicers to handle requests, phone calls, etc. for all loans being serviced, regardless of the holder as long as all federal laws and regulations are met.

Attachment A-2

## Financial Reporting

The following Financial Reporting Requirements are required to be implemented by September 30, 2009:

1. The servicer shall produce the Treasury Report on Receivables (TROR), for each portfolio, on a monthly basis.  The report must meet all Treasury/FMS guidance (See Treasury attachments A & B).  The TROR must also:
   a. Be provided in Microsoft Excel Format;
   b. Be provided for the previous month by the 8th business day of the current month;
   c. Include all supporting data / documentation.  The supporting documentation must also be provided for the previous month (e.g., aging information, status information, etc.) in Microsoft Excel format, by the 8th business day of the current month.
2. The servicer shall provide all remaining required accounting reports.
   a. Consolidating Trial Balance (All Funds)
   b. Monthly & Annual Sub ledger Reports (to include Closing reports)
   c. Accounting Distribution Reports
   d. Specific Collection Reports (e.g. Lockbox, ACH Credits, ACH Debits, Web payments, Credit Cards, etc.)
   e. Receivable Aging Reports (by Fund, Cohort Year, Loan Program Type, Risk Category)
   f. Loan Portfolio Analysis
   g. SF-224 for cash transactions with Treasury ED Form
   h. Trial balance reports indicated under Reconciliation
   i. Loan portfolio performance reports (by Fund, Loan Type, cohort year, & Risk Category)
   j. Others as determined

## Treasury

In 2010, Treasury will implement the Transaction Reporting System (TRS).  TRS will be a centralized repository of detailed collection transaction information.  TRS will provide integrated transaction and deposit reporting of revenue activity across all collection systems.  Therefore, the servicer will be required to migrate its data recipient interfaces for the Lockbox (checks and ACH credits), Pay.gov (ACH debits and credit card payments), and CA$HLINKII (which reports detail for ACH credits that are not processed via the lockbox servicer, and reports summary for all deposits from all sources) to TRS. This requirement is estimated to be effective by September 30, 2010.  Treasury's web site contains further information on the TRS project at http://www.fms.treas.gov/trs/index.html.

Attachment A-2

## Transaction Management

NO Additional Requirements beyond the Initial Requirements

## Internal Controls

3. Effective from the first government fiscal year of operations (i.e., as of 9/30/2009), the servicer shall develop and execute the following reports in response to financial statement audit "Prepared-by-Client" (PBC) data requests or as requested by management to support other audits or reviews:
   a. Collections Download
   b. Write-Offs activity – Download Requirements & Documentation Requirements
   c. Download of Transfers activity to DCMS
   d. Additional work products to support responses to auditor inquiries and requests

   ** Refer to the FMS_Attachment_D document attached for additional details on these requirements.

4. The Servicer shall provide support to FSA in compliance with OMB Circular A-123, Appendix C, which incorporates the Improper Payments Information Act of 2002 (IPIA).

## Accounting

NO Additional Requirements beyond the Initial Requirements

## Reconciliations

5. The servicer must demonstrate that all data transfers (e.g., interfaces, files) are balanced across systems and reconciled at the transaction and balance level and all exceptions noted are aged and resolved timely. The servicer shall report aging of reconciling items on all reconciliations.  The servicer shall resolve errors and/or variances timely, generally within one month.

## Additional Reporting

6. The Servicer shall provide a Disbursement Date Change (Cohort Year) Report (required to be implemented by September 30, 2009) - The report

    displays all disbursement date changes after each quarter end that crossed cohort years.  It displays the Account Number, Loan Identification Number, Principal Balances Outstanding, Interest Receivable Balances, Principal Paid, and Interest Paid.

7.  The servicer shall support the FSA implementation of a 'Data Warehouse' including the conversion of the daily/monthly file transfers to the warehouse.  FSA will determine the type of file, transfer specifications, and specific data elements to be included in the file.

## Security

Federal Student Aid agrees with the Office of Management and Budget (OMB) and Congress that the security of its data and IT resources is one of our highest priorities.  Recognizing the need for agencies to have effective information security programs, Congress passed the Federal Information Security Management Act (FISMA) of 2002.  FISMA provides the overall framework for ensuring the effectiveness of information security controls that support federal computer operations and assets. **FISMA requirements apply to all federal contractors and organizations or sources that possess or use federal information or that operate, use, or have access to federal information systems on behalf of an agency**.  FISMA mandates the use of the standards created by the National Institute of Standards and Technology (NIST). and Federal Student Aid has adopted those standards and guidance for securing its information technology resources.

Federal Student Aid security requirements indicated below ensure the confidentiality, integrity and availability of its data at a high level.  System controls need to be tested and system documentation reviewed using an independent source.  If adequate security is in place, Federal Student Aid will provide a formal security authorization to operate (ATO).  Additional detailed requirements can be found in NIST security standards, special publications, and bulletins; OMB memorandums; and the Department of Education (DoED) policies and procedures.  The primary document Federal Student Aid uses to identify and implement controls is NIST SP 800-53. The latest version of this guidance can be found at:  **http://csrc.nist.gov/publications/nistpubs/800-53-Rev2/sp800-53-rev2-final.pdf**

Personnel

8.  All personnel are required to complete a federal background clearance based on their position risk level.  Background clearances are submitted on line via Office of Personnel Management (OPM)'s Electronic Questionnaire for Investigations Process (e-Qip).  Contractor employees who have undergone appropriate personnel security screening for another

Attachment A-2

federal agency may submit proof of personal security screening for validation.   (Attached: Department of Education's Directive for *Contractor Employee Personnel Security Screenings*)

9. Preliminary clearances must be completed for high-risk positions prior to working on Federal Student Aid systems or data (This process can take 2-6 weeks).  Moderate and low risk positions must submit background clearance paperwork prior to working on Federal Student Aid computer resources.

10. Non-U.S. Citizen may be assigned to a High Risk IT (6C) level position, provided: he/she is a Lawful Permanent Resident of the United States and has resided continuously in the United States for a minimum of three (3) years.  Non-U.S. Citizens living outside of the United States cannot have the capability to access Federal Student Aid systems or data.

11. All personnel are required to successfully complete initial security awareness training within two weeks of employment and annual refresher training.  The training can be completed on line using DoED's security training program.

12. Annual specialized training is required that is appropriate to job function.

Facility

13. Data Centers supporting Federal Student Aid systems are required to have controlled access with working security cameras..

14. Data center access control lists must be kept current. .

15. Visitors must be logged and escorted at all times.

16. Power equipment and power cabling for the information system must be protected from damage and destruction.  Facility failover power and lighting are required for emergencies.

17. The facility must employ and maintain fire suppression and detection, water damage controls, and temperature and humidity controls.

18. Alternate data center worksites are required to have the same protections as the primary data center site.

Telecommunications

19. Data transfers of PII or other sensitive information must be encrypted using NIST certified encryption methods (see NIST standard, FIPS 140-2)

20. All interconnections must be documented and have an Interconnection Security Agreement in place.  (see NIST SP 800-47)

21. Wireless communication containing Federal Student Aid information is not permitted within the data center.

22. The Federal Student Aid System Security Officer must approve all remote access.

Contingency Planning and Recovery

23. A contingency / disaster recovery plan is required to provide continued operational service within 72 hours of a major catastrophe.

## Attachment A-2

24. Contingency plans must be tested at a recovery site annually using both DoED and Contractor personnel.
25. The recovery site(s) must be geographically separated from the production site(s).
26. Data sanitation at the recovery site is required after testing.  (see NIST SP 800-88)
27. System backups must be encrypted and kept at an alternate location with secured access.  Sensitive backup tapes must be marked and have a secure transfer.  (Attached:  Federal Student Aid's *General Support System and Major Application Backup Media Handling Policy & Procedures*)

Risk Management

28. Annual self-assessment of security controls is required.  .
29. Independent risk assessments will be completed prior to system's operation and then reassessed at a minimum of every three years.
30. Independent security controls assessment will be completed.
31. All identified vulnerabilities and security weaknesses will be captured and corrective actions tracked through Federal Student Aids Operational Vulnerability Management Solution (OVMS).  Security remediations must be implemented to correct security deficiencies and appropriate evidence must be provided to close actions.
32. Contractors will make themselves and the site available for security audits and control assessments.  This includes interviews with key security staff, data gathering and submissions, scanning support, and escort activities.
33. Federal Student Aid will have the right to test controls through independent scanning within the boundaries of the Federal Student Aid system and by other means like interviews, observations, and to document reviews.

Security Documentation

34. The contactor will develop, implement, and maintain a current system security plan (SSP) for the information system to provide an overview of the security requirements for the system and a description of the security controls in place or planned for meeting those requirements. Designated officials within Federal Student Aid will review and approve the plan.  (see NIST SP 800-18)
35. A contingency plan must be created, approved, and tested annually.
36. A configuration management plan must be created, approved, and implemented.
37. Documented system boundaries are required. A documented inventory of hardware and software utilized, telecommunication interconnections and a network topology are required.  (Attached:  Federal Student Aid's Boundary Definition template).
38. System access authorizations and signed rules of behavior must be maintained.

Attachment A-2

39. Plans of Actions and Milestones that address security remediations are maintained in Federal Student Aid's Operational Vulnerability Management Solution.

Security Monitoring and Detection

40. Network intrusion detection systems (NIDS) and host-based intrusion detection systems (HIDS) are configured appropriately and continuously monitored and updated if necessary.
41. Systems will have appropriate auditing capabilities enabled.
42. System logs are to be analyzed for suspicious activity. Logs will be made available to Federal Student Aid upon request.
43. Compliance monitoring established for configuration settings.
44. Routine network and database scans are scheduled. The scan results are analyzed and vulnerabilities identified. The identified vulnerabilities and actions taken will be documented in OVMS.
45. Scans that identify web vulnerabilities will be completed. Scan results will be provided to FSA upon request. The identified vulnerabilities and actions taken will be documented in OVMS.
46. Security remediations must be implemented to correct security deficiencies and appropriate evidence must be provided to close actions.

Incident Response

47. Contractor must maintain an incident response plan that correlates to the DoED plan.
48. Compromises of personal identifiable information (PII) must be reported immediately so that the Department can comply with its reporting requirements to report to U.S. Computer Emergency Readiness Team (CERT) within one hour of the incident.
49. Contractor must preserve evidence and allow external forensic analysis either on-site or through shipment of components.
50. Contractor must take appropriate actions for alerts and warnings provided by DoED or through other sources. Contractor will report status of their actions as requested.

Security Configurations

51. Federal Student Aid data must be segregated from non-Federal Student Aid data.
52. Security patches must be kept current and appropriately tested prior to moving into production.
53. Server and device security configurations must be maintained in accordance with NIST security configuration standards (See: http://checklists.nist.gov/).
54. Passwords must meet Federal Student Aid's password standards. (Attached:  Federal Student Aid's *Password Parameters Policy & Procedures*)

Attachment A-2

55. Change control management procedures must be documented and followed.
56. Federal Student Aid must approve system changes prior to production implementation.
57. Data will be safeguarded commensurate with the highest categorization level based on FIPS 199.

Access Control
58. Federal Student Aid must approve all access to Federal Student Aid data and all contractor access that can affect any component within the system's boundary.
59. Application access reports need to be sent quarterly to Federal Student Aid for certification of access.
60. A listing of IT personnel responsible for operations and maintenance of any Federal Student Aid system must be provided on a quarterly basis to FSA for certification of access.
61. Access must be restricted based on least privilege. Role based access controls should be defined and documented.

## NSLDS
62. The Servicer shall provide the National Student Loan Clearinghouse monthly updates to their federally serviced portfolio. National Student Clearinghouse (NCS) will provide weekly updates to NSLDS for all FFEL and DL loans in the FSA portfolio. NSLDS will provide the servicer with weekly enrollment data that include NSC updates.

## Additional Requirements for Federally Held Portfolio

63. The servicer shall receive collateral in imaged and paper format and if received in paper format image it should be imaged in a format that can be ported easily to another system (Non-proprietary)
64. The servicer shall verify collateral for all loans received in a sale within 45 days and if any collateral is missing the missing collateral will be obtained from the seller.
65. The servicer shall provide for FSA access to the imaging and serving system to view images, make annotations on borrower accounts and have complete access to view FSA data.
66. The servicer shall provide a means for FSA to make a final determination on eligibility of borrowers for entitlements, such as discharge due to Closed School, Death, etc., and compromise offers.
67. The servicer shall report loans to NSLDS and credit bureaus.
68. The servicer shall cancel loans and make all financial adjustments when needed.
69. The servicer shall place loans, where the borrower has applied for bankruptcy, into a bankruptcy status, prepare a Proof-of-Claim and

provide any additional support needed to defend the loan against bankruptcy discharge.

70. The servicer shall accurately prepare and respond to control correspondence (correspondence sent to FSA from the White House, Congress, and other high government officials) and meet control turnaround times established by the U.S. Department for FSA.

71. The servicer shall respond to written and email questions and requests timely and accurately.

72. The servicer shall respond and resolve customer complaints; and create and execute a plan to escalate complaints to FSA and the Ombudsman.

73. The servicer shall have the ability to provide borrower interest rate discounts and assess late fees if directed to do so by FSA.

74. The servicer shall accurately and timely complete and return Loan Verification Certificates received from consolidating lenders.

75. The servicer shall assign loans to DMCS for collection once they reach 360 days delinquent.  If a loan is assigned in error the loan will be reinstated onto the servicer's system.

76. The servicer shall have the ability to accept and service loans that undergo rehabilitation from the DMCS.

77. The servicer shall provide FSA the ability to monitor phone calls remotely.

78. The servicer shall support quarterly monitoring reviews completed by FSA.

79. The servicer shall support annual program compliance reviews done by FSA, or by an agent of FSA.

## Loan Conversion

NO Additional Requirements beyond the Initial Requirements

## Records Management

80. The Servicer shall comply with all of the following standard items related to records management:

   a. Citations to pertinent laws, codes and regulations such as 44 U.S.C chapters 21, 29, 31 and 33; Freedom of Information Act (5 U.S.C. 552); Privacy Act (5 U.S.C. 552a); 36 CFR Part 1222 and Part 1228.

   b. Contractor shall treat all deliverables under the contract as the property of the U.S. Government for which the Government Agency shall have unlimited rights to use, dispose of, or disclose such data contained therein as it determines to be in the public interest.

Attachment A-2

c. Contractor shall not create or maintain any records that are not specifically tied to or authorized by the contract using Government IT equipment and/or Government records.

d. Contractor shall not retain, use, sell, or disseminate copies of any deliverable that contains information covered by the Privacy Act of 1974 or that which is generally protected by the Freedom of Information Act.

e. Contractor shall not create or maintain any records containing any Government Agency records that are not specifically tied to or authorized by the contract.

f. The Government Agency owns the rights to all data/records produced as part of this contract.

g. The Government Agency owns the rights to all electronic information (electronic data, electronic information systems, electronic databases, etc.) and all supporting documentation created as part of this contract. Contractor must deliver sufficient technical documentation with all data deliverables to permit the agency to use the data.

h. Contractor agrees to comply with Federal and Agency records management policies, including those policies associated with the safeguarding of records covered by the Privacy Act of 1974. These policies include the preservation of all records created or received regardless of format [paper, electronic, etc.] or mode of transmission [e-mail, fax, etc.] or state of completion [draft, final, etc.].

i. No disposition of documents will be allowed without the prior written consent of the Contracting Officer. The Agency and its contractors are responsible for preventing the alienation or unauthorized destruction of records, including all forms of mutilation. Willful and unlawful destruction, damage or alienation of Federal records is subject to the fines and penalties imposed by 18 U.S.C. 2701. Records may not be removed from the legal custody of the Agency or destroyed without regard to the provisions of the agency records schedules.

j. Contractor is required to obtain the Contracting Officer's approval prior to engaging in any contractual relationship (sub-contractor) in support of this contract requiring the disclosure of information, documentary material and/or records generated under, or relating to, this contract. The Contractor (and any sub-contractor) is

Attachment A-2

required to abide by Government and Agency guidance for protecting sensitive and proprietary information.

## Attachment A-2

**Additional Information regarding records management:**

## Extract from 36 CFR Part 12, regarding records management responsibilities of contractors.

§1222.48 Data created or received and maintained for the Government by contractors.

(a) Contractors performing Congressionally mandated program functions are likely to create or receive data necessary to provide adequate and proper documentation of these programs and to manage them effectively. Agencies shall specify the delivery of the Government of all data needed for the adequate and proper documentation of contractor-operated programs in accordance with requirements of the Federal Acquisition Regulation (FAR) and, where applicable, the Defense Federal Acquisition Regulation Supplement (DFARS).

(b) When contracts involve the creation of data for the Government's use, in addition to specifying a final product, agency officials may need to specify the delivery of background data that may have reuse value to the Government. Before specifying the background data that contractors must deliver to the agency, program and contracting officials shall consult with agency records and information managers and historians and, when appropriate, with other Government agencies to ensure that all agency and Government needs are met, especially when the data deliverables support a new agency mission or a new Government program.

