# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI, on behalf of themselves and the class members described herein, | ) ) ) ) | Docket 3:18-cv-00121-MEM-MCC |
| Plaintiffs, | ) ) ) | (Judge Malachy E. Mannion) |
| v. | ) ) | (Magistrate Judge Martin C. Carlson) |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., and NAVIENT SOLUTIONS, LLC, | ) ) ) ) | |
| Defendants. | ) ) | ELECTRONICALLY FILED |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION
## TO COMPEL CLASS DISCOVERY AND AMEND THE COMPLAINT

Daniel A. Edelman
Cassandra P. Miller
**Edelman, Combs, Latturner**
       **& Goodwin, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603
Phone (312) 739-4200
dedelman@edcombs.com
cmiller@edcombs.com

Carlo Sabatini, PA 83831
**Sabatini Freeman, LLC**
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
carlo@sabatinilawfirm.com

Anthony Fiorentino
**Fiorentino Law Offices, LTD**
432 N. Clark St., Suite 202
Chicago, IL 60654
(312) 853-0050
anthony@fiorentinolaw.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. ii

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF RELEVANT FACTS ................................................... 2

III.  STATEMENT OF LAW ............................................................................ 7

IV.   ARGUMENT .............................................................................................. 8

   a.  Navient should answer Plaintiffs' discovery requests, regardless of whether the complaint is amended. ................................................................ 8

     1.  Background on IDR Plans and Forbearances ............................................. 8

     2.  Plaintiff's modified definitions involving forbearances are grounded in the complaint. .......................................................................................... 11

     3.  Plaintiffs' modified definition involving "Income Documentation" is grounded in the complaint. ...................................................................... 13

   b.  If the Court requires Plaintiffs to amend the complaint before using the modified definitions, leave to amend should be granted. ............................... 15

     1.  The Court should grant leave to amend the complaint because Navient consented in writing to amending the pleading after the deadline. ......... 15

     2.  Even if the Court applies the "good cause" standard under Rule 16, Plaintiffs should be allowed to amend the complaint. ............................. 17

V.    CONCLUSION ........................................................................................ 22

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Gould Inc.*,
    739 F.2d 858 (3d Cir. 1984) .............................................................. 20

*Arthur v. Maersk, Inc.*,
    434 F.3d 196 (3d Cir. 2006) ................................................. 16, 19-20

*Bensel v. Allied Pilots Ass'n*,
    387 F.3d 298 (3d Cir.2004) ............................................................. 16

*Chapman v. First Index, Inc.*,
    796 F.3d 783 (7th Cir. 2015) ......................................................... 7-8

*Dole v. Arco Chem., Co.*,
    921 F.2d 484 (3d. Cir.1990) ............................................................. 16

*Estate of Neil v. Cty. of Colusa*,
    2021 U.S. Dist. LEXIS 163775 (E.D. Cal. Sept. 14, 2020) ............................ 19

*Evancho v. Fisher*,
    423 F.3d 347 (3d Cir. 2005) ............................................................. 15

*Gates v. Rohm & Haas Co.*,
    265 F.R.D. 208 (E.D. Pa. 2010), aff'd, 655 F.3d 255 (3d Cir. 2011).................. 7

*Joinnides v. Floral Park-Bellerose Union Sch. Dist., No. 12-cv-5682*,
    2015 U.S. Dist. LEXIS 42933, 2015 WL 1476422
    (E.D.N.Y. March 31, 2015) ............................................................. 19

*Merrell v. Weeks Marine, Inc.:12-CV-00908 DMCJAD*,
    2013 WL 3949210 (D.N.J. July 31, 2013) ................................................ 17

*In the matter of: Monumental Life Insurance Co.*,
    365 F.3d 408 (5th Cir. 2004) ............................................................ 7

*Price v. Trans Union, LLC*,
    737 F. Supp. 2d 276 (E.D. Pa. 2010) .................................................. 18

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ............................................................. 7

*Weitzner v. Sanofi Pasteur, Inc.:11-CV-02198*,
    2017 WL 3894888 (M.D. Pa. Sept. 6, 2017)
    aff'd, 909 F.3d 604 (3d Cir. 2018)........................................................... 7

