**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI, on behalf of themselves and the class members described herein, ) ) ) ) | Docket 3:18-cv-00121-MEM-MCC |
| ) | |
| Plaintiffs, ) | (Judge Malachy E. Mannion) |
| ) | |
| v. ) | (Magistrate Judge Martin C. Carlson) |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., and NAVIENT SOLUTIONS, LLC, ) ) ) | |
| Defendants. | ELECTRONICALLY FILED |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL CLASS DISCOVERY
AND AMEND THE COMPLAINT**

Defendants Navient Corporation ("Navient Corp.") and Navient Solutions, LLC, formerly known as Navient Solutions, Inc. ("NSL"), respectfully move this Court for an Order denying the Motion to Compel Class Discovery and Amend the Complaint ("Motion") filed herein by plaintiffs Jill Ballard ("Ballard"), Rebecca Varno ("Varno"), and Mark Pokorni ("Pokorni," and with Ballard and Varno, collectively, "Plaintiffs").[1] In support of their position, defendants state as follows:

---

[1] Navient Corp. is a holding company, which does not engage in loan servicing activity. As a result, it is improperly named as a defendant here. However, Navient Corp. joins in NSL's arguments in this Motion.

## INTRODUCTION

Nearly 300 days have passed since the Court's deadline to amend pleadings, yet Plaintiffs now seek to bring highly detailed and newly formulated class definitions into this action, and to compel discovery on those definitions. Very simply, Plaintiffs' efforts are improper for several reasons, including because these class definitions are *not* supported by the allegations in the operative First Amended Complaint ("FAC"). The FAC, the subject of this litigation for more than four years, is based squarely on allegations that NSL, a loan servicer, untimely processed Plaintiffs' applications for income driven repayment ("IDR") programs on their federal student loans. Indeed, when filing the FAC in 2018, Plaintiffs revised the class definitions to *explicitly* include supposed untimely processing as the foundational element of class membership. But Plaintiffs have known since at least December 2021 that those class definitions are unworkable and, thus, they belatedly mount this effort to pursue completely different and alternate theories of class membership. As explained below, given the significant delays by Plaintiffs in prosecuting this litigation and in seeking amendment, and the substantial prejudice that NSL would suffer from amendment at this juncture, the Court should deny the Motion in its entirety.[2]

---

[2] This is not counsel's first experience with attempting to amend their pleading well past a court-imposed deadline. In a very similar case, *Johansson, et al. v. Nelnet, Inc., et al.*, No. 4:20-cv-03069 (D. Neb.), Plaintiffs' counsel sought to amend the

## BACKGROUND

**1.    January 16, 2018—July 28, 2021: Plaintiffs File Complaints and Court Enters Scheduling Order**

Ballard is a borrower of student loans serviced by NSL. (Compl. ¶ 16). Ballard filed the initial Complaint on January 16, 2018 (ECF No. 1). Ballard alleged that NSL failed to promptly process borrowers' requests to enroll in, and/or renew, IDR plans. (*Id*. ¶¶ 54-62). The United States Department of Education ("ED") offers IDR plans on federal student loans, which can significantly lower student loan monthly payments for eligible borrowers. In order to enroll in, or renew, an IDR plan, a borrower must submit an application with supporting financial information. (*Id*. ¶ 34). Ballard alleged that NSL failed to timely process her IDR renewal application and, thus, improperly cancelled her IDR plan in January 2014. (*Id*. ¶¶ 54-62).

Based on these allegations, Ballard asserted claims for: (1) breach of contract—for violating the servicing contract with ED; (2) tortious interference with

---

operative complaint more than four months after the deadline, and more than 21 months after commencing the lawsuit. (*Johansson,* ECF Nos. 1, 55, 109). The magistrate judge denied the motion and held, in no uncertain terms, that "all of the facts were known to the plaintiffs, or could have been easily discovered, prior to the deadline to amend the pleadings." (*Johansson,* ECF No. 137, p. 8).  On October 7, 2022, over plaintiffs' objection to the Magistrate Judge's Report and Recommendation that defendant's motion to strike plaintiffs' class allegations be granted, the court adopted that ruling, finding that plaintiffs' proposed class definitions "still expands the size and scope of the putative class and advances a theory of liability that is not foreseeable based on the allegations of the operative complaint." (*Johansson,* ECF No. 172, p. 1).

contract—for allegedly failing to "promptly and efficiently process" IDR

applications; (3) violation of the California Consumers Legal Remedies Act, Cal.

