# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI, on behalf of themselves and the class members described herein, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

JILL BALLARD, REBECCA VARNO, and MARK POKORNI, on behalf of themselves and the class members described herein,

        Plaintiffs,

v.

NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., and NAVIENT SOLUTIONS, LLC,

        Defendants.

Docket 3:18-cv-00121-MEM-MCC

(Judge Malachy E. Mannion)

(Magistrate Judge Martin C. Carlson)

ELECTRONICALLY FILED

## <u>DECLARATION OF LISA M. SIMONETTI</u>

I, Lisa M. Simonetti, declare as follows:

1.    I am a Shareholder at the law firm Greenberg Traurig, LLP in Los Angeles, California, and I represent defendants Navient Corporation and Navient Solutions, LLC[1] in the above-captioned matter. As such, I am fully familiar with the facts and circumstances set forth herein.

2.    I respectfully submit this declaration in support of Defendants' Response in Opposition to Plaintiffs' Motion to Compel Class Discovery and Amend the Complaint.

---

[1] Navient Solutions, LLC formerly conducted business as Navient Solutions, Inc.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of NSL's Responses and Objections to Plaintiffs' Requests for Production.

4.      Attached hereto as **Exhibit 2** is a true and correct copy of a December 2021 email exchange between counsel for Plaintiffs and counsel for Defendants.

5.      Attached hereto as **Exhibit 3** is a true and correct copy of an April 14, 2022 email from Plaintiffs' counsel to Defendants' counsel.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of an April 29, 2022 email from Plaintiffs' counsel to Defendants' counsel.

7.      Attached hereto as **Exhibit 5** is a true and correct copy of an April 19, 2022 email from Plaintiffs' counsel to Defendants' counsel.

8.      Attached hereto as **Exhibit 6** is a true and correct copy of a May 9, 2022 email from Plaintiffs' counsel to Defendants' counsel.

9.      Attached hereto as **Exhibit 7** is a true and correct copy of an August 2, 2022 email from Plaintiffs' counsel to Defendants' counsel.

10.     Attached hereto as **Exhibit 8** are true and correct copies of selected docket entries from *Johansson, et al. v. Nelnet, Inc., et al.*, No. 4:20-cv-03069 (D. Neb.), including ECF Nos. 1, 55, 109, 137, and 172.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing statements are true and correct to the best of my knowledge and belief.

Executed on October 14, 2022.          */s/ Lisa M. Simonetti*
                                          Lisa M. Simonetti

# Exhibit 1

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI on behalf of themselves and the class members described herein,<br><br>    Plaintiffs,<br><br>v.<br><br>NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., AND NAVIENT SOLUTIONS, LLC,<br><br>    Defendants. | Civil No. 3:18-cv-00121-MEM-MCC |

## DEFENDANT NAVIENT SOLUTIONS, LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' REQUESTS FOR DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant Navient Solutions, LLC, formerly known as Navient Solutions, Inc. ("NSL"), hereby responds and objects to the Requests for Documents (the "Requests") propounded by plaintiffs Jill Ballard, Rebecca Varno, and Mark Pokorni, as follows:

## PRELIMINARY STATEMENT

NSL responds to the Requests based upon the investigation conducted in the time available since service of the Requests. As of the date of these Responses, NSL has had an insufficient opportunity to review all documents, interview all personnel and otherwise obtain information that may prove relevant in this case, including,

without limitation, through discovery of Plaintiffs and/or third parties. As a consequence, NSL's Responses are based upon information now known to NSL and that NSL believes to be relevant to the subject matter covered by the Requests. In the future, NSL may discover or acquire additional information, or may discover documents currently in its possession, bearing upon the Requests and NSL's Responses thereto. Without in any way obligating itself to do so, NSL reserves the right: (A) to make subsequent revisions, supplementation or amendments to these Responses based upon any information, evidence, documents, facts and things that hereafter may be discovered, or the relevance of which may hereafter be discovered; and (B) to produce, introduce or rely upon additional or subsequently acquired or discovered writings, evidence and information at trial or in any pretrial proceedings held herein. NSL incorporates this Preliminary Statement into each Response herein as if fully set forth.

## GENERAL OBJECTIONS

1.      Subject to the Preliminary Statement and to every general and specific objection stated herein, NSL responds to the Requests as set forth below. NSL's statements in Response to the Requests shall not be construed to be a waiver of any of the general or specific objections interposed herein.

2.      NSL objects to the Requests on the grounds that they seek to impose burdens on NSL that are inconsistent with, or in addition to, its discovery obligations pursuant to the Federal Rules of Civil Procedure and/or the Local Rules of this Court.

3.      NSL objects to the Requests on the grounds that they are not limited to a time period relevant or even proximate to the events at issue in this action.

4.      NSL objects to the Requests on the grounds that they are vague and ambiguous or use undefined terms.

5.      NSL objects to the Requests on the grounds that they are overbroad, unduly burdensome and harassing.

6.      NSL objects to the Requests on the grounds that they seek the documents that are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, applicable regulatory privileges or any other applicable privilege or immunity.

7.      NSL objects to the Requests on the grounds that they seek documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action.

8.      NSL objects to the Requests on the grounds that they seek confidential and proprietary business documents that belong to NSL and/or third parties. NSL will not provide any such documents without the execution by the parties, and entry

by the Court, of an appropriate Stipulation regarding Confidentiality and a Protective Order.

9.      NSL objects to the Requests on the grounds that they exceed the proper scope of discovery prior to class certification.

10.     NSL objects to the "Definitions" and "Instructions" sections of the Requests to the extent that they impose burdens on NSL that are inconsistent with, or in addition to, its discovery obligations pursuant to the Federal Rules of Civil Procedure and/or the Local Rules of this Court.  Further, and in particular:  (a) NSL objects to definition J on the grounds that it encompasses conduct beyond that at issue in this action; (b) NSL objects to definitions K and L to the extent that they refer to any entity beyond NSL itself; NSL provides these Responses only for itself; (c) NSL objects to the timeframe set forth in instruction 6; the relevant timeframe for this action, at most, is January 16, 2012 to present.

11.     NSL incorporates the Preliminary Statement and these general objections into each Response herein as if fully set forth.

## DOCUMENT REQUESTS

## REQUEST FOR PRODUCTION NO. 1:

All documents relating to individuals (a) with federal student loans serviced by NSL, NSI, NSL, or any of their predecessors in interest, (b) who at any time on or after Jan. 16, 2012 (c) were enrolled in an IDR plan, (d) and timely submitted a

request to renew the plan, (e) which was nonetheless cancelled because the renewal was not processed before the plan expired.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

NSL objects to this Request on the grounds that: (i) it seeks documents in which non-parties have a legitimate expectation and/or right of privacy; (ii) it exceeds the proper scope of discovery prior to class certification; (iii) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; (iv) it is overbroad, unduly burdensome, and harassing with respect to a demand for "all documents" relating to student loan borrowers and their accounts; and (v) it contains an assumption as to "timely" and complete submission.

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

## REQUEST FOR PRODUCTION NO. 2:

All documents relating to individuals (a) with federal student loans serviced by NSL, NSL, NSI, and/or their predecessors in interest, (b) who at any time on or after Jan. 16, 2012 (c) were enrolled in an IDR plan (d) and submitted a request for enrollment in an IDR plan that was not processed within 25 business days.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

NSL objects to this Request on the grounds that: (i) it seeks documents in which non-parties have a legitimate expectation and/or right of privacy; (ii) it exceeds the proper scope of discovery prior to class certification; (iii) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action, including based on an assumption of complete submission and processing within 25 business days; and (iv) it is overbroad, unduly burdensome, and harassing with respect to a demand for "all documents" relating to student loan borrowers and their accounts.

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

## REQUEST FOR PRODUCTION NO. 3:

All documents relating to California residents (a) with federal student loans serviced by NSL, NSL, NSI, and/or their predecessors in interest, who, at any time on or after Jan. 12, 2014 (c) were enrolled in an IDR plan, (d) and timely submitted a request to renew the plan, (e) which was nonetheless cancelled due to Navient's failure to process the renewal prior to the plan's expiration.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

NSL objects to this Request on the grounds that: (i) it seeks documents in which non-parties have a legitimate expectation and/or right of privacy; (ii) it exceeds the proper scope of discovery prior to class certification; (iii) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; (iv) it is overbroad, unduly burdensome, and harassing with respect to a demand for "all documents" relating to student loan borrowers and their accounts; and (v) it contains an assumption as to "timely" and complete submission.

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to New York residents (a) with federal student loans serviced by NSL, NSL, NSI, and/or their predecessors in interest, (b) who, at any time on or after Jan. 12, 2012, (c) were enrolled in an IDR plan, and (d) timely submitted a request to renew the plan, (e) which was nonetheless cancelled due to Navient's failure to process the renewal prior to the plan's expiration.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

NSL objects to this Request on the grounds that: (i) it seeks documents in which non-parties have a legitimate expectation and/or right of privacy; (ii) it exceeds the proper scope of discovery prior to class certification; (iii) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; (iv) it is overbroad, unduly burdensome, and harassing with respect to a demand for "all documents" relating to student loan borrowers and their accounts; and (v) it contains an assumption as to "timely" and complete submission.

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

**REQUEST FOR PRODUCTION NO. 5:**

All documents relating to Illinois residents (a) with federal student loans serviced by NSL, NSI, NSL, or any of their predecessors in interest, (b) who, at any time on or after Jan. 12, 2008, (c) submitted a request for enrollment in an IDR plan (d) that was not processed within 25 business days.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

NSL objects to this Request on the grounds that: (i) it seeks documents in which non-parties have a legitimate expectation and/or right of privacy; (ii) it exceeds the proper scope of discovery prior to class certification; (iii) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action, including based on an assumption of complete submission and processing within 25 business days; and (iv) it is overbroad, unduly burdensome, and harassing with respect to a demand for "all documents" relating to student loan borrowers and their accounts.

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

**REQUEST FOR PRODUCTION NO. 6:**

All documents relating to any of the plaintiffs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

NSL objects to this Request on the grounds that: (i) it is overbroad, unduly burdensome and harassing as requesting "all documents"; and (ii) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action.

Without waiving these objections, NSL responds to this Request as follows: NSL will produce the account histories, correspondence, and call recordings, if any, related to named plaintiffs.

## REQUEST FOR PRODUCTION NO. 7:

Contracts under which any Defendant has serviced, or is currently servicing, FFELP loans held by third parties (i.e., banks, financial institutions, guarantors, etc.). This request includes contracts under which Defendants are servicing, or have serviced, the FFELP loans of any individuals identified in response to Plaintiffs' Request for Production 1 above, and any "Life of Loan" contracts.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

NSL objects to this Request on the grounds that: (i) it seeks confidential, proprietary business documents; and (ii) it is vague and ambiguous with respect to "Life of Loan" contracts.

Without waiving these objections, NSL responds to this Request as follows: NSL will produce its agreement with defendant Navient Corporation, which addresses the servicing of certain loans. *See* Bates Nos. NSL_BALLARD_0002750 – NSL_BALLARD_0002774.

**REQUEST FOR PRODUCTION NO. 8:**

Contracts that any Defendant has had for the servicing or subservicing of federal direct loans which contracts were in force at any time between Jan. 12, 2008 and the present, including all extensions, modifications and amendments, schedules, addenda and schedules of fees or compensation for such servicing or subservicing, and task orders.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

NSL objects to this Request on the grounds that: (i) it seeks confidential, proprietary business documents; and (ii) it is overly broad, burdensome and harassing based on the request for "all extensions, modifications and amendments, schedules, addenda and schedules of fees or compensation for such servicing or subservicing, and task orders."

Without waiving these objections, NSL responds to this Request as follows: NSL will produce its agreement with defendant Navient Corporation, which addresses the servicing of certain loans.  *See* Bates Nos. NSL_BALLARD_0002750 – NSL_BALLARD_0002774.

**REQUEST FOR PRODUCTION NO. 9:**

Accounting records showing, month by month, the fees Defendants have received for servicing federal direct loans for the period between Jan. 12, 2008 and the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

NSL objects to this Request on the grounds that: (i) it seeks confidential, proprietary business documents; and (ii) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action.

Without waiving these objections, NSL responds to this Request as follows: The yearly amounts of compensation received from servicing federal student loans can be found in Navient Corporation's annual 10-K filings with the Securities and Exchange Commission, which are publicly available. *See also* Bates No. NSL_BALLARD_0003117 – NSL_BALLARD_0003275.

**REQUEST FOR PRODUCTION NO. 10:**

Accounting records from January 12, 2008 to the present showing revenue earned by Defendants, including servicing fees and interest income, from FFELP loans that any Defendant owned or serviced.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

NSL incorporates the Response to Request No. 9, as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 11:**

Documents showing the basis on which Defendants generate all forms of revenue from the servicing of FFELP loans, including servicing fees and interest income.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

NSL objects to this Request on the grounds that: (i) it seeks confidential, proprietary business documents; and (ii) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action.

Without waiving these objections, NSL responds to this Request as follows: Compensation for servicing student loans for the United States Department of Education is paid in accordance with the servicing contract.  The servicing contract is produced as Bates No. NSL_BALLARD_0002750 – NSL_BALLARD_0002774.

**REQUEST FOR PRODUCTION NO. 12:**

All documents showing the basis on which all revenue received by defendants for servicing federal student loans is computed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

NSL incorporates the Response to Request No. 11, as if fully set forth herein.

**REQUEST FOR PRODUCTION NO. 13:**

Instructions, guidelines and standards for the servicing of IDR Plans, including without limitation information related to: the calculation of required IDR Plan payment amounts; the renewal and recertification of IDR Plans; the granting or approval of forbearances; and the determination of whether to capitalize interest in connection with forbearances or the termination of IDR plans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

NSL objects to this Request on the grounds that: (i) it seeks confidential, proprietary business documents; (ii) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; and (iii) it is overbroad, unduly burdensome, and harassing, seeking documents beyond the scope of this action.

Without waiving these objections, NSL responds to this Request as follows: NSL will produce policies, procedures and training materials related to the processing of initial or renewal applications for income driven repayment programs. *See* Bates Nos. NSL_000001 – NSL_028116.

**REQUEST FOR PRODUCTION NO. 14:**

Manuals, instructions, guidelines, time frames and standards for Loan Servicing Activity.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

NSL objects to this Request on the grounds that: (i) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; (ii) it is vague and ambiguous as to what is sought; and (iii) it is overbroad, unduly burdensome, and harassing, and particularly based on the definition of "Loan Servicing Activity."

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

**REQUEST FOR PRODUCTION NO. 15:**

All documents containing statistical, aggregate, or summary information for any Loan Servicing Activity, including without limitation, reports to the Department of Education:

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

NSL objects to this Request on the grounds that: (i) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; (ii) it is vague and ambiguous as to what is sought; and (iii) it is overbroad, unduly burdensome, and harassing, and particularly based on the definition of "Loan Servicing Activity."

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

**REQUEST FOR PRODUCTION NO. 16:**

All documents discussing or analyzing the profitability of Loan Servicing Activity, the extension of the term of FFELP loans, and maintaining IDR Plans as opposed to forbearances or deferments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

NSL objects to this Request on the grounds that: (i) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; (ii) it is vague and ambiguous as to what is sought; and (iii) it is overbroad, unduly burdensome, and harassing, and particularly based on the definition of "Loan Servicing Activity."

