

Lisa M. Simonetti
Tel 310.586.7824
Fax 310.586.7800
simonettil@gtlaw.com

January 30, 2024

**VIA ELECTRONIC FILING (CM/ECF)**

Magistrate Judge Daryl F. Bloom
United States Magistrate Judge for the Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

> Re:   Defendants' Response to Plaintiffs' Letter Request for Discovery Conference/
> *Ballard v. Navient Corporation, et al.*, No. 3:18-cv-00121

Dear Magistrate Judge Bloom:

      Defendants Navient Solutions, LLC ("NSL") and Navient Corporation ("Navient Corp.") strongly disagree that the parties have reached an "impasse" and that an extension of the discovery cut-off combined with close court supervision of the discovery process is necessary. As described below, NSL has agreed to comply with plaintiffs' request that NSL conduct additional searches based on plaintiffs' *entirely new, proposed* class definitions, consistent with NSL's discovery obligations under the Federal Rules of Civil Procedure, by February 19, 2024. In the event plaintiffs have any issue with that production or seek additional discovery, the parties can engage in a meet-and-confer.

      But plaintiffs are apparently not interested in going through the normal discovery process. Instead, among other things, plaintiffs demand that the Court engage in extraordinary supervision of a discovery process outside the scope of the Federal Rules. For instance, before even seeing NSL's responses, plaintiffs demand that NSL commit to a cycle of further responses and, to the extent plaintiffs believe that NSL's responses are incomplete or inadequate, that NSL also provide "detailed" explanations and legal analysis as to why. NSL has no such obligation under the Rules (and its agreement to perform the searches in the first instance exceeds its discovery obligations as NSL believes the information is irrelevant).

**Greenberg Traurig, LLP | Attorneys at Law**

1840 Century Park East | Suite 1900 | Los Angeles, California 90067-2121 | T +1 310.586.7700 | F +1 310.586.7800

Albany. Amsterdam. Atlanta. Austin. Berlin≈. Boston. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London*. Long Island. Los Angeles.
Mexico City⁺. Miami. Milan≈. Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City.
San Diego. San Francisco. Seoul∞. Shanghai. Silicon Valley. Singapore⸱. Tallahassee. Tampa. Tel Aviv^. Tokyo⁺. Warsaw⁺. Washington, D.C. West Palm Beach. Westchester County.

Operates as: ~Greenberg Traurig Germany, LLP; *A separate UK registered legal entity; ⁺Greenberg Traurig, S.C.; ᴮGreenberg Traurig Santa Maria; ∞Greenberg Traurig LLP Foreign Legal Consultant Office; ⸱Greenberg Traurig Singapore LLP; ^A branch of Greenberg Traurig, P.A., Florida, USA; ¤GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; ≈Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k.

www.gtlaw.com

     Notably, this is not the first time that plaintiffs have come to the Court with an improper and premature request. As discussed during the conference conducted on November 8, 2023, defendants object to plaintiffs' efforts to pursue information outside the process dictated by the Federal Rules and on arbitrary timelines. Indeed, given that plaintiffs were already permitted to revise their class definitions, their efforts to continuously revise and reformulate the flawed definitions through email "discovery," and without a supported motion for leave to amend, are inappropriate.

## Background

**The Instant Action**

     Navient Corp. is a holding company and the parent of NSL. Formerly known as Sallie Mae, Inc., NSL is one of the largest, most well-established servicers of student loans. As relevant in this matter: (1) until October 2021, NSL was a servicer of loans originated and owned by the United States Department of Education ("ED"), pursuant to a servicing contract (the "ED Servicing Contract"); and (2) NSL is a servicer of loans originated by private creditors, and guaranteed by ED, under the Federal Family Education Loan Program ("FFELP").[1]

     In their First Amended Class Action Complaint ("FAC"), filed on May 25, 2018, plaintiffs purport to challenge NSL's servicing with respect to income driven repayment ("IDR") programs on federal student loans.[2] IDR programs can reduce the amount of a borrower's monthly loan payment based on, among other things, the borrower's income. According to plaintiffs, NSL, as a loan servicer, improperly failed to enroll them and other borrowers in, or remove them and other borrowers from, such programs by, for example, mishandling initial and renewal IDR applications.

