# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI, on behalf of themselves and the class members described herein, | )<br>)<br>)<br>) No. 3:18-cv-121-MEM<br>) |
| Plaintiff, | ) Judge Malachy E. Mannion<br>) |
| vs. | ) **Magistrate Judge Daryl F. Bloom**<br>) |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., AND NAVIENT SOLUTIONS, LLC, | )<br>)<br>)<br>) ELECTRONICALLY FILED<br>) |
| Defendants. | )<br>) |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION
## <u>FOR LEAVE TO FILE THIRD AMENDED COMPLAINT</u>

Daniel A. Edelman
Cassandra P. Miller
**Edelman, Combs, Latturner**
**& Goodwin, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603
Phone (312) 739-4200
dedelman@edcombs.com
cmiller@edcombs.com

Carlo Sabatini, PA 83831
**Sabatini Law Firm, LLC**
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
ecf@bankruptcypa.com

Anthony Fiorentino
**Fiorentino Law Offices**
6119 North Kenmore Ave., Ste. 410
Chicago, IL 60660
(312) 305-2850
anthony@fiorentinolaw.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................iii, iv

I.      INTRODUCTION..................................................................................... i

II.     PROCEDURAL HISTORY.........................................................................2

III.    STATEMENT OF QUESTIONS INVOLVED ..............................................3

IV.     BACKGROUND ON IDR PLANS AND FORBEARANCES......................3

    a.   IDR Enrollment and Renewal Process. ................................................3

    b.   Discretionary Forbearances ................................................................4

    c.   Administrative Forbearances.............................................................5

V.      STATEMENT OF FACTS.........................................................................6

    a.   Search Query 1 ...................................................................................7

       i.    Terminology regarding plan "cancellation".............................7

       ii.   Elimination of "interest capitalization" as a search criterion....8

       iii.  Other clarifications made to Search Query 1 ...........................9

       iv.   Modified Search Query 1 ........................................................10

    b.   Search Query 2 .................................................................................11

       i.    Terminology regarding plan "cancellation"............................11

       ii.   Elimination of "interest capitalization" as a search criterion...12

       iii.  Definition of "default" as a search criterion ..........................12

       iv.   Effective date of the forbearance ............................................13

       v.    Modified Search Query 2 ........................................................14

    c.   Search Query 3 .................................................................................15

       i.    Reference to interest capitalization .........................................15

       ii.   Searchability of "notices" from the borrower .........................16

       iii.  Reference to forbearance status ..............................................17

       iv.   Modified Search Query 3 ........................................................18

VI.     STATEMENT OF LAW .........................................................................18

VII.    ARGUMENT...........................................................................................19

    a.   Plaintiffs were diligent in seeking the proposed amendments. ......................19

b.   Defendants would not be prejudiced by the amendments because Plaintiffs have not added any new legal theories or factual allegations ..............................21

VIII.   CONCLUSION ...............................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Adams v. Gould Inc.*,
    739 F.2d 858 (3d Cir. 1984) ............................................................... 22

*Arthur v. Maersk, Inc.*,
    434 F.3d 196 (3d Cir. 2006) ....................................................... 18, 21

*Bensel v. Allied Pilots Ass'n*,
    387 F.3d 298 (3d Cir. 2004) ............................................................... 18

*Chapman v. First Index, Inc.*,
    796 F.3d 783 (7th Cir. 2015) ............................................................ 21

*Dole v. Arco Chem., Co.*,
    921 F.2d 484 (3d. Cir. 1990) ............................................................. 18

*Gates v. Rohm & Haas Co.*,
    265 F.R.D. 208 (E.D. Pa. 2010) ....................................................... 20

*Monumental Life Insurance Co.*,
    365 F.3d 408 (5th Cir. 2004) ............................................................ 21

*Price v. Trans Union, LLC*,
    737 F. Supp. 2d 276 (E.D. Pa. 2010) ............................................... 19

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) .............................................................. 21

*Weitzner v. Sanofi Pasteur, Inc.*, 3:11-CV-02198,
    2017 WL 3894888 (M.D. Pa. Sept. 6, 2017) ................................... 20

*White v. Bush, CV 20-2059-KSM*,
    2021 WL 2255981 (E.D. Pa. June 3, 2021) .................................... 19

