# EXHIBIT E

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

Exhibit E

JILL BALLARD, REBECCA VARNO,
and MARK POKORNI on behalf of
themselves and the class members
described herein,

       Plaintiffs,              Civil No.

vs.                               3:18-cv-00121-MEM-MCC

NAVIENT CORPORATION,
NAVIENT SOLUTIONS, INC., and
NAVIENT SOLUTIONS, LLC,

       Defendants.

_____

Deposition of JEFFREY A. STINE

June 24, 2022

Misty Klapper, RMR, CRR and Notary Public.
484458




(310) 207-8000 Los Angeles   (415) 433-5777 San Francisco   (949) 955-0400 Irvine   (858) 455-5444 San Diego
(310) 207-8000 Century City   (408) 885-0550 San Jose   (760) 322-2240 Palm Springs   (800) 222-1231 Carlsbad
(916) 922-5777 Sacramento   (800) 222-1231 Martinez   (702) 366-0500 Las Vegas   (800) 222-1231 Monterey
(951) 686-0606 Riverside   (818) 702-0202 Woodland Hills   (702) 366-0500 Henderson   (516) 277-9494 Garden City
(212) 808-8500 New York City   (347) 821-4611 Brooklyn   (518) 490-1910 Albany   (914) 510-9110 White Plains
(312) 379-5566 Chicago   00+1+800 222 1231 Paris   00+1+800 222 1231 Dubai   001+1+800 222 1231 Hong Kong

```
 1                UNITED STATES DISTRICT COURT

 2              MIDDLE DISTRICT OF PENNSYLVANIA

 3   JILL BALLARD, REBECCA VARNO,
     and MARK POKORNI on behalf of
 4   themselves and the class members
     described herein,
 5
              Plaintiffs,              Civil No.
 6
     vs.                               3:18-cv-00121-MEM-MCC
 7
     NAVIENT CORPORATION,
 8   NAVIENT SOLUTIONS, INC., and
     NAVIENT SOLUTIONS, LLC,
 9
              Defendants.
10
     _____
11

12

13       Deposition of JEFFREY A. STINE, taken on behalf of

14   Plaintiffs, via Zoom remote videoconference, beginning

15   at 9:34 a.m. on Friday, June 24, 2022, before Misty

16   Klapper, RMR, CRR and Notary Public.

17

18

19

20

21

22

23

24

25

                                 2
```

```
 1   APPEARANCES:

 2   (ALL APPEARANCES VIA ZOOM REMOTE VIDEOCONFERENCE)

 3   ON BEHALF OF PLAINTIFFS:

 4           ANTHONY FIORENTINO, ESQUIRE
             FIORENTINO LAW OFFICES, LTD.
 5           432 North Clark Street, Suite 202
             Chicago, Illinois 60654
 6           (773) 681-0088
             E-mail: anthony@fiorentinolaw.com
 7
                         AND
 8
             DANIEL A. EDELMAN, ESQUIRE
 9           CASSANDRA P. MILLER, ESQUIRE
             EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
10           20 South Clark Street, Suite 1500
             Chicago, Illinois 60603
11           (312) 739-4200
             E-mail: dedelman@edcombs.com
12                   cmiller@edcombs.com

13
     ON BEHALF OF DEFENDANTS:
14
             LISA SIMONETTI, ESQUIRE
15           GREENBERG TRAURIG, LLP
             1840 Century Park East, Suite 1900
16           Los Angeles, California 90067-2121
             (310) 586-7824
17           E-mail: simonettil@gtlaw.com

18
     ALSO PRESENT:
19
             MATT SHELDON
20

21

22

23

24

25


                         3
```

```
 1          A.      I believe so, yes.
 2          Q.      Of course, subject to a protective
 3   order --
 4          A.      Yes, it could.
 5          Q.      -- on the record.
 6          A.      Yeah.
 7          Q.      So, then, it's fair to say that every
 8   borrower who gets enrolled in a verbal
 9   forbearance, they all get the same exact
10   disclosures, correct?
11          A.      That is correct.  They will also
12   receive a written confirmation, which restates
13   all those same items that they heard in the
14   script is sent to them as well.
15          Q.      Are there any kind of time limits on
16   how long a verbal forbearance can last?
17          A.      We would not issue a verbal
18   forbearance for longer than 12 months at a time.
19   But generally we would issue the verbal
20   forbearance, you know, in the shortest amount of
21   time possible just to resolve what that
22   delinquency -- the current existing delinquency.
23                  So it's not always offered in
24   12-month increments, but the maximum time frame
25   that we would offer it is 12 months.
```

44

```
 1        Q.    So they can last -- under the federal
 2   regulation, they can last up to a year, even if
 3   they're not requested in writing?
 4        A.    That's correct.
 5        Q.    And every time a borrower is enrolled
 6   in a verbal forbearance, that gets recorded in
 7   the account records; is that correct?
 8        A.    Correct.
 9        Q.    And it would get recorded with a
10   standardized entry, so it's easy to see when that
11   occurred, correct?
12        A.    That's correct.
13        Q.    Now, regardless of whether a
14   verbal -- I'm sorry -- regardless of whether a
15   discretionary forbearance is requested in writing
16   or verbally, that would always result in a
17   capitalization of unpaid interest that accrues
18   during the forbearance; is that right?
19        A.    That's correct.
20        Q.    Is there ever a circumstance when
21   that would not happen?
22        A.    A circumstance where a discretionary
23   forbearance -- where the interest associated with
24   a discretionary forbearance is not capitalized?
25        Q.    Correct.
```

45

1        A.      I cannot think of one.
2        Q.      When a discretionary forbearance does
3    result in an interest capitalization, when does
4    that interest actually get added to the principal
5    balance?  Does that happen on the last day of the
6    forbearance or some other time?
7        A.      It happens at the expiration of the
8    forbearance and on the date the customer reenters
9    repayment.
10       Q.      Can you just expand on that a little?
11   Like in terms of the temporal nexus, like how
12   many days would that be out from the day that the
13   forbearance ends typically?
14       A.      It would be the next day.
15       Q.      The next day, okay.
16               Now, in contrast to discretionary
17   forbearances, there's also a 60-day
18   administrative forbearance, which may be applied
19   when a loan servicer is reviewing a borrower's
20   request to make a change in repayment plan; is
21   that correct?
22       A.      Yes.  Administrative forbearance is
23   applied for that 60-day period to allow the
24   customer time to submit their documentation.
25       Q.      Okay.  And what triggers the

46

1     application of that forbearance?
2          A.    That is usually triggered by the
3     consultation between the customer and the
4     customer service agent.  You know, the customer
5     has indicated that they have intended to apply
6     for an IBR plan and we'll generally apply that
7     60-day administrative forbearance to allow them
8     time to receive the documents, complete them and
9     submit them.
10         Q.    And that consultation you mentioned,
11    that would typically be over the phone?
12         A.    Correct.
13         Q.    Now, just for clarity also, I'm going
14    to refer to that kind of forbearance as the
15    60-day administrative forbearance going forward.
16               Fair enough?
17         A.    Yes.
18         Q.    Okay.  Unlike discretionary
19    forbearances, the 60-day administrative
20    forbearance does not result in a capitalization
21    of interest that accrues during the forbearance;
22    is that your understanding?
23         A.    That is correct.
24         Q.    And the purpose of that, to the
25    extent that you know, of course, is so that