UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI on behalf of themselves and the class members described herein,<br><br>Plaintiffs,<br><br>v.<br><br>NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., AND NAVIENT SOLUTIONS, LLC,<br><br>Defendants. | Civil No. 3:18-cv-00121-MEM-DFB |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Defendants Navient Corporation ("Navient Corp.") and Navient Solutions, LLC, formerly known as Navient Solutions, Inc. ("NSL") (collectively, "Navient"), respond to Plaintiff's Motion for Leave to File a Third Amended Complaint as follows.

**I.   BACKGROUND**

As previously explained to the Court (ECF 123), on April 19, 2024, counsel held a meet-and-confer to try to resolve the Plaintiffs' pending motion and issues related to discovery. During the meet-and-confer and later by letter, Navient proposed that it would forego filing objections to Plaintiffs' Motion if Plaintiffs agreed that the three Plaintiffs, Jill Ballard, Rebecca Varno and Mark Pokorni, each

of whom were deposed two years ago based on the allegations and proposed class definitions in First the Amended Complaint ("FAC"), would each sit for a deposition not to exceed 90 minutes. Copies of the email sent by Navient's counsel on April, 18, 2024 and follow-letter sent on April 25, 2024 related to the issue are attached as Exhibits A and B.

Navient seeks these depositions so that it has a fair opportunity to fully explore Plaintiffs' individual circumstances, each of which varies widely, in order to determine whether those circumstances align with the *eleven* proposed class and subclass definitions and to obtain updated testimony concerning the status of their respective loans. On April 29, Plaintiffs' counsel rejected Navient's request. *See* Exhibit C (hereinafter, the "April 29 Letter"). Plaintiffs' principal argument is about timing: Navient's prior counsel should have not taken depositions in 2022 because of the possibility that the complaint would be amended -- which did not even happen until July 29, 2023. Counsel also argues that any additional information can be found in Navient's records.[1]

---

[1] To move this case forward efficiently, Navient requests the Court to decide this closely related discovery issue in connection with its ruling on the pending Motion to Amend the Complaint rather than taking the issue up through separate motion practice, given that the parties have met-and-conferred to discuss the discovery issue and Plaintiffs have set forth lengthy arguments in the April 29 Letter. *See* Fed. R. Civ. P. 1 (FRCP should be interpreted to promote efficient justice).

Navient's request for short depositions is very reasonable in light of the significant changes made by Plaintiffs to the class definitions since the FAC was filed *and* the Court's prior holding that issues related to certification must be decided on a full record. The limited depositions sought by Navient are consistent with the Court's prior rulings, and Plaintiffs cannot establish "good cause" for precluding this limited additional discovery, the timing of which causes no prejudice and which is more than fair considering the time and resources which Navient has spent on this matter related to responding to Plaintiffs' own discovery demands.

## II.   ARGUMENT

### A.   The Proposed New Class Definitions

The FAC included a simple nationwide class definition, which reads as follows:

**NATIONWIDE CLASS**

> All individuals with federal student loans serviced by Navient Corp., NSL, NSI, and/or their predecessors in interest, who, at any time on or after a date six years prior to the filing of this action, 1) were enrolled in an IDR plan, and timely submitted a request to renew the plan, which was nonetheless cancelled due to Navient's failure to process the renewal prior to the plan's expiration, or 2) submitted a request for enrollment in an IDR plan that was not processed within 25 business days.

(ECF 29).

Put simply, the proposed class consisted of borrowers who were enrolled in an IDR plan but whose plans were not renewed, allegedly because Navient failed to

process the request prior to expiration of the IDR plan within twenty-five business days. The FAC also included straight-forward proposed sub-classes for Illinois, New York and California that more or less tracked the language used to define the proposed nationwide class.

After Plaintiffs were deposed, they sought leave to file a Second Amended Complaint ("SAC"), and after considering Navient's objections, Magistrate Judge Carlson recommended that Plaintiffs' motion be granted. The SAC was deemed filed on June 29, 2023, following the adoption of the recommendation by Judge Mannion (ECF 88, 89).

The SAC's definitions were radically different than the definitions used in the FAC. Instead of one nationwide putative class, there were now five nationwide proposed putative classes: an "Improper IDR Cancellation" class with an associated California subclass; a "Forbearance without Written Consent" class with associated New York and Illinois subclasses; a "No Administrative Forbearance" class with an associated New York subclass; an "Improper Delay" class with an associated Illinois subclass; and an "Income Documentation" class with an associated New York subclass.

Following still more discovery directed to Navient, Plaintiffs now seek to amend the definitions yet again so that, in the words of Plaintiffs' counsel during the parties' last appearance before the Court, the "definitions would match the

4

queries[.]" (ECF 119).  In the proposed TAC, the "Improper IDR Cancellation", the "Forbearance without Written Consent", the "No Administrative Forbearance" and the "Improper Delay" classes (and associated subclasses) remain, albeit with significant changes. The "Income Documentation" class has been removed.

