# FIORENTINO LAW OFFICES

6119 N. Kenmore Ave., #410
Chicago, IL 60660
anthony@fiorentinolaw.com
312-305-2850

November 23, 2025

**VIA ECF ONLY**

Honorable Magistrate Judge Phillip Caraballo
Middle District of Pennsylvania
William J. Nealon Federal Bldg. & U.S. Courthouse
235 N. Washington Avenue
Scranton, PA 18503

    Re:    <u>*Ballard, et al. v. Navient Corporation, et al.* - No. 3:18-cv-121</u>

Dear Judge Caraballo:

    This letter is in response to Defendant's letter of November 21, 2025.

    On the evening of November 20, 2025, the Department of Education ("ED"), through its agent, Maximus Education LLC, produced the results of various computer searches that Plaintiffs had subpoenaed in February 2025. The search results consisted of two items: 1) the number of borrowers who were subjected to a specific account transaction, and 2) a data compilation of "interest capitalizations" that borrowers were charged as a result of these transactions. That evidence was produced by ED on the deadline set by the Court (ECF 189), which was extended due to technical difficulties that prevented ED from meeting the original deadline.

    In Defendants' letter to the Court, they have asserted that the data compilation of interest capitalizations should be stricken because:

> [t]hroughout this case, Plaintiffs have represented both to counsel for Defendants and this Court that they needed these extensions for ED to provide 'headcounts' or responses to 'computer searches' and **have never**

> **referenced a data compilation or interest capitalization figures**…Plaintiffs should not be permitted to produce an interest capitalization data compilation at this late hour given their previous representations..."

(Emphasis added.) Plaintiffs do not agree with this characterization.

## PROCEDURAL BACKGROUND

On February 19, 2025, Plaintiffs served a subpoena on ED, requesting that the Department:

1. execute four "search queries" in ED's loan servicing computer database and provide "the number of Federal Direct Loan Program borrowers identified by each of the four searches"; and

2. generate "**a data compilation that states the amount of any interest capitalizations** incurred by each borrower in connection with the transactions" described in those search queries.

(Emphasis added.) On March 18, 2025, Defense counsel Cory Eichhorn sent an email to Plaintiffs' counsel, stating as follows:

> Counsel, we have reviewed the Subpoena dated February 19, 2025, to the DOE. We object to certain requests. The Subpoena asks ED to direct Maximus Education, LLC ("Maximus") to "**generate a data compilation** that states the amount of **any interest capitalizations** incurred by each borrower in connection with the transactions described in the search queries...We believe this request is not only confusing and ambiguous but is overbroad to the extent it seeks a **calculation of any interest capitalizations** (and not solely directed to verbal discretionary forbearances or specific time frames) as interest could capitalize outside of those periods and not be covered by the claims raised in the Third Amended Complaint.

(Emphasis added.) On March 19, 2025, Plaintiffs' Counsel Anthony Fiorentino

2

replied to Mr. Eichhorn's email as follows:

> We believe that the limiting language "in connection with the transactions described in those search queries" appropriately avoids that ambiguity. However, we are willing to consider any other language that you propose to address the ambiguity that you believe is there. How would you want this request changed to eliminate your concerns?

On May 8, 2025, after a period of negotiation between the parties, the following stipulation was entered by the Court:

> 1. Within seven (7) days of the entry of this Order, Navient Defendants will respond in writing to Plaintiffs' proposed clarifying language to resolve Defendants' objections to the search query language in Plaintiffs' subpoena to the Department of Education dated February 19, 2025 (the "DOE subpoena").
>
> 2. If Plaintiffs' proposed clarifying language has not fully resolved Navient Defendants' objections, Navient Defendants will timely notify the Court so that a conference can be scheduled to address any outstanding issues concerning the DOE Subpoena.

(ECF 157.)

On May 13, 2025, Mr. Eichhorn sent Plaintiffs' counsel a pair of emails, stating as follows:

> I should be able to get you language on the DOE subpoena by close of business today. Our primary concern related to the request to **compile interest capitalization figures.**
>
> * * *
>
> On the **interest capitalization data compilation**, we suggest the following modification be included: "**interest capitalizations incurred during the relevant class**

3

> **period** by each borrower in connection with any discretionary forbearance based upon oral affirmation that meets the criteria set forth in Search Queries 2 and 3."

