# Exhibit 8

CFPB Complaint

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>    Plaintiff,<br><br>    v.<br><br>Navient Corporation; Navient Solutions, Inc.; and Pioneer Credit Recovery, Inc.,<br><br>    Defendants. | Case No. _____<br><br>(Electronically Filed) |

## COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF

Plaintiff Consumer Financial Protection Bureau (Bureau) brings this action against Navient Corporation, Navient Solutions, Inc. (Navient), and Pioneer Credit Recovery, Inc. (Pioneer) (collectively, Defendants) and alleges the following:

## INTRODUCTION

1. The Bureau brings this action under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564, 5565; the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*, and its implementing regulation, Regulation V, 12 C.F.R. part 1022; and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.*, based on

while working full time for certain public service employers.

33.     Federal student loans are generally also eligible for forbearance, which is a short-term, temporary postponement of payment. With forbearance, a borrower experiencing financial hardship or illness may be able to stop making payments or reduce his or her monthly payment for a defined period of time.

34.     Navient's website states that forbearance is appropriate for borrowers who "have a problem making on-time payments due to a temporary financial difficulty." The website also states: "Forbearance is intended to help you out in times of temporary need."[1]

35.     Forbearance is typically not suitable for borrowers experiencing financial hardship or distress that is not temporary or short-term. Borrowers who enroll in forbearance face significant costs, which generally increase the longer the borrower is in forbearance. These include the accumulation of unpaid interest and the addition of that unpaid interest to the principal balance of the loan. In addition, in some cases, following a forbearance, a loan may be reamortized, where the monthly payments may

---

[1] Navient, *Deferment and Forbearance*, https://www.navient.com/loan-customers/postponing-payments/deferment-and-forbearance/ (last visited Jan. 18, 2017).

be recalculated, which can lead to an increase in the borrower's monthly payment amount. As a result of these costs, long-term enrollment in forbearance can dramatically increase the total amount due each month after the forbearance period ends and over the repayment term for a borrower's federal loans.

36.     Because income-driven repayment plans enable borrowers to avoid or reduce these costs associated with forbearance, for borrowers whose financial hardship is not temporary and short-term, enrolling in an income-driven repayment plan is usually a significantly better option than forbearance.

37.     The U.S. Department of Education has publicly encouraged borrowers to consult their federal student loan servicer to determine the best repayment option or alternative for that individual borrower. In several places on its website, the U.S. Department of Education has advised borrowers to contact their student loan servicer before applying for any alternative repayment plan or forbearance, with statements such as the following: "Work with your loan servicer to choose a federal student loan

15

affordable repayment plan, Navient has routinely disregarded that commitment and instead steered borrowers experiencing long-term distress or hardship into forbearance.

41.     Navient's compensation policies for its customer service representatives have incentivized them to push numerous borrowers to forbearance without adequately exploring income-driven repayment plans with those borrowers, and in some cases, without even mentioning income-driven repayment plans at all.

42.     Because of the number and complexity of repayment options available for federal loans, a conversation about alternative repayment plans and the borrower's financial situation is usually time-consuming.

43.     Navient, however, has compensated its customer service personnel, in part, based on average call time. As a result, engaging in lengthy and detailed conversations with borrowers about their particular financial situation and trying to determine the income-driven repayment plan that is most appropriate for each borrower would have been financially detrimental for those employees.

44.     Moreover, since a borrower is required to submit a paper or online application, and include certain income tax documentation with that

18

application, to enroll in an income-driven repayment plan, the process of enrolling a borrower in such plans sometimes requires multiple, lengthy conversations with the borrower. This is especially true considering that more than half of Navient borrowers who enroll in income-driven repayment plans for the first time report that they could not navigate the application process on their own.

45. In addition to the paperwork required to enroll a borrower in an income-driven repayment plan, a borrower in such a plan must also complete an annual recertification form each year to document his/her current income and family size, which is then used to adjust the borrower's payment amount. Processing this renewal paperwork further increases the employee time that Navient must devote to borrowers who enroll in an income-driven repayment plan.

46. As the volume of income-driven repayment plan applications and renewals received by Navient increases, Navient also has to increase the size of its staff to review and process those forms, thereby increasing operating costs.

47. In sum, counseling borrowers about and enrolling those borrowers in income-driven repayment plans is costly for Navient and its

19

repayment plan, which suggests that forbearance was not merely offered to these borrowers while their application in an income-driven repayment plan was pending. Because they were placed into forbearance before ultimately enrolling in an income-driven repayment plan with a $0 payment, these borrowers had delayed access to the benefits of the income-driven repayment plan. They were also subject to the negative consequences of forbearance, including the addition of interest to the principal balance of the loan, which they potentially could have avoided had they been enrolled in the income-driven repayment plan from the start.

