# Exhibit 28

Patrick Theurer Dep. Transcript

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NO. 3:18-CV-121-MEM

- - -

JILL BALLARD, REBECCA VARNO, and  :
MARK POKORNI, on behalf of
themselves and the class members  :
described herein,
                                  :
    Plaintiffs,
                                  :
- vs -
                                  :
NAVIENT CORPORATION, NAVIENT
SOLUTIONS, INC., and NAVIENT      :
SOLUTIONS, LLC,
                                  :
    Defendants.

- - -

DEPOSITION UPON ORAL EXAMINATION OF
CORPORATE DESIGNEE, PATRICK THEURER
Virtual Videoconference
December 19, 2023
- - -
REPORTED BY:
EDWARD J. RUGGERI, RPR, CCR, FPR-C
- - -
MAGNA LEGAL SERVICES
(866) 624-6221
www.MagnaLS.com



Page 150

1     A.    Part B.
2     Q.    Okay.
3           So the reason I use the term
4  "IDR" -- or the reason I use the term
5  "recertification window" is because that
6  specifies that period of 90 days prior to
7  the deadline.  I believe that's what it
8  is.
9           But you're saying that if we
10 were to instead of using the words
11 recertification window, if we replaced
12 that with a specific date range, that
13 would fix part B?
14    A.    That would be fine.  I actually
15 think it would be even better if we said
16 recertification window defined as 90 days
17 prior to PFH expiration, through PFH
18 expiration, just to be really clear.  That
19 way we have a way to tie it all together.
20    Q.    Okay.
21          MR. FIORENTINO:  Ingrid, so can
22       you just cut the words "during the
23       recertification window," and just
24       replace it with 90 days or less prior



Page 151

1      to the renewal deadline.
2  BY MR. FIORENTINO:
3      Q.    Okay.
4            Mr. Theurer, would that help
5  clarify?
6      A.    I believe that helps clarify,
7  yes.
8      Q.    Okay.
9            In looking at the rest of the
10 search, do you see any other problems?
11     A.    Yes.
12     Q.    Go ahead.
13     A.    Part B, when the borrower's
14 application was processed, we will process
15 an application.  It could process at a
16 second or even a third time.  If we find a
17 flaw communicated to the borrower, they
18 rectify the flaw and bring it back, we
19 still consider that one application.
20     Q.    Okay.
21           So if I were to change D as, at
22 the time the borrower's application
23 received its first review, its first
24 review, it was deemed complete, would that



Page 152

1  add clarification to part D?
2       A.   I think that adds some, yes,
3  much needed clarification.
4       Q.   Okay.
5            So, Ingrid, let's remove the
6  first clause up to the comma and replace
7  that with, at the time the application
8  received its first review, it was deemed
9  complete.  Okay.  Let's take another last
10 look at the search.
11           Do you see any other technical
12 obstacles to searching this on a
13 systemwide basis?
14      A.   I see nothing at this point,
15 but I would still want to review it with
16 my team to ensure I'm not missing
17 something.
18      Q.   Okay.
19           But as you see it at the
20 present moment, you don't see any other
21 technical obstacles, correct?
22      A.   I do not.
23      Q.   Okay.
24           Now, Mr. Theurer, as you know,



Page 153

```
 1   the court has ordered NSL to execute the
 2   search queries to the extent are feasible.
 3   I understand that it's largely our fault
 4   that the first version we got you was not
 5   feasible, but now I think we've ironed out
 6   the kinks.  And based on the court's order
 7   and your testimony at this time, we've got
 8   a feasible search now.  NSL's still under
 9   that court order, so what we're requesting
10   is that NSL go ahead and proceed --
11             MS. SIMONETTI:  Tony, can we
12        take that up offline?  We do not
13        agree with the order applied to this.
14        We've provided the responses to this
15        discovery.  And if you're going to
16        serve additional requests, you can,
17        you know, consider how to do that,
18        but we're not going to be responding
19        to these on an ad hoc basis.  We've
20        already provided the responses.
21             MR. FIORENTINO:  Lisa, I
22        understand, but it's just important
23        that I get on the record that we've
24        now made this request.  Obviously,
```



