# Exhibit 29-A

12/22/2023 Email

10/5/25, 11:46 AM
Ballard v. Navient - modified search queries - anthony@fiorentinolaw.com - Outlook
Case 3:18-cv-00121-JFS-PJC    Document 208-30    Filed 12/02/25    Page 2 of 4

Delete | Archive | Report | Move to | Reply | Reply all | Forward

**Ballard v. Navient - modified search queries**  Summarize

**Anthony Fiorentino**
AF
To: simonettil@gtlaw.com
Fri 12/22/2023 9:10 AM
Cc: Dan Edelman <dedelman@edcombs.com>; Cassandra Miller <cmiller@ec

You forwarded this message on Wed 3/20/2024 1:13 PM   View conversation

📄 modified search queries.pdf
60 KB

Dear Lisa,

This letter is written pursuant to FRCP 37.

As you know, Defendants remain under a court order to perform the search queries propounded by Plaintiffs, to the extent those searches are feasible. On Tuesday, Patrick Theuer testified that Search Queries 1-3 are now feasible, based on the modifications that were presented and discussed during his deposition. I have attached modified versions of Search Queries 1-3, which are based on Mr. Theurer's testimony. Please have Defendants execute the search queries as soon as possible. Also, please advise how much time your clients will need to produce the search results.

Please note, we are requesting that Search Queries 1-3 be performed with respect to both FFELP loans and Federal Direct loans. Mr. Theurer testified that NSL still maintains possession of the account data pertaining to the Department of Education's federal direct loan portfolio. According to Theurer, these electronic files are currently being held in "cold storage," which Mr. Theurer also referred to as "data in a box." Mr. Theuer testified that one of the purposes of preserving this data was for use in litigation. Accordingly, we expect that the data will be searched using the attached modified versions of Search Queries 1-3.

Also, because Search Query 4 has only been performed with respect to the FFELP loan portfolio, Plaintiffs request that Search Query 4 be executed with respect to the federal direct loan portfolio. Please advise how much time is needed to get this done.

Finally, Plaintiffs intend to have continued conversations with officials from the Department of Education to discuss discovery-related issues. Please confirm that you agree that those discussions may occur freely without any limitation imposed by the protective order. (As ED obviously already has access to all of the information that was sought to be protected by the order, we do not see what purpose would be served by applying the order to those discussions.)

Anthony Fiorentino
anthony@fiorentinolaw.com
Phone: 312.305.2850

# Exhibit 29-B

Modified Searches 1-3

### Modified Search 1

A. On or after January 16, 2012, the borrower was enrolled in an IDR plan.

B. The borrower submitted an IDR renewal application, which was received by NSL within 90 days or less prior to the renewal deadline.

C. The borrower's partial financial hardship status expired, at which time the borrower's payments were recalculated under the standard repayment plan.

D. At the time the application received its first review, it was deemed complete.

### Modified Search 2

A. On or after January 16, 2012, the borrower was enrolled in an IDR plan.

B. The IDR plan was not renewed before the annual renewal deadline, at which point the borrower's Partial Financial Hardship (PFH) status expired, and payments were recalculated under the standard repayment plan.

C. After the expiration of the borrower's PFH status, NSL enrolled the borrower in a discretionary forbearance, based on the borrower's oral affirmation, and the posting date of the forbearance was within the 90-day period which began 30 days before the PFH status expired. (For example, if the PFH status expired on May 1, 2015, then the 90-day period would begin on April 1, 2015 and would end on June 30, 2015.)

D. At the time of the enrollment in the discretionary forbearance, the loan was not in default, with "default" being defined as a period of 270 days without any payments.

### Modified Search 3

A. On or after January 16, 2012, the borrower submitted an application to enroll in an IDR plan.

B. NSL enrolled the borrower in a 60-day, "non-capping" administrative forbearance, which was in effect while that application was under review.

C. During the 60-day administrative forbearance period, the borrower's account status changed from administrative forbearance status to discretionary forbearance status, and the discretionary forbearance was supported by oral affirmation.