UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI, on behalf of themselves and the class members described herein, | : : : : : : : | No. 3:18-CV-121 (Saporito, J.) (Caraballo, M.J.) |
| Plaintiffs | : : | |
| v. | : : | |
| NAVIENT CORPORATION; NAVIENT SOLUTIONS, INC.; and NAVIENT SOLUTIONS, LLC, | : : : : : : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    Introduction

Plaintiffs Jill Ballard, Rebecca Varno, and Mark Pokorni (collectively "the Plaintiffs") commenced this putative class action against several federal student loan servicing entities on January 16, 2018.  Doc. 1.  On December 19, 2024, the Court granted leave to file the live third amended complaint, Doc. 118-3, and all defendants have answered.  Docs. 136; 183–84.  The parties are in the midst of briefing the Plaintiffs' motion for class certification.  Docs. 196; 208.

On June 20, 2025, Defendants Navient Corporation and Navient Solutions, LLC, f/k/a Navient Solutions, Inc. (collectively "Navient"), filed a motion for partial judgment on the pleadings ("the Motion"). Doc. 158.  In the Motion, Navient asserts that the Court should grant judgment in its favor on Counts I, II, IV, V, and VI of the third amended complaint, and dismiss or strike related class allegations.  The Motion is fully briefed, and this case was referred to the undersigned to issue the instant Report and Recommendation ("R&R").  For the reasons set forth below, the undersigned recommends that the Court deny the Motion.

## II.    <u>Background</u>

After eight years of litigation, the parties and the Court are familiar with this action's factual and procedural histories, much of which are detailed in prior R&Rs issued by the Honorable Martin C. Carlson.  Docs. 56 at 2–8; 88 at 3–10.  The undersigned therefore only recites the background germane to this R&R.

In this putative class action, the Plaintiffs are student loan borrowers who partook in income-driven repayment ("IDR") programs, and now seek recovery for Navient's allegedly wrongful business

practices in servicing their federal student loans.  *See generally*
Doc. 118-3.  The Plaintiffs filed their first amended complaint on May
25, 2018.  Doc. 29.  The pleading instrument presented seven causes of
action on behalf of the Plaintiffs and the putative classes that they seek
to represent.  *Id.*  The claims included: two counts for breach of
contract, one based on the alleged breach of Navient's loan servicing
contract with the Department of Education, and another for supposed
violations of the Plaintiffs' promissory notes with the Department of
Education (with an alternative cause of action for tortious interference
with those notes); and five counts alleging violations of California,
Pennsylvania, Illinois, and New York consumer protection statutes.  *Id.*
at 40–57.

On July 12, 2018, Navient moved to dismiss the amended
instrument and to strike class allegations.  Doc. 39.  Navient first
asserted that the Court should strike the class allegations, on the basis
that Plaintiffs could not establish commonality, predominance, and
superiority under Federal Rule of Civil Procedure 23, because "[t]he
need to evaluate each of [the borrower's] claims individually creates an
insurmountable hurdle to class certification."  Doc. 40 at 22.  Navient

also averred that Plaintiffs could not certify a class under Rule 23(b)(2), because they sought money damages, not just the injunctive relief permitted under the rule. *Id.* at 22–23. And Navient further contended that the first amended complaint failed to advance any cognizable claims for relief under Federal Rules of Civil Procedure 12(b)(6) and 9(b) for a myriad of reasons. *Id.* at 23–34.

Following briefing and oral argument, Judge Carlson issued an R&R on March 31, 2021. Doc. 56. Judge Carlson first concluded that Navient's motion to strike class allegations, prior to conducting class discovery, should be denied as premature, as "[t]he very nature of th[e] fact-bound inquiry" for class certification under Rule 23(a) did not warrant resolution of the class allegations on the pleadings alone. *Id.* at 9–14. As noted by Judge Carlson in reviewing those pleadings, "if the evidence supports what the plaintiffs have alleged, then class certification may well be appropriate here." *Id.* at 14. Thus, he reasoned, "this is not one of those rare cases where class certification could be denied through the expedient of striking class action averments at the outset of the litigation as legally insufficient." *Id.* at 13.

Judge Carlson also recommended that Navient's dismissal motion be granted for the tortious interference with contract alternative cause of action, but denied for the breach of contract claims. *Id.* at 19–25. Specific to the breach of contract claims, Judge Carlson rejected Navient's contention that the plaintiff student loan borrowers were not third-party beneficiaries of the loan servicing agreement between Navient and the Department of Education. *Id.* at 19–23. Judge Carlson also reasoned that the Plaintiffs advanced plausible breach of contract claims against Navient premised on the promissory notes between the plaintiff student loan borrowers and the Department of Education, because the Department of Education allegedly assigned certain loan servicing obligations under the promissory notes to Navient. *Id.* at 24. Navient's final ground for dismissal of the breach of contract claims, premised on the Plaintiffs' failure to name the Department of Education as a defendant in this action, proved unsuccessful, as Judge Carlson declined to deem the Department of Education a necessary and indispensable party proscribed by Rule 19. *Id.* at 25–30.

