# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JILL BALLARD, REBECCA VARNO, and MARK POKORNI, on behalf of themselves and the class members described herein,**

**Plaintiffs,**

**v.**

**NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., AND NAVIENT SOLUTIONS, LLC,**

**Defendants.**

**Civil No. 3:18-cv-00121-JFS-PJC**

---

## DEFENDANTS' MEMORANDUM IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Jonathan Marmo
Holland & Knight LLP
1650 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 252-9600

Cory Eichhorn
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500

Daniel T. Brier
Donna A. Walsh
Richard L. Armezzani
Myers Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
Telephone: (570) 342-6100

*Attorneys for Defendants Navient Corporation, Navient Solutions, Inc. and Navient Solutions, LLC*

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................1

II. RELEVANT FACTUAL BACKGROUND ...........................................5

    A.  Student Loan Servicing Depends on the Particularized Circumstances of Each Borrower ...........................................5

    B.  Plaintiffs' Particularized Circumstances and their Unique Experiences with Navient Reflect that Student Loan Servicing Is a Bespoke Process ......................................................9

    C.  Plaintiffs' Proposed Classes Rest on Flawed Premises ......................12

    D.  The CFPB and State AG Actions Are Neither Class Actions Nor Evidence ...........................................................15

    E.  Borrowers, Including Plaintiffs, Filed Copycat Actions, and All Other Putative Class Actions Are Dismissed.....................................17

III. STANDARD OF REVIEW.................................................................20

IV. ARGUMENT.....................................................................................21

    A.  The Court Should Reject Plaintiffs' New "Modified Forbearance" Class...............................................................21

    B.  Plaintiffs Sacrificed Standing in an Attempt to Satisfy Ascertainability ......................................................23

    C.  Plaintiffs Have Not Satisfied Commonality, As They Fail to Identify Common Questions Susceptible to Common Proof.............25

    D.  Plaintiffs Fail to Satisfy Rule 23(b)(3) Because Individual Issues Predominate Over Common Questions..................................27

        1.  Individualized Issues Predominate as to Plaintiffs' Consumer Protection Claims. .................................29

            a.  California Claims (Counts 3 and 7)...............................29

            b.  Pennsylvania UTPCPL Claim (Count 4)........................32

            c.  New York Claim (Count 5) ...........................................34

            d.  Illinois Claim (Count 6)................................................36

i

2.    Individualized Issues Predominate as to Plaintiffs'
Contract-Based Claims (Count I and II) ...................................37

    a.    The Court Would Need to Assess Choice of Law
and Apply Disparate State Laws for Individual
Borrowers ......................................................................38

    b.    Individualized Issues of Fact Drive Plaintiffs'
Contract-Based Claims ..................................................40

3.    Individualized Issues Predominate As To Navient's
Affirmative Defenses ....................................................................41

    a.    Waiver..............................................................................41

    b.    Failure to Mitigate .........................................................43

    c.    Statute of Limitations .....................................................44

E.    Plaintiffs Cannot Prove Damages On A Classwide Basis .................45

1.    Plaintiffs Fail To Establish a Reliable Method of
Determining Damages on a Classwide Basis ...........................46

2.    Damages Would Depend on Myriad Individual Inquiries........48

    a.    Statutory Damages Rest on Individualized
Assessments of "Ascertainable Loss" ...........................48

    b.    Damages from Allegedly Improper Standard
Repayments and Interest Capitalization Also
Cannot Be Determined on a Classwide Basis ...............51

    c.    Eligibility for IDR Credits Would Depend on
Individualized Inquiries..................................................55

    d.    Many Putative Class Members Suffered No
Damages At All ..............................................................56

3.    Plaintiffs' Challenges to Dr. Ang's Opinions Fail...................57

F.    A Class Action Is Not Superior to Individual Borrower Actions .......61

G.    Any Injunctive Relief Class Fails.......................................................64

V.    CONCLUSION..............................................................................................65

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*477 Harrison Ave., LLC v. Jace B, LLC*, 134 N.E.3D 91 (Mass. 2019) .................39

*Abbott v. Lockheed Martin Corp.*, 725 F.3d 803 (7th Cir. 2013) ...........................22

*Agliori v. Metropolitan Life Ins. Co.*, 879 A.2d 315 (Pa. Super. 2005) .................49

*Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890 (3d Cir. 2022)............. 20, 26, 27

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..................................... 21, 63

*Arch v. Am. Tobacco Co., Inc.*, 175 F.R.D. 469 (E.D. Pa. 1997) ...........................41

*Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183 (11th Cir. 2009) ...............................45

*Back Doctors Ltd. v. Metropolitan Prop. & Cas. Ins.*, Co. 637 F.3d 827 (7th Cir. 2011)...................................................................................................49

*Barnes v. American Tobacco, Co.*, 161 F.3d 127 (3d Cir. 1998) .................... 42, 45

*Benner v. Bank of Am.*, N.A. 917 F.Supp.2d 338 (E.D. Pa. 2013) .........................49

*Bouton v. Ocean Properties Ltd.*, 322 F.R.D. 683 (S.D. Fla. 2017).......................22

*Breitman v. Xerox Educ. Servs., LLC*, 2014 WL 5364103 (S.D.N.Y. 2014) ..........28

*Brown v. Grass*, 544 F. App'x 81 (3d Cir. 2013) ....................................................38

*Carrera v. Bayer*, 727 F.3d 300 (3d Cir. 2013) ............................................... 23, 24

*Chakejian v. Equifax Info Servs., LLC*, 256 F.R.D. 492 (E.D. Pa. 2009)...............50

*Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) ..................................22

*Chery v. Conduent Educ. Servs., LLC*, 2021 WL 1791756 (N.D.N.Y. 2021).........28

*Cohen v. Chicago Title Ins. Co.*, 2013 WL 842706 (E.D. Pa. 2013) .....................33

*Coleman v. Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275 (E.D. Pa. 2016)33, 34

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ............................. 16, 20, 46, 54, 60

*Conquest v. WMC Mortg. Corp.*, 247 F.Supp.3d 618 (E.D. Pa. 2017) ...................34

*Cordoba v. Directv, LLC*, 942 F.3d 1259 (11th Cir. 2019) ......................................25

*Davis-Miller v. Auto. Club of So. Cal.*, 134 Cal.Rptr.3d 551 (Cal. Ct. App. 2011)31

*Dawson v. Great Lakes Educ. Loan Servs.*, 327 F.R.D. 637 (W.D. Wis. 2018).....28

*Dawson v. Great Lakes Educ. Loan Servs., Inc.*, 2016 WL 5415096 (W.D. Wis. 2016)..........................................................................................................................52

*Dukich v. Ikea US Retail Inc.*, 343 F.R.D. 296 (E.D. Pa. 2022)................. 33, 34, 62

*F.D.I.C. v. Deglau*, 207 F.3d 153 (3d Cir. 2000).......................................................15

*Franco v. Connecticut Gen. Life Ins. Co.*, 647 F. App'x 76 (3d Cir. 2016)............54

*Franco v. Connecticut Gen. Life Ins. Co.*, 299 F.R.D. 417 (D.N.J. 2014) ..............54

*Fukaya v. Daiso Cal., LLC*, 2025 WL 2644747 (N.D. Cal. 2025).........................31

*Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201 (2001) ..........................45

*Grandalaski v. Quest Diagnostics, Inc.*,767 F.3d 175 (3d Cir. 2014)....................44

*Harnish v. Widener University School of Law*, 833 F.3d 298 (3d Cir. 2019) .........46

*Huber v. Simon's Agency, Inc.*, 84 F.4th 132 (3d Cir. 2023) ........................... 24, 56

*Huber v. Simon's Agency, Inc.*, 2025 WL 1710045 (E.D. Pa. 2025) ......................56

*Hunt v. U.S. Tobacco Co.*, 538 F.3d 217 (3d Cir. 2008) .........................................33

*In re Blood Reagents Antitrust Litig.*, 783 F.3d 183 (3d Cir. 2015)................. 46, 47

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380 (3d Cir. 2015)..........................................................................................................................60

*In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005)................................61

*In re Fedloan Student Loan Serv. Litig.*, 2025 WL 5390681 (E.D. Pa. 2025) . 55, 60

*In re Honeywell Intern Inc., Sec. Litig.*, 211 F.R.D. 255 (D.N.J. 2002)..............2, 37

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008)........... 20, 47

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) ........................40

*In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184 (3d Cir. 2020)......48

*In re Lamictal Direct Purchaser Antitrust Litig.*, 2021 WL 2349828 (D.N.J. 2021) ................................................................................................................... 54, 55

*In re Lincoln Natl. COI Litig.*, 620 F. Supp. 3d 230 (E.D. Pa. 2022).............. 26, 47

*In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351 (E.D. Pa. 2015).......................................................................................................50

*In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124 (E.D. Pa. 2015). 46, 54

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) .......................2

*In re Wettach*, 811 F.3d 99 (3d Cir. 2016)................................................................29

*Innospec Fuel Specialties, LLC v. Isochem N.A., LLC*, 2012 WL 3682988 (D.N.J. 2012).......................................................................................................................42

*Johansson v. Nelnet*, 2022 WL 6232089 (D. Neb. 2022)........................................23

*Kirchner v. Wyndham Vacation Resorts, Inc.*, 2024 WL 4188865 (D. Del. 2024).63

*Kronenberg v. Allstate Ins. Co.*, 743 F. Supp. 465 (E.D.N.Y. 2024) ......................36

*Lyons v. Great Lakes Educ. Loan Servs., Inc.*, 2022 WL 602972 (D.N.J. 2022)....55

*Lytle v. Nutramax Lab'y, Inc.*, 114 F.4th 1011 (9th Cir. 2024)...............................32

*Meenan v. Navient Corp.*, 2020 WL 5057654 (D. Ariz. 2020) ...............................55

*Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467 (3d Cir. 2018) ................26

*Mueller v. CBS, Inc.*, 200 F.R.D. 227 (W.D. Pa. 2001)...........................................29

*Municipal Auth. of Westmoreland County v. CNX Gas Co., L.L.C.*, 380 F.Supp.3d 464 (W.D. Pa. 2019) .................................................................................... 41, 42

*Neale v. Volvo Cars of N. Am.*, 794 F.3d 353 (3d Cir. 2015)..................................60

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001).................................................................................................. 25, 31

*Park Nicollet Clinic v. Hamann*, 808 N.W. 2d 828 (Minn. 2011) .........................39

*Polansky v. Vail Homes, LLC*, 2014 WL 6682473 (W.D. Pa. 2014) .....................42

*Powers v. Lycoming Engines*, 272 F.R.D. 414 (E.D. Pa. 2011) .............................62

*Ritti v. U-Haul Int., Inc.*, 2006 WL 1117878 (E.D. Pa. 2006).......................... 38, 39

*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159 (11th Cir. 2010).................................................................................43

*Seaman v. Nat'l Coll. Student Loan Tr.*, 2023 WL 6290622 (S.D.N.Y. 2023).......28

*Shelley v. AmSouth Bank*, 2000 WL 1121778 (S.D. Ala. 2000) ...........................43

*Sloane v. Gulf Interstate Field Servs., Inc.*, 2017 WL 1105236 (M.D. Pa. 2017) ..20

*Speerly v. Gen. Motors, LLC*, 143 F.4th 308 (6th Cir. 2025) .......................... 36, 37

*Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013)................................. 49, 50