(c) Deferred ordering and delivery-of-data clauses and rights-in-data clauses shall be included in contracts whenever necessary to ensure adequate and proper documentation or because the data have reuse value to the Government.

(d) When data deliverables include electronic records, the agency shall require the contractor to deliver sufficient technical documentation to permit the agency or other Government agencies to use the data.

(e) All data created for Government use and delivered to, or falling under the legal control of, the Government are Federal records and shall be managed in accordance with records management legislation as codified at 44 U.S.C. chapters 21, 29, 31, and 33, the Freedom of Information Act (5 U.S.C. 552), and the Privacy Act (5 U.S.C. 552a), and shall be scheduled for disposition in accordance with 36 CFR part 1228.

## 36 CFR Part 1228, Subpart K - Facility Standards for Records Storage Facilities.

NARA requires that the requirements of Subpart K be incorporated into the contract requirements when records storage facilities are included in the contract. This covers direct contracts with commercial storage vendors such as Iron Mountain; it also covers contractors who store ED records as part of a larger service contract. http://www.archives.gov/about/regulations/part-1228/k.html

# Additional Servicer FULL Requirements

Full_Req_v6.0

Attachment A-3

# Additional Servicer – FULL Requirements

Required by 8/31/10 unless otherwise noted

## TABLE OF CONTENTS

General Statement.............................................................................3
Direct Loans ....................................................................................4

## Attachment A-3

## General Statement

It is the intent of the Department to procure a performance based contract(s) that promotes competition and provides best of business services.   To achieve this goal, the Department expects each servicer to provide commercially available services that will yield high performing portfolios and high levels of customer satisfaction. The following statements apply:

- Servicers will be required to meet all statutory and legislative requirements.
- Servicers will use their own discretion in deciding to provide services or business functionality that is recommended but not required.
- Servicers may leverage all borrower repayment channels while maintaining existing branding provided all federally held loans are clearly distinguished and identified.
- Small differences due to rounding in various calculations are understood and accepted providing the calculation itself is in compliance with federal regulation.
- The department will allocate volume based on defined and understood performance metrics.
- The Department does not intend to provide additional service level requirements.  The Department does, however, expect best of business practices to be deployed.
- The Department will not require the use of the Department or FSA logo on letters, web sites, etc.
- Servicers will have full discretion to promote or not promote services as long as they meet legislative and regulatory requirements and are cost neutral to the government.
- Servicers will have discretion to provide services to schools.
- Services may use their own authentication process as long as the process is fully compliant with federal IT security guidelines.
- With regard to split borrowers, it is acceptable for servicers to handle requests, phone calls, etc. for all loans being serviced, regardless of the holder as long as all federal laws and regulations are met.

Attachment A-3

## Direct Loans

1. The servicer shall meet all legislative and regulatory requirements for the Direct Loan program (DL). In some cases Direct Loans will need to be serviced differently than FFEL loans, a few examples of these differences are listed below (not an all inclusive list):
   a. The interest rate for a Federal Direct PLUS loan is fixed at 7.9% for loans first disbursed after July 1, 2006.
   b. Public service loan forgiveness is only offered in the DL.
   c. There are two repayment plans unique to the DL: Income Contingent Repayment (ICR) and the Alternative Repayment.
   d. DL provides a 0.25% interest rate reduction for borrowers making payments through electronic debit accounts.
   e. As of July 1, 2009 the up front interest rebate for direct subsidized and unsubsidized loans will be 1.00%.
   f. There is an origination fee but no Federal default fee in the DL. As of July 1, 2009, the origination fee will be 1.5% for direct subsidized and direct unsubsidized loans.
   g. There is authority in the DL for unlimited discretionary forbearances. DL servicers must be able to offer borrowers additional administrative forbearance after the 3-year limit and upon receipt of additional documentation from the borrowers.
2. The servicer shall meet all previously identified requirements for Federally Held Debt (i.e. Accounting, Treasury, Reconciliation, Internal Controls, etc.) for the Direct Loan portfolio.
3. The servicer shall interface with Common Origination and Disbursement System (COD) & Electronic Master Promissory Note (eMPN) for newly originated loans.
4. The servicer shall interface with the Direct Loan Consolidation System (DLCS) for Direct Consolidation Loans.
5. The servicers shall accept loan and disbursement level adjustments from the originating system(s) and/or directly from schools as necessary. The majority of Direct Loan adjustments & cancellations are passed from the school to COD, and then from COD to the servicing system via the servicing system/COD interface. Direct Consolidation Loan adjustments & cancellations are received by the servicing system from the Direct Loan Consolidation System (DLCS) via the servicing system/DLCS interface
6. The servicer shall interface with Internal Revenue Service (IRS) as needed to support income contingent or income based programs.
7. The servicer shall support servicing of all Direct Loans, including Direct Consolidation Loans.

Attachment A-4

# Ongoing Allocation Methodology

The allocation of ongoing volume will be determined based on the performance of each servicer in relation to the other servicers awarded. While the total number of awarded servicers has not yet been determined, this methodology works with any number of servicers (as shown in examples).

Quarterly scores will be compiled for each servicer based on various performance factors; five high-level metrics, and some sub-metric categories, have been defined (see below). An average of the quarterly scores available on July 1 of each year will be used to determine the ranking of each servicer in each of the five high-level metric categories. By combining each servicer's ranking in all categories, each servicer will be given a percentage of the total new volume of Federally Held Debt to be distributed for the upcoming year.

Servicers will be informed of their allocation percentage of new volume by July 15 of each year. This allocation will become effective on August 15 of each year. The first ongoing allocation will be provided by August 15, 2010.

The allocation of ongoing volume will be determined based on the following factors:

1. Percentage of "In Repayment" Portfolio Dollars that go into default (as transferred to DMCS – 360+ days) – Measured as a percentage of the servicer's current Federally held portfolio
    a. Percentage at Public Schools
    b. Percentage at Private Schools
    c. Percentage at Proprietary Schools
2. Percentage of unique "In Repayment" Portfolio borrowers that go into default (as transferred to DMCS – 360+ days) – Measured as a percentage of the servicer's current Federally held portfolio
    a. Percentage at Public Schools
    b. Percentage at Private Schools
    c. Percentage at Proprietary Schools
3. Borrower Surveys
    a. In School Borrowers
    b. In Grace Borrowers
    c. In Repayment Borrowers
4. School Surveys
    a. Public Schools
    b. Private Schools
    c. Proprietary Schools
5. Survey of FSA personnel

**Allocation Metric # 1** – to be measured Quarterly (calendar quarters beginning with October 1, 2009). Calculation = (Total Principal Balance Outstanding (or "PBO") + Interest of all loans sent to DMCS during the quarter or > 360 days delinquent at the end of the quarter) DIVIDED BY (Total PBO + Interest of all of the servicer's Federally held debt portfolio in repayment status). Resulting value is a percentage rounded to the nearest hundredth for each category of schools (Public, Private, Proprietary). All available quarterly scores in each category (1a, 1b, 1c) will be averaged together on July 1 of each year to calculate the Final Score for this allocation metric.

**Allocation Metric # 2** – to be measured Quarterly (calendar quarters beginning with October 1, 2009). Calculation = (Total number of borrowers sent to DMCS during the quarter or > 360 days delinquent at

Attachment A-4

the end of the quarter) DIVIDED BY (Total number of borrowers within the servicer's Federally held debt portfolio in repayment status). Resulting value is a percentage rounded to the nearest hundredth for each category of schools (Public, Private, Proprietary). All available quarterly scores in each category (2a, 2b, 2c) will be averaged together on July 1 of each year to calculate the Final Score for this allocation metric.

**Allocation Metric # 3** – Surveys will be conducted quarterly of borrowers in each category (In School, In Grace, and In Repayment). The survey will measure borrower satisfaction with the servicer and results will be based on a scale of 0 – 100%, with 100% representing a perfect score. FSA, or an agent of FSA will conduct surveys. All available quarterly scores in each category (3a, 3b, 3c) will be averaged together on July 1 of each year to calculate the Final Score for this allocation metric.

**Allocation Metric # 4** – Surveys will be conducted quarterly of schools in each category (Public, Private, and Proprietary). The survey will measure school satisfaction with the servicer and results will be based on a scale of 0 – 100%, with 100% representing a perfect score. FSA, or an agent of FSA will conduct surveys. All available quarterly scores in each category (4a, 4b, 4c) will be averaged together on July 1 of each year to calculate the Final Score for this allocation metric.

**Allocation Metric # 5** – Surveys will be conducted quarterly of FSA personnel. The survey will measure FSA satisfaction with the servicer and results will be based on a scale of 0 – 100%, with 100% representing a perfect score. FSA, or an agent of FSA will conduct surveys. All available quarterly scores will be averaged together on July 1 of each year to calculate the Final Score for this allocation metric.

**Allocation Metric Score Comparison Among Servicers**
The above calculation will result in a set of 5 scores for each servicer, one score in each metric category (1-Defaulted borrower dollars, 2-Defaulted borrower count, 3-Borrower Survey, 4-School Survey, 5-FSA Survey).

FSA will compare all servicers' scores in each allocation metric category and provide a ranking for each servicer in that category, with the best score in each category receiving the highest possible value and the worst score receiving the lowest possible value (highest / lowest values will be determined by the number of servicers selected --- Highest score possible will be the total number of servicers selected, lowest score will be 1).

Once a ranking value has been assigned to each servicer in each allocation category, all scores for a servicer will be added together to provide the "Total Score" for that servicer for the year. Each servicer will have one Total Score for each year.

**Allocation of New Volume of Federally Held Debt**
Each servicer will be assigned an allocation of new volume by dividing that servicer's total score by the combined total scores of all servicers. The resulting percentage will determine each servicer's percentage of new volume of Federally Held Debt.

   The servicer's percentage of new volume will determine the percentage of new borrowers that will be sent to the servicer for servicing (loans for existing borrowers may, to the maximum extent practicable, be sent to the servicer already holding that borrower's other loans).

 *NOTE: If a servicer is out of compliance (for example, but not limited to, financial management or reporting, security, OMB Circular A-123, Legislative Mandates, Program Compliance, etc.), that*

Attachment A-4

*servicer's new volume may be re-allocated to one or more other servicers until compliance has been achieved. In addition, that servicer's current account volume may be transferred to another servicer, at the non-compliant servicer's expense.*

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 1 - 6 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

| | METRIC | Servicers | | | | | |
|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% | 6.60% |
| 2 | Defaulted borrower amount | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% | 6.60% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% | 89.00% |
| 4 | School Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% | 89.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% | 89.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

| | METRIC | Servicers | | | | | |
|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 |
| 1 | Defaulted borrower count | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 3 | Borrower Survey | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 5 | FSA Survey | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

| | Servicers | | | | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| TOTAL SCORE | 30.0 | 25.0 | 20.0 | 15.0 | 10.0 | 5.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 30.0 | 28.57% | 1,714,286 |
| Servicer 2 | 25.0 | 23.81% | 1,428,571 |
| Servicer 3 | 20.0 | 19.05% | 1,142,857 |
| Servicer 4 | 15.0 | 14.29% | 857,143 |
| Servicer 5 | 10.0 | 9.52% | 571,429 |
| Servicer 6 | 5.0 | 4.76% | 285,714 |
| Combined Total | 105 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 2 - 5 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

|   | METRIC | Servicers | | | | |
|---|--------|---|---|---|---|---|
|   |        | 1 | 2 | 3 | 4 | 5 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% |
| 2 | Defaulted borrower amount | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% |
| 4 | School Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

|   | METRIC | Servicers | | | | |
|---|--------|---|---|---|---|---|
|   |        | 1 | 2 | 3 | 4 | 5 |
| 1 | Defaulted borrower count | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 3 | Borrower Survey | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 5 | FSA Survey | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

|  | Servicers | | | | |
|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 |
| TOTAL SCORE | 25.0 | 20.0 | 15.0 | 10.0 | 5.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

|  | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 25.0 | 33.33% | 2,000,000 |
| Servicer 2 | 20.0 | 26.67% | 1,600,000 |
| Servicer 3 | 15.0 | 20.00% | 1,200,000 |
| Servicer 4 | 10.0 | 13.33% | 800,000 |
| Servicer 5 | 5.0 | 6.67% | 400,000 |
| Combined Totals | **75** | **100.00%** | **6,000,000** |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 3 - 4 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

| | METRIC | Servicers | | | |
|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% |
| 2 | Defaulted borrower amount | 1.10% | 2.20% | 3.30% | 4.40% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% |
| 4 | School Survey | 97.00% | 95.00% | 93.00% | 91.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

| | METRIC | Servicers | | | |
|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 |
| 1 | Defaulted borrower count | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 4.0 | 3.0 | 2.0 | 1.0 |
| 3 | Borrower Survey | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 4.0 | 3.0 | 2.0 | 1.0 |
| 5 | FSA Survey | 4.0 | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

| | Servicers | | | |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| **TOTAL SCORE** | 20.0 | 15.0 | 10.0 | 5.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 20.0 | 40.00% | 2,400,000 |
| Servicer 2 | 15.0 | 30.00% | 1,800,000 |
| Servicer 3 | 10.0 | 20.00% | 1,200,000 |
| Servicer 4 | 5.0 | 10.00% | 600,000 |
| Combined Totals | **50** | **100.00%** | **6,000,000** |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
# Scenario 4 - 3 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

|  | METRIC | Servicers | | |
|---|---|---|---|---|
|  |  | 1 | 2 | 3 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% |
| 2 | Defaulted borrower amount | 1.10% | 2.20% | 3.30% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% |
| 4 | School Survey | 97.00% | 95.00% | 93.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

|  | METRIC | Servicers | | |
|---|---|---|---|---|
|  |  | 1 | 2 | 3 |
| 1 | Defaulted borrower count | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 3.0 | 2.0 | 1.0 |
| 3 | Borrower Survey | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 3.0 | 2.0 | 1.0 |
| 5 | FSA Survey | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

|  | Servicers | | |
|---|---|---|---|
|  | 1 | 2 | 3 |
| TOTAL SCORE | 15.0 | 10.0 | 5.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

|  | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 15.0 | 50.00% | 3,000,000 |
| Servicer 2 | 10.0 | 33.33% | 2,000,000 |
| Servicer 3 | 5.0 | 16.67% | 1,000,000 |
| Combined Totals | 30 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 5 - 2 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

| | METRIC | Servicers | |
|---|---|---|---|
| | | 1 | 2 |
| 1 | Defaulted borrower count | 1.10% | 2.20% |
| 2 | Defaulted borrower amount | 1.10% | 2.20% |
| 3 | Borrower Survey | 97.00% | 95.00% |
| 4 | School Survey | 97.00% | 95.00% |
| 5 | FSA Survey | 97.00% | 95.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

| | METRIC | Servicers | |
|---|---|---|---|
| | | 1 | 2 |
| 1 | Defaulted borrower count | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 2.0 | 1.0 |
| 3 | Borrower Survey | 2.0 | 1.0 |
| 4 | School Survey | 2.0 | 1.0 |
| 5 | FSA Survey | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

| | Servicers | |
|---|---|---|
| | 1 | 2 |
| TOTAL SCORE | 10.0 | 5.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 10.0 | 66.67% | 4,000,000 |
| Servicer 2 | 5.0 | 33.33% | 2,000,000 |
| Combined Totals | 15 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 6 - 6 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

| | METRIC | Servicers | | | | | |
|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% | 6.60% |
| 2 | Defaulted borrower amount | 6.60% | 5.50% | 3.30% | 4.40% | 2.20% | 1.10% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% | 89.00% |
| 4 | School Survey | 89.00% | 90.00% | 93.00% | 91.00% | 95.00% | 97.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% | 89.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

| | METRIC | Servicers | | | | | |
|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 |
| 1 | Defaulted borrower count | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 1.0 | 2.0 | 4.0 | 3.0 | 5.0 | 6.0 |
| 3 | Borrower Survey | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 1.0 | 2.0 | 4.0 | 3.0 | 5.0 | 6.0 |
| 5 | FSA Survey | 6.0 | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

| | Servicers | | | | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| TOTAL SCORE | 20.0 | 19.0 | 20.0 | 15.0 | 16.0 | 15.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 20.0 | 19.05% | 1,142,857 |
| Servicer 2 | 19.0 | 18.10% | 1,085,714 |
| Servicer 3 | 20.0 | 19.05% | 1,142,857 |
| Servicer 4 | 15.0 | 14.29% | 857,143 |
| Servicer 5 | 16.0 | 15.24% | 914,286 |
| Servicer 6 | 15.0 | 14.29% | 857,143 |
| Combined Total | 105 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 7 - 5 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

| | METRIC | Servicers | | | | |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% | 5.50% |
| 2 | Defaulted borrower amount | 6.60% | 5.50% | 3.30% | 4.40% | 2.20% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% |
| 4 | School Survey | 89.00% | 90.00% | 93.00% | 91.00% | 95.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% | 90.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

| | METRIC | Servicers | | | | |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 1 | Defaulted borrower count | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 1.0 | 2.0 | 4.0 | 3.0 | 5.0 |
| 3 | Borrower Survey | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 1.0 | 2.0 | 4.0 | 3.0 | 5.0 |
| 5 | FSA Survey | 5.0 | 4.0 | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