*White v. Bush,* CV *20-2059-KSM,*
    2021 WL 2255981 (E.D. Pa. June 3, 2021) ...................................... 17

## STATUTES AND RULES

34 CFR. § 682.209 ............................................................................... 8

34 CFR § 682.211 ................................................................... 9, 10, 11, 13

34 CFR § 682.215 ............................................................................... 9

78 Fed. Reg. 65,775 (Nov. 1, 2013) ............................................. 10-11

Fed. R. Civ. P. Rule 12 ...................................................................... 16

Fed. R. Civ. P. Rule 15 ................................................................. 16, 17

Fed. R. Civ. P. Rule 16 ........................................................... 17, 18, 19

Fed. R. Civ. P. Rule 23 ...................................................................... 18

Fed. R. Civ. P. Rule 36 ........................................................................ 3

Fed. R. Civ. P. Rule 37 ..................................................................... 4, 6

## I.    INTRODUCTION

Plaintiffs are obligors on federal loans that have been serviced by Defendants ("Navient"). They have alleged a wide range of misconduct involving Navient's mismanagement of their Income-Driven Repayment plans ("IDR plans"). In discovery, Plaintiffs asked Navient to state the number of borrowers in the putative class. This information would allow Plaintiffs to determine whether there are enough class members to justify class treatment. Navient declined to provide the information, claiming that the class definition was not "relevant" to any viable claims. According to Defendants, they are not obligated to conduct searches based on the current class definition because it is overinclusive, encompassing borrowers who, according to Navient, are not entitled to relief.

To accommodate Navient, Plaintiffs devised a set of modified class definitions, omitting the criteria to which Navient had objected. However, Navient again refused to state the number of putative class members, now claiming that the modified definitions did not fall within the scope of the complaint. To resolve this dispute, the parties participated in a conference with the Court. Plaintiffs were directed to file a motion seeking 1) class discovery, and 2) leave to amend their complaint. Plaintiffs have filed such a motion and seek:

      a. Leave to use their modified class definitions, without amending the complaint, and an order compelling Navient to:

      i.  provide an assessment as to which of the modified definitions can be feasibly searched by Navient's computer database; and

     ii.  execute searches of all classes which can be feasibly searched, and state the number of borrowers in each such class;

        or, in the alternative;

   b.  Leave to file Plaintiffs' Seconded Amended Complaint, and an order compelling Navient to provide the aforementioned class discovery, concurrent with the filing of any responsive pleadings Navient may file, or briefing on any such pleadings, so that class discovery may proceed immediately upon resolution of the instant motion.[1]

## II.   STATEMENT OF RELEVANT FACTS

Plaintiffs filed their First Amended Complaint in May 2018, alleging "widespread misconduct by Navient in its exploitation of the various IDR programs." (ECF 29 at ¶¶ 7, 9, 10). This misconduct included: a "range of problems with customer service, borrower communications, [and] IDR plan enrollment" (*Id*. at ¶ 9); the "unfair practice of denying, or failing to approve, IDR applications that should have been approved on a regular basis" (*Id*. at ¶ 12); and putting "borrowers' accounts into forbearance status under circumstances that are not permitted by federal law." (*Id*. at ¶ 55). Because Plaintiffs were without complete account records when they filed the complaint, they alleged that

---

[1] Because the modified definitions are grounded in the First Amended Complaint, Plaintiffs' preferred relief is permission to use the modified definitions, without amending their pleadings, in the interest of judicial economy, and avoiding additional, unnecessary motion practice.

"further evidentiary support for their claims [would] be revealed after a reasonable opportunity for discovery." (*Id*. at ¶ 16).

Although the factual allegations in the complaint alleged a wide range of misconduct, the original class definition focused on only two types of transactions: 1) Navient's improper cancellation of IDR plans, after borrowers had timely submitted applications to renew such plans; and 2) Navient's improper delay in processing IDR applications. (ECF 29 at ¶ 87).

On October 18, 2021, Plaintiffs served their written discovery requests, including Rule 36 "Requests for Admission," asking Navient to admit that membership in the class exceeded certain threshold numbers. Exhibit A. Plaintiffs also served an Interrogatory asking whether Navient's computer system was capable of searching the number of class members. *Id*. at pp. 11-12, ¶¶ 7-8.