Civ. Code § 1750 *et seq*.; (4) violation of California's Unfair Competition Law,

California Business and Professional Code § 17200 *et seq.*; and (5) violation of the

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §

201-1 *et seq.* (*Id*. ¶ 74-119). Ballard purported to bring these claims for herself and

for classes defined as follows:

### NATIONWIDE FAILURE TO PROCESS CLASS

> All individuals with federal student loans serviced by [NSL] who, at
> any time between January 1, 2014 and the present, were enrolled in an
> IDR plan, and timely submitted a request to re-enroll in the plan, but
> were removed from the plan.[3]

Four months later, on May 25, 2018, the FAC was filed. (ECF No. 29). The

FAC added Varno and Pokorni as additional plaintiffs and claims for violation of

New York General Business Law Section 349 and California's Rosenthal Act, Cal

Civ. Code § 1788.17. Varno alleges that NSL improperly delayed the processing of

her IDR application in 2017, cancelled her IDR payment amount, and placed her

loans into a disadvantageous forbearance status. (*Id*.) Similarly, Pokorni alleges that

NSL delayed the processing of his IDR application in February 2016. (*Id*.)

In the FAC, Plaintiffs also explicitly frame their class definitions around the

---

[3] Plaintiffs also alleged a California "failure to process class."  (*Id*. ¶ 63).

theory of untimely processing:

<strong><u>Nationwide Class</u></strong>

All individuals with federal student loans serviced by [NSL] who, at any time on or after a date six years prior to the filing of this action, 1) were enrolled in an IDR plan, and *timely submitted* a request to renew the plan, which was nonetheless cancelled *due to [NSL's] failure to process the renewal prior to the plan's expiration*, or 2) *submitted a request for enrollment in an IDR plan that was not processed within 25 business days*.[4]

<strong><u>Illinois Class</u></strong>

All Illinois residents with federal student loans serviced by [NSL] at any time on or after a date ten years prior to the filing of this action, *submitted a request for enrollment in an IDR plan that was not processed within 25 business days*.

(ECF No. 29 ¶ 87) (emphasis added).

On July 28, 2021, the Court entered a Case Management Order reflecting the Parties' Proposed Joint Case Management Plan (ECF Nos. 68, 69). The parties agreed to, and the Court set, among other things: (a) the deadline for Joinder of Parties and Amendment of Pleadings, December 3, 2021; and (b) the Close of Fact Discovery, October 31, 2022. (*Id*.).

### 2.   July 28, 2021—October 17, 2021: No Activity

Following entry of the Case Management Order, NSL heard nothing from Plaintiffs through October 17, 2021. A total of 81 days elapsed without Plaintiffs

---

[4] In the FAC, Plaintiffs allege parallel California and New York classes.

serving any discovery on NSL.

### 3.   October 18, 2021—March 31, 2022: The Parties Engage in Discovery and Meet and Confer

On October 18, 2021, Plaintiffs served their initial discovery requests on NSL. (ECF No. 81-3). Because NSL's responses would be due on November 17, 2021, Plaintiffs' delay in issuing discovery gave them only *sixteen days* before the expiration of the deadline to amend the FAC. However, Plaintiffs were aware of the deadline based on the ensuing discussions about their discovery requests.