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

**REQUEST FOR PRODUCTION NO. 17:**

Documents reflecting complaints, claims, audits, evaluations or investigations relating to any Defendant's Loan Servicing Activity.  Include documents whether sent directly to a defendant or made to or forwarded by a governmental agency (state or federal, administrative, executive or legislative) or other third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

NSL objects to this Request on the grounds that: (i) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; (ii) it is vague and ambiguous as to what is sought; (iii) it is overbroad, unduly burdensome, and harassing, and particularly based on the definition of "Loan Servicing Activity"; (iv) it seeks documents protected from disclosure by the attorney client privilege and/or work product doctrine; and (v) it seeks documents in which non-parties have a legitimate expectation and/or right of privacy.

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

**REQUEST FOR PRODUCTION NO. 18:**

Organizational charts showing Defendants' personnel engaged in administering federal student loans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

NSL objects to this Request on the grounds that: (i) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; and (ii) it is vague and ambiguous with respect to "administering" student loans.

Without waiving this objection, NSL responds to this Request as follows: Based on its objection, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

**REQUEST FOR PRODUCTION NO. 19:**

Reports from the Department of Education (including the Inspector General) concerning Defendants' federal loan servicing operations, and any comments or responses by Defendants regarding such reports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

NSL objects to this Request on the grounds that: (i) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; (ii) it is vague and ambiguous as to what is sought; (iii) it is overbroad, unduly burdensome, and harassing, seeking documents beyond the scope of this action; (iv) it seeks documents protected from disclosure by the attorney client

privilege and/or work product doctrine; and (v) it seeks documents in which non-parties have a legitimate expectation and/or right of privacy.

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

**REQUEST FOR PRODUCTION NO. 20:**

All forms of documents sent to three or more borrowers to describe Income-Driven Repayment Plans, or in connection with the approval, renewal or recertification of such plans, or to provide notice of deadlines or actions in connection with such plans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

NSL objects to this Request on the grounds that it is overbroad, unduly burdensome, and harassing with respect to seeking "all forms" of documents.

Without waiving these objections, NSL responds to this Request as follows: NSL will produce the documents that can be located through a reasonable search with respect to named plaintiffs.

**REQUEST FOR PRODUCTION NO. 21:**

All forms of documents sent to three or more borrowers to describe forbearances or deferments on federal student loans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

NSL objects to this Request on the grounds that: (i) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; and (ii) it is overbroad, unduly burdensome, and harassing, seeking documents beyond the scope of this action and "all forms" of documents.

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

**REQUEST FOR PRODUCTION NO. 22:**

All documents relating to any judicial or administrative proceeding in which any Defendant was accused of improper conduct with respect to the servicing of federal student loans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

NSL objects to this Request on the grounds that: (i) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; (ii) it is vague and ambiguous as to what is sought; (iii) it is overbroad,

unduly burdensome, and harassing, seeking documents beyond the scope of this action and "all documents"; (iv) it seeks documents protected from disclosure by the attorney client privilege and/or work product doctrine; and (v) it seeks documents in which non-parties have a legitimate expectation and/or right of privacy.

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to any claim made against any Defendant for improper conduct with respect to the servicing of federal student loans.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

NSL objects to this Request on the grounds that: (i) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; (ii) it is vague and ambiguous as to what is sought; (iii) it is overbroad, unduly burdensome, and harassing, seeking documents beyond the scope of this action and "all documents"; (iv) it seeks documents protected from disclosure by the attorney client privilege and/or work product doctrine; and (v) it seeks documents in which non-parties have a legitimate expectation and/or right of privacy.

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

## REQUEST FOR PRODUCTION NO. 24:

All communications with any third party regarding this litigation. This request does not include any communication that is solely with either (a) any Defendant's counsel, or (b) Plaintiffs' counsel. The request does include, without limitation, all notices given to any insurer and all correspondence accepting or declining coverage or reserving rights with respect thereto.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 24:

NSL objects to this Request on the grounds that: (i) it seeks documents that are protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine; (ii) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; and (iii) it seeks confidential, proprietary business documents that belong to NSL.

Without waiving these objections, NSL responds to this Request as follows: NSL will produce the requested, non-privileged documents that can be located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 25:**

Defendants' document destruction and retention policies, including documents suspending those policies as a result of this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

NSL objects to this Request on the grounds that: (i) it seeks documents that are protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine; (ii) it seeks documents that are neither relevant to any party's claim or defense nor proportional to the needs of this action; and (iii) it seeks confidential, proprietary business documents.

Without waiving these objections, NSL responds to this Request as follows: Based on its objections, NSL: (1) has not searched for or collected the requested documents; and (2) is therefore not withholding any identified document.

Dated:  January 17, 2022          Respectfully submitted,

*/s/ Lisa M. Simonetti*
_____

Lisa M. Simonetti (*Pro Hac Vice*)
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Phone:  (310) 586-7700
Facsimile:  (310) -586-7800
SimonettiL@gtlaw.com

Christopher A. Mair (*Pro Hac Vice*)
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Phone:  (312) 456-1064
Facsimile:  (312) 456-8435
MairC@gtlaw.com

Daniel T. Brier
Donna A. Walsh
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
T:  570-342-6100
dbrier@mbklaw.com
dwalsh@mbklaw.com

Counsel for Defendants
Navient Corporation and
Navient Solutions, LLC, formerly known
as Navient Solutions, Inc.

24

# Exhibit 2

| | |
|---|---|
| **From:** | Simonetti, Lisa (Shld-LA-LT) |
| **To:** | Cassandra Miller; Mair, Christopher (Assoc-CHI-LT) |
| **Cc:** | Dan Edelman; carlo@sabatinilawfirm.com; anthony@fiorentinolaw.net |
| **Subject:** | RE: Ballard, et al. v. Navient Corp. (34715) - Rule 37 Confirmation |
| **Date:** | Wednesday, December 22, 2021 11:59:50 AM |

With respect to the phrase "timely submitted," we disagree that processing is not implicit in the requests. Indeed, the gist of the claims is that plaintiffs "timely submitted" IDR applications, but NSL did not process them within certain timeframes. However, as I understood the conversation, you narrowed or clarified the requests to mean *any* document that was submitted at a certain time. In other words, even if the document was itself insufficient for processing (*e.g.*, not "complete" because lacking required backup information), that is a "submission." We are not conceding that this cures any issues with the requests, but that was the discussion.

Meanwhile, your email does not state any compromise or proposed resolution on the remaining issues. NSL continues to believe that the requests are overbroad, including based on seeking "all documents." In addition, the privacy concern is very significant, notwithstanding the protective order.

Please let us know if you would like to discuss further when you return from your vacation. And enjoy the holidays.

---

**From:** Cassandra Miller <cmiller@edcombs.com>
**Sent:** Tuesday, December 21, 2021 9:58 AM
**To:** Simonetti, Lisa (Shld-LA-LT) <simonettil@gtlaw.com>; Mair, Christopher (Assoc-CHI-LT) <mairc@gtlaw.com>
**Cc:** Dan Edelman <dedelman@edcombs.com>; carlo@sabatinilawfirm.com; anthony@fiorentinolaw.net
**Subject:** Ballard, et al. v. Navient Corp. (34715) - Rule 37 Confirmation

**\*EXTERNAL TO GT\***

Lisa,

This email is to confirm our discussions during our Rule 37 conference earlier today. We discussed Plaintiffs' first set of discovery requests and some general issues Defendants have encountered in preparing their responses which we have agreed to extend the deadline to 1/17/22.

With respect to the Interrogatories and/or document requests seeking the identification and files related to the class members, you raised an issue with the use of the phrase "timely submitted" (including variations on this phrase). As we discussed, for purposes of Defendants' responses to the first set of discovery requests, this phrase includes borrowers that submitted an application, certification, etc., whether or not Defendants deemed that document or submission "complete."

For those requests which include the identification of individuals or production files for those individuals whose submissions were "not processed," you indicated that if a submission was not deemed "complete" by Defendants, it would not be processed because it would not be reviewed until it was deemed "complete."  We understand that the submissions, according to your clients' procedures, are not processed until complete, but see no reason why this would prevent your client from responding to the request.  The reason for not processing a submission is not part of these requests.  The requests seek identification and/or production of account files for those borrowers that made a timely submission (as clarified above), but that submission was not processed (subject to other limitations identified in the specific requests).  Please respond accordingly.

You also took issue with providing the identification and documents related to the proposed class members as unnecessary at this stage of the litigation and "all documents" as being overly inclusive of extraneous information such as hand written notes, etc.  You also expressed privacy concerns in producing the requested borrower information.  As we discussed, the information sought is relevant to commonality, predominance and typicality requirements of R23.  For the privacy issue, there is a protective order in place which will protect the production of this information.  Additionally, at this time, we are agreeable to the redaction of personal identifying information, provided that sufficient information is produced to distinguish between borrowers and borrower account files.  For "all documents," we are agreeable to limiting these requests to the account files as they relate to IDR plans for the class members.  As to the need for identifying all class members and producing their account files before a class is certified, as we discussed, this information is necessary in order to establish R23 requirements and respond to any objections raised by Defendants in opposition to class certification, however, we may be agreeable to entering into a stipulation to accept the number of borrowers meeting the class definition and a sampling of class member files and/or limiting the parties to the use of the Plaintiffs files as representative of the class members for purposes of class certification (subject to Defendants producing a class list for notice purposes if a class or classes is certified).

We ask that Defendants' anticipated responses provide the information and documents with these discussions in mind.  Please let me know if this does not accurately reflect our discussion or if you would like to discuss further.  Otherwise, we anticipate receipt of responses by January 17, 2022 as agreed to by the parties.

Happy holidays to you and your family.

Sincerely,
Cassandra Miller

Cassandra P. Miller
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (Fax)

# Exhibit 3

| From: | Cassandra Miller |
|---|---|
| To: | Simonetti, Lisa (Shld-LA-LT) |
| Cc: | Mair, Christopher (Assoc-CHI-LT); Dan Edelman; carlo@sabatinilawfirm.com; anthony@fiorentinolaw.net; dbrier@mbklaw.com; dwalsh@mbklaw.com; Allen-Maye, Desiree (Para-LA-LT); Carly Roman |
| Subject: | RE: Ballard, et al. v. Navient Corp., et al. (34715) - Request for Rule 37 Conf |
| Date: | Thursday, April 14, 2022 12:59:43 PM |
| Attachments: | image001.png |

Lisa,

Based on our ongoing review of the over 28,000 pages of documents produced by Defendants, we intend to seek leave of court to file an amended complaint.   We write to seek Defendants' concurrence on our motion for leave to amend.  Additionally, to the extent that the amendment might impact any written discovery Defendants anticipate serving on the Plaintiffs, we wanted to ensure that Defendants were aware of our intention.

Please let us know Defendants' position on the motion for leave, or if you prefer, we can discuss the amendment further during our Rule 37 conference.

In that regard, and as a follow-up to our prior Rule 37 communications, please let us know if you are available for a meet and confer on **Tuesday, April 19th**.  We are available between 10am-2pm CT/11am-3pm ET.

We look forward to hearing from you.


Cassandra P. Miller
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (Fax)

---

**From:** simonettil@gtlaw.com <simonettil@gtlaw.com>
**Sent:** Monday, March 28, 2022 11:05 AM
**To:** Cassandra Miller <cmiller@edcombs.com>
**Cc:** mairc@gtlaw.com; Dan Edelman <dedelman@edcombs.com>; carlo@sabatinilawfirm.com; anthony@fiorentinolaw.net; dbrier@mbklaw.com; dwalsh@mbklaw.com; allenmayed@gtlaw.com
**Subject:** RE: Ballard, et al. v. Navient Corp., et al. (34715) - Request for Rule 37 Conf

I see that you are on vacation, Cassandra.  Let me know what works when you come back.

**Lisa Simonetti**
Shareholder

Greenberg Traurig, LLP
1840 Century Park East | Suite 1900 | Los Angeles, CA 90067-2121
T +1 310.586.7824 | F +1 310.586.7800 | C +1 310.365.5717
simonettil@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

# Exhibit 4

| From: | Cassandra Miller |
|---|---|
| To: | Simonetti, Lisa (Shld-LA-LT) |
| Cc: | Mair, Christopher (Assoc-CHI-LT); Dan Edelman; carlo@sabatinilawfirm.com; anthony@fiorentinolaw.net; dbrier@mbklaw.com; dwalsh@mbklaw.com; Allen-Maye, Desiree (Para-LA-LT); Carly Roman |
| Subject: | RE: Ballard, et al. v. Navient Corp., et al. (34715) -Follow Up Rule 37: 4/29 @ 2:30pm CT |
| Date: | Friday, April 29, 2022 1:00:46 PM |
| Attachments: | image001.png |
| | image002.jpg |
| | Plaintiffs Rule 37 Letter to OC 4-29-22 PDF Served_Discovery.PDF |

In anticipation of our meet and confer later today, attached please find correspondence sent on behalf of the Plaintiffs pursuant to FRCP 37.  We look forward to discussing these issues further with you during our scheduled call.

Thank you,

Cassandra

Cassandra P. Miller
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (Fax)

**From:** simonettil@gtlaw.com <simonettil@gtlaw.com>
**Sent:** Tuesday, April 19, 2022 4:19 PM
**To:** Cassandra Miller <cmiller@edcombs.com>
**Cc:** mairc@gtlaw.com; Dan Edelman <dedelman@edcombs.com>; carlo@sabatinilawfirm.com; anthony@fiorentinolaw.net; dbrier@mbklaw.com; dwalsh@mbklaw.com; allenmayed@gtlaw.com; Carly Roman <croman@edcombs.com>
**Subject:** RE: Ballard, et al. v. Navient Corp., et al. (34715) -Follow Up Rule 37: 4/29 @ 2:30pm CT

Desiree is out this week.  Chris will put it on the to-do list.

**Lisa Simonetti**
Shareholder

Greenberg Traurig, LLP
1840 Century Park East | Suite 1900 | Los Angeles, CA 90067-2121
T +1 310.586.7824 | F +1 310.586.7800 | C +1 310.365.5717
simonettil@gtlaw.com | www.gtlaw.com | View GT Biography



**From:** Cassandra Miller <cmiller@edcombs.com>
**Sent:** Tuesday, April 19, 2022 12:11 PM
**To:** Simonetti, Lisa (Shld-LA-LT) <simonettil@gtlaw.com>

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
**20 S. Clark Street, 15th floor**
**Chicago, Illinois 60603-3403**
**(312) 739-4200**
**(312) 419-0379 (FAX)**
Email: info@edcombs.com
www.edcombs.com

Date:  April 29, 2022
Re:  Ballard et al., v. Navient (34715), et al., Rule 37 Correspondence

Dear Ms. Simonetti:

Pursuant to FRCP 37 and in anticipation of our meet and confer scheduled for later today, we write in an effort to resolve our ongoing discovery disputes without the need for the Court's intervention.

Plaintiffs have served discovery requests on Navient that sought the identity of all borrowers who, at any time on or after Jan. 16, 2012, were "enrolled in an IDR plan, and timely submitted a request to renew the plan, which was nonetheless cancelled because the renewal was not processed before the plan expired."  On December 17, 2021, Navient requested a second 30-day extension on their deadline to respond to Plaintiffs' written discovery requests.  To ensure that the extended deadline would result in substantive responses being provided and to avoid anticipated issues identified by Navient in responding to the requests, the parties held a FRCP 37 conference on December 21, 2021.  During that meet and confer, the parties discussed the use of the phrase "timely submitted" in the requests and Navient's practice of not "processing" applications that it deemed "incomplete."  Plaintiffs explained that the requests sought information based on the timing of the submissions and not on the basis of whether Navient deemed those applications complete or not. Plaintiffs requested that Navient respond accordingly.