     Given these allegations, plaintiffs assert various claims, including for breach of the ED Servicing Contract based on a third-party beneficiary theory and violation of certain consumer protection statutes. In the FAC, Plaintiffs described a nationwide class and state sub-classes, as follows:

> **NATIONWIDE CLASS**
> All individuals with federal student loans serviced by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date six years prior to the filing of this action, 1) were enrolled in an IDR plan, and timely submitted a request to renew the plan, which was nonetheless cancelled due to Navient's failure to process the renewal prior to the plan's expiration, or 2) submitted a request for enrollment in an IDR plan that was not processed within 25 business days.
>
> **CALIFORNIA CLASS**
> All California residents with federal student loans serviced by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date four years prior to the filing of this action, were enrolled in an IDR plan, and timely

---

[1] Plaintiffs often conflate Navient Corp. and NSL, referring to them as "Defendants" or "Navient." NSL performs all of the loan servicing functions. Navient Corp. is simply a holding company; it does not service student loans.

[2] This action was initiated on January 16, 2018.

submitted a request to renew the plan, which was nonetheless cancelled due to Navient's failure to process the renewal prior to the plan's expiration.

**NEW YORK CLASS**
All New York residents with federal student loans serviced by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date six years prior to the filing of this action, were enrolled in an IDR plan, and timely submitted a request to renew the plan, which was nonetheless cancelled due to Navient's failure to process the renewal prior to the plan's expiration.

**ILLINOIS CLASS**
All Illinois residents with federal student loans serviced by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date ten years prior to the filing of this action, submitted a request for enrollment in an IDR plan that was not processed within 25 business days.

However, as the litigation progressed over the years, and it became clear that these definitions were unworkable, plaintiffs proposed alternate definitions. Plaintiffs first sought to amend their class definitions informally, demanding through email that NSL perform searches on newly proposed definitions. In NSL's view, this effort was belated and improper, and NSL believed that plaintiffs were required to file a motion for leave to amend. The Court agreed, and plaintiffs filed a motion for leave to amend on September 21, 2022. The Court granted the motion for leave, and the operative Second Amended Class Action Complaint ("SAC") contains the following definitions:

**"Improper IDR Cancellation" Class**:
a. The borrower was enrolled in an IDR plan.
b. Prior to the annual renewal deadline, Navient received an IDR renewal application from the borrower to recertify the plan.
c. On or after the passage of the deadline, the borrower's income-driven payments were canceled, and the borrower's accrued interest was capitalized.
d. When the borrower's application was thereafter processed, it was deemed complete and timely, and the IDR plan was recertified.
**California sub-class**: Members of the Class who were living in California when the events stated in subpart c. occurred.

**"Forbearance without Written Consent" Class**:
a. The borrower was enrolled in an IDR plan.
b. The income-driven payments were cancelled when the plan was not renewed before the annual renewal deadline.
c. Within 60 days thereafter, Navient enrolled the borrower in a discretionary forbearance.
d. At the time of enrollment in the discretionary forbearance, the loan was not in default, and Navient had not received a written request from the borrower for a discretionary forbearance.
e. The interest that accrued during the forbearance was capitalized.

**New York sub-class**: Members of the Class who were living in New York when the events stated in subpart c. occurred.

**Illinois sub-class**: Members of the Class who were living in Illinois when the events stated in subpart c. occurred.

**"No Administrative Forbearance" Class**:
a. Navient received notice that the borrower was applying for initial enrollment in an IDR plan, or was changing repayment plans.
b. Within 60 days after receiving such notice, Navient enrolled the borrower in a discretionary interest-capitalizing forbearance.
c. At least some interest that accrued during any part of the 60-day period following such notice was capitalized.
**New York sub-class**: Members of the Class who were living in New York when the events stated in subpart b. occurred.

**"Improper Delay" Class**:
a. The borrower applied to enroll in, or to renew, an IDR plan.
b. The borrower submitted a completed IDR application, accompanied by proof of income, which was subsequently approved by Navient.
c. Navient did not fully process the application until 45 days or more after it was received.

**Illinois sub-class**: Members of the Class who were living in Illinois when the events in subpart c. occurred.

**"Income Documentation" Class**:
a. The borrower was enrolled in an IDR plan.
b. Navient timely received one paystub and the borrower's application to renew the plan.
c. Navient did not process the application.
d. Navient sent the borrower a written communication stating that the application could not be processed because the borrower did not submit two paystubs.
e. That communication did not identify any other deficiency with the application.
f. Thereafter, the borrower's partial financial hardship status expired and the standard repayment plan amount took effect.
**New York sub-class**: Members of the Class who were living in New York when the events stated in subpart f. occurred.