**STATUTES AND RULES**

34 C.F.R. § 682.211 ............................................................... 4, 5

34 C.F.R. § 682.209 ................................................................. 3

34 C.F.R. § 682.215 ................................................................. 4

34 C.F.R. § 685.205 .......................................................... 12, 15

34 C.F.R. § 685.221 ................................................................................. 8

78 Fed. Reg. 65,775 (Nov. 1, 2013) ........................................................ 5

Fed. R. Civ. P. 15 ................................................................................... 18

Local Rule 7.8 ........................................................................................ 25

Fed. R. Civ. P. Rule 15 .......................................................................... 18

Fed. R. Civ. P. Rule 16 .................................................................... 19, 21

## I.   INTRODUCTION

Plaintiffs are borrowers of federal student loans that were serviced by Navient Solutions, LLC ("NSL"), a subsidiary of Navient Corporation ("Navient"). The complaint alleges a wide range of misconduct involving Defendants' improper loan servicing.

Plaintiffs devised a set of "search queries" and asked Navient to run them through its computer database to identify the class members, but Navient claimed that the search queries contained ambiguous language or criteria that could not be searched in the aggregate.

When Plaintiffs refined the search queries to address these concerns, Defendants claimed that the modifications did not match the class definitions in the complaint, and that the results would therefore be irrelevant unless the complaint were amended.

As explained below, the modifications were technical and did not alter any theory of liability or damages. Accordingly, Plaintiffs do not agree that an amended complaint is necessary. Nonetheless, to resolve the instant dispute, Plaintiffs seek leave to amend the class definitions in the complaint to precisely match the language of the modified search queries.

## II.    PROCEDURAL HISTORY

On June 29, 2023, the Court ordered Navient to search its computer database to identify members of the classes set forth in the Second Amended Complaint. (ECF 89). To that end, on July 17, 2023, Plaintiffs provided Defendants with "Search Queries 1–4," which were designed to identify the class members. In a written response, Defendants claimed that Search Query 4 was feasible, but that Search Queries 1–3 could not be performed because they contained ambiguous language or criteria that were not capable of "systematic identification." *See* Ex. A. The response was signed by Navient's chief IT officer, Patrick Theurer ("Theurer").

On December 19, 2023, Plaintiffs deposed Theurer. Based on his testimony, Plaintiffs refined and modified the search query terms to accommodate the search capabilities of Navient's database. On December 22, 2023, Plaintiffs propounded "Modified Search Queries 1–3" and requested that Navient use them to identify the class members. For several weeks, Defendants would not agree to execute the searches, claiming that the modifications had altered the class definitions.

On January 18, 2024, after Plaintiffs proposed judicial intervention to resolve the impasse, Defendants finally agreed to execute the searches. However, they asserted that, because Modified Search Queries 1–3 did "not

align with the pending claims," they constituted an "informal amendment of the pleading," which Navient would oppose in "a substantive motion."  *See* Ex. B. To ensure that any disputes over the search queries were resolved *before* the labor-intensive searches were completed, Plaintiffs decided to file the instant motion.

## III.   STATEMENT OF QUESTIONS INVOLVED

Should the Court allow Plaintiffs to file their Third Amended Complaint, which conforms the class definitions to the language used in Modified Search Queries 1–3?

## IV.   BACKGROUND ON IDR PLANS AND FORBEARANCES

The Higher Education Act (HEA) sets forth the rights and obligations of borrowers who receive federal student loans. Pursuant to the Act, the Department of Education ("ED") has promulgated regulations that govern the administration of repayment options available to borrowers, including the various Income-Driven Repayment plans ("IDR plans").

### a.  IDR Enrollment and Renewal Process

The standard payment plan for federal student loans is called the "Standard Repayment Plan." *See* 34 C.F.R. § 682.209(a)(6)(v). Under this plan, the borrower makes fixed monthly payments, irrespective of income, and fully repays the loan in 10-30 years. *Id*. at (e)(2). Alternatively, borrowers with a partial financial

3

hardship ("PFH") may instead enroll in IDR plans, which offer affordable monthly payments based on income, and loan forgiveness after 20 years of qualifying payments.