As is plainly evident from the proposed definitions set forth below, both the SAC and the proposed TAC contain numerous factual predicates that were *not* in the operative Complaint when each Plaintiff was deposed.[2]  Specifically, Plaintiffs now request that the classes be defined as follows:

### "Improper IDR Cancellation" Class:

a. On or after January 16, 2012, the borrower was enrolled in an IDR plan.

b. The borrower submitted an IDR renewal application, which was received by NSL within 90 days or less prior to the renewal deadline.

c. The borrower's partial financial hardship status expired, at which time the borrower's payments were recalculated under the standard repayment plan.

d. At the time the application received its first review, it was deemed complete.

### "Forbearance without Written Consent" Class:

a. On or after January 16, 2012, the borrower was enrolled in an IDR plan.

---

[2]   Plaintiffs' Motion uses multiple charts to describe each proposed class. Although the proposed definitions in the TAC are not particularly clear and concise, the charts muddy the waters even further.

b. The IDR plan was not renewed before the annual renewal deadline, at which point the borrower's Partial Financial Hardship (PFH) status expired, and payments were recalculated under the standard repayment plan.

c. After the expiration of the borrower's PFH status, NSL enrolled the borrower in a discretionary forbearance, based on the borrower's oral affirmation, and the posting date of the forbearance was within the 90-day period which began 30 days before the PFH status expired. (For example, if the PFH status expired on May 1, 2015, then the 90-day period would begin on April 1, 2015 and would end on June 30, 2015.)

d. At the time of enrollment in the discretionary forbearance, the loan was not in default, with "default" being defined as a period of 270 days without any payments.

### "No Administrative Forbearance" Class:

a. On or after January 16, 2012, the borrower submitted an application to enroll in an IDR plan.

b. NSL enrolled the borrower in a 60-day, "non-capping" administrative forbearance, which was in effect while that application was under review.

c. During the 60-day administrative forbearance period, the borrower's account status changed from administrative forbearance status to discretionary forbearance status, and the discretionary forbearance was supported by oral affirmation.

### "Improper Delay" Class:

a. On or after January 16, 2012, the borrower applied to enroll in, or to renew, an IDR plan.

b. The borrower submitted a completed IDR application, accompanied by proof of income, which was subsequently approved by Navient.

c. Navient did not fully process the application until 45 days or more after it was received.

(ECF 118).

Obviously, there are numerous differences between the proposed language for the class definitions in the TAC and the operative class definitions in use when Plaintiffs were deposed. For example, the proposed "Forbearance without Written Consent" class consists of borrowers whose loans were not in default and who enrolled in a three-month discretionary forbearance, beginning thirty-days before the borrower's personal financial hardship status expired, based on each "borrower's oral affirmation" (*i.e.*, consent). *See* Forbearance without Written Consent class, subparagraphs b-d.

Moreover, the proposed forbearance classes—both the "Forbearance without Written Consent" and "No Administrative Forbearance" classes—were not clearly spelled out when Plaintiffs were deposed. The original class definition does not even mention forbearances, let alone the distinctions between forbearances that are "non-capping" versus a forbearance that results in capitalized interest.  And, the forbearances allowed or not allowed for each Plaintiff is a fact-intensive inquiry, one which requires understanding of each Plaintiff's individual circumstances at the time.

A third example is evident when reviewing the "Improper IDR Cancellation" and the "Improper Delay" classes.  First, both classes require completed applications for each class member for their renewal or enrollment into an IDR repayment plan.

7

Second, the original class definition did not account for, nor even mention, a borrower's enrollment in the standard repayment plan, as outlined in the "Improper IDR Cancellation" class.

Finally, the "Improper IDR Cancellation" and the "Forbearance without Written Consent" classes rely on the borrower's Partial Financial Hardship status, another term that was left out of the class definitions in the FAC and the SAC. This status is another important measure of how Navient makes decisions regarding its borrowers and whether they qualify for IDR plans and certain forbearances. These are just some examples of the way the class definitions have changed and evolved in the two years since Plaintiffs were deposed. It is both fair and proper for Navient to seek further discovery on the numerous amendments made to the original class definition.

To be clear, Navient by no means concedes that any of the *eleven* proposed classes and sub-classes can be certified. Each proposed class raises different issues regarding feasibility, ascertainability and commonality. Several are arguably impermissible fail-safe classes. *See Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015). Navient expects that many if not all of these arguments will be made in opposition to class certification – and is entitled to testimony from each Plaintiff's regarding their latest proposed class formulations.