In his emails, Mr. Eichhorn did *not* object to the data compilation; he merely requested that the subpoena's language be modified in the manner suggested above. Shortly thereafter, the parties resolved the objections to the subpoena, and the Defendants did not notify the Court of any further issues.

The following month, the parties began discussing whether the evidence produced by ED in response to the subpoena would be subject to the protective order entered in this case.

On June 27, 2025, Mr. Fiorentino emailed Defense counsel, stating that ED's attorney had agreed to authorize the computer searches requested in the subpoena, but only if "any search results **or data** generated by the computer coding will remain subject to the protective order." (Emphasis added.) Accordingly, Mr. Fiorentino proposed the following language for a stipulation:

> The parties agree that any computer coding language produced by defendants to identify putative class members is "confidential information" under the protective order entered in this case.
>
> The parties further agree that **any data compilations *or*** search results generated by said computer coding language is "confidential information" covered by the protective order entered in this case.
>
> ED shall have the right to move for an amendment to the protective order, to that extent that such an amendment becomes necessary to ensure that the computer coding language, ***and/or* any data compilations *or*** search results produced by it, remain subject to the protective order.

(Emphasis added.)

On July 3rd, Mr. Eichhorn replied to the email:

> [W]e would slightly modify the stipulation to the following: "ED reserves the right to seek leave to amend the protective order, as needed, to ensure that the computer coding language, ***and*** **any data compilations** ***or*** search results produced by it, remain subject to the protective order."
>
> Otherwise, this looks ok.

(Emphasis added.) On July 7, 2025, Mr. Eichhorn emailed Mr. Fiorentino to confirm that the issue of the protective order had "been resolved." Mr. Fiorentino confirmed that it was.

Based on the aforementioned agreements, ED proceeded with the computer searches. However, due to technical difficulties, the searches could not be completed by the original deadline of October 1, 2025.

During multiple meetings in September and October 2025, officials from ED and Maximus informed Plaintiffs that the IT specialists running the search queries needed more time to generate head counts for several of the classes. However, those officials did not specifically indicate that they needed additional time to generate the data compilation of interest charges.

On October 27, 2025, during a case management conference, Plaintiffs sought leave of Court to give ED until November 20, 2025, to complete the computer searches requested in their subpoena. Defendants did not oppose this request, provided that no further extensions be given. The Court granted the request.

ED complied with the deadline and produced the requested search results and data compilation on November 20, 2025. Plaintiffs promptly disclosed that evidence to Defendants.

As shown by the foregoing, Defendants have no basis for objecting to the data compilation of interest capitalizations. Since at least March 2025, they have known that ED's computer searches included this data compilation, and any objections to such evidence were resolved months ago.

The extensions sought by Plaintiffs were requested in good faith because additional time was needed for ED to complete the searches demanded by the

5

subpoena, which Defendants had specifically negotiated. The Court granted those extensions.

Moreover, it serves judicial economy to complete both components of the search queries simultaneously because the interest capitalizations were part of the same inquiry that produced the headcounts. The searches identified 1) the injured borrowers, and 2) the resulting charges. This obviates the need to conduct additional searches at a later time, and the itemization of interest charges did not substantially delay the completion of the searches.

Additionally, Defendants have no basis to argue that the evidence produced by ED "constitute[s] an untimely rebuttal expert report." An expert witness is a person who is qualified by knowledge, experience, or education to "testify in the form of an opinion." *See* Fed. R. Evid. 702. Neither ED, nor its agent, Maximus, have rendered any opinions in this case. They have simply produced the data responsive to the subpoena, and Defendants had advance notice that this data would be provided on or before the deadline.

Defendants did not issue any subpoenas to ED seeking the computer coding used to complete the computer searches, nor did they request this information from Plaintiffs. Accordingly, there is no basis to delay class certification briefing so that such discovery can be proceed at the present time.

To any extent that Defendants wish to challenge the accuracy of the data compilation in order argue that that it does not accurately reflect the class members' damages, such evidence would fall would under the purview of merits discovery, not class discovery, and can proceed after any certification.

Plaintiffs do not intend to cite any figures from the data compilation in their class certification brief. They will merely cite the fact that the improper interest charges were capable of itemization on a class wide basis.

Sincerely,

s/ Anthony Fiorentino
Anthony Fiorentino