53.  Navient also enrolled an immense number of borrowers in multiple consecutive forbearances, even though they had clearly demonstrated a long-term inability to repay their loans. For example, between January 1, 2010 and March 31, 2015, Navient enrolled over 1.5 million borrowers in two or more consecutive forbearances totaling twelve months or longer. More than 470,000 of these borrowers were enrolled in three consecutive forbearances, and more than 520,000 of them were enrolled in four or more consecutive forbearances. For borrowers enrolled in three or more consecutive forbearances, each forbearance period lasted, on average, six months. Therefore, hundreds of thousands of consumers

were continuously enrolled in forbearance for a period of two or three years, or more. Regardless of why these borrowers did not enroll in an income-driven repayment plan from the start, their long-term inability to repay was increasingly clear as each forbearance period expired. Yet Navient representatives continued to enroll them in forbearance again and again, rather than an income-driven repayment plan that would have been beneficial for many of them.

54. Enrollment in multiple consecutive forbearances imposed a staggering financial cost on this group of borrowers. At the conclusion of those forbearances, Navient had added nearly four billion dollars of unpaid interest to the principal balance of their loans. For many of these borrowers, had they been enrolled in an income-driven repayment plan, they would have avoided much or all of their additional charges because the government would have paid the unpaid interest on their subsidized loans in full during the first three years of consecutive enrollment.

**Navient's Servicing Failures Relating to Renewal of Borrowers' Enrollment in Income-Driven Repayment Plans**

55. A federal student loan borrower who is enrolled in an income-driven repayment plan must certify his/her income and family size to

*process* would be delayed by the submission of an incomplete and incorrect application for renewal, as long as the deficiencies were rectified, no other consequences would result.

65.     Borrowers who have submitted a renewal application have clearly chosen to renew their enrollment; their choice to renew was evidenced by their submission of the application, even if that application was incomplete or inaccurate in some respect. But the pre-December 2012 notice said nothing to warn these borrowers that failing to submit complete and accurate information before the end of the twelve-month period would have essentially the same consequences as if the borrower chose not to renew their enrollment in the income-driven repayment plan at all, because the consequences of a decision not to renew that were outlined in the initial disclosure letter would still result. Those consequences included at least a temporary increase in the borrower's monthly payment amount, the addition of any unpaid interest to the principal balance of the loan, and other financial consequences described above. Borrowers could not reasonably have been expected to interpret Navient's reference to a mere processing delay to actually mean irreversible financial harm.

66.     For borrowers who have consented to receiving electronic

28

communications, Navient has sent electronic renewal notices instead of hard copy notices by mail. More than 75% of Navient's federal student loan borrowers have consented to receiving electronic communications.

67. Between at least mid-2010 and March 2015, these borrowers had to log in to Navient's secure website with their user ID and password to view an electronic version of the renewal notice sent via U.S. mail to other borrowers. Navient, however, failed to adequately advise these borrowers of the availability of the electronic notice on its website.

68. The only step that Navient took to advise these borrowers of the availability of the electronic notice on its website was to send them an email with a hyperlink to its website, where the renewal notice could be viewed after the borrower logged into his/her secure account. But neither the subject line of this email nor its contents provided any indication of the purpose of the notice.

69. From at least January 1, 2010 through November 15, 2012, the subject line of the email simply read: "Your Sallie Mae Account Information." Likewise, from at least November 16, 2012 through March 18, 2015, the subject line of the email was: "New Document Ready to View."

70. The body of the email did not provide any greater detail. Until

29

mid-2015, the body of the email stated only that "a new education loan document is available. Please log in to your account to view it."

71. In stark contrast, during the same time period, other emails sent by Navient described the content or purpose of the referenced document. For example, the subject line of one such email was "Your Sallie Mae – Department of Education Statement is Available," and the body of the email stated "Your monthly statement is now available. Please log in to your account at SallieMae.com to view and pay your bill." Another email regarding loan terms had a subject line that read "Change in Loan Terms," and the text of this email stated, "The payment term for your loan(s) has changed. Please log in to your account to view the document with your updated payment schedule."

72. Navient has tracked the number of borrowers who click on the hyperlink in the emails that Navient sends to them. Thus, Navient has known or should have known that many borrowers did not view the electronic renewal notices.

73. Between at least July 2011 and March 2015, the percentage of borrowers who did not timely renew their enrollment in income-driven repayment plans regularly exceeded 60%. Those borrowers who did not

30

timely renew experienced the significant consequences of nonrenewal, including a payment jump and the addition of any accrued, unpaid interest to the principal balance of the loan.

74. Navient has been aware that the majority of borrowers were failing to renew their enrollment in income-driven repayment plans.

75. Beginning in or around March 2015, Navient made several enhancements to its email that provides access to the electronic renewal notice. It changed the subject line of the email to read "Your Payment Will Increase Soon!" and the text of the email now states: "[I]n order to keep your lower payment amount, it's important that you apply soon to renew your repayment plan."

76. Since Navient made these enhancements to its electronic notices, the renewal rate has more than doubled.

## Navient's Misreporting of Information to Consumer Reporting Agencies Regarding Loans Held by Disabled Borrowers

77. As a servicer of student loans, Navient routinely furnishes information about its student loan accounts to consumer reporting agencies.

78. The U.S. Department of Education allows borrowers who have a

31