Page 182

1  transaction is added to the system.  The
2  transaction separately has an effective
3  date which may be in the past.  So if you
4  are saying what date was the request for
5  the discretionary forbearance given to
6  Navient and Navient grant the forbearance,
7  that would be the posting date.  We could
8  have made that effective earlier in order
9  to clear any delinquency.
10           But it is a very real and very
11  necessary distinction when we talk about
12  transactions, that we are very clear about
13  whether we are talking about posting dates
14  or effective dates.
15       Q.    Okay.
16             So let me see if I can rephrase
17  this, and just listen closely because it's
18  not on paper yet.  But what if we went
19  like this.  After the expiration of the
20  borrower's PFH status, NSL enrolled the
21  borrower in a discretionary forbearance
22  which had a posting date which was within
23  60 days of -- or after the expiration of
24  PFH status.



Page 183

```
 1              Would that remove the
 2   ambiguity?
 3       A.   I believe that would provide us
 4   the, you know, definitions and clarity
 5   that we're looking for.  But, again, I'd
 6   like to do this with my other experts
 7   involved so that we can jointly make sure
 8   we have not missed anything.  But as of
 9   right now based on what you had described,
10   I believe that would provide us what we
11   need.
12       Q.   That's fair.  Okay.
13            MR. FIORENTINO:  Let's just --
14       Ingrid, if you could cut the words
15       "Within 60 days," and then put comma
16       at the end of the sentence, and then
17       add "and the posting date of the
18       forbearance was within 60 days after
19       the date that PFH status expired."
20       Yeah.  And I would just put, the
21       posting date of the forbearance was
22       within.  Okay.
23   BY MR. FIORENTINO:
24       Q.   So at least for present
```



Page 184

```
 1   purposes, Mr. Theurer, this looks like it
 2   would enhance the feasibility of the
 3   search?
 4        A.    Appears reasonable.
 5        Q.    Okay.  All right.
 6              MR. FIORENTINO:  Let's go back
 7        to Exhibit-A.  Can we scroll down to
 8        search 3?
 9   BY MR. FIORENTINO:
10        Q.    All right.
11              So search 3 states as follows:
12   "Navient received notice that the borrower
13   was applying for initial enrollment in an
14   IDR plan, or was changing repayment
15   plans," closed quote.
16              Do you see where it says that?
17        A.    Yes.
18        Q.    Okay.
19              Let's look at NSL's response.
20   It says, "In NSL's system, the type of
21   notice referenced is not tracked in a
22   searchable form.  A customer service agent
23   might document such notice in the
24   free-text notes associated with an
```



Page 196

1               MS. SIMONETTI:  Yeah.
2               MR. FIORENTINO:  That's fair.
3          That's fair.
4    BY MR. FIORENTINO:
5          Q.    Let me give you an example and
6    just tell me if you think this would
7    enhance the feasibility.
8               During the 60-day
9    administrative forbearance period, the
10   borrower's status changed from admin
11   forbearance to discretionary forbearance
12   based upon a forbearance request supported
13   by oral affirmation.
14              Now, would that clarify the
15   part C?
16         A.    Again, I would want to talk to
17   my team.  But, yes, I believe the way you
18   phrased it there would be searchable.
19         Q.    Okay.
20              And let's just --
21              MR. FIORENTINO:  So, Ingrid, if
22         you could just delete all of C.  I
23         just want to -- just to be fair to
24         give Mr. Theurer a chance to see it