Finally, Judge Carlson concluded that the five counts premised on state consumer protection statutes survived the dismissal motion. *Id.* at 30–31. Deeming dismissal on the pleadings alone to be premature, Judge Carlson declined to rule that student loan servicing disputes were not cognizable under the California, Pennsylvania, Illinois, and New York consumer protection statutes, and reviewed several authorities endorsing such claims. *Id.* On April 28, 2021, after receiving no objections from the parties, the Court adopted Judge Carlson's R&R in its entirety. Doc. 57. The parties resumed litigation.

On September 21, 2022, the Plaintiffs filed a contested motion to compel class discovery and, if necessary, to file a second amended complaint bearing modified class definitions with the same seven causes of action asserted in the first amended complaint. Doc. 80. On June 29, 2023, the Court adopted an R&R issued by Judge Carlson (Doc. 88) in its entirety, granted the motion to compel, and entered the second amended complaint (Doc. 80-1) as the operative pleading. Doc. 89.

On March 28, 2024, after several months of class discovery, the Plaintiffs moved for leave to file a third amended complaint. Doc. 118. The third amended complaint modified the class allegations, but

otherwise advanced the same seven claims and substantive averments as its predecessor.[1]  *See* Doc. 118-2.  Of the four putative classes advanced in the third amended complaint, two are relevant for purposes of the instant R&R:

> (1)     The Forbearance Without Written Consent Class:  Each member alleges that Navient failed to renew his or her IDR plan and enrolled the borrower in a discretionary forbearance, thus resulting in an increased principal balance and delayed eligibility for loan forgiveness.  Doc. 118-3 at 39–40.  The applicable subclasses include the New York and Illinois subclasses.  *Id.* at 40.

> (2)     The Improper Delay Class:  Each member alleges that he or she submitted a completed application to enroll in an IDR plan, and that Navient failed to process the application "until 45 days or more after it was received," instead of 10 to 15 days, as allegedly required.  *Id.* at 40.  The applicable subclass is the Illinois subclass.  *Id.*

Following contested briefing, the Court entered the live third amended complaint on December 19, 2024.  Doc. 136.  Navient answered the third amended complaint, Docs. 140–42, and following litigation seeking to strike those pleadings, filed amended answers.  Docs. 183–84.

---

[1] The undersigned notes that, even though the Court granted Navient's motion to dismiss the Plaintiffs' tortious interference with contract claim, Docs. 56 at 19–25; 57 at 6–7, 9, the third amended complaint still contains the claim's associated language.  Doc. 118-3 at 46–48.  In any event, the issue has no bearing on this R&R.

With the Plaintiffs' pleading instrument having survived numerous challenges and undergone several iterations, we now arrive at Navient's motion for partial judgment on the pleadings. On June 20, 2025, after answering the third amended complaint and while in the midst of class discovery, Navient filed the instant Motion. Doc. 158. There, Navient requests that the Court grant judgment on Counts I (breach of servicing contracts), II (breach of promissory notes), IV (Pennsylvania Unfair Trade Practices and Consumer Protection Law), V (New York General Business Law), and VI (Illinois Consumer Fraud and Deceptive Business Practices Act), and dismiss or strike various class allegations. *See generally* Doc. 163. The Plaintiffs filed an opposition on August 18, 2025, Doc. 169, and Navient replied on September 16, 2025, Doc. 178, leaving the Motion ripe for review.

## III. Discussion

### A. Rule 12 Legal Standards

The Defendants seek partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). A party may seek judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). "A motion for judgment on the

pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quotation omitted) (quoting *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)).

Judgement under Rule 12(c) is granted only if "the movant clearly establishes that no material issue of fact remains to be resolved *and* that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (emphasis added) (quoting *Jablonski v. Ran Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)).

Regarding Rule 12(b)(6), a court may dismiss a complaint for its "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states

a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.").

Plausibility in this context means neither possibility nor probability. *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 177 (3d Cir. 2019).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Connelly*, 809 F.3d at 786 (quotation omitted) (first citing *Iqbal*, 556 U.S. at 678; and then citing *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).

The Court of Appeals employs a three-step inquiry when determining a complaint's sufficiency under Rule 12(b)(6).  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010); *see, e.g.*, *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022); *Connelly*, 809 F.3d at 787.  First, the reviewing court "tak[es] note of the elements [the] plaintiff must plead to state a claim." *Connelly*, 809 F.3d at 787 (second alteration in original) (quotation omitted) (quoting *Iqbal*, 556 U.S. at 675).  The second phase is to "identify allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.'" *Id.* (first quoting *Iqbal*, 556 U.S. at 679; and then citing *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011)).

Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations in original) (quotation omitted) (quoting *Iqbal*, 556 U.S. at 679). This last step is done "in the light most favorable to [the plaintiff]." *Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017) (alteration in original) (quotation omitted) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228, 230 (3d Cir. 2008)). "If, after completing this process, the complaint alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements of a claim, then it plausibly pleads a claim." *Lutz*, 49 F.4th at 328 (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2009)).