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ...............................64

*TransUnion v. Ramirez*, 594 U.S. 413 (2021) ................................................. 24, 25

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .......................................20

*Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537 (D. Minn. 2017) .................44

*Ute Water Conservancy Dist. v. Fontanari*, 524 P.3d 308 (Colo. Ct. App. 2022)..39

*Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179 (3d Cir. 2006) ...............................................................................................................62

*Walden v. Bank of New York Mellon Corp.*, 2025 WL 2696463 (W.D. Pa. 2025).22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...................................... passim

*Weinberg v. Sun Co.*, 777 A.2d 442 (Pa. 2001)......................................................48

*Well Built Realty Corp. v. Leviton Manufacturing Co., Inc.*, 2025 WL 295778 (W.D. Pa. 2025) .............................................................................................43

*Williams v. Ford Motor Co*., 192 F.R.D. 580 (N.D. Ill. 2000)................................37

*Zeno v. Ford Motor Co., Inc*., 238 F.R.D. 173 (W.D. Pa. 2006)..................2, 26, 27

## CONSTITUTIONS AND STATUTES

42 PA.C.S.A. § 5527.............................................................................................45

73 P.S. § 201-9.2........................................................................................... 48, 63

735 Ill. Comp. Stat. Ann. 5/13-206......................................................................44

815 Ill. Comp. Stat. 505/10a (c)...........................................................................63

815 Ill. Comp. Stat. Ann. 505/10a (ICFA) ...........................................................45

Cal. Civ. Code Ann. § 1783 (West) (CLRA)..........................................................45

Cal. Civ. Code, § 1788.30(c) ................................................................................63

Cal. Civ. Code, § 1788.30(f)................................................................................44

Cal. Code Civ. Proc. § 337 ...................................................................................39

Code of Ala. § 6-2-34 ...........................................................................................39

Courts and Judicial Proceedings Code Ann. § 5-101 ............................................39

Fla. Stat. § 95.11 ..................................................................................................39

N.Y. Gen. Bus. Law § 349.....................................................................................45

N.Y. Gen. Bus. Law § 349(h) ......................................................................... 45, 63

## RULES

CPLR 214(2)..........................................................................................................45

Fed. R. Civ. P. 23 ...................................................................................................3

Fed. R. Civ. P. 23(b)(3)................................................................................ 27, 54, 62

Fed. R. Evid. 702 ..................................................................................................47

## REGULATIONS

34 C.F.R. § 682.211(a) ................................................................................17

34 C.F.R. § 682.211(a)(2) .........................................................................34

34 C.F.R. § 682.215(d)(2) ..........................................................................30

34 C.F.R. § 682.215(e)(8)(i) ......................................................................17

34 C.F.R. § 682.215(e)(8)(ii) .............................................................. 10, 17

## OTHER AUTHORITIES

Manual for Complex Litigation (Fourth) § 22.93 (2004) ........................63

## TABLE OF ABBREVIATIONS

| Term | Definition |
|------|------------|
| CFPB | Consumer Financial Protection Bureau |
| CLRA | California Consumer Legal Remedies Act |
| ED | U.S. Department of Education |
| FFELP | Federal Family Education Loan Program |
| FSA | Federal Student Aid |
| ICFA | Illinois Consumer Fraud and Deceptive Business Practices Act |
| IDR | Income-Driven Repayment |
| MPN | Master Promissory Note |
| NSL | Navient Solutions, LLC |
| NY GBL | New York General Business Law |
| PFH | Partial Financial Hardship |
| TAC | Third Amended Complaint |
| UTPCPL | Pennsylvania Unfair Trade Practices and Consumer Protection Law |

Defendants Navient Corporation[1] and Navient Solutions, LLC, formerly known as Navient Solutions, Inc. ("NSL") (collectively, "Navient") respectfully oppose the motion for class certification [ECF 196, 208] of Plaintiffs Jill Ballard, Rebecca Varno and Mark Pokorni (collectively, "Plaintiffs").

## I.    INTRODUCTION

The three Plaintiffs purport to assert an array of claims regarding student loan servicing on behalf of hundreds of thousands of differently-situated borrowers. They now seek certification of multiple sweeping (and novel) nationwide classes and state sub-classes to assert these disparate claims.

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).[2]  The purpose of a class action is to resolve common claims together when—and *only* when—resolving them together is more efficient and less complicated than resolving them separately.

The class device can be suitable—and certification of a class can be appropriate—where claims, defenses, and damages rest on facts common to the class members.  These contexts, cited in Plaintiffs' memorandum [ECF 208], include

---

[1] Navient Corporation is a holding company that does not engage in loan servicing activity.  As a result, it is improperly named as a Defendant.

[2] Unless stated otherwise, all emphasis is supplied, and all internal citations and quotations are omitted from all quoted material herein.

antitrust cases where the effect of cartel pricing on consumers is universal. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516 (3d Cir. 2004) (cited in Pls.' Mem. at 57). They also include securities actions, where individual reliance on a common market price is presumed. *See, e.g.*, *In re Honeywell Intern Inc., Sec. Litig*., 211 F.R.D. 255 (D.N.J. 2002) (cited in Pls.' Mem. at 60). And they can include some consumer class actions in cases where a company's interactions with its consumers are all the same. *See, e.g.*, *Zeno v. Ford Motor Co., Inc.*, 238 F.R.D. 173 (W.D. Pa. 2006) (cited in Pls.' Mem. at 55).

But the class device is particularly unsuited to resolve individual borrowers' claims regarding student loan servicing. This is because student loan servicing is a highly individualized process, and as a result, the claims arising out of student loan servicing necessarily involve highly individualized issues. At base, student loan servicing is the product of interactions between the servicer and individual borrowers regarding their student loans. During the relevant period, Navient employed thousands of customer service representatives who regularly engaged with individual borrowers, provided points of contact for individual borrowers, addressed individual borrowers' questions, and took other steps to help facilitate borrowers' repayment of their student loans.[3] The facts and circumstances relating to one

---

3 ████████████████████████████████████████████████████████████████

borrower's student loan servicing thus vary dramatically from the facts and circumstances of other borrowers.

Given this backdrop, it is entirely unsurprising that Plaintiffs have not met their burden to establish that their proposed classes satisfy the requirements of Fed. R. Civ. P. 23.[4] *First,* Plaintiffs have not shown that the putative class members have standing for the claims asserted. Unable to propose an ascertainable class, Plaintiffs attempted to "reverse engineer" one by seeking data from Navient and another loan servicer, Maximus Education LLC ("Maximus"), identifying borrowers with certain characteristics.[5] Then they re-defined the "class" based on those search criteria— without any regard for whether the identified borrowers suffered any injury or can assert claims against Navient. While Plaintiffs have now identified discrete sets of borrowers, they cannot show—without detailed account-level review—which borrowers may possess viable claims. *See infra* Section IV.B.

*Second*, class certification should be denied because individualized issues predominate over common questions of liability. Plaintiffs seek to represent large

---

██████████████████████████████. *See* Expert Report of Xiaoling Lim Ang, Ph.D. ("Ang Report"), *Ex. 1* hereto, at 13-19.

[4] As explained below, the Court should reject Plaintiffs' new "Modified Forbearance" class because it was neither included in Plaintiffs' operative complaint nor disclosed during discovery. *See infra* Section IV.A.

[5] Navient has largely exited student loan servicing. Maximus and The Higher Education Loan Authority of the State of Missouri now service its former loans.

groups of student loan borrowers asserting claims concerning income-driven repayment plans ("IDR" plans) and discretionary forbearances. These claims turn on varied facts and state laws, and are subject to individualized defenses, all requiring review of borrowers' loan servicing files and none resolvable on a class basis. Consequently, if certified as a class action, this case would devolve into hundreds of thousands of mini-trials requiring account-level examination of each borrower's claims and defenses thereto. *See infra* Sections IV.C, IV.D.1-2.

**Third,** Plaintiffs cannot prove damages on a classwide basis—and have not attempted to do so. They offer no expert report, testimony, or model showing how damages could be calculated without individualized review of borrowers' loan files. The primary damages they seek arise from interest capitalization, but determining both the triggering event for interest capitalization and the amount attributable to any specific event involves individualized inquiries. The uncontroverted evidence establishes that, for many of the putative class members, interest capitalized on a given date would have accrued during periods unrelated to Navient's challenged conduct, raising individualized questions of causation. *See infra* Sections IV.D.3, IV.E.

**Finally**, a class action is not superior to individual actions because the proposed classes are unmanageable. Resolving borrowers' claims and defenses would require individualized, loan-level inquiries and application of the laws of all

50 states to the breach of contract claims. Even if liability were established, damages could not be determined on a classwide basis. Superiority is not satisfied because any Plaintiff or putative class member with a viable claim may pursue it individually, as borrowers often do. *See infra* Section IV.F.

A class action simply is the wrong vehicle for these claims, and Plaintiffs' motion should be denied.[6]

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Student Loan Servicing Depends on the Particularized Circumstances of Each Borrower



. *See* Ang Report at 67.

*See id.*

. *See id.* 13-16.

*See id.* at 15.

---

[6] Navient opposes the Statement of Questions Involved (the "Statement") proffered by Plaintiffs. *See* Pls.' Mem. at 1. The Statement mischaracterizes and oversimplifies the rigorous analysis this Court must undertake at the class certification stage as further set forth herein. *See infra* Sections III-IV.

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████  *Id.* at 15-16.  ███████████████████████

████████████████████████████████████████████

████████████████████████████  *See id.*  Borrowers in IDR plans must

reapply for the plan each year and show they remain eligible.  *See* "Income Driven

Repayment Plans," U.S. Department of Education – Federal Student Aid, available

at  https://studentaid.gov/manage-loans/repayment/plans/income-driven.    Once  an

IDR plan expires—*e.g*., because the borrower does not timely reapply or is no longer

eligible for her IDR plan—monthly payments increase to the standard repayment

plan amount and accrued interest is properly capitalized.  *See id.*

There are tradeoffs associated with enrolling in IDR plans.  ███████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████  *See* Ang Report at 28.  ████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████  *See id.*

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████  *See id.* at 29-30.

6

**Exhibit 2**
**Department of Education Income Driven Repayment Form**
**Sample Payment Amounts**
**Non-Consolidation, Undergraduate Loan Debt of $30,000 in Direct Unsubsidized Loans**
**and Starting Income of $25,000**

| Repayment Plan | Initial Payment | Final Payment | Time in Repayment | Total Paid | Loan Forgiveness |
|---|---|---|---|---|---|
| Standard | $333 | $333 | 10 years | $33,967 | N/A |
| Graduated | $190 | $571 | 10 years | $42,636 | N/A |
| Extended-Fixed | Ineligible | - | - | - | - |
| Extended-Graduated | Ineligible | - | - | - | - |
| PAYE | $60 | $296 | 20 years | $38,105 | $27,823 |
| REPAYE | $60 | $296 | 20 years | $38,105 | $24,253 |
| IBR | $90 | $333 | 21 years, 10 months | $61,006 | $0 |
| ICR | $195 | $253 | 19 years, 6 months | $52,233 | $0 |

**Source:** Third Amended Complaint, Appendix G, PDF p. 10.



*See id.* at 29-31.

*See id.* at 30-31.

. Ang Report at 17.