| | Servicers | | | | |
|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 |
| TOTAL SCORE | 17.0 | 16.0 | 17.0 | 12.0 | 13.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 17.0 | 22.67% | 1,360,000 |
| Servicer 2 | 16.0 | 21.33% | 1,280,000 |
| Servicer 3 | 17.0 | 22.67% | 1,360,000 |
| Servicer 4 | 12.0 | 16.00% | 960,000 |
| Servicer 5 | 13.0 | 17.33% | 1,040,000 |
| Combined Total | 75 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 8 - 4 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

| | METRIC | Servicers | | | |
|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% | 4.40% |
| 2 | Defaulted borrower amount | 6.60% | 5.50% | 3.30% | 4.40% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% | 91.00% |
| 4 | School Survey | 89.00% | 90.00% | 93.00% | 91.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% | 91.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

| | METRIC | Servicers | | | |
|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 |
| 1 | Defaulted borrower count | 4.0 | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 1.0 | 2.0 | 4.0 | 3.0 |
| 3 | Borrower Survey | 4.0 | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 1.0 | 2.0 | 4.0 | 3.0 |
| 5 | FSA Survey | 4.0 | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

| | Servicers | | | |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| TOTAL SCORE | 14.0 | 13.0 | 14.0 | 9.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 14.0 | 28.00% | 1,680,000 |
| Servicer 2 | 13.0 | 26.00% | 1,560,000 |
| Servicer 3 | 14.0 | 28.00% | 1,680,000 |
| Servicer 4 | 9.0 | 18.00% | 1,080,000 |
| | | | |
| Combined Total | 50 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 9 - 3 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

| | METRIC | Servicers | | |
|---|---|---|---|---|
| | | 1 | 2 | 3 |
| 1 | Defaulted borrower count | 1.10% | 2.20% | 3.30% |
| 2 | Defaulted borrower amount | 6.60% | 5.50% | 3.30% |
| 3 | Borrower Survey | 97.00% | 95.00% | 93.00% |
| 4 | School Survey | 89.00% | 90.00% | 93.00% |
| 5 | FSA Survey | 97.00% | 95.00% | 93.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

| | METRIC | Servicers | | |
|---|---|---|---|---|
| | | 1 | 2 | 3 |
| 1 | Defaulted borrower count | 3.0 | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 1.0 | 2.0 | 3.0 |
| 3 | Borrower Survey | 3.0 | 2.0 | 1.0 |
| 4 | School Survey | 1.0 | 2.0 | 3.0 |
| 5 | FSA Survey | 3.0 | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

| | Servicers | | |
|---|---|---|---|
| | 1 | 2 | 3 |
| TOTAL SCORE | 11.0 | 10.0 | 9.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

| | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 11.0 | 36.67% | 2,200,000 |
| Servicer 2 | 10.0 | 33.33% | 2,000,000 |
| Servicer 3 | 9.0 | 30.00% | 1,800,000 |
| Combined Total | 30 | 100.00% | 6,000,000 |

Attachment A-5

# SAMPLE - ONGOING ALLOCATION METRIC CALCULATION
## Scenario 10 - 2 Servicers selected

**FINAL SCORE BY ALLOCATION METRIC**

|  | METRIC | Servicers | |
|---|---|---|---|
|  |  | 1 | 2 |
| 1 | Defaulted borrower count | 1.10% | 2.20% |
| 2 | Defaulted borrower amount | 6.60% | 5.50% |
| 3 | Borrower Survey | 97.00% | 95.00% |
| 4 | School Survey | 89.00% | 90.00% |
| 5 | FSA Survey | 97.00% | 95.00% |

**SERVICER RANKING BY ALLOCATION METRIC**

|  | METRIC | Servicers | |
|---|---|---|---|
|  |  | 1 | 2 |
| 1 | Defaulted borrower count | 2.0 | 1.0 |
| 2 | Defaulted borrower amount | 1.0 | 2.0 |
| 3 | Borrower Survey | 2.0 | 1.0 |
| 4 | School Survey | 1.0 | 2.0 |
| 5 | FSA Survey | 2.0 | 1.0 |

**TOTAL SCORE BY SERVICER**

|  | Servicers | |
|---|---|---|
|  | 1 | 2 |
| TOTAL SCORE | 8.0 | 7.0 |

**ALLOCATION EACH SERIVER WILL RECEIVE**

|  | Total Score | % of new volume Servicer will receive (Total Score / Combined Totals) | New borrowers (based on 6M total new borr) |
|---|---|---|---|
| Servicer 1 | 8.0 | 53.33% | 3,200,000 |
| Servicer 2 | 7.0 | 46.67% | 2,800,000 |
|  |  |  |  |
| Combined Total | 15 | 100.00% | 6,000,000 |

Federal Student Aid

Attachment A-6-- Servicing Pricing Definitions

U.S. Department of Education

Title IV Student Loan Servicing/Management

| Deliverable | Definition |
|---|---|
| Borrowers in In-school Status | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have not separated from school as of the last day of the billing period |
| Borrowers in Grace or Current Repayment Status | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and are less than 31 days delinquent and are not in deferment, forbearance, or conditionally discharged as of the last day of the billing period |
| Borrowers in Deferment or Forbearance | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school, are in deferment or forbearance and who are not conditionally discharged as of the last day of the billing period |
| Borrowers 31-90 Days Delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school, are 31 or more days, but less than 91 days delinquent, and who are not conditionally discharged as of the last day of the billing period |
| Borrowers 91-150 Days Delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school, are 91 or more days, but less than 151 days delinquent, and who are not conditionally discharged as of the last day of the billing period |
| Borrowers 151-270 Days Delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school are 151 or more days, but less than 271 days delinquent, and who are not conditionally discharged as of the last day of the billing period |
| Borrowers 270+ Days Delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and 271 or more days and who are not conditionally discharged as of the last day of the billing period. This may include borrowers over 360 day that are considered in Default Status, but for some reason have not been transferred through no fault of the Servicer. |

NOTES:
1. Common pricing shall apply regardless of program (i.e. Direct Loan, Federal Family Education Loan) or volume serviced, unless otherwise noted in the contract.
2. Reporting is required for the number of borrowers and/or loans and dollar amount of each program, in addition to any other reporting requirements provided in the contract.
3. Borrowers in multiple statuses shall be billed once, in the lowest performing deliverable status. The lowest performing deliverable status is defined as the lowest unit priced deliverable.
4. Borrowers pending discharge, which include, but are not limited to: conditional disability, death, or bankruptcy, shall be, for billing purposes, counted in the deliverable status at the time of the discharge request.
5. "The last day of the billing period" is defined as the last day of the Department of Education's monthly billing period.
6. The annual pricing period shall begin on September 1, 2009.

## USE AND NON-DISCLOSURE AGREEMENT

The undersigned, ███████████, an authorized representative of the <u>SLM Corporation (Sallie Mae)</u>, (which is hereinafter referred to as the "Recipient") requests the Government to provide the Recipient with proprietary data, technical data or computer software (hereinafter referred to as "Data") in which the Government's use, modification, reproduction, release, performance, display or disclosure rights are restricted. Those Data are identified in an attachment to this Agreement. In consideration for receiving such Data, the Recipient agrees to use the Data strictly in accordance with this Agreement:

(1) The Recipient shall —

    (a) Use, modify, reproduce, release, perform, display, or disclose Data marked with SBIR data rights legends only for government purposes and shall not do so for any commercial purpose. The Recipient shall not release, perform, display, or disclose these Data, without the express written permission of the contractor whose name appears in the restrictive legend (the "Contractor"), to any person other than its subcontractors or suppliers, or prospective subcontractors or suppliers, who require these Data to submit offers for, or perform, contracts with the Recipient. The Recipient shall require its subcontractors or suppliers, or prospective subcontractors or suppliers, to sign a use and non-disclosure agreement prior to disclosing or releasing these Data to such persons. Such agreement must be consistent with the terms of this agreement.

    (b) Use, modify, reproduce, release, perform, display, or disclose proprietary data or technical data marked with limited rights legends only as specified in the attachment to this Agreement. Release, performance, display, or disclosure to other persons is not authorized unless specified in the attachment to this Agreement or expressly permitted in writing by the Contractor.

    (c) Use computer software marked with restricted rights legends only in performance of Contract Number ___████████-0015___ . The Recipient shall not, for example, enhance, decompile, disassemble, or reverse engineer the software; time share, or use a computer program with more than one computer at a time. The recipient may not release, perform, display, or disclose such software to others unless expressly permitted in writing by the licensor whose name appears in the restrictive legend.

    (d) Use, modify, reproduce, release, perform, display, or disclose Data marked with special license rights legends (To be completed by the contracting officer. See (a)(2) of the Use and Non-Disclosure Agreement clause. Omit if none of the Data requested is marked with special license rights legends).

(2) The Recipient agrees to adopt or establish operating procedures and physical security measures designed to protect these Data from inadvertent release or disclosure to unauthorized third parties.

(3) The Recipient agrees to accept these Data "as is" without any Government representation as to suitability for intended use or warranty whatsoever. This disclaimer does not affect any

obligation the Government may have regarding Data specified in a contract for the performance of that contract.

(4) The Recipient may enter into any agreement directly with the Contractor with respect to the use, modification, reproduction, release, performance, display, or disclosure of these Data.

(5) The Recipient agrees to indemnify and hold harmless the Government, its agents, and employees from every claim or liability, including attorneys fees, court costs, and expenses arising out of, or in any way related to, the misuse or unauthorized modification, reproduction, release, performance, display, or disclosure of Data received from the Government with restrictive legends by the Recipient or any person to whom the Recipient has released or disclosed the Data.

(6) The Recipient is executing this Agreement for the benefit of the Contractor. The Contractor is a third party beneficiary of this Agreement who, in addition to any other rights it may have, is intended to have the rights of direct action against the Recipient or any other person to whom the Recipient has released or disclosed the Data, to seek damages from any breach of this Agreement or to otherwise enforce this Agreement.

(7) The Recipient agrees to destroy these Data, and all copies of the Data in its possession, no later than 30 days after the date shown in paragraph (8) of this Agreement, to have all persons to whom it released the Data do so by that date, and to notify the Contractor that the Data have been destroyed.

(8) This Agreement shall be effective for the period commencing with the Recipient's execution of this Agreement and ending upon June 16, 2019 . The obligations imposed by this Agreement shall survive the expiration or termination of the Agreement.


SLM Corporation (Sallie Mae)
Recipient's Business Name


_____ June 17, 2009
Authorized Representative/Date


Representative's Typed Name and Title

Exhibit E

(2014 Servicing Contract Modification)


Exhibit E

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. Contract ID Code | | Page of Pages | |
|---|---|---|---|---|---|
| | | | | 1 | 21 |

| 2. AMENDMENT MODIFICATION NO. 0085 | 3. EFFECTIVE DATE SEP 01, 2014 | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (if applicable) |
|---|---|---|---|

| 6. ISSUED BY          CODE   FSA-FS2 | 7. ADMINISTERED BY (If other than item 6)          CODE |
|---|---|
| United States Department of Education<br>Federal Student Aid/Mission Support Group<br>830 First St NE - Suite 91F3<br>Washington DC 20202<br>Katharine Hill 202-377-4215 katharine.hill@ed.gov | See Block 6 |

| 8. NAME AND ADDRESS OF CONTRACTOR (NO., Street, Country, State and ZIP Code) | | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|
| NAVIENT, LLC<br>C/O MONETARY PROCESSING<br>P.O. BOX 9533<br>WILKES-BARRE PA 187739533 | DUNS: 079392048<br>Cage Code: 750A7 | (x) |
| | | 9B. DATED (SEE ITEM 11) |
| | | X |
| | | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>ED-FSA-09-D-0015 |
| CODE 00035397 | FACILITY CODE | 10B. DATED (SEE ITEM 13)<br>JUN 17, 2009 |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in item 14. The hour and date specified for receipt of offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing items 8 and 15, and returning _____ copies of amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OR OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment your desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required)<br>See Schedule | Modification Amount: $0.00<br>Modification Obligated Amount: $0.00 |
|---|---|

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| Check One | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:<br>Mutual Agreement Between the Parties |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT:  Contractor ☐ is not, ☒ is required to sign this document and return ___1___ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible)

Please see the attachment for modification description.

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)<br>Soo Kang<br>202-377-3798   soo.kang@ed.gov |
|---|---|
| 15B. CONTRACTOR/OFFEROR<br><br>(Signature of person authorized to sign) | 15C. DATE SIGNED<br>8/27/2014 | 16B. UNITED STATES OF AMERICA<br><br>(Signature of Contracting Officer) | 16C. DATE SIGNED<br>AUG 27, 2014 |

NSN 7540-01-152-8070
Previous Edition unusable

STANDARD FORM 30. (Rev. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

**Attachment Page**

The purpose of this modification is to:

1. Replace Section B.13.H: Delinquency Reduction Compensation Program

2. Modify Section B.13.N: Additional Terms

   - Replace Item 3: Common Pricing, previously revised in Modification 0081
   - Modify Item 5: Common Pricing
   - Add Item 11
   - Add Item 12: Service Member Requirements
   - Add Item 13: Servicing Requirements Submission

3. Update C.2 Attachments/Supplemental Documents

4. Replace Attachment A-4, Servicer Allocation Metrics

5. Replace Attachment A-5, Allocation Calculation Example

6. Replace Attachment A-6, Servicing Pricing Definitions

7. Add Attachment A-7, Borrower Status Reporting

8. Add Attachment A-8, Quarterly Delinquency Reduction Compensation Report

All other terms and conditions remain unchanged.

Attachment Page

## B.13 ADDITIONAL TERMS AND CONDITIONS

### H. Delinquency Reduction Compensation Program

A Delinquency Reduction Compensation Program is established as follows:

$$\text{Delinquency Percentage} = \frac{(\text{Borrowers} > 30 \text{ Days Delinquent})}{(\text{Borrowers In Current Status} + \text{Borrowers} < 361 \text{ Days Delinquent})}$$

Each of the Servicers may earn up to $500,000 per quarter, depending upon performance, as follows:

Level 1 Award is valued at $200,000 if the Servicer achieves a Delinquency Percentage for Quarter End of less than 23.0%.

Level 2 Award is valued at $300,000 if the Servicer achieves a Delinquency Percentage for Quarter End of less than 23.0% (earns $200,000) AND Servicer improves upon prior Quarter End Delinquency Percentage (earns $100,000).

Level 3 Award is valued at $500,000 if the Servicer achieves a Delinquency Percentage for Quarter End of less than 21.0% AND Servicer improves upon prior Quarter End Delinquency Percentage.

Delinquency Reduction Compensation will be available based on the results of the quarter ending 12/31/2014. Servicers shall submit the Quarterly Delinquency Reduction Compensation Report (Attachment A-8) at the end of each quarter. Quarters are defined as Q1 = Oct 1 to Dec 31; Q2 = Jan 1 to Mar 31; Q3 = Apr 1 to Jun 30, and Q4 = Jul 1 to Sep 30 of each year.

This contract includes performance compensation terms that address delinquency reduction. The compensation will become due to the vendor upon successful achievement of delinquency reduction objectives. The Government intends to promote the reduction of loan delinquency across the entire period of vendor performance. Any vendor that appears to be performing in a manner inconsistent with this intent (e.g. attempting to earn compensation every other quarter, etc.) may, at the sole discretion of the Government, forfeit the delinquency reduction compensation they would have otherwise earned; and may, at the sole discretion of the Government, be required to return previously earned compensation that was achieved through this delinquency reduction program.

The Government may, at its sole discretion, reset the structure of the compensation on an annual basis, effective on September 1 of the performance year; maintain the current structure; or, remove the delinquency reduction compensation entirely by unilateral modification of the contract.