Navient's deadline to answer discovery was November 17, 2021. On November 9, 2021, Defense Counsel emailed Plaintiffs to ask for an extension to December 17, 2021. Exhibit B, verified by Attachment 1.  In reply, Plaintiffs' Counsel expressed concern over the extension because Plaintiffs' deadline to amend the complaint was December 3, 2021, and Navient's discovery responses could require amended pleadings. Exhibit C, verified by Attachment 1. To accommodate Navient's request, Plaintiffs agreed to the extension on the

3

condition that Navient "not oppose, on the basis of timeliness, a request by Plaintiffs for leave to amend" the complaint. *Id*. Defense Counsel replied, "This is fine." *Id*.

On December 17, 2021, Defense Counsel requested an additional 30-day extension. Exhibit D, verified by Attachment 1. Plaintiffs agreed only because Navient had already promised to waive any objection to an amended pleading on grounds of untimeliness. Exhibit E, verified by Attachment 1. However, Plaintiffs' Counsel requested that Navient's responses should "contain substantive responses and not simply boilerplate objections to all requests." *Id*. In reply, Defense Counsel agreed to a Rule 37 conference to address any such objections. *Id*.

During the conference, Defense Counsel stated that Navient would object to any inquiries about the number of borrowers in the class. Exhibit F, verified by Attachment 1. She explained that the class definition was not properly tailored because it encompassed borrowers whose timely-submitted IDR renewal applications were not "complete," such as those with missing signatures or insufficient income documentation. *Id*. Plaintiffs' Counsel stated that, for purposes of answering discovery, Navient should state the number of class members, irrespective of whether Navient deemed the class viable on the merits. *Id*.

On January 17, 2022, Navient served responses to Plaintiffs' discovery requests. In response to the requests for admission regarding class size, Navient neither admitted nor denied the assertions, objecting that the requests were not "relevant" because they "assume submission of a complete and 'timely' [IDR renewal application]." Exhibit G, pp. 8-14. Navient also refused to answer Plaintiffs' Interrogatory regarding the capability of its computer system to identify class members. Defendants objected that the Interrogatory was "overbroad"; that it sought "information that is neither relevant to any party's claim or defense"; and that it "contains an assumption as to 'timely' submission [of an IDR renewal application]." *Id.,* p. 11.

Rather than remaining bogged down in a discovery dispute, Plaintiffs decided to simply redefine the class to sidestep Navient's objections. Accordingly, on June 24, 2022, Plaintiffs deposed Navient's Vice President of Loan Servicing, Jeffrey Stine, to determine which actions taken on Plaintiffs' accounts could serve as the basis of a workable class. Based on Stine's testimony, Plaintiffs devised six modified class definitions, each based on a specific transaction type. The purpose of devising six classes was twofold: 1) to maximize the possibility that at least one class could be feasibly searched by Navient's computer system; and 2) to minimize the possibility that another technical objection to any definition would further hold up this litigation.

On August 1, 2022, Plaintiffs served Navient with the modified definitions and requested another Rule 37 conference. Exhibit H, verified by Attachment 1. During the conference, on August 18, 2022, Plaintiffs asked Navient to run computer searches of the six modified classes. Exhibit I, verified by Attachment 2. Defense Counsel objected, claiming that only two of the classes fell within the scope of the complaint: those constituting the original class definition. *Id.*

In a final attempt to make *some* progress with discovery, Plaintiffs' Counsel asked if Navient would at least simply state whether those two classes – which both parties agreed were based on the complaint – could be feasibly searched on Navient's computer database. Plaintiffs were seeking to merely assess feasibility, rather than insisting that Navient actually execute the searches. Exhibit J, verified by Attachment 2. Defense Counsel refused, stating that Navient "does not have an obligation to undertake feasibility assessments for proposed class definitions." *Id.*

Plaintiffs have now sought: 1) leave to use the modified definitions, without amending their pleadings, or, in the alternative, 2) leave to file their Second Amended Complaint, which contains five of the six modified class definitions.[2]

---

[2] Plaintiffs have abandoned one of the four contested modified definitions. Because Navient has conceded that two of the five remaining definitions are within the scope of the operative complaint, the following discussion will focus only on the three contested modified definitions.