Specifically, given the scope of Plaintiffs' discovery, on November 9, 2021, NSL requested an extension of time to respond, to December 17, 2021. (ECF No. 81-5 at p. 3.) Contrary to the representations in the Declaration of Cassandra Miller submitted as Attachment 1 to Plaintiffs' Motion, Plaintiffs did not agree to the extension on the condition that "[NSL] 'not oppose, on the basis of timeliness, a request by Plaintiffs for leave to amend' the complaint." (*Id.*) Plaintiffs' condition was much more specific and limited to the addition of parties:

> The only deadline that I think may be impacted by the requested extension is the 12/3/21 deadline to amend and add parties. ***We do not anticipate needing to amend the pleadings <u>to add any new parties</u>***, but obviously, cannot be 100% certain without having an opportunity to review Defendants' responses to the discovery requests. ***We have no objection to the requested extension to 12/17/21, provided that Defendants will not oppose***, on the basis of timeliness, ***a request by Plaintiffs <u>for leave to amend to add parties</u>*** and Defendants allow Plaintiffs the same amount of additional time to respond to written discovery served by Defendants. Does that work for you?

(*Id*. at p. 2) (emphasis added).

The parties agreed to the extension, and thereafter engaged in further meet and confer efforts in advance of NSL's serving responses. In particular, Plaintiffs sought extensive class discovery relating to borrowers who "timely submitted a request to renew" their IDR plans, "which [were] nonetheless cancelled because the renewal was not processed before the plan expired." (Declaration of Lisa Simonetti, "Simonetti Decl." attached hereto as Exhibit A, at Ex. 1). In the meet and confer, NSL stated its intent to object to these requests based on the phrase "timely submitted," which Plaintiffs interpreted to include the submission of *any* part of an IDR application – i.e., even an incomplete application. (Simonetti Decl. at Ex. 2). Because NSL would not process an IDR application in some piecemeal fashion, from NSL's perspective, no intelligible responses could be made to Plaintiffs' requests. Further, the theory of class membership was deeply flawed due to the highly individualized, borrower-by-borrower facts at issue, such as when an application was submitted, was it complete, did the borrower subsequently supplement, etc.

On January 17, 2022, NSL served its responses, objecting outright to the problematic requests. But NSL did not hear from Plaintiffs until more than two months later, on March 23, 2022, when Plaintiffs requested a Rule 37 conference. Given conflicts in the parties' schedules, including vacations on both sides, a

conference was not immediately scheduled. Instead, on March 31, 2022, Plaintiffs served a Rule 30(b)(6) deposition notice on NSL.

### 4.    April 2022: Plaintiffs Propose to Amend the FAC

On April 14, 2022, 132 days after the December 3, 2021 deadline for Joinder of Parties and Amendment of Pleadings, Plaintiffs sought NSL's concurrence on a motion for leave to amend, without specification of the grounds. (Simonetti Decl. at Ex. 3). Plaintiffs asserted that the necessity of amendment arose from their review of NSL's production of 28,000 pages of documents.[5]

On April 29, 2022, Plaintiffs for the first time proposed modified class definitions, which included *numerous* elements for class membership beyond allegedly untimely processing, including that the account was not in default status (a default generally results after 270 days of delinquency) and the borrower had not made a written request for a "hardship forbearance."[6] (Simonetti Decl. at Ex. 4). The parties conducted a meet and confer that same day, during which Plaintiffs stated their intent to change the class definitions in order to obviate the individualized

---

[5] Plaintiffs also requested another conference.  During that conference, which took place on April 19, 2022, it became clear that Plaintiffs had not reviewed significant documents produced 10 months prior.  Plaintiffs inquired about these specific documents, which NSL had produced on June 17, 2021 but which Plaintiffs had not reviewed.  NSL re-produced the set to Plaintiffs.  (Simonetti Decl. at Ex. 5).

[6]  Plaintiffs also alleged subclasses for Illinois, California, and New York: "Any class member who a) obtained their federal student loans while living in [the relevant state], or b) lived in [the relevant state] when their loans were serviced by Nelnet [sic]."

issues that NSL raised in response to Plaintiffs' discovery requests. (Simonetti Decl. at Ex. 6 (proposing another, new class definition)).