On January 17, 2022, Defendants served answers and objections which stated, in pertinent part, that this information would not be provided because it "exceeds the proper scope of discovery prior to class certification; seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of this action; and contains an assumption as to 'timely' and complete submission, which is improper and would impose unreasonable burden on NSL based on account-by-account review." As you know, Navient provided no substantive responses to those requests.

In a January 17, 2022 email, Defense Counsel Christopher Nair stated: "We understand Plaintiffs' position to be that even and (SIC) insufficient and incomplete IDR application would constitute a 'submission' for purposes of the requests. We disagree. Navient Solutions cannot process an IDR application/renewal that is not complete (e.g., missing signature, lacking proof of income, etc.) Processing does not begin until all of the necessary components of an application are received. In light of this, incomplete and insufficient IDR are irrelevant in addressing the timing of processing."

This email was following up on a December 22, 2021 email from Defense Counsel Lisa Simonetti, which stated: "With respect to the phrase 'timely submitted,' we disagree that processing is not implicit in the requests. Indeed, the gist of the claims is that plaintiffs "timely submitted" IDR

applications, but NSL did not process them within certain timeframes. However, as I understood the conversation, you narrowed or clarified the requests to mean any document that was submitted at a certain time. In other words, even if the document was itself insufficient for processing (e.g., not "complete" because lacking required backup information), that is a 'submission.' We are not conceding that this cures any issues with the requests, but that was the discussion."

During a recent phone call between Ms. Simonetti and Plaintiffs' counsel on April 19, 2022, Ms. Simonetti again expressed that Navient did not  respond or provide the identity of the borrowers contemplated by the aforementioned discovery requests because of Navient's practice of not processing applications which it deems "incomplete."  We asked whether Navient keeps records of loan borrower IDR application submissions (whether or not they are deemed complete by Navient).  The parties agreed to revisit these issues at today's meet and confer.

Over the past several months, Plaintiffs have undertaken an exhaustive review of the approximately 29,000 pages of documents that Navient has served thus far in the litigation in response to Plaintiff's discovery requests, which included various company instruction manuals, training presentations, and documents setting forth internal protocols on the servicing of IDR plans. Based on Plaintiffs' review of the various protocols involving record-keeping of dates and documents submitted by borrowers, it is still not apparent to Plaintiffs why the information sought in the aforementioned discovery request is not readily ascertainable.

Nonetheless, in the interest of avoiding a protracted discovery dispute, and moving this case forward expeditiously, without judicial intervention, Plaintiffs would be willing to narrow their class definitions in order to address the concerns stated in Navient's objections. This will considerably reduce the class size, but Plaintiffs are willing to do so if it will fully resolve the objections that have impeded discovery thus far.

Instead of identifying class members with respect to the dates and contents of their IDR submissions, Plaintiffs would be willing to define the class members based on the dates on which they were enrolled in forbearances, which would eliminate any need for you to make any determination as to whether any application was complete. The new class definitions would be as follows:

**Class 1:**

**Each person for whom Navient's records show all of the following:**

    a.  the borrower was enrolled in an IDR plan;

    b.  the income driven payments were cancelled when the plan was not renewed before the annual deadline;

    c.  a communication with the borrower occurred during which the borrower orally agreed to enroll in a hardship forbearance, which Navient then processed;

    d.  this communication occurred within 60 days before or after the cancellation of the income driven payments;

    e.  at the time of the enrollment in the hardship forbearance, the loan was not in default status, and Navient had not received a written request from the borrower for a hardship forbearance;

    f.  within 60 days after the hardship forbearance was applied, Navient renewed the income driven payments; and

    g.  the interest that accrued during the forbearance was capitalized.

**Class 2:**

**Each person for whom Navient's records show all of the following:**

    a.  the borrower was enrolled in an IDR plan;

    b.  the income driven payments were cancelled when the plan was not renewed before the annual deadline;

    c.  a communication with the borrower thereafter occurred during which the borrower orally agreed to enroll in a hardship forbearance, which Navient then processed;

    d.  at the time of the enrollment in the hardship forbearance, the loan was not in default status and Navient had not received a written request from the borrower for a hardship forbearance;

    e.  the interest that accrued during the forbearance was subsequently capitalized;

    f.  after the interest capitalization, Navient renewed the IDR plan, and the borrower's new monthly payment was either $0 or was lower than the previous IDR payment amount; and

    g.  the borrower subsequently received a non-interest-capping forbearance, which overlapped, fully or partially, with the hardship forbearance.

**Illinois subclass:**  Any class member who a) obtained their federal student loans while living in Illinois, or b) lived in Illinois when their loans were serviced by Nelnet.

**California subclass:**  Any class member who a) obtained their federal student loans while living in California, or b) lived in California when their loans were serviced by Nelnet.

**<u>New York subclass:</u>**  Any class member who a) obtained their federal student loans while living in New York, or b) lived in New York when their loans were serviced by Nelnet.

We trust that these revised class definitions will resolve any objections based on the purported inability to identify class members with respect to the date and contents of their IDR submissions.

We look forward to discussing these issues with you later today during our meet and confer.


<u>/s/Cassandra P. Miller</u>

# Exhibit 5

| | |
|---|---|
| **From:** | Cassandra Miller |
| **To:** | Simonetti, Lisa (Shld-LA-LT) |
| **Cc:** | Mair, Christopher (Assoc-CHI-LT); Dan Edelman; carlo@sabatinilawfirm.com; anthony@fiorentinolaw.net; dbrier@mbklaw.com; dwalsh@mbklaw.com; Allen-Maye, Desiree (Para-LA-LT); Carly Roman |
| **Subject:** | RE: Ballard, et al. v. Navient Corp., et al. (34715) -Follow Up Rule 37: 4/29 @ 2:30pm CT |
| **Date:** | Tuesday, April 19, 2022 2:10:50 PM |

**\*EXTERNAL TO GT\***

Lisa or Christopher – Could you re-send us the documents from 6/17 production along with any passwords needed?

Cassandra P. Miller
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (Fax)

---

**From:** Cassandra Miller
**Sent:** Tuesday, April 19, 2022 11:42 AM
**To:** 'simonettil@gtlaw.com' <simonettil@gtlaw.com>
**Cc:** mairc@gtlaw.com; Dan Edelman <dedelman@edcombs.com>; carlo@sabatinilawfirm.com; anthony@fiorentinolaw.net; dbrier@mbklaw.com; dwalsh@mbklaw.com; allenmayed@gtlaw.com; Carly Roman <croman@edcombs.com>
**Subject:** Ballard, et al. v. Navient Corp., et al. (34715) -Follow Up Rule 37: 4/29 @ 2:30pm CT

Below is the call-in information for our follow-up Rule 37 meet and confer scheduled for Friday, April 29th at 2:30pm CT:

Topic: Ballard v Navient Conference Call
Time: Apr 29, 2022 02:30 PM Central Time (US and Canada)

**Dial:  312 626 6799**
**Meeting ID: 815 2306 9942 (Note:  No participant ID, press # if requested)**
**Passcode: 212534**

The parties agreed to revisit the following:
1. Plaintiff specific documents which remain outstanding following a review of documents identified during today's call and any related discussion regarding amendment of complaint;
2. Defendants' discovery responses following a review of prior Rule 37 correspondence between the parties;
3. Status of DOE subpoena and deposition date;
4. Scope and scheduling of Rule 30(b)(6) deposition

Cassandra P. Miller
Edelman, Combs, Latturner & Goodwin, LLC

# Exhibit 6

| | |
|---|---|
| **From:** | Cassandra Miller |
| **To:** | Allen-Maye, Desiree (Para-LA-LT); carlo@sabatinilawfirm.com; Dan Edelman; anthony@fiorentinolaw.net; Carly Roman |
| **Cc:** | Simonetti, Lisa (Shld-LA-LT); Mair, Christopher (Assoc-CHI-LT) |
| **Subject:** | Ballard, et al. v. Navient Corp., et al. (34715) - Rule 37 Follow Up to Meet and Confer of April 29th |
| **Date:** | Monday, May 9, 2022 3:05:28 PM |
| **Attachments:** | image001.png |
| | Plaintiffs Rule 37 Letter to OC 4-29-22 PDF Served_Discovery.PDF |

---

**\*EXTERNAL TO GT\***

Lisa,

As a follow-up to our R37 meet and confer on April 29th, you had indicated that Navient would provide an update as to its review and position on the proposed modifications to the class definitions by Friday 5/6, but we have not received anything.  For reference, the modifications are those that we proposed in response to Navient's concerns and objections in responding to Plaintiffs' first set of discovery requests (attached again for your reference).

In that regard, it has come to our attention that in our attempt to accommodate and resolve Navient's processing/completeness objections, we overly narrowed the class definitions such that the claims of a group of borrowers previously included were inadvertently not covered by the modified definitions, including those of Jill Ballard.  As such, in addition to the definitions in the attached correspondence, the following definition should be reviewed and used by Navient in responding to the discovery requests:

Class 3:
a. the borrower was enrolled in an IDR plan;
b. prior to the annual renewal deadline, Navient received an IDR renewal application from the borrower to recertify the plan;
c. Navient did not process the application until after the IDR renewal deadline had passed;
d. on or after the passage of the deadline, the borrower's income-driven payments were canceled, and the borrower's accrued interest was capitalized; and
e. when the borrower's application was thereafter processed, it was deemed complete and timely, and the IDR plan was recertified.

Having not received a response, we would like to set up another Rule 37 conference for this week. Please let us know your availability on either:

Thursday 5/12 between 12:30pm CT- 3pm CT; or
Friday 5/13 between 10am CT-12pm CT or 3pm CT-4pm CT

In addition to the modified class discovery, we would also like to discuss the production of a Rule 30(b)(6) witness (between June 7-9) on both the specific account notes and its loan servicing practices.

Finally, this email will further confirm that we agreed to extend Navient's deadline to respond to Plaintiffs' Second Set of Discovery Requests until June 1, 2022.

Please let us know which date and time works for you.

Thank you,
Cassandra


Cassandra P. Miller
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (Fax)

**From:** allenmayed@gtlaw.com <allenmayed@gtlaw.com>
**Sent:** Wednesday, May 04, 2022 4:09 PM
**To:** carlo@sabatinilawfirm.com; Dan Edelman <dedelman@edcombs.com>; Cassandra Miller <cmiller@edcombs.com>; anthony@fiorentinolaw.net; Carly Roman <croman@edcombs.com>
**Cc:** simonettil@gtlaw.com; mairc@gtlaw.com
**Subject:** Ballard, et al. v. Navient Corp., et al.

Counsel, here are NSL's objections to the deposition notice.  And below is Lisa's note to you.

We drafted the objections based on Friday's meet and confer, and we are consulting the client on whether the proposed NSL dates (June 7-9) will work.  We understand that plaintiffs reserve their rights to pursue discovery beyond the narrowed topics as to NSL, and that plaintiffs currently are deferring a deposition of Navient Corp.  Meanwhile, we are available to take plaintiffs' depositions on June 16, 23, 24, 28-30.  Please let us know.

**Desiree Allen-Maye**
Paralegal

Greenberg Traurig, LLP
1840 Century Park East | Suite 1900 | Los Angeles, CA 90067-2121
T +1 310.586.7829  |  F +1 310.586.7800
allenmayed@gtlaw.com  |  www.gtlaw.com



If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.

**20 S. Clark Street, 15th floor**
**Chicago, Illinois 60603-3403**
**(312) 739-4200**
**(312) 419-0379 (FAX)**
Email: info@edcombs.com
www.edcombs.com

Date:  April 29, 2022
Re:  Ballard et al., v. Navient (34715), et al., Rule 37 Correspondence

Dear Ms. Simonetti:

Pursuant to FRCP 37 and in anticipation of our meet and confer scheduled for later today, we write in an effort to resolve our ongoing discovery disputes without the need for the Court's intervention.

Plaintiffs have served discovery requests on Navient that sought the identity of all borrowers who, at any time on or after Jan. 16, 2012, were "enrolled in an IDR plan, and timely submitted a request to renew the plan, which was nonetheless cancelled because the renewal was not processed before the plan expired." On December 17, 2021, Navient requested a second 30-day extension on their deadline to respond to Plaintiffs' written discovery requests.  To ensure that the extended deadline would result in substantive responses being provided and to avoid anticipated issues identified by Navient in responding to the requests, the parties held a FRCP 37 conference on December 21, 2021.  During that meet and confer, the parties discussed the use of the phrase "timely submitted" in the requests and Navient's practice of not "processing" applications that it deemed "incomplete."  Plaintiffs explained that the requests sought information based on the timing of the submissions and not on the basis of whether Navient deemed those applications complete or not.  Plaintiffs requested that Navient respond accordingly.

On January 17, 2022, Defendants served answers and objections which stated, in pertinent part, that this information would not be provided because it "exceeds the proper scope of discovery prior to class certification; seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of this action; and contains an assumption as to 'timely' and complete submission, which is improper and would impose unreasonable burden on NSL based on account-by-account review." As you know, Navient provided no substantive responses to those requests.

In a January 17, 2022 email, Defense Counsel Christopher Nair stated: "We understand Plaintiffs' position to be that even and (SIC) insufficient and incomplete IDR application would constitute a 'submission' for purposes of the requests. We disagree. Navient Solutions cannot process an IDR application/renewal that is not complete (e.g., missing signature, lacking proof of income, etc.) Processing does not begin until all of the necessary components of an application are received. In light of this, incomplete and insufficient IDR are irrelevant in addressing the timing of processing."

This email was following up on a December 22, 2021 email from Defense Counsel Lisa Simonetti, which stated: "With respect to the phrase 'timely submitted,' we disagree that processing is not implicit in the requests. Indeed, the gist of the claims is that plaintiffs "timely submitted" IDR

applications, but NSL did not process them within certain timeframes. However, as I understood the conversation, you narrowed or clarified the requests to mean any document that was submitted at a certain time. In other words, even if the document was itself insufficient for processing (e.g., not "complete" because lacking required backup information), that is a 'submission.' We are not conceding that this cures any issues with the requests, but that was the discussion."

During a recent phone call between Ms. Simonetti and Plaintiffs' counsel on April 19, 2022, Ms. Simonetti again expressed that Navient did not respond or provide the identity of the borrowers contemplated by the aforementioned discovery requests because of Navient's practice of not processing applications which it deems "incomplete."  We asked whether Navient keeps records of loan borrower IDR application submissions (whether or not they are deemed complete by Navient).  The parties agreed to revisit these issues at today's meet and confer.

Over the past several months, Plaintiffs have undertaken an exhaustive review of the approximately 29,000 pages of documents that Navient has served thus far in the litigation in response to Plaintiff's discovery requests, which included various company instruction manuals, training presentations, and documents setting forth internal protocols on the servicing of IDR plans. Based on Plaintiffs' review of the various protocols involving record-keeping of dates and documents submitted by borrowers, it is still not apparent to Plaintiffs why the information sought in the aforementioned discovery request is not readily ascertainable.

Nonetheless, in the interest of avoiding a protracted discovery dispute, and moving this case forward expeditiously, without judicial intervention, Plaintiffs would be willing to narrow their class definitions in order to address the concerns stated in Navient's objections. This will considerably reduce the class size, but Plaintiffs are willing to do so if it will fully resolve the objections that have impeded discovery thus far.