**Novation Of The ED Servicing Contract**

In September 2021, defendants announced an intent to transfer the servicing of ED-owned loans to another large student loan servicer, Maximus Education, LLC ("Maximus"), and its Aidvantage division. The transfer would be effected through a contract novation, subject to approval from Federal Student Aid ("FSA"), an office of ED. In connection with the transfer, NSL, Navient Corp., and Maximus executed an Asset Purchase Agreement (the "Agreement"),

along with other, related agreements. In October 2021, FSA announced approval of the proposed novation, which impacted 5.6 million borrower accounts.

Following FSA's approval of the novation, NSL moved forward with the very significant and highly technical work necessary to effect the servicing transfer. Part of this work involved conveying custody of, and access to, the ED servicing data to Maximus (a third-party vendor, Fiserv, owns and maintains the servicing platform that houses the data). This transfer was undertaken at ED's express direction. The data belongs, and always has belonged, to ED; ED controls who can access borrower data and for what purposes.

Because it no longer services ED loans, NSL does not have access to the ED data on a live system. Instead, NSL retained a set of ED data prepared in connection with the matter entitled *Consumer Financial Protection Bureau v. Navient Corporation, et al.*, Civ. Action No. 3:CV-17-00101 (M.D. Pa.). NSL primarily sought to retain this data set in the event of an emergency, "break glass" circumstance – *e.g.*, that the CFPB matter were to proceed to trial and NSL had a specific need to use the data set in preparing its defense.

Since the novation, NSL has not used or accessed the ED data set; it sits on a storage platform. In any attempt to "revive" the data so that it can searched and analyzed, NSL would have to remove the numerous data files from that platform, and verify the completeness and correctness of a transfer to a non-storage location. Based on the likely format of the data in a different, non-storage location, in order to perform any searches, NSL would have to employ a Microsoft search tool that has not been used on the data before. After performing searches with that tool, NSL would vet any results, seeking to confirm the efficacy of the data and its ability to be searched and analyzed accurately. NSL estimates that this process, if undertaken, would likely take several months. Also, while NSL believes that the overall process could work, it has not been tested. NSL therefore cannot guarantee any results.

Even setting aside the difficulty and uncertainty regarding the process of extracting the ED data into a usable format, the ED data contains no personal identifying information for borrowers. In connection with the preparation of the data set for retention, ED required removal of that information (name, address, phone number, etc.). NSL also converted the social security numbers to unique identifying numbers. While those identifiers could be decrypted back to social security numbers, NSL does not possess the information that would actually link all of those social security numbers to ED borrowers.

**The Dispute**

On June 29, 2023, after plaintiffs were permitted to amend their class definitions and file the SAC, NSL evaluated the searches based on existing FFELP data within NSL's servicing system and served: (1) responses and objections on September 14, 2023 with respect to searches 1-3 and 5; and (2) supplemental responses on September 28, 2023 with respect to search 4. Patrick Theurer ("Theurer"), NSL's Vice President of Data Solutions, verified both sets. Theurer is a long-time and high-level employee at NSL with responsibility for data management and analytics. He supervised the work undertaken to evaluate plaintiffs' searches. Theurer and his team concluded that only search 4 was feasible. In that regard, NSL provided the number of FFELP borrowers

potentially covered by search 4. Due to the novation, however, NSL was not able to provide results for search 4 as to the ED loans.

On October 17, 2023, plaintiffs served a Notice and Confirmation of Rule 30(b)(1) and (6) Depositions (the "Notice"), containing Theurer's name and various categories of testimony, and setting the "deposition(s)" for October 27, 2023 at 8:30 a.m. Central/9:30 a.m. Eastern. NSL served objections to the Rule 30(b)(6) aspect of the Notice, including on the grounds that it was untimely (allowing only 10 days for preparation) and improperly sought to designate a corporate representative, which is NSL's right. Plaintiffs then raised several issues that purportedly would prevent effective questioning of Theurer, including issues regarding the Agreement. NSL encouraged plaintiffs to proceed, and make as much progress as possible regarding the novation and transfer of the ED data to Maximus. Plaintiffs refused. At the November 8 Conference, the Court agreed that the deposition of Theurer should go forward, as it appeared he would have relevant knowledge.

The deposition took place on December 19, 2023, and plaintiffs spent extensive time "re-writing" the data searches based on Theurer's testimony. Indeed, by plaintiffs' counsel's own admission, the majority of the searches were defective. (Deposition of Patrick Theurer: as to search 1, 147:7-8 ("We've tried to iron out some of the kinks and bugs."); as to search 2, 180:3-4 ("let's see if maybe we can modify it, because I think the concerns you raised are probably legit"); as to search 3, 192:2-5 ("based on the conversation we were just having, I just want to see if we can clean up modified search 3"); as to search 5, 204:15-206:9 (abandoned as simply not feasible).