When borrowers enroll in an IDR plan, the plan is effective for one year. *See* 34 C.F.R. § 682.215 at (e)(1). To renew the plan thereafter, borrowers must annually "recertify" their income by submitting an IDR renewal application, along with proof of income, to their loan servicer before an annual recertification deadline. *Id*. at (e)(1)(i). If the plan is not timely renewed, the borrower's monthly payment is increased to the amount owed under the Standard Repayment Plan, and any accrued interest is "capitalized," or added to the borrower's principal balance. *Id.* at (e)(3)(ii). Interest capitalization can substantially increase the amount a borrower must repay because the portion capitalized will thereafter accrue interest on itself.

### b. Discretionary Forbearances

In contrast to IDR plans, borrowers may apply for a discretionary forbearance, which temporarily pauses payments during periods of hardship. *See* 34 C.F.R. §682.211(a). However, discretionary forbearances are very expensive to the borrower because any unpaid interest that accrues during the forbearance is capitalized. *Id.* at (a)(4).

Thus, discretionary forbearances are permitted only when: 1) the borrower is unable to make scheduled payments "due to poor health or other acceptable

reasons," *and,* 2) the loan servicer has received "a request and sufficient supporting documentation from a borrower." *Id*. at (a)(2)(i), (h)(2). ED has created a standard form to request a discretionary forbearance (OMB No. 1845-0031), which requires the borrower's written consent and signature.

The only time that consent to a discretionary forbearance may be oral, rather than written, is for a limited period after a borrower's loan has defaulted, but before it is transferred into collection status. *See* 78 Fed. Reg. 65,775 (Nov. 1, 2013); 34 C.F.R. § 682.211(d)(1). In this situation, a limited, 120-day forbearance may be granted, based on the borrower's "oral affirmation." *Id*. at (d)(2)(i). The purpose of this exception is to "avoid the negative consequences of default," such as transfer to collection status, during the time that the borrower is submitting the required written application. 78 Fed. Reg. 65,775 (Nov. 1, 2013). The exception does *not* apply to borrowers who are simply enrolling in, or renewing, an IDR plan. *See* 34 C.F.R. § 682.211(d)(1).

### c. Administrative Forbearances

An administrative forbearance is distinct from a discretionary forbearance. It is the only type of forbearance that is specifically authorized when a borrower's IDR application is being processed. Under 34 C.F.R. § 682.211(f)(11), a borrower is entitled to a 60-day administrative forbearance while the loan servicer processes paperwork in connection with a borrower's request to make a "change in repayment

plan," such as enrollment in an IDR plan. With an administrative forbearance, any interest that accrues during the 60-day forbearance period "is not capitalized." *Id*. This provision prevents loan servicers from capitalizing interest that accrues during periods of routine paperwork processing, such as reviewing an IDR application.

## V.   STATEMENT OF FACTS

The (currently operative) Second Amended Complaint contains four putative classes ("Classes 1–4").[1] Each class is based on a different type of account transaction causing financial harm. (Compl. at ¶ 95). Classes 1–3 can be summarized as follows:

| Class 1 | Borrowers who, despite having timely submitted an IDR renewal application, had their income-driven payments discontinued and their interest capitalized. |
|---|---|
| Class 2 | Borrowers who Navient enrolled in a discretionary forbearance without their written consent, while their IDR renewal applications were under review. |
| Class 3 | Borrowers who were placed in a discretionary forbearance, rather than an administrative forbearance, when they first applied to enroll in an IDR plan. |

Classes 1–3 were based on the deposition testimony of Jeffrey Stine, Navient's Vice President of Servicing Operations, who confirmed that the loans of

---

[1] The classes are not labeled 1–4 in the complaint, but these numbers correspond to the order in which they appear. The complaint also contains a fifth class, which has since been abandoned.

the named Plaintiffs had been serviced in the manner described above. Search Queries 1–3 closely tracked the language of the corresponding class definitions:

### a. Search Query 1

Search Query 1 originally stated:

| (A) | **On or after January 16, 2012, the borrower was enrolled in an IDR plan.** |
|-----|-----|
| (B) | **Prior to the annual renewal deadline, Navient received an IDR renewal application from the borrower to recertify the plan.** |
| (C) | **On or after the passage of the deadline, the borrower's income-driven payments were canceled, and the borrower's accrued interest was capitalized.** |
| (D) | **When the borrower's application was thereafter processed, it was deemed complete and timely, and the IDR plan was recertified.** |

### i. Terminology regarding plan "cancellation"

In Navient's written discovery response, Theurer claimed that Search Query 1 could not be performed, in part, because the terminology used in Part (C) was flawed. According to Theurer, the term "canceled" is not used to describe the status of an IDR plan that expires after the annual deadline. Rather, this event is referred to as having the borrower's payments "calculated under the standard payment plan." Ex. A at 6.