### B. The Requested Depositions Are Consistent With the Court's Prior Rulings

Navient's request for depositions also is consistent with the Court's prior rulings. Prior to Your Honor's assignment, Navient moved to dismiss the FAC and strike the class allegations contained therein through a lengthy, well-reasoned motion. (ECF 39). With respect to the motion to strike class allegations, Magistrate Judge Carlson determined that the arguments raised by Navient could only be assessed after full discovery. Specifically, he concluded that "under the guiding principles defined by Rule 23, we should proceed cautiously when asked to strike class allegations from a pleading without the benefit of a full factual record." (ECF 56, at 11). "Simply put, *questions of numerosity, commonality, typicality, and adequacy of representation routinely require factual development* and may only be resolved based solely upon the pleadings in extremely rare cases." *Id*. at 13 (emphasis added). "In addition, the assertions made by the individual plaintiffs indicate that their personal experience may be typical of that experienced [by] by many other putative class members."[3] *Id*. at 14.

---

[3] Consistent with this ruling, Magistrate Carlson also did not adopt any of the merits-based arguments made by Plaintiffs. Instead, the only position argued by Plaintiffs with which Magistrate Carlson agreed was that "time may be needed to gather the information necessary" to make decisions regarding certification. (ECF 45 at 6 (citing Fed. R. Civ. P. 23, Advisory Note)). In other words, Magistrate Carlson recommended that a "full record" was necessary to evaluate class certification-related arguments and Judge Mannion adopted this recommendation.

Plaintiffs' pending Motion makes clear that their requested amendment is driven largely by deposition testimony provided by Navient related to how student loan data is managed. Even if true, Plaintiffs overlook the responsibilities of Ms. Ballard, Ms. Varno and Mr. Pokorni, who are never once mentioned in their Motion, who purport to their own responsibility to serve as representatives of the putative class, and whose own experiences are fundamental to answering the "questions of numerosity, commonality, typicality, and adequacy of representation" identified by Magistrate Judge Carlson as questions that should be answered through a *fully developed* factual record. (ECF 53 at 13).

C. **Plaintiffs Are Not Entitled to a Protective Order**

"As with most discovery disputes, the decision to allow a second deposition of a witness rests solely with the discretion of the court." *Swift Bros. v. Swift & Sons, Inc.*, No. 89-5253, 1992 WL 201002, at *1 (E.D. Pa. Aug. 11, 1992) (allowing second deposition given the importance of discovery to judicial process when there was no demonstration of undue burden). Pursuant to Rule 30(a)(2)(A)(i), when requesting a deposition of a deponent that "has already been deposed in the case," a party must obtain leave of court for a second deposition and "the court *must grant leave* to the extent consistent with Rule 26(b)(1) and (2)[.]" Fed. R. Civ. P. 30 (emphasis added); *see also York Grp., Inc. v. Pontone*, No. 2:10-CV-1078-JFC, 2012 WL 12895528, at *1 (W.D. Pa. May 18, 2012) ("That rule, however, actually

requires the Court to grant leave to the requesting party to the extent consistent with Rule 26(b)(2)."). This is true because depositions are a crucial part of the discovery process and courts are well within their discretion to allow for a second deposition to be taken: "[t]he federal courts clearly favor the taking of depositions." *Elseiver, Inc. v. Comprehensive Microfilm & Scanning Servs., Inc.*, No. 10-2513, 2013 WL 5797639, at *3 (M.D. Pa. Oct. 28, 2013).

As explained in *Beltz v. Univ. of Pittsburgh*, a second deposition should be allowed unless the opposing party can show there is good cause for a protective order. No. 29-cv-1572, 2022 WL 4448946, at *1 (W.D. Pa. Sept. 22, 2022) (citing *LeBoon v. Lancaster Jewish Cmty. Ass'n*, 503 F.3d 217, 236 (3d Cir. 2007)). Contrary to the April 29 Letter, the burden rests on the party opposing the request for a deposition to demonstrate "good cause" for a protective order consistent with F.R.C.P. 26(b)(2). *See Perry v. Kelly–Springfield Tire Company, Inc.*, 117 F.R.D. 425, 426 (N.D. Ind. 1987) (new counsel permitted to take second deposition of witness); *Christy v. Pennsylvania Tpk Comm'n*, 160 F.R.D. 51, 53 (E.D. Pa. 1995) (second deposition allowed given opposing party's failure to show good cause for protective order); *Beltz*, 2022 WL 4448946, at *1 (courts "*must* grant leave to the extent consistent with Rule 26(b)(2) …. [and] weigh the potential evidence's relevancy against the burden that would ensue") (quoting *York Grp., Inc.*, 2012 WL 12895528 at *1-2 (emphasis in original)).