Page 197

1        instead of just hearing it.  I think
2        the shared screen disappeared,
3        though.  Okay.  Good.
4              MS. HOFELDT:  You said delete
5        all of C?
6              MR. FIORENTINO:  Yeah.  Just
7        delete it all.  It will just be
8        easier to start fresh.  So I would
9        say part C -- let's try it like this.
10       During the 60-day administrative
11       forbearance period, comma, the
12       borrower's account status shifted --
13       or instead of shifted say changed,
14       because that's, I think, what I told
15       Mr. Theurer a moment ago.  Changed
16       from administrative forbearance
17       status to discretionary forbearance
18       status, comma, and the discretionary
19       forbearance was supported by oral
20       affirmation.
21  BY MR. FIORENTINO:
22       Q.    Okay.
23             So looking at this new version
24  of part C, Mr. Theurer, do you see any



Page 198

1  technical obstacles that would be raised
2  by this language?
3       A.    Again, it appears to be
4  adequate.  I, similar to the other
5  requests, would want to review with my
6  team to make sure I'm not missing
7  something.
8       Q.    Okay.
9             But the language as it is, you
10 don't see any obstacles presently,
11 correct?
12      A.    I do not see anything
13 currently, no.
14      Q.    Okay.
15            Let's go to -- back to
16 Exhibit-A.  And can we scroll to search 5.
17 I'll just read it into the record.
18            Search 5, "The borrower was
19 enrolled in an IDR plan.  Navient timely
20 received one pay stub and the borrower's
21 application to renew the plan.  Navient
22 did not process the application.  Navient
23 sent the borrower a written communication
24 stating that the application could not be



Page 205

1   window."  C, "Navient determined that the
2   application was incomplete and could not
3   be processed."  D, "Within 60 days of this
4   determination, Navient sent the borrower a
5   communication that contained the words
6   'two consecutive pay stubs.'"
7            Basically, I was curious as to
8   whether if you're searching specific words
9   in a document, if that's searchable
10  systemwide.
11           Would that be?
12      A.   In this case it is not.  And I
13  will further say that in good faith in
14  evaluating your requests, even though we
15  were very certain we would not be able to
16  find those reasons, we went back and
17  reexamined the data that relates to the
18  letter sent, and the reasoning, two
19  consecutive pay stubs or failed to sign
20  the application, none of that information
21  was available for us to search.
22      Q.   Okay.
23           So it sounds like in order to
24  ascertain this group of people whose IDR



Page 206

```
 1   renewal applications were rejected because
 2   they didn't submit two consecutive pay
 3   stubs, it sounds like you're saying
 4   there's really no way to search that on a
 5   systemwide basis.  This search can't be
 6   tweaked.
 7             It's just not something that
 8   can be searched; is that correct?
 9        A.   That is correct.
10        Q.   All right.
11             Let's go to Exhibit-I.
12                      - - -
13             (At this time, a document was
14        marked for identification as
15        Exhibit-I.)
16                      - - -
17   BY MR. FIORENTINO:
18        Q.   So we're making good time,
19   Mr. Theurer.  We're done with all the
20   searches that were deemed not feasible.
21   So now we're just going to talk search 4
22   and then hopefully move through quickly to
23   the end.
24             This is Exhibit-I.  It's titled
```



Page 225

```
 1   run counter to the agreement or something
 2   like that?  Would it have been physically
 3   impossible to execute these searches with
 4   the equipment you had at the time that you
 5   responded to our requests?
 6         A.    At the time we responded to
 7   your requests, the active ED data had been
 8   purged from our systems pursuant to our
 9   agreement with Maximus and the Department
10   of Education.
11         Q.    Okay.
12               So it would have been
13   physically impossible to do with -- at
14   least with what you had on your system.
15               Is that right?
16         A.    On the active system, yes.
17         Q.    Okay.
18               When you say "On the active
19   system," that's in contrast to what?
20         A.    In the awareness of certain
21   active litigation as well as the
22   anticipation of potential future
23   litigation, we did create a break-glass
24   scenario where we established a copy of
```