If "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation omitted) (quoting *Bell Atl.*, 550 U.S. at 556). That is, "[c]onclusory allegations of liability are insufficient." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (citing *Iqbal*, 556 U.S. at 678). "Evaluating a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Bookwalter*, 946 F.3d at 177 (quoting *Iqbal*, 556 U.S. at 679).

## B.    Pokorni and the Improper Delay Class Standing

Though the standing issue is the last to be raised in the Motion, Doc. 163 at 17–20, the undersigned addresses it first in consideration of the judicial obligation to confirm federal jurisdiction at all times. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003). Here, Navient requests that the Court dismiss plaintiff Pokorni and the Improper Delay Class on the premise that their claimed injuries are too speculative to establish Article III standing. Doc. 163 at 13–16.

As set forth in the third amended complaint, Pokorni and his associated putative class aver that Navient's delay in processing their applications for an IDR plan resulted in two related injuries. Doc. 118-3 at 36–40, 56–58. Namely, and according to Pokorni, that delay thwarted his ability to make an early qualifying payment towards loan forgiveness, and the capitalized interest that accrued during the period of delay enlarged the principal balance of the loan. *Id.* Navient deems

the claimed injury from allegedly delayed loan forgiveness speculative, as Pokorni alleges neither "that he has made all such required payments to reach loan forgiveness," nor "that any delay has caused a present financial or legal harm."  Doc. 163 at 19.

Pokorni and the putative Improper Delay Class do, however, allege a tangible financial injury arising from the capitalized interest accrued during the period of delay.  Moreover, and in viewing the allegations of the complaint in the light most favorable to the Plaintiffs, Navient has not met its burden to establish the absence of unresolved material facts germane to the Court's determination of whether the alleged injury arising from Navient's supposed delays in processing IDR applications is merely speculative.  Navient's standing challenge should thus be denied at this juncture of the litigation.

Article III of the Constitution confines federal jurisdiction to certain "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1. Therefore, "[f]ederal courts are courts of limited jurisdiction," wielding "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  In other words, "subject matter jurisdiction is non-waivable."

*Nesbit*, 347 F.3d at 77 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977)). A party therefore may move to dismiss for lack of subject matter jurisdiction at any time. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3).

If, as here, a party challenges the Court's "subject matter jurisdiction on a Rule 12(c) motion, the court will treat a 'motion for judgment on the pleadings based upon a lack of subject matter jurisdiction . . . as a Rule 12(b)(1) motion to dismiss the complaint.'" *Martin v. Piserchia*, 2024 WL 3812071, at *3 (D.N.J. 2024) (quoting *Ricciardi Fam. LCC v. U.S. Postal Serv.*, 2011 WL 3022521, at *2 (D.N.J 2011)). And when addressing subject matter jurisdiction under Rule 12(b)(1), the Court "must take care not to reach the merits of a case . . . .'" *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016) (quoting *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008)).

Jurisdictional issues routinely are raised in the early stages of litigation, as viable challenges may avert the unnecessary expenditure of time and resources on litigation and discovery by the parties and the Court. "Tardy jurisdictional objections can therefore result in a waste

of adjudicatory resources and can disturbingly disarm litigants."
*Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013).

Here, Navient advances a standing attack against allegations in the third amended complaint that are identical to those averred in the first amended complaint. *Compare* Doc. 118-3 at ¶¶ 86–94, 165–68, *with* Doc. 29 at ¶¶ 78–86, 157–68. Despite having ample opportunity to challenge standing, including in their motion to dismiss the first amended complaint,[2] or when contesting the entry of plaintiffs' second and third amended complaints, Navient offers no rationale for waiting five years to advance this jurisdictional dispute.

To be sure, subject matter jurisdiction challenges may be raised at any time, including in a Rule 12(c) motion following the defendant's responsive pleading. *See, e.g., Martin*, 2024 WL 3812071, at *3; *M.N. v. Sparta Twp. Bd. of Educ.*, 2022 WL 16743968, at *2–3 (D.N.J. 2022). But the procedural timing is important, as it factors into the Court's determination of the appropriate standard of review.

---

[2] Though the Plaintiffs claim that Navient "raised similar arguments in support of their Rule (12)(b)(6) motion," Doc. 169 at 27 (citing Doc. 40 at 34), the standing challenge advanced now was not before the Court. Rather, Navient contested whether it's allegedly deceptive statements to Pokorni were related to the claimed application processing delays, and thus gave rise to injury. Doc. 40 at 34.

There are two types of jurisdictional challenges: facial and factual. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014) (first citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); and then citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The Court must first determine whether a Rule 12(b)(1) motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Id.*

A facial attack "contests the sufficiency of the pleadings." *Id.* at 358 (quotation omitted) (quoting *Schering*, 678 F.3d at 243). More specifically, "[a] facial attack, as the adjective indicates, . . . considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court . . . because some . . . jurisdictional defect is present." *Id.* Thus, a facial attack properly "occur[s] before the moving party has filed an answer or otherwise contested the factual allegations of the complaint." *Id.* (citing *Mortensen*, 549 F.2d at 889–92).