███████████████████████████████████████████████

█████████ *See id.* at 18. ███████████████████████████████

███████████████████ *See id*. ███████████████████████

███████████████████████████████████████████████

██████████. *See id.*; Deposition of Jeffrey Stine ("Stine Dep."), ***Ex. 2*** hereto, at 35:7-12.

When a borrower is 270 days delinquent, the loan enters default, and the full unpaid balance plus accrued collection fees becomes immediately due. *See* Master Promissory Note ("MPN"), Third Amended Complaint ("TAC"), Ex. A [ECF 29-1 at 3]. A borrower in default may also experience other significant potential adverse consequences, including loss of income tax refunds, negative credit reports to credit bureaus, and having their wages garnished. *See* Borrower's Rights and Responsibilities Statement ("Borrower's Statement"), TAC, Ex. A. [ECF 29-1 at 7]. But entering discretionary forbearance helps a borrower avoid a default, eliminating the delinquency from the borrower's record and rendering the borrower current on their loan. *See* Stine Dep. 37:2-10.

A borrower can also be placed in an administrative forbearance. █████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████. *See* Ang Report at 18.



. *See id.*[7]

*See* Stine Dep. 33:2-40:9.

*See* Deposition of Patrick Theurer ("Theurer Dep."), **Ex. 3** hereto, at 52:6-24.  Plaintiffs' circumstances confirm that borrowers all have different experiences that inform their claims.

### B.   Plaintiffs' Particularized Circumstances and their Unique Experiences with Navient Reflect that Student Loan Servicing Is a Bespoke Process

Plaintiffs are three borrowers who had student loans serviced by Navient.

*Plaintiff Ballard.*    Ballard alleges that in 2012 she submitted an IDR application and was approved.  TAC ¶¶ 60-61.  She alleges she timely submitted her IDR renewal application, but her IDR plan was not renewed before it expired.  *See*

---

[7]

*See* Ang Report at App'x IV(1).

Pls.' Mem. at 20. ██████████████████████████████████████

████████████████████████████████████████████████

████████████ *See* Ballard January 22, 2014 Letter, ***Ex. 4*** hereto. ████████████

███████████████████████████████████████████████████.

*See* Pls.' Mem. at 21. ████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████. *Id.* at 21. ████████████████

████████████████████████████████████████████████

██████. *Id.* Ballard contends Navient violated 34 C.F.R. §682.215(e)(8)(ii) by placing her in a standard repayment after the alleged timely submission of her IDR renewal. TAC ¶ 69.

Jeffrey Stine, Vice President of Servicing Operations at Navient, testified that

████████████████████████████████████████████████

██████████████████. *See* Stine Dep. 62:14-21 (testifying the error was likely "█

████████████████████████████████████," which "████████████

████████████████" but in this case did not occur). ████████████████████

████████████." *Id.* at 62:22-25.

*Plaintiff Varno*. Varno alleges that Navient made errors that delayed processing of her initial and renewal IDR applications. *See* Pls.' Mem. at 23-24.

████████████████████████████████████████████████



. *Id.* at 24-25.

. *Id.* at 26.

. *Id.* at 28.

. *See* Stine Dep. 190:12-21.

. *Id.* at 191:13-192:23.

. *Id.* at 190:17-21.

. *Id.* at 195:20-24. So according to Mr. Stine,

." *Id.* at 195:25-196:1-2. For example,



." *Id*. at 197:9-13.

*Plaintiff Pokorni*.

. *See* Pls.' Mem. at 16-17.

. *Id*. at 18.

. *Id*.

. *Id*. at 19.

*See* Stine Dep. 253:23-254:1.

## C.    Plaintiffs' Proposed Classes Rest on Flawed Premises

Plaintiffs claim that they and the members of the proposed classes and subclasses were harmed when (i) their IDR payments were improperly canceled (Ballard and the proposed "Improper IDR Cancellation Class" and California Subclass); (ii) they were wrongfully placed in a discretionary forbearance to facilitate IDR enrollment and renewal (Varno and proposed "Modified Forbearance

Class" and New York Subclass); and (iii) their IDR applications were not timely processed (Pokorni and proposed "Improper Delay Class" and Illinois Subclass). *See* Pls.' Mem. at 48-52.



. *See* Pls.' Mem. at 68-70.  But that is wrong.  *First*, the proposed "Improper IDR Cancellation Class" is premised on the proposition that any borrower who timely submitted an IDR renewal application should have had her monthly payment amounts held at the IDR level until a new payment was calculated, even if the application was not processed before the IDR plan expired.  *See id.* at 19-20.  Plaintiffs assume that every borrower who timely submitted an IDR renewal application, whose payments were recalculated under the standard repayment plan and whose application was deemed "complete" when it was first reviewed, was injured.  *Id.* at 48.  But

*See* Ang Report at 42.  And the record shows that some borrowers in the proposed class

. *Id.* ¶ 66 (

).

*Second*, the proposed "Modified Forbearance Class" is premised on the proposition that any borrower who submitted an application to enroll in or renew an IDR plan was placed in a discretionary forbearance within sixty days based on his oral affirmation, and was not in default at that time was injured. *See* Pls.' Mem. at 51. But there are numerous reasons a particular borrower might be in discretionary forbearance while her IDR application was pending. For example, ██████████

████████████████████████████████████████████████████████

████████████████. *See* Ang Report at 42-43. ████████████████████

██████. *See* Stine Dep. 190:1-22. ████████████████████████████████

████████████████████████████████████████████████████████

*Id.* 197:9-13.

*Third*, the proposed "Improper Delay Class" is premised on the proposition that any borrower whose IDR application was not processed within 45 days and whose application was accompanied by proof of income and was ultimately approved was injured. *See* Pls.' Mem. at 52. Not so. In fact, ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████. *See* Ang Report at 22.

**D.      The CFPB and State AG Actions Are Neither Class Actions Nor Evidence**

Given the individualized nature of borrowers' interactions and repayment decisions (*e.g.*, IDR plan, discretionary forbearance, administrative forbearance), Plaintiffs attempt to rely on Navient's alleged "standardized practices" to assert classwide claims. *See* Pls.' Mem. at 56. But after eight years of discovery, they cite no evidence of such practices, relying instead on broad computer searches that ignore individualized borrower experiences. *Id.* at *passim*.

Unable to identify proof of Navient's supposed "standardized practices," Plaintiffs devote roughly 20 pages of their brief to allegations from a CFPB complaint, a State AG action, and CFPB reports summarizing borrower complaints about servicers, including Navient.

The allegations in the CFPB "complaint are, of course, merely allegations and not evidence." *See F.D.I.C. v. Deglau*, 207 F.3d 153, 172 (3d Cir. 2000). The allegations were never tested or proven, and except for facts establishing the court's jurisdiction, Navient did not admit the CFPB's allegations. *See CFPB v. Navient Corp.*, Case No. 3:17-CV-00101-RDM (M.D. Pa.), ECF 583 at 2. Nor is the State AG action evidence of any wrongdoing—it also settled with no admission of liability. *See Pennsylvania v. Navient Corp.*, Case No. 3:17-CV-1814 (M.D. Pa. ), ECF 98 at III(G) (settlement provision that "nothing contained herein may be taken as or construed to be an admission or concession of any violation of law" nor shall

the settlement "constitute evidence of any liability, fault, or wrongdoing by" Navient). And, neither the CFPB action nor the State AG action were putative class actions subject to Rule 23 and the attendant "rigorous analysis" required to certify a class. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

The CFPB reports on which Plaintiffs rely likewise do not come close to establishing uniform practices by Navient. *See* Pls.' Mem. at 13-32. They include aggregate statistics based on how complaints are coded—*e.g*., 12% of complaints in one sample set purportedly related in some (unspecified) way to "Income-Driven Repayment". *Id.* at 15 (citing Ex. 7-C at 10). But the reports do not indicate the specific subject of the complaints or whether the complaints were premised on any "standardized practice." *Id.* at Ex. 7-C at 10. Plaintiffs repeatedly quote the CFPB's high-level generalizations about borrower complaints—for example, that some borrowers who applied for an IDR plan complained about poor customer service or lost paperwork (*id.* at 17 (citing Exs. 7-B and D))—yet those generalizations are derived from complaints submitted by all borrowers, not just borrowers whose loans were serviced by Navient. *Id.* at Exs. 7-D at 11, 7-B at 25. They neither identify nor show any standardized practices uniformly applied to borrowers, much less what those practices were.

16

### E.    Borrowers, Including Plaintiffs, Filed Copycat Actions, and All Other Putative Class Actions Are Dismissed.

Shortly after the CFPB filed its lawsuit, copycat cases were filed asserting claims on behalf of proposed classes of student-loan borrowers.[8]  Each of the other putative class cases was resolved on an individual, non-class basis before any ruling on class certification.[9]  This case is the sole remaining case.

Plaintiffs claim that Navient violated federal student loan servicing requirements by:

(i)    cancelling Ballard's and Varno's "income-driven repayment amount while processing their IDR requests, despite timely submission of same" in purported violation of 34 C.F.R. § 682.215(e)(8)(ii) (TAC ¶ 115);

(ii)    processing Pokorni's "IDR application 45 days after the date on which it [was] received" in purported violation of both 34 C.F.R. § 682.215(e)(8)(i) and the "Mitchell Memorandum" (TAC ¶ 147(a)); and

(iii)    placing Varno's loans "into [a] forbearance status during Defendant's processing delays" in purported violation of 34 C.F.R. § 682.211(a) (TAC ¶¶ 81, 147(e)).

Based upon these purported violations, Plaintiffs seek the following damages:

---

[8] *See* Complaint [ECF 1], *Manetta v. Navient Corp.*, No. 2:20-cv-07712 (D.N.J. June 24, 2020); Complaint [ECF 1], *Riddell v. Navient Corp.*, No. 3:19-cv-01623 (S.D. Cal. Aug. 8, 2019); Complaint [ECF 1], *Travis v. Navient Corp.*, No. 2:17-cv-04885 (E.D.N.Y. Aug. 18, 2017); Complaint [ECF 1], *Demyanenko-Todd v. Navient Corp.*, No. 3:17-cv-00772 (M.D. Pa. May 1, 2017).

[9] *See* Order, *Manetta*, ECF 145 (order of dismissal); Order, *Riddell*, ECF 21 (same); Order*, Travis*, ECF 99 (same); Order, *Demyanenko-Todd*, ECF 105 (same).

(i)  "the difference in the amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan;

(ii)  unpaid interest added to the principal balance of loans along with amounts accrued as a result that capitalization, and

(iii)  financial harm associated with delayed progress towards loan forgiveness."  TAC ¶ 147(e).

Plaintiffs bring seven causes of action based on alleged violations of federal servicing requirements.[10]  Navient has asserted a number of affirmative defenses to these claims, including: (i) waiver, (ii) estoppel, and (iii) failure to mitigate.  [ECF 143 at 27-31].

Throughout this litigation, Plaintiffs have repeatedly shifted their proposed class definitions.  The initial Complaint defined the proposed class as borrowers who "timely submitted a request to re-enroll in an [IDR] plan, but were removed from the plan."  [ECF 1 at 63].  Later, Plaintiffs filed a Second Amended Complaint that included eleven proposed classes and subclasses, three of which were defined to require that accrued interest was capitalized and added to the putative class members' loan balances.  [ECF 80-1].  The TAC abandoned the interest capitalization requirement, after Plaintiffs learned that "the reason for the addition

---

[10] Breach of Contract (Counts I and II); California Consumer Legal Remedies Act ("CLRA") (Count III); Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count IV); New York General Business Law ("NY GBL") (Count V); Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count VI); and Rosenthal Act (Count VII).

of capitalized interest on an account in a particular instance is not reflected in a manner that allows for systematic identification." [ECF 119 at 13, 17]. In other words, Plaintiffs recognized a fatal ascertainability problem because there was no way to systematically identify members of their proposed classes.