N. **Additional Terms:**

3. The Government will set and manage the common pricing, including tier structure, below:

| CLIN | Status | Unit | Unit Measure | Unit Rate |
|------|--------|------|--------------|-----------|
| 0001 | In School | 1+ | EA | $ 1.05 |
| 0002 | In Grace | 1+ | EA | $ 1.68 |
| 0003 | In Repayment | 1+ | EA | $ 2.85 |
| 0004 | Service Member | 1+ | EA | $ 2.85 |
| 0005 | Deferment | 1+ | EA | $ 1.68 |
| 0006 | Forbearance | 1+ | EA | $ 1.05 |
| 0007 | Delinquent 6-30 Days | 1+ | EA | $ 2.11 |
| 0008 | Delinquent 31-90 Days | 1+ | EA | $ 1.46 |
| 0009 | Delinquent 91-150 Days | 1+ | EA | $ 1.35 |
| 0010 | Delinquent 151-270 Days | 1+ | EA | $ 1.23 |
| 0011 | Delinquent 271-360 Days | 1+ | EA | $ 0.45 |
| 0012 | Delinquent 361 or more Days | 1+ | EA | $0.45 |
| 0013 | Delinquency Reduction Compensation Program[1] | N/A | N/A | Not-to-Exceed $2,000,000 |
|  | Cohort Default Rate (CDR) Challenge Support |  |  |  |
| 0014 | Institution[2] | 1+ | EA | $213.00 |
| 0015 | Borrower[3] | 1+ | EA | $23.00 |
|  | Loan Consolidation |  |  |  |
| 0016 | One-Time Development Cost[4] | N/A | N/A | Not-to-Exceed $1,200,000.00 |
| 0017 | Consolidations Completed | 1+ | EA | $27.35 |
| 0018 | CDR Assistance Pilot (rate per school assisted)[5] | 1+ | EA | $18,000.00 |

1. *Delinquency Reduction Compensation Program shall not exceed $2,000,000 annually per servicer. The maximum amount available each quarter shall not exceed $500,000 per servicer.*
2. *An institution is defined as a school or branch having a unique school code/ID as established by the U.S. Department of Education.*
3. *A borrower is defined as an individual with a unique SSN.*
4. *Development costs for Loan Consolidation will be reimbursed for the actual costs incurred, but not-to-exceed $1,200,000, for the first year only.*
5. *The CDR Assistance Pilot ends on May 16, 2014*

5. Common pricing includes all supplies, services and other costs to deliver Title IV Servicing under this contract, including:
   - Costs for bringing contractor systems into compliance for handling federally held debt.
   - Costs for legislative, regulatory or policy changes that affect the FFEL community as a whole, as is commercially accepted practice in the FFEL community.
   - Costs to successfully shutdown the federal servicing system and operations, including:
       a. Continued borrower support for a minimum of 90 days from the last transfer off. Including, but not limited to, responses to inquiries, credit

Attachment Page

        bureau resolutions, payment and correspondence forwarding, tax reporting, etc.

b. Creation and execution of a decommissioning plan for systems and operational activities.

c. Continued system support (including interfaces and reject resolution) until system successfully decommissioned – minimum of 90 days from last transfer off.

d. Continued reporting and reconciliations until system successfully decommissioned – including full resolution of all variances, suspense balances and fund balance with Treasury.

- For all other costs, the Department and the contractor(s) may come to an agreement via the change management process or negotiation, as necessary.

11. The contractor shall provide a complete copy of any complaint served on the contractor in a lawsuit by an individual for conduct alleged to have occurred in the course of servicing activity under the contract. Within 10 days of the date of service of the complaint on the contractor, the contractor shall deliver the copy by email attachment sent to OGC.Servicer@ed.gov, or by hard copy addressed, postage prepaid, to Education Department, Office of General Counsel, DPE: Servicer, 400 Maryland Ave. SW, Washington DC 20202. The contractor need not provide such a complaint if the contractor determines that the conduct alleged did not occur in the course of the contractor's servicing activities under the contract or the plaintiff does not assert a claim with respect to an obligation owed or believed to be owed by the plaintiff to repay a student loan. The contractor shall provide the complaint at no additional cost to the government.

12. Service Member Requirements

12.1 Service Member is defined in accordance with the Servicemember Civil Relief Act.

12.2 The servicer shall provide a unique email address and phone number (or an IVR option within existing phone number) that allows the borrowers in the service member category to go directly to a group of agents who have been specially trained to respond to inquiries on all aspects of the military entitlements, forms, regulations, and military payments, as they relate to federal financial aid. The email and phone options shall be made available to these borrowers on servicer websites and hard copy/electronic correspondences.

    12.2.1 Validation - Servicer shall provide a document to FSA explaining how the service member borrowers can uniquely contact the servicer and where/when that information is made available to the borrower. Servicer shall provide a high level overview of the specialized training the CSRs/agents will go through to be trained to respond to these inquiries and when that training takes place. The training materials should also be made available to FSA on demand. (Send validation items to EDServicerS@ed.gov and COR within 60 days of the Effective Date of this executed modification (0085).)

12.3 The servicer shall review all borrowers in their portfolio against the Department of Defense database MONTHLY and apply the borrower entitlements based on that matching.

12.3.1 Validation - Servicer shall provide a document outlining the timing of when the monthly matching will occur as well as how/when the benefits will be applied to borrower accounts as a result of the matching. (Send validation items to EDServicerS@ed.gov and COR within 60 days of the Effective Date of this executed modification (0085).)

12.4 The servicer shall provide a listing (SSN, Name, days delinquent) by the 10th calendar day of each month to FSA that identifies EVERY borrower in the service member category that has reached 300 or more days delinquent. The listing shall also outline all activity (calls/emails/correspondence) the servicer has taken to try to resolve the delinquency and how the servicer has contacted the borrower (or if they have been unable to, how they have tried to contact the borrower). FSA will review the listing and may request administrative forbearances on some/all of these borrowers to reduce the delinquency level (which would prevent the borrower from going to Debt Collection). FSA will respond in writing/email to each listing provided by the 25th calendar day of each month to identify any borrower that the servicer should apply a forbearance on. If no response is received from FSA, then no action is needed. All files should be submitted within encrypted zip files with password provided in separate emails.
   12.4.1 Validation - No pre-implementation validation is needed, FSA will review the listing once implemented to ensure the required data is provided.

12.5 The servicer shall provide a monthly report to FSA identifying all borrowers within the Service Member Category by the 10th calendar day of each month. The report shall be provided via email, in Excel format, and follow the below data elements/format. The report shall be provided to EDServicerS@ed.gov and other email addresses as periodically added by FSA. All files should be submitted within encrypted zip files with password provided in separate emails.

| Borrower SSN | Borrower Name | Benefit borrower qualifies for to meet Service Member category | Eligibility start date | Eligibility end date |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

   12.5.1 Validation - No pre-implementation validation is needed, FSA will review the report once implemented to ensure the required data is provided.

13. Servicing Requirements Submission
   The servicer shall submit a complete list of servicing requirements as they exist at the time of submission to the Government every two years. This shall include all requirements, including those unique to the servicer (including but not limited to: PSLF, TEACH, TPD, Image Repository). No proprietary information shall be contained in the requirements. The first requirements submission shall be submitted by November 1, 2014.

### C.2    Attachments/Supplemental Documents

| Number | Title |
|--------|-------|
| A-1 | Additional Servicer—Initial Requirements Document (Version 21.0) |
| A-2 | Additional Servicer—Intermediate Requirements Document (Version 6.0) |
| A-3 | Additional Servicer—Full Requirements Document (Version 6.0) |
| A-4 | Ongoing Allocation Methodology **(Version 2.0)** |
| A-5 | Sample—Ongoing Allocation Metric Calculation **(Version 2.0)** |
| A-6 | Servicing Pricing Definitions **(Version 10.0)** |
| A-7 | Borrower Status Reporting (Retention) |
| A-8 | Quarterly Delinquency Reduction Compensation Report |
| A-9 | Monthly Invoice Report |

Attachment A-4

## Servicer Allocation Metrics

The allocation of ongoing volume will be determined twice each year based on the performance of each servicer in relation to the other servicers awarded. Quarterly results will be compiled for each servicer based on the performance measures listed below. During July (using March and June quarter end results) and January (using September and December quarter end results) of each year an average of the quarterly performance results will be used to determine the ranking of each servicer in each of the five high-level metric categories. By combining each servicer's ranking in all categories, each servicer may be given a percentage of the designated new borrower pool available to be distributed for the upcoming two quarters. Note: A servicer may be given 0% (zero percent) of the designated new borrower pool, at the Government's sole discretion.

Servicers will be informed of their allocation percentage of new volume by August 15, for the allocation effective September 1 to February month end, and February 15, for the allocation effective March 1 to August 31, of each year.

The allocation of ongoing volume will be determined based on the following factors:

For metrics 1, 2, and 3 borrowers in school, in grace, in deferment, in forbearance, in Service Member, and over 360 days delinquent are excluded from both the numerator and denominator in the calculations. Calculations will be rounded to the hundredth of a percent. Borrowers with loans in multiple statuses shall be counted once, in the lowest performing deliverable status. The lowest performing deliverable status is defined as the lowest unit priced deliverable. Note: Metrics will NOT be calculated separately by school type in any metric.

### Allocation Metrics

1 – **Percentage of Borrowers in Current Repayment Status – 30% of the overall performance metric** – This calculation is measured by dividing the number of borrowers in current repayment status who are not delinquent at the end of the quarter by the number of all borrowers in both current and delinquent repayment status at the end of the quarter.

2 – **Percentage of Borrowers more than 90 but less than 271 days delinquent – 15% of the overall performance metric** – This calculation is measured by dividing the number of borrowers who are greater than 90 days delinquent and less than 271 days delinquent at the end of the quarter by the number of borrowers in both current and delinquent repayment status at the end of the quarter.

3 – **Percentage of Defaulted borrowers (over 270 days and less than 361 days delinquent) – 15% of the overall performance metric** – This calculation is measured by dividing the number of borrowers who are greater than 270 days delinquent and less than 361 days delinquent at the end of the quarter by the number of borrowers in both current and delinquent repayment status at the end of the quarter.

4 – **Borrower Survey results – 35% of the overall performance metric** – Surveys will be conducted quarterly of borrowers in each category (In School, In Grace, and In Repayment). The survey will measure borrower satisfaction with the servicer and results will be based on a scale of 0 – 100, with 100 representing a perfect score. FSA or an agent of FSA will conduct surveys. All quarterly scores in each category (In School, In Grace, and In Repayment) will be averaged together to provide the quarterly borrower survey result.

5 – **FSA Employee Survey results – 5% of the overall performance metric** – Surveys will be conducted quarterly of FSA employees. The survey will measure satisfaction with the servicer and results will be based on a scale of 0 – 100, with 100 representing a perfect score. FSA, or an agent of FSA, will conduct surveys.

**Performance Periods**
Quarterly scores will be compiled for each servicer, quarters are defined as Q1 = Oct 1 to Dec 31; Q2 = Jan 1 to Mar 31; Q3 = Apr 1 to Jun 30, and Q4 = Jul 1 to Sep 30 of each year.

All available quarterly scores in each metric will be averaged together during July and January of each year to calculate the final result for each metric.

**Allocation Metric Score Comparison Among Servicers**
The above calculation will result in a set of 5 scores for each servicer, one score in each metric category (1-Percentage of borrowers in current repayment, 2-Percentage of Borrowers more than 90 but less than 271 days delinquent, 3-Percentage of Defaulted borrowers, 4-Borrower Survey, and 5-FSA Employee Survey).

FSA will compare all servicers' scores (per servicer pool - TIVAS and NFPs) in each allocation metric category and provide a ranking for each servicer in that category, with the best score in each category receiving the highest possible value and the worst score receiving the lowest possible value (highest / lowest values will be determined by the number of servicers included in the allocation pool --- Highest score possible will be the total number of servicers selected, lowest score will be 1).

Once a ranking value has been assigned to each servicer in each allocation category, each score will be adjusted based on the 'weight' the metric will hold. All scores for a servicer will then be added together to provide the "Total Score" for that servicer for the 6-month period. Each servicer will have one Total Score for each 6-month period.

**Allocation of New Volume of Federally Held Debt**
Each servicer may be assigned an allocation of new volume by dividing that servicer's total score by the combined total scores of all servicers. The resulting percentage will determine each servicer's percentage of new volume of Federally Held Debt.

The servicer's percentage of new volume will determine the percentage of new borrowers that may be sent to the servicer for servicing (loans for existing borrowers may, to the maximum extent practicable, be sent to the servicer already holding that borrower's other loans).

Attachment Page

**Record Retention**
Each servicer shall maintain a listing of all borrowers within their federal portfolio identifying which borrowers exist in each status at the time of invoicing and/or metric submissions to FSA. This information shall be provided to FSA on demand and shall be maintained throughout the performance period and provided to FSA at the end of the contract period. (See Attachment A-7, Borrower Status Reporting)

*NOTE: If a servicer is out of compliance (for example, but not limited to, financial management or reporting, security, OMB Circular A-123, Legislative Mandates, Program Compliance, etc.), that servicer's new volume may be re-allocated to one or more other servicers. In addition, that servicer's current account volume may be transferred to another servicer, at the non-compliant servicer's expense.*

Attachment Page

## Attachment A-5

**ONGOING ALLOCATION METRIC CALCULATION** - *Assumes 4 servicers*

FINAL SCORE BY ALLOCATION METRIC (based on combined quarterly average score)

| | METRIC | Servicers | | | |
|---|---|---|---|---|---|
| | | Svcr 1 | Svcr 2 | Svcr 3 | Svcr 4 |
| 1 | % of borrowers in current repayment | 88.50% | 81.75% | 83.14% | 91.10% |
| 2 | % of borrowers 91-270 delinquent | 6.10% | 5.00% | 4.15% | 3.76% |
| 3 | % of borrowers 271-360 delinquent | 1.20% | 0.78% | 1.35% | 1.51% |
| 4 | Borrower Survey | 75.78 | 74.78 | 74.67 | 70.15 |
| 5 | FSA Survey | 72.35 | 73.45 | 74.76 | 75.15 |

SERVICER RANKING BY ALLOCATION METRIC

| | METRIC | Servicers | | | |
|---|---|---|---|---|---|
| | | Svcr 1 | Svcr 2 | Svcr 3 | Svcr 4 |
| 1 | % of borrowers in current repayment | 2nd | 4th | 3rd | 1st |
| 2 | % of borrowers 91-270 delinquent | 4th | 3rd | 2nd | 1st |
| 3 | % of borrowers 271-360 delinquent | 2nd | 1st | 3rd | 4th |
| 4 | Borrower Survey | 1st | 2nd | 3rd | 4th |
| 5 | FSA Survey | 4th | 3rd | 2nd | 1st |

SERVICER SCORES BASED ON RANKING (PRIOR to weighting)

| | METRIC | Servicers | | | |
|---|---|---|---|---|---|
| | | Svcr 1 | Svcr 2 | Svcr 3 | Svcr 4 |
| 1 | % of borrowers in current repayment | 3.0 | 1.0 | 2.0 | 4.0 |
| 2 | % of borrowers 91-270 delinquent | 1.0 | 2.0 | 3.0 | 4.0 |
| 3 | % of borrowers 271-360 delinquent | 3.0 | 4.0 | 2.0 | 1.0 |
| 4 | Borrower Survey | 4.0 | 3.0 | 2.0 | 1.0 |
| 5 | FSA Survey | 1.0 | 2.0 | 3.0 | 4.0 |

SERVICER SCORES BASED ON RANKING (WITH weighting)

| | METRIC | Weight | Servicers | | | |
|---|---|---|---|---|---|---|
| | | | Svcr 1 | Svcr 2 | Svcr 3 | Svcr 4 |
| 1 | % of borrowers in current repayment | 30% | 9.0 | 3.0 | 6.0 | 12.0 |
| 2 | % of borrowers 91-270 delinquent | 15% | 1.5 | 3.0 | 4.5 | 6.0 |
| 3 | % of borrowers 271-360 delinquent | 15% | 4.5 | 6.0 | 3.0 | 1.5 |
| 4 | Borrower Survey | 35% | 14 | 10.5 | 7.0 | 3.5 |
| 5 | FSA Survey | 5% | 0.5 | 1 | 1.5 | 2.0 |

TOTAL SCORE BY SERVICER

| | Servicers | | | |
|---|---|---|---|---|
| | Svcr 1 | Svcr 2 | Svcr 3 | Svcr 4 |
| **TOTAL SCORE** | 29.5 | 23.5 | 22.0 | 25.0 |

ALLOCATION EACH SERVICER WILL RECEIVE

| | Total Score | % of new volume Servicer will receive (Total Score/Comb Totals) | New Borr (assumes 4M borr) |
|---|---|---|---|
| Svcr 1 | 29.5 | 29.50% | 1,180,000 |
| Svcr 2 | 23.5 | 23.50% | 940,000 |
| Svcr 3 | 22.0 | 22.00% | 880,000 |
| Svcr 4 | 25.0 | 25.00% | 1,000,000 |
| Comb Totals | 100 | 100.00% | 4,000,000 |

## Attachment A-6-- Servicing Pricing Definitions

| Deliverable | Definition |
|---|---|
| Borrowers in IN-SCHOOL status | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have not separated from school as of the last day of the billing period. |
| Borrowers in IN GRACE status | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school but are not yet due for a payment this month. |
| Borrowers in Deferment | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and would have had a payment due this month, but the payment was replaced with a deferment. |
| Borrowers in Forbearance | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and would have had a payment due this month, but the payment was replaced with a forbearance. |
| Service Members | Number of unique borrowers (SSNs) with balance not equal to $0.00 who are currently:<br>   Using the SCRA 6% interest limit (borrower has one or more loans with rate reduced to 6% or SCRA eligible loans already at or under 6%)<br>   In a Military Service Deferment<br>   In a Post Active Duty Deferment OR<br>   Using for 0% interest while serving in hostile area (borrower has one or more loans with rate reduced to 0%)<br><br>**NOTE - Any borrower with one/more loans meeting eligibility for this category is included in this category (and payment rate) regardless of the delinquency level, or status, of the loan. |
| Borrowers in IN-REPAYMENT status | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school, borrower had a payment due this month, and payment due was not satisfied by a deferment or forbearance. The full payment was satisfied by the borrower making a payment (or the borrower is due $0.00 on an income related pay plan) and the borrower is not more than 5 days delinquent on any amount as of the last day of the billing period.<br>   If a newly originated consolidation is added to servicing system with no payment due in the current month (first payment is prior month) the borrower is included in the current category. |
| Borrowers 6 - 30 days delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and had a payment due this month. The full payment was NOT satisfied by the borrower making a payment and the borrower is delinquent 6 to 30 days as of last day of the billing period. |