### III.   STATEMENT OF LAW

Courts in this Circuit have found that class action complainants may modify their class definitions, without amending the pleadings, in order to arrive at a workable class. See *Weitzner v. Sanofi Pasteur, Inc.*, 3:11-CV-02198, 2017 WL 3894888, at *9 (M.D. Pa. Sept. 6, 2017), aff'd, 909 F.3d 604 (3d Cir. 2018) ("Courts have allowed Plaintiffs to substantially modify proposed class definitions initially set forth in their Complaint throughout the course of litigation."); and *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 215 (E.D. Pa. 2010), aff'd, 655 F.3d 255 (3d Cir. 2011) (allowing Plaintiffs to "substantially modify the proposed class definitions initially set forth in their complaint" because "modification of a class definition is contemplated by the Federal Rules of Civil Procedure, and a court is not bound by the class definition proposed in the complaint.").

Other Circuits have reached the same conclusion. See *In the Matter of: Monumental Life Insurance Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("Holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action, particularly in the formation of a workable class definition."); and *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint."); *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) ("A complaint must contain three things: a statement of subject-matter jurisdiction, a claim for relief, and

7

a demand for a remedy. Class definitions are not on that list. Instead, the obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)(1)(B).")

## IV.   ARGUMENT

### a.   Navient should answer Plaintiffs' discovery requests, regardless of whether the complaint is amended.

Because the modified definitions are grounded in the original pleadings, no amended pleading is necessary. For the reasons stated below, Navient should be required to answer Plaintiffs' discovery requests on the modified definitions.

### 1.   Background on IDR Plans and Forbearances

#### i.   *IDR Enrollment and Renewal Process*

The default payment plan for federal loans is the "Standard Repayment Plan." 34 C.F.R. § 682.209(a)(6)(v). Under this plan, the borrower makes fixed monthly payments, irrespective of income, and fully repays her loans in 10-30 years. *Id*. at (e)(2). Borrowers who cannot afford the Standard Repayment Plan enroll in IDR plans, which allow the borrower to make affordable monthly payments based on income, and to apply for loan forgiveness after a certain number of qualifying payments. For instance, under the Income-Based Repayment plan ("IBR plan"), monthly payments are capped at 15% percent of the borrower's discretionary

income, and the remaining debt is discharged after twenty-five years of qualifying payments. 34 CFR § 682.215.[3]

When borrowers enroll in the IBR plan, the plan is effective for one year. *Id*. at (e)(1). To renew the plan for each subsequent year, borrowers must annually recertify their income by submitting an IDR renewal application, with proof of income, to their loan servicer before a specified deadline. *Id*. at (e)(1)(i). If the plan is not timely renewed, the borrower's required monthly payment amount is increased to the amount owed under the Standard Repayment Plan, and any accrued interest is "capitalized," or added to the borrower's principal balance. *Id.* at (e)(3)(ii), (e)(7). This capitalization can substantially increase the borrower's debt.

> ii.   *Discretionary Forbearances*

In contrast to IDR plans, which provide affordable monthly payments, borrowers may apply for a discretionary forbearance, which temporarily pauses payments during periods of hardship. 34 C.F.R. §682.211(a). However, discretionary forbearances are very costly because any unpaid interest that accrues during the forbearance is capitalized. *Id.* at (a)(4). Discretionary forbearances also

---

[3] "IDR plan" is an umbrella term that refers to a group of income-driven repayment plans based on the borrower's income and family size. The "IBR plan" is one example of an IDR plan.

delay progress toward loan forgiveness because the borrower is prevented from making qualifying payments during the forbearance period.