On August 2, 2022, Plaintiffs proposed even further class definitions, including:

- The borrower was enrolled in an IDR plan.

- The income-driven payments were cancelled when the plan was not renewed before the annual renewal deadline.

- Within 60 days thereafter, [NSL] enrolled the borrower in a discretionary forbearance.

- At the time of enrollment in the discretionary forbearance, the loan was not in default, and [NSL] had not received a written request from the borrower for a discretionary forbearance.

- The interest that accrued during the forbearance was capitalized.

and/or

- The borrower was enrolled in an IDR plan.

- When the borrower applied to recertify the plan, it was renewed with a lower monthly payment amount (including 0.00), but the reduced amount was not scheduled to take effect until after one or more additional billing cycles.

- [NSL] enrolled the borrower in an interest-capitalizing discretionary forbearance to cover the intervening billing cycles under the higher monthly payment amount.

and/or

- The borrower was enrolled in an IDR plan.

- [NSL] timely received one paystub and the borrower's application to renew the plan.

- [NSL] did not process the application.

- [NSL] sent the borrower a written communication stating that the application could not be processed because the borrower did not submit two paystubs.

- That communication did not identify any other deficiency with the application.

- Thereafter, the borrower's partial financial hardship status expired and the standard repayment plan amount took effect.[7]

(Simonetti Decl. at Ex. 7).

NSL took the depositions of Varno on July 14, 2022, Pokorni on July 18, 2022, and Ballard on July 21, 2022. NSL's fact discovery in this matter is complete. Plaintiffs took the Rule 30(b)(6) deposition of NSL's corporate representative, Jeffrey Stine, on June 24, 2022.

Plaintiffs brought this Motion on September 21, 2022—292 days after the expiration of the Court's deadline to amend the FAC. (*See* ECF No. 80, Magistrate Judge Carlson's text order, directing Plaintiffs to present the Motion following discovery conference).[8]

---

[7] Plaintiffs allege various subclasses based on state of residence when some of these events allegedly occurred.

[8] At the discovery conference, Plaintiffs argued that their class discovery should be ordered without addressing the issue of amendment. NSL contended that the allegations of the FAC did not align with the class allegations, and Plaintiffs had to

## ARGUMENT

**A.    The Court Should Deny Plaintiffs' Motion In Its Entirety.**

**1.    Plaintiffs Cannot Show Good Cause for Modification of the Scheduling Order and Amendment of the FAC.**

When a party seeks to amend a pleading after the deadline in the court's scheduling order, the "good cause" standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies. *See Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). "A party must meet this standard before a district court considers whether the party also meets [Fed. R. Civ. P.] Rule 15(a)'s more liberal standard." *Id.*; *see also Lee v. Park*, 720 F. App'x 663, 669 (3d Cir. 2017) (holding that the Rule 15(a)(2) standard that "[t]he court should freely give leave when justice so requires" yields to the good cause requirement when a scheduling order governs amendment of the pleadings.).

Whether "good cause" exists is determined by analyzing the moving party's due diligence. *See Rogers v. Wilmington Tr. Co.*, No. 21-1473, 2022 U.S. App. LEXIS 5653, at *13-14 (3d Cir. Mar. 3, 2022) (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010)). The burden of showing due diligence rests with the moving party. *Race Tires*, 614 F.3d at 84. Importantly, when a party fails to promptly amend based on known facts, courts have held that no good

seek leave to amend.  Judge Carlson declined to resolve the issues through the conference, and ordered the filing of the Motion.

cause exists to allow an amendment. *See Dimensional Communs., Inc. v. Oz Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005) (affirming magistrate judge's denial of leave to amend because party was in possession of the facts underlying its proposed amendment before the amendment deadline); *see also Assadourian v. Harb*, 430 F. App'x 79, 81 (3d Cir. 2011) (affirming denial of motion to amend complaint and holding that party had not acted diligently because amendment was based on information that plaintiff already possessed at the time the operative complaint was filed and it would unfairly prejudice the defendants to inject a new theory into the case at such a late date).