Instead of identifying class members with respect to the dates and contents of their IDR submissions, Plaintiffs would be willing to define the class members based on the dates on which they were enrolled in forbearances, which would eliminate any need for you to make any determination as to whether any application was complete. The new class definitions would be as follows:

**Class 1:**

**Each person for whom Navient's records show all of the following:**

    a.  the borrower was enrolled in an IDR plan;

    b.  the income driven payments were cancelled when the plan was not renewed before the annual deadline;

    c.  a communication with the borrower occurred during which the borrower orally agreed to enroll in a hardship forbearance, which Navient then processed;

d.  this communication occurred within 60 days before or after the cancellation of the income driven payments;

e.  at the time of the enrollment in the hardship forbearance, the loan was not in default status, and Navient had not received a written request from the borrower for a hardship forbearance;

f.  within 60 days after the hardship forbearance was applied, Navient renewed the income driven payments; and

g.  the interest that accrued during the forbearance was capitalized.

**Class 2:**

**Each person for whom Navient's records show all of the following:**

a.  the borrower was enrolled in an IDR plan;

b.  the income driven payments were cancelled when the plan was not renewed before the annual deadline;

c.  a communication with the borrower thereafter occurred during which the borrower orally agreed to enroll in a hardship forbearance, which Navient then processed;

d.  at the time of the enrollment in the hardship forbearance, the loan was not in default status and Navient had not received a written request from the borrower for a hardship forbearance;

e.  the interest that accrued during the forbearance was subsequently capitalized;

f.  after the interest capitalization, Navient renewed the IDR plan, and the borrower's new monthly payment was either $0 or was lower than the previous IDR payment amount; and

g.  the borrower subsequently received a non-interest-capping forbearance, which overlapped, fully or partially, with the hardship forbearance.

**Illinois subclass:**  Any class member who a) obtained their federal student loans while living in Illinois, or b) lived in Illinois when their loans were serviced by Nelnet.

**California subclass:**  Any class member who a) obtained their federal student loans while living in California, or b) lived in California when their loans were serviced by Nelnet.

**<u>New York subclass:</u>**  Any class member who a) obtained their federal student loans while living in New York, or b) lived in New York when their loans were serviced by Nelnet.

We trust that these revised class definitions will resolve any objections based on the purported inability to identify class members with respect to the date and contents of their IDR submissions.

We look forward to discussing these issues with you later today during our meet and confer.

<u>/s/Cassandra P. Miller</u>

# Exhibit 7

| From: | Cassandra Miller |
|---|---|
| To: | Simonetti, Lisa (Shld-LA-LT) |
| Cc: | Mair, Christopher (Assoc-CHI-LT); Rufus Coates Welsh; dbrier@mbklaw.com; dwalsh@mbklaw.com; Carly Roman; anthony@fiorentinolaw.net; Allen-Maye, Desiree (Para-LA-LT); Bookhardt, Samuel (Assoc-FTL-LT); carlo@sabatinilawfirm.com; Dan Edelman |
| Subject: | RE: Ballard v. Navient (34715) - Rule 37 Correspondence Follow-up |
| Date: | Tuesday, August 2, 2022 8:17:45 AM |
| Attachments: | ECLG Revised Class Definitions 7-29-22 Sent_Discovery.PDF |

Lisa- Attached are the revised class definitions/search queries.  I will confirm a time with you for a Friday R37 conference as soon as I hear back from my co-counsel on availability.

Cassandra P. Miller
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (Fax)

---

**From:** simonettil@gtlaw.com <simonettil@gtlaw.com>
**Sent:** Tuesday, August 02, 2022 5:43 AM
**To:** Cassandra Miller <cmiller@edcombs.com>
**Cc:** mairc@gtlaw.com; Rufus Coates Welsh <rcoateswelsh@edcombs.com>; dbrier@mbklaw.com; dwalsh@mbklaw.com; Carly Roman <croman@edcombs.com>; anthony@fiorentinolaw.net; allenmayed@gtlaw.com; bookhardts@gtlaw.com; carlo@sabatinilawfirm.com; Dan Edelman <dedelman@edcombs.com>
**Subject:** Re: Ballard v. Navient (34715) - Rule 37 Correspondence Follow-up

I'm traveling this week, but Friday May work.  I'm open except 9-12 PT.  In connection with data issues, you had stated an intent to amend the complaint.   Do you have a draft that we can review before a call?

Sent from my iPhone

On Aug 1, 2022, at 6:15 PM, Cassandra Miller <cmiller@edcombs.com> wrote:

**\*EXTERNAL TO GT\***

Lisa,
I wanted to circle back on scheduling a time to have our R37 conference regarding (1) production of emails associated with the plaintiffs and identified in the Stine deposition; (2) running the class definitions search queries (see attached); (3) scheduling the deposition of an IT person related to those queries and (4) Defendants' recent transcript designation as confidential.

Please let me know your availability this week to discuss.

Thanks.
Cassandra



Cassandra P. Miller
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (Fax)

**From:** Cassandra Miller
**Sent:** Thursday, June 30, 2022 3:18 PM
**To:** 'simonettil@gtlaw.com' <simonettil@gtlaw.com>; mairc@gtlaw.com; Rufus Coates
Welsh <rcoateswelsh@edcombs.com>; dbrier@mbklaw.com; dwalsh@mbklaw.com
**Cc:** Carly Roman <croman@edcombs.com>; anthony@fiorentinolaw.net;
allenmayed@gtlaw.com; bookhardts@gtlaw.com; carlo@sabatinilawfirm.com; Rufus
Coates Welsh <rcoateswelsh@edcombs.com>; Dan Edelman
<dedelman@edcombs.com>
**Subject:** Ballard v. Navient (34715) - Rule 37 Correspondence

Lisa,
Now that we have completed the deposition of Jeff Stine, we think it would be a good
time to circle back on our Rule 37 discussions.  Please let us know your availability next
week to schedule a Rule 37 conference.

One issue that we want to revisit are the class member search queries which we
previously provided.  Based on last week's testimony, we anticipate making some
adjustments to the search query language, however, we will need a copy of the
deposition transcript before making those changes.  We have been advised that we
should have the transcript around July8th-11[th].  In that regard, we wanted make sure
Defendants did not expend additional time or resources on determining the feasibility
of those searches until after we have had an opportunity to review the transcript to
determine what, if any, changes need to be made.  We can discuss this further during
our Rule 27 meeting.

Also, we requested all correspondence between Defendants and the Plaintiffs, but to
date, have not received any emails related to the Plaintiffs.  Stine testified that there
were emails associated with Plaintiffs' loans and specifically related to their IDR
renewal applications.  Please supplement your production with any correspondence
not already produced, including any emails sent or received from the Plaintiffs' related
to their student loans.  If any such documents/correspondence are being withheld,

please identify the basis for that withholding.

Finally, as you are aware, we served a subpoena on the Department of Education who recently requested that we provide a proposed stipulation similar to that agreed to by the DOE in a related case against Nelnet.  Attached for your review and consideration is the agreement reached in the Nelnet litigation which we intend to use as a model for this litigation.  We can discuss further at the Rule 37 conference.

We look forward to discussing these matters further at our Rule 37 meeting.

Thanks,
Cassandra

Cassandra P. Miller
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (Fax)

---

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

**Class 1 (Jill Ballard):**

a.  The borrower was enrolled in an IDR plan.

b.  Prior to the annual renewal deadline, Navient received an IDR renewal application from the borrower to recertify the plan.

c.  On or after the passage of the deadline, the borrower's income-driven payments were canceled, and the borrower's accrued interest was capitalized.

d.  When the borrower's application was thereafter processed, it was deemed complete and timely, and the IDR plan was recertified.

     **California sub-class**: Members of the Class who were living in California when the events stated in subpart c. occurred.

**Class 2 (Varno/Pokorni):**

a.  The borrower was enrolled in an IDR plan.

b.  The income-driven payments were cancelled when the plan was not renewed before the annual renewal deadline.

c.  Within 60 days thereafter, Navient enrolled the borrower in a discretionary forbearance.

d.  At the time of enrollment in the discretionary forbearance, the loan was not in default, and Navient had not received a written request from the borrower for a discretionary forbearance.

e.  The interest that accrued during the forbearance was capitalized.

     **New York sub-class**: Members of the Class who were living in New York when the events stated in subpart c. occurred.

     **Illinois sub-class**: Members of the Class who were living in Illinois when the events stated in subpart c. occurred.

**Class 3 (Varno):**

a.  Navient received notice that the borrower was applying for initial enrollment in an IDR plan, or was changing repayment plans.

b.  Within 60 days after receiving such notice, Navient enrolled the borrower in a discretionary interest-capitalizing forbearance.

   c. At least some interest that accrued during any part of the 60-day period following such notice was capitalized.

   **New York sub-class**: Members of the Class who were living in New York when the events stated in subpart b. occurred.

## Class 4 (Pokorni):

   a. The borrower applied to enroll in, or to renew, an IDR plan.

   b. The borrower submitted a completed IDR application, accompanied by proof of income, which was subsequently approved by Navient.

   c. Navient did not fully process the application until 45 days or more after it was received.

   **Illinois sub-class**: Members of the Class who were living in Illinois when the events in subpart c. occurred.

## Class 5 (Varno):

   a. The borrower was enrolled in an IDR plan.

   b. When the borrower applied to recertify the plan, it was renewed with a lower monthly payment amount (including $0.00), but the reduced amount was not scheduled to take effect until after one or more additional billing cycles.

   c. Navient enrolled the borrower in an interest-capitalizing discretionary forbearance to cover the intervening billing cycles under the higher monthly payment amount.

   **New York sub-class**: Members of the Class who were living in New York when the events stated in subpart c. occurred.

## Class 6 (Varno):

   a. The borrower was enrolled in an IDR plan.

   b. Navient timely received one paystub and the borrower's application to renew the plan.

   c. Navient did not process the application.

d.  Navient sent the borrower a written communication stating that the application could not be processed because the borrower did not submit two paystubs.

e.  That communication did not identify any other deficiency with the application.

f.  Thereafter, the borrower's partial financial hardship status expired and the standard repayment plan amount took effect.

**New York sub-class**: Members of the Class who were living in New York when the events stated in subpart f. occurred

# Exhibit 8

# Exhibit 8 - ECF No. 1

# UNITED STATES DISTRICT COURT,
## DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| ANDREW JOHANSSON, | ) | |
| HEATHER PORTER, | ) | |
| JON PEARCE, | ) | CLASS ACTION COMPLAINT |
| LINDA STANLEY, and | ) | |
| ANETRA FAISON, on behalf of themselves | ) | |
| and the Class Members described herein, | ) | Demand for Trial by Jury |
| | ) | |
| Plaintiffs, | ) | Designation: Trial Location |
| | ) | |
| v. | ) | |
| | ) | |
| NELNET, INC., a Nebraska Corporation, | ) | |
| NELNET DIVERSIFIED SOLUTIONS, LLC, | | |
| a Nebraska limited liability company, and | | |
| NELNET SERVICING LLC, a Nebraska | | |
| limited liability company. | | |
| | | |
| Defendants. | | |

Plaintiffs allege:

## Overview

1.  Plaintiffs ANDREW JOHANSSON, HEATHER PORTER, JON PEARCE, ANETRA FAISON, and LINDA STANLEY sue Defendants, NELNET, INC., a Nebraska Corporation, NELNET DIVERSIFIED SOLUTIONS LLC, a Nebraska limited liability company, and NELNET SERVICING, LLC, a Nebraska limited liability company. They allege that Defendants 1) breached their Servicing Contract[1] with the federal government, of which Plaintiffs were intended third-party beneficiaries; 2) breached the Promissory Notes[2] that set forth the terms of Plaintiffs' federal student loans; and 3) violated state laws by making

---

[1] A prototype Servicing Contract appears at Attachment 1.
[2] A prototype Promissory Note appears at Attachment 2.

negligent representations to borrowers about their student loans, and engaging in other unfair, deceptive, and abusive practices as set forth below.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this lawsuit is brought as a class action on behalf of proposed classes, each in excess of 100 members, the aggregate claims of the Class Members exceed $5 million exclusive of interest and costs, and one or more members of each Class is a citizen of a different state than one or more Defendants.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 139l(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## NATURE OF THE ACTION

4.      Since June 2009, Defendant Nelnet Inc., and its subsidiaries, Nelnet Servicing LLC and Nelnet Diversified Solutions, LLC, acting as agents on behalf of Nelnet Inc., (collectively, "Nelnet") have served as one of four primary student loan servicers of U.S. federal student loan debt. Loan servicers, who contract with the U.S. Department of Education ("DOE") perform services such as collecting payments, responding to borrower inquiries, processing applications loan deferment or forbearance, and administering federal student loan repayment programs.

5.      Nelnet continues to receive servicing fees for administering federal IDR plans.

6.      As federal loan servicers, Defendants are responsible for administering the various Income-Driven Repayment Plans ("IDR plans") offered by the federal government. IDR plans allow federal loan borrowers to make affordable monthly payments based on their gross income and family size. Borrowers who enroll in IDR plans become eligible for loan forgiveness after making a certain number of qualifying payments under the plan. For instance, under the "Income-

Based Repayment Plan," the borrower's monthly payments are capped at fifteen percent of discretionary income, and the remaining debt is discharged after twenty-five years of qualifying payments.

7. Nelnet improperly canceled or failed to renew Plaintiffs' IDR plans, and improperly delayed the process whereby borrowers enroll in and renew such plans. These actions caused Plaintiffs and many other borrowers to incur thousands of dollars in improper fees and charges and thwarted their progress toward loan forgiveness.

8. Nelnet also improperly placed the loans of countless borrowers into hardship forbearance during the IDR recertification process, causing unpaid accrued interest to be "capitalized," or added to the borrower's principal loan balance.

9. These practices caused Plaintiffs and similarly situated borrowers to suffer financial damages. Plaintiffs and Class Members lost out on qualifying loan payments toward forgiveness, were overcharged, and were deprived of benefits of federal laws intended to protect them from burdensome debt.

10. These practices are believed to be systemic, affecting all Class Members. Discovery is required to ascertain the means, methods, and scope of harm caused by Defendants.

11. Defendant's actions are typical of widespread misconduct by federal loan servicers.[3] Between March 1 and August 31, 2016, a frequent complaint to the Consumer Financial Protection Bureau (CFPB) against Defendants involved irregularities relating to enrollment in, and renewal of, IDR plans.[4]

---

[3] *See* Annual Report of the CFPB Student Loan Ombudsman, October 2016, available at
https://www.consumerfinance.gov/data-research/research-reports/2016-annual-report-cfpb-student-loan-ombudsman/ (last visited May 8, 2018).
[4] *Id.*

12.     Nelnet received six hundred and twenty-nine CFPB complaints from federal student loan borrowers between September 1, 2016 and August 31, 2017. Seventy-nine percent of these complaints involved difficulties borrowers encountered in dealing with their lender or servicer.[5] Plaintiffs are student loan borrowers and are among the persons victimized by Defendants.

## BACKGROUND ON INCOME-DRIVEN REPAYMENT PLANS

13.     Federal student loans are loans that are either owned or insured by the federal government pursuant to the Higher Education Act. Repayment options to fit a borrower's short-term and long-term needs are provided.

14.     The "Standard Repayment Plan" for federal student loans is the payment plan used by default if no other payment plan is chosen. Under the Standard Repayment Plan, monthly payments are set to repay the borrower's balance within 10-30 years. Many borrowers who cannot afford payments under the Standard Repayment Plan enroll in one or over time more than one of the IDR plans with lower monthly payments. For instance, under the "Income Based Repayment" plan, the borrower's monthly payments are capped at fifteen percent of discretionary income, and the remaining debt is discharged after twenty-five years of qualifying payments. Under some IDR plans, monthly payments can be as low as $00.00 per month.

15.     When borrowers enroll in an IDR plan, the plan is effective for a one-year period.[6] In order to renew the plan for each subsequent year, borrowers must annually recertify their income level and family size by submitting an IDR renewal application, along with proof of income, to their loan servicer.[7]

---

[5] *Id.*

[6] *See, e.g.*, 34 C.F.R. § 685.209 (a)(5).