Subsequently, plaintiffs demanded by email that NSL run the searches using the re-written class definitions, including on the subset of ED data retained by NSL. The proposed modified searches are as follows:

**Modified Search 1**
A. On or after January 16, 2012, the borrower was enrolled in an IDR plan.
B. The borrower submitted an IDR renewal application, which was received by NSL within 90 days or less prior to the renewal deadline.
C. The borrower's partial financial hardship status expired, at which time the borrower's payments were recalculated under the standard repayment plan.
D. At the time the application received its first review, it was deemed complete.

**Modified Search 2**
A. On or after January 16, 2012, the borrower was enrolled in an IDR plan.
B. The IDR plan was not renewed before the annual renewal deadline, at which point the borrower's Partial Financial Hardship (PFH) status expired, and payments were recalculated under the standard repayment plan.
C. After the expiration of the borrower's PFH status, NSL enrolled the borrower in a discretionary forbearance, based on the borrower's oral affirmation, and the posting date of the forbearance was within the 90-day period which began 30 days before the PFH status expired. (For example, if the PFH status expired on May 1, 2015, then the 90-day period would begin on April 1, 2015 and would end on June 30, 2015.)

  D. At the time of the enrollment in the discretionary forbearance, the loan was not in default, with "default" being defined as a period of 270 days without any payments.

**Modified Search 3**
  A. On or after January 16, 2012, the borrower submitted an application to enroll in an IDR plan.
  B. NSL enrolled the borrower in a 60-day, "non-capping" administrative forbearance, which was in effect while that application was under review.
  C. During the 60-day administrative forbearance period, the borrower's account status changed from administrative forbearance status to discretionary forbearance status, and the discretionary forbearance was supported by oral affirmation.

In the parties' meet and confer discussions, NSL asked plaintiffs to explain how their revised searches seek information consistent with the central allegations in the case and the plaintiffs' revised class definitions. Plaintiffs refused to do so, insisting instead that NSL explain how the searches are improper. Plaintiffs also refused to serve the searches as an actual discovery request, relying only on their email demand. Despite this, NSL committed to treat the email demand as an interrogatory under the Federal Rules, and to serve written responses and objections on February 19, 2024. NSL also reserved any and all issues and arguments against the new definitions, including under Rule 23.

In response, Plaintiffs demanded that NSL agree to respond to potentially additional modified searches after NSL's February 19 response is completed, and to an extension of the discovery cutoff. NSL declined to do so.[3]

## Defendants' Positions

The situation at hand is very straightforward. NSL is obligated to respond to discovery propounded under the Federal Rules. NSL has agreed to perform the newly revised searches on the existing FFELP data, as if properly propounded, and to serve responses and objections by February 19, 2024. NSL will do this work even though the resulting information appears irrelevant. Again, plaintiffs are the proponents of the classes here, and they should be able to explain and support their class definitions. They have chosen not to do so, but the issue will arise if and when they move for certification under Rule 23. NSL will provide the information yielded by the searches; it also will raise any and all arguments against the searches under Rule 23 or otherwise, as required by the Rules.

Further, as a matter of law, NSL should not be required to resurrect the ED data currently in storage, given the time, burden, and potential expense involved. This is particularly so in light of the fact that Maximus possesses the ED data in a live servicing environment, and plaintiffs can obtain this data by serving a subpoena on Maximus. On this point, plaintiffs seem to disregard Theurer's testimony about the challenges associated with accessing and using the ED data.

---

[3] Plaintiffs suggested that a discovery extension is also warranted based on some action that might be undertaken by ED. However, when asked what that action might be, plaintiffs did not respond.

Magistrate Judge Bloom
January 30, 2024
Page 8

Plaintiffs also ignore the fact that NSL does not have the information necessary to identify the ED borrowers that plaintiffs believe are part of their classes. Thus, even if NSL took on the burden, expense, and uncertainty of reviving the ED data currently in storage, and plaintiffs eventually succeeded in certifying a class, there would still be insufficient information to actually identify individuals in the putative class.[4]

Finally, the Court should reject plaintiffs' "prayer for relief." This matter does not warrant the extraordinary process plaintiffs propose here – a process that would require NSL to commit to discovery beyond the current requests, as well as require ongoing court supervision when none is justified. The Federal Rules should govern instead.

* * *

We thank the Court for its assistance with this matter.

Best Regards,

*/s/ Lisa M. Simonetti*

Lisa M. Simonetti

---

[4] If motion practice proceeds on the ED data, NSL would likely seek some form of cost shifting to plaintiffs.