During his deposition, Theurer confirmed that this obstacle did not involve "any technical or logistical obstacles to the computer search;" he was simply

trying to "clarify the semantics." *See* Ex. C, Theurer Deposition Transcript, at 158:12-21. Theurer was asked if this "semantical" issue could be resolved by simply replacing the reference to plan "cancellation" with the words: "The borrower's partial financial hardship status expired." Theurer confirmed that this "rephrasing" would resolve the issue. *See* Ex. C at 121:7-20; pg. 123:11-15.

## ii. Elimination of "interest capitalization" as a search criterion

In Navient's written discovery response, Theurer stated that Search Query 1 could not be performed, in part, because Part (C) specified that the borrower's interest was capitalized "as a result" of the IDR plan not being timely renewed. According to Theurer, "the reason for the addition of capitalized interest on an account in a particular instance is not reflected in a manner that allows for systematic identification." Ex. A at 6.

During Theurer's deposition, Plaintiffs' counsel cited 34 C.F.R. § 685.221 (b)(4), which states: "Accrued interest is capitalized at the time a borrower no longer has a partial financial hardship." *See* Ex. C at 130:2-13. Referring to this provision, Plaintiffs' counsel stated, "If someone's PFH status expires because they didn't renew the plan in time, they incur an interest cap,[2] correct? That's very standard?" Theurer replied, "Yes." Ex. C at 131:5-9.

---

[2] In the loan servicing industry, interest capitalization is often referred to by the shorthand "interest cap."

Plaintiffs' counsel suggested that the reference to interest capitalization in Part (C) of Search Query 1 "might not have been necessary since it's an automatic interest cap." Ex. C at 131:16-19. He then asked if deleting the reference to interest capitalization would resolve the issue: "It would still be the case that anyone whose PFH status expired would have incurred this automatic interest cap, but then the search wouldn't have to focus on the interest cap. It could just focus on the PFH status? That would make Part (C) more searchable, correct?" Theurer replied, "I believe so, yes." Ex. C at 132:3–13.

### iii.   Other clarifications made to Search Query 1

Plaintiffs' counsel showed Theurer a modified version of Search Query 1, which incorporated the changes discussed above, and asked if there were any other obstacles to running the search. Theurer stated that, for Part (B), it would be helpful to state a "specific date range" as to when the renewal application was received. Ex. C at 150:9-14. He explained that, rather than simply stating that the application was received before the deadline, the search query could specify that the application arrived within "90 days prior to PFH expiration," which would make it "really clear." Ex. C at 150:14–19. Plaintiffs' counsel made this revision.

Theurer was then asked if he could identify any other technical obstacles to running Search Query 1. He stated that Part (D)'s reference to when the application was "processed" is vague because some applications are processed "a second or even

9

a third time." Ex. C at 151:9-19. Plaintiffs' counsel asked, "If I were to change Part (D) as, 'At the time the borrower's application received its *first review*, it was deemed complete,' would that add clarification to Part (D)?" Ex. C at 151:21-24, 152:1-4. Theurer replied, "I think that adds some, yes, much needed clarification." Ex. C at 152:1–3. After incorporating that change, Plaintiffs' counsel asked, "Do you see any other technical obstacles to searching this on a systemwide basis?" Theurer replied, "I do not." Ex. C at 152:11–22.

### iv.   Modified Search Query 1

After Theurer's deposition, Plaintiffs provided Navient with Modified Search Query 1:

| | |
|---|---|
| **(A)** | **On or after January 16, 2012, the borrower was enrolled in an IDR plan.** |
| **(B)** | **The borrower submitted an IDR renewal application, which was received by NSL within 90 days or less prior to the renewal deadline.** |
| **(C)** | **The borrower's partial financial hardship status expired, at which time the borrower's payments were recalculated under the standard repayment plan.** |
| **(D)** | **At the time the application received its first review, it was deemed complete.** |

In response, Navient claimed that Modified Search Query 1 was, "in reality," a "proposed amended class definition." *See* Ex. D.