In *Hurley v. JARC Builders, Inc.*, the Eastern District of Pennsylvania explained:

> A Court should apply the standards enunciated in Rule 26(b)(2) when granting or denying leave. Rule 26 gives courts the power to limit discovery upon a finding that the discovery is (1) unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome or less expensive; (2) the person seeking discovery has had ample opportunity already to obtain the information sought; or (3) the burden or expense of taking the discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2).

164 F.R.D. 39, 40 (E.D. Pa. 1995).

Here, as in *Hurley*, Plaintiffs' ever-evolving efforts to match classes to the alleged facts entitles Navient to the limited discovery requested. Because there have been numerous adjustments to the class definitions since the time of Plaintiffs' original depositions, Defendants have not "had ample opportunity already to obtain the information sought[.]" *Id*. Moreover, Plaintiffs' ability to act as class representatives under the newly proposed definitions cannot be "obtained from some other source that is more convenient, less burdensome or less expensive[,]" (*id*.) because Plaintiffs themselves are the named class representatives.

Navient is entitled to each Plaintiff's understanding – based on their testimony, not the statements of counsel – as to how the facts related to each of them might support certification of one or more of the eleven proposed classes and subclasses. Given the extreme complexity which Plaintiffs have injected into the class definitions, including subclasses, it is only fair to permit Navient a further

opportunity to question each Plaintiff regarding their knowledge of the new class definitions and the degree to which their situations resemble those of the borrowers who they hope to represent. There are now *eleven* proposed classes and subclasses—some of which appear to have been chosen to reflect the experience of some but not all Plaintiffs. Certain definitions assume the existence of "oral affirmations" by borrowers; others are based on the existence of "non-capping" administrative forbearances; others, still, require Navient to have "deemed complete" an application on "first review." The subclasses only apply to certain states and possibly the laws of those specific states. Navient has the right to ask each Plaintiff exactly how they claim to fit in, if at all, with Plaintiffs' latest round of changes to class definitions. Their testimony on these issues is fundamental to Rule 23, and the Court *de facto* recognized as much when it denied Navient's motion to strike and held that a full record should be created in connection with the expected request for certification. (ECF 56) ("under the guiding principles defined by Rule 23, we should proceed cautiously when asked to strike class allegations from a pleading without the benefit of a full factual record.").

### D. Counsel's April 29 Letter is Not Compelling.

Plaintiffs argue that Navient should have been prescient enough to postpone the depositions of Plaintiffs taken in 2022 because the definitions in the FAC might change. Plaintiffs further argue that Navient could have taken depositions based on

the SAC. However, the Court, over Plaintiffs' objection, has ruled that changes to the class definitions must be made through amended pleading. (ECF 79). It would be unreasonable to expect Navient's counsel to ask questions based on hypothetical amendments to the FAC. Furthermore, the April 29 Letter states that Plaintiffs' counsel planned to amend the class definitions on or around June 30, 2022, Plaintiffs did not file their motion seeking leave to amend until September 21, 2022 and the SAC was not filed until June 29, 2023.

Moreover, the April 29 Letter does not argue that it would be unduly burdensome to present each Plaintiff for a brief deposition, and the depositions taken previously were not overly long.[4] Given the protracted nature of this case and the fact that Plaintiffs likely will soon be on their fourth pleading, the requested depositions should be allowed in the interests of fairness and completeness, particularly when considering the significant burden placed on Navient already during discovery and the additional tasks still to be accomplished.

---

[4] On July 14, 2022, Ms. Varno was deposed for 94 minutes. On July 18, 2022, Mr. Pokorni was deposed for 56 minutes. On July 21, 2022, Ms. Ballard was deposed for 65 minutes. A second deposition of approximately the same length can hardly be considered an undue burden.

## III.  CONCLUSION

Navient respectfully requests that the Court provide it with twenty (20) days to respond to the TAC after it has been filed of record; that the Court order Plaintiffs to appear for depositions not to exceed ninety (90) minutes within thirty (30) days of Navient's response being filed, and that a status conference be set to discuss a schedule for further proceedings.  A proposed Order is attached.

        Respectfully submitted,

        BY: /s/ Andrew J. Soven
        Andrew J. Soven (PA ID 76766)
        HOLLAND & KNIGHT LLP
        1650 Market Street, Suite 3300
        Philadelphia, PA 19103
        (215) 252-9600
        Andrew.Soven@hklaw.com

        Daniel T. Brier
        Donna A. Walsh
        Myers Brier & Kelly, LLP
        425 Spruce Street, Suite 200
        Scranton, PA 18503
        T: 570-342-6100
        dbrier@mbklaw.com
        dwalsh@mbklaw.com

        *Counsel for Navient Solutions, LLC and Navient Corporation*

Dated: May 2, 2024