"In reviewing a facial attack, 'the court must only consider the allegations of the complaint and documents referenced therein and

16

attached thereto, in the light most favorable to the plaintiff.' . . . Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id.* (quoting *Schering*, 678 F.3d at 243, and then quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

In contrast, a factual challenge stresses "the actual failure" to comply "with the jurisdictional prerequisites." *Id.* (quotation omitted) (quoting *CNA*, 535 F.3d at 139). More specifically, such an attack asserts "that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* A factual attack therefore necessarily involves the Court's consideration of "evidence outside the pleadings." *Id.* (quotation omitted) (first quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); and then citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997)). And unlike the generous standard of review afforded a facial attack, in which "presumptive truthfulness attaches to [a] plaintiff's allegations," if a factual challenge is presented, "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen*, 549 F.2d at 891.

Here, Navient advances a facial attack, despite challenging standing in a Rule 12(c) motion after filing their answers. Navient's contentions that Pokorni and the Improper Delay Class lack standing are all premised solely on the sufficiency of the allegations in the third amended complaint, not on any extraneous evidence offered into the record. *See* Doc. 163 at 18–19. Navient's averments thus "are properly understood as facial attacks because they contend that the [Third] Amended Complaint[] lack[s] sufficient factual allegations to establish standing." *Schering*, 678 F.3d at 243; *see also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) ("Because Horizon did not challenge the validity of any of the Plaintiffs' factual claims as part of its motion, it brought only a facial challenge."). Accordingly, the Plaintiffs do not bear the burden of establishing standing for purposes of the Motion, which the Court adjudicates by viewing the challenged allegations in the third amended complaint with a presumption of truthfulness. *See Mortensen*, 549 F.2d at 891.

That analysis, in turn, is informed by the principles of Article III standing, which evaluates: (1) an injury in fact (*i.e.*, a "concrete and particularized" invasion of a "legally protected interest"); (2) causation

18

(*i.e.*, a "fairly . . . traceable" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is "likely" and not "merely speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Regarding the first requirement, a qualifying injury is "concrete and particularized," as well as "actual or imminent." *Gilles v. Davis*, 427 F.3d 197, 208 (2005) (quotations omitted) (quoting *Lujan*, 504 U.S. at 560–61). Imminence, the disputed issue here, means neither "conjectural" nor "hypothetical." *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (citations and quotations omitted). Instead, an imminent injury means that the threatened harm is "certainly impending," *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citations and quotations omitted), and has "a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2 (citations omitted). Put simply, the "threatened injury must be *certainly impending*"; "'*possible* future injur[ies]' are not

sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted) (emphases in original).

Further, in a class action, the "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). A corollary is that putative class actions must be dismissed if standing is absent. *See, e.g., Reilly v. Ceridian Corp.*, 664 F.3d 38, 42–46 (3d Cir. 2011).

With that framework in mind, the allegations in the third amended complaint, taken as true, readily aver injuries in fact sufficient to establish Article III standing on the pleadings. One of the two categories of claimed injuries resulting from Navient's alleged delay in processing IDR applications lies in the addition of capitalized interest accrued during the period of delay to the principal balance of the loans; a practice that allegedly put borrowers "deeper and deeper into debt." Doc. 118-3 at ¶ 6. Specific to Pokorni, the Plaintiffs aver that, "[b]ecause all interest that accrues during periods of forbearance is

capitalized, a larger sum was added to Mr. Pokorni's principal loan balance than would have been added if the IDR application had been processed within the period established by the Department of Education's guidelines." *Id.* at ¶ 92. That theory of loss is echoed in the corresponding class allegations. *Id.* at ¶¶ 95, 164.

Although the potential magnitude of those claimed losses are not evident, the allegations, taken as true, readily particularize a tangible financial loss for purposes of the Court's standing analysis. Further, as the Plaintiffs correctly note, Navient's standing challenge does not address "the issue of increased interest," and is premised solely on their allegedly delayed loan forgiveness. Doc. 169 at 27. Navient, in turn, acknowledges that it "is not challenging standing as it relates to additional accrued interest for purposes of this Motion." Doc. 178 at 10 n.5.

The Court is thus left with a puzzling scenario, where Navient requests dismissal of Pokorni, his associated putative class, and their related claims on standing grounds, despite effectively conceding that their interest-based claim of injury in fact sufficiently pleads Article III standing. Navient offers no explanation for how, as a procedural and

practical matter, the Court can grant judgment under Rule 12(c)(1) against those parties and claims, simply because one of their two claimed injuries is allegedly speculative. A plaintiff either has standing, or it does not.