The TAC includes a total of ***nine*** proposed classes and subclasses.[11] Plaintiffs filed the TAC on March 28, 2024, and the parties completed fact and expert discovery as to class certification, including discovery on the accounts of borrowers who fell within the TAC's proposed class definitions.

On November 24, 2025, Plaintiffs filed their motion for class certification, seeking certification of a new "modified" class in lieu of two of the classes proposed in the TAC. The proposed classes and the Plaintiff and claims corresponding to each, are as follows:

| Classes/Subclass | Plaintiff | Counts |
|---|---|---|
| Improper IDR Cancellation Class and California Subclass | Ballard | I, II, III, IV and VII |
| Modified Forbearance Class and New York Subclass[12] | Varno | IV and V |

---

[11] In the interest of brevity, Defendants refer the Court to the class definitions set forth in Plaintiffs' TAC. [TAC ¶ 95].

[12] Plaintiffs abandon the TAC's "Forbearance Without Written Consent" and "No Administrative Forbearance" classes and seek instead to certify a new "Modified Forbearance" class and New York subclass. *See* Pls.' Mem. at 51.

| Classes/Subclass | Plaintiff | Counts |
|---|---|---|
| Improper Delay Class and Illinois Subclass | Pokorni | IV and VI |

## III.    STANDARD OF REVIEW

A class action "is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only." *Wal-Mart*, 564 U.S. at 348. A class may be certified only if, after a "rigorous analysis," the court is satisfied *all* Rule 23 prerequisites for certification have been met and the adjudication of a plaintiff's claim will fully and fairly resolve the claims of the proposed class. *Id*. at 351. The Supreme Court has repeatedly emphasized that it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast*, 569 U.S. at 33.

Rule 23 "requires more than allegations, initial evidence, or a threshold showing." *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 901 (3d Cir. 2022). Plaintiffs bear the burden of showing, by a preponderance of the evidence, that their claims satisfy *both* Rule 23(a) and Rule 23(b). *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008). Here, where Plaintiffs seek to certify proposed classes under Rule 23(b)(3), they must show that "issues common to the class *predominate* over those affecting only individual class members." *Sloane v. Gulf Interstate Field Servs., Inc.*, 2017 WL 1105236, at *21 (M.D. Pa. 2017); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (same).

20

While related to commonality, predominance is "far more demanding," ensuring that the putative class is sufficiently cohesive to overcome the due process concerns inherent in representative litigation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). The Court must thus "examine each element of a legal claim" and decide whether they "are capable of proof at trial through evidence that is common to the class rather than individual to its members." *Id.*

## IV.    ARGUMENT

### A.    The Court Should Reject Plaintiffs' New "Modified Forbearance" Class

As an initial matter, the proposed Modified Forbearance class was neither included in Plaintiffs' TAC nor disclosed during discovery. It also significantly and impermissibly broadens the scope of the proposed classes. While Plaintiffs contend that the Modified Forbearance class is a *narrowed* class, this newly proposed class, according to Plaintiffs, includes ██████ purported class members, while the combination of the No Administrative Forbearance and Forbearance Without Written Consent classes supposedly totaled █████ class members. Pls.' Mem. at 49-51. This is an *increase* of over █████ class members for a class not identified until after the close of discovery and months after the deadline for expert reports.

The Court should not permit this late-stage gamesmanship, denying Navient any opportunity to conduct discovery on the Modified Forbearance class. Plaintiffs' proposal of a new class definition in their motion, well past the eleventh hour,

contravenes Rule 23(c)(1)(A)'s requirement that putative class representatives "put their class definitions on the table '[a]t an early practicable time[.]'" *See Chapman v. First Index, Inc.*, 796 F.3d 783, 784-85 (7th Cir. 2015). Indeed, courts in this Circuit and elsewhere have found that "where a modified class definition seeks to expand, instead of narrow, the scope of a putative class by adding more putative class members . . . courts may limit that practice where expansion would unfairly prejudice a defendant." *Walden v. Bank of New York Mellon Corp.*, 2025 WL 2696463, at *4 (W.D. Pa. 2025); *see also Bouton v. Ocean Properties Ltd.*, 322 F.R.D. 683, 693-94 (S.D. Fla. 2017) (precluding plaintiff from expanding scope beyond proposed definition and theories pled in complaint).

Here, Plaintiffs' belated expansion of this class is neither cosmetic nor immaterial. The modified class removes a core element of the original classes upon which it is purportedly based—that Varno's and the putative class members' partial financial hardship ("PFH") statuses expired and they were improperly enrolled in a standard repayment plan. *See* TAC ¶ 81 (defining "Forbearance without Written Consent" class to include borrowers whose PFH status expired and payment were recalculated under a standard repayment plan). This maneuver, however, significantly increases the size of the proposed class and is improper, particularly after the close of discovery and the deadline for expert reports. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 810 (7th Cir. 2013) (noting "class definition

22

is a tool of case management" that "settles the question of who the adversaries are, and so it enables the defendant to gauge the extent of its exposure to liability").

████████████████████████████████████████████████████████████

████████████████████████████████████████. Ang Report at 21-26. By springing the Modified Forbearance Class on Navient months after the close of discovery, Plaintiffs have deprived Navient of the ability to perform that analysis on members of this new proposed class.

In a putative class action against a different student loan servicer, plaintiffs (represented by certain of the same Plaintiffs' counsel here) sought to propose a new class definition late in the game. *Johansson v. Nelnet*, 2022 WL 6232089, at *5 (D. Neb. 2022). The court rejected that gambit holding "the redefined putative class definition as stated in the motion for class certification would expand the size and scope of the putative class and this litigation, not narrow it." *Id*. at *7. The Court should do the same here and deny certification of the Modified Forbearance class.

### B. Plaintiffs Sacrificed Standing in an Attempt to Satisfy Ascertainability

Plaintiffs seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable, including that there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Carrera v. Bayer*, 727 F.3d 300, 355 (3d Cir. 2013). In earlier iterations, Plaintiffs and their counsel had a

serious ascertainability problem, as they were attempting to define their proposed classes in terms of borrowers who had accrued interest capitalized and added to their loan balances. *See supra* Section II.E. But there is no systematic way to identify such borrowers. *Id.* Plaintiffs have now apparently "solved" that problem by removing the capitalization elements from their proposed class definitions. But in so doing, Plaintiffs have swapped an unresolvable ascertainability problem for an insuperable standing problem. *See generally TransUnion v. Ramirez*, 594 U.S. 413, 424-432 (2021).

There are legitimate reasons why borrowers would fall into each of the proposed class definitions, meaning many members of the proposed classes suffered no alleged injury at all. *See supra* Section II.C. As the Supreme Court made clear in *TransUnion*, *only* absent class members who actually suffered injuries have standing under Article III to pursue damages:

> As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing. Every class member must have Article III standing in order to recover individual damages. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."

594 U.S. at 430-31.

True enough, the Third Circuit has held that, at class certification, Article III is satisfied if a named plaintiff has standing for each claim brought on behalf of the putative class. *See Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 154 (3d Cir. 2023).

But before the Court could award any relief to members of the proposed classes, Plaintiffs would have to demonstrate that every such member has Article III standing, and that would only be accomplished (if at all) through individualized determinations of injury for each class member. *See TransUnion*, 594 U.S. at 424-32.

█████████████████████████████████████████████████████████████████

███████████████████████████████. *See* Ang Report at 20-21. Therefore, it cannot be known who has Article III standing without hundreds of thousands of individualized determinations that would not be remotely manageable or feasible. *See Cordoba v. Directv, LLC,* 942 F.3d 1259, 1277 (11th Cir. 2019); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187-89 (3d Cir. 2001) (affirming denial of class certification and holding individual questions predominate because determining if class members were damaged required examining factors that would vary across class members).

### C.    Plaintiffs Have Not Satisfied Commonality, As They Fail to Identify Common Questions Susceptible to Common Proof

Plaintiffs identify three common questions in their motion: "(i) [w]hether Navient breached the MPN and Servicing Contract; (ii) [w]hether Navient violated federal regulations and FSA requirements; and (iii) [w]hether Navient violated applicable state consumer laws." *See* Pls.' Mem. at 56. Plaintiffs provide no

evidence, however, that a class proceeding will likely "produce a common answer" to these questions. *See Dukes*, 564 U.S. at 352.

It is well established that a plaintiff cannot satisfy commonality by alleging the defendant violated the law. *Mielo v. Steak 'n Shake Operations, Inc*., 897 F.3d 467, 487 (3d Cir. 2018) (vacating order granting class certification because merely alleging the same statutory violations did not satisfy commonality because a statute "can be violated in many different ways"). Plaintiffs' common questions must show that the class members' claims "depend upon a common contention" underlying the violation, such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Allen*, 37 F.4th at 902 (reversing grant of class certification where plaintiffs failed to show common questions beyond allegations that defendants' policies were discriminatory).

Plaintiffs provide no evidence that the "essential elements" of their causes of action are "capable of proof at trial through evidence that is common to the class." *In re Lincoln Natl. COI Litig.*, 620 F. Supp. 3d 230, 255 (E.D. Pa. 2022) (denying class certification where class members' breach of contract claims were not susceptible to classwide proof). The authorities Plaintiffs cite for the blanket proposition that common issues predominate in cases involving "interpretations of a form contract" predate the Third Circuit's decision in *Mielo*. *See* Pls.' Mem. at 56. Further, in *Zeno v. Ford Motor Co., Inc*., 238 F.R.D. 173 (W.D. Pa. 2006), the

26

common questions were more specific than a bare recitation of Plaintiffs' cause of action. *See id.* at 185 (certifying class where common questions included "whether Ford sold and contracted F–150s with towing or cooling options as including an upgraded radiator" and "whether Ford's failure to provide an upgraded radiator resulted in a breach of its contractual duties"). Plaintiffs fail to satisfy commonality.

### D.    Plaintiffs Fail to Satisfy Rule 23(b)(3) Because Individual Issues Predominate Over Common Questions.

Even if Plaintiffs had established common questions, individualized issues predominate, precluding certification. Student loan servicing is a complex process that is inherently individualized, presenting unique circumstances for each borrower. *See supra* at Sections II.A-B. While Plaintiffs have attempted to create classes over the past eight years of litigation, multiple complaints, and ever-changing class definitions, their final attempt here fails. Predominance requires a claim-by-claim analysis of each claim and the evidence needed to prove it and any applicable defenses. *See Allen*, 37 F.4th at 902. Here, Plaintiffs address none of the elements of the claims they have asserted, instead summarily asserting that they satisfy Rule 23(b)(3). *See* Pls.' Mem. at 56. They cannot meet the requirements of Rule 23(b)(3) because their claims require the Court to conduct significant individualized inquiries for each putative class member.