Attachment Page

| | |
|---|---|
| Borrowers 31-90 days delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and had a payment due this month.  The full payment was NOT satisfied by the borrower making a payment and the borrower is delinquent 31 to 90 days as of last day of the billing period. |
| Borrowers 91-150 days delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and had a payment due this month.  The full payment was NOT satisfied by the borrower making a payment and the borrower is delinquent 91 to 150 days as of last day of the billing period. |
| Borrowers 151-270 days delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and had a payment due this month.  The full payment was NOT satisfied by the borrower making a payment and the borrower is delinquent 151 to 270 days as of last day of the billing period. |
| Borrowers 271-360 days delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and had a payment due this month.  The full payment was NOT satisfied by the borrower making a payment and the borrower is delinquent 271 to 360 days as of last day of the billing period. |
| Borrowers 360+ days delinquent | Number of unique borrowers (SSNs) with balance not equal to $0.00 who have separated from school and had a payment due this month.  The full payment was NOT satisfied by the borrower making a payment and the borrower is delinquent 361 or more days as of last day of the billing period. |

\* Last day of the billing period = last day of each month

Attachment Page

| Forbearance Examples | Deferment Examples |
|---|---|
| 1) Borrower due 14th monthly - on 1/1 a forbearance is applied to cover Jan 14 - March 14.  Borrower will be due for the April payment.<br>  Jan, Feb, Mar - billed as Forbearance<br>  April - billed as current if borrower makes payment or 6-30 if payment is not made. | 1)  Borrower due 21th monthly - on 1/10 a deferment is applied covering Jan 15 - July 25.  Borrower will be due for the Aug payment.<br>  Jan, Feb, Mar, Apr, May, Jun, Jul - billed as Deferment<br>  Aug - billed as current if borrower makes payment or 6-30 if payment is not made. |
| 2)  Borrower due 14th monthly - Borrower does not make Jan 14 payment, but request a one-month forbearance on Jan 28 to cover the Jan 14 payment.  Borrower will be due for Feb payment.<br>  Jan - billed as Forbearance | 2)  Borrower due 14th monthly - Borrower does not make Jan, Feb, or March payments (goes 75 days delinquent as of March 30), but on April 1st requests an unemployment deferment that covers January 10 to April 30.  Borrower will be due for May payment.<br>  Jan - billed as 6-30 delinquent (borrower was delinquent as of end of Jan)<br>  Feb & Mar- billed as 31-90 delinquent( borrower was delinquent as of end of Feb/Mar)<br>  Apr - billed as Deferment<br>  May - billed as current if borrower makes payment or 6-30 if payment is not made. |

| Current/Delinquent Examples | |
|---|---|
| 1)  Borrower due 14th monthly for $225.00/month - borrower pays $225 for Jan payment on 1/13.  Borrower pays $225.00 on 2/20 for February payment.   Jan & Feb - billed as current.  Borrower satisfied due amount for monthly payment prior to last day of the month. | 2)  Borrower due 14th monthly for $225.00/month - Borrower pays $200.00 on 1/13.  Borrower pays $250.00 on 2/14.    Jan - billed as 6-30 delinquent (payment was not fully satisfied as of end of month, still owed $25)   Feb - billed as current.  Total due from borrower ($250.00) has been satisfied by borrower payment. |
| 3)  Borrower due 21st monthly for $0.00/month - Borrower's on income plan with payment calculated to be $0.  Borrower makes no payment in Jan or Feb and makes a $5.00 payment in March.<br>  Jan, Feb, & Mar - billed as current.  Borrower is not in forbearance or deferment and is due a payment calculated as $0 so the borrower has satisfied payment even if no payment is made. | 4)  Borrower due 28th monthly for $175.00/month - Borrower pays nothing in January but borrower pays $170.00 on 2/3, then nothing for rest of Feb.<br>  Jan - billed as current (payment was not made in Jan, but borrower was not more than 5 days delinquent)<br>  Feb - billed as current.  (payment was not made to cover 2/28 due payment, but borrower was not more than 5 days delinquent) |

Attachment Page

| Service Member Examples | |
|---|---|
| 1) Borrower meets eligibility for maximum 6% interest rate - but loan is already at 4.25%.<br><br>Borrower is included in the service member category. | 2) Borrower has multiple loans and is eligible for SCRA maximum 6% rate - but borrower is 7 months delinquent.<br><br>Borrower is included in the service member category. |
| 3) Borrower has some loans eligible for 0% rate but other loans that are not eligible.<br><br>Borrower is included in the service member category. (Normally borrowers are billed in the lowest category but if ANY loan is eligible for the service member category, the borrower is included in this category). | |

---

**Retention of Borrower listings**

Each servicer shall maintain a listing of all borrowers within their federal portfolio identifying which borrowers exist in each status at the time of invoicing and/or metric submissions to FSA. This information shall be provided to FSA on demand and shall be maintained throughout the performance period and provided to FSA at the end of the contract period. (See Attachment A-7, Borrower Status Reporting)

**Validation to be provided with Invoices & Metrics submission**
Each servicer shall provide sampling validation with the submission of each invoice and/or metrics submission to FSA.

**Sampling Instructions:**
Servicer shall randomly select 5 borrowers from each status category each month. If there are less than 5 borrowers in a category, select all borrowers in the category.
1. Servicer shall provide screen shots of the servicing system and narrative to support showing the status of the borrower's loan matches the status the loan is being invoiced at. Samples should be provided in Word or PDF format.
2. Servicer shall include a listing of all loans on file for the borrower and the current status of each loan – but only needs to include screen shots narrative for one of the loans that the loan is being billed at.
3. Servicer shall provide the samples at the time of invoicing and/or metric submissions to FSA.
4. Servicer shall submit the sample files EdServicerS@ed.gov and other email addresses as updated periodically by FSA. All files should be submitted within encrypted zip files with password provided in separate emails.
5. Servicer shall provide a contact (name/email/phone) that FSA may contact if additional samples are needed (FSA may also select borrowers that require sample documentation similar to above).

**Attachment Page**

NOTES:

1. Common pricing shall apply regardless of program (i.e. Direct Loan, Federal Family Education Loan) or volume serviced, unless otherwise noted in the contract.
2. Borrowers in multiple statuses shall be billed once, in the lowest performing deliverable status. The lowest performing deliverable status is defined as the lowest unit priced deliverable.
3. Borrowers pending discharge, which include, but are not limited to: conditional disability, death, or bankruptcy, shall be, for billing purposes, counted in the deliverable status at the time of the discharge request.
4. "The last day of the billing period" is defined as the last day of the month.
5. The revised annual pricing period shall begin on the effective date of modification 0085.

## Attachment A-7—Borrower Status Reporting (Retention)

**Report Format**

50 character length

| Field # | Length | Start | End | Description | Valid Values/Format |
|---|---|---|---|---|---|
| 1 | 8 | 1 | 8 | Counter - starts at 00000001 for each file. Right justify, front filled with zeros. (allows for up to 99M per category) | 00000001 to 99999999 |
| 2 | 1 | 9 | 9 | Filler | Space filled |
| 3 | 6 | 10 | 15 | Servicer 6 digit Code - for example (Great Lakes = 700581) | 700XXX |
| 4 | 1 | 16 | 16 | Filler | Space filled |
| 5 | 9 | 17 | 25 | Borrower SSN | XXXXXXXXX (numeric) |
| 6 | 1 | 26 | 26 | Filler | Space filled |
| 7 | 2 | 27 | 28 | Pricing Category - 2 digit code representing the category | 01 Borrowers in IN-SCHOOL status<br>02 Borrowers in IN GRACE status<br>03 Borrowers in Deferment<br>04 Borrowers in Forbearance<br>05 Service Members<br>06 Borrowers Current<br>07 Borrowers 6 - 30 days delinquent<br>08 Borrowers 31-90 days delinquent<br>09 Borrowers 91-150 days delinquent<br>10 Borrowers 151-270 days delinquent<br>11 Borrowers 271-360 days delinquent<br>12 Borrowers 360+ days delinquent |
| 8 | 1 | 29 | 29 | Filler | Space filled |
| 9 | 10 | 30 | 39 | Borrower Principal Outstanding of ALL borrower's loans | 9999999.99 - 7 digits, decimal point, 2 digits |
| 10 | 1 | 40 | 40 | Filler | Space filled |
| 11 | 10 | 41 | 50 | Borrower Interest Outstanding of ALL borrower's loans | 9999999.99 - 7 digits, decimal point, 2 digits |
| 12 | 1 | 51 | 51 | Filler | Space filled |
| 13 | 8 | 52 | 59 | Month end date this report represents | MMDDCCYY |

Servicer shall create 1 text file for each borrower status pricing category (format above).

Servicer shall create and store reports each month (not created on demand from query).

Servicer shall create report to be a "point in time" report showing the borrower status at the end of the month.

Servicer shall include each borrower in only ONE report per month - matching the status the borrower was billed at.

**Attachment Page**

Servicer shall store reports in text format (to allow for uploading by FSA into other software if desired).

Servicer shall provide the reports to FSA on demand.

Servicer shall ensure the volume of borrowers in each category MUST match servicer invoicing (if corrections to invoicing made, report should also be corrected).

Servicer shall retain all reports for the duration of the contracts and provide to FSA at end of contract.

Servicer shall provide FSA with a contact (name/email/phone) that can be contacted to request report delivery.

Servicer shall create report with a sort by SSN (ascending).

Attachment Page

## Attachment A-8 — Quarterly Delinquency Reduction Compensation Report

| | [Servicer Name] - Quarterly Delinquency Resolution Compensation Report Quarter Ending – (Month, Year) | | | |
|---|---|---|---|---|
| Award Fee | Description | Percentage | NUMERATOR: | DENOMINATOR: |
| 1 | Delinquency Percentage - Current Quarter | % | | |

| Description | Percentage | NUMERATOR: | DENOMINATOR: |
|---|---|---|---|
| Delinquency Percentage - Prior Quarter | % | | |

Results should be rounded to the 100th of a percent (i.e.  .1534677 = 15.35%, .02465123 = 2.47%)

Qualification for Delinquency Resolution Compensation (As submitted by Servicer)

| | Description | Qualifies (y/n) |
|---|---|---|
| Level 1 | Delinquency Percentage for Quarter End of less than 23.0%. | |
| Level 2 | Delinquency Percentage for Quarter End of less than 23.0% (earns $200,000) AND Servicer improves upon prior Quarter End Delinquency Percentage | |
| Level 3 | Delinquency Percentage for Quarter End of less than 21.0% AND Servicer improves upon prior Quarter End Delinquency Percentage | |

This report shall be submitted by each servicer for each quarter ending September, December, March and June of each year.

This report shall be submitted to EDServicerS@ed.gov and other email addresses as updated periodically by FSA by the 15th calendar day of the month following quarter end (other addresses may be added by FSA).

The report shall be submitted with a subject line of "Quarterly Delinquency Reduction Report - 700XXX - MMCCYY" - where 700XXX = servicer ID and MMCCYY = quarter end Month & Year

 (i.e.  Great Lakes for quarter end December 2014 subject would be *Quarterly Delinquency Reduction Report - 700581 – 122014*)  This report shall also be submitted to the COR/CO along with the request for evaluation of Quarterly Delinquency Reduction Compensation qualification.

**Notes about Delinquency Reduction Compensation Calculations**
  Volumes used in the above calculation should be the same volumes, by category, that have been submitted with the monthly invoice.

**Delinquency Resolution Calculation (higher % results = better metric result)**
  **Borrower Delinquency Percentage**
  Total count of borrowers in the 31-360 days delinquent statuses
  *Divided by*
  Total count of borrowers in In Repayment status and borrowers in the 31-360 days delinquent statuses

In school, in grace, service members, deferment, forbearance, and  >360 delinquent borrowers excluded from numerator & denominator of calculation

**Attachment Page**

**Attachment A-9 — Monthly Invoice Report**

Servicers shall submit the following report with their monthly invoices in Microsoft Excel.

Contract Number     _____
Vendor Name         _____
Invoice Start Date  MM/DD/YYYY
Invoice End Date    MM/DD/YYYY

| Status | Volume |
|---|---|
| In School | |
| In Grace | |
| In Repayment | |
| Service Member | |
| Deferment | |
| Forbearance | |
| Delinquent 6-30 Days | |
| Delinquent 31-90 Days | |
| Delinquent 91-150 Days | |
| Delinquent 151-270 Days | |
| Delinquent 271-360 Days | |
| Delinquent > 360 Days | |
| Total | |

| SCHEDULE Continued | | | | | |
|---|---|---|---|---|---|
| ITEM NO. | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE $ | AMOUNT $ |
| | Contracting Officer: Soo Kang, ████████ ████████ | | | | |
| | Primary Contracting Officer Representative: Patrice Washington, ████████ ████████ | | | | |
| | Alternate Contracting Officer Representative(s): Tammy Connelly, ████████ ████████ | | | | |
| | Lynn Smith ████████ | | | | |
| | Primary Technical Point of Contact: None | | | | |
| | Alternate Technical Point of Contact(s): None | | | | |

Exhibit F

(Jill Ballard's Letter to Sallie Mae)

Exhibit F



Jill Ballard
P.O. Box 722312
San Diego, CA 92172-2312
*Account #:* ███*319-1*
February 11, 2014

Sallie Mae (correspondence address)
P.O. Box 9500
Wilkes-Barre, PA 18773-9500

To Whom Concerned:

I am submitting a second Income-Based Repayment (IBR) plan request application with another copy of my 2012 U.S. Individual Income Tax Return. I already sent these materials in to you back in November 2013. What happened? And yes, I sent separate applications to both Sallie Mae and Sallie Mae Department of Education Loan Services. If you need a copy of my 2013 U.S. Individual Income Tax Return, let me know, I will be preparing and filing it next month.

Even though I earn low income, I am going ahead and paying the bill of $902.55 to avoid any extra charges. I am sending it to the Borrower Payment Address at P.O. Box 9533. If you do not receive this payment in a timely manner, call me at ███████

I hope you have received this application and are processing it in a timely manner.


Sincerely,



Jill Ballard

Exhibit G

(Rebecca Varno's IDR Plan Request)


Exhibit G



**IDR**

# INCOME-DRIVEN REPAYMENT (IDR) PLAN REQUEST

**For the Revised Pay As You Earn (REPAYE), Pay As You Earn (PAYE), Income-Based Repayment (IBR), and Income-Contingent Repayment (ICR) plans under the William D. Ford Federal Direct Loan (Direct Loan) Program and Federal Family Education Loan (FFEL) Programs**

OMB No. 1845-0102
Form Approved
Exp. Date 10/31/2018

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or on any accompanying document is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## SECTION 1: BORROWER INFORMATION

Please enter or correct the following information.

☐ **Check this box if any of your information has changed.**

| | |
|---|---|
| SSN | ■■■6079 |
| Name | Rebecca Oldenburgh |
| Address | 12 Wagon Wheel Lane |
| City | Schenectady   State NY   Zip Code 12302 |
| Telephone - Primary | ■■■■■■ |
| Telephone - Alternate | |
| Email (Optional) | ■■■■■■■ |

## SECTION 2: REPAYMENT PLAN OR RECERTIFICATION REQUEST

It's faster and easier to complete this form online at StudentLoans.gov. You can learn more at StudentAid.gov/IDR and by reading Sections 9 and 10. It's simple to get repayment estimates at StudentAid.gov/repayment-estimator. If you need help with this form, contact your loan holder or servicer for free assistance. You can find out who your loan holder or servicer is at StudentAid.gov/login. You may have to pay income tax on any loan amount forgiven under an income-driven plan.

**1. Select the reason you are submitting this form (Check only one):**

☐ I want to enter an income-driven plan - Continue to Item 2.

☑ I am submitting documentation for the annual recertification of my income-driven payment - Skip to Item 5.

☐ I am submitting documentation early to have my income-driven payment recalculated immediately - Skip to Item 5.

☐ I want to change to a different income-driven plan - Continue to Item 2.

**2. Choose a plan and then continue to Item 3.**

☐ (Recommended) I want the income-driven repayment plan with the lowest monthly payment.

☐ REPAYE   ☐ IBR

☐ PAYE   ☐ ICR

**3. Do you have multiple loan holders or servicers?**

☐ Yes - Submit a request to each holder or servicer. Continue to Item 4.

☐ No - Continue to item 4.

**4. Are you currently in deferment or forbearance?**
After answering, continue to Item 5.

☐ No.

☐ Yes, but I want to start making payments under my plan immediately.

☐ Yes, and I do not want to start repaying my loans until the deferment or forbearance ends.