In view of these consequences, discretionary forbearances are only permitted when: 1) the borrower is unable to make scheduled payments "due to poor health or other acceptable reasons," *and*, 2) the loan servicer has received "a request and sufficient supporting documentation from a borrower." *Id*. at (a)(2)(i), (h)(2). The Department of Education has created a standard form to request a discretionary forbearance: OMB No. 1845-0031. Exhibit K.[4] The form requires that borrowers state the reason for the forbearance, certify that the information is accurate, and sign the application. *Id.*

A borrower's consent is always required before enrollment in a discretionary forbearance. The only time that this consent may be oral rather than written is during the period after the loans have defaulted, but before the loans have been transferred to collections. 34 CFR § 682.211 (d)(1). In this situation, a limited, 120-day forbearance may be based on the borrower's "oral affirmation." *Id*. at (d)(2)(i). The purpose of this exception is to expedite the forbearance request of a defaulted

---

[4] The form uses the word "general forbearance," but Navient uses the term "discretionary hardship" when referring to forbearances based on the borrower's inability "to make their payments due to financial hardship." (Stine dep., p. 33, ll. 2-12). To avoid confusion, Plaintiffs also use the term "discretionary forbearance" when referring to this type of forbearance.

borrower, in order to "avoid the negative consequences of default." 78 Fed. Reg. 65,775 (Nov. 1, 2013). It does *not* apply to borrowers whose loans are in good stead, such as borrowers who are simply enrolling in, or renewing, their IDR plans.

### iii.   *Administrative Forbearances*

An *administrative* forbearance is distinct from a discretionary forbearance, and is the only type of forbearance that is specifically authorized when a non-defaulted borrower's IDR application is being processed. *See* 34 CFR 682.211(f)(11) (permitting a 60-day administrative forbearance when the loan servicer is processing paperwork in connection with a borrower's request to make a "change in repayment plan."). With an administrative forbearance, any interest that accrues during the 60-day forbearance period "is not capitalized." *Id*. The plain purpose of this forbearance is to prevent loan servicers from capitalizing interest that accrues during periods of routine paperwork processing. And, unlike discretionary forbearances, the 60-day administrative forbearance should be applied automatically; it does not need to be requested specifically by the customer. Exhibit L, 48:8-15.

### 2.   Plaintiff's modified definitions involving forbearances are grounded in the complaint.

Jeffrey Stine testified at his deposition that Navient had a "general practice" of enrolling borrowers in discretionary forbearances during the IDR renewal process, without their written consent, even if they had not defaulted. *Id.* at 36:12-

17 and 37:13-17. Stine admitted that Navient enrolled Plaintiff Rebecca Varno in such forbearances. *Id.* at 220:12-17.

Stine also testified that, on two occasions, Navient improperly cancelled Varno's 60-day administrative forbearance when she was applying for an IDR plan, then enrolled her in a discretionary forbearance, causing her accrued interest to capitalize. *Id.* at 126:8-16, 151:13-25, and 152:1-7. Based on these admissions, Plaintiffs devised the following class definitions:

**"Forbearance without Written Consent" Class:**

    a. The borrower was enrolled in an IDR plan.

    b. The income-driven payments were cancelled when the plan was not renewed before the annual renewal deadline.

    c. Within 60 days thereafter, Navient enrolled the borrower in a discretionary forbearance.

    d. At the time of enrollment in the discretionary forbearance, the loan was not in default, and Navient had not received a written request from the borrower for a discretionary forbearance.

    e. The interest that accrued during the forbearance was capitalized.

**"No Administrative Forbearance" Class:**

    a. Navient received notice that the borrower was applying for initial enrollment in an IDR plan, or was changing repayment plans.

    b. Within 60 days after receiving such notice, Navient enrolled the borrower in a discretionary interest-capitalizing forbearance.

    c. At least some interest that accrued during any part of the 60-day period following such notice was capitalized.

Exhibit H, verified by Attachment 1.

12

Both of these classes are grounded in the following allegations of the currently operative First Amended Complaint:

- "Navient improperly plac[ed] Rebecca Varno's loans into forbearance status pursuant to a phone call with a Navient representative." (ECF 29 at ¶ 40(f)).

- "Under 34 C.F.R. 682.211(a), a [discretionary] forbearance is permitted only when the borrower is unable to make scheduled payments 'due to poor health or other acceptable reasons.'" (ECF 29 at ¶ 74).

- "Navient put borrowers' accounts into forbearance status under circumstances that are not permitted by federal law, which prevented these borrowers from making monthly payments." (ECF 29 at ¶ 55).

- "Navient improperly placed borrowers making timely loan payments into forbearance status – a designation typically reserved for situations where the borrower seeks relief from its payment obligations due to financial hardship." (ECF 29 at ¶ 6).