Here, Plaintiffs simply cannot establish diligence, including with respect to the December 3, 2021 deadline for amendment. As set forth above, Plaintiffs took no action during the first 81 days of the discovery period and then served discovery requests that revealed the flaws in their class definitions. However, by some point in December 2021, Plaintiffs knew or should have known enough to contemplate amendment of the FAC or, at a minimum, to seek amendment then—not nearly 10 months later. But they did not. Moreover, steps taken by Plaintiffs *after* the December 3, 2021 deadline should be irrelevant. *See Sonos, Inc. v. D&M Holdings, Inc.*, No. 1:14-cv-1330-RGA, 2017 U.S. Dist. LEXIS 15982, at *6 (D. Del. Feb. 3, 2017) ("To show good cause, [d]efendants must show diligence in pursuing their [new] defense prior to the deadline for amendments; whether [d]efendants acted

diligently, after the deadline, in addressing the deficiencies [p]laintiff identified in their First Amended Answer is simply irrelevant."). Accordingly, Plaintiffs have not shown good cause to amend the Scheduling Order.

> **2.    Even if They Had Established Good Cause, Plaintiffs Should Not Be Permitted to Amend Based on Undue Delay and Resulting Prejudice to NSL.**

"[A] [d]istrict [c]ourt may deny leave to amend on the grounds that amendment would cause undue delay or prejudice." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). "[T]he question of undue delay requires that [the court] focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). "[A]t some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Id.* For instance, prejudice exists when substantial discovery has already occurred and the proposed amendment would inject new legal theories into a case. *See Yochum v. FJW Inv., Inc.*, 715 F. App'x 174, 177 (3d Cir. 2017) (affirming denial of motion to amend based on substantial prejudice because defendants would have to "reopen discovery and re-develop the record on the new theory of liability"); *see also Angeli v. Liberty Mut. Ins. Co.*, No. 3:18-CV-703, 2020 U.S. Dist. LEXIS 43185, at *9 (M.D. Pa. Mar. 11, 2020) ("Here prejudice to [d]efendant is apparent in that allowing amendment at this stage of the proceedings would result in 'additional discovery, cost, and preparation

to defend against new facts or new theories.'"). The prejudice that NSL would suffer

from amendment is obvious.

As an initial matter, NSL long ago challenged the FAC. NSL's Motion to

Dismiss and Strike Class Allegations (ECF No. 39) was predicated on Plaintiffs'

FAC and the class definitions advanced therein, which were framed entirely around

alleged untimely IDR application processing. Plaintiffs now seek to introduce

completely new elements of class membership, such as: enrollment in a

"discretionary forbearance"; enrollment in a "discretionary interest-capitalizing

forbearance"; whether individuals "orally agreed to enroll in a hardship

forbearance"; or were required to provide multiple pay stubs with their IDR

applications. (*See* Simonetti Decl. at Ex. 3; Ex. 5; Ex. 6). These elements have

nothing to do with the timing of IDR processing, and cannot fairly be considered as

the basis for Plaintiffs' claims or class definitions. Therefore, NSL did not have an

opportunity to raise such issues in its initial pleading challenge.

Moreover, NSL has *completed* its fact discovery. Plaintiffs have already been

deposed, and NSL is preparing to move forward with dispositive motions. At this

late date, NSL should not be required to re-open discovery on additional issues.