[7] *Id.*

4

16.     Several months prior to the expiration of an IDR plan, the loan servicer must send the borrower a written notice of the "annual deadline" by which the borrower must recertify the plan to continue with income-based payments under the plan.[8] This notice must include the consequences of failing to recertify the plan by the annual deadline. *See id.* Among these consequences are an increase in monthly payments from an affordable amount, based on the borrower's income, to the amount required under the Standard Repayment Plan, which is often several times higher.[9] In addition, any accrued interest is "capitalized" when the borrower does not timely renew the plan.[10] "Capitalization" refers to the addition of accrued interest to the principal loan balance, which can significantly increase the amount owed on the loan.

17.     Federal law provides certain protections for borrowers enrolled in IDR plans who timely renew their IDR plans. For instance, when a loan servicer receives a borrower's IDR renewal application and proof of income before the annual renewal deadline, the loan servicer is prohibited from cancelling the IDR plan while the request is being processed. Rather, the servicer "must maintain the borrower's current scheduled monthly payment amount" until the IDR renewal application is fully processed.[11] If the loan servicer timely receives the borrower's IDR renewal application and proof of income, the income-driven payments are to continue until the application has been fully processed, regardless of how long it takes the loan servicer to complete that process.

18.     Loan servicers must "promptly" process all IDR renewal applications.[12] Thus, the loan servicer has an *affirmative duty* to efficiently process the borrower's recertification materials to ensure smooth re-enrollment from one year to the next.

---

[8] *See* 34 C.F.R. § 685.209 (a)(5)(iii).
[9] *See* 34 C.F.R. § 685.209 (a)(5)(iii)(B).
[10] *Id.*
[11] *See* 34 C.F.R. § 685.209 (a)(5)(viii)(A)
[12] *Id.*

19.     If a borrower submits an IDR renewal application and proof of income, but the loan servicer determines that additional paperwork is needed to process the borrower's request, the loan servicer must place the borrower's account on an administrative forbearance.[13] Under this provision, a borrower is entitled to a 60-day forbearance, *with no resulting capitalization of interest*, if the purpose of the forbearance is to allow the loan holder to collect and process documentation supporting the borrower's request for any changes to the repayment plan.

20.     Separate from administrative forbearances, borrowers may request a hardship forbearance if the borrower is unable to make payments "due to illness or other acceptable reasons."[14] Hardship forbearances, however, are not authorized as a means to provide loan servicers with additional time to process IDR applications.

21.     Hardship forbearances   are far costlier to the borrower than administrative forbearances  because, with a hardship forbearance, any unpaid interest that accrues during the forbearance gets "capitalized," or added to the borrower's loan balance.

## PLAINTIFFS

### ANDREW JOHANSSON

22.      At all times relevant hereto, Andrew Johansson was a resident of Chicago, Illinois. He received various federal loans under the Federal Direct Loan Program to help pay the costs of his education. These loans are serviced by Nelnet. Pursuant to Johansson's promissory note with the federal government, they must be serviced in accord with federal law and applicable state law.

23.     In 2017, Johansson was enrolled in the IBR plan and making monthly payments in the amount of $142.66. In September of 2017, prior to the annual recertification deadline, he mailed  to NelNet his application to recertify the plan, accompanied by tax records documenting

---

[13]  This action is required by 34 C.F.R. §685.205(b)(9).
[14]   34 C.F.R § 685.205(a).

his gross income. Johansson did all that was required of him to continue the IBR plan. However, in November of 2017, he received from NelNet a bill for a payment of $1,173.60 pursuant to the Standard Repayment Plan.

24.     Nelnet failed to properly process Johansson's IDR renewal application in accordance with federal law. As a proximate result, Mr. Johansson's IBR plan was canceled.

25.     When Johansson learned that Nelnet did not process his recertification materials, he re-submitted them electronically using Nelnet's online portal. He did so on November 22, 2017. Nelnet eventually approved his second submission, but the plan was not renewed until January of 2018. Johansson did all that was required and did so on a timely basis.

26.     Johansson could not afford payments of $1,173.60. He was directed by Nelnet to place his loans into hardship forbearance while his IBR recertification materials were processed even though hardship forbearance is not authorized for this purpose. Despite so instructing him, Nelnet did not perform as promised when Johansson's forbearance election was made.

27.     Rather than placing Johansson's loans into hardship forbearance only until his IDR renewal application was processed, Nelnet applied a hardship forbearance to his account for fourteen months – from October of 2017 until December of 2018. During this time, and interest accrued and was capitalized. This increased the balance on Johansson's student debt rather than decreasing it. It put him farther in debt rather than progressing him toward freedom from student debt.

28.     While this unauthorized capitalization of interest was occurring, Mr. Johansson contacted Nelnet on multiple occasions and demanded that the forbearance be canceled and that he be billed according to his approved IBR plan. Nelnet took no action to discontinue the forbearance and resume his IDR plan. Instead, it caused interest to continue to capitalize. Now

that's action was required to stop the capitalization, reinstituted the IDR plan, and effectuate Mr. Johansson's rights as a borrower.

29. As a proximate result of the hardship forbearance, Johansson incurred an interest capitalization of $26,194.27 in January of 2018.

**HEATHER PORTER**

30. Heather Porter was a citizen of Missouri at all times relevant. In 2013 she consolidated her various federal student loans into a single Federal Direct Consolidation Loan. This loan is serviced by Nelnet. Pursuant her promissory note with the federal government, it must be serviced in accordance with federal law and applicable state law.

31. Throughout 2018, Porter was enrolled in an IDR plan and made income-driven payments. On December 10, 2018, she received an email stating that her plan would expire unless renewed by the deadline of January 29, 2019. The email advised that she would be billed in the amount of $1,174.47 under the Standard Repayment Plan if she did not timely renew the plan.

32. On December 14, 2018, Porter electronically submitted to Nelnet her IDR renewal application and proof of income as required. On the same date, Nelnet sent Porter confirmation stating that her IDR application had been received and would be reviewed shortly. Porter did all that was required and did so on a timely basis.

33. On January 9, 2019, Nelnet advised Porter in writing, "This is your final reminder to recertify your income-driven repayment plan. If you do not recertify by submitting an application, income documentation, and family size by 01/29/2019, your regular monthly payment amount on your income-driven repayment plan will change to $1,174.47." This message contradicted Nelnet's message from December 14, 2018, acknowledging receipt of her IDR renewal application. Because of the conflicting statements, Porter faxed a copy of her previously

submitted and received  IDR renewal application with an updated proof of income. She sent these materials to nail net on  January 10, 2019.

34.     On March 21, 2019, Nelnet sent Porter a demand that owed a payment of $1,174.47 required to be paid by the following day. Porter then learned that, despite her timely submissions of two IDR renewal applications with proof of income, Nelnet canceled her IDR plan without authorization or justification to do so. As a proximate result, Porter began to incur costly capitalization of interest that increase the principal balance of her student debt and increased her interest costs. Now Mentz unauthorized actions put Porter  farther in debt rather than progressing her toward freedom from student debt.

35.     On April 1, 2019, Porter emailed to Nelnet the paystubs   previously faxed on January 10, 2019. She she could not afford payments of $1,174.47.  Nelnet directed her to enroll in a hardship forbearance while her income documentation was being processed, even though hardship forbearances are not permitted for such purposes under federal law. The forbearance lasted for several months, resulting in an additional, and unauthorized interest capitalization, resulting in additional interest expense and increased debt.

## JON PEARCE

36.     At all times relevant hereto, Jon Pearce was a resident of Texas. He received various federal loans under the Federal Direct Loan Program to help pay costs of his education. These loans are serviced by Defendants. Pursuant to his promissory note with the federal government, they must be serviced in accordance with federal law and applicable state law.

37.     In or around late 2016, Pearce attempted to enroll in an IDR plan. On November 3, 2016, Pearce electronically submitted an IDR application with proof of income to Nelnet using a self-certified letter documenting his income. He included this letter pursuant to instructions on the

9

renewal application which stated, "If documentation [of your income] is not available or you want to explain your income, attach a signed statement explaining each source of income and giving the name and the address of each source of income." Pearce modeled his self-certified letter after a template provided by Nelnet.

38.     In December of 2016, Nelnet denied Pearce's IDR application because his signed statement documenting his income did not specify that the income listed was his "gross" income. However, on the renewal application, where the instructions state, "This is how you document your income," there is no instruction requiring that the borrower use the word "gross" when providing a self-certified letter documenting their income. The instructions merely require "a signed statement explaining each source of income and giving the name and the address of each source of income."

39.     Over the next two months, Pearce continued diligent attempts to enroll in an IDR plan by submitting additional IDR applications and proof of income to Nelnet. However, on multiple occasions, he received email from Nelnet stating that his application could not be processed because "more information" was needed, even though each submission complied with the instructions on the IDR application and each was complete. At no time did Nellnet specify what "more information" it sought. Pearce submitted eight IDR applications in November and December of 2016,, each of which was sufficiently complete to a been acted upon, and each of which was not acted upon on a timely basis by Nelnet. Nelnet because the delays in Pearce's enrollment process; Pearce did not. He did all that was required and did so on a timely basis. Pearce was eventually enrolled in an IDR plan with monthly payments in the amount of $98.50.

40.     In October of 2018, Pearce experienced difficulties recertifying his IDR plan. At or around that time, he received detailed instructions from Nelnet stating how his income

documentation should be provided to renew his IDR plan. Pearce then timely submitted an IDR renewal application to Nelnet. The IDR renewal conformed to the instructions Nelnet provided. He used appropriate income tax forms to document his income. Nonetheless, Nelnet informed him several weeks later that "more information was needed" to renew the plan. It did not specify what was needed.

41. Pearce again re-submitted documents and tax forms to Nelnet via www.studentloans.gov, DOE's online portal. Nonetheless, on December 3, 2018, Pearce received another email from Nelnet stating that "more information was needed" to recertify his IDR plan. The same day, Pearce also received instructions from Nelnet detailing how his proof of income must be documented. No explanation was provided about deficiencies in prior submissions. Pearce followed these new instructions, submitted more documentation of his income, and again fully performed all that was required of him. Nonetheless, Nelnet again informed Pearce that his income documentation was insufficient, and that he would be required to start the process from the beginning using a self-certified letter verifying his income. Nelnet did not tell Pearce what was deficient about his prior submissions.

42. Throughout December 2018, Pearce continued to receive inconsistent instructions from Nelnet regarding the manner of income documentation required to renew his IDR plan. He made more submissions of income documentation using documents that complied with Nelnet's stated requirements. Repeatedly, his submissions were declared "not sufficient" though no insufficiencies were identified. Pearce made at least five distinct IDR renewal application with Nelnet, but Nelnet refused to process these materials on each such occasion.

43.     As a proximate result of the actions by Nelnet, Pearce incurred multiple interest capitalizations, significantly increasing his loan balance, driving up interest cost, and forcing Pearce into greater debt.

44.     At the time of these events, Pearce was employed by a government agency, and he continues to be so employed. Accordingly, Pearce was qualified for and intended to obtain an eventual full discharge of his loans under the Public Service Loan Forgiveness (PSLF) program. Under this program, Direct Loan borrowers who make 120 qualifying monthly payments under an IDR plan while working full-time for a governmental agency or non-profit organization can have the remainder of their balance forgiven.

45.     Nelnet prevented Pearce from making qualifying IDR payments during his period of employment as a public service employer. This means Pearce must make more payments before he can qualify for balance forgiveness, and he has no career options but to remain in government employment for a longer period than otherwise would have been required to receive a discharge of his loans. Nelnet's misconduct or malfeasance proximately caused Pearce to suffer capitalized interest, increased debt and debt service costs, delayed qualification for income forgiveness, truncated career choices, loss of time in his life to build a career he could have chosen had he been free to leave government employment when loan forgiveness occurred, and both general and special damages.

**LINDA STANLEY**

46.     At all times relevant, Linda Stanley was a resident of Colorado. She received various federal student loans to help pay costs of her education pursuant to the Federal Direct Loan Program. These loans are serviced by Defendants. Pursuant to her promissory note with the federal government, they must be serviced in accordance with federal and applicable state law.

47.     Stanley enrolled in the IBR plan and was making income-driven payments of less than $100 per month. She intended to, and did all things necessary to, maintain and renew her IDR plan. Stanley's student debt is serviced by Nelnet.

48.     In or around January of 2018, as Stanley prepared to renew her IBR plan, she did not yet have completed tax returns, which she had used to document her income. She contacted Nelnet for directions Nelnet told Stanley to place her hardship loans in temporary forbearance until her tax returns were available and that there would be no adverse consequence from doing so. Stanley relied upon the affirmative representation of Nelnet that there would be no adverse consequence of placing her loans into a hardship forbearance until her 2017 tax returns were completed. He placed the loans in forbearance. Later, Nelnet imposed penalties for her doing so.

49.     Nelnet's representation to Stanley that she should place her loans into hardship forbearance until her taxes were completed was deceptive because it failed to inform Stanley that she could use a recent paystub to document her income and her tax returns were not required, and because hardship forbearances are not authorized for this purpose under federal law. Pursuant to 34 C.F.R § 685.205(a), such forbearances are only permitted when, "due to poor health or other acceptable reasons, the borrower…is currently unable to make scheduled payments."

50.     In or around February of 2018, Stanley submitted her recently completed tax returns to Nelnet to recertify her IDR plan. Nelnet did not accept Stanley's submissions on the basis that the "adjusted income" line of her tax return was "not legible" and therefore could not be processed. Stanley was then directed to complete a "self-certification letter" documenting her "gross income."

51.     Stanley drafted a type-written self-certification letter modeled after an example of a self-certification letter that Nelnet provided. Stanley submitted the letter in May of 2018.

13

52.     Nelnet failed to process Stanley's May 2018 letter on the basis that certain portions of the letter needed to be written out "by hand." In fact, this requirement has no basis in applicable federal law. Nelnet continued to refuse to process Stanley's renewal through July 2018. Stanley, however, complied with all requirements for IDR renewal.

53.     On July 5, 2018, Stanley submitted another self-certification letter to Nelnet . While these documents were being processed, Nelnet moved Stanley's loans into a hardship forbearance to "keep her account current."  However, this was an unauthorized and unlawful action as hardship forbearances are only permitted when, "due to poor health or other acceptable reasons, the borrower…is currently unable to make scheduled payments."[15]

54.     As a proximate result of the unauthorized hardship forbearance, approximately $7,000 of accrued interest was capitalized on Stanley's loans.

55.     In July of 2018, Nelnet erroneously calculated Stanley's repayment amount to be approximately $450, despite the fact that her income had not substantially increased since her prior pay period, when her payments were less than $100 per month.

56.     On July 27, 2018, Stanley notified Nelnet that the payment amount she was given was erroneous, but Nelnet took no action to correct the miscalculation. Stanley sent Nelnet additional IDR applications with copies of tax records to correct Nelnet's miscalculation, but Nelnet did not use these materials to enroll her in an IDR plan with the correct repayment amount. As a proximate result, Stanley was forced to place her loans into a costly hardship forbearance, triggering an additional interest capitalization.

57.     At the time of the aforesaid incidents, Stanley was employed by a government agency. She planned to  remain in government employment and  earned the right to eventual

---

[15] 34 C.F.R § 685.205(a).

discharge of her loans under the Public Service Loan Forgiveness (PSLF) program. The PSLF program allows Direct Loan borrowers who make 120 qualifying monthly payments under an IDR plan while working full-time for a governmental agency or non-profit organization to have the remainder of their balance forgiven.