### b. Search Query 2

Search Query 2 originally stated:

| (A) | **On or after January 16, 2012, the borrower was enrolled in an IDR plan.** |
|-----|------------------------------------------------------------------------------|
| (B) | **The income-driven payments were cancelled when the plan was not renewed prior to the annual deadline.** |
| (C) | **Within 60 days thereafter, Navient enrolled the borrower in a discretionary forbearance.** |
| (D) | **At the time of the enrollment in the discretionary forbearance, the loan was not in default, and Navient had not received a written request from the borrower for a discretionary forbearance.** |
| (E) | **The interest that accrued during the forbearance was capitalized.** |

### i.   Terminology regarding plan "cancellation"

In Navient's written response, Theurer claimed that Part (B) of Search Query 2 contained the same flaw as Search Query 1: an inaccurate reference to the borrower's payments in an IDR plan being "canceled" after passage of the renewal deadline. *See* Ex. A at 7. During his deposition, Theurer confirmed that this issue could be resolved with the same revision made to Search Query 1: specifying that "the borrower's PFH status expired, and the payments were recalculated under the standard repayment plan." Ex. C at 159:1-11.

11

### ii. Elimination of interest capitalization from search criteria

In Navient's written response, Theurer claimed that Search Query 2 had another flaw in common with Search Query 1: Part (E) was not searchable because "the reason for the addition of capitalized interest on an account" is not conducive to "systematic identification." Ex. A at p. 8.

During the deposition of Jeffrey Stine, Plaintiffs' counsel had asked, "Regardless of whether a discretionary forbearance is requested in writing or verbally, that would *always* result in a capitalization of unpaid interest that accrues during the forbearance. Is that right?" Stine answered, "That's correct." *See* Ex. E, Stine Deposition Transcript, at 45:13-19. Stine's testimony was consistent with 34 C.F.R. § 685.205 (a), which states: "If payments of interest are forborne [during a period of forbearance], they are capitalized." Thus, the interest capitalization referenced in Part (E) of Search Query 2 was already captured by the criteria of Part (C), and was therefore duplicative. Accordingly, Plaintiffs eliminated the reference to interest capitalization in order to accommodate the search capabilities of Navient's computer system.

### iii. Definition of "default" as a search criterion

In Navient's written response, Theurer stated that Search Query 1 could not be performed, in part, because in Part (D) Plaintiffs did "not specify a definition of default, which can be viewed as 270 days of delinquency, or,

alternatively, as 365 days of delinquency." Ex. A at 8. During his deposition, Theurer was asked if this issue could be resolved by specifying that default refers to 270 days of delinquency. He confirmed that this would resolve the issue. Ex. C at 164:14-24; pg. 165:1-4.

### iv.   Effective date of the forbearance

During his deposition, Theurer was asked if the date of the forbearance referenced in Part (C) of Search Query 2 was conducive to systemwide searching. To clarify, Theurer asked Plaintiffs' counsel if he was referring to the "effective date of the forbearance status, or the applied date," which are "two potentially very different dates." Ex. C at 181:1-8. Theurer then explained that "the posting date is the date a transaction is added to the system. The transaction separately has an effective date, which may be in the past." Ex. C at 181:24; pg. 182:1.

Based on this testimony, Plaintiffs incorporated a reference to the forbearance's "posting date" into Search Query 2. Theurer agreed that this would provide the "definitions and clarity" that was needed.  Ex. C at 181:24; pg. 183:3-5. Additionally, to account for any backdating that might result from the difference between the posting date and the effective date of the forbearance, Plaintiffs replaced the 60-day timeframe in Search Query 2 with a 90-day timeframe.

v.   **Modified Search Query 2**

After Theurer's deposition, Plaintiffs provided Navient with Modified Search

Query 2:

| (A) | **On or after January 16, 2012, the borrower was enrolled in an IDR plan.** |
|---|---|
| (B) | **The IDR plan was not renewed before the annual renewal deadline, at which point the borrower's Partial Financial Hardship (PFH) status expired, and payments were recalculated under the standard repayment plan.** |
| (C) | **After the expiration of the borrower's PFH status, NSL enrolled the borrower in a discretionary forbearance, based on the borrower's oral affirmation, and the posting date of the forbearance was within the 90-day period which began 30 days before the PFH status expired. (For example, if the PFH status expired on May 1, 2015, then the 90-day period would begin on April 1, 2015 and would end on June 30, 2015.)** |
| (D) | **At the time of the enrollment in the discretionary forbearance, the loan was not in default, with "default" being defined as a period of 270 days without any payments.** |

As with Modified Search Query 1, Navient claimed that Modified Search

Query 2 was, "in reality," a "proposed amended class definition." *See* Ex. D.