Navient offers no authority for the notion that, once standing for a party to advance a claim is confirmed, the Court should analyze each individual allegation in support of the claim to determine whether it presents speculation. That approach bears the hallmarks of a motion to strike class allegations, advanced under the guise of a Rule 12(c) motion. As the Court previously noted, "striking these class allegations without the benefit of class discovery would be premature and improper." Doc. 56 at 14.

Moreover, the Court cannot determine, at the pleading stage, whether Pokorni's allegedly delayed eligibility for loan forgiveness presents only speculative injury insufficient for Article III standing. Navient, relying on *In re Fedloan Student Loan Serv. Litig.*, 2025 WL 539681 (E.D. Pa. 2025), may well ultimately advance a meritorious argument that "any alleged harm concerning a delay in reaching loan forgiveness was speculative and contingent on future events that may

never occur." Doc. 163 at 19 (citation omitted); *Fedloan*, 2025 WL 539681, at *8–10. That determination, however, cannot be made here absent further factual development.

The Plaintiffs aver that, "[b]y enrolling Mr. Pokorni in the Income-Based Repayment plan a month and a half after receiving his IDR plan application, Navient . . . prevented him from making a qualifying payment toward loan forgiveness in the month of March of 2016, which thereby extended the duration of his loans. In other words, because Navient delayed the processing of Mr. Pokorni's IDR plan application, the date on which Mr. Pokorni will become eligible for loan forgiveness has been delayed by a month." Doc. 118-3 at ¶ 91. He likewise claims that he "suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' deceptive and unfair practices, including, but not limited to . . . financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same." *Id.* at 164.

Taking those allegations as true and viewing them in the light most favorable to the Plaintiffs, *see Connelly*, 809 F.3d at 786; *Kedra*, 876 F.3d at 434, the delays in processing IDR applications and

obtaining loan forgiveness may have already happened or even be ongoing, thus presenting a realistic financial injury, instead of just a speculative possibility. Absent further factual development, the Court cannot fully evaluate Navient's challenge. Indeed, a review of the Plaintiffs' contrary authority simply confirms the fact-based nature of this particular standing challenge. *See Nigro v. Pa. Higher Educ. Assistance Agency*, 2020 WL 5369980, at *6–7 (M.D. Pa. 2020) (denying motion to dismiss on premise that "resolution of . . . standing argument requires the court to resolve [factual] question" concerning temporal eligibility for student loan forgiveness, without prejudice to defendant "re-raising the argument at a later stage of litigation.").

Under Rule 12(c), Navient must clearly establish "that no material issue of fact remains to be resolved," *Rosenau*, 539 F.3d at 221; a burden it has not met. Therefore, as the third amended complaint, construed in the light most favorable to the Plaintiffs, sufficiently pleads standing for Pokorni and the Improper Delay Class, the undersigned recommends that the Motion be denied on this issue.

### C.    Discretionary Forbearance Allegations for Counts IV and V

The undersigned recommends that the Court deny judgment on the pleadings for Counts IV (Pennsylvania Unfair Trade Practices and Consumer Protection Law) and V (New York General Business Law) of the third amended complaint. As set forth below, Navient presents no valid reason to disturb the Court's prior ruling, on Navient's motion to dismiss, that both counts plead plausible claims for relief.

Navient introduces a dispute over regulatory construction in challenging Counts IV and V in the third amended complaint. Doc. 163 at 13–15. Specifically, Navient challenges Paragraph 50 of the third amended complaint, which states:

> 50. The only time a discretionary forbearance may be applied without the borrower's written consent is after the borrower's loans have gone into default status, but before the loans have been transferred to collections. *See* 34 CFR § 682.211 (d)(1). In this situation, a limited, 120-day forbearance may be based on the borrower's "oral affirmation." *Id.* at (d)(2)(i).

Doc. 118-3 at ¶ 50. That challenge extends to the related averments concerning Varno, and in Counts IV and V of the third amended complaint, including:

> 77. In May of 2017, Ms. Varno called the Navient customer service line to inquire as to the status of her IBR plan. A

Navient representative, speaking to Ms. Varno from Defendants' call center in Wilkes-Barre, Pennsylvania, informed Ms. Varno that her renewal application had been approved, but it would not be "applied to her account" for several more months. Until such time, Ms. Varno's monthly payment amount would be increased to approximately $1,800 under the standard repayment plan. Because she could not afford payments in that amount, Navient Corp., through its duly appointed agent, NSL, placed Ms. Varno's loans into forbearance status until her IBR plan was renewed, even though she never submitted a written request for the forbearance. This action was taken by Navient Corp., through its agent, NSL, at their offices in Wilkes-Barre, Pennsylvania. All interest that accrued during this forbearance period was capitalized, or added to Ms. Varno's principal loan balance.

. . . .

147. Defendants violated 73 Pa. Stats. § 201-1 et seq. by falsely representing that the following actions had the approval or sponsorship of the federal government: . . . improperly placing Rebecca Varno's loans into forbearance status during Defendants' processing delays.

. . . .

157. In the course of Defendants' business, they engaged in the following deceptive acts and practices: . . . c. applying a forbearance to Plaintiff's account during the processing of her IDR application, in violation of federal law, while representing to Plaintiff that said action had the approval of the federal government.