District courts consistently refuse to certify classes against student loan servicers where liability or harm depends on borrower-specific circumstances. *See*

*Breitman v. Xerox Educ. Servs., LLC*, 2014 WL 5364103 (S.D.N.Y. 2014) (concluding individual questions would predominate where each borrower's eligibility for benefits required individual inquiries into circumstances of borrower's loan payments); *Dawson v. Great Lakes Educ. Loan Servs.*, 327 F.R.D. 637, 649 (W.D. Wis. 2018) (refusing to certify a class as to damages because plaintiff failed to show calculating individual damages from improper interest capitalization would not predominate over common liability questions).

Although there are cases in which a district court has certified a class against a student loan servicer, those cases involved narrow class definitions that did not raise substantial individual questions. *See Chery v. Conduent Educ. Servs.*, 2021 WL 1791756 (N.D.N.Y. 2021) (certifying class of student loan borrowers who were denied their right to prepay because defendant failed to timely provide a Loan Verification Certificate); *see also Dawson*, 327 F.R.D. at 648 (certifying liability class where defendant raised only one challenge to proving liability on classwide basis);[13] *Seaman v. Nat'l Coll. Student Loan Tr.*, 2023 WL 6290622 (S.D.N.Y. 2023)

---

[13] In certifying a class as to liability in *Dawson*, the court stated "the closest [the defendant" came to arguing individual issues predominate as to liability was that the plaintiff had not proved causation as to the proposed class. *See* 327 F.R.D. at 649. Here, however, numerous individual issues would predominate in any liability determination. *See infra* Section IV.D.

(certifying a class of borrowers against whom student loan trusts had conspired to bring fraudulent state court actions).

### 1. Individualized Issues Predominate as to Plaintiffs' Consumer Protection Claims.

Plaintiffs assert claims under consumer protection statutes of California, Pennsylvania, New York and Illinois. *See* TAC ¶¶ 133-180. Individualized issues pervade each of these state law claims.

### a. California Claims (Counts 3 and 7)

The California Rosenthal Act and Consumers Legal Remedies Act ("CLRA") claims are asserted on behalf of the proposed "Improper IDR Cancellation" Class and are based on a January 22, 2014 letter from Navient to Ballard that stated her monthly payment had been increased and that her accrued interest was subject to capitalization. *See* Pls.' Mem. at 44, 48-49. Plaintiffs fail to even reference the CLRA claim in their motion and briefing and have thus forfeited any argument that claim is amenable to class treatment. *See Mueller v. CBS, Inc.*, 200 F.R.D. 227, 234 (W.D. Pa. 2001) (refusing to consider certification of counts omitted from motion for class certification and brief in support thereof); *see also In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016) (litigants forfeit claims they fail to develop in opening brief).

Moreover, Ballard's claim resulted from ████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████ *See* Stine Dep. 63:12-21.



. *Id*. at 63:1-10 (testifying that

*Id*. at 62:22-25 (

"); Ang Report at 20 (

).

Plaintiffs also assume that the alleged failure to timely process the IDR renewal application caused the PFH status of every "Improper IDR Cancellation" putative class member to expire; but a borrower may choose to no longer make payments under an IDR plan.  *See* 34 C.F.R. § 682.215(d)(2) ("If a borrower no longer wishes to pay under the income-based repayment plan, the borrower must pay under the FFEL standard repayment plan and the loan holder recalculates the borrower's monthly payment . . . .").  And, as discussed, a borrower might choose to make standard payments rather than payments under an IDR plan in order to pay less over the life of the loan.  *See supra* at Section II.A.  Plaintiffs' class definition

fails to account for borrowers who applied to renew their IDR plan but ultimately chose not to continue in an IDR plan.

An individual, account-by-account review would be necessary to determine which borrowers made this election, including analysis of account notes and call recordings. *See Newton*, 259 F.3d at 190 (holding that individual questions predominate where "[t]he distinct facts among the hundreds of thousands of plaintiffs involving hundreds of millions of trades will determine whether securities violations occurred"). For putative class members who elected to pay under the standard repayment plan and those whose PFH status expired because they were no longer eligible, a notice that their payment had been recalculated was clearly not a misrepresentation, let alone actionable.

Finally, a plaintiff asserting a CLRA claim "under the unlawful and unfair prongs must prove reliance in order to establish causation and harm." *Fukaya v. Daiso Cal., LLC*, 2025 WL 2644747, *3 (N.D. Cal. 2025). Plaintiffs have not shown a classwide method of proving reliance. *Id.*; *see also Davis-Miller v. Auto. Club of So. Cal.*, 134 Cal.Rptr.3d 551, 563 (Cal. Ct. App. 2011) ("[I]f the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action.").

Although classwide reliance has been found in certain cases where, for example, all class members purchased a particular product labeled with the same

alleged misstatement, *see, e.g., Lytle v. Nutramax Lab'y, Inc.*, 114 F.4th 1011, 1035 (9th Cir. 2024), here, Plaintiffs provide no evidence that putative class members read the same notice as Ballard and took the same action in reliance on that notice.

### b.   Pennsylvania UTPCPL Claim (Count 4)

Plaintiffs' UTPCPL claim is asserted on behalf of all proposed classes and subclasses. *See* Pls.' Mem. at 43. The claim is based on the following alleged misrepresentations: (i) the January 22, 2014 letter to Ballard stating she owed a standard repayment amount and her accrued interest was subject to capitalization; (ii) letters to Varno stating two paystubs were required and her income documentation was invalid because it stated her husband's income; (iii) a representation to Varno that discretionary forbearances could be used to facilitate IDR enrollment and renewal; (iv) emails informing borrowers that an important notice was on the website, but not specifically including in the body of the email the IDR renewal deadline; and (v) the act of enrolling Pokorni in repeated forbearances. *See id.* at 43.

Determining whether members of the proposed "Improper IDR Cancellation Class" received communications like Ballard would require individualized review of each borrower's servicing file. *See supra* at Sections II.A-B. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████. *See* Ang Report at 25. And

why a given member of the "Improper Delay Class" was enrolled in forbearance

would depend on individual circumstances, such as his financial status and loan

status at the time of each forbearance, and determining the reason would require

review of account correspondence and call notes for each borrower. *See supra* at

Sections II.A-C.

Further, certification of UTPCPL claims is also improper because justifiable

reliance, an essential element of such claims, is fact specific. *See Coleman v.*

*Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275, 284 (E.D. Pa. 2016) ("The

justifiable reliance element of a UTPCPL claim makes such a claim inappropriate

for class treatment . . . ."); *see also Cohen v. Chicago Title Ins. Co.*, 2013 WL

842706, at *5 (E.D. Pa. 2013) (decertifying class because "the Court is constrained

by the Third Circuit's holding in *Hunt* that a plaintiff pursuing a claim under the

UTPCPL catch-all provision must show justifiable reliance") (citing *Hunt v. U.S.*

*Tobacco Co.*, 538 F.3d 217 (3d Cir. 2008)); *Dukich v. Ikea US Retail, Inc.*, 343

F.R.D. 296, 308 (E.D. Pa. 2022) ("[O]ur district has often rejected class certification

for UTPCPL claims because each individual member would need to prove justifiable

reliance on the defendant's conduct[.]"). And justifiable reliance cannot be

presumed here because there is no fiduciary relationship between Navient and

members of the putative class. *See Coleman*, 318 F.R.D. at 285; *Conquest v. WMC*

*Mortg. Corp.*, 247 F. Supp. 3d 618, 634 (E.D. Pa. 2017).  For this reason alone, the Court should deny class certification of Plaintiffs' UTPCPL claims.

### c.    New York Claim (Count 5)

The New York claim is brought on behalf of the proposed Modified Forbearance Class and is based on Navient's alleged misrepresentation that the following actions had the approval of the federal government: (i) delaying implementation of Varno's IDR plan for several months; (ii) increasing Varno's monthly repayment amount while her IDR renewal request was being processed; and (iii) applying a forbearance to Varno's account during the processing of her IDR application.  *See* TAC ¶ 157.

While Varno alleges that she was improperly placed into a discretionary forbearance at a time when she was "willing and able to make scheduled payments," TAC ¶ 81, individualized issues would dictate whether other putative class members requested to be placed into a discretionary forbearance "due to poor health or other acceptable reasons."  *See* 34 C.F.R. § 682.211(a)(2).  Such individual determinations would require a file-by-file review of account notes and call recordings.  *See* Stine Dep. 222:2-5 (testifying that discretionary forbearance is appropriate "if the customer couldn't afford to make the payments . . . based on that existing [IDR] plan").  And while the proposed "Modified Forbearance Class" presumes discretionary forbearances must be requested in writing, ██████████████████

34

██████████████████████████████████████████████. *See* Theurer Dep.

52:12-24 (testifying that ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████");

*see also, e.g.,* NSL_110835-36, ***Ex. 5*** hereto (██████████████████████████

████████████████████████████████).

    Varno's account illustrates the numerous individual issues inherent in

determining liability here. ████████████████████████████████████

████████████████████████████████████. *See* Stine Dep. 190:12-21, 191:13-

192:23. ████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████. *Id*. at 195:20-24, 197:9-13. ████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████. *Id*. at 195:25-

196:1-2 ("[E]ach situation is going to be . . . different and have to be evaluated on

its own."); *see also Kronenberg v. Allstate Ins. Co*., 743 F. Supp. 3d 465, 497

(E.D.N.Y. 2024) (denying class certification where "individual analysis" would

have been required to determine "fact of injury" necessary to maintain NY GBL

Section 349 claim).

### d.    Illinois Claim (Count 6)

The Illinois claim is brought on behalf of the proposed Improper Delay Class. Under the ICFA, a plaintiff must show: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damages to a plaintiff that is (5) the result of the deception." *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 330 (6th Cir. 2025). The "fourth and fifth elements demand individualized scrutiny." *Id.* Though the ICFA "lacks an express reliance element, a buyer must have relied on a wrong to some extent in order to establish proximate cause." *Id.*

Pokorni's own allegations underscore that his claims rest on individualized communications he had with Navient. He alleges that Navient violated the ICFA by deceptively and unfairly representing to him: (a) "that his IDR application would be processed in 22-25 days when the Department of Education required such applications to be processed within 10-15 days" and (b) "that the processing of his IDR application could be further delayed due to a 'high volume' of applications when, in fact, the Department of Education's applicable guidelines make no such exception." TAC, ¶ 169. Adjudicating the claims of proposed class members would require individualized inquiries into whether each member of the proposed class received similar communications and, per *Speerly*, whether they had been deceived

and allegedly damaged as a result. Such a determination is not possible on a class basis. *See Speerly*, 143 F.4th at 320. Further, causation will depend on individualized proof. *See, e.g., Williams v. Ford Motor Co.*, 192 F.R.D. 580, 585 (N.D. Ill. 2000) (denying class certification under ICFA because individual issues relevant to the element of proximate cause predominated).

### 2. Individualized Issues Predominate as to Plaintiffs' Contract-Based Claims (Count I and II)

Plaintiffs assert two contract-based claims based on Navient's (i) alleged breaches of its servicing contract with the Department of Education; and (ii) alleged breach of and/or interference with Plaintiffs' MPNs. TAC, ¶¶ 107-132. They summarily assert that questions regarding these claims are common issues for the proposed class members. Pls.' Mem. at 56. But this ignores that the Court will need to apply—and a jury will need to be instructed on—up to 50 different states' laws.[14] And even if the governing law were the same for all borrowers (and it is not), individual issues would predominate determinations of breach and damages under the borrowers' promissory notes.