Note: If you have FFEL Program loans, they are only eligible for IBR. However, you can consolidate your loans at StudentLoans.gov to access more beneficial income-driven repayment plans.

## SECTION 3: FAMILY SIZE INFORMATION

**5. How many children, including unborn children, are in your family and receive more than half of their support from you?**   2

**6. How many other people, excluding your spouse and children, live with you and receive more than half of their support from you?**   0

Note: A definition of "family size" is provided in Section 9. Do not enter a value for you or your spouse. Those values are automatically included in your family size, if appropriate.

**Borrower Name**   Rebecca Oldenburgh                    **Borrower SSN**   ███ 6079

## SECTION 4A: MARITAL STATUS INFORMATION

**7. What is your marital status?**
- ☐ Single - Skip to Item 11.
- ☑ Married - Continue to Item 8.
- ☐ Married, but separated - You will be treated as single. Skip to Item 11.
- ☐ Married, but cannot reasonably access my spouse's income information - You will be treated as single. Skip to Item 11.

**8. Does your spouse have federal student loans?**
- ☑ Yes - Continue to Item 9.
- ☐ No - Skip to Item 10.

**9. Provide the following information about your spouse and then continue to Item 10:**

a.   **Spouse's SSN**      ███ 5365

b.   **Spouse's Name**   Andrew Varno

c.   **Spouse's Date of Birth**   06/11/███

**10. When you filed your last federal income tax return, did you file jointly with your spouse?**
- ☐ Yes - Continue to Item 13.
- ☑ No - Skip to Item 17.

## SECTION 4B: INCOME INFORMATION FOR SINGLE BORROWERS AND MARRIED BORROWERS TREATED AS SINGLE

**11. Has your income significantly changed since you filed your last federal income tax return?**
For example, have you lost your job, experienced a drop in income, or gotten divorced, or did you most recently file a joint return with your spouse, but you have since become separated or lost the ability to access your spouse's income information?
- ☐ Yes - Continue to Item 12.
- ☐ No - Provide your most recent federal income tax return or transcript. Skip to Section 6.
- ☐ I haven't filed a federal income tax return in the last two years - Continue to Item 12.

**12. Do you currently have taxable income?**
Check "No" if you do not have any income or receive only untaxed income.
- ☐ Yes - Provide documentation of your income as instructed in Section 5. Skip to that Section.
- ☐ No - You are not required to provide documentation of your income. Skip to Section 6.

Note: Remember, any person who knowingly makes a false statement or misrepresentation on this form can be subject to penalties including fines, imprisonment, or both.

## SECTION 4C: INCOME INFORMATION FOR MARRIED BORROWERS FILING JOINTLY

**13. Has your income significantly changed since you filed your last federal income tax return?**
For example, have you lost your job or experienced a drop in income?
- ☐ Yes - Skip to Item 15.
- ☐ No - Continue to Item 14.
- ☐ We haven't filed a federal income tax return in the last two years - Skip to Item 15.

**14. Has your spouse's income significantly changed since your spouse filed his or her last federal income tax return?**
For example, has your spouse lost his or her job or experienced a drop in income?
- ☐ Yes - Continue to Item 15.
- ☐ No - Provide your and your spouse's most recent federal income tax return or transcript. Skip to Section 6.

**15. Do you currently have taxable income?**
Check "No" if you have no taxable income or receive only untaxed income.
- ☐ Yes - You must provide documentation of your income according to the instructions in Section 5. Continue to Item 16.
- ☐ No - You are not required to provide documentation of your income. Continue to Item 16.

**16. Does your spouse currently have taxable income?**
Check "No" if your spouse has no taxable income or receives only untaxed income.
- ☐ Yes - Skip to Section 5 and provide documentation of your spouse's income as instructed in that section.
- ☐ No - You are not required to provide documentation of your spouse's income. If you selected "Yes" to Item 15, skip to Section 5 and document your income. If you selected "No" to Item 15, skip to Section 6.

Note: Remember, any person who knowingly makes a false statement or misrepresentation on this form can be subject to penalties including fines, imprisonment, or both.

**Borrower Name**   Rebecca Oldenburgh          **Borrower SSN**   ▮▮▮▮6079

## SECTION 4D: INCOME INFORMATION FOR MARRIED BORROWERS FILING SEPARATELY

**17. Has your income significantly changed since you filed your last federal income tax return?**

For example, have you lost your job or experienced a drop in income?

- [✓] Yes - Continue to Item 18.
- [ ] No - Provide your most recent federal income tax return or transcript. Skip to Item 19.
- [ ] I haven't filed a federal income tax return in the past two years - Continue to Item 18.

**18. Do you currently have taxable income?**

Check "No" if you have no taxable income or receive only untaxed income. After answering, continue to Item 19.

- [✓] Yes - You must provide documentation of your income as instructed in Section 5.
- [ ] No.

> Note: Remember, any person who knowingly makes a false statement or misrepresentation on this form can be subject to penalties including fines, imprisonment, or both.

**19. Has your spouse's income significantly changed since your spouse filed his or her last federal income tax return?**

For example, has your spouse lost a job or experienced a drop in income?

- [✓] Yes - Continue to Item 20.
- [ ] No - Provide your spouse's most recent federal income tax return or transcript. This information will only be used if you are on or placed on the REPAYE Plan. Skip to Item 20.
- [ ] My spouse hasn't filed a federal income tax return in the past two years - Continue to Item 20.

**20. Does your spouse currently have taxable income?**

Check "No" if your spouse has no taxable income or receives only untaxed income.

- [✓] Yes - Skip to Section 5 and provide documentation of your spouse's income as instructed in that section. This information will only be used if you are on or placed on the REPAYE Plan.
- [ ] No - You are not required to provide documentation of your spouse's income. If you selected "Yes" to Item 18, skip to Section 5 and document your income. If you selected "No" to Item 18, skip to Section 6.

## SECTION 5: INSTRUCTIONS FOR DOCUMENTING CURRENT INCOME

You only need to follow these instructions if, based on your answers in Section 4, you and your spouse (if applicable) were instructed to provide documentation of your current income instead of a tax return or tax transcript.

**This is the income you must document:**

- You must provide documentation of all taxable income you and your spouse (if applicable) currently receive.

- Taxable income includes, for example, income from employment, unemployment income, dividend income, interest income, tips, and alimony.

- Do not provide documentation of untaxed income such as Supplemental Security Income, child support, or federal or state public assistance.

**This is how you document your income:**

- Documentation will usually include a pay stub or letter from your employer listing your gross pay.

- Write on your documentation how often you receive the income, for example, "twice per month" or "every other week."

- You must provide at least one piece of documentation for each source of taxable income.

- If documentation is not available or you want to explain your income, attach a signed statement explaining each source of income and giving the name and the address of each source of income.

- **The date on any supporting documentation you provide must be no older than 90 days from the date you sign this form.**

- Copies of documentation are acceptable.

**After gathering the appropriate documentation, continue to Section 6.**

**Borrower Name**   Rebecca Oldenburgh                    **Borrower SSN** ███ 6079

## SECTION 6: BORROWER REQUESTS, UNDERSTANDINGS, AUTHORIZATION, AND CERTIFICATION

If I am requesting an income-driven repayment plan or seeking to change income-driven repayment plans, **I request:**

- That my loan holder place me on the plan I selected in Section 2 to repay my eligible Direct Loan or FFEL Program loans held by the holder to which I submit this form.
- If I do not qualify for the plan or plans I requested, or did not make a selection in Item 2, that my loan holder place me on the plan with the lowest monthly payment amount.
- If I selected more than one plan, that my loan holder place me on the plan with the lowest monthly payment amount from the plans that I requested.
- If more than one of the plans that I selected provides the same initial payment amount, or if my loan holder is determining which of the income-driven plans I qualify for, that my loan holder use the following order in choosing my plan: REPAYE (if my repayment period is 20 years), PAYE, REPAYE (if my repayment period is 25 years), IBR, and then ICR.

If I am not currently on an income-driven repayment plan, but I did not complete Item 1 or I incorrectly indicated in Item 1 that I was already in an income-driven repayment plan, **I request** that my loan holder treat my request as if I had indicated in Item 1 that I wanted to enter an income-driven repayment plan.

If I am currently repaying my Direct Loans under the IBR plan and I am requesting a change to a different income-driven plan, **I request** a one-month reduced-payment forbearance in the amount of my current monthly IBR payment or $5, whichever is greater (unless I request another amount below or I decline the forbearance), to help me move from IBR to the new income-driven plan I requested.

☐   **I request** a one-month reduced-payment forbearance in the amount of: _____ (must be at least $5).

**I understand** that:

- If I do not provide my loan holder with this completed form and any other required documentation, I will not be placed on the plan that I requested or my request for recertification or recalculation will not be processed.
- I may choose a different repayment plan for any loans that are not eligible for income-driven repayment.
- If I requested a reduced-payment forbearance of less than $5 above, my loan holder will grant my forbearance request in the amount of $5.
- If I am requesting a change from the IBR Plan to a different income-driven repayment plan, I may decline the one-month reduced payment forbearance described above by contacting my loan holder. If I decline the forbearance, I will be placed on the Standard Repayment Plan and must make one monthly payment under that plan before I can be placed on a different repayment plan.
- If I am requesting the ICR plan, my initial payment amount will be the amount of interest that accrues each month on my loan until my loan holder receives the income documentation needed to calculate my payment amount. If I cannot afford the initial payment amount, I may request a forbearance by contacting my loan holder.
- If I am married and I request the ICR plan, my spouse and I have the option of repaying our Direct Loans jointly under this plan. My loan servicer can provide me with information about this option.
- If I have FFEL Program loans, my spouse may be required to give my loan holder access to his or her loan information in the National Student Loan Data System (NSLDS). If this applies to me, my loan holder will contact me with instructions.
- My loan holder may grant me a forbearance while processing my application or to cover any period of delinquency that exists when I submit my application.

**I authorize** the loan holder to which I submit this request (and its agents or contractors) to contact me regarding my request or my loans, including the repayment of my loans, at any number that I provide on this form or any future number that I provide for my cellular telephone or other wireless device using automated dialing equipment or artificial or prerecorded voice or text messages.

**I certify** that all of the information I have provided on this form and in any accompanying documentation is true, complete, and correct to the best of my knowledge and belief.

**Borrower's Signature** _____   **Date** 04/18/2017

**Spouse's Signature** _____   **Date** 04/18/2017

**If you are married, your spouse is required to sign this form unless you are separated from your spouse or you're unable to reasonably access your spouse's income information.**

## SECTION 7: WHERE TO SEND THE COMPLETED FORM

| Return the completed form and any required documentation to: (If no address is shown, return to your loan holder.) | If you need help completing this form call: (If no phone number is shown, call your loan holder.) |
|---|---|
| Navient - Department of Education Loan Servicing<br>PO Box 9760<br>Wilkes-Barre, PA 18773-9760 | (800) 722-1300 |

## SECTION 8: INSTRUCTIONS FOR COMPLETING THE FORM

Type or print using dark ink. Enter dates as month-day-year (mm-dd-yyyy). Example: March 14, 2015 = 03-14-2015. Include your name and account number on any documentation that you are required to submit with this form. **Return the completed form and any required documentation to the address shown in Section 7.**

## SECTION 9: DEFINITIONS

### COMMON DEFINITIONS FOR ALL PLANS:

**Capitalization** is the addition of unpaid interest to the principal balance of your loan. This will increase the principal balance and the total cost of your loan.

A **deferment** is a period during which you are entitled to postpone repayment of your loans. Interest is not generally charged to you during a deferment on your subsidized loans. Interest is always charged to you during a deferment on your unsubsidized loans.

The **William D. Ford Federal Direct Loan (Direct Loan) Program** includes Direct Subsidized Loans, Direct Unsubsidized Loans, Direct PLUS Loans, and Direct Consolidation Loans.

**Family size** always includes you and your children (including unborn children who will be born during the year for which you certify your family size), if the children will receive more than half their support from you.

For the PAYE, IBR, and ICR Plans, family size always includes your spouse. For the REPAYE plan, family size includes your spouse unless your spouse's income is excluded from the calculation of your payment amount.

For all plans, family size also includes other people only if they live with you now, receive more than half their support from you now, and will continue to receive this support for the year that you certify your family size. Support includes money, gifts, loans, housing, food, clothes, car, medical and dental care, and payment of college costs. Your family size may be different from the number of exemptions you claim for tax purposes.

The **Federal Family Education Loan (FFEL) Program** includes Federal Stafford Loans (both subsidized and unsubsidized), Federal PLUS Loans, Federal Consolidation Loans, and Federal Supplemental Loans for Students (SLS).

A **forbearance** is a period during which you are permitted to postpone making payments temporarily, allowed an extension of time for making payments, or temporarily allowed to make smaller payments than scheduled.

The **holder** of your Direct Loans is the U.S. Department of Education (the Department). The holder of your FFEL Program loans may be a lender, secondary market, guaranty agency, or the Department. Your loan holder may use a servicer to handle billing, payment, repayment options, and other communications. References to "your loan holder" on this form mean either your loan holder or your servicer.

A **partial financial hardship** is an eligibility requirement for the PAYE and IBR plans. You have a partial financial hardship when the annual amount due on all of your eligible loans (and, if you are required to provide documentation of your spouse's income, the annual amount due on your spouse's eligible loans) exceeds what you would pay under PAYE or IBR.

The annual amount due is calculated based on the greater of **(1)** the total amount owed on eligible loans at the time those loans initially entered repayment, or **(2)** the total amount owed on eligible loans at the time you initially request the PAYE or IBR plan. The annual amount due is calculated using a standard repayment plan with a 10-year repayment period, regardless of loan type. When determining whether you have a partial financial hardship for the PAYE plan, the Department will include any FFEL Program loans that you have into account even though those loans are not eligible to be repaid under the PAYE plan, except for: **(1)** a FFEL Program loan that is in default, **(2)** a Federal PLUS Loan made to a parent borrower, or **(3)** a Federal Consolidation Loan that repaid a Federal or Direct PLUS Loan made to a parent borrower.

The **poverty guideline amount** is the figure for your state and family size from the poverty guidelines published annually by the U.S. Department of Health and Human Services (HHS). If you are not a resident of a state identified in the poverty guidelines, your poverty guideline amount is the amount used for the 48 contiguous states.

The **standard repayment plan** has a fixed monthly payment amount over a repayment period of up to 10 years for loans other than Direct or Federal Consolidation Loans, or up to 30 years for Direct and Federal Consolidation Loans.

## SECTION 9: DEFINITIONS (CONTINUED)

<u>DEFINITIONS FOR THE REPAYE PLAN:</u>

The **Revised Pay As You Earn (REPAYE) plan** is a repayment plan with monthly payments that are generally equal to 10% of your discretionary income, divided by 12.

**Discretionary income for the REPAYE plan** is the amount by which your income exceeds 150% of the poverty guideline amount.

**Eligible loans for the REPAYE plan** are Direct Loan Program loans other than: **(1)** a loan that is in default, **(2)** a Direct PLUS Loan made to a parent borrower, or **(3)** a Direct Consolidation Loan that repaid a Direct or Federal PLUS Loan made to a parent borrower.

<u>DEFINITIONS FOR THE PAYE PLAN:</u>

The **Pay As You Earn (PAYE) plan** is a repayment plan with monthly payments that are generally equal to 10% of your discretionary income, divided by 12.

**Discretionary income for the PAYE plan** is the amount by which your income exceeds 150% of the poverty guideline amount.

**Eligible loans for the PAYE plan** are Direct Loan Program loans other than: **(1)** a loan that is in default, **(2)** a Direct PLUS Loan made to a parent borrower, or **(3)** a Direct Consolidation Loan that repaid a Direct or Federal PLUS Loan made to a parent borrower.

You are a **new borrower for the PAYE plan** if: **(1)** you have no outstanding balance on a Direct Loan or FFEL Program loan as of October 1, 2007 or have no outstanding balance on a Direct Loan or FFEL Program loan when you obtain a new loan on or after October 1, 2007, and **(2)** you receive a disbursement of an eligible loan on or after October 1, 2011, or you receive a Direct Consolidation Loan based on an application received on or after October 1, 2011.

<u>DEFINITIONS FOR THE IBR PLAN:</u>

The **Income-Based Repayment (IBR) plan** is a repayment plan with monthly payments that are generally equal to 15% (10% if you are a new borrower) of your discretionary income, divided by 12.

**Discretionary income for the IBR plan** is the amount by which your adjusted gross income exceeds 150% of the poverty guideline amount.

**Eligible loans for the IBR plan** are Direct Loan and FFEL Program loans other than: **(1)** a loan that is in default, **(2)** a Direct or Federal PLUS Loan made to a parent borrower, or **(3)** a Direct or Federal Consolidation Loan that repaid a Direct or Federal PLUS Loan made to a parent borrower.

You are a **new borrower for the IBR plan** if **(1)** you have no outstanding balance on a Direct Loan or FFEL Program loan as of July 1, 2014 or **(2)** have no outstanding balance on a Direct Loan or FFEL Program loan when you obtain a new loan on or after July 1, 2014.