- "Defendants appl[ied] a forbearance to Plaintiff's account during the processing of her IDR application, in violation of federal law..." (ECF 29 at ¶ 149).

- "Navient improperly placed borrowers making timely loan payments into forbearance," and their "abuse of the forbearance process improperly increased the principal loan balance of borrowers" and "extended the duration of the borrowers' loans in the various IDR programs." (ECF 29 at ¶ 6).

Because the modified definitions lie squarely within these allegations, no amended pleadings are necessary, and Navient must answer Plaintiffs' discovery requests.

3. Plaintiffs' modified definition involving "Income Documentation" is grounded in the complaint.

13

Jeffrey Stine testified that, on two occasions, Navient improperly rejected Varno's IDR application because she had submitted only a single paystub to document her income, instead of two consecutive paystubs. Stine admitted that, under federal guidelines, a single paystub is adequate proof of income, and the rejection of Varno's applications was a "processing error." Exhibit L, 145:6-23, 147:15-148:3, 184:6-8, 185:23-186:3; 190:1-7. Based on this testimony, Plaintiffs devised the following class:

### **"Income Documentation" Class:**

    a.  The borrower was enrolled in an IDR plan.

    b.  Navient timely received one paystub and the borrower's application to renew the plan.

    c.  Navient did not process the application.

    d.  Navient sent the borrower a written communication stating that the application could not be processed because the borrower did not submit two paystubs.

    e.  That communication did not identify any other deficiency with the application.

    f.  Thereafter, the borrower's partial financial hardship status expired and the Standard Repayment Plan amount took effect.

Exhibit H, verified by Attachment 1. This definition is grounded in the following allegations of the First Amended Complaint.

- Navient engaged in "the unfair practice of denying, or failing to approve, IDR applications that should have been approved on a regular basis." (ECF 29 at ¶ 12)

- "Borrowers report[ed] experiencing servicing obstacles when trying to enroll in an IDR plan, such as unexpected delays, lost paperwork, poor customer service, and inconsistent application processing." (ECF 29 at ¶ 12)

- Navient "improperly delayed the processing of Plaintiff Rebecca Varno's IDR application in 2017." (ECF 29 at ¶ 40)

- "The failure of Navient to timely and properly process IDR plan applications deprived borrowers of the opportunity to make qualifying monthly payments that count toward loan forgiveness." (ECF 29 at ¶ 55)

The "Income Documentation" class falls within these allegations. Plaintiffs alleged that Navient denied IDR applications "that should have been approved on a regular basis," and "improperly delayed" the IDR enrollment process. (ECF 29 at ¶¶ 12, 40). Rejecting valid income documentation is one form of delaying enrollment in an IDR plan. Stine's testimony yielded factual support for these allegations, but the general claim was pled from the outset. See *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) (holding that a claim has been properly pled if relief could be granted "under any set of facts which could be proved.").

### b. If the Court requires Plaintiffs to amend the complaint before using the modified definitions, leave to amend should be granted.

1. <u>The Court should grant leave to amend the complaint because Navient consented in writing to amending the pleading after the deadline.</u>

As noted above, Plaintiffs maintain that no amended pleadings are necessary to use their modified definitions. However, if such amendments are deemed necessary by the Court, Plaintiffs should be granted leave to amend their complaint.

Federal Rule of Civil Procedure 15 allows a party to amend a complaint upon leave of court, and it states that leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Third Circuit has adopted a liberal approach to the amendment of pleadings under Rule 15. *Bensel v. Allied Pilots Ass'n,* 387 F.3d 298, 310 (3d Cir.2004). The purpose of this approach is to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem., Co.,* 921 F.2d 484, 487 (3d. Cir.1990). Only when the amendment would be "unjust" should the court deny leave. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

The Court should apply the Rule 15 standard because the rule provides that a party may amend its pleading at any time with "the opposing party's written consent." Fed. R. Civ. P. 15 (a)(2). Navient consented in writing to Plaintiffs filing an amended complaint, even after passage of the deadline for such amendments, in exchange for Plaintiffs assenting to Navient's requested extensions to answer discovery. <u>Exhibit C,</u> verified by <u>Attachment 1.</u> In light of the agreement, justice requires that Plaintiffs be granted leave to file a Second Amended Complaint, if deemed necessary.