### 3.   Plaintiffs' Contentions of Waiver and Permitted Delay Are Meritless.

"'Waiver' is the intentional relinquishment of a known right. It is a voluntary

act, and implies an election by the party to dispense with something of value, or to

forego some advantage which he might at his option have demanded and insisted on." *Boylan v. Jackson Nat'l Life Ins. Co.*, 353 Fed. Appx. 708, 711 (3d Cir. 2009). Plaintiffs argue that NSL waived its right to object to the Motion as untimely based on the negotiated condition that NSL accepted in order to obtain the 30-day discovery extension in November 2021. This assertion is meritless. As noted above, Plaintiffs misstate that communication, which was limited to "*a request by Plaintiffs for leave to amend to add parties*." (ECF No. 81-5 at p. 2) (emphasis added). Here, Plaintiffs are not seeking to add parties; they seek to substantially revise their class definitions. *See N. Sound Capital LLC v. Merck & Co.*, 938 F.3d 482, 492 (3d Cir. 2019) ("It is axiomatic that an unnamed class member is not 'a party to the class-action litigation before the class is certified.'"); *Bickings v. NHS Human Servs.*, No. 13-2894, 2014 U.S. Dist. LEXIS 10409, at *11 (E.D. Pa. Jan. 27, 2014) ("Unnamed class members are not technically part of the action until the court has certified the class.").

Moreover, Plaintiffs alone are responsible for the delay that occurred during the discovery period. Plaintiffs waited 81 days to serve initial discovery requests, and against a December 3, 2021 deadline for amendment. Plaintiffs cannot credibly suggest that NSL somehow shares blame for Plaintiffs' delay in advancing the case or gathering information that would have assisted them in determining whether amendment was necessary. *See* e-*LYNXX Corp. v. InnerWorkings, Inc.*, 958 F. Supp.

2d 569, 578 (M.D. Pa. 2013) (holding that agreement to postpone discovery does not excuse failure to promptly seek leave to amend).

**B.    The Court Should Deny Plaintiffs' Request for Discovery Relating to the New, Proposed Class Definitions.**

Plaintiffs contend that Courts within this district allow class definitions set forth in a complaint to be modified without a motion for leave. (Mot. at p. 7.) Based on this contention, Plaintiffs seek discovery about the new, proposed class definitions. Plaintiffs' argument, however, is misguided. To start, the decisions relied upon by Plaintiffs concern motions for class certification, not motions to compel discovery. Indeed, none of the authorities Plaintiffs cite support discovery regarding class definitions that were never pled.

Furthermore, a recent decision from the Chief Judge of the Middle District of Pennsylvania is directly contrary to Plaintiffs' position. *See In re Geisinger Health & Evangelical Cmty. Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21-CV-00196, 2022 U.S. Dist. LEXIS 100048 (M.D. Pa. June 3, 2022) (C.J., Brann). In *Geisinger Health*, the Chief Judge confirmed that, "in the class action context, courts generally do not permit plaintiffs to obtain discovery on entities and individuals outside the class definition and beyond the scope of the allegations in the complaint." *Id.*, at \*7; *see also Thomas v. Cendant Mortgage*, 2005 U.S. Dist. LEXIS 3780, 2005 WL 579903, at \*3 (E.D. Pa. Mar. 11, 2005) (denying discovery beyond class definition because "discovery is not intended as a fishing expedition permitting the

speculative pleading of a case first and then pursuing discovery to support it")
(quoting *Zuk v. Eastern Pa. Psychiatric Institute of the Medical College of Pa.*, 103
F.3d 294, 299 (3d Cir. 1996)). As the Chief Judge noted, "[t]his comports with the
Advisory Committee's admonition that parties 'have no entitlement to discovery to
develop new claims or defenses that are not already identified in the pleadings.'" *In
re Geisinger Health*, 2022 U.S. Dist. LEXIS 100048, at *7. The Chief Judge
ultimately refused to allow discovery outside the scope of the class definitions stated
in the complaint. *See id.*, at *11-12 ("If the [p]laintiffs believe they mistakenly
defined the class period too narrowly, that is an issue that must be addressed at the
pleadings stage; they cannot now use discovery to broaden the scope of the suit
beyond the class definition and class period provided in the [a]mended
[c]omplaint.").

Here, Plaintiffs seek discovery outside the scope of the class definitions in the
FAC. As a result, discovery on Plaintiffs' proposed class definitions would be proper
only if the Court permits another amendment to the FAC, which the Court should
not.