58.     Nelnet prevented Pearce from making qualifying IDR payments during his period of employment as a public service employer. This means Pearce must make more payments before he can qualify for balance forgiveness, and he has no career options but to remain in government employment for a longer period than otherwise would have been required to receive a discharge of his loans.  Nelnet's misconduct or malfeasance proximately caused Pearce to suffer capitalized interest, increased debt and debt service costs, delayed qualification for income forgiveness, truncated career choices, loss of time in his life to build a career he could have chosen had he been free to leave government employment when loan forgiveness occurred, and both general and special damages.

59.      Stanley also incurred adverse credit reporting because of Nelnet's actions as set forth above.

**ANETRA FAISON**

60.     At all times relevant hereto, Anetra Faison was a resident of Michigan. She received various federal student loans to help pay costs of her education pursuant to the Federal Family Education Loan Program (FFELP). These loans are serviced by Defendants. Pursuant to her promissory note, they must be serviced in accordance with federal and applicable state law.

61.     Prior to 2018, Faison enrolled in the IBR plan and was making $00.00 monthly payments based on her  income at the time.

62.     In or around September of 2018, Faison received from Defendants a notice to renew her IBR plan by a specified renewal deadline. Before this deadline, Faison submitted an IDR renewal application and proof of income to Nelnet. Faison submitted these materials electronically and by first class mail. Her submission was complete and the she did all things required of her to qualify for renewal.

63.     For several months and on several occasions after receiving Faison's IBR renewal application and proof of income, Nelnet directed her to provide additional income documentation, even though she had already provided income documentation that satisfied DOE's requirements. Faison's renewal application was delayed. This caused deprivation of the opportunity to make IBR payments for several months in 2019. This significantly delayed progress toward loan forgiveness.

64.     Nelnet's failure to process and renew Faison's IBR plan prior to its expiration in 2018, resulted in her IBR plan being cancelled. This proximately caused Faison to incur a capitalization of accrued interest, increased the principal balance of her death and her interest costs, and drove her farther into debt rather than moving her closer to freedom from student debt.

65.     Faison was unable to afford her monthly payments after Nelnet cancelled her IBR plan. This caused Faison's loans to be declared delinquent for several months, caused her to incur adverse credit reporting.

## DEFENDANTS

66.     Defendant Nelnet Inc. was founded as the UNIPAC Loan Service Corporation in 1978 and renamed Nelnet in 1996. It became a publicly traded company in 2003. Nelnet Inc. owns over 50 subsidiaries that administer and collect student loans throughout the United States and Canada, including Nelnet Servicing LLC and Nelnet Diversified Solutions LLC.

67.     Nelnet Servicing LLC is a wholly-owned subsidiary of Nelnet Diversified Solutions LLC, which is itself a wholly-owned subsidiary of Nelnet Inc.

68.     All Defendants are entities organized under state law and have their principal places of business at 121 S. 13th Street, Suite 201, Lincoln, Nebraska 68508. Defendants are, at times, referred to collectively as "Nelnet."

69.     In 2009, a Servicing Contract (**Attachment A** attached) was executed between the United States Department of Education and Nelnet. The contract was extended and modified in 2014 and remains in effect.

70.     Attached as **Attachment B** is a prototype Direct Consolidation Loan Application and Promissory Note / William D. Ford Federal Direct Loan Program. This 17-page prototype contains Loan Consolidation Information, Repayment Plan Selection Information, Terms, Understandings, Certifications, Authorizations, Promises to Pay, Note Terms and Conditions, and Notices, Mandatory Information to Be Reported Provisions, Interest Rate and Payment of Interest provisions, and provisions governing Repaying the Loan including descriptions of the Standard Repayment Plan, Graduated Repayment Plan, Extended Repayment Plan, REPAYE Plan, Pay As You Earn Plan, Income-Based Repayment Plan (IBR Plan), Additional Repayment Information, a section describing Defaulting, and provisions concerning late charges and collection costs, demands for immediate payment, Defaulting, Consumer Reporting Agency Notification, Deferment and Forbearance, Discharge or Loan Forgiveness, other forms of Loan Forgiveness, which are Representative of the Promissory Notes of the Plaintiffs and Class Members and in the sections relevant to this case, common to the Plaintiffs and Class Members.

71.     Nelnet Inc. holds itself out as a major servicer of federal student loans owned by the DOE.[16]  Nelnet publicly declared that it was awarded a student loan servicing contract by the Department of Education in June 2009 to provide additional servicing capacity for loans owned by the Department of Education, and that those loans include Federal Direct Loan Program loans originated directly by the Department and FFEL Program loans purchased by the Department."[17] Nelnet Inc. admits that, "as a student loan servicer for the federal government and for financial institutions, including the Company's FFELP student loan portfolio, the Company is subject to the Higher Education Act and related laws, rules, regulations, and policies."[18]

72.     Nelnet serviced at least $162.5 billion for six million student loan borrowers in 2016, including the loans of Plaintiffs. Twenty percent of Nelnet's revenue was attributed to the servicing of loans held by DOE.[19]

73.     Nelnet Inc. holds itself out as a party to DOE's Servicing Contract. Nelnet and its subsidiaries disregarded entity separateness and operated as a single unity. The separateness of Defendants is a disregarded fiction. Nelnet representations that it is a party to DOE Servings and Contract estops it to deny status.

74.     Nelnet Inc., Nelnet Diversified Solutions LLC, and Nelnet Servicing LLC, are all directly liable to Plaintiffs and members of the Classes under the Servicing Contract, the borrowers' Promissory Notes, and applicable state law. All three companies have acted in concert, with shared control of activities of their enterprise, for a common purpose, and to create a common

---

[16] 10-K filings with Securities and Exchange Commission for 2016, available at
https://s21.q4cdn.com/368920761/files/doc_financials/annual/2016/2016_Annual_Report.pdf (last visited May 7, 2018),
[17] *Id.*
[18] *Id.*
[19] *Id.*

fund of money. All three are joint venturers, and each is liable for the action or actions of the other in furtherance of the joint venture.

## CLASS ACTION ALLEGATIONS

75.     Nelnet's servicing of Plaintiffs' loans violated various federal regulations, including 34 C.F.R. §685.221(e)(8)(ii), which states that a loan servicer "must maintain the borrower's current scheduled monthly payment amount" until the request has been fully processed if the borrower's recertification materials were received prior to the renewal deadline.

76.     Nelnet's servicing of Plaintiffs' loans also violated 34 C.F.R. § 685.205(b)(9), which prohibits the capitalization of interest that accrues during forbearances that are applied in order to allow for additional processing time to review IDR plan renewal applications and supporting documentation. Rather than placing Plaintiffs' loans under administrative forbearances pursuant to 34 C.F.R. § 685.205(b)(9), Nelnet improperly and unlawfully used hardship forbearances pursuant to 34 C.F.R § 685.205(a) for this purpose, which resulted in the improper capitalization of interest.

77.     Defendants also violated 34 C.F.R. §685.221(e)(8)(i), which requires that IDR applications be processed "promptly."

78.     Nelnet's Servicing Contract with DOE requires compliance with all applicable federal regulations. The violations Nelnet committed breached the Servicing Contract, of which Plaintiffs were intended third-party beneficiaries.

79.     Plaintiffs' Promissory Notes require Nelnet to comply with the Higher Education Act and applicable federal law.  Nelnet's conduct constitutes a breach of the Promissory Note.

80.     As a direct and proximate result of Defendants' abusive practices, thousands of dollars were unlawfully added to Plaintiffs' principal loan balances, and they missed out on months

of qualifying payments toward loan forgiveness. The total amount of Plaintiffs' damages must be

discovered through Nelnet's records.

      81.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a),

(b)(2) and (b)(3) on behalf of the following proposed Classes:

### Breach of Contract Class

> All individuals with federal student loans serviced by Nelnet who, at any time on or after a date five years prior to the filing of this action: i) were enrolled in an IDR plan; ii) timely submitted an application to renew the plan; iii) the application was eventually approved; iv) but the IDR plan was temporarily discontinued by Nelnet while the application was being processed.

### Negligent Misrepresentation Class

> All individuals with federal student loans serviced by Nelnet who, at any time on or after a date four years prior to the filing of this action: i) were enrolled in an IDR plan; ii) timely submitted an application to renew the plan; iii) the application was eventually approved; iv) but the IDR plan was temporarily discontinued by Nelnet while the application was being processed.

### Illinois Class

> All individuals who 1) obtained their federal student loans while living in Illinois and experienced the following on or after a date three years prior to the filing of this action; or 2) were living in Illinois when they experienced the following, which occurred on or after a date three years prior to the filing of this action: i) The individual was enrolled in an IDR plan; ii) the individual timely submitted an application to renew the plan; iii) the application was eventually approved; iv) but the IDR plan was temporarily discontinued by Nelnet while the application was being processed.

### Colorado Class

> All individuals who 1) obtained their federal student loans while living in Colorado and experienced the following on or after a date three years prior to the filing of this action; or 2) were living in Colorado when they experienced the following, which occurred on or after a date three years prior to the filing of this action: i) The individual was enrolled in an IDR plan; ii) the individual timely

submitted an application to renew the plan; iii) the application was eventually approved; iv) but the IDR plan was temporarily discontinued by Nelnet while the application was being processed.

82. The Classes exclude Defendants, their employees, any entity in which Defendants have a controlling interest, and their officers, directors, legal representatives, successors and assigns. Also excluded are the personnel and Judges of this Court.

83. The Classes are composed of tens to hundreds of thousands of individuals and thus are so numerous that joinder of all members is impracticable. The Classes can be readily ascertained through the records maintained by Defendants.

84. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

85. Plaintiffs' claims are typical of the claims of members of the Classes.

86. As alleged herein, Plaintiffs and members of the Classes sustained damages arising out of Defendants' common course of unlawful conduct. The injuries and damages of each member of the Classes were directly caused by Defendants' wrongful conduct in violation of the laws as alleged herein, and occurred in, and were directed from, this District.

87. There are questions of law and fact common to the Classes, the answers to which will advance the resolution of the claims of all Class Members.

88. These and other questions of law and/or fact are common to the Classes and predominate over any questions affecting only individual Class Members:

      a.    Do Defendants have a practice of misprocessing and delaying applications to renew IDR plans?

      b.    Did the misconduct of Defendants cause injuries to Plaintiffs and the Class Members by requiring them to pay avoidable interest, fees, and other sums?

21

    c.     Did the conduct of Defendants violate state or federal law, and are those violations directly actionable?

    d.     Did the conduct of Defendants constitute breach of the Servicing Contract?

    e.     Did the conduct of Defendants constitute a breach of the Promissory Notes of Plaintiffs?

    f.     Did the conduct of Defendants constitute negligent representation under the laws of Nebraska?

    g.     Did the conduct of Defendants violate Illinois law?

    h.     Did the conduct of Defendants violate Colorado law?

    i.     Did the conduct of Defendants violate North Carolina law?

89.    Plaintiffs will fairly and adequately represent and protect the interests of members of the Classes. Plaintiffs have no claims antagonistic to those of members of the Classes. Plaintiffs have retained counsel competent and experienced in complex nationwide class actions, including all aspects of litigation. Plaintiffs' counsel will fairly, adequately and vigorously protect the interests of members of the Classes.

90.    Class action status is also warranted under Rule 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many Class Members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the court system of adjudication of such individualized litigation would be substantial. Separate actions by individual members of

the Classes would create risks of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

91.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### FIRST CLAIM
### Breach of the Servicing Contract

92.     Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

93.     This claim is brought on behalf of the Breach Class.

94.     On June 17, 2009, Nelnet Servicing LLC entered into a Servicing Contract with the Department of Education.  Nelnet Servicing LLC was a known agent of Nelnet Diversified Solutions LLC, and Nelnet Inc. – its disclosed principals – and was acting as their agent when it entered into the Servicing Contract.  Nelnet Inc. and Nelnet Diversified Solutions LLC are liable under the Servicing Contract.  Nelnet Servicing LLC executed the contract in its own name, thereby binding itself and its disclosed principal, Nelnet Inc., under the Servicing Contract.

95.     At all relevant times, Plaintiff and members of the Breach Classes were intended third-party beneficiaries of the Servicing Contract.

96.     Pursuant to the terms of the Servicing Contract, Defendants agreed to comply with all applicable federal statutes and regulations in its dealings with each plaintiff and each member of the classes.

97.     Defendants materially breached the Servicing Contract by failing to administer each Plaintiffs' loans and the loans of each member of Breach Class in accord  with federal law.

98.     As a direct and proximate result of Defendants' breach of the Servicing Contract, Plaintiffs and members of the Classes have suffered the same types damages,

including, but not limited to (i) the difference in the amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a Standard Repayment Plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with lost progress towards certain loan forgiveness.

## <u>SECOND CLAIM</u>
### For Breach of the Promissory Note

99.     Plaintiffs renew all allegations   above as if fully set forth here .

100.     This claim is brought on behalf of the Breach Class.

101.     By entering into the Servicing Contract with the Department of Education, Defendants accepted a delegation of the loan servicing obligations set forth in Plaintiffs' Promissory Notes and became assignees thereof.  Thus, at all relevant times, Plaintiffs and members of the Classes were in a contractual relationship with Defendants.

102.     The Promissory Note required Defendants to service the loans of Plaintiffs in accordance with federal law.

103.     As set forth above, Defendants materially breached the Promissory Note by failing to administer Plaintiffs' loans in accordance with federal law.

104.     As a direct and proximate result of Defendants' material breach of the Promissory Note, Plaintiffs and members of the Classes have suffered the same types of damages, including, but not limited to (i) the difference in the amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a Standard Repayment Plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (iii) the financial harm associated with lost progress towards certain loan forgiveness.

### THIRD CLAIM
### Negligent Representation

105.     Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

106.     This claim is brought on behalf of the Negligent Misrepresentation Class.

107.     Defendants had a pecuniary interest in their transactions with Plaintiffs and the Class Members because the servicing fees that Defendants receive under the Servicing Contract are a direct function of the borrowers' performance under the loans.

108.     In the course of their business dealings with Plaintiffs and Class Members, Defendants wrongly supplied Plaintiffs and Class Members with false information regarding the terms of their loans.  The incorrect information amounted to misrepresentations intended to be relied upon, and actually relied upon, by Plaintiffs and Class Members.

109.     Plaintiffs relied on the false and negligent representations of Nelnet by making increased payments and/or enrolling in costly hardship forbearances that were not necessary.

110.     Defendants failed to exercise reasonable care or competence in communicating critical information to Plaintiffs and the Class Members regarding the repayment terms of their loans.

111.     Defendants are subject to liability for the pecuniary losses proximately caused to Plaintiffs and Class Members as a result of their justifiable reliance on the incorrect information provided by Defendants.

### FOURTH CLAIM
### Accounting at Law

112.     Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

113.   This claim is brought on behalf of the Breach Class.

114.   The Claims of Plaintiffs are based upon a contract.

115.   The improper fees and charges incurred by Plaintiffs and the Class Members do not arise out of a fiduciary or trust relationship, nor do they arise out of a complicated series of accounts.

116.   The transactional history of each individual class member's account is readily determinable, as are the dates and events relevant to a determination of liability for each individual class member. Accordingly, an accounting at law is an adequate remedy.

117.   The books and records required to make the accounting and determine the amounts due are in the possession and control of Nelnet.  A legal accounting is necessary because Nelnet received the funds of the Plaintiffs and Class members.