14

### c.  Search Query 3

Search Query 3 originally stated:

| (A) | On or after January 16, 2012, Navient received notice that the borrower was applying for initial enrollment in an IDR plan, or was changing repayment plans. |
|-----|---|
| (B) | Within 60 days after receiving such notice, Navient enrolled the borrower in a discretionary interest-capitalizing forbearance. |
| (C) | At least some interest that accrued during any part of the 60-day period following such notice was capitalized. |

This class was intended to represent borrowers who were improperly enrolled in a discretionary forbearance, rather than an administrative forbearance, when their applications for initial enrollment in an IDR plan were under review.

### i.   Reference to interest capitalization

As with Search Queries 1 and 2, Theurer claimed that Search Query 3 was not searchable because the reason for the addition of capitalized interest on an account is not conducive to "systematic identification." Ex. A at p. 9. However, as noted previously, Jeffrey Stine had testified that a discretionary forbearance would "always" trigger a capitalization of accrued interest, which is consistent with federal law. *See* Ex. E at 45:16-19; 34 C.F.R. § 685.205 (a). Thus, the interest capitalization referenced in Part (C) of Search Query 3 was already captured by Part (B).

Accordingly, Plaintiffs eliminated the reference to interest capitalization to accommodate the search capabilities of Navient's computer system.

### ii.   Searchability of "notices" from the borrower

In Navient's written response, Theurer claimed that Search Query 3 was not feasible, in part, because the type of "notice" referenced in Part (A) "is not tracked in a searchable form." Ex. A at 9. Thus, members of Class 3 would have to be identified by some other type of account entry.

Jeffrey Stine had previously testified that an administrative forbearance was applied for a 60-day period whenever borrowers notified Navient that they were applying for enrollment in an IDR plan. Ex. E at 46:22-25; pg. 47:1-9. This was corroborated by Theurer, who testified that, when a borrower is placed in a 60-day administrative forbearance, based on a notification that the borrower was applying for an IDR plan, then, "as a matter of course," Navient would "put that on the [computer] system at that time." Ex. C at 187:17-23. Stine also testified that whenever a borrower is enrolled in a discretionary forbearance, a standardized account entry is made to identify that discretionary forbearance status. Ex. E at 45:5-8. Accordingly, Plaintiffs determined that members of Class 3 could be identified as borrowers who were placed in *both* an administrative forbearance, *and* a discretionary forbearance during the aforementioned 60-day period. The reference to "notice" was removed from Search Query 3.

16

###    iii.    Reference to forbearance status

In attempting to craft language that would be conducive to systemwide searching, Plaintiffs' counsel proposed the following modified language for Search Query 3: "Concurrent with or during the 60-day administrative forbearance, [Navient] also enrolled the borrower in an interest-capping discretionary forbearance based on the borrower's oral affirmation." Ex. C at 192:14-19. In response, Theurer stated, "A loan has one status and one status only...We don't have concurrent statuses. The loans is in one status a time." Ex. C at 193:7-13.

Plaintiffs' counsel stated, "Maybe the wording here is inaccurate because once it...maybe it's not concurrent. It shifts, then, from the admin forbearance to the...to another status, to a hardship status. Would that be why it would not be concurrent, because then it's changing status?" Ex. C at 194:4-12. Theurer replied, "It would have to change status. It would not be concurrent." Ex. C at 194:14-15. Plaintiffs' counsel stated, "Tell me if you think this would enhance the feasibility: 'During the 60-day administrative forbearance period, the borrower's status changed from admin forbearance to discretionary forbearance, based upon a forbearance request supported by oral affirmation.' Would that clarify Part (C)?" Theurer replied, "I would want to talk to my team, but yes, I believe the way you phrased it there would be searchable." Ex. C at 196:5-18.