*Id.* at ¶¶ 77, 147(e), 157(c).

Navient deems these allegations faulty because Title 34, Code of

Federal Regulations, Section 682.211(d)(1) merely proscribes "one

permissible use of forbearance." Doc. 163 at 13. According to Navient, discretionary forbearance, including on oral instead of written affirmation, may also be granted pre-default. *Id.* at 14–15. Indeed, the relevant regulation provides that:

> A guaranty agency *may* authorize a lender to grant forbearance to permit a borrower or endorser to resume honoring the agreement to repay the debt after default but prior to claim payment. The forbearance agreement in this situation must include a new agreement to repay the debt signed by the borrower or endorser or a written or oral affirmation of the borrower's or endorser's obligation to repay the debt.

34 C.F.R. § 682.211(d)(1) (emphasis added).

Further, Navient observes that other sources permit discretionary forbearance on oral affirmation in other instances. Specifically, Sections 682.211(b)(1) and 211(c) of the same regulation "also include language that references the ability of a lender to grant the borrower a verbal forbearance outside of being in default." Doc. 163 at 13–14; *see also* 34 C.F.R. § 682.211(b)(1), (c). As such regulatory provisions contradict the Plaintiffs' allegations, Navient reasons, the Court should dismiss Counts IV and V, and the Forbearance Without Written Consent Class. Doc. 163 at 15.

The Plaintiffs, in turn, concede that Section 682.211(d)(1) is "ambiguous," but support their interpretation by relying on other subsections, related regulations, and commentary from the rulemaking process. *See* Doc. 169 at 10–13 (discussing 34 C.F.R. § 685.205 and 78 Fed. Reg. 65775). More importantly, the Plaintiffs note that their allegations in support of Varno and Counts IV and V concerning when forbearance premised on oral affirmation is permissible are but one part of their broader claims that Navient's practices are "unlawful for multiple reasons." *Id.* at 22–23 (emphasis omitted). The reasons include:

> 1. A discretionary forbearance is permitted only when the borrower is unable to make scheduled payments due to a temporary hardship, but Varno's IDR application established her intent to remain on a 12-month payment schedule. (Compl. ¶ 81).

> 2. An administrative forbearance is the only type of forbearance specifically designated for periods when an IDR application is processed, but Navient used costly discretionary forbearances for this purpose. (Compl. ¶¶ 80, 82).

> 3. A discretionary forbearance may only be granted for the "benefit of a borrower," but Navient enrolled borrowers in discretionary forbearances to increase profits for its debt collection subsidiaries. (Compl. ¶ 7).

> 4.   Except after default, a discretionary forbearance should be supported by documentation from the borrower, but Varno's forbearances were based on oral affirmation. (Compl. ¶ 49).

*Id.* As noted by the Plaintiffs, Navient challenges only that fourth premise, Doc. 169 at 23; an approach that does not warrant dismissal of claims premised on additional allegations.

Moreover, the challenged allegations in the third amended complaint concerning Varno, including the averments concerning the placement of loans into forbearance during processing delays without written affirmation approval, *see* Doc. 118-3 at ¶¶ 77, 147(e), 157(c), mirrored their counterparts in the first amended complaint. *See* Doc. 29 at ¶¶ 70, 139(e), 149(c). Each of those allegations was, in turn, incorporated by reference into Counts IV and V. *Id.* at ¶¶ 135, 145. In denying Navient's motion to dismiss the first amended complaint, the Court already ruled that those counts, which necessarily included the allegations challenged here, advanced viable claims for relief. Docs. 56 at 30–31; 57 at 8–9.

In addition to the reasons set forth above, the undersigned recommends that the Motion be denied for Navient's failure to prove that it is entitled to judgment on the pleadings on both legal and factual

grounds.  Regarding the legal aspect, neither Navient nor the Plaintiffs offer definitive or precedential authority clarifying the ambiguous language and applicability of Section 682.211(d)(1).  Docs. 163 at 9–11; 169 at 16–18.  Consequently, the undersigned remains unconvinced that a Rule 12(c) judgment for Navient is warranted, as it failed to meet its burden of establish that it is "entitled to judgment as a matter of law."  *Rosenau*, 539 F.3d at 221.

Compounding that uncertainty in the pleadings, Navient seeks to introduce extraneous factual evidence that it deems relevant to interpreting the challenged regulation.  Namely, Navient offers the Common Manual on Unified Student Loan Policy ("the Common Manual") in support of its regulatory interpretation of Section 682.211. Doc. 163 at 2, 9–11.  The Plaintiffs, in turn, dispute the authoritative value of the Common Manual, claiming that it "was drafted by a consortium of debt collection entities."  Doc. 169 at 21.  The Court cannot, however, entertain this factual dispute or consider the Common Manual, as it is neither part of the pleadings nor a matter of public record.  *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019) (stating that 12(b)(6) and 12(c)(1) motions

"may be decided based only on the 'complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents *if* the complainant's claims are based upon those documents.'" (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010))); *see also* Fed. R. Evid. 803(8) (defining public records). This potential factual dispute concerning the Common Manual's applicability to this action—one that cannot be determined in the Rule 12(c) context—emphasizes that a "material issue of fact remains to be resolved." *Rosenau*, 539 F.3d at 221.