---

[14] Plaintiffs further contend that "the existence of class members in multiple states weighs in favor of class treatment," Pls.' Mem. at 60, but they cite in support only a federal securities class action where state law was not at issue. *Id.* (citing *In re Honeywell Int'l Sec. Lit.*, 211 F.R.D. at 267).

### a.    The Court Would Need to Assess Choice of Law and Apply Disparate State Laws for Individual Borrowers

The promissory notes do not contain a state governing law clause but, instead, provide that "[a]pplicable state law . . . may provide certain borrower rights, remedies, and defenses in addition to those stated in the Note." *See, e.g.,* Ballard Promissory Note at 5 [ECF 29-2 at 9]. This requires the court "to conduct a difficult choice of law analysis – involving a consideration of the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, place of incorporation, and place of business of the parties – for each Class member." *Ritti v. U-Haul Int., Inc.*, 2006 WL 1117878, *14 (E.D. Pa. 2006). Plaintiffs have provided no choice-of-law analysis for their claims, meaning a choice-of-law determination for borrowers may involve the law of all 50 states.

Further, the differences between applicable state laws matter, as they prevent common resolution of the contract claims. *First*, the elements of the claims differ among states. For example, Pennsylvania jury instructions impose a materiality requirement; some others do not. *See Brown v. Grass*, 544 F. App'x 81, 83 (3d Cir. 2013).

*Second*, the requirements to satisfy elements differ among states. Colorado would require borrowers to prove that they performed, or were justified in not performing, under the contract to assert a claim. *See Ute Water Conservancy Dist.*

*v. Fontanari*, 524 P.3d 308, 316 (Colo. Ct. App. 2022).  Massachusetts, by contrast, would require them to prove only that they were willing and able to perform.  *477 Harrison Ave., LLC v. JACE Boston, LLC*, 134 N.E. 3d 91, 101 (Mass. 2019).  And Minnesota is stricter, requiring performance of all conditions precedent to establish breach.  *Park Nicollet Clinic v. Hamann*, 808 N.W. 2d 828, 833 (Minn. 2011).

*Third*, state laws differ in the means and quantum of evidence to prove breach.  "[T]here is 'a significant variation in the laws of the states with respect to the use of extrinsic evidence (including the types of extrinsic evidence that may be used to determine whether, as a matter of law, the contract language is ambiguous).'" *Ritti*, 2006 WL 1117878, at *14.  And *fourth*, material differences in state statutes of limitation will require separate inquiries about whether individuals' claims are time-barred or subject to tolling.  *See, e.g.*, Code of Ala. § 6-2-34 (six years); Fla. Stat. § 95.11 (five years); Cal. Code Civ. Proc. § 337 (four years); Md. Courts and Judicial Proceedings Code Ann. § 5-101 (three years).  Individually and in sum, these differences in the state laws applicable to the borrowers' contract-based claims render the claims unsuitable for class treatment.  *See Ritti*, 2006 WL 1117878 *14 (denying class certification where nationwide contract claims would require an "unimaginable inquiry" into state laws).

### b.    Individualized Issues of Fact Drive Plaintiffs'
### Contract-Based Claims

Class certification as to the contract claims is further "unsuitable" because "proof of the essential elements of the cause of action requires individual treatment []." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009).  Here, the promissory notes at issue raise individualized issues for the claimants, under the disparate state laws.  For example, to determine borrower performance under the MPN—a requirement that varies from state to state, *see supra*—the Court would need to assess whether borrowers paid their student loans as they became due or were otherwise in default and whether a borrower failed to comply with other provisions of the loans.  *See* MPN, Acceleration and Default Section [ECF 29-1 at 3].  These individualized inquiries are ill-suited for class treatment.  Further, the meaning of "ambiguous" disclosures regarding interest capitalization[15] may require resort to parol evidence (Report and Recommendation [ECF 218] at 28), which is handled differently under different states' law, leading to different inquiries and different results for different claimants.

---

[15] *See, e.g.*, Interest section of MPN [ECF 29-1 at 3] ("If I fail to make required payments of interest . . . during a period of . . .forbearance, I agree that the lender may capitalize such interest as provided under the Act."); Borrower's Statement, § 14 ("Interest accrues on all my subsidized FFELP loans during authorized forbearance periods . . .unless precluded by the Act, [and may] be capitalized (added to the principal of my loans) – unless I pay the interest as it accrues.").

### 3.    Individualized Issues Predominate As To Navient's Affirmative Defenses

The Third Circuit requires a district court to "examine whether the validity of an affirmative defense depends on 'facts and peculiar to each plaintiffs' case'" and instructs that "if a jury would have to look at facts peculiar to each plaintiff's case when assessing affirmative defenses, an inherently individual inquiry is required." *Arch v. Am. Tobacco Co., Inc.*, 175 F.R.D. 469, 490-91 (E.D. Pa. 1997). Here, affirmative defenses present individualized issues that preclude class certification. This is not surprising, given the highly individualized nature of each proposed class member's interactions with Navient and repayment history. *See supra* at Sections II.A-B.

### a.    Waiver

Waiver "is 'the intentional relinquishment of a known right.'" *Municipal Auth. of Westmoreland County v. CNX Gas*, 380 F. Supp. 3d 464, 470 (W.D. Pa. 2019). Navient's waiver defense implicates individualized issues arising from borrower interactions with Navient servicing agents. For example, Varno testified that, ███████████████████████████████████████████████████████

███████████████████████████████████████████████. *See* Deposition of Rebecca Varno ("Varno Dep."), ***Ex. 6*** hereto, at 51:21-52:8. Thus she has waived her claim challenging that placement. *See* Varno Dep. 52:3-8; *see also Innospec Fuel Specialties, LLC v. Isochem N.A., LLC*, 2012 WL 3682988, at *4

(D.N.J. 2012) (plaintiff waived claims challenging defendant's interpretation of agreement because plaintiff "appeared to concede to [defendant's] interpretation"). Application of the waiver defense would depend on the conduct of each borrower. Thus, regardless of whether or not Varno is ultimately found to have waived her claims, individualized inquiries would need to be performed as to each putative class member to determine if they waived their claim. *See, e.g., Barnes v. American Tobacco Co.*, 161 F.3d 127, 147-49 (3d Cir. 1998) (holding that individualized issues arising from affirmative defenses may defeat class certification).[16]

Similarly, Ballard admits she started making at least one payment under the standard repayment plan after she claims she should have remained in an IDR plan, and did not ask to have that amount refunded to her until years later. *See* TAC ¶ 62, 66. Ballard thus arguably waived her claim based on that payment. *See CNX Gas*, 380 F.Supp.3d at 470 (plaintiffs, by "remitting royalty payments" that "omitted post-production charges," waived their right to deduct those charges). Other borrowers in the proposed "Improper IDR Cancellation" class who paid a standard repayment amount may have decided to do so in order to reduce the total amount they would pay over the life of their loan. *See* Ang Report at 31. Individualized inquiries would

---

[16] The defense of equitable estoppel would likewise require an analysis of individual borrower interactions with Navient, including whether they consented to a discretionary forbearance. *See Polansky v. Vail Homes*, LLC, 2014 WL 6682473, *8 (W.D. Pa. 2014) (finding that equitable estoppel is based on "informal promises implied by one's words, deeds or representations" and presents an issue of fact).

be required of each putative class member to determine whether, in choosing to remit a standard payment after their partial financial hardship expired, they waived claims based on that payment. *See Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1176-77 (11th Cir. 2010) (noting "risk of voluminous and individualized extrinsic proof runs particularly high" in the face of "substantial affirmative defenses" to a breach of contract claim).

### b.    Failure to Mitigate

"To prove a failure to mitigate, a defendant must establish (1) reasonable actions the plaintiff ought to have taken, (2) that these actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." *Well Built Realty Corp. v. Leviton Manufacturing Co., Inc.*, 2025 WL 295778, *3 (W.D. Pa. 2025). "Failure to mitigate can be a 'fact-intensive inquiry[.]'" *Id.*; *see also Shelley v. AmSouth Bank*, 2000 WL 1121778, *11 (S.D. Ala. 2000) (denying certification on basis that bank's failure to mitigate defense could require individual assessments), *aff'd*, 247 F.3d 250 (11th Cir. 2001).

Here, Ballard admits that ███████████████████████████████ ███████████████████████████████. *See* 7/21/22 Deposition of Jill Ballard, *Ex. 7* hereto, at 34:1-7. Adjudicating Navient's failure to mitigate defense would require individual analysis of what putative borrowers did or would have done in connection with a refund. *See Grandalaski v. Quest Diagnostics, Inc.*,

767 F.3d 175, 185 (3d Cir. 2014) (finding lack of predominance where patients who were allegedly overbilled subsequently received refunds because "individual inquiries would be required to determine whether an alleged overbilling constituted unjust enrichment for each class member"); *see also* Deposition of Lisa Aton ("Aton Dep."), *Ex. 8* hereto, at 46:13-18 (█████████████████████████

██████████████████████████████████████████████████).

### c.    Statute of Limitations

Individualized inquiries would also be required to determine whether the claims of proposed class members are barred by the applicable statutes of limitations.[17]   Plaintiffs seek to assert claims going back to January 2012.   The limitations period for the Rosenthal Act claims is one year.   *See* Cal. Civ. Code, § 1788.30(f).   The statute of limitations for breach of contract claims will vary based on which state's law applies.   *See supra* Section IV.D.2.a; *see also*, *e.g.*, Cal. Civ. Proc. Code § 337 (four years); 735 Ill. Comp. Stat. Ann. 5/13-206 (ten years).   And the limitations periods for Plaintiffs' consumer protection claims are between three

---

[17] Although Navient did not plead statute of limitations in its Answer, courts have held a defendant does not waive an affirmative defense to the claims of absent class members by failing to assert them before certification.   *See*, *e.g.*, *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 542 (D. Minn. 2017) (holding defendants did not waive affirmative defense of consent as to putative class members and noting that "courts have permitted defendants to assert affirmative defenses applicable only to absent putative class members after the initial answer to a complaint").

and six years.[18]  When and to what extent each borrower discovered their payments allegedly increased or that accrued interest was capitalized is an individual issue that precludes a finding of predominance.  *See, e.g., Barnes*, 161 F.3d at 149 ("[W]e believe that determining whether each class member's claim is barred by the statute of limitations raises individual issues that prevent class certification.").

\* \* \*

In sum, individualized issues would overwhelm any purported common questions and Plaintiffs' class certification motion should be denied.  *See Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (affirming denial of class certification and holding "[c]ertification is inappropriate if the 'plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims.' ").

### E.    Plaintiffs Cannot Prove Damages On A Classwide Basis

Even if Plaintiffs could establish that common issues predominate over individual ones as to liability, certification still should be denied because Plaintiffs cannot establish classwide proof of damages.  The Supreme Court has made clear that "any model supporting a plaintiff's damages case must be consistent with its

---

[18] *See* 42 Pa.C.S.A. § 5527 (UTPCPL); Cal. Civ. Code Ann. § 1783 (West) (CLRA); CPLR 214(2); N.Y. Gen. Bus. Law § 349(h); *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 208-10 (2001) (NY GBL § 349); 815 Ill. Comp. Stat. Ann. 505/10a (ICFA).

liability case," and that a model which "does not even attempt" to measure damages attributable to the plaintiff's theory of liability "cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast*, 569 U.S. at 35.