<u>DEFINITIONS FOR THE ICR PLAN:</u>

The **Income-Contingent Repayment (ICR) plan** is a repayment plan with monthly payments that are the lesser of **(1)** what you would pay on a repayment plan with a fixed monthly payment over 12 years, adjusted based on your income or **(2)** 20% of your discretionary income divided by 12.

**Discretionary income for the ICR plan** is the amount by which your adjusted gross income exceeds the poverty guideline amount for your state of residence and family size.

**Eligible loans for the ICR plan** are Direct Loan Program loans other than: **(1)** a loan that is in default, **(2)** a Direct PLUS Loan made to a parent borrower, or **(3)** a Direct PLUS Consolidation Loan (based on an application received prior to July 1, 2006 that repaid Direct or Federal PLUS Loans made to a parent borrower). However, a Direct Consolidation Loan made based on an application received on or after July 1, 2006 that repaid a Direct or Federal PLUS Loan made to a parent borrower is eligible for the ICR plan.

## SECTION 10: INCOME-DRIVEN PLAN ELIGIBILITY REQUIREMENTS AND GENERAL INFORMATION

**Table 1. Income-Driven Plan Eligibility Requirements and General Information**

| Plan Feature | REPAYE | PAYE | IBR | ICR |
|---|---|---|---|---|
| **Payment Amount** | Generally, 10% of discretionary income. | Generally, 10% of discretionary income. | Never more than 15% of discretionary income. | Lesser of 20% of discretionary income or what you would pay under a repayment plan with fixed payments over 12 years, adjusted based on your income. |
| **Cap on Payment Amount** | None. Your payment may exceed what you would have paid under the 10-year standard repayment plan. | What you would have paid under the 10-year standard repayment plan when you entered the plan. | What you would have paid under the 10-year standard repayment plan when you entered the plan. | None. Your payment may exceed what you would have paid under the 10-year standard repayment plan. |
| **Married Borrowers** | Your payment will be based on the combined income and loan debt of you and your spouse regardless of whether you file a joint or separate Federal income tax return, unless you and your spouse **(1)** are separated or **(2)** you are unable to reasonably access your spouse's income information. | Your payment will be based on the combined income and loan debt of you and your spouse only if you file a joint Federal income tax return, unless you and your spouse **(1)** are separated or **(2)** you are unable to reasonably access your spouse's income information. | Your payment will be based on the combined income and loan debt of you and your spouse only if you file a joint Federal income tax return, unless you and your spouse **(1)** are separated or **(2)** you are unable to reasonably access your spouse's income information. | Your payment will be based on the combined income of you and your spouse only if you file a joint Federal income tax return, unless you and your spouse **(1)** are separated or **(2)** you are unable to reasonably access your spouse's income information. |
| **Borrower Responsibility for Interest** | On subsidized loans, you do not have to pay the difference between your monthly payment amount and the interest that accrues for your first 3 consecutive years in the plan. On subsidized loans after this period and on unsubsidized loans during all periods, you only have to pay half the difference between your monthly payment amount and the interest that accrues. | On subsidized loans, you do not have to pay the difference between your monthly payment amount and the interest that accrues for your first 3 consecutive years in the plan. | On subsidized loans, you do not have to pay the difference between your monthly payment amount and the interest that accrues for your first 3 consecutive years of in the plan. | You are responsible for paying all of the interest that accrues. |
| **Forgiveness Period** | If you only have eligible loans that you received for undergraduate study, any remaining balance is forgiven after 20 years of qualifying repayment. If you have any eligible loans that you received for graduate or professional study, any remaining balance is forgiven after 25 years of qualifying repayment on all of your loans. Forgiveness may be taxable. | Any remaining balance is forgiven after 20 years of qualifying repayment, and may be taxable. | Any remaining balance is forgiven after no more than 25 years of qualifying repayment, and may be taxable. | Any remaining balance is forgiven after 25 years of qualifying repayment, and may be taxable |

**SECTION 10: INCOME-DRIVEN PLAN ELIGIBILITY REQUIREMENTS AND GENERAL INFORMATION**

| Plan Feature | REPAYE | PAYE | IBR | ICR |
|---|---|---|---|---|
| **Income Eligibility** | None. | You must have a "partial financial hardship". | You must have a "partial financial hardship". | None. |
| **Borrower Eligibility** | You must be a Direct Loan borrower with eligible loans. | You must be a "new borrower" with eligible Direct Loans. | You must be a Direct Loan or FFEL borrower with eligible loans. | You must be a Direct Loan borrower with eligible loans. |
| **Recertify Income and Family Size** | Annually. Failure to submit documentation by the deadline will result in capitalization of interest and increasing your payment to ensure that your loan is paid in full over the lesser of 10 or the remainder of 20 or 25 years. | Annually. Failure to submit documentation by the deadline may result in the capitalization of interest and will increase the payment amount to the 10-year standard payment amount. | Annually. Failure to submit documentation by the deadline will result in the capitalization of interest and increase in payment amount to the 10-year standard payment amount. | Annually. Failure to submit documentation by the deadline will result in the recalculation of your payment amount to be the 10-year standard payment amount. |
| **Leaving the Plan** | At any time, you may change to any other repayment plan for which you are eligible. | At any time, you may change to any other repayment plan for which you are eligible. | If you want to leave the plan, you will be placed on the standard repayment plan. You may not change plans until you have made one payment under that plan or a reduced-payment forbearance. | At any time, you may change to any other repayment plan for which you are eligible. |
| **Interest Capitalization** | Interest is capitalized when you are removed from the plan for failing to recertify your income by the deadline or when you voluntarily leave the plan. | If you are determined to no longer have a "partial financial hardship" or if you fail to recertify your income by the deadline, interest is capitalized until the outstanding principal balance on your loans is 10% greater than it was when you entered the plan. It is also capitalized if you leave the plan. | If you are determined to no longer have a "partial financial hardship", fail to recertify your income by the deadline, or leave the plan, interest is capitalized. | Interest that accrues when your payment amount is less than accruing interest on your loans is capitalized annually until the outstanding principal balance on your loans is 10% greater than it was when your loans entered repayment. |
| **Re-Entering the Plan** | Your loan holder will compare the total of what you would have paid under REPAYE to the total amount you were required to pay after you left REPAYE. If the difference between the two shows that you were required to paid less by leaving REPAYE, your new REPAYE payment will be increased. The increase is equal to the difference your loan holder calculated, divided by the number of months remaining in the 20- or 25-year forgiveness period. | You must again show that you have a "partial financial hardship". | You must again show that you have a "partial financial hardship". | No restrictions. |

**SECTION 11: SAMPLE PAYMENT AMOUNTS**

The tables below provide repayment estimates under the traditional and income-driven repayment plans. These figures are estimates based on an interest rate of 6%, the average Direct Loan interest rate for undergraduate and graduate borrowers. The figures also assume a family size of 1, that you live in the continental U.S., and that your income increases 5% each year. Various factors, including your interest rate, your loan debt, your income, if and how quickly your income rises, and when you started borrowing may cause your repayment to differ from the estimates shown in these tables. These figures use the 2016 Poverty Guidelines and Income Percentage Factors.

**Table 2. Non-Consolidation, Undergraduate Loan Debt of $30,000 in Direct Unsubsidized Loans and Starting Income of $25,000**

| Repayment Plan | Initial Payment | Final Payment | Time in Repayment | Total Paid | Loan Forgiveness |
|---|---|---|---|---|---|
| Standard | $333 | $333 | 10 years | $33,967 | N/A |
| Graduated | $190 | $571 | 10 years | $42,636 | N/A |
| Extended-Fixed | Ineligible | - | - | - | - |
| Extended-Graduated | Ineligible | - | - | - | - |
| PAYE | $60 | $296 | 20 years | $38,105 | $27,823 |
| REPAYE | $60 | $296 | 20 years | $38,105 | $24,253 |
| IBR | $90 | $333 | 21 years, 10 months | $61,006 | $0 |
| ICR | $195 | $253 | 19 years, 6 months | $52,233 | $0 |

**Table 3. Non-Consolidation, Graduate Loan Debt of $60,000 in Direct Unsubsidized Loans and Starting Income of $40,000**

| Repayment Plan | Initial Payment | Final Payment | Time in Repayment | Total Paid | Loan Forgiveness |
|---|---|---|---|---|---|
| Standard | $666 | $666 | 10 years | $79,935 | N/A |
| Graduated | $381 | $1,143 | 10 years | $85,272 | N/A |
| Extended-Fixed | $437 | $437 | 25 years | $130,974 | N/A |
| Extended-Graduated | $300 | $582 | 25 years | $126,168 | N/A |
| PAYE | $185 | $612 | 20 years | $87,705 | $41,814 |
| REPAYE | $185 | $816 | 25 years | $131,444 | $0 |
| IBR | $277 | $666 | 18 years, 3 months | $107,905 | $0 |
| ICR | $469 | $588 | 13 years, 9 months | $89,468 | $0 |

## SECTION 12: IMPORTANT NOTICES

**Privacy Act Notice.** The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authorities for collecting the requested information from and about you are §421 et seq. and §451 et seq. of the Higher Education Act of 1965, as amended (20 U.S.C. 1071 et seq. and 20 U.S.C. 1087a et seq.), and the authorities for collecting and using your Social Security Number (SSN) are §§428B(f) and 484(a)(4) of the HEA (20 U.S.C. 1078-2(f) and 1091(a)(4)) and 31 U.S.C. 7701(b). Participating in the Federal Family Education Loan (FFEL) Program or the William D. Ford Federal Direct Loan (Direct Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the FFEL and/or Direct Loan Programs, to permit the servicing of your loans, and, if it becomes necessary, to locate you and to collect and report on your loans if your loans become delinquent or default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed, on a case-by-case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to financial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loans, to enforce the terms of the loans, to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default. To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies. To provide financial aid history information, disclosures may be made to educational institutions.

To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies. To provide a standardized method for educational institutions to efficiently submit student enrollment statuses, disclosures may be made to guaranty agencies or to financial and educational institutions. To counsel you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary matters, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records. Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**Paperwork Reduction Notice.** According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0102. Public reporting burden for this collection of information is estimated to average 20 minutes (0.33 hours) per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information collection. Individuals are obligated to respond to this collection to obtain a benefit in accordance with 34 CFR 682.215, 685.209, or 685.221.

If you have comments or concerns regarding the status of your individual submission of this form, please contact your loan holder directly (see Section 7).

| Borrower Name | Rebecca Oldenburgh | Borrower SSN | ▓▓▓▓6079 |
|---|---|---|---|

## SECTION 6: BORROWER REQUESTS, UNDERSTANDINGS, AUTHORIZATION, AND CERTIFICATION

If I am requesting an income-driven repayment plan or seeking to change income-driven repayment plans, **I request:**

- That my loan holder place me on the plan I selected in Section 2 to repay my eligible Direct Loan or FFEL Program loans held by the holder to which I submit this form.
- If I do not qualify for the plan or plans I requested, or did not make a selection in Item 2, that my loan holder place me on the plan with the lowest monthly payment amount.
- If I selected more than one plan, that my loan holder place me on the plan with the lowest monthly payment amount from the plans that I requested.
- If more than one of the plans that I selected provides the same initial payment amount, or if my loan holder is determining which of the income-driven plans I qualify for, that my loan holder use the following order in choosing my plan: REPAYE (if my repayment period is 20 years), PAYE, REPAYE (if my repayment period is 25 years), IBR, and then ICR.

If I am not currently on an income-driven repayment plan, but I did not complete Item 1 or I incorrectly indicated in Item 1 that I was already in an income-driven repayment plan, **I request** that my loan holder treat my request as if I had indicated in Item 1 that I wanted to enter an income-driven repayment plan.

If I am currently repaying my Direct Loans under the IBR plan and I am requesting a change to a different income-driven plan, **I request** a one-month reduced-payment forbearance in the amount of my current monthly IBR payment or $5, whichever is greater (unless I request another amount below or I decline the forbearance), to help me move from IBR to the new income-driven plan I requested.

☐ **I request** a one-month reduced-payment forbearance in the amount of: _____ (must be at least $5).

**I understand** that:

- If I do not provide my loan holder with this completed form and any other required documentation, I will not be placed on the plan that I requested or my request for recertification or recalculation will not be processed.
- I may choose a different repayment plan for any loans that are not eligible for income-driven repayment.
- If I requested a reduced-payment forbearance of less than $5 above, my loan holder will grant my forbearance request in the amount of $5.
- If I am requesting a change from the IBR Plan to a different income-driven repayment plan, I may decline the one-month reduced payment forbearance described above by contacting my loan holder. If I decline the forbearance, I will be placed on the Standard Repayment Plan and must make one monthly payment under that plan before I can be placed on a different repayment plan.
- If I am requesting the ICR plan, my initial payment amount will be the amount of interest that accrues each month on my loan until my loan holder receives the income documentation needed to calculate my payment amount. If I cannot afford the initial payment amount, I may request a forbearance by contacting my loan holder.
- If I am married and I request the ICR plan, my spouse and I have the option of repaying our Direct Loans jointly under this plan. My loan servicer can provide me with information about this option.
- If I have FFEL Program loans, my spouse may be required to give my loan holder access to his or her loan information in the National Student Loan Data System (NSLDS). If this applies to me, my loan holder will contact me with instructions.
- My loan holder may grant me a forbearance while processing my application or to cover any period of delinquency that exists when I submit my application.

**I authorize** the loan holder to which I submit this request (and its agents or contractors) to contact me regarding my request or my loans, including the repayment of my loans, at any number that I provide on this form or any future number that I provide for my cellular telephone or other wireless device using automated dialing equipment or artificial or prerecorded voice or text messages.

**I certify** that all of the information I have provided on this form and in any accompanying documentation is true, complete, and correct to the best of my knowledge and belief.

| Borrower's Signature | *Rebecca G Olden* | Date | 04/18/2017 |
|---|---|---|---|
| Spouse's Signature | *Andrew W Varw* | Date | 04/18/2017 |

**If you are married, your spouse is required to sign this form unless you are separated from your spouse or you're unable to reasonably access your spouse's income information.**

Exhibit H

(Jill Ballard's Account Summary – November 26, 2017)

Exhibit H



P.O. BOX 9500 WILKES-BARRE, PA 18773-9500

**Navient.com**
**_Convenience with a click_**

- Enroll in Auto Pay
- View Loan Information
- View Payment History
- View Frequently Asked Questions
- Make a One-Time Payment

CXPROG08-201711  00037529 015424 036770 1/2 000000 3500816 73551-73554

You have $0.00¹ due 12/22/17.

JILL C BALLARD
PO BOX 722312
SAN DIEGO CA 92172-2312

## Account Summary

| | |
|---|---|
| Account Number | ███319-1 |
| Billing Group‡ | 1 |
| Statement Date | 11/26/17 |
| Billing Period 10/26/17 to 11/26/17 | |
| Unpaid Principal | $90,129.55 |
| Payments Since Last Bill | $0.00 |
| **Past Due Amount (Pay Now)** | **$0.00** |
| Pay Past Due Amount By 12/07/17 to avoid Late Fee of | $0.00 |
| **Current Amount Due** | **$0.00** |
| Current Amount Due Date | 12/22/17 |
| Pay Current Amount Due (+ any Past Due Amount) by 01/21/18 to avoid additional Late Fee of | $0.00 |
| **Unpaid Fees** | **$0.00** |
| **Total Payment Due (Past Due Amount + Current Amount Due + Unpaid Fees)** | **$0.00** |

**See enclosed for loan details**



## You've served our country – how can we serve you?

**Since 2012, Navient's Military Benefits Team** has been honored to assist in the unique needs of service members. Visit Navient.com/military to see how we can assist you with all your options and benefits.

**Jobs for Veterans**
You served your country with pride. Now help millions of Americans navigate the path to financial success.