Although Plaintiffs could have amended their complaint after deposing Jeffrey Stine, they opted not to do so, to avoid another round of motion practice on a Rule 12(b)(6) motion. Instead, they limited their modified definitions to claims

that were grounded in the First Amended Complaint. Nonetheless, Navient refused to answer any class discovery on those definitions.

Plaintiffs should now be permitted to avail themselves of the agreement, just as Navient has. If Defendants are permitted to renege on their promise, it would work a substantial injustice on Plaintiffs, and undermine the viability of negotiations to resolve discovery disputes. Thus, Navient should be deemed to have consented to Plaintiffs' Second Amended Complaint, unless Defendants can show why their promise should be nullified. See *Merrell v. Weeks Marine, Inc.,* 2:12-CV-00908 DMCJAD, 2013 WL 3949210, at *3 (D.N.J. July 31, 2013) (noting that, under Rule 15, "the burden is generally on the party opposing the amendment to demonstrate why the amendment should not be permitted." (citing *Foman v. Davis,* 371 U.S. 178 (1962)).

### 2. Even if the Court applies the "good cause" standard under Rule 16, Plaintiffs should be allowed to amend the complaint.

Generally, when a party seeks leave to amend a pleading after a deadline set by court order, the decision of whether to allow the amendment is controlled by Rule 16(b), which requires "good cause." *White v. Bush*, CV 20-2059-KSM, 2021 WL 2255981, at *4 (E.D. Pa. June 3, 2021). Even if the Court applies Rule 16's more stringent standard, Plaintiffs have shown "good cause" because they have been diligent in pursuing discovery, and no prejudice would result from allowing their amendments.

*i.   Plaintiffs have been diligent in pursuing class discovery.*

"Good cause" under Rule 16(b) focuses on the diligence of the party seeking the amendment. *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010).

Plaintiffs did not previously seek leave to amend their pleadings because they devised modified definitions that were grounded in the operative complaint, obviating the need for any amendments. The only reason Plaintiffs have presently sought leave to amend is to resolve the parties' discovery dispute. Plaintiffs maintain that no such amendments are necessary under well-settled Rule 23 law.

However, even if an amended pleading were necessary, it should be permitted because Plaintiffs vigorously pursued class discovery on their original class; met with Defendants on numerous occasions to resolve the parties' discovery dispute; and redefined their classes in response to Navient's objections.

By contrast, Defendants have sought two extensions of their discovery deadlines, and when they did serve responses, they failed to provide substantive answers with respect to class size, objecting on grounds of "relevance." Nothing could be more relevant to class certification than the number of class members, or the searchability of the class. Navient's *actual* objection was that members of

the original class were not entitled to relief. This was merely a dispute as to the substantive issues at the heart of this case, which did not relieve Navient of its duty to answer discovery. Thus, any delays should be imputed to Navient for failing to meet its discovery deadlines, and for making baseless objections to Plaintiffs' discovery requests.

Courts have held that delays caused by Defendants should not be imputed to Plaintiffs when assessing Plaintiffs' diligence in amending a complaint. See *Joinnides v. Floral Park-Bellerose Union Sch. Dist.,* No. 12-cv-5682, 2015 U.S. Dist. LEXIS 42933, 2015 WL 1476422, at *29-30 (E.D.N.Y. March 31, 2015) ("Although Defendants argue that Plaintiff was not diligent in seeking to amend her Complaint, the Court finds that Defendants' delays throughout this litigation also contributed to the lateness of Plaintiff's request:); and *Estate of Neil v. Cty. of Colusa,* 2021 U.S. Dist. LEXIS 163775, at *4, 2021 WL 3857961 (E.D. Cal. Sept. 14, 2020) ("Despite Defendants' arguments, the Court finds Plaintiffs have made a sufficient showing of diligence. Plaintiffs attribute any delay in seeking amendment to Defendants' delayed production of the in-custody death investigation reports for several months.").