In addition, the Court should reject Plaintiffs' assertion that broad, general
allegations of supposed wrongdoing somehow bring the new definitions within the
four corners of the FAC. As noted, since May 25, 2018, when the FAC was filed,
this case has centered around Plaintiffs' allegations that NSL failed to timely process

IDR applications. (FAC ¶¶ 104, 106, 118, 120, 131, 139, 149, 161, 174, 161, 174).

This is confirmed by the very specific class definitions in the FAC:

### Nationwide Class

All individuals with federal student loans serviced by [NSL] who, at any time on or after a date six years prior to the filing of this action, 1) were enrolled in an IDR plan, and *timely submitted* a request to renew the plan, which was nonetheless cancelled *due to [NSL's] failure to process the renewal prior to the plan's expiration*, or 2) submitted a request for enrollment in an IDR plan that was not processed within 25 business days.

### Illinois Class

All Illinois residents with federal student loans serviced by [NSL] at any time on or after a date ten years prior to the filing of this action, *submitted a request for enrollment in an IDR plan that was not processed within 25 business days*.

(ECF No. 29 ¶ 87). Put differently, Plaintiffs would attempt to meet Rule 23's requirements, including typicality and adequacy of representation, and show that these borrowers were treated in similar ways with respect to *allegedly untimely processing of IDR applications*. As a matter of settled law, "the typicality prerequisite is intended to 'ensure that the class representatives are sufficiently similar to the rest of the class — in terms of their legal claims, factual circumstances, and stake in the litigation — so that certifying those individuals to represent the class will be fair to the rest of the proposed class.'" *Duncan v. Governor of the Virgin Islands*, 2022 U.S. App. LEXIS 24540, at *19 (quoting *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 597 (3rd Cir 2009)). And the adequacy

prerequisite's primary purpose is "to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class." *Id*. at *23. Thus, this clearly was Plaintiffs' class-wide theory of liability.

What does not appear in the FAC are the various, new elements that Plaintiffs pursue through class discovery, including enrollment in a "discretionary forbearance," enrollment in a "discretionary interest-capitalizing forbearance," whether individuals "orally agreed to enroll in a hardship forbearance," etc. (*See* Simonetti Decl. at Ex. 3; Ex. 5; Ex. 6). Accordingly, to support their proposed definitions, Plaintiffs are left to refer to very general allegations in the FAC. (*See* Mot. at 18-19.) For example, Plaintiffs point to the allegation that NSL "engaged in the unfair practice of denying, or failing to approve, IDR applications that should have been approved on a regular basis." This allegation, however, could cover a wide range of issues throughout the IDR application process, but the specific, supposed error that forms the basis for the FAC was failure to timely process IDR applications. Plaintiffs simply cannot use wide-ranging, broad allegations to call into question every aspect of IDR application processing, especially at this late juncture.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Motion.

Dated:  October 14, 2022                   Respectfully submitted,

                                               NAVIENT SOLUTIONS, LLC AND
NAVIENT CORPORATION

*/s/ Lisa M. Simonetti*
Lisa M. Simonetti (*Pro Hac Vice*)
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Phone: (310) 586-7700
Facsimile: (310) -586-7800
SimonettiL@gtlaw.com

Christopher A. Mair (*Pro Hac Vice*)
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Phone: (312) 456-1064
Facsimile: (312) 456-8435
MairC@gtlaw.com

Daniel T. Brier
Donna A. Walsh
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
T: 570-342-6100
dbrier@mbklaw.com
dwalsh@mbklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2022, a copy of the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CLASS DISCOVERY AND AMEND THE COMPLAINT** was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including Plaintiff's counsel as described below. Parties may access this filing through the Court's system.

Carlo Sabatini
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769

Daniel A. Edelman
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Anthony Fiorentino
FIORENTINO LAW OFFICES LTD.
180 N. LaSalle Street, Suite 2440
Chicago, Illinois 60602

*Attorneys for Plaintiffs and Proposed Class*

*/s/ Christopher A. Mair*
Christopher A. Mair