118.   Nelnet is not the owner of the funds it received from Plaintiffs the Class Members and is therefore bound to account to Plaintiffs and the Class Members for it.[20]

119.   An accounting at law may be performed with the electronic records of Defendants. Plaintiffs believe this may be done by identifying individual student loan borrowers who, like Plaintiffs, submitted applications to renew their IDR plans, and determining the dates when their documents were submitted; the dates when action on those documents was taken by Defendants; the nature of the action taken; and the financial consequences of those actions for each individual class member. In this manner, Plaintiffs believe that the proof of individual damages will bear a substantial similarity to class action cases in which it is determined that refunds must be paid for overcharges and overpayments of insurance payments, mortgage payments, utilities payments, or other similar mass billing and account administration cases.

---

[20]   *Lone Cedar Ranches, Inc. v. Jandebeur*, 523 NW2d 364, 368 (Neb 1994) and other cases set for the elements of an accounting at law.

120.     All records required to determine the amounts wrongfully received by Nelnet are in Nelnet's possession and control. Plaintiffs seek an accounting at law based on the contract of Defendants with DOE and Plaintiffs' promissory notes.

**FIFTH CLAIM**
**Violations of The Illinois Consumer Fraud and Deceptive Business Practices Act**
**("ICFDBPA"), 815 ILCS 505/2**

121.     Plaintiff Andrew Johansson repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

122.     Andrew Johansson brings this Count on behalf of the Illinois class.

123.     Defendants are "person[s]" within the meaning of 815 ILCS 505/1(c).

124.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…in the conduct of any trade or commerce…whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

125.     In the course of servicing the loans of Johansson and members of the Illinois Class, Defendants commits, or committed, the following unfair and/or deceptive acts or practices in violation of the ICFDBPA:

      a.     Misrepresenting to Johansson that he was not entitled to continue making income-driven payments despite his timely submission of an application to renew his IDR plan;

     b.   Misrepresenting to Johansson that he owed monthly payments in the amount dictated by the Standard Repayment Plan when, in fact, such amounts were not owed;

     c.   Misrepresenting to Johansson the correct amount of his principal loan balance after improperly capitalizing the accrued interest on his loans;

     d.   Misrepresenting to Johansson that his loans were subject to a capitalization of interest when his IDR plan was discontinued despite the fact that he timely submitted an application to renew the plan;

     e.   Misrepresenting to Johansson that a hardship forbearance should be applied to his account while Defendants resolved their own processing errors and delays when, in fact, such forbearances are not authorized for that purpose under federal law;

     f.   Unfairly cancelling Johansson's IDR plan despite his timely submission of an application to renew the plan in violation of federal law;

     g.   Unfairly failing to process IDR applications in a reasonably prompt manner as required by federal law.

126.    Defendants knew or should have known that their conduct violated the law.

127.    Defendant's unfair and deceptive practices were material to Johansson and members of the Illinois Class.

128.    Johansson and members of the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's deceptive and unfair practices, including, but not limited to, (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same;

(iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; (iv) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same; and (v) adverse credit reporting.

129.    Defendant's violations present a continuing risk of financial harm to Plaintiffs, members of the Classes, and the general public.

130.    Defendant's unlawful acts and practices complained of herein affect the public interest.

131.    Johansson and members of the Illinois Class seek damages under the ICFDBPA for injuries resulting from the direct and natural consequences of Defendants' unlawful conduct.

132.    Johansson and members of the Illinois Class also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under the ICFDBPA.

133.    Defendants engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

### SIXTH CLAIM
### Violations of the Colorado Consumer Protection Act
### (COLO. REV. STAT. § 6-1-105)

134.    Linda Stanley repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

135.    Linda Stanley brings this Count on behalf of the Colorado Class.

136.    Defendants are "persons" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

137.    The Colorado Consumer Protection Act prohibits "deceptive trade practices," which includes the use of "deceptive representations…in connection with goods or services." Colo. Rev. Stat. § 6-1-105(c).

138.    Defendants made the following deceptive representations in connection with their servicing of Stanley's loans in violation of the Colorado Consumer Protection Act:

    a.    Misrepresenting to Stanley that she should place her loans into a costly hardship forbearance while her tax returns were being completed when, in fact, she could have certified her income by using a copy of a paystub;

    b.    Misrepresenting to Stanley that her loans should be placed in a hardship forbearance while her IDR renewal application was being processed when, pursuant to 34 C.F.R § 685.205(a), such forbearances are only permitted when, "due to poor health or other acceptable reasons, the borrower…is currently unable to make scheduled payments.";

    c.    Misrepresenting to Stanley that certain portions of her self-certified income verification letter needed to be written out "by hand" when, in fact, such a requirement has no basis in law;

    d.    Misrepresenting to Stanley that her loans were subject to a capitalization of interest when her IDR plan expired despite the fact that Stanley had provided Nelnet with an IDR renewal application prior to the renewal deadline;

    e.    Misrepresenting to Stanley that, after the recertification of her IDR plan, she would be required to make monthly payments of approximately $450 despite the fact that her income had not substantially increased since her prior pay period when her payments were less than $100 per month;

f. Misrepresenting to Stanley that she was not entitled to continue making income-driven payments despite her timely submission of several applications to renew her IDR plan;

g. Misrepresenting to Stanley that she owed monthly payments in the amount dictated by the Standard Repayment Plan when, in fact, such amounts were not owed;

h. Misrepresenting to Stanley the correct amount of her principal loan balance after improperly capitalizing the accrued interest on her loans.

139. One or more of these material misrepresentations were made to members of the Colorado Class.

140. Given the vast number of federal loans serviced by Defendants, these deceptive trade practices significantly impact the public as actual or potential consumers of Nelnet's services.

141. Linda Stanley and members of the Colorado Class suffered actual damages as a direct and proximate result of Defendant's deceptive and unfair practices, including, but not limited to, (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; (iv) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same; and (v) adverse credit reporting.

142. Stanley and members of the Colorado Class seek damages under the Colorado Consumer Protection Act for injury resulting from the direct and natural consequences of Defendants' unlawful conduct.

143.    Stanley and members of the Colorado Class also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under the Colorado Consumer Protection Act.

144.    Defendants engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

## ATTACHMENTS

**Attachment A (¶ 69)**: 2009 Nelnet – U.S. Dept of Education  Servicing Contract  .

**Attachment B (¶70):**  Prototype Direct Consolidation Loan Application and Promissory Note / William D. Ford Federal Direct Loan Program (17 pgs)

## REQUESTS FOR RELIEF

Plaintiffs request Orders and Judgment against Defendants and in favor of Plaintiffs:

A.    Certifying this action as a class action for each of the classes identified above pursuant to Fed R. Civ. P. 23, declaring Plaintiffs as representatives of the Classes and Plaintiffs' counsel as counsel for the Classes;

B.    Awarding judgment to Plaintiffs and Class Members of each Class for sums determined to be due from Defendants for their wrongful actions.

C.    Awarding taxable costs, compensatory and punitive damages to the extent permitted by law, and pre- and post-judgment interest and reasonable attorneys' fees and expenses to the extent permitted by law.

## JURY DEMAND; TRIAL LOCATION

Plaintiffs demand trial by jury.

Plaintiffs designate Lincoln, Nebraska as the place for trial.

By Plaintiffs' Lawyers:

*s/ David A. Domina*   #11043NE
Domina Law Group pc llo
2425 S. 144th St.
Omaha, NE 68144
(402)-493-4100
ddomina@dominalaw.com

*s/ Anthony Fiorentino*
Illinois ARDC Number: 6316521
FIORENTINO LAW OFFICES LTD.
432 N. Clark St, Suite 202
Chicago, Illinois 60654
(312)-853-0050
anthony@fiorentinolaw.com

*s/ Daniel A. Edelman*
Daniel A. Edelman
Cassandra P. Miller
Illinois ARDC #: 00712094
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
20 South Clark Street, Ste 1500
Chicago, Illinois 60603
(312) 739-4200
dedelman@edcombs.com

# Exhibit 8 - ECF No. 55

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREW JOHANSSON, on behalf of themselves and the Class Members described herein; HEATHER PORTER, on behalf of themselves and the Class Members described herein; JON PEARCE, on behalf of themselves and the Class Members described herein; LINDA STANLEY, on behalf of themselves and the Class Members described herein; and ANETRA FAISON, on behalf of themselves and the Class Members described herein;<br><br>        Plaintiffs,<br><br>  vs.<br><br>NELNET, INC., a Nebraska Corporation; NELNET SERVICING, LLC, a Nebraska limited liability company; and NELNET DIVERSIFIED SOLUTIONS, LLC, a Nebraska limited liability company;<br><br>        Defendants. | **4:20CV3069**<br><br>**INITIAL PROGRESSION ORDER** |

IT IS ORDERED that the final progression order is as follows:

1) A status conference will be held with the undersigned magistrate judge on **March 22, 2022** at **9:30 a.m.** by telephone. Counsel shall use the conferencing instructions assigned to this case to participate in the conference.

2) The deadline for moving to allow discovery conducted in <u>Olsen v. Nelnet, Inc. et al</u>, 4:18-cv-03081-JMG-MDN to be used in this case (and/or to modify the protective order in <u>Olsen</u>), shall be filed on or before September 10, 2021.

3) The deadline for moving to amend pleadings or add parties is October 15, 2021.

4)      The case progression schedule at this time will be focused[1] on preparing to support/oppose a motion for class certification. As to the issue of class certification:

a.      The deadline for completing written discovery on this issue of class certification under Rules 33, 34, 36 and 45 of the Federal Rules of Civil Procedure is December 15, 2021. Motions to compel written discovery under Rules 33, 34, 36, and 45 must be filed by December 29, 2021.

**Note:** A motion to compel, to quash, or for a disputed protective order shall not be filed without first contacting the chambers of the undersigned magistrate judge to set a conference for discussing the parties' dispute.

b.      The deadlines for identifying experts (by name, profession, and the topics on which they will testify), are:

        For the Plaintiffs:        November 3, 2021

        For the Defendant:        December 3, 2021

        Plaintiffs' rebuttal:        December 17, 2021

c.      The deadlines for complete expert disclosures for all experts expected to testify at trial, (both retained experts, (Fed. R. Civ. P. 26(a)(2)(B)), and non-retained experts, (Fed. R. Civ. P. 26(a)(2)(C)), are:

        For the Plaintiffs:        December 3, 2021

        For the Defendant:        January 7, 2022

        Plaintiffs' rebuttal:        January 21, 2022

d.      All depositions (including expert depositions) must be completed March 1, 2022.

e.      Plaintiffs' motion for class certification must be served no later than April 1, 2022. Defendants' responses to Plaintiffs' motion for class certification must be served by April 22, 2022. Plaintiffs' reply in support of motion for class certification shall be filed by May 6, 2022.

---

[1] The parties may conduct merits discovery while completing the class certification discovery, particularly if doing so will limit duplication of discovery (such as multiple depositions) or aid the parties in evaluating the potential of early settlement.

2

5)     The parties shall comply with all other stipulations and agreements recited in their Rule 26(f) planning report that are not inconsistent with this order.

6)     All requests for changes of deadlines or settings established herein shall be directed to the undersigned magistrate judge, including all requests for changes of trial dates. Such requests will not be considered absent a showing of due diligence in the timely progression of this case and the recent development of circumstances, unanticipated prior to the filing of the motion, which require that additional time be allowed.

Dated this 30th day of August, 2021.

BY THE COURT:

_s/ Cheryl R. Zwart_
United States Magistrate Judge

3

# Exhibit 8 - ECF No. 109

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREW JOHANSSON, JON PEARCE, and LINDA STANLEY, on behalf of themselves and the Class Members described herein,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>NELNET, INC., a Nebraska Corporation, NELNET DIVERSIFIED SOLUTIONS, LLC, a Nebraska limited liability company, and NELNET SERVICING LLC, a Nebraska limited liability company,<br><br>　　　　　　　Defendants. | Case No. 4:20-cv-03069-JMG-CRZ<br><br><br>**PLAINTIFFS' SECOND MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT** |

## PLAINTIFFS' SECOND[1] MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Plaintiffs Andrew Johansson, Jon Pearce, and Linda Stanley, on behalf of themselves and the proposed Class Members, respectfully request leave to file their proposed Amended Complaint (Attachment A).

The grounds for this motion are as follows:

1.　　　Plaintiffs are federal student loan borrowers who, on June 15, 2020, filed a Class Action Complaint against Defendants alleging that Nelnet improperly canceled or failed to renew Plaintiffs' Income-Driven-Repayment ("IDR") plans, improperly delayed the process whereby borrowers enroll in and renew such plans, and improperly placed the loans of countless

---

[1] On February 18, 2022, Plaintiffs filed an initial Motion for Leave to File its First Amended Complaint, but it did not comply with Local Rule 7.1 because it was not accompanied by a supporting brief, index of evidence, and affidavits of authentication. (ECF No. 92). Along with the present motion, Plaintiffs have filed a motion for leave to withdraw that motion and refile it as the instant motion, which has cured the deficiencies.

borrowers into hardship forbearance during the IDR recertification process causing unpaid accrued interest to be "capitalized," or added to the borrower's principal balance.

2.      Because many of the documents supporting Plaintiffs' claims were in the sole possession of Defendants, Plaintiffs stated in their original complaint that "the means and methods of harm caused by Nelnet would need to be learned through discovery." (*See* Compl. ¶ 10).

3.      Since June 15, 2020, the parties have exchanged written discovery and taken several depositions. As was anticipated by Plaintiffs, recently exchanged documents and testimony have led to the discovery of additional facts that are relevant to Plaintiffs' claims.

4.      In the Complaint and proposed Amended Complaint, Plaintiffs make the following claims: (1) Breach of the Servicing Contract; (2) Breach of the Promissory Note; (3) Negligent Representation; (4) Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act; and (5) Violations of the Colorado Consumer Protection Act.

5.      The proposed Amended Complaint adds allegations regarding improper forbearance enrollment and failures to comply with federal notice requirements. However, as set forth in Plaintiffs' supporting brief, all of these allegations fall within the ambit of Plaintiffs' original claims – that Defendants "improperly canceled or failed to renew Plaintiffs' IDR plans, and improperly delayed the process whereby borrowers enroll in and renew such plans." (*See* Compl. ¶ 7). In addition, the Amended Complaint attaches documents as exhibits that were received in discovery, including Plaintiffs' Master Promissory Notes, their contracts with the federal government.

6.      Finally, the Amended Complaint revises the class definitions to include more specificity and subclasses. The Amended Complaint specifically proposes the following classes:

2

(1) Improper Hardship Forbearance Class; (2) Overlapping Forbearance Class; (3) Misrepresentation of Renewal Deadline Class; (4) Email Notice of Renewal Class; and the following subclasses: (1) Illinois subclass and (2) Colorado subclass.

7.      As required by the United States District Court for the District of Nebraska, Civil Rule 15.1, the Plaintiffs' counsel clearly identified all amendments to the proposed Amended Complaint in redline, using track changes. (Attachment B).

8.      As set forth in the accompanying Memorandum in Support of the Second Motion for Leave to File an Amend Complaint, Plaintiffs sought leave to amend its complaint shortly after receiving new evidence in the form of deposition testimony; Plaintiffs' filed their motion in good faith; and Defendants will not be prejudiced by granting Plaintiffs leave to file the Amended Complaint attached hereto as Attachment A.

9.      Plaintiffs' counsel provided Defendants' counsel with an opportunity to review the proposed Amended Complaint. Defendants' counsel opposes this motion.

WHEREFORE, the Court is urged to grant leave to file the proposed Amended Complaint (Attachment A).