### iv.    Modified Search Query 3

After Theurer's deposition, Plaintiffs provided Navient with Modified Search

Query 3:

| (A) | On or after January 16, 2012, the borrower submitted an application to enroll in an IDR plan. |
|-----|-----------------------------------------------------------------------------------------------|
| (B) | NSL enrolled the borrower in a 60-day, "non-capping" administrative forbearance, which was in effect while that application was under review. |
| (C) | During the 60-day administrative forbearance period, the borrower's account status changed from administrative forbearance status to discretionary forbearance status, and the discretionary forbearance was supported by oral affirmation. |

As with Modified Search Queries 1 and 2, Navient claimed that Modified

Search Query 3 was, "in reality," a "proposed amended class definition." *See* Ex. D.

## VI.    STATEMENT OF LAW

Federal Rule of Civil Procedure 15 allows a party to amend a complaint upon

leave of court, which "shall be freely given when justice so requires." Fed. R. Civ.

P. 15(a). The Third Circuit liberally allows amendment of pleadings under Rule 15.

*Bensel v. Allied Pilots Ass'n,* 387 F.3d 298, 310 (3d Cir. 2004). The purpose of this

approach is to ensure that "a particular claim will be decided on the merits rather

than on technicalities." *Dole v. Arco Chem., Co.,* 921 F.2d 484, 487 (3d. Cir. 1990).

Only when the amendment would be "unjust" should the court deny leave. *Arthur v.*

*Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

When a party seeks leave to amend a pleading after a deadline set by court order, the decision of whether to allow the amendment is controlled by Rule 16(b), which permits such amendments whenever there is "good cause." *White v. Bush*, CV 20-2059-KSM, 2021 WL 2255981, at *4 (E.D. Pa. June 3, 2021).

## VII.   ARGUMENT

Plaintiffs should be permitted to amend the class definitions in order to harmonize them with the language used in Modified Search Queries 1–3, because: a) Plaintiffs were diligent in seeking the amendments, and b) none of the modifications would cause prejudice to Defendants.

### a.  Plaintiffs were diligent in seeking the proposed amendments.

The "good cause" requirement under Rule 16(b) focuses on the diligence of the party seeking the amendment. *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279 (E.D. Pa. 2010). In the instant case, Plaintiffs have exercised diligence in seeking leave to amend the class definitions because, at the present stage of this litigation, it is not entirely clear whether such amendments are necessary. Plaintiffs filed the instant motion out of an abundance of caution, and to resolve the discovery dispute regarding the computer searches.

The language of Modified Search Queries 1–3 differs somewhat from the class definitions in the operative complaint, but these modifications were designed to accommodate the search limitations of Navient's computer database. The

19

Modified Search Queries would identify the same individuals who are members of the current versions of Classes 1–3, with one possible exception.

The only modification that could potentially affect class membership – creating an actual, substantive difference between the search queries and the class definitions – is the replacement of a 60-day timeframe in Class 2 with a 90-day timeframe. However, even this adjustment did not alter the nature of any claims or introduce any new theories of damages or liability. The purpose of this adjustment was to account for any backdating that might result from the difference between the "posting date" and the "effective date" of a forbearance.

Courts in this Circuit have found that these kinds of modifications may be made, *without amending the pleadings*, in order to arrive at a workable class. See *Weitzner v. Sanofi Pasteur, Inc.*, 3:11-CV-02198, 2017 WL 3894888, at *9 (M.D. Pa. Sept. 6, 2017), aff'd, 909 F.3d 604 (3d Cir. 2018) ("Courts have allowed Plaintiffs to substantially modify proposed class definitions initially set forth in their Complaint throughout the course of litigation."); and *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 215 (E.D. Pa. 2010), aff'd, 655 F.3d 255 (3d Cir. 2011) (allowing Plaintiffs to "substantially modify the proposed class definitions initially set forth in their complaint" because "modification of a class definition is contemplated by the Federal Rules of Civil Procedure, and a court is not bound by the class definition proposed in the complaint.").

20

Other circuits have reached the same conclusion. See *In the Matter of: Monumental Life Insurance Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("Holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action, particularly in the formation of a workable class definition."); and *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint."); *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) ("A complaint must contain three things: a statement of subject-matter jurisdiction, a claim for relief, and a demand for a remedy. Class definitions are not on that list. Instead, the obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)(1)(B).").