Thus, given both these regulatory and factual uncertainties, the allegations of the third amended complaint, construed in a light most favorable to Plaintiffs, cannot be dismissed at this stage of the litigation. As Navient falls short of its legal and factual burdens under Rule 12(c), the undersigned recommends that the Motion be denied for Counts IV and V.

### D. Delayed Application Processing Allegations for Counts I, II, IV, and VI

The undersigned recommends that the Court deny judgment on the pleadings for Counts I (breach of servicing contracts), II (breach of promissory notes), IV (Pennsylvania Unfair Trade Practices and

Consumer Protection Law), and V (New York General Business Law), of the third amended complaint. As set forth below, Navient raises factual disputes that cannot be adjudicated on a Rule 12(c) motion.

Navient contends that the Plaintiffs err in asserting that Navient was required to process borrowers' IDR program applications within 10 to 15 days. Doc. 163 at 16. Specifically, Navient refutes the Plaintiffs' reliance on the "Mitchell Memorandum," a July 2016 missive issued by the Department of Education, that supports the Plaintiffs' contention. *Id.*; Doc. 118-3 at ¶ 48. Navient avers that the Mitchell Memorandum is mere guidance for "inform[ing] future rulemaking" that was not codified in law or regulation, and that was rescinded in 2017. Doc. 163 at 16.

In response, the Plaintiffs note that the servicing contracts between Navient and the Department of Education (included as an exhibit to their pleading instrument) required Navient to service loans in a manner consistent with policies and guidance. Doc. 169 at 24. The Plaintiffs also highlight allegations in the third amended complaint, both generally and using Pokorni as an example, averring that loan servicers were subject to the 10- to 15-day application processing

deadline, irrespective of the Mitchell Memorandum. *Id.* at 24–25.

Indeed, Plaintiffs advance Pokorni's allegation that "as early as April

2016—four months *before* Mitchell's memorandum was issued—[the

Department of Education] directed loan services to process IDR

applications within 10-15 days." *Id.* at 25 (citing Doc. 118-3 at ¶ 48).

Navient refutes these allegations by claiming that "[a]ny limits on the

processing time for IDR applications would be found in a rule or

regulation." Doc. 178 at 7.

In sum, the parties' dueling positions are anchored in their

respective factual allegations, bereft of any cognizable issue that can be

decided purely as a matter of law. The Court thus is confronted with a

factual dispute concerning whether and when loan servicers, including

Navient, were required to process applications for income-driven

repayment programs within 10 to 15 days. Construing the allegations

of the third amended complaint in the light most favorable to the

Plaintiffs—particularly, that the processing deadline existed prior to

the Mitchell Memorandum—judgment on the pleadings is not

warranted. *See Rosenau*, 539 F.3d at 221.

Navient's reliance on *U.S. ex rel. Hlywiak v. Great Lakes Educ. Loan Servs., Inc.*, 2022 WL 787957 (D.N.J. 2022), where the court dismissed claims premised on the Mitchell Memorandum, does not change that analysis. Doc. 163 at 16–17. Navient is correct that the *Hlywiak* court observed that the Mitchell Memorandum, along with a presidential memorandum issued by former President Barack H. Obama, "merely expressed a policy preference, not a binding legal requirement." Doc. 163 at 17; 2022 WL 787957, at *8–9. But unlike here, where the Plaintiffs present factual averments above and beyond the Mitchell Memorandum, the *Hlywiak* relator premised her claims entirely on those unofficial memoranda. 2022 WL 787957, at *3–5, 7–9.

Therefore, as Navient fails to establish that it is entitled to Rule 12(c)(1) judgments as to Counts I, II, IV, V, and VI, the undersigned recommends that the Motion be denied on those five claims.

### E.    Requests to Strike Class Allegations

As the Plaintiffs note, "Defendants have not filed a motion to strike the class allegations." Doc. 169 at 20. Though technically true, many of Navient's requests that the Court "dispose of" the Improper Delay and Forbearance Without Written Consent Classes and their

related allegations, Doc. 163 at 13, 15, 17, 20, read as a motion to strike appearing in the guise of a Rule 12(c) motion.  To the extent that any of Navient's positions can be construed as a motion to strike class allegations, the undersigned recommends that they be denied.

Navient contends that, as the underlying causes of action are implausible as a matter of law, the associated class allegations are also invalid.  Doc. 163 at 13, 15, 17, 20.  In response, the Plaintiffs present a threefold argument: (1) "[t]he proper means of attacking a class definition is . . . a motion to strike"; (2) such a motion is premature under Third Circuit precedents; and (3) the class allegations "may require further modifications, which is permitted by Rule 23."  Doc. 169 at 29–30.