### 1. Plaintiffs Fail To Establish a Reliable Method of Determining Damages on a Classwide Basis

It is Plaintiffs' burden to "prove each class member suffered damages as a result of [the defendant's] actions through classwide proof." *Harnish v. Widener University School of Law*, 833 F.3d 298, 368 (3d Cir. 2019). And to do so, they must establish that "a reliable method is available to prove damages on a classwide basis." *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 130 (E.D. Pa. 2015).

Here, Plaintiffs have not even attempted to carry this burden. The deadline to submit expert reports has long passed, and Plaintiffs have provided none—submitting only the CV of Amanda Kurzendoerfer, who they claim will testify at trial. A CV is obviously not evidence. It is not a damages methodology. And it provides the Court with nothing to evaluate.

The Third Circuit has squarely rejected Plaintiffs' approach of promising future expert analysis in lieu of actual proof. In *In re Blood Reagents Antitrust Litigation*, the court held that "a plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless

the plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in Daubert."  783 F.3d 183, 187 (3d Cir. 2015).  Courts require "actual, not presumed, conformance" with Rule 23 requirements, and "a party's assurance to the court that it intends or plans to meet the requirements is insufficient."  *Id*.; *see Hydrogen Peroxide*, 552 F.3d at 321 (plaintiff must do more than assert intention to present evidence in a manner that satisfies predominance).

Courts deny certification on precisely this basis.  For example, in *In re Lincoln National COI Litigation*, the court emphasized that "when expert testimony relevant to class certification is challenged, the Court may rely on it only if it satisfies the requirements set forth in *Daubert* and Federal Rule of Evidence 702."  620 F. Supp. 3d 230, 241 (E.D. Pa. 2022).  The court excluded the plaintiffs' actuarial expert for "merely 'assum[ing]'" that policies were similar without having "analyzed or reviewed the assumptions or the experience that were the basis for the inputs into the model," *id*. at 246, and—without reliable common proof—held that plaintiffs failed to satisfy Rule 23 and denied certification.  Here, there is no expert testimony to evaluate at all—only a promise that testimony will be forthcoming.  Plaintiffs' arguments, resting on assumptions that cannot withstand even modest scrutiny, fare no better.

By failing to serve an expert report by the required deadline, Plaintiffs deprived Navient of the opportunity to challenge any expert methodology and

deprived the Court of the ability to conduct the rigorous analysis required by *Comcast*. *See also In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 187-88 (3d Cir. 2020) (vacating grant of class certification where district court failed to "resolve key factual disputes, assess competing evidence, and weigh conflicting expert testimony").

### 2.    Damages Would Depend on Myriad Individual Inquiries

Nor can Plaintiffs present a credible model for classwide damages, as the evidence establishes that the damages Plaintiffs seek—statutory damages, interest capitalization and IDR credits—must be determined at the individual borrower and loan level.  And critically, many putative class members suffered no damages at all.

### a.    Statutory Damages Rest on Individualized Assessments of "Ascertainable Loss"

Plaintiffs seek statutory damages under the UTPCPL, asserting putative class members can recover when they have suffered no actual damages or where damages are not "readily quantifiable." Pls.' Mem. at 61, 65. This argument fails.  *First*, although the UTPCPL provides for statutory damages of $100 when actual damages are less than that, 73 P.S. § 201-9.2, a plaintiff must still demonstrate "an ascertainable loss as a result of the defendant's prohibited action." *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001).  Whether a plaintiff suffered an "ascertainable loss" is an individualized inquiry that must be established from the factual circumstances surrounding each case . . . ." *Agliori v. Metropolitan Life Ins. Co.*, 879

A.2d 315, 321 (Pa. Super. 2005). Plaintiffs and putative class members who have not suffered a loss cannot receive statutory damages or any relief under the UTPCPL. *See Benner v. Bank of Am., N.A.*, 917 F.Supp.2d 338, 360 (E.D. Pa. 2013) (dismissing UTPCPL claim due to "inability to show an 'ascertainable loss of money or property' required by the statute").

*Second*, seeking to escape their obligation to supply a reliable classwide damages methodology, Plaintiffs assert that "Rule 23 does not require quantification of actual damages when statutory damages are available." *See* Pls.' Mem. at 62. But they cite no support for that sweeping assertion. Moreover, in the UTPCPL claim, Plaintiffs summarily allege that they and members of the proposed class "suffered the same sizeable damages." TAC ¶ 150. Plaintiffs are seeking thousands of dollars in alleged damages for themselves. *See, e.g.,* Pls.' Mem. at 26 (█████████████ ███████████████████████). That they would so readily consign putative class members to $100 recoveries raises serious adequacy issues. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) ("[A] court might find that Knowles is an inadequate representative due to the artificial cap he purports to impose on the class' recovery."); *Back Doctors Ltd. v. Metropolitan Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830-31 (7th Cir. 2011) (holding class representative has fiduciary duty not to "throw away what could be a major component of the class's recovery"), *cited with approval in Knowles*, 568 U.S. at 594; *see also In re Nat. Football League*

*Players' Concussion Injury Litig.*, 307 F.R.D. 351, 376 (E.D. Pa. 2015) ("Benefits awarded to some class members, but not others, without adequate justification may indicate that other class members were inadequately represented.").

Plaintiffs rely on *Chakejian v. Equifax Info Servs., LLC*, 256 F.R.D. 492, 501 (E.D. Pa. 2009), but that case is readily distinguishable. There, the court found statutory damages permissible because "this is not a case in which the amount of the damage award is likely to differ from consumer to consumer." *See id.* Here, in contrast, alleged damages for the putative class members will vary widely. The spreadsheet Plaintiffs produced through the Declaration of Lisa Aton ("Aton Declaration")[19] purports t█████████████████████████████████████

███. *See* Aton Decl., ***Ex. 9*** hereto, at Attachment A. Where, as here, alleged ascertainable loss varies dramatically among putative class members, individual inquiries predominate and class certification is inappropriate. *See Comcast*, 569 U.S. at 38 .

---

[19] Plaintiffs produced this declaration after the close of class discovery in this matter. Ms. Aton is an employee at Maximus. The Aton Declaration included a spreadsheet of certain ██████████████████████████████████████████████████████████
███████████████████████████ It merely stated that ███████████████
████████████████████" Aton Decl. ¶ 7.

### b.   Damages from Allegedly Improper Standard Repayments and Interest Capitalization Also Cannot Be Determined on a Classwide Basis

Plaintiffs summarily propose three calculations to compensate members of the proposed "Improper IDR Cancellation Class" and "Modified Forbearance Class." *First*, Plaintiffs propose that borrowers in the "Improper IDR Cancellation Class" who made a payment under the standard repayment plan amount would receive the difference between that amount and their IDR payment. *See* Pls.' Mem. at 62.  But this calculation is fatally flawed.  The only expert who has provided evidence in this action—Princeton-trained and CFPB-tenured economist Dr. Xiaoling Ang— explained that this ███████████████████████████████████████████

███████████████████████████████████████. *See* Ang Report at 28.

Plaintiffs' proposed method ██████████████████████████████████

███████████████████████████████████████████████████████████

███████████ *See id*. ¶¶ 49-53.

The second and third proposed damages calculations relate to interest capitalization, the primary damages Plaintiffs seek in the case.  For borrowers with Navient-owned loans, Plaintiffs ask that Navient "reverse the improper interest capitalization."  *See* Pls.' Mem. at 62.  For borrowers with ED-owned loans, Plaintiffs propose multiplying the amount capitalized by the borrower's interest rate and the number of post-capitalization years prior to eligibility for IDR loan

forgiveness.  *See id*. at 62-64.  But courts, witnesses, and all expert evidence make clear that interest capitalization must be assessed on an individual, account-by-account basis.

Courts have recognized that interest capitalization is an individualized inquiry and have denied certification on that basis.  *Dawson v. Great Lakes Educational Loan Services., Inc.*, is instructive.  2016 WL 5415096 (W.D. Wis. 2016).  That case involved a student loan borrower's claims challenging interest capitalization during forbearance periods.  The court denied certification for damages because the proposed class included individuals "for whom the conclusion of this forbearance period was not a triggering event for interest capitalization purposes." *Id*. at *2.  The court explained that a class cannot be certified where it sweeps in borrowers who were not subject to capitalization and therefore suffered no injury.  *Id*. at *2–3.

The same defect is present here.  Plaintiffs' theory turns on whether a particular capitalization event was triggered and whether interest was in fact capitalized as a result—but all evidence shows that these issues cannot be resolved on a classwide basis.  All fact witnesses concur that interest capitalization can vary borrower-to-borrower, requiring review of individual accounts.  Patrick Theurer and Jeffrey Stine testified that ████████████████████████████████████ ████████████████████████████.  NSL's Responses and Objections to Plaintiffs' Discovery Requests [ECF 119-2 at 19]; Stine Dep. at 97:18-25.  And Lisa

Aton from Maximus █████████████████████████████████

██████████████████████. Aton Dep. 46-:22-47:2.  Indeed, Aton testified that ██

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████." *Id*. at 13:19-24, 25:24-26:18, 46:9-12.

Further, Dr. Ang analyzed this issue in a 44-page report and ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████.  Ang Report at 28-41.  Rather than model

damages or marshal evidence in support, Plaintiffs blithely assert that interest

capitalization could simply be "reversed" for borrowers with Navient-owned loans.

*See* Pls.' Mem. at 62-64.  This "model" is not supported by any credible evidence—

and indeed, flies in the face of judicial precedent, witness testimony, and expert

analysis.  Simply reducing a borrower's principal balance by the amount of the

allegedly improper interest capitalization would not account for any interest that

accrued on the loan as a result of that capitalization.  Plaintiffs provide no method

for removing such interest from the loan balance, █████████████████████████

██████████████████████████████████████████. *See* Ang Report at 32-33.

Plaintiffs' damages theory for Direct Loan borrowers assumes all capitalized interest remains outstanding and unamortized throughout the life of the loan. █

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████. Ang Report at 30-31.

Plaintiffs' flawed assumptions require denial of class certification. In *In re Processed Egg Products Antitrust Litigation*, the court rejected "a model that assumes, rather than measures" the relevant variables, emphasizing that while "[c]alculations need not be exact," this "does not imply that any method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be. Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity." 312 F.R.D. at 162; *see also*, *e.g.*, *Franco v. Connecticut Gen. Life Ins. Co.*, 299 F.R.D. 417, 430 (D.N.J. 2014) (denying class certification where plaintiffs' proposed damages model did not align with governing plan language and therefore failed *Comcast*'s requirement that classwide damages be tied to theory of liability) *aff'd*, 647 F. App'x 76 (3d Cir. 2016); *In re Lamictal Direct Purchaser Antitrust Litig.*, 2021 WL 2349828, at *21

(D.N.J. 2021) (denying Rule 23(b)(3) certification where plaintiffs' expert failed to establish injury could be proven with common proof). Here, Plaintiffs have not submitted any reliable model at all, much less one that properly measures damages.