Check out our job openings on the career tab at **Navient.com**

---

Detach along perforation and return with your payment or go to Navient.com to make an electronic payment

| Account Number | ███319-1 |
|---|---|
| **Total Payment Due** | **$0.00** |

See above for dates and Late Fees that apply

**Total Amount Enclosed**   $ __ __ __ __ __.__ __

Make checks payable to Navient
(U.S Currency only – Do not send cash)

Navient

PO BOX 9533
WILKES-BARRE, PA 18773-9533

Changed your address or phone number?
Please visit Navient.com to update your information





*9470024319115693699*

## Loan Information as of 11/26/17

| Loan ID | 1-01 | 1-02 | 1-03 | 1-04 | 1-05 | 1-06 | 1-07 | 1-08 | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Current Balance | 13,611.17 | 8,971.38 | 13,363.49 | 8,971.38 | 18,899.25 | 9,942.93 | 9,966.33 | 21,147.77 | | 104,873.69 |
| Unpaid Interest | 1,172.33 | 587.80 | 1,151.05 | 587.80 | 3,835.29 | 1,547.48 | 1,570.87 | 4,291.52 | | 14,744.14 |
| Unpaid Fees[1] | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 |
| Unpaid Principal | 12,438.84 | 8,393.68 | 12,212.44 | 8,383.88 | 15,063.96 | 8,395.48 | 8,390.46 | 16,856.28 | | 90,129.66 |
| Original Principal | 10,000.00 | 8,500.00 | 10,000.00 | 8,500.00 | 10,000.00 | 8,500.00 | 8,500.00 | 12,000.00 | | 76,000.00 |
| Capitalized Interest | 2,600.39 | 8.24 | 2,543.96 | 8.24 | 5,142.60 | 23.71 | 23.71 | 4,944.25 | | 15,295.10 |
| Principal Reduction | -161.55 | -124.66 | -331.52 | -124.66 | -78.64 | -128.26 | -128.26 | -88.00 | | -1,165.55 |
| Life of Loan Payments | 1,045.93 | 140.88 | 925.96 | 140.88 | 847.66 | 176.10 | 176.16 | 1,140.31 | | 4,591.67 |
| Total Principal Paid | 161.55 | 124.66 | 331.52 | 124.66 | 78.64 | 128.26 | 128.26 | 88.00 | | 1,165.55 |
| Total Interest Paid | 884.38 | 16.22 | 594.44 | 16.22 | 768.92 | 48.84 | 48.89 | 1,052.21 | | 3,428.12 |
| Total Fees Paid | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 |

## Billing Period Summary 10/26/17 to 11/26/17

| Loan ID | 1-01 | 1-02 | 1-03 | 1-04 | 1-05 | 1-06 | 1-07 | 1-08 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Payments Received[2] | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Last Payment Effective Date | 00/00/00 | 00/00/00 | 00/00/00 | 00/00/00 | 00/00/00 | 00/00/00 | 00/00/00 | 00/00/00 | |
| Applied to Interest | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Applied to Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Applied to Principal | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Fees Assessed[2] | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Late Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Returned Check Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Other Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

## Loan Details

| Loan ID | 1-01 | 1-02 | 1-03 | 1-04 | 1-05 | 1-06 | 1-07 | 1-08 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Loan Date | 08/19/04 | 08/19/04 | 08/11/05 | 08/11/05 | 08/24/06 | 08/24/06 | 08/14/07 | 08/14/07 | |
| Loan Program | FFELP | FFELP | FFELP | FFELP | FFELP | FFELP | FFELP | FFELP | |
| Interest Rate | 3.280 | 3.280 | 3.280 | 3.280 | 6.800 | 6.800 | 6.800 | 6.800 | |
| (F-Fixed, V-Variable) | V | V | V | V | F | F | F | F | |
| Total Payment Due | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Past Due Amount | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Current Amount Due | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Unpaid Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Pay Past Due Amount by 12/07/17 to avoid a Late Fee of | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Pay Current Amount (+ any Past Due Amount) by 01/21/18 to avoid a Late Fee of | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

[1]Interest continues to accrue on any loan(s) in a paid ahead status. Follow the PAYMENTS section of this statement to learn how to reduce the total cost of your loan(s) by making payments on paid ahead loans.

[2]The Billing Period Summary section reflects all payments received during your billing period. If you made more than one payment during your billing period, the Last Payment Effective Date is the date the most recent payment was credited to your account. To see your full transaction history and all payment effective dates, log in to your account at Navient.com.

Account number: ███319-1

Exhibit I

(Letter from Jeri N. Russell)

Exhibit I

 **Department of Education Loan Servicing**

Office of the Customer Advocate
PO Box 9600
Wilkes-Barre, PA  18773-9600
Phone: 866-432-7939
Fax: 570-821-4550

December 20, 2017

Ms. Jill Ballard
P.O Box 722312
San Diego, CA 92172-2312

**RE:   Your Student Loan Account**  ████ **4319**

Dear Ms. Ballard:

Thank you for contacting the Office of the Customer Advocate regarding your student loan account.  Specifically, you had concerns regarding the capitalized interest on your account in relation to your Income Based Repayment (IBR) plan for the period beginning March 23, 2012.

Interest accrues daily and can capitalize (be added to your principal balance) after a status change such as a forbearance, deferment, or when certain repayment options change or expire. During deferment, typically, the federal government pays the interest that accrues on subsidized loans.  You are responsible for all valid interest that accrues on your loans.

While we did not find that interest capitalized on March 23, 2012, we would like share that interest did capitalize on your Navient Department of Education Loan Servicing Loans (ED) for $101.69 and for your Navient loans for $540.94 on February 28, 2012, at the conclusion of an Economic Hardship Deferment.

Furthermore, after an extensive review of your account, we would like to share that we have reversed the interest that capitalized on January 22, 2014 for your Navient loans in the amount $4,686.57.

You're welcome to call me directly at ████████ x ████████ with any questions you may have.

Sincerely,

Jeri N. Russell
Office of the Customer Advocate
Navient Department of Education Loan Servicing

Exhibit J

(Jill Ballard's Account Summary – December 25, 2017)

Exhibit J



**NAVIENT.**

P.O. BOX 9500 WILKES-BARRE, PA 18773-9500

**Navient.com**
*Convenience with a click*



JILL C BALLARD
PO BOX 722312
SAN DIEGO CA 92172-2312

- Enroll in Auto Pay
- View Loan Information
- View Payment History
- View Frequently Asked Questions
- Make a One-Time Payment

You have $0.00¹ due 01/22/18.



It's almost **tax time!**

Your Form 1098-E statement will be available online starting January 10, 2018.

**So why wait for U.S. mail delivery?**
Go to Navient.com to sign up for eDelivery! Email is the fastest and easiest way to get your tax statement. *Plus, it's secure!*

*If you paid less than $600 of eligible interest in 2017, you will not receive a link to access Form 1098-E, unless you have signed up for eDelivery.*

## Account Summary

| | |
|---|---|
| Account Number | ████ 319-1 |
| Billing Group¹ | 1 |
| Statement Date | 12/25/17 |
| Billing Period 11/27/17 to 12/25/17 | |
| Unpaid Principal | $85,852.85 |
| Payments Since Last Bill | $0.00 |
| **Past Due Amount (Pay Now)** | **$0.00** |
| Pay Past Due Amount By 01/06/18 to avoid Late Fee of | $0.00 |
| **Current Amount Due** | **$0.00** |
| Current Amount Due Date | 01/22/18 |
| Pay Current Amount Due (+ any Past Due Amount) by 02/21/18 to avoid additional Late Fee of | $0.00 |
| **Unpaid Fees** | **$0.00** |
| **Total Payment Due (Past Due Amount + Current Amount Due + Unpaid Fees)** | **$0.00** |

**See enclosed for loan details**

---

Detach along perforation and return with your payment or go to Navient.com to make an electronic payment

Account Number  ████ 319-1

**Total Payment Due**    **$0.00**

See above for dates and Late Fees that apply

**Total Amount Enclosed**    $ _ _ _ _ _ _ . _ _

Make checks payable to Navient
(U.S. Currency only – Do not send cash)

Navient

PO BOX 9533
WILKES-BARRE, PA 18773-9533

Changed your address or phone number?
Please visit Navient.com to update your information

*9470024319115690799*

## Loan Information as of 12/25/17

| Loan ID | 1-01 | 1-02 | 1-03 | 1-04 | 1-05 | 1-06 | 1-07 | 1-08 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Current Balance | 13,600.33 | 8,993.20 | 13,352.62 | 8,993.20 | 18,550.33 | 9,888.14 | 10,011.83 | 20,767.48 | 104,247.03 |
| Unpaid Interest | 1,596.89 | 609.64 | 1,567.87 | 609.64 | 5,097.29 | 1,592.80 | 1,616.19 | 5,703.86 | 18,304.18 |
| Unpaid Fees† | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Unpaid Principal | 12,003.44 | 8,383.56 | 11,784.95 | 8,383.56 | 13,453.04 | 8,395.34 | 8,395.34 | 15,063.62 | 85,862.85 |
| Original Principal | 10,000.00 | 8,500.00 | 10,000.00 | 8,500.00 | 10,000.00 | 8,500.00 | 8,500.00 | 12,000.00 | 76,000.00 |
| Capitalized Interest‡ | 2,074.37 | 0.00 | 2,027.50 | 0.00 | 3,453.04 | 0.00 | 0.00 | 3,053.62 | 10,608.53 |
| Principal Reduction | -70.93 | -116.44 | -242.55 | -116.44 | 0.00 | -104.66 | -104.66 | 0.00 | -755.68 |
| Life of Loan Payments | 1,046.93 | 140.88 | 925.96 | 140.88 | 847.58 | 175.10 | 175.15 | 1,140.21 | 4,591.67 |
| Total Principal Paid | 70.93 | 116.44 | 242.55 | 116.44 | 0.00 | 104.66 | 104.66 | 0.00 | 755.68 |
| Total Interest Paid | 975.00 | 24.44 | 683.41 | 24.44 | 847.58 | 70.44 | 70.49 | 1,140.21 | 3,835.99 |
| Total Fees Paid | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

## Billing Period Summary 11/27/17 to 12/25/17

| Loan ID | 1-01 | 1-02 | 1-03 | 1-04 | 1-05 | 1-06 | 1-07 | 1-08 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Payments Received‡ | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Last Payment Effective Date | 00/00/00 | 00/00/00 | 00/00/00 | 00/00/00 | 00/00/00 | 00/00/00 | 00/00/00 | 00/00/00 | |
| Applied to Interest | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Applied to Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Applied to Principal | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Fees Assessed‡ | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Late Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Returned Check Fee | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Other Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

## Loan Details

| Loan ID | 1-01 | 1-02 | 1-03 | 1-04 | 1-05 | 1-06 | 1-07 | 1-08 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Loan Date | 08/19/04 | 08/19/04 | 08/11/05 | 08/15/05 | 08/24/06 | 08/24/06 | 08/14/07 | 08/14/07 | |
| Loan Program | FFELP | FFELP | FFELP | FFELP | FFELP | FFELP | FFELP | FFELP | |
| Interest Rate | 3.280 | 3.280 | 3.280 | 3.280 | 6.800 | 6.800 | 6.800 | 6.800 | |
| (F-Fixed, V-Variable) | V | V | V | V | F | F | F | F | |
| Total Payment Due | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Past Due Amount | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Current Amount Due | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Unpaid Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Pay Past Due Amount by 01/06/18 to avoid a Late Fee of | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Pay Current Amount (+ any Past Due Amount) by 12/21/18 to avoid a Late Fee of | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

†Interest continues to accrue on any loan(s) in a paid ahead status. Follow the PAYMENTS section of this statement to learn how to reduce the total cost of your loan(s) by making payments on paid ahead loans.

‡The Billing Period Summary section reflects all payments received during your billing period. If you made more than one payment during your billing period, the Last Payment Effective Date is the date the most recent payment was credited to your account. To see your full transaction history and all payment effective dates, log in to your account at Navient.com.

Account number: ███319-1

Exhibit K

(February 22, 2016 Email)



**Mark Pokorni**

| From: | Navient <CustomerService@Navient.com> |
|-------|------|
| Sent: | Monday, February 22, 2016 6:10 AM |
| To: | ███████@COMCAST.NET |
| Subject: | We've Received Your Request |

# NAVIENT®

### STATUS OF YOUR REQUEST

**REQUEST RECEIVED** ❯ REQUEST IN PROCESS ❯ REQUEST REVIEWED

Dear Mark,

We're writing to let you know that your request for an Income-Driven Repayment Plan has been received and is being processed.

**How long does it take to process my request?**
We understand that you want a response as quickly as possible. It could take 22 to 25 business days for us to review and process this request for you. We appreciate your patience.

**How will I know when my request has been processed?**
Just keep an eye on your inbox. We'll send you an email once we've processed your form.

We appreciate the opportunity to help you navigate the path to financial success.

Sincerely,

Navient Customer Service

---

Make sure our emails make it to your inbox by adding CustomerService@Navient.com. Instructions on how to add us can be found here.

Privacy | Terms of Use

© 2014 Navient Solutions, Inc. All rights reserved. Navient and the Navient logo are service marks of Navient Solutions, Inc. Navient Corporation and its subsidiaries, including Navient Solutions, Inc., are not sponsored by or agencies of the United States of America.

MKT6998 / E5904 vD

Exhibit L

(March 11, 2016 Email)

Exhibit L

**Mark Pokorni**

| | |
|---|---|
| **From:** | Navient <CustomerService@Navient.com> |
| **Sent:** | Friday, March 11, 2016 6:21 AM |
| **To:** | ██████████@COMCAST.NET |
| **Subject:** | Your request is still waiting to be processed |

# NAVIENT®

## STATUS OF YOUR REQUEST

REQUEST RECEIVED → **REQUEST IN PROCESS** → REQUEST REVIEWED

Dear Mark,

You deserve to know when something is going to take longer than anticipated. That's why we wanted to send you this quick update on your recent request for an Income-Driven Repayment Plan. An unexpected increase in volume has caused us to fall behind on our completion date. This means your form is still waiting to be processed. We sincerely apologize for the delay and appreciate your patience.

**What can I expect?**
Don't worry, you'll hear from us once your Income-Driven Repayment Plan request is processed. We understand your time is valuable, and you can rest assured that we're working hard to complete your request as soon as possible.

We appreciate the opportunity to help you navigate the path to financial success.

Sincerely,

Navient Customer Service

Make sure our emails make it to your inbox by adding CustomerService@Navient.com. Instructions on how to add us can be found here.

Privacy | Terms of Use

© 2014 Navient Solutions, Inc. All rights reserved. Navient and the Navient logo are service marks of Navient Solutions, Inc. Navient Corporation and its subsidiaries, including Navient Solutions, Inc., are not sponsored by or agencies of the United States of America.

MKT6998 / E5904 vE

Exhibit M

(April 6, 2016 Email)

Exhibit M

**Mark Pokorni**

| | |
|---|---|
| **From:** | Navient <CustomerService@Navient.com> |
| **Sent:** | Wednesday, April 06, 2016 7:13 AM |
| **To:** | ██████@COMCAST.NET |
| **Subject:** | Request Reviewed |



## STATUS OF YOUR REQUEST

REQUEST RECEIVED  >  REQUEST IN PROCESS  >  **REQUEST REVIEWED**

Dear Mark,

Your request for an Income-Driven Repayment Plan has been approved.

You'll be receiving a separate communication shortly, outlining all the important information you need to know.

We appreciate the opportunity to help you navigate the path to financial success.

Sincerely,

Navient Customer Service

---

Make sure our emails make it to your inbox by adding CustomerService@Navient.com. Instructions on how to add us can be found here.

Privacy | Terms of Use

© 2014 Navient Solutions, Inc. All rights reserved. Navient and the Navient logo are service marks of Navient Solutions, Inc. Navient Corporation and its subsidiaries, including Navient Solutions, Inc., are not sponsored by or agencies of the United States of America.

MKT6998 / E5904 vF

Exhibit N

(Deposition Transcript, Jeffrey A. Stine)

Exhibit N
CERTIFIED COPY

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

JILL BALLARD, REBECCA VARNO,
and MARK POKORNI on behalf of
themselves and the class members
described herein,

        Plaintiffs,           Civil No.

vs.                  3:18-cv-00121-MEM-MCC

NAVIENT CORPORATION,
NAVIENT SOLUTIONS, INC., and
NAVIENT SOLUTIONS, LLC,

        Defendants.

_____

Deposition of JEFFREY A. STINE

June 24, 2022

Misty Klapper, RMR, CRR and Notary Public.
484458






(310) 207-8000 Los Angeles    (415) 433-5777 San Francisco    (949) 955-0400 Irvine    (858) 455-5444 San Diego
(310) 207-8000 Century City    (408) 885-0550 San Jose    (760) 322-2240 Palm Springs    (800) 222-1231 Carlsbad
(916) 922-5777 Sacramento    (800) 222-1231 Martinez    (702) 366-0500 Las Vegas    (800) 222-1231 Monterey
(951) 686-0606 Riverside    (818) 702-0202 Woodland Hills    (702) 366-0500 Henderson    (516) 277-9494 Garden City
(212) 808-8500 New York City    (347) 821-4611 Brooklyn    (518) 490-1910 Albany    (914) 510-9110 White Plains
(312) 379-5566 Chicago    00+1+800 222 1231 Paris    00+1+800 222 1231 Dubai    001+1+800 222 1231 Hong Kong

1    sense of when those are typically used.

2         A.    So it's typically used -- I mean,

3    there's a number of different scenarios that

4    could occur when a customer would qualify for a

5    discretionary forbearance.  But in this case,

6    it's the customer has indicated they're having

7    difficulty making their payments or they're

8    unable to make their payments and they're needing

9    to resolve their delinquency or, you know,

10   temporarily suspend their multipayments and so

11   they've requested a forbearance because of that

12   financial hardship.

13        Q.    Are discretionary hardship

14   forbearances ever used in connection with the

15   processes -- with the process of renewing an IDR

16   plan?

17             MS. SIMONETTI:  Tony, can we use

18        the language that he's actually

19        identified, discretionary forbearance, not

20        discretionary hardship forbearance?

21             MR. FIORENTINO:  Sure.  Okay.  And

22        it would help to clarify this.

23             BY MR. FIORENTINO:

24        Q.    So when you say discretionary

25   forbearance, Mr. Stine, is that the kind of

33

BARKLEY
Court Reporters