## ii. *Defendants will not be prejudiced by the amendments.*

When determining whether the "good cause" standard under Rule 16 has been met, prejudice to the non-moving party is the "touchstone for the denial of an

19

amendment." *Arthur v. Maersk, Inc.,* 434 F.3d 196, 204 (3d Cir. 2006). The question of prejudice largely turns on whether the proposed amendments "would require extensive additional discovery [that] would be prejudicial to defendants." *Adams v. Gould Inc.,* 739 F.2d 858, 869 (3d Cir. 1984). In the instant case, Navient would not be prejudiced if Plaintiffs are permitted to file their Second Amended Complaint because there are no substantial factual disputes surrounding the transactions that form the basis of the modified definitions.

With respect to the "Forbearance without Written Consent" class, Jeffrey Stine testified that Navient had a "general practice" of enrolling borrowers in discretionary forbearances during the IDR renewal process, without their written consent, even if they had not defaulted. Exhibit L, 36:12-17 and 37:13-17. He also admitted that Navient enrolled Varno in such forbearances. *Id.* at 220:12-17. Based on these admissions, there are no factual disputes regarding Plaintiff's membership in that class.

The same goes for the "No Administrative Forbearance" class. Stine admitted that, on two occasions, Navient *improperly* cancelled Varno's 60-day administrative forbearance when she was enrolling in an IDR plan, then enrolled her in a discretionary forbearance, causing her interest to capitalize. *Id.* at 126:8-16, 151:13-25, 152:1-7. Thus, no additional discovery is needed on whether Varno is a member of that class.

20

As for the "Income Documentation" class, Stine testified that, on two occasions, Navient *improperly* rejected Rebecca Varno's IDR renewal application because she only submitted a single paystub to document her income. Stine admitted that, under federal guidelines, a single paystub is adequate proof of income, and the rejection of Varno's applications amounted to a "processing error." *Id.* at 145:6-23, 147:15-148:3, 184:6-8, 185:23-186:3, 190:1-7. Thus, Varno's membership in this class is beyond dispute.

Accordingly, it is hard to see how any additional discovery that Defendants might wish to serve on these issues would be relevant. Nonetheless, Plaintiffs have no objection to additional discovery requests regarding their claims. Thus, Navient would not be prejudiced if Plaintiffs are granted leave to file their Second Amended Complaint.

## V.    CONCLUSION

For the reasons stated herein, Plaintiffs seek the relief stated above.

Respectfully Submitted,

*/s/ Cassandra Miller*
Cassandra Miller

Daniel A. Edelman
Cassandra P. Miller
**Edelman, Combs, Latturner
     & Goodwin, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603
Phone (312) 739-4200
dedelman@edcombs.com
cmiller@edcombs.com

Anthony Fiorentino
**Fiorentino Law Offices, LTD**
432 N. Clark St., Suite 202
Chicago, IL 60654
(312) 853-0050
anthony@fiorentinolaw.com

Carlo Sabatini, PA 83831
**Sabatini Freeman, LLC**
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
carlo@sabatinilawfirm.com

## <u>WORD COUNT CERTIFICATE</u>

Pursuant to the United States District Court for the Middle District of Pennsylvania, Rules of Court, I certify that Plaintiffs' Brief In Support of Motion to Compel Class Discovery and Amend the Complaint ("Plaintiffs' Brief") does not exceed 5,000 words, as required by Local Rule 7.8(b)(2).

The total word count of Plaintiffs' Brief, including all headings, subheadings, footnotes, and quotations is 4,597 words. This word count excludes the title page, table of contents, table of authorities, signature block, certificate of service, and word count certificate. This word count certificate was prepared in reliance on the word-count function of the wordprocessing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: Wednesday, September 21, 2022          s/*Cassandra P. Miller*_____
                                              Cassandra P. Miller

## **CERTIFICATE OF SERVICE**

I certify that on the 21st day of September, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification to counsel of record for the defendant, namely:

Daniel T. Brier
dbrier@mbklaw.com

Donna A. Walsh
dwalsh@mbklaw.com

Lisa Marie Simonetti
simonettil@gtlaw.com

Christopher Anthony Mair
mairc@gtlaw.com

Lawyers for Defendants

*s/Cassandra P. Miller*
Cassandra P. Miller
Illinois ARDC #: 6290238