Respectfully submitted,

s/*Cassandra P. Miller*
Cassandra P. Miller

Daniel A. Edelman
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
cmiller@edcombs.com

-and-

3

Anthony Fiorentino
FIORENTINO LAW OFFICES, LTD.
432 N Clark St, #202
Chicago, IL 60654
Tel.: (312) 853-0050
Fax: (312) 853-3254
anthony@fiorentinolaw.com

-and-

David A. Domina
DOMINA LAW GROUP PC LLO
2425 South 144th Street
Omaha, NE 68144
Tel.:    (402) 493-4100
Fax:    (402) 493-9782
DAD@dominalaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Cassandra P. Miller, certify that on March 21, 2022, I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to all counsel of record.

*s/Cassandra P. Miller*
Cassandra P. Miller

Daniel A. Edelman
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

# Exhibit 8 - ECF No. 137

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREW JOHANSSON, on behalf of themselves and the Class Members described herein; JON PEARCE, on behalf of themselves and the Class Members described herein; and LINDA STANLEY, on behalf of themselves and the Class Members described herein; | **4:20CV3069** |
| Plaintiffs, | **MEMORANDUM AND ORDER** |
| vs. | |
| NELNET, INC., a Nebraska Corporation; NELNET SERVICING, LLC, a Nebraska limited liability company; and NELNET DIVERSIFIED SOLUTIONS, LLC, a Nebraska limited liability company; | |
| Defendants. | |

This case is before the court on the second motion for leave to file an amended complaint filed by Andrew Johansson, Jon Pearce, Linda Stanley and the putative class ("plaintiffs"). (Filing No. 109).[1] Plaintiffs contend the amendment is warranted based on newly discovered evidence. (Id.).

For the reasons stated below, the motion will be denied.

---

[1] Plaintiffs' first motion to amend was withdrawn on March 21, 2022, because it did not comply with local rules. (Filing Nos. 107 and 108).

## BACKGROUND

Plaintiffs are borrowers of loans owned by the federal Department of Education. Nelnet Inc., Nelnet Servicing, LLC, and Nelnet Diversified Solutions, LLC ("defendants" or "Nelnet") collectively administer, service, and collect on the loans. (Filing No. 1 at CM/ECF p. 2). The plaintiffs allege Defendants, as federal loan servicers, are responsible for administering federal income-driven repayment ("IDR") plans. (Id.). Borrowers who cannot afford to repay their loans pursuant to the standard repayment plan may enroll in IDR plans based on their gross income and family size. (Id.). IDR plans are renewed annually. (Id. at CM/ECF p. 4.). Plaintiffs generally allege that Defendants improperly canceled or failed to renew their IDR plans and enrolled Plaintiffs in unnecessary and costly forbearances. (Id. at CM/ECF p. 3.). Plaintiffs allege that such actions caused borrowers to incur improper fees and/or caused unpaid accrued interest to be "capitalized" or added to the borrower's principal loan balance. (Id.).

After early motion practice, an initial progression order was entered on August 30, 2021. (Filing No. 55). The order required all motions to amend pleadings or add parties be filed on or before October 15, 2021. (Id.). The parties then began discovery with a focus on class certification.[2] (Id.). On February 3, 2022, plaintiffs deposed Viola Pruett ("Pruett"), Program Manager for Defendants' loan servicing operations. (Filing No. 111 at CM/ECF p. 4). Plaintiffs claim Pruett's

---

[2] The parties were encouraged to reach a stipulation concerning the potential use of discovery materials from a prior case involving similar issues but could not reach an agreement. See Filing No. 56; Olsen v. Nelnet, Inc. et al. No 4:18-cv-03081-JMG-MDN. In their briefing, both parties reference evidence produced and/or submitted as part of the Olsen litigation as a basis for the plaintiffs' knowledge or lack of knowledge of facts relevant to the present motion. See Filing No. 120 at CM/ECF pp. 11-12; Filing No. 131 at CM/ECF p.9; 132-9. The court has reviewed the cited material but finds it is not persuasive for either party.

deposition revealed new evidence of Defendants' alleged wrongdoing. Plaintiffs now seek to amend their complaint. (Id.).

The complaint generally alleges that Nelnet improperly cancelled or failed to renew IDR plans, delayed renewal or enrollment, and improperly placed borrowers in hardship forbearances. (Filing No. 1). In the original complaint, the proposed classes align with the claims pled, including: (1) the breach of contract class, (2) the negligent misrepresentation class, (3) the Illinois class, and (4) the Colorado class. (Id. at CM/ECF pp. 20-21.) Plaintiffs' proposed amended complaint does not add additional claims, but rather expands the theories of recovery within previously alleged claims. (See, generally, Filing No. 109-1). In doing so, Plaintiffs significantly redefine the putative classes. (Id.). The proposed amended complaint redefines the classes as: (1) the improper hardship forbearance class, (2) the overlapping forbearance class, (3) the misrepresentation of renewal deadline class, and (4) the email notice of renewal class. (Id. at CM/ECF pp. 32-33). Each of the four proposed classes have an Illinois and Colorado subclass. (Id.).

ANALYSIS

Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely grant [such] leave when justice so requires." This standard is construed liberally, but "plaintiffs do not have an absolute or automatic right to amend." United States ex rel. Lee v. Fairview Health Sys., 413 F.3d 748, 749 (8th Cir. 2005). Indeed, "[a] district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065

(8th Cir. 2005) (internal quotation marks and citations omitted). "In most cases, [d]elay alone is insufficient justification; prejudice to the nonmovant must also be shown." Id. (internal quotation marks and citation omitted).

However, when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, Fed. R. Civ. P. 16(b)(4) first requires a showing of "good cause" to extend the pleading amended deadline stated in the scheduling order. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008). After the movant has shown good cause to modify the scheduling order under Fed. R. Civ. P. 16(b), the court may then consider whether the amendment is permitted under Fed. R. Civ. P. 15(a). Id. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements. While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." Id. (internal quotation marks and citations omitted).

Plaintiffs have not met the heightened good cause standard. The deadline to amend pleadings was October 15, 2021. Review of the record reveals that Plaintiffs did not serve <u>any</u> discovery requests on Defendants until October 15, 2021, the day any motion to amend should have been filed. (Filing No. 58). This illustrates lack of diligence to meet the deadline on the part of Plaintiffs. While Plaintiffs may have readily pursued a motion to amend from the time they allegedly discovered new evidence, they fail to address their lack of diligence relating to the court's motion to amend deadline. The court denies the motion to amend on this basis alone. <u>See</u> Architectural BusStrut Corp. v. Target Corp., No. 19-CV-968 (DSD/ECW), 2021 WL 2646808, at *5 (D. Minn. Mar. 8, 2021) (denying motion to amend where movant failed to conduct any discovery prior to the deadline to amend the pleadings).

Even if the court were to ignore Plaintiffs' lack of diligence prior to the amendment deadline, Plaintiffs still would not succeed on their motion. Plaintiffs argue their amendment includes additional allegations based on new evidence obtained at the Pruett deposition, which occurred on February 3, 2022, and that they were diligent by filing a motion to amend just weeks later. (Filing No. 113 at CM/ECF p. 4). While it is generally recognized that new information obtained through discovery can be grounds for a good cause finding, the court is not convinced that Plaintiffs "new evidence" was not known to them, or could not have been easily discovered, prior to the amendment deadline. See Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 948 (8th Cir. 2012) (listing "newly discovered facts" as a basis for a good cause finding).

Plaintiffs state the Pruett deposition disclosed previously unknown facts regarding: (1) damages resulting from deficient IDR renewal notices, (2) damages resulting from the electronic notice procedure, (3) damages resulting from overlapping forbearances, and (4) Nelnet's policy of enrolling borrowers in hardship forbearances without their written consent. (Filing No. 111). Each of these categories of evidence is discussed below.

1) Damages resulting from deficient IDR renewal notices

Prior to the expiration of an IDR plan, the loan servicer must send the borrower a written notice of the deadline by which the borrower must recertify the plan to continue with income-based payments. (Filing No. 1 at CM/ECF p. 5). Plaintiffs now allege the notice sent by Defendants contained contradictory statements regarding the renewal deadline and that the deadline provided in the notice was inconsistent with federal law. (Filing No. 111 at CM/ECF p. 9; Filing No.

109-1 at CM/ECF p. 9). According to Plaintiffs' original and amended complaint, these notices were sent to borrowers yearly.

Defendants argue that Plaintiffs, by their own allegations, received the yearly notices and therefore should have had these notices in their possession prior to the commencement of the lawsuit. But Plaintiffs contend the notice language was confusing, and prior to Pruett's deposition, they were not aware that the contradictory statements could result in financial damages, i.e. the inconsistent notice could cause a borrower to miss the renewal deadline resulting in interest capitalization. (Filing No. 111 at CM/ECF p. 9).

> 2) Damages resulting from electronic notice procedure

Plaintiffs further claim that, through discovery, they learned of a method of providing IDR renewal notice that they now contend is insufficient and is a breach of the Master Promissory Note. (Filing Nos. 111 at CM/ECF p. 10; 109-1 at CM/ECF p. 18). Specifically, Plaintiffs allege Defendants emailed borrowers, including Johansson, at their personal email address and that the email correspondence directed them to their Nelnet account containing the IDR renewal notices and related disclosures. (Filing No. 111 at CM/ECF p. 9-10; Filing No. 112-12, Filing No. 112-13). Plaintiffs now propose to allege these emails provided insufficient notification and caused Johansson to fail to renew his IDR plan in a timely manner. (Filing No. 111 at CM/ECF p. 10; Filing No. 109-1 at CM/ECF p. 18). Plaintiffs admit that Johansson had these emails in his possession at least a year before the lawsuit was filed, but they apparently did not locate them until receiving documents produced in Defendants discovery responses. (Filing No. 111 at CM/ECF p. 9). Plaintiffs contend the insufficiency of the email renewal notices is "new evidence" because prior to the Pruett deposition, they did not know this

method of notice was not authorized by the Department of Education. ([Filing No. 111 at CM/ECF p. 11](#)).

### 3) Damages resulting from overlapping forbearances

Plaintiffs claim the Pruett deposition exposed financial damages in the form of interest capitalization from hardship forbearances. ([Filing No. 113 at CM/ECF p. 11](#)). Generally, the amended complaint alleges borrowers, and Johansson specifically, were improperly enrolled in a hardship forbearance when they were entitled to a forbearance under 34 CFR § 682.215(e)(9). ([Filing No. 109-1 at CM/ECF pp. 14-15](#)). This is significant because forbearance under (e)(9) does not result in capitalization of interest, whereas a hardship forbearance does. ([Filing Nos. 111 at CM/ECF p. 11](#)). Plaintiffs argue the documents reflecting Johansson's account history were unclear, and they did not know if the interest from the hardship forbearance was reversed or refunded. ([Id](#).). They allege Pruett's testimony revealed the interest capitalization would not be reversed, establishing a claim for additional damages. ([Id](#).).

### 4) Nelnet's policy of enrolling borrowers in hardship forbearances without written consent

Plaintiffs' proposed amended complaint would allege that Nelnet had a policy of enrolling borrowers in hardship forbearances without the borrower's written request in violation of federal law. ([Filing No. 109-1 at CM/ECF p. 25](#)). Plaintiffs claim they did not previously know whether their enrollment in hardship forbearances without written consent was isolated to them or, in the alternative, performed pursuant to a *policy* of such behavior. ([Filing No. 113 at CM/ECF p. 12](#)). Defendants argue this is information that was already known to Plaintiffs as

7

evidenced by Plaintiffs' own oral rather than written requests for hardship forbearances. (Filing No. 120 at CM/ECF p. 16).

In reviewing the evidence cited by Plaintiffs, the court finds that all of the facts were known to the plaintiffs, or could have been easily discovered, prior to the deadline to amend the pleadings. The information now relied on by the plaintiffs was contained within their own records or was within their own personal knowledge. For example, Johansson received the IDR renewal notices, the emails to his personal email address, and received his account transaction history and balance prior to the commencement of the present lawsuit. (Filing No. 112-4; Filing No. 112-12; Filing No. 121-12). Further, Johansson and Stanley orally consented to hardship forbearances and thereby knew that they had not provided written consent.

Even assuming the above evidence was not known to Plaintiffs, or that it wasn't sufficiently developed to include in the initial Complaint, Plaintiffs have failed to show any effort to obtain the information prior to the October deadline. Had they been uncertain as to any of the cited evidence, they could have pursued those allegations in the normal course of discovery. In its motion before the court, Plaintiffs do not address why they did not serve the necessary discovery before the motion to amend deadline. Instead, Plaintiffs argue that their diligence since the Pruett deposition warrants leave to amend. However, the focus under Rule 16(b) is on the diligence with which the moving party complies with the scheduling order. See Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001). As Plaintiffs have failed to show good cause pursuant to Rule 16(b), the court need not consider whether Defendants would be prejudiced by the amendment.

Accordingly,

IT IS ORDERED:

Plaintiffs' Motion to Amend the Complaint (Filing No. 109) is denied.

Dated this 4th day of May, 2022.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

# Exhibit 8 - ECF No. 172

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

ANDREW JOHANSSON, et al., on
behalf of themselves and the Class of
Members described herein,

          Plaintiffs,

vs.

NELNET, INC., a Nebraska
Corporation, et al.,

          Defendants.

20-CV-3069

ORDER

This matter is before the Court on the plaintiffs' objection (filing 167) to the Magistrate Judge's findings and recommendation (filing 166), recommending that the Court grant the defendants' Motion to Strike the plaintiffs' class action allegations and Motion for Class Certification (filing 150). The Court has conducted a de novo review of the Magistrate Judge's proposed findings and recommendation, *see* 28 U.S.C. § 636(b)(1), and will adopt them.

While the Magistrate Judge thoroughly addressed the relevant issues, the Court will briefly address the alternative modified class definition that the plaintiffs raised for the first time in their objection to the Magistrate Judge's findings and recommendation. *See* filing 168 at 14. The Court agrees with the defendants that since this alternative definition does not change the substance of the modified class definition, filing 168 at 14, it fails to adequately address the issues outlined by the Magistrate Judge, as it still expands the size and scope of the putative class and advances a theory of liability that is not foreseeable based on the allegations in the operative complaint. *See* filing 166

at 9-12, 14-18; filing 169 at 27-28. In other words, the plaintiffs' alternative modified definition does not bring the Court any closer to identifying a workable class definition that is supported by the operative complaint and would not prejudice the defendants.

Additionally, the Court agrees that the plaintiffs have abandoned the class allegations in their original complaint. *See* filing 140 at 16-19. The class allegations in the plaintiffs' complaint were centered on a theory of liability that Nelnet improperly processed *IDR plan renewal applications that were properly and timely submitted*. Filing 1 at 19-20. But the plaintiffs acknowledged that these allegations created "issues of individualized proof." *See* filing 166 at 16-18. And since the plaintiffs have indicated they are unable to conceive of a viable class definition that tracks these allegations and overcomes the issue of individualized proof, the Court agrees these allegations have been abandoned. *See* filing 140 at 16-19.

Having concluded that the plaintiffs' modified and alternative modified class definitions offered in support of their Motion for Class Certification are unsupported by the operative complaint, and that the plaintiffs have abandoned their original class allegations outlined in the operative complaint, the Court will adopt the Magistrate Judge's findings and recommendation. Accordingly,

IT IS ORDERED:

1.   The Magistrate Judge's Findings and Recommendation (filing 166) are adopted.

2.   The plaintiffs' objection (filing 167) is overruled.

3.   The defendants' Motion to Strike the plaintiffs' class action
     allegations and Motion for Class Certification (filing 150) is
     granted.

Dated this 6th day of October, 2022.

                              BY THE COURT:


                              John M. Gerrard
                              United States District Judge