According to well-settled law, Plaintiffs are entitled to modify their class definitions as needed, even at the phase of class certification. However, Plaintiffs have sought to do so at the present time to resolve the instant discovery dispute, and to ensure that any computer searches performed by Defendants yield usable results. Thus, Plaintiffs have exercised diligence.

### b. Defendants would not be prejudiced by the amendments because Plaintiffs have not added any new legal theories or factual allegations.

When determining whether the "good cause" standard under Rule 16 has been met, prejudice to the non-moving party is the "touchstone for the denial of an amendment." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). The question of prejudice largely turns on whether the proposed amendments "would require

extensive additional discovery [that] would be prejudicial to defendants." *Adams v. Gould Inc.,* 739 F.2d 858, 869 (3d Cir. 1984).

Defendants intended to execute the searches without an amendment to the complaint despite their contention that the searches do not match the operative class definitions. However, at the suggestion of Plaintiffs, the Court ordered that class discovery be stayed pending resolution of the instant motion. (ECF 115). Thus, the Court's order eliminates any potential prejudice to Defendants by ensuring that the searches will not have to be performed more than once.

Because the proposed amendments to Classes 1–3 do not involve any new factual allegations, new parties, or new legal theories, there is no other basis for Defendants to claim prejudice. Even the timeframe adjustment to Search Query 2, which may affect class membership, would not create a need for new discovery, nor would it have any bearing on Defendants' claims or defenses. It simply makes the searches more feasible. Accordingly, no prejudice would result from the amendments.

## VIII.    CONCLUSION

Based on the foregoing, Plaintiffs should be granted leave of Court to file their

Third Amended Complaint.

Respectfully submitted,

By:    */s/Cassandra P. Miller*
          Cassandra P. Miller
          Illinois ARDC #: 6290238

<table>
<tr>
<td valign="top">

Daniel A. Edelman
Cassandra P. Miller
**Edelman, Combs, Latturner**
**& Goodwin, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603
Phone (312) 739-4200
dedelman@edcombs.com
cmiller@edcombs.com

Carlo Sabatini, PA 83831
**Sabatini Law Firm, LLC**
216 N. Blakely St. Dunmore,
PA 18512
(570) 341-9000
ecf@bankruptcypa.com

</td>
<td valign="top">

Anthony Fiorentino
**Fiorentino Law Offices**
6119 North Kenmore Ave., Ste. 410
Chicago, IL 60660
(312) 305-2850
anthony@fiorentinolaw.com

***Attorneys for Plaintiffs***

</td>
</tr>
</table>

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JILL BALLARD, REBECCA VARNO, and
MARK POKORNI, on behalf of themselves
and the class members described herein,

Plaintiff,

vs.

NAVIENT CORPORATION,
NAVIENT SOLUTIONS, INC., AND
NAVIENT SOLUTIONS, LLC,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 3:18-cv-121-MEM

Judge Malachy E. Mannion

**Magistrate Judge Daryl F. Bloom**

ELECTRONICALLY FILED

**<u>CERTIFICATE OF WORD COUNT</u>**

In accordance with Local Rule 7.8, the undersigned hereby certifies that the

substantive portion of the Brief in Support of Plaintiffs' Motion for Leave to File

Third Amended Complaint contains 4,677 words.

BY:   */s/Cassandra P. Miller*
Cassandra P. Miller
Illinois ARDC #: 6290238

DATED:  March 28, 2024

**Edelman, Combs, Latturner
& Goodwin, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603
Phone (312) 739-4200
dedelman@edcombs.com
cmiller@edcombs.com

25

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 28th day of March, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification to counsel of record for the defendant, namely:

Andrew J. Soven
Andrew.Soven@hklaw.Com

Daniel T. Brier
dbrier@mbklaw.com

Donna A. Walsh
dwalsh@mbklaw.com

Lisa Marie Simonetti
simonettil@gtlaw.com

Christopher Anthony Mair
mairc@gtlaw.com

***Lawyers for Defendants***

BY:   */s/Cassandra P. Miller*
Cassandra P. Miller
Illinois ARDC #: 6290238

DATED:  March 28, 2024

**Edelman, Combs, Latturner**
**& Goodwin, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603
Phone (312) 739-4200
dedelman@edcombs.com
cmiller@edcombs.com