Class allegations include "allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  Defendants in putative class actions often rely on Rule 12(b)(6) and Rule 12(f) when seeking to strike class allegations before the class certification stage.

Regarding Rule 12(b)(6), "[i]t would be error for a court to apply the . . . plausibility standard . . . to 'dismiss' class action allegations in a

complaint." *Royal Mile Co., Inc. v. UPMC*, 40 F. Supp. 3d 552, 579 (W.D. Pa. 2014) (citing *In re Cmty. Bank of N. Va.*, 622 F. 3d 275, 303 (3d Cir. 2010)). This is so because, as the Court of Appeals explained, "the requirements set out in Rule 23 are not mere pleading rules," and a court may go beyond the pleadings when examining class certification. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008). Thus, "the court must apply Rule 23[,]" instead of Rule 12(b)(6), "to determine whether class treatment is actually appropriate in this case." *See Royal*, 40 F. Supp. 3d at 579 (emphasis omitted).

Nor is Rule 12(f) appropriate at this stage. Granted, "courts [may] strike any 'redundant, immaterial, impertinent, or scandalous matter' from a pleading." *Bernstein v. Service Corp. Int'l*, 2018 WL 6413316, at *3 (E.D. Pa. 2018) (quoting Fed. R. Civ. P. 12(f)). Further, "[c]ourts may[] . . . strike class allegations prior to a motion for class certification." *Id.* But such incidents are "rare," and present only if "'[n]o amount of additional class discovery will alter th[e] conclusion' that the class is not maintainable." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 244–45 (E.D. Pa. 2012) (first alteration added) (quoting *Thompson v. Merck & Co., Inc.*, 2004 WL

62710, at *2 (E.D. Pa. 2004)). Third Circuit courts often deny such motions without prejudice to the movant's ability to reraise the issue at the class certification stage. *See, e.g., Bombin v. Southwest Airlines*, 529 F. Supp. 411, 422–23 E.D. Pa. 2021); *see also Bernstein*, 2018 WL 6413316, at *3–4; *Andrews v. Home Depot U.S.A., Inc.*, 2005 WL 1490474, at *3 (D.N.J. 2005).

Moreover, granting a motion to strike class allegations would violate the law of the case doctrine. The law of the case doctrine "posits that[,] when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (quotation omitted) (quoting *Arizona v. California*, 460 U.S. 604, 618 (1983)). "The law of the case doctrine[] . . . acts to preclude review of only those legal issues that the court . . . actually decided, either expressly or by implication; it does not apply to dicta." *Id.* at 718 (citing *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 988 F.2d 414, 429 (3d Cir. 1993)); *see also Christianson*, 486 U.S. at 816 ("the doctrine applies . . . to a court's own decisions.").

Therefore, whether the rule applies depends on two primary considerations: "(1) whether [the Court's] prior determination . . . was dicta; and (2) whether th[e] case falls into any of the categories of extraordinary circumstances which would free [the Court] from the constraints of the law of the case doctrine." *Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998). A dictum is "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it." *In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 583 n.18 (citations and quotation omitted).  As for extraordinary circumstances, the Court of Appeals identified three instances: (1) the availability of "new evidence"; (2) the announcement of "a supervening new law"; and (3) the "clearly erroneous" nature of the earlier decision, which "would create manifest injustice." *Phila. Litig.*, 158 F.3d at 718 (citing *Pub. Int. Research Gr. of N.J. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116–17 (3d Cir. 1997)).

Here, the Motion fails to satisfy the inquiry under the law of the case doctrine.  Judge Carlson's R&R of March 31, 2021, subsequently

adopted by the Court, recommended against granting Navient's earlier 12(f) motion, concluding that resolution of the class allegations on the pleadings alone was not warranted, as "this is not one of those rare cases where class certification could be denied [by] . . . striking class action averments at the outset of the litigation . . . ." Doc. 56 at 13–14. That conclusion was not dictum.  Nor does Navient satisfy any of the three scenarios that may warrant reassessment of the Court's prior decision, as it presents no new evidence, supervening law, or argument establishing that Judge Carlson's R&R was clearly erroneous. *See Phila. Litig.*, 158 F.3d at 718.

Accordingly, the undersigned recommends that Navient's motion to dismiss or strike class allegations be denied without prejudice to its ability to advance their contentions at a subsequent stage of this litigation.

## IV.   Conclusion

For the reasons set forth above, it is **RECOMMENDED** that the motion for partial judgment on the pleadings (Doc. 158) be **DENIED**, and the Court refer this matter back to the undersigned for further pretrial management.

All parties are further placed on notice that, pursuant to Local

Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

M.D. Pa. L. R. 72.3. The failure to file timely objections to the foregoing

R&R may constitute a waiver of any appellate rights. *See Nara v. Frank,*

488 F.3d 187, 194 (3d Cir. 2007).

Date: January 23, 2026          *s/ Phillip J. Caraballo*
                                Phillip J. Caraballo
                                United States Magistrate Judge