### c. Eligibility for IDR Credits Would Depend on Individualized Inquiries

Plaintiffs seek IDR credits for members of the proposed "Improper Delay Class" with Navient-owned loans, to compensate them for time spent in forbearance that did not count towards loan forgiveness. *See* Pls.' Mem. at 16-17, 19, 65. At least one court has determined in a case involving Navient that a plaintiff's injury in connection with loan forgiveness only arises once he makes all required payments to obtain loan forgiveness. *See Meenan v. Navient Corp.*, 2020 WL 5057654, *2 (D. Ariz. 2020) (holding plaintiff's injury did not arise until she made requisite number of payments to qualify for loan forgiveness). Other courts have recognized that class members "do not have standing to sue until they have suffered the actual injury alleged, *i.e.* making more than the required 120 payments" to qualify for loan forgiveness. *In re Fedloan Student Loan Serv. Litig.*, 2025 WL 539681, *8-9 (E.D. Pa. 2025); *see also Lyons v. Great Lakes Educ. Loan Servs., Inc.*, 2022 WL 602972, *8 (D.N.J. 2022) (same, collecting cases). These courts have reasoned that a delay in loan forgiveness is "purely hypothetical" as borrowers "may or may not make all of their loan payments on time over the next few years." *Fedloan*, 2025 WL 539681, at *8.

Here, Plaintiffs have 

███████████████. *See* 9/11/25 Deposition of Jill Ballard, ***Ex. 10*** hereto, 40:9-16, 44:8-13 (testifying that ██████████████████████████

██████████████████████████████████████████

██); Varno Dep. 24:15-18 (testifying ████████████████████

██████████); Deposition of Mark Pokorni, ***Ex. 11*** hereto, 24:24-25:4 (testifying that he did not ██████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████. *See*

Ang Report at 42. And those that were ineligible or had not applied would lack standing, providing an additional basis to deny certification. *See supra* Section IV.B.

### d.    Many Putative Class Members Suffered No Damages At All

Finally, Plaintiffs' damages theories fail because many putative class members suffered no harm at all. *See Huber*, 84 F.4th at 156 (noting that "predominance concerns can arise when unnamed class members must submit individualized evidence to satisfy standing and recover damages" and remanding for inquiry into standing of proposed class members)[20]; *see also supra* at Section IV.B.

---

[20] On remand, the plaintiff opted not to pursue her class claims. *See Huber v Simon's Agency, Inc.*, 2025 WL 1710045, *8 (E.D. Pa. 2025) (after remand for individualized inquiries into standing of absent class members, court and parties "spent ten months

Here, the only "evidence" of class members' damages is a spreadsheet attached to the Aton Declaration, 

. *See* Ang Report at 39-40.

### 3.    Plaintiffs' Challenges to Dr. Ang's Opinions Fail

Having offered no classwide damages model or expert testimony, Plaintiffs ask the Court to disregard Dr. Ang's testimony to salvage their flawed damages theory.  Each attempt falls flat.

*First*,

. *See* Ang Report at 21.

attempting to heed the Court of Appeals' instructions" and plaintiff "decided not to re-file a class certification motion").

██████ . *See id*. ¶ 36(1)-(2). ████████████████████████████

████████████████████████████████████████████████████

███████████     *See* Stine Dep. 243:14-24.     Determining the cause of any capitalization event requires reviewing each borrower's servicing file and correspondence.



████████████████████████████████████████████████"

Pls.' Mem. at 67-68. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ . *Id.* at 39-47. ████████████████████████

███████████████████████████ Ang Report at 19-20. ███████

████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶44.

████████████████████████████████████████████████

████████████████████████████████████████ . *See, e.g.*, *id.* ¶ 45 (f████████████████████████████████████

█████████████████████████████████████ ).



. *See* Pls.' Mem. at 68-69.

. *See supra* at Sections IV.A-B; *see also* Ang Report at 31-33.[21]

.

*Fourth*, Plaintiffs assert that differences in damages do not preclude certification. This misses the point. The disparate inquiries and need for loan-level analysis reveals not only that class members' damages will differ, but that Plaintiffs

_____

[21]

.

Ang Report at 35.

lack a viable method for proving damages on a classwide basis. For this reason, class certification should be denied.  *Comcast*, 569 U.S. at 35.  The cases on which Plaintiffs rely are distinguishable.  *See Neale v. Volvo Cars of N. Am.*, 794 F.3d 353, 356-57 (3d Cir. 2015) (involving alleged damages from uniform design defect); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005) (vacating approval of class settlement and directing district court to consider predominance of individual damages on remand).[22]

████████████████████████████████████████████

████████████████████████████████████████. *See* Pls.' Mem. at 72.  █

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████. Ang Report at 28.  ████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[22] Plaintiffs cite *In re Fedloan*, 2025 WL 539681 for the proposition that "Plaintiffs' damages model has already proven workable." Pls.' Mem. at 72.  But there, the court dismissed all claims for lack of standing or mootness.  *In re Fedloan,* 2025 WL 539681, at *15.  The court never certified a class, reached the merits, or evaluated or approved any damages methodology.



█████████████████████████████████████████████. Ang Report at

32.[23]

t. *See* Ang Report ¶¶ 33, 36(e). ████

███████████████████████████████████████████. *Id.* ¶ 36.

### F.    A Class Action Is Not Superior to Individual Borrower Actions

Rule 23(b)(3) requires that class treatment be "superior to other available methods for fairly adjudicating the controversy."  The superiority requirement asks whether fairness and efficiency would be best served in a class action such that the benefits of a class action outweigh "alternative methods of adjudication."  *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 309 (3d Cir. 2015).  To that end, a court must analyze: "(a) the class members' interest in individually controlling the prosecution of separate actions; (b) the extent and nature

---

[23] ████████████████████████████████████████████████

████████████████████████████. Pls.' Mem. at 73. These competing scenarios highlight borrower variability and reinforce Dr. Ang's point: ████████████

████████████████████████████████████.

of any similar litigation already commenced by class members; (c) the desirability of concentrating litigation in a particular forum; and (d) the difficulties likely to be encountered in the management of the class action." *Id*. (citing Fed. R. Civ. P. 23(b)(3)).

Here, adjudicating the proposed class claims would be unmanageable. The need for individual inquiries relating to each borrower's claims and defenses "undermine[s] any benefit class treatment could provide." *Dukich,* 343 F.R.D. at 309. Because the elements of Plaintiffs' claims and Navient's defenses are not susceptible to classwide proof, the Court would need to hold hundreds of thousands of mini-trials to adjudicate the claims of each proposed class member and Navient's defenses. *See supra* Sections IV.D-E. The nationwide classes also pose additional case management issues because of the choice of law issues discussed above. *See supra* Section IV.D.2.a; *see also Powers v. Lycoming Engines*, 272 F.R.D. 414, 427 (E.D. Pa. 2011) ("Given the difficult, if not, impossible burden of instructing the jury for the different laws of the several states, a nationwide class action cannot pass the superiority test.").

If Plaintiffs believe that administering their proposed classes is feasible, they should have submitted a trial plan. *See Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 186 n.7 (3d Cir. 2006) ("[P]re-certification presentation of . . . trial plans represents an advisable practice within the class action arena"); *see*

*also* Manual for Complex Litigation (Fourth) § 22.93 (2004) ("A trial plan addressing each element of the claims can help to identify the nature and extent of the individualized proof required."). Plaintiffs' failure to do so undermines the Court's ability to conduct the "rigorous analysis" required to assess superiority. *See Kirchner v. Wyndham Vacation Resorts, Inc.*, 2024 WL 4188865, at *8 (D. Del. 2024) (denying class certification under Rule 23(b)(3) and noting that plaintiffs "had the opportunity to submit a trial plan for about nine months" but did not).

Finally, this is not the type of negative value lawsuit that justifies class treatment. *See Amchem*, 521 U.S. at 617 (noting purpose of class action "is to overcome the problem that small recoveries do not provide the incentive for" individual litigation). Superiority is defeated superiority here given that Plaintiffs seek ███ (Ballard) and ███ (Varno and Pokorni) under consumer protection statutes that permit prevailing plaintiffs to recover attorney's fees. *See* 73 Pa. Stat. § 201-9.2(a); 815 Ill. Comp. Stat. 505/10a(c); Cal. Civ. Code § 1788.30(c); N.Y. Gen. Bus. Law § 349(h). Borrowers can and do regularly pursue claims relating to the servicing of their loans in individual suits.[24] This is not the sort of case where

---

[24] *See, e.g., Klyman v. Ed Fin. Servs.*, No. 1:21-CV-81-MOC (W.D.N.C. 2021) (alleging violations of state consumer protection statute arising from student loan debt collection); *Simpson v. Navient Sols.*, No. 4:24-cv-02084 (S.D. Tex. June 3, 2024) (alleging breach of contract, payment misapplication, and Texas DTPA violations); *Matson v. Edfinancial Services LLC*, No. 14-CV-1052-JPS (E.D. Wis. 2014) (alleging negligent and willful violations of FCRA); *Walters v. Navient Corp.*, No. 6:22-cv-02304 (M.D. Fla. Dec. 12, 2022) (alleging forbearance steering and

no rational individual plaintiff would be willing to bear litigation costs. *See Suchanek v. Sturm Foods, Inc*., 764 F.3d 750, 760 (7th Cir. 2014).

### G.    Any Injunctive Relief Class Fails

While Plaintiffs plead classes under Rule 23(b)(2), TAC ¶ 95, they did not move to certify an injunctive class.  Plaintiffs failed to allege that there is a substantial likelihood they will suffer injury in the future, and it is well-settled that Rule 23(b)(2) is not a vehicle for predominately retrospective monetary relief. *See, e.g., Dukes*, 564 U.S. at 360.  Accordingly, the Court should deny certification under Rule 23(b)(2).

---

omissions regarding income-driven repayment options); *Saab v. Navient Corp*., No. 2017-CH-08178 (Ill. Cir. Ct. 2017) (alleging payment misapplication, accounting failures, and violations of ICFA).  As discussed above, the other plaintiffs who filed similar putative class action lawsuits to this one settled on an individual, non-class basis. *See supra* Section II.E.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Class Certification should

be denied.

Dated: February 24, 2026                    Respectfully submitted,


                                      /s/ Daniel T. Brier
                                      Daniel T. Brier
Donna A. Walsh
Richard L. Armezzani
Myers Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
(570) 342-6100
dbrier@mbklaw.com
dwalsh@mbklaw.com
rarmezzani@mbklaw.com

Jonathan Marmo
Holland & Knight LLP
1650 Market Street, Suite 3300
Philadelphia, PA 19103
(215) 252-9600
jonathan.marmo@hklaw.com

Cory Eichhorn
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
(305) 374-8500
cory.eichhorn@hklaw.com

*Attorneys for Defendants Navient Corporation, Navient Solutions, Inc. and Navient Solutions, LLC*

65

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Daniel T. Brier, hereby certify that the foregoing Brief in Opposition contains 14,962 words as computed by Microsoft Office Word.

/s/ Daniel T. Brier
Daniel T. Brier

Date:  February 24, 2026

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Memorandum in Opposition to Class Certification was served upon all counsel of

record via electronic mail on this 24th day of February 2026:

> Carlo Sabatini
> Sabatini Law Firm, LLC
> 216 N. Blakely St.
> Dunmore, PA  18512
>
> Daniel A. Edelman
> Cassandra P. Miller
> Edelman, Combs, Latturner & Goodwin, LLC
> 20 South Clark Street, Suite 1500
> Chicago, IL  60603
>
> Anthony Fiorentino
> Fiorentino Law Offices Ltd.
> 432 N. Clark St., Suite 202
> Chicago, IL  60654
>
> *Attorneys for Plaintiffs*

/s/ Daniel T. Brier
Daniel T. Brier
