# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JILL BALLARD, REBECCA VARNO, and ）
MARK POKORNI, on behalf of themselves ）
and the class members described herein, ）
                              ）
        Plaintiff,              ）  No. 3:18-cv-00121-JFS-PJC
                              ）
      vs.                   ）  Judge Joseph F. Saporito, Jr.
                              ）
NAVIENT CORPORATION,         ）  **Magistrate Judge Phillip J. Caraballo**
NAVIENT SOLUTIONS, INC., AND   ）
NAVIENT SOLUTIONS, LLC,      ）
                              ）
        Defendants.         ）
                              ）

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
## <u>FOR CLASS CERTIFICATION</u>

Anthony Fiorentino
**FIORENTINO LAW OFFICE**
6119 North Kenmore Ave., Ste. 410
Chicago, IL 60660
(312) 305-2850
anthony@fiorentinolaw.com


Carlo Sabatini, PA 838311
**SABATINI LAW FIRM, LLC**
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
ecf@bankruptcypa.com

Daniel A. Edelman
Tara L. Goodwin
**EDELMAN, COMBS,
LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
Phone (312) 739-4200
dedelman@edcombs.com
tgoodwin@edcombs.com

**Table of Contents**

TABLE OF AUTHORITIES ........................................................................................v

I.    INTRODUCTION.........................................................................................1

II.   RELEVANT BACKGROUND .....................................................................3

    A.   Retroactive forbearances ....................................................................3

    B.   Capitalizing past-due interest .............................................................5

    C.   Factual background..............................................................................6

        1.   Navient's forbearance protocols...............................................6

        2.   Varno's 2015 forbearances.......................................................8

        3.   Varno's 2016 forbearances.......................................................8

III.  ARGUMENT................................................................................................9

    A.   Varno's discretionary forbearances were improper .............................9

    B.   Capitalization of past-due interest was improper..............................10

    C.   Navient misrepresented the effects of retroactive forbearance .................11

        1.   Notice requirements for forbearances ....................................11

        2.   Navient's forbearance protocols.............................................12

        3.   Varno's confirmation letters...................................................13

        4.   Navient's disclosures were materially deceptive ...................15

            a.   No disclosure that past-due interest would be capitalized..........15

            b.   No disclosure of a capitalization date .........................................16

            c.   The pre-recorded message misled IDR applicants .....................16

    D.   Navient's reliance arguments are unpersuasive ................................17

        1.   Reliance defenses do not bar certification .............................17

        2.   The applicable statutes do not require reliance......................18

        3.   Reliance can be proved on a classwide basis ........................20

    E.   Pokorni's class suffered damages......................................................22

    F.   Administrative forbearances are not limited .....................................24

    G.   Plaintiffs agree to the definitions in the TAC ...................................25

    H.   Damages are susceptible of classwide proof.....................................26

|   |   |   |   |   |
|---|---|---|---|---|
|   | 1. | Aton's deposition testimony | ............................................................. | 28 |
|   | 2. | The relevant transactions caused interest capitalization | .................... | 29 |
|   | 3. | Maximus performed no manual review | ............................................. | 30 |
|   | 4. | The searches excluded refunds | .......................................................... | 30 |
| I. | Navient's standing argument is unpersuasive | | ........................................... | 34 |
|   | 1. | Procedural history | ............................................................................. | 34 |
|   | 2. | Navient can extract capitalization figures | ........................................ | 35 |
|   | 3. | Navient's standing argument is baseless | ........................................... | 36 |
|   |   | a. | Uninjured borrowers can be excluded | 36 |
|   |   | b. | Class definitions need not include damages | 37 |
|   | 4. | Dawson does not support Navient | ...................................................... | 39 |
|   |   | a. | Procedural history | 39 |
|   |   | b. | Navient's reliance on Dawson is misplaced | 40 |
| J. | Variation in repayment plans is irrelevant | | ............................................... | 42 |
| K. | Ballard's class is not overinclusive | | .......................................................... | 42 |
| L. | Navient's reliance on Newton is misguided | | .............................................. | 44 |
| M. | Defendants' damages arguments are unconvincing | | .................................. | 45 |
|   | 1. | Navient misreads Comcast | ................................................................. | 46 |
|   | 2. | Expert testimony is not required | ....................................................... | 46 |
|   | 3. | Plaintiffs' expert renders this case manageable | ............................... | 48 |
|   | 4. | Navient misapplies anti-trust cases | .................................................. | 49 |
|   | 5. | Account corrections are feasible | ...................................................... | 50 |
|   | 6. | Availability of statutory damages supports certification | .................. | 51 |
|   |   | a. | Class members have ascertainable losses | 51 |
|   |   | b. | Actual damages need not be quantifiable | 52 |
|   |   | c. | Navient's adequacy argument is baseless | 54 |
|   |   | d. | Variations in damages are irrelevant | 56 |
|   | 7. | Navient's arguments involving amortization are unconvincing | ........ | 57 |
|   | 8. | Navient's arguments rely on antitrust cases | .................................... | 58 |
| N. | Contract claims are suitable for class treatment | | ..................................... | 59 |

O.  Statute-of-limitations defenses do not defeat predominance ....................62

P.  Choice-of-law issues do not defeat predominance...................................64

Q.  Borrower conduct is irrelevant .................................................................65

R.  Navient misconstrues the waiver doctrine.................................................66

S.  Defendants fail to rehabilitate their expert ................................................67

T.  The manageability requirement is satisfied................................................68

U.  There is insufficient incentive for individual litigation.............................69

V.  There is no overlap with the CFPB or AG settlements ............................70

W.  The lack of similar litigation supports certification .................................71

IV.  CONCLUSION...............................................................................................72

# Table of Authorities

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997). ...................................................................................67

*Ashby v. Farmers Ins. Co. of Oregon,*
  592 F. Supp. 2d 1307 (D. Or. 2008).......................................................57

*Barnes v. Am. Tobacco Co.,*
  161 F.3d 127 (3d Cir. 1998). ............................................................ 66, 67

*Bateman v. Am. Multi-Cinema, Inc.,*
  623 F.3d 708 (9th Cir. 2010).................................................................58

*Belfiore v. Procter & Gamble Co.,*
  311 F.R.D. (E.D.N.Y. 2015),...............................................................57

*Blandina v. Midland Funding, LLC,*
  303 F.R.D. 245 (E.D. Pa. 2014). ........................................................54

*Breitman v. Xerox Educ. Servs., LLC,*
  2014 WL 5364103 (S.D.N.Y. 2014). ...................................................47

*Buffington v. Progressive Advanced Ins. Co.,*
  342 F.R.D. 66 (S.D.N.Y. 2022)...........................................................51

*Butler v. Sears, Roebuck & Co.,*
  727 F.3d 796 (7th Cir. 2013)...............................................................60

*Byrd v. Aaron's Inc.,*
  784 F.3d 154 (3d Cir. 2015) ................................................................41

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC,*
  310 F.R.D. 69 (S.D.N.Y. 2015)...........................................................50

*Carrow v. FedEx Ground Package Sys., Inc.,*
  No. CV 16-3026 (RBK/JS), 2019 WL 7184548 (D.N.J. Dec. 26, 2019) ..... 65, 75

*Carson P. ex rel. Foreman v. Heineman,*
  240 F.R.D. 456 (D. Neb. 2007)...........................................................45

*Chakejian v. Equifax Info. Servs. LLC,*
   256 F.R.D. 492 (E.D. Pa. 2009) ................................................................60

*Chamberlan v. Ford Motor Co.,*
   402 F.3d 952 (9th Cir.2005) ....................................................................73

*Charpentier v. Godsil,*
   937 F.2d 859 (3d Cir. 1991) ......................................................................5

*Chin v. Chrysler Corp.,*
   182 F.R.D. 448 (D.N.J. 1998) ..................................................................66

*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013) ........................................................................... 50, 63

*Compagine des Bauxites v. Argonaut–Midwest Ins. Co.,*
   880 F.2d 685 (3d Cir. 1989) ....................................................................69

*Connick v. Suzuki Motor Co.,*
   675 N.E.2d 584 (1996). ............................................................................21

*Dawson v. Great Lakes Educ. Loan Servs., Inc.,*
   327 F.R.D. 637 (W.D. Wis. 2018) ................................................... passim

*Dawson v. Great Lakes Educ. Loan Servs., Inc.,*
   No. 15-cv-475, 2021 WL 1174726 (W.D. Wis.) ................................ 5, 10, 32, 39

*Dawson v. Great Lakes Educ. Loan Servs., Inc.,*
   No. 15-cv-475, 2016 WL 5415096 (W.D. Wis. Sept. 2016) ..............................38

*De Leon-Granados v. Eller & Sons Trees, Inc.,*
   497 F.3d 1214 (11th Cir. 2007) ................................................................57

*Fabricant v. Sears Roebuck,*
   202 F.R.D. 310 (S.D. Fla. 2001) ....................................................... 60, 76

*Finberg v. Sullivan,*
   634 F.2d 50 (3d Cir.) ...............................................................................44

*Franco v. Connecticut Gen. Life Ins. Co.,*
   647 F. App'x 76 (3d Cir. 2016) ................................................................62

*Grandalaski v. Quest Diagnostics*, *Inc.*,
767 F.3d 175 (3d Cir. 2014),................................................................37

*Hassine v. Simon's Agency*, *Inc.*,
No. CV189031FLWTJB, 2021 WL 2646990 (D.N.J. Apr. 29, 2021)................54

*Huber v. Simon's Agency*, *Inc.*,
84 F.4th 132 (3d Cir. 2023),................................................................42

*In re Blood Reagents Antitrust Litig.*,
783 F.3d 183 (3d Cir. 2015) ................................................................53

*In re Checking Acct. Overdraft Litig.*,
286 F.R.D. 645 (S.D. Fla. 2012) ..........................................................53

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*,
795 F.3d 380 (3d Cir. 2015) ................................................................54

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015)....................................................... 56, 63

*In re Fedloan Student Loan Servicing Litig.*,
No. MDL 18-2833, 2025 WL 539681 (E.D. Pa. Feb. 18, 2025). ......................27

*In re Frescati Shipping Co.*,
886 F.3d 291 (3d Cir. 2018). ................................................................68

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995) ..................................................................65

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) ........................................................... 70, 75

*In re Lamictal Direct Purchaser Antitrust Litig.*,
2021 WL 2349828 (D.N.J. 2021)..........................................................62

*In re Lamictal Direct Purchaser Antitrust Litig.*,
957 F.3d 184 (3d Cir. 2020). ................................................................53

*In re Linerboard Antitrust Litig.*,
305 F.3d 145 (3d Cir. 2002) ......................................................... 20, 67, 69

*In re Marriott Int'l, Inc.*, *Customer Data Sec. Breach Litig.*,
341 F.R.D. 128 (D. Md. 2022) ................................................................ 54, 59, 63

*In re Mushroom Direct Purchaser Antitrust Litig.,*
319 F.R.D. 158 (E.D. Pa. 2016) ..........................................................................41

*In re Processed Egg Prods. Antitrust Litig.*,
312 F.R.D. 124 (E.D. Pa. 2015) ..........................................................................62

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ................................................................................21

*In re Sterten,*
546 F.3d 278 (3d Cir. 2008). ................................................................................5

*In re Warfarin Sodium Antitrust Litig.,*
391 F.3d 516 (3d Cir. 2004) ........................................................................ 23, 70

*Innospec Fuel Specialties, LLC v. Isochem N. Am.*, *LLC,*
No. CIV. 10-1642, 2012 WL 3682988 (D.N.J. Aug. 24, 2012)...........................70

*Johnson v. Community Bank*, N.A.,
2013 WL 6185607 (M.D. Pa. 2013)....................................................................55

*Jordan v. Commonwealth Fin. Sys.*,
237 F.R.D. 132 (E.D. Pa. 2006). .........................................................................54

*Keele v. Wexler,*
149 F.3d 589 (7th Cir. 1998)...............................................................................59

*Koffman v. Smith,*
453 Pa. Super. 15, 682 A.2d 1282 (Pa. Super. Ct.1996)....................................69

*Krell v. Prudential Ins. Co. of Am.,*
148 F.3d 283 (3d Cir.1998) .................................................................................65

*Kurtz v. Kimberly-Clark Corp.*,
321 F.R.D. 482 (E.D.N.Y. 2017)..........................................................................52

*Lisowski v. Walmart Stores, Inc.*,
552 F. Supp. 3d 519 (W.D. Pa. 2021). ............................................................ 68, 69

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ...............................................................64

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ..............................................................47

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015) ......................................................... 41, 50

*New Jersey Carpenters Health Fund v. Residential Cap., LLC*,
  No. 08 CV 5093 HB, 2013 WL 6839093 (S.D.N.Y. Dec. 27, 2013)...................56

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154, 187-89 (3d Cir. 2001).....................................................49

*Nigro v. Pennsylvania Higher Education Assistance Agency*,
  2020 WL 5369980 (M.D. Pa. 2020).....................................................27

*Patterson v. Fid. Nat'l Title Ins. Co.*,
  No. GD-03-021176 (Pa. Ct. Com. Pl. Dec. 29, 2015),................................ 22, 23

*Petersen v. Costco Wholesale Co.*,
  312 F.R.D. 565 (C.D. Cal. 2016)..........................................................66

*Powers v. Credit Mgmt. Servs., Inc.*,
  313 F.R.D. 103 (D. Neb. 2016) ...........................................................34

*Rabin v. Google LLC*,
  787 F. Supp. 3d 934 (N.D. Cal. 2025).....................................................51

*Robinson v. Johnson*,
  313 F.3d 128 (3d Cir. 2002) ...............................................................68

*Santoro v. Aargon Agency, Inc.*,
  252 F.R.D. 675 (D. Nev. 2008),...........................................................59

*Santos v. Healthcare Revenue Recovery Grp., LLC.*,
  90 F.4th 1144, (11th Cir. 2024),..........................................................58

*Serrano v. Sterling Testing Sys., Inc.*,
  711 F. Supp. 2d 402 (E.D. Pa. 2010)......................................................60

ix

*Shields v. Consolidated Rail Corp.*,
    810 F.2d 397 (3d Cir. 1987) ......................................................................69

*Sos v. State Farm Mut. Auto. Ins. Co.*,
    No. 617CV890ORL40LRH, 2020 WL 5534483, (M.D. Fla. July 8, 2020) ........54

*Starr v. Chicago Cut Steakhouse, LLC*,
    75 F. Supp. 3d 859 (N.D. Ill. 2014)..............................................................50

*Stutman v. Chem. Bank*,
    731 N.E.2d 608 (2000) ................................................................................21

*Suchanek v. Sturm Foods, Inc.*,
    No. 11-CV-565-NJR-RJD, 2017 WL 3704206 (S.D. Ill. Aug. 28, 2017) ...........57

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273, 301 (3d Cir. 2011) ................................................................64

*Summerfield v. Equifax Info. Servs. LLC*,
    264 F.R.D. 133 (D.N.J. 2009) .....................................................................73

*Taha v. Bucks Cnty. Pennsylvania*,
    367 F. Supp. 3d 320 (E.D. Pa. 2019 .............................................................68

*Tchoboian v. Parking Concepts, Inc.*,
    No. SACV 09-422 JVS(ANX), 2009 WL 2169883 (C.D. Cal. July 16, 2009) ...73

*Toth v. Nw. Sav. Bank*,
    No. GD-12-008014, 2013 WL 8538695 (Pa. Ct. Com. Pl. Allegheny Cnty. Mar.
    1, 2013) (Wettick, J.). ................................................................................22

*TransUnion v. Ramirez*,
    594 U.S. 413 (2021) .......................................................................... 41, 42

*United States v. Schneider*,
    14 F.3d 876 (3d Cir. 1994) ..........................................................................13

*White v. Gen. Motors LLC*,
    No. 121CV00410CNSMEH, 2023 WL 4628438, (D. Colo. June 30, 2023).......51

**Statutes**
20 U.S.C. § 1078-8.......................................................................................25
20 U.S.C. § 1085(l). .......................................................................................6

x

73 Pa. Stat. § 201-9.2(a)...........................................................................55
Cal. Civ. Code § 1788.30(a) ...................................................................21
Illinois Consumer Fraud Act 815 ILCS 505/2.......................................21
New York General Business Law § 349...................................................18

**Other Authorities**

*Manual for Complex Litigation* (Fourth) § 21.21 (2013). ......................52
3 Newberg and Rubenstein on Class Actions § 7:27 (6th ed.) ......... 29, 52
Newberg & Conti, Newberg on Class Actions § 4.26 (3d ed.)). ............20
U.S. Dep't of Educ.,
    *Top FAQs About Income-Driven Repayment Plans*, StudentAid.gov (ED's
    official website), https://studentaid.gov/articles/faqs-idr-plan/............4

**Rules & Regulations**

34 C.F.R. § 682.211(f)(11) .....................................................................28
34 C.F.R. § 682.211(f)(14) ........................................................ 5, 6, 7, 12
34 C.F.R. § 682.215(a)(2)..........................................................................6
34 C.F.R. § 682.215(b)(4),................................................................ 26, 46
Fed. R. Civ. P 8(c).....................................................................................5
Fed. R. Civ. P 23(c)(2)............................................................................30
Fed. R. Civ. P 23(b)(3)...................................................................... 50, 51

## I.    INTRODUCTION

Plaintiffs have alleged that Navient engaged in a systemic practice of enrolling IDR applicants in discretionary forbearances, which increased their principal balance by capitalizing the accrued interest.

These borrowers should have been placed in a 60-day administrative "processing" forbearance. *See* U.S. Dep't of Educ., *Top FAQs About Income-Driven Repayment Plans*, StudentAid.gov (ED's official website), https://studentaid.gov/articles/faqs-idr-plan/ (last visited April 17, 2026):

> Servicers may place borrowers into a different forbearance category known as "processing forbearance" if the servicers need additional time to process those borrowers' applications to enroll in IDR, recalculate their payments on an IDR plan, or recertify their incomes for their IDR plan. Processing forbearances will last no longer than 60 days.

Unlike a discretionary forbearance, an administrative forbearance does not result in the capitalization of interest. 34 C.F.R. § 682.211(f)(11).

In response, Navient has raised an affirmative defense involving a third type of forbearance – a retroactive forbearance, which resolves a delinquency on the account. ECF 232, Defendants' Memorandum ("Def. Mem.") at 11, 35. According to Navient, borrowers may be placed in a discretionary forbearance during IDR enrollment because this enables the loan servicer to apply a retroactive forbearance, which brings the account current. Def. Mem. at 11. ████████

███████████████████████████████████████████

██████████████████████████████

Defendants also argue that, because a discretionary forbearance may be used to resolve an IDR applicant's prior delinquency, liability determinations would necessitate a review of each borrower's account file to determine whether a retroactive forbearance was applied in combination with a discretionary forbearance. Def. Mem. at 35.

Defendants did not plead an affirmative defense involving retroactive forbearances in their answers to the complaints (ECF 64; ECF 93; ECF 141), nor was it raised in their Rule 12 motions (ECF 40; ECF 163). It was first raised in their brief opposing certification.

Affirmative defenses must be raised in a responsive pleading. Fed. R. Civ. P 8(c). The purpose of this rule is "to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." *In re Sterten*, 546 F.3d 278, 285 (3d Cir. 2008). "Failure to raise an affirmative defense by responsive pleading or by appropriate motion generally results in the waiver of that defense." *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991). Because Navient's defense is untimely, the Court may disregard it.

However, insofar as the defense is permitted, Plaintiffs have provided additional background information and rebuttal evidence to show that Navient's defense fails for two reasons. First, borrowers may receive a retroactive forbearance when they apply for an IDR plan. 34 C.F.R. § 682.211(f)(14). Thus, a discretionary forbearance is not needed during IDR enrollment to bring the account current. Second, Navient's procedures for applying retroactive forbearances were unlawful because they involved deceptive representations and violated federal notice requirements.

## II.   RELEVANT BACKGROUND

### A. Retroactive forbearances

Borrowers become ineligible for an IDR plan if their loans default. 34 C.F.R. § 682.215(a)(2). "Default" occurs after failing to make a scheduled payment for 270 days. 20 U.S.C. § 1085(l). Thus, if a borrower applies for an IDR plan, but becomes more than 270 days delinquent during the application process, the borrower could lose IDR eligibility.

To address this scenario, the regulations authorize a forbearance to resolve a "period of delinquency at the time a borrower makes a change to the repayment plan." 34 C.F.R. § 682.211(f)(14). This language mirrors sub-section (f)(11), which authorizes a 60-day administrative forbearance to process a borrower's request for a "change in repayment plan."

3

Thus, when a delinquent borrower submits an IDR application, two forbearances should be granted: 1) an administrative forbearance to pause payments during the IDR processing period; and 2) a retroactive forbearance to bring the account current. *See* OMB No. 1845-0102, the "IDR Request Form," which states: "My loan holder may grant me a forbearance while processing my application or to cover any period of delinquency that exists when I submit my application." ECF 208-6 at 4.

Alternatively, a delinquency may be resolved with a discretionary forbearance. 34 C.F.R. § 682.211(f)(2). However, interest that accrues during a discretionary forbearance is capitalized. *Id*. at § (a)(4). Thus, when borrowers apply for an IDR plan, a discretionary forbearance should not be used to resolve a delinquency because that would needlessly increase the borrower's debt.

Instead, a retroactive forbearance should be applied pursuant to § (f)(14). *See* CFPB Report, August 2016, at 22, attached hereto as Ex. A ("For delinquent borrowers seeking to enroll in an IDR plan, servicers may retroactively apply forbearance to resolve any past-due payment and bring the borrower's account current.") (citing 34 C.F.R. § 682.211(f)(14)).

4

**B. Capitalizing past-due interest**

34 C.F.R. § 682.211 does not specify whether a loan servicer may capitalize past-due interest when an IDR applicant receives a retroactive forbearance, but official government forms show that this practice was not authorized by ED.

Page four of the "IDR Request Form" states: "My loan holder may grant me a forbearance while processing my application or to cover any period of delinquency that exists when I submit my application." OMB No. 1845-0102 at 4 (ECF 208-6). The form contains detailed disclosures of IDR-related transactions that result in capitalization, such as failure to timely renew the plan. *Id.* at 8. However, it does *not* state that the forbearances mentioned on page four could result in capitalization, nor does it warn that capitalization could occur as a result of submitting the form. *Id*.

One court has addressed the issue of whether past-due interest may be capitalized when an IDR applicant receives a retroactive forbearance. In *Dawson v. Great Lakes Educ. Loan Servs., Inc.*, 327 F.R.D. 637 (W.D. Wis. 2018), a borrower was placed in an administrative forbearance when she applied to switch from the standard repayment plan to an IDR plan. *Id*. at 641. At the conclusion of the forbearance, the servicer capitalized both the "pre-forbearance interest"

5

(accrued during the delinquent period), and the "intra-forbearance interest" (accrued during IDR processing). *Id.* at 641, 643.

The plaintiff argued that *neither* amount should be capitalized because IDR processing periods are "capitalization exceptions that preclude the capitalizing of any interest whatsoever, whenever accrued." *Id.* at 644. This argument was based on deposition testimony from a loan servicing official, who confirmed that, by February 2015, "ED was prohibiting the capitalization of any accrued interest" in connection with IDR processing periods. *Dawson*, No. 15-cv-475 (W.D. Wis.), ECF No. 344, at 54 ¶ 127.

Based on this theory, the court certified a class of borrowers who had "any amount of accrued interest capitalized at the end of the administrative forbearance period." *Dawson*, 327 F.R.D. at 643. The loan servicer ultimately conceded that it was improper to capitalize past-due interest when a borrower applies for an IDR plan. *Dawson*, 2021 WL 1174726, at *1.

## C. Factual background

### 1. Navient's forbearance protocols

7







## III.   ARGUMENT

### A. Varno's discretionary forbearances were improper

Defendants acknowledge that an administrative forbearance should be used when a borrower submits "documentation to support their application to enroll in or renew an IDR plan." Def. Mem. at 8. However, ███████████████████ they claim that a discretionary forbearance is "properly placed" during periods of IDR enrollment if the applicant has "a prior delinquency." Def. Mem. at 11. They explain as follows:

> While Navient could have placed Varno in a 60-day non-capping administrative forbearance while processing her application, the prior delinquency allowed Navient to place her in a discretionary forbearance. ██████  ██████ The discretionary forbearance eliminated the delinquency on her account, which a 60-day non-capping administrative forbearance would not have done.

Def. Mem. at 11.

IDR applicants do not need a discretionary forbearance to resolve a delinquency because they are already entitled to a retroactive forbearance pursuant to 34 C.F.R. § 682.211(f)(14). The application itself states: "My loan holder may grant me a forbearance while processing my application or to cover any period of delinquency that exists when I submit my application." ECF 208-6 at 4 ("IDR Request Form").

Navient now argues that individualized inquiries are needed to determine whether a discretionary forbearance was applied "to resolve a prior delinquency." Def. Mem. at 35. That argument rests on a false premise; no such inquiries are necessary.

**B. Capitalization of past-due interest was improper**



Loan servicers should not capitalize past-due interest simply because a borrower applies for an IDR plan. The "IDR Request Form" contains detailed disclosures of IDR-related transactions that result in capitalization, but it does not state that capitalization could be triggered simply by submitting the form. ECF 208-6 at 8.

10

The lack of any such disclosure on the IDR application is consistent with deposition testimony adduced by the plaintiff in *Dawson*, which confirmed that, by February 2015, "ED was prohibiting the capitalization of any accrued interest" in connection with IDR processing. *Dawson*, No. 15-cv-475 (W.D. Wis.) ECF No. 344, at 54 ¶ 127.

Capitalizing interest when borrowers apply for an IDR plan would effectively penalize them for enrollment, which is contrary to the statutory purpose of having such plans. *See United States v. Schneider*, 14 F.3d 876, 880 (3d Cir. 1994) ("It is the obligation of the court to construe a statute to avoid absurd results, if alternative interpretations are available and consistent with the legislative purpose.").

## C. Navient misrepresented the effects of a retroactive forbearance

There is another reason why Navient's practices involving retroactive forbearances were improper. Navient made materially deceptive statements to borrowers about whether a retroactive forbearance would result in capitalization of past-due interest.

### 1. Notice requirements for forbearances

Borrowers must be notified any time a forbearance will result in capitalization. 34 C.F.R. § 682.211(e)(1) states: "At the time of granting a borrower a forbearance, the lender must provide the borrower with information to

11

assist the borrower in understanding the impact of capitalization of interest on the loan principal and total interest to be paid over the life of the loan."

This information must include "the amount of interest that will be capitalized, as of the date of the notice, and the date capitalization will occur." *Id.* at (e)(2)(iv). The servicer must also disclose "the option of the borrower to pay the interest that has accrued before the interest is capitalized." *Id.* at (e)(2)(v).

If a forbearance is based on the borrower's "oral request and affirmation," the servicer must "orally review with the borrower the terms and conditions of the forbearance, including the consequences of interest capitalization." *Id.* at (d)(2)(iii). The forbearance may be granted only "if the lender and the borrower agree to the terms of the forbearance." *Id.* at (b)(1).

Within 30 days of the oral agreement, the lender must provide a written notice "confirming the terms of the forbearance." *Id.* The notice must state:

- "the amount of interest that will be capitalized" (*id.* at (e)(2)(iv));

- "the date capitalization will occur" (*id.*); and

- "the option of the borrower to pay the interest that has accrued before the interest is capitalized." (*id.* at (e)(2)(v)).

### 2. *Navient's forbearance protocols*



14



### 4. *Navient's disclosures were materially deceptive*

There are three ways in which Navient's pre-recorded message was materially deceptive:

### a. No disclosure that past-due interest would be capitalized



Borrowers would interpret the message in that manner because the promissory note, ████████, states: "If I choose not to pay the interest that accrues on my loan *during* any period of authorized forbearance, the interest may be capitalized." ECF 208-3 at 28 (Varno's MPN) (emphasis added).

Substantially delinquent borrowers could owe thousands of dollars in past-due interest.

15

### b. No disclosure of a capitalization date

████████████████████████████████████████████████████████████

████████████████████████████████████ This implied that borrowers could

pay off their accrued interest prior to capitalization, pursuant to 34 C.F.R. §

682.211(e)(2)(v). *See* Varno's MPN (ECF 208-3 at 28), which requires that the

loan be serviced in accordance with "applicable U.S. Department of Education

regulations."

████████████████████████████████████████████████████████████

████████████████████████ This was a deceptive practice because borrowers may

have accepted the forbearance with the intention of paying off their accrued

interest prior to capitalization.

The evidence shows that this practice was systemic. ████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

### c. The pre-recorded message misled IDR applicants

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

16

█This statement was misleading because, under 34 C.F.R. § 682.211(f)(11) and (f)(14), IDR applicants are already entitled to these benefits, *without* any interest capitalization.

Because these misrepresentations violated federal notice requirements and the MPN, Navient's affirmative defense – that discretionary forbearances were proper if used in combination with a retroactive forbearance – has no merit.

## D. Navient's reliance arguments are unpersuasive

Defendants argue that the classes are not entitled to relief under the applicable state laws because Plaintiffs have not shown a classwide method for proving reliance. Def. Mem. at 32-34.

This argument fails for three reasons: 1) reliance issues are not a bar to class certification; 2) the applicable statutes do not require proof of reliance; and 3) even if proof of reliance were required, Plaintiffs can establish that the class members detrimentally relied on uniform misrepresentations.

### 1. *Reliance defenses do not bar certification*

Reliance issues do not defeat a finding of predominance. *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) (holding that challenges based on "reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to

17

underlying common issues of the defendant's liability.") (citing Newberg & Conti, Newberg on Class Actions § 4.26 (3d ed.)).

Additionally, when a deceptive practice involves an omission – such as Navient's failure to disclose that past-due interest would be capitalized – reliance can be presumed. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 314 (3d Cir. 1998) (upholding certification where a district court found that, because the plaintiff's "fraud-based claims stem largely from misleading omissions, reliance can be presumed.").

### 2.  *The applicable statutes do not require reliance*

Plaintiffs moved to certify claims under four state statutes. ECF 196 at ¶ 9. None require Plaintiffs to prove reliance.

- The Rosenthal Act merely requires proof that a plaintiff suffered damages "as a result of the violation." Cal. Civ. Code § 1788.30(a).

- "Reliance is not an element" under the Illinois Consumer Fraud Act. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (1996). A plaintiff need only prove that the "fraud proximately caused plaintiff's injury." *Id*.

- New York's General Business Law § 349 contains "no requirement that an injured party show reasonable reliance." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (2000). A plaintiff need only establish that "the defendant's material deceptive act caused the injury." *Id*.

18

- The Pennsylvania Unfair Trade Practices Consumer Protection Law (UTPCPL) does not require proof of reliance when the defendant took unilateral action that caused ascertainable losses. *Toth v. Nw. Sav. Bank*, No. GD-12-008014, 2013 WL 8538695 (Pa. Ct. Com. Pl. Allegheny Cnty. Mar. 1, 2013) (Wettick, J.).

*Toth* was a class action against a bank that charged improper overdraft fees. The court held that, in such cases, where the "Plaintiff's loss flowed directly from [the defendant's] unilateral act," the UTPCPL does not require proof of reliance. *Toth*, 2013 WL 8538695 at *4. The opinion is worth quoting at length:

> In fraud cases, the requirement that a plaintiff establish reliance is imposed solely to determine the extent to which (if at all) the plaintiff or a member of the class was actually harmed by the fraudulent or deceptive conduct. Where, as in the present case, a lawsuit is brought only by persons who were actually harmed by the bank's deceptive conduct, and who sustained actual losses as a result of improper overdraft charges, a reliance requirement serves no purpose.

*Id*. at *4.

In *Patterson v. Fid. Nat'l Title Ins. Co*., No. GD-03-021176 (Pa. Ct. Com. Pl. Dec. 29, 2015), Judge Wettick reaffirmed his decision in *Toth*, holding that, under the UTPCPL, a plaintiff must prove reliance only when "a finding of reliance is needed in order to establish that plaintiffs actually suffered an

19

ascertainable loss as a result of defendants' use or employment of fraudulent or deceptive conduct." *Id.* at \*21.

Here, Navient acted unilaterally by 1) improperly canceling IDR plans; 2) wrongfully capitalizing interest that accrued during IDR processing periods; and 3) delaying the IDR application process. Because these actions caused ascertainable losses, proof of reliance is not required under the UTPCPL.

### 3.  *Reliance can be proved on a classwide basis*

Even if proof of reliance were required, it can be established on a classwide basis. ███████████████████████████████████

███████████████████████████████████████████

██████████████████████ Because the same misrepresentations were used with all borrowers in Varno's proposed classes, proof of individual reliance is unnecessary. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528-29 (3d Cir. 2004) (holding that "individual reliance on the [defendant's] misrepresentations was irrelevant to liability" because the "alleged deceptive conduct arose from a broad-based, national campaign conducted by and directed from corporate headquarters.").

The same applies to Ballard. Defendants argue that she cannot prove reliance on a classwide basis because determining whether class members "received communications like Ballard would require individualized review of

20

each borrower's servicing file." Def. Mem. at 32. ████████████

████████



Thus, all members of Ballard's proposed class were erroneously billed according to the standard repayment plan. As a result, they would have made an inflated payment (as Ballard did) or enrolled in a discretionary forbearance (as Varno did). *See* CFPB Report, October 2017, at 13:

> Borrowers complain that when their recertification application is not timely processed by their servicers, rather than extending their current income-driven payments, servicers require that borrowers make their full, standard monthly payment amount, or direct them to enter forbearance. Borrowers complain that when their standard monthly payment is unaffordable, forbearance is their only realistic option.

21

ECF 208-8 at 40.

Because the class members detrimentally relied on uniform misrepresentations, reliance can be proved on a classwide basis.

**E. Pokorni's class suffered damages**

Navient contends that Pokorni lacks standing ███████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

███████████████████████████

Defendants confuse interest *capitalization* (alleged by Ballard and Varno) with loss of an interest *subsidy* (alleged by Pokorni).[1] Interest that accrues during a 60-day administrative forbearance is not capitalized, but it still accrues. 20 U.S.C. § 1078-8.

███████████████████████████████████████████████

███████████████████████████████████████████████ 34

C.F.R. § 682.215(b)(4), which waives unpaid interest for the first three years of IDR enrollment. This was explained in a detailed CFPB report:

> Consider a borrower with $23,000 in Direct Subsidized Loans with a weighted average interest rate of 3.76 percent interest who is not currently enrolled in an IDR plan…She

---

[1] ███████████████████████████████████████████████ However, his class is not based on that transaction.

22

completes an IDR enrollment application online and her servicer offers to suspend her prior monthly payment as her application is processed, using an administrative forbearance. Because this borrower is not enrolled in an IDR plan while waiting for her application to be processed, she is responsible for paying any interest charges on her loan that accrue during this period. Due to the daily accrual of interest on student loans, this borrower will have to pay $2.37 in extra interest charges for each day that it takes her servicer to process her application. Because she has Direct Subsidized Loans, any interest charges that accrued while enrolled in an IDR plan would be waived for up to 36 consecutive months. This protection does not apply to periods of forbearance. In effect, for every month this borrower must wait for her enrollment to be approved, she is charged more than $70 in interest.

CFPB August 2016 report (ECF 208-8) at 25-27.

Pokorni's other injury was lost progress toward IDR forgiveness. ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

This injury can be remedied with IDR credits. *See* Pls.' Mem at 65.

Navient argues that Pokorni cannot sue for IDR credits until he has made the "requisite number of payments to qualify for loan forgiveness." Def. Mem. at 55. This Court rejected that argument in *Nigro v. Pennsylvania Higher Education Assistance Agency*, 2020 WL 5369980 (M.D. Pa. 2020), holding that the borrower "could have been eligible for loan forgiveness as early as 2017" if the loan had been serviced properly. *Id.* at *6-7.

Defendants also rely on *In re Fedloan Student Loan Servicing Litig.*, No. MDL 18-2833, 2025 WL 539681 (E.D. Pa. Feb. 18, 2025). However, in that case, the IDR plaintiffs lacked standing because they had *already* received IDR credits. *Id.* at \*12 (because ED had credited the plaintiffs' accounts with "qualifying payments for purposes of loan forgiveness," their claims were "moot.").

### F. Administrative forbearances are not limited

Defendants argue that, in some cases, a discretionary forbearance is necessary during IDR enrollment because a "borrower is not entitled to more than one 60-day non-capping administrative forbearance." Def. Mem. at 11. Thus, in a situation like Varno's ██████████████████████████ ████████████ – the borrower might not be "eligible" for an administrative forbearance during the latter processing period. Def. Mem. at 35. In that situation, Navient would use "a discretionary forbearance instead of an administrative forbearance." *Id.*

Defendants do not cite any regulatory provision that supports this practice; ████████████████████████████████████████ This policy is inconsistent with the servicing contract, which states that Navient "must be able to offer borrowers *additional* administrative forbearance…upon receipt of *additional* documentation from the borrowers." Servicing Contract, Attachment A-3, p. 4, attached as <u>Ex. F</u> (emphasis added). *See also Dawson*, 327 F.R.D. at 642

24

(explaining that IDR applicants may be placed "into a successive or 'back-to-back' period of B-9 Forbearance.").[2]

Moreover, 34 C.F.R. § 682.211(f)(11) states that an administrative forbearance should be used whenever the borrower makes a "request" for a change in repayment plan. The IDR application (ECF 208-6) is titled: "Income Driven Repayment Plan Request." Thus, every submission should trigger the same 60-day processing period, which is stated on the application itself: "My loan holder may grant me a forbearance while processing my application." *Id.* at 4. Accordingly, Navient's argument is not supported by the applicable regulation or contract.

### G. Plaintiffs agree to the definitions in the TAC

Defendants argue that certification of the "Modified Forbearance Class" would be prejudicial because it expands class membership. Def. Mem. at 22.

The modified definition was the result of a discovery dispute. In 2024, Plaintiffs modified the search queries to accommodate the capabilities of Navient's computer system, but Navient objected to running the searches until the class definitions matched the revised queries. ECF 208-31 (Rule 37 Communication). To resolve the dispute, Plaintiffs filed the Third Amended Complaint (TAC), which imported the search query language into the definitions. *See* Pls.' Mem. at

---

[2] The term "B-9 Forbearance" refers to the 60-day administrative forbearance. For Federal Direct loans, the forbearance is codified at 34 C.F.R. § 685.205(b)(9).

37-38. However, this resulted in class definitions with arcane technical terms, such as "posting date," "PFH status," and "non-capping." ECF 118-3 at ¶ 95.

Plaintiffs later realized that this technical jargon could create notice issues. *See* 3 Newberg and Rubenstein on Class Actions § 7:27 (6th ed.):

> § 7:27 *Defining the class—Judicial discretion to ensure satisfactory class definition.* The class definition must be clear and precise…if the class definition is murky and a potential absent class member cannot ascertain whether she is or is not a member of the class, she will not know how to proceed, a situation raising due process concerns.")

(italics added to heading).

To address this concern, Plaintiffs moved to certify a simplified version of the forbearance classes, which combined them into a single class, defined in laymen's terms. *See* Pls.' Mem. at 51. However, as Defendants note, the modification expanded class membership. Def. Mem. at 22.

To resolve Navient's objection, Plaintiffs agree to proceed with the definitions in the TAC. However, to prevent any notice issues, Plaintiffs propose that, in the event of certification, any class notice describe the classes in laymen's terms. *See* Fed. R. Civ. P 23(c)(2), which requires the "best notice that is practicable under the circumstances."

**H. Damages are susceptible of classwide proof**

26





28



### 2. *The relevant transactions caused interest capitalization*

Defendants argue that there is no "causal connection between the amounts on █████████████ and Navient's alleged improper conduct." Def. Mem. at 57. They also claim that determining "the triggering event for interest capitalization and the amount attributable to any specific event involves individualized inquiries." Def. Mem. at 4. Both assertions are at odds with ████████████████



Defendants argue that there are still "individualized questions of causation" because "for many of the putative class members, interest capitalized on a given

29

date would have accrued during periods unrelated to Navient's challenged conduct." Def. Mem. at 4.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

Thus, to calculate damages, the relevant inquiry is not, "When did the interest accrue?" The only question is, "Why did it capitalize?" *See Dawson*, 327 F.R.D. at 644, 650-651 (certifying a class of borrowers who had "any amount" of interest capitalized as a result of IDR processing, "whenever accrued.").

### 3. *Maximus performed no manual review*

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

██████████████████████████████ But this is precisely what makes this case suitable for class treatment. *Powers v. Credit Mgmt. Servs., Inc.*, 313 F.R.D. 103, 116 (D. Neb. 2016) (granting certification because it was "administratively feasible to identify the class" by using the defendant's "highly computerized operation," which was "capable, with a proper query, to determine the class members and amounts, within its records.").

### 4. *The searches excluded refunds*

███████████████████████████████████████████████████████████

███████████████████████████████ Thus, no individual account review is necessary

to ensure that borrowers who may have received a refund for improper charges are

excluded from the classes.



To resolve the apparent discrepancy, it is helpful to

review the relevant testimony:





And, indeed, there may be class members who received a refund on a transaction that is not relevant to this case. There may also be class members who had one relevant transaction refunded, but not others. In the latter case, only the non-refunded transactions would have been identified by the computer searches. But none of this changes the fact that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ Because those are the only transactions Plaintiffs seek to redress, no individual account review is necessary.

32

Insofar as Navient implies that the search results are inaccurate – ███████

████████████████████████████████████████████████████

███████ – they are shifting the burden. The same tactic was used in *Dawson*,

2021 WL 1174726. There, the loan servicer conceded that it was "feasible to

determine how much interest was wrongly capitalized for all class members," but

argued that certification should be denied because a "remediation project" had

"corrected the interest capitalizations" for some borrowers, while others did not

receive "a refund or a credit." *Id.* at *14. Thus, it was argued that class treatment

was not suitable because separating these groups required individual review of the

borrowers' "transaction histories." *Id.* The court rejected that argument.

> As for defendants' contention that [the plaintiff] hasn't
> shown harm, defendants are confusing [her] burden with
> their own. It is undisputed that [the loan servicer]
> improperly capitalized the class members' interest, so [the
> plaintiff] has shown harm. It is defendants' burden to show
> that their remediation efforts made the class whole, which
> defendants haven't done.

*Id.* at *2.

Defendants cite only one case where refunded transactions posed an obstacle

to certification. In *Grandalaski v. Quest Diagnostics, Inc.*, 767 F.3d 175 (3d Cir.

2014), a substantial number of class members who were overbilled by the

defendant "subsequently received refunds of their incorrect charge." *Id.* at 185.

The Third Circuit affirmed a finding that "individual inquiries would be required to

33

determine whether an alleged overbilling constituted unjust enrichment for each class member." *Id*.

Relying on *Grandalaski,* Defendants assert that assessing whether class members received refunds would "require individual analysis" of accounts. Def. Mem. at 43. This argument is unsupported ███████████████████████

███████████████████████████

Moreover, in *Grandalaski*, it was undisputed that "many" class members received refunds. *Grandalaski*, 767 F.3d at 185. By contrast, Navient offers no evidence of any remediation project whatsoever, let alone an extensive one like that in *Grandalaski*.

## I.   Navient's standing argument is unpersuasive

According to Navient, Plaintiffs cannot show that absent class members have Article III standing because class membership is not limited to borrowers who incurred a capitalization of interest. Def. Mem. at 23-24. To address this argument, a procedural history is necessary.

### 1.  *Procedural history*

In the Second Amended Complaint (SAC), the proposed classes were limited to borrowers whose interest was capitalized. ECF 80-1 at ¶ 95. ███████

████████████████████████████████████



To address this issue, interest capitalization was removed from the class

criteria. TAC at ¶ 95 (ECF 118-3). Plaintiffs determined that this would not alter

class membership ███████████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

### 2. *Navient can extract capitalization figures*

Plaintiffs subsequently learned that Navient's explanation regarding the

search limitations of its computer system may have been misleading. ██████

███████████████████████████████████████████████████████

██████████████████████████████████████████ Thus, even

if "the reason" why interest capitalizes cannot be entered as a search parameter, it

is feasible to determine how much interest capitalized *when* each transaction

occurred. This is true, not only for ED's database, but also for Navient's.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████



Thus, the computer coding used to generate

would likely work on Navient's system.

### 3. *Navient's standing argument is baseless*

Navient argues that, by removing interest capitalization from the class criteria, Plaintiffs "swapped an unresolvable ascertainability problem for an insuperable standing problem." Def. Mem. at 24. This is because, according to Defendants, there are class members who "suffered no alleged injury at all." *Id.* There are two problems with this argument.

### a. Uninjured borrowers can be excluded



36

Thus, uninjured class members in ED's portfolio can be removed from the classes. ██████████████████████████████ uninjured borrowers in Navient's portfolio can also be excluded. This supports certification. *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 179 (E.D. Pa. 2016) (granting certification because it would be "administratively feasible to ascertain class members using objective criteria.").

### b. Class definitions need not include damages

Navient's standing argument fails for another reason: class definitions need not exclude uninjured persons. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 (3d Cir. 2015) ("[A] class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown.").

To overcome *Neale*, Defendants rely on *TransUnion v. Ramirez*, 594 U.S. 413 (2021). According to Navient, *Transunion* held that "only absent class members who actually suffered injuries have standing under Article III to pursue damages." Def. Mem. at 24. However, it is a misreading of *TransUnion* to apply this rule at certification.

In *TransUnion*, a class action was ***tried before a jury***, and the plaintiff "did not present evidence about the experiences of other members of the class." *Id*. at

37

421. The Supreme Court held: "In a case like this that ***proceeds to trial***, the specific facts set forth by the plaintiff to support standing must be supported adequately by the evidence ***adduced at trial***." *Id*. at 431. (emphasis added).

In *Huber v. Simon's Agency, Inc*., 84 F.4th 132 (3d Cir. 2023), the Third Circuit noted the distinction, holding as follows:

- Under *Transunion*, "the need for unnamed class members to demonstrate Article III standing depends on the stage of litigation." *Id*. at 155.

- At certification, it is "not necessary for each member to prove his or her standing for the class action to be justiciable." *Id*.

- "We therefore abide by *Neale*'s precept that so long as a named class representative has standing, a class action presents a valid case or controversy under Article III." *Id*.

Defendants acknowledge this holding but argue that awarding damages would be unmanageable because it could only be accomplished "through individualized determinations of injury for each class member." Def. Mem. at 25. That is not a basis to deny certification. *Neale*, 794 F.3d at 374-75 ("Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well-nigh universal.").

38

### 4. *Dawson does not support Navient*

Defendants also rely on *Dawson v. Great Lakes Educ. Loan Servs., Inc.*, 2016 WL 5415096 (W.D. Wis. Sept. 28, 2016). They argue that *Dawson* stands for the proposition that "a class cannot be certified where it sweeps in borrowers who were not subject to capitalization and therefore suffered no injury." Def. Mem. at 52. To address this argument, a procedural history of *Dawson* is necessary.

### a. Procedural history

In *Dawson*, a loan servicer capitalized interest that accrued during administrative forbearances that were used to process IDR applications. *Id*. at *2. The court found that such conduct was "clearly prohibited by the applicable regulations." *Id*. at *3. However, certification was denied because the class definition included "all borrowers" enrolled in administrative forbearances, regardless of whether "any of the interest that accrued on their accounts was capitalized." *Id*. at *2. The plaintiff was granted leave to narrow the class and refile her motion. *Id*. at *3, *5.

When the plaintiff re-filed for certification, the class was limited to borrowers who had "any amount of accrued interest capitalized." *Dawson*, 327 F.R.D. at 643. Finding the definition properly tailored, the court certified the class on liability. *Id*. at 643, 650. However, the class was not certified on damages because there was no evidence that the servicer could "identify which borrowers

39

had student loan interest capitalized improperly and in what amounts." *Id.* at 649. The plaintiff was granted leave to move for certification on damages once there was evidence to resolve "the remaining questions" on that issue. *Id.* at 650.

When the plaintiff moved for certification on damages, the servicer conceded that it was "feasible to determine how much interest was wrongly capitalized for all class members." *Dawson*, 2021 WL 1174726 at *14. Based on that evidence, the case was certified on damages because calculating losses from interest capitalizations was "primarily mechanical" in nature. *Id.* at * 17.

### b. Navient's reliance on *Dawson* is misplaced

Relying on *Dawson*, Defendants argue that the classes "cannot be certified" because they include borrowers who "suffered no injury." Def. Mem. at 52. There are two problems with this argument.

First, ███████████████████████████████████████████ ████████████ uninjured borrowers can be removed from the classes.

Second, if the Court determines that uninjured borrowers must be excluded from the class definitions, the proper remedy is to narrow the classes. *Finberg v. Sullivan*, 634 F.2d 50, 64 (3d Cir.) ("The problem identified by the district court might well be remedied by requiring a more specific or a narrower definition of classes. The district court should not deny certification on account of such problems without considering the possibility of redefining the classes.").

Interest capitalization was removed from the class criteria to facilitate the computer searches, but those searches have now been executed. Reincorporating this element would be consistent with Plaintiffs' original purpose. *See Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 492 (D. Neb. 2007) ("The court should exercise its discretion and attempt to redefine the class in a manner consistent with the plaintiffs' stated intent.").

Insofar as the Court determines that the class definitions must be narrowed, as ordered in *Dawson*, Plaintiffs have attached redline versions of the definitions as Ex. I. For Ballard's and Varno's classes, the definitions are identical to their counterparts in the TAC, but with a further limitation: At or near the time of the relevant transaction, the borrower incurred an interest capitalization "greater than $0.00." *Id.* at 1-3.

For Pokorni's class, the definition is identical to its counterpart in the TAC, but limited to borrowers who had "at least one subsidized loan, and less than three years of prior IDR enrollment, at the time the IDR application was received." *Id.* at 4. This reflects the damages incurred by Pokorni's class – interest charges that would have been eliminated pursuant to 34 C.F.R. § 682.215(b)(4) if the application had been timely processed.

41

### J. Variation in repayment plans is irrelevant

Defendants argue that class treatment is unsuited to cases involving loan servicing because borrowers have various repayment options, including five IDR plans. Def. Mem. at 2, 5. Thus, according to Navient, adjudicating the claims of each class member would require individualized inquiries into their payment histories, which may have varied if they ever switched plans. Def. Mem. at 4, 6.

This argument was rejected in *Dawson*, 327 F.R.D. at 647 (holding that the distinction between repayment plans was "relatively unimportant" because each borrower's claim rested on allegations that the servicer capitalized interest after IDR processing periods, which was "prohibited by law or Department regulations," and the servicer's defense to those allegations was "the same across the board.").

### K. Ballard's class is not overinclusive

Navient argues that Ballard's class is overinclusive because borrowers who submitted a renewal application, but no longer had a partial financial hardship, were "required to make standard repayments." Def. Mem. at 13. In other words, the class includes individuals whose income increased after IDR enrollment, making them ineligible for renewal.

Navient offers no evidence to suggest that this scenario applies to a substantial number of class members. ███████████████████

███████████████████████████████████

42

███████████████████████████████████████

██████████

This does not warrant denial of certification. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825-26 (7th Cir. 2012) (rejecting an overbreadth argument because a "2.4 percent decrease in the size of the class is certainly not significant enough to justify denial of certification.").

To argue that IDR eligibility creates an overbreadth problem, Navient relies on *Breitman v. Xerox Educ. Servs., LLC*, 2014 WL 5364103 (S.D.N.Y. 2014). In that case, the plaintiff sought to represent borrowers who were denied certain loan benefits, but the class included some individuals who were ineligible for those benefits. *Id.* at *5. The court found that the predominance requirement was not met because the "threshold question of eligibility for the relevant benefits" required "individualized inquiries." *Id.* at *5.

If the Court finds that IDR eligibility creates an overbreadth problem, the solution is to narrow the class. *Messner*, 669 F.3d at 825 (holding that an "over-inclusive" definition "can and often should be solved by refining the class definitions rather than by flatly denying class certification on that basis.").

Ballard's class currently includes borrowers who timely submitted a renewal application that was "deemed complete." TAC at ¶ 95 (ECF 118-3). To exclude

43

ineligible applicants, the class can be limited to borrowers whose applications were "deemed complete <u>and approved</u>." This narrowing has been reflected in the redline version of Ballard's class definition. Ex. I at 1.

Defendants also argue that the class is overbroad because some members might have *chosen* to make standard payments to "pay less over the life of the loan." Def. Mem. at 30. This seems unlikely, given that all class members "submitted an IDR renewal application." TAC at ¶ 95. However, Defendants speculate that some borrowers "applied to renew their IDR plan but ultimately chose not to continue in an IDR plan." Def. Mem. at 31. In other words, they changed their mind after applying.

There is no evidence to suggest that this hypothetical group exists, but Defendants argue that the mere possibility of such borrowers requires "an individual, account-by-account review." Def. Mem. at 31. If Navient is raising this as a defense, they should offer more than conjecture. *Messner*, 669 F.3d at 825-26 (rejecting an overbreadth argument where the defendant claimed that some class members had contract provisions protecting them from price increases, but failed to offer evidence of "even a single" case).

## L. **Navient's reliance on *Newton* is misguided**

Defendants argue that certification is improper if the damages inquiry would require "hundreds of thousands of individualized determinations." Def. Mem. at

44

25. They rely on *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187-89 (3d Cir. 2001), a securities fraud class action.

In *Newton*, the predominance requirement was not satisfied because determining damages for each class member required "proof of the circumstances surrounding each trade, the available alternative prices, and the state of mind of each investor at the time the trade was requested." *Id*. at 187. Because these factors varied "from trade to trade," calculating damages would have been a "Herculean task." *Id*.

Here, however, interest capitalizations are itemized on a spreadsheet, which identifies each class member by account number. There are no relevant circumstances that vary from borrower to borrower, so *Newton* is distinguishable.

## M. Defendants' damages arguments are unconvincing

The proponent of certification must establish "that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 (2013). However, calculations "need not be exact," so long as the plaintiff's method is "consistent with its liability case." *Id*. at 35.

*Comcast* does not "require expert testimony or a particular damage model; it simply requires that plaintiffs show that the damages sought are the result of the class-wide injury that the suit alleges." *Starr v. Chicago Cut Steakhouse, LLC*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014). In other words, *Comcast* requires only

"minimal scrutiny." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 99 (S.D.N.Y. 2015).

### 1. *Navient misreads Comcast*

Defendants argue that Plaintiffs failed to "present a credible model for classwide damages" because the compensation they seek "must be determined at the individual borrower and loan level." Def. Mem. at 48. The Third Circuit has rejected this argument. *Neale*, 794 F.3d at 375 ("Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well-nigh universal.").

In *Neale*, the court explained "it is a misreading of *Comcast* to interpret it as precluding certification under Rule 23(b)(3) in any case where the class members' damages are not susceptible to a formula for classwide measurement." *Id*. In fact, "denying certification on that basis alone" would be an "abuse of discretion." *Id*.

### 2. *Expert testimony is not required*

Navient asserts that the proposed damages model is not credible because Plaintiffs offer no expert testimony. Def. Mem. at 47. Defendants cite no authority for the proposition that a damages expert is necessary at certification, and courts have found otherwise:

*Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 73-74 (S.D.N.Y. 2022) ("While a damages expert may be useful to the Court in

46

determining class members' damages, it is not required by Rule 23(b)…Because Plaintiff has identified a common *measure* for calculating damages…the need for individualized *calculations* alone cannot preclude certification under Rule 23(b)(3).") (emphasis in original);

*Rabin v. Google LLC*, 787 F. Supp. 3d 934, 951 (N.D. Cal. 2025) ("At the class certification stage, plaintiffs need not produce a perfect damages model or expert testimony, but need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability."); and

*White v. Gen. Motors LLC*, No. 121CV00410CNSMEH, 2023 WL 4628438, at *5 (D. Colo. June 30, 2023) (noting that a court may certify a class "without relying on an expert's report or testimony.").

These decisions are consistent with the principle that a court deciding certification "should not be drawn prematurely into a battle of competing experts." *Manual for Complex Litigation* (Fourth) § 21.21 (2013). Moreover, when statutory damages are available, the "battle of experts" is "largely beside the point" because "once an injury is established, statutory damages can be precisely calculated for each class member." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 551 (E.D.N.Y. 2017).

47

### 3. Plaintiffs' expert renders this case manageable

Plaintiffs retained a certified fraud examiner, Amanda Kurzendoerfer, to calculate damages. ECF 208-38 (Kurzendoerfer CV). However, Defendants argue that Plaintiffs are offering "future expert analysis in lieu of actual proof." Def. Mem. at 46.

Defendants confuse expert testimony on certification with testimony for trial purposes. *See* 3 Newberg and Rubenstein on Class Actions § 7:24 (6th ed.):

> § 7:24. *Use of expert testimony at the class certification stage.* If an expert witness is to be used solely at trial and has nothing to say relevant to the certification inquiry then, at the point of trial, the court will determine whether the expert's testimony is admissible under the *Daubert* test.")

(italics added to heading).

Plaintiffs retained Kurzendoerfer because she has already quantified damages resulting from interest capitalization in two other cases against Navient. ECF 208-38 at 4 (Kurzendoerfer CV). Her experience in this area ensures that damages computations will be manageable. *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 659 (S.D. Fla. 2012) ("Plaintiffs' expert will formulate calculations that can identify members of the class by running queries in [the defendant's] computer records…These facts make this case eminently manageable as a class action.").

48

In deciding certification, courts have relied on evidence that a plaintiff will adduce expert testimony at trial. *See, e.g., Rabin*, 787 F. Supp. 3d at 953 (granting certification because the plaintiffs offered a "straightforward way of litigating expectation damages on a class-wide basis," and noting: "Although they have not done so here, plaintiffs note that they may introduce expert analysis within some of [the damages] categories").

### 4. *Navient misapplies anti-trust cases*

Navient cites two cases to argue that expert testimony is necessary at certification: *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183 (3d Cir. 2015), and *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184 (3d Cir. 2020). Both were antitrust cases that involved price-fixing. Antitrust litigation requires sophisticated models to establish what price would be charged in an efficient, competitive market. Expert testimony is critical to certification in such cases.

Plaintiffs, however, seek compensation for improper account charges. ███████████████████████████████████████████ damages computations are ministerial in nature and pose no obstacle to certification. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 157 (D. Md. 2022) ("Individualized issues that can be resolved by ministerial exercises do not preclude predominance."); *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 617CV890ORL40LRH, 2020 WL 5534483, at *10–11 (M.D. Fla. July 8, 2020)

(calculating damages "on an individual basis is no impediment to class certification" when it involves "a straightforward ministerial task.").

In cases involving improper lending and debt collection, certification is routinely granted without relying on experts. *See In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d 380 (3d Cir. 2015); *Hassine v. Simon's Agency, Inc.*, No. CV189031FLWTJB, 2021 WL 2646990 (D.N.J. Apr. 29, 2021); *Blandina v. Midland Funding, LLC*, 303 F.R.D. 245 (E.D. Pa. 2014); *Jordan v. Commonwealth Fin. Sys.*, 237 F.R.D. 132 (E.D. Pa. 2006).

### 5. *Account corrections are feasible*

Navient argues that reversing interest capitalizations is not a proper remedy because "reducing a borrower's principal balance by the amount of the allegedly improper interest capitalization would not account for any interest that accrued on the loan as a result of that capitalization." Def. Mem. at 53. According to Defendants, Plaintiffs offer "no method for removing such interest from the loan balance." *Id.*

50

This refutes Navient's argument and supports certification. *Johnson v. Community Bank*, N.A., 2013 WL 6185607, *1 (M.D. Pa. 2013) (approving class settlement because damages could be distributed "by direct deposit to those whose accounts may feasibly be so credited.").

### 6. *Availability of statutory damages supports certification*

The UTPCPL authorizes payment of "actual damages, or one hundred dollars, whichever is greater." 73 Pa. Stat. § 201-9.2(a). Thus, if there are class members whose injuries are not quantifiable, they may receive $100. Navient raises multiple arguments against Plaintiffs' use of statutory damages, but these arguments have no basis.

### a. Class members have ascertainable losses

Defendants argue that the class members are not to entitled to relief under the UTPCPL because the statute requires proof of an "ascertainable loss." Def. Mem. at 48.

████████████████████████████████████████████

██████████████████████ For Pokorni's class, damages are also ascertainable. For instance, if the borrower accrued $5 interest per day, and Navient took 30 business days to process the borrower's IDR application (*i.e.*, 15 days over the turnaround time established by ED), the borrower's debt was increased by $75.

51

### b.  Actual damages need not be quantifiable

Quantifying actual damages is less critical to certification when statutory damages are available as an alternative remedy. Defendants argue that Plaintiffs offer no support for this "sweeping assertion." Def. Mem. at 49. However, there is support from multiple jurisdictions.

See e.g., *New Jersey Carpenters Health Fund v. Residential Cap., LLC*, No. 08 CV 5093 HB, 2013 WL 6839093, at *5 (S.D.N.Y. Dec. 27, 2013) ("While *Comcast* requires that any model supporting a plaintiff's damages case must be consistent with its liability case, it is inapposite here, where damages reflect liability by statutory formula."); and *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 350 (S.D.N.Y. 2015) ("*Comcast* does not bar certification here, where Section 11(e) of the Securities Act provides a statutory formula for damages.").

The issue often arises when the applicable statute provides for both statutory and actual damages. In *Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565-NJR-RJD, 2017 WL 3704206 (S.D. Ill. Aug. 28, 2017), the plaintiffs brought claims under state laws that authorize both remedies. *Id*. at *15. The court held that any criticisms of their damages models were irrelevant because, based on the availability of statutory damages, their claims "could proceed even if the damages models were thrown out." *Id*. at *16.

52

In *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29 (E.D.N.Y. 2015), the applicable statute allowed "actual damages or fifty dollars, whichever is greater." *Id*. at 51. The court certified a class seeking actual and statutory damages because "once the injury is established, statutory damages can be calculated on a classwide basis." *Id.* at 70. The court noted that the plaintiff's expert "may be able to determine" actual damages as well, but this was "not necessary" for purposes of certification. *Id*.

*See also De Leon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1221 (11th Cir. 2007) (certifying a class seeking statutory and actual damages because the district court could "award statutory damages where proof of actual damages is scarce."); *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1317 (D. Or. 2008) (certifying a class without requiring proof of "actual harm" because class members who were "unable to present proof of actual damage may still recover statutory damages.").

In *Santos v. Healthcare Revenue Recovery Grp*., LLC., 90 F.4th 1144, (11th Cir. 2024), a district court denied certification after finding that actual damages could not be quantified, but the Eleventh Circuit held that this was an abuse of discretion because the relevant statute authorized "damages of not less than $100," so there was no "need to prove actual damages to recover." *Id*. at 1158.

53

A similar approach was followed in *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010). The district court denied certification because the plaintiff's damages model was "disproportionate" to actual losses. *Id*. at 717. The Ninth Circuit held that this was an abuse of discretion because the applicable statute authorized "actual damages" but "not less than $100," which allowed class members to be compensated "irrespective" of actual losses. *Id*. at 719.

### c.  Navient's adequacy argument is baseless

Navient argues that Plaintiffs are inadequate class representatives because they seek "thousands of dollars in alleged damages for themselves" but would "readily consign putative class members to $100." Def Mem. at 49. This misconstrues Plaintiffs' damages model.

The UTPCPL authorizes actual damages or $100, whichever is greater. To maximize recovery, Plaintiffs seek actual damages for all class members. Pls.' Mem. at 60-65. However, should difficulties arise in proving actual damages, the classes can "fall back" on statutory damages. This eliminates any possibility of individual damages overwhelming the litigation.

This approach does not pose adequacy issues. *In re Marriott*, 341 F.R.D. at 151 (distinguishing cases where the plaintiff "voluntarily forwent a claim for actual damages in order to pursue statutory damages only" from cases where the plaintiff seeks statutory damages while also "pursuing actual damages on behalf of the

54

proposed classes"); *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998) ("The damages recoverable for the class members' injuries may differ—some may be eligible for both actual and statutory damages, others actual damages only, and still others just statutory relief—but the fact remains that their injuries are the same.").

Defendants seem to imply that plaintiffs cannot seek both remedies. However, courts routinely certify classes seeking actual and statutory damages. In *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 681–82 (D. Nev. 2008), the plaintiff demonstrated that actual damages could be calculated by "referencing Defendant's records," and that "computation of statutory damages would be similarly basic." *Id*. at 685. The court agreed and certified the class on "issues of liability, actual damages, [and] statutory damages." *Id*. at 687. *See also Powers*, 313 F.R.D. at 116-17 ("The court finds certifying a reasonably ascertainable [Fair Debt Collection Practices Act] class for statutory or actual damages will serve the purposes of the Act, which is targeted at abusive debt collector activities."); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 320 (S.D. Fla. 2001) ("The most efficient and far superior method of resolving the actual damages claim is to certify the class as to liability with respect to actual damages, as well as statutory damages.").

### d. Variations in damages are irrelevant

Defendants argue that awarding statutory damages would create a conflict of interest because actual damages "vary widely," ███████████████████████ ███████████████████ This does not create a conflict. *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 499–500 (E.D. Pa. 2009) ("The fact that some members of the putative class might have claims for actual damages is not a true conflict of interest between the representative and other class members in this case, where class members with significant actual damages may opt-out of the class litigation."); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("It would drive a stake through the heart of the class action device in cases in which damages were sought…to require that every member of the class have identical damages.").

Moreover, if the Court ultimately determines that only statutory damages are suitable for class treatment, the certification order can be amended to exclude actual damages, allowing class members to pursue individual claims. *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 409 (E.D. Pa. 2010) (limiting a settlement class to "claims for statutory damages only," so that absent class members could "pursue actual damages, if they have any, without having to opt-out of the Settlement.").

### 7. *Navient's arguments involving amortization are unconvincing*

According to Navient, Plaintiffs' damages model fails to consider that "making a higher payment now may mean a lower total amount paid over time." Def. Mem. at 51. Thus, borrowers who were overbilled would reap "savings" if they made inflated payments. *Id.* However, any hypothetical gains from overpayments would be offset by opportunity costs – *i.e.*, such monies were not invested and earning interest over the past 15 years.

Navient also claims that Plaintiffs' damages model "assumes all capitalized interest remains outstanding and unamortized throughout the life of the loan." Def. Mem. at 54.



This argument is not empirically based.

According to ED's data, 70% of IDR participants make "payments that do not cover the full amount of their accumulating monthly interest." 88 Fed. Reg. 43851 (July 10, 2023). That means their payments never touch principal.

In 2016, the Brookings Institution conducted a study on data from the National Student Loan Data System (ED's central database for federal aid). It found that, for IDR participants, the median time it took to repay just $1 of

principal was over five years.[3] That is because, although IDR plans "help prevent default," they "decrease the probability of reducing principal balance in a timely manner." *Id*. The failure of Navient's expert to account for these facts shows that her arguments are theoretical, not empirical.

### 8. *Navient's arguments rely on antitrust cases*

According to Navient, the "flawed assumptions" of Plaintiffs' damages model "require denial of certification." Def. Mem. at 54. They cite three cases where certification was denied because actual damages were not quantifiable. Two were antitrust cases: *In re Processed Egg Prods. Antitrust Litig*., 312 F.R.D. 124 (E.D. Pa. 2015), and *In re Lamictal Direct Purchaser Antitrust Litig*., 2021 WL 2349828 (D.N.J. 2021). The third – *Franco v. Connecticut Gen. Life Ins. Co*., 647 F. App'x 76 (3d Cir. 2016) – involved RICO claims.

Because statutory damages were not available in those cases, the failure to quantify individual losses was fatal to certification.[4] Here, however, all class members are entitled to statutory damages under the UTPCPL. Thus, Plaintiffs' method for computing actual damages goes to the *merits* because it involves the

---

[3] Jason Delisle & Alexander Holt, *The tension between student loan accountability and income-driven repayment plans*, BROOKINGS (July 11, 2016), available at https://www.brookings.edu/articles/the-tension-between-student-loan-accountability-and-income-driven-repayment-plans/.

[4] *Dawson*, 327 F.R.D. 637, also involved RICO claims. Because statutory damages were not available, calculating actual damages was more crucial to certification.

58

*extent* of damages. For certification purposes, the availability of statutory damages is sufficient to eliminate any *Comcast* issues. *In re Facebook*, 312 F.R.D. at 350.

Additionally, the Court has many tools available to deal with damages issues if they arise after certification. *See e.g., In re Marriott*, 341 F.R.D. at 163 ("If at a later point in the litigation the individual inquiries related to damages calculations metastasize to an impermissible level, the Court retains the ability to modify its class certification order. The Court could create subclasses, bifurcate liability and damages, or decertify the class altogether to address these individualized damages issues.").

## N. Contract claims are suitable for class treatment

Navient argues that Plaintiffs' contract claims are unsuitable for class treatment because "the Court will need to apply—and a jury will need to be instructed on—up to 50 different states' laws." Def. Mem. at 37.

The Third Circuit has rejected this argument. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301, 310 (3d Cir. 2011) (holding that "variations in the rights and remedies available to injured class members under the various laws of the fifty states do not defeat commonality and predominance" because to find otherwise "would gut commonality," and "there would simply be no class" that could meet the predominance test."); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d

Cir. 2012) ("[P]redominance is not defeated merely because different states' laws apply to different class members' claims.").

Moreover, it is unlikely that jury instructions will pose any difficulties because the contested issues are legal in nature. *See* Defendants' Motion for Partial Judgment on the Pleadings (ECF 163). Thus, liability will probably be decided on summary judgment.

If the case is tried on damages, Plaintiffs will present testimony from their damages expert and tender an instruction to award actual damages, or, in the alternative, statutory damages if actual damages have not been proved by a preponderance of the evidence.

Alternatively, the Court may appoint a special master to compute damages. *Carrow v. FedEx Ground Package Sys., Inc.*, No. CV 16-3026 (RBK/JS), 2019 WL 7184548, at *12 (D.N.J. Dec. 26, 2019) ("If Defendant is found liable and complex damages issues present themselves, the Court has a number of tools it may avail itself of, including appointing a magistrate judge or special master to preside over individual damages proceedings.").

If, however, the case is tried on liability, jury instructions would be easy to draft because the applicable statutes are substantively similar. Under each statute, a plaintiff is entitled to relief if the defendant engaged in deceptive or fraudulent

60

conduct that caused damages, but none of the statutes require proof of reliance. *See supra* at (III)(D)(2).

Because the statutes are substantively similar, all classes can be tried together. *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 315 (3d Cir.1998) ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit.").

However, if the Court determines that proof of reliance is required under any statute, the corresponding subclass could be tried separately. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 817 (3d Cir. 1995) ("The laws of the 50 states could be reduced to four general patterns, providing the framework for sub-classes if the nationwide action had proven unmanageable."); *Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 582 (C.D. Cal. 2016) (holding that differences between state laws can be managed "by holding separate trials for each state-wide class, or perhaps a combined trial for few statewide subclasses, where the law in those states is similar enough to allow creation of jury instructions and a verdict form that is not too complex.").

Alternatively, if variations in state law are deemed so substantial as to preclude certification, the Court could allow Plaintiffs to proceed under Pennsylvania contract law and the UTPCPL, and abandon the other state law

claims. *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 458–59 (D.N.J. 1998) (holding that plaintiffs have "several options for creation of a more manageable class action," which includes "dropping those causes of action deemed less important by Plaintiffs.").

### O. Statute-of-limitations defenses do not defeat predominance

Defendants argue that statute-of-limitations defenses defeat predominance because "separate inquiries about whether individuals' claims are time-barred or subject to tolling" would be necessary. Def. Mem. at 39.

They rely on *Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998). *Barnes* was a case against tobacco companies to certify a "medical monitoring class" that would receive payments for medical treatment necessitated by smoking-related diseases. *Id.* at 130, 132. The court held that statute-of-limitations defenses raised individual issues because, "as in *Amchem*," the "plaintiffs were exposed to different products, for different amounts of time, in different ways, and over different periods." *Id.* at 143 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).

*Amchem* involved asbestos injuries. In that case, the Supreme Court differentiated between personal injury claims and consumer fraud claims: "Predominance is a test readily met in certain cases alleging consumer or securities

62

fraud…[but] mass accident cases are likely to present significant questions, not only of damages but of liability and defenses of liability." *Id.* at 624.

The Third Circuit has noted the distinction. *Sullivan*, 667 F.3d at 298, 310 (holding that, if courts were to "evaluate whether each class member's claim complies with the applicable statute of limitations," there would "simply be no class that could meet this commonality and predominance test."); *In re Linerboard*, 305 F.3d at 163 ("Challenges based on the statute of limitations… have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability.").

Additionally, statute-of-limitations defenses do not apply in this case because Defendants forfeited the defense by failing to plead it in their answers (ECF 64; ECF 93; ECF 141). The statute of limitations is an affirmative defense, which "must be raised as early as practicable." *Robinson v. Johnson*, 313 F.3d 128, 137 (3d Cir. 2002). If a defendant fails to do so at a "pragmatically sufficient time," and allowing the defense would prejudice the plaintiff and undermine judicial economy, it is "appropriate to conclude that the defense has been waived." *In re Frescati Shipping Co.*, 886 F.3d 291, 313 (3d Cir. 2018).

*See also Taha v. Bucks Cnty. Pennsylvania*, 367 F. Supp. 3d 320, 325-327 (E.D. Pa. 2019) (barring a statute-of-limitations defense because the defendants

63

"waited more than six years" to raise it, even though they had "many points" to do so during the litigation, and because allowing the defense "would work prejudice on the class.").

### P. Choice-of-law issues do not defeat predominance

Defendants argue that, because the MPN does not contain a choice-of-law provision, the Court would need to "conduct a difficult choice of law analysis" for contract claims, which defeats predominance. Def. Mem. at 38. However, "it is well-established that consideration of choice-of-law issues at the class certification stage is generally premature." *Sullivan*, 667 F.3d at 309.

In any event, such an analysis would not be difficult. Jurisdiction under the Class Action Fairness Act (CAFA) is "an extension of diversity jurisdiction." *Lisowski v. Walmart Stores, Inc.*, 552 F. Supp. 3d 519, 530 (W.D. Pa. 2021). Therefore, the "normal rules for analyzing diversity jurisdiction apply to CAFA cases." *Id*.

Pennsylvania's choice-of-law rules govern in diversity cases. *Shields v. Consolidated Rail Corp.,* 810 F.2d 397 (3d Cir. 1987). Those rules apply the "most significant relationship" test. *Compagine des Bauxites v. Argonaut–Midwest Ins. Co.*, 880 F.2d 685 (3d Cir. 1989). Under this test, the "general rule" is that a contract "is to be governed by the law of the place of performance." *Koffman v. Smith*, 453 Pa. Super. 15, 682 A.2d 1282, 1289 (Pa. Super. Ct.1996). All of

64

Navient's servicing activities were performed in Wilkes-Barre, Pennsylvania. Stine Dep. 18:3-19:9 (ECF 208-13). Thus, Pennsylvania common law governs all contract claims.

### Q. Borrower conduct is irrelevant

Navient argues that the promissory notes "raise individualized issues" that vary "from state to state," such as "whether borrowers paid their student loans as they became due" or "failed to comply with other provisions of the loans." Def. Mem. at 40.

The relevant conduct in this case is Navient's servicing activity, not the actions of borrowers. *In re Linerboard*, 305 F.3d at 163 (holding that common issues predominated "because the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did."); *In re Warfarin Sodium*, 391 F.3d at 528 (finding predominance where the focus was on the "defendants' conduct, not the individual conduct of the putative class members."); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 268 (3d Cir. 2009) ("[C]ommon questions abound with respect to whether the defendants engaged in illegal, concerted action" because the inquiry would "focus on the conduct of the defendants.").

### R. Navient misconstrues the waiver doctrine

Defendants argue that "waiver" defenses would implicate "individualized issues arising from borrower interactions with Navient servicing agents." Def. Mem. at 41. For example, because Varno "agreed to a discretionary forbearance," she "waived" her right to challenge that transaction. Def. Mem. at 41.

Defendants confuse waiver with reliance. If being deceived by a defendant's misrepresentation constitutes a "waiver," consumer protection laws would be meaningless. *See Innospec Fuel Specialties, LLC v. Isochem N. Am., LLC*, No. CIV. 10-1642, 2012 WL 3682988, at *4 (D.N.J. Aug. 24, 2012) (holding that waiver occurs when a "party to an agreement has *actual knowledge* of another party's breach.") (emphasis added).

Moreover, accepting a discretionary forbearance does not raise individualized issues ██████████████████████████████████

██████████████████████████

As for Ballard, Navient argues that she "waived her claim" of overbilling because she did not "ask to have that amount refunded to her until years later." Def. Mem. at 42. This is a statute-of-limitations defense, not a waiver defense. As explained above, the defense has been forfeited.

### S.  Defendants fail to rehabilitate their expert



Using the term ███████████████ is an attempt to blame the employee who processed the transaction, rather than Navient's general practices. ██████

████████████████████████████████

██████████████████████

████ opinions on Varno's classes are similarly flawed. ██████████████

67



counterexamples out of 3,452 cases does not prove that Varno's transaction was "highly individualized," or that certification is not warranted. *Messner*, 669 F.3d at 825–26 (rejecting an overbreadth argument because a "2.4 percent decrease in the size of the class is certainly not significant enough to justify denial of certification.").

## T. The manageability requirement is satisfied

Navient argues that this case would be unmanageable as a class action because "individualized inquires" would require "hundreds of thousands of mini-trials." Def. Mem. at 62. In fact, the computer search results, spreadsheet, and availability of statutory damages make this case highly manageable, both on liability and damages.

Defendants also argue that the superiority requirement is not met because Plaintiffs have not submitted a trial plan. Def. Mem. at 62. However, the Court has not ordered one, and Rule 23 does not require it. *Chamberlan v. Ford Motor Co.,* 402 F.3d 952, 961 n. 4 (9th Cir.2005) ("Nothing in the Advisory Committee Notes

suggests grafting a requirement for a trial plan onto the rule."). In any event, Plaintiffs' trial plan is essentially summarized *supra* at § (III)(N).

**U. There is insufficient incentive for individual litigation**

Navient argues that the superiority requirement is not met because the applicable statutes "permit prevailing plaintiffs to recover attorney's fees," which provides sufficient incentive for individual litigation. Def. Mem. at 63. However, Defendants identified only five individual lawsuits against loan servicers. Def. Mem. at 63, n. 24. None involve IDR plans. Thus, fee-shifting provisions have not provided sufficient incentive.

*See Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 143 (D.N.J. 2009) (noting that "class actions have not been foreclosed merely by the presence of a fee shifting provision," and granting certification despite such a provision because the court was unaware of other similar litigation "pending against the Defendant by the potential class members."); *Tchoboian v. Parking Concepts, Inc.*, No. SACV 09-422 JVS(ANX), 2009 WL 2169883, at *9 (C.D. Cal. July 16, 2009) ("The Court is not convinced that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of the Fair Credit Reporting Act by individual actions of a scale comparable to the potential enforcement by way of class action.").

69

## V. There is no overlap with the CFPB or AG settlements

Defendants argue that Plaintiffs' case is a "copycat" of the CFPB lawsuit. Def. Mem. at 17. This implies that putative class members have already been compensated from the CFPB's settlement. However, there is no overlap between that settlement and the conduct forming the basis of Plaintiffs' claims. The same is true of the Attorneys General (AG) settlement.

The CFPB has announced that settlement checks are being distributed to borrowers who Navient "illegally steered into forbearance, ***instead of*** income-driven repayment plans." *See* CFPB webpage (emphasis added), attached as <u>Ex. J</u>. This indicates that compensation is limited to servicing activity that occurred *prior* to IDR enrollment.





Ballard and Varno, whose servicing errors occurred *during and after* IDR enrollment, have not received compensation from either settlement. *See* Varno and Ballard affidavits, attached as <u>Ex. L</u>. Presumably, members of their classes have not either, which supports certification. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 251 (3d Cir. 2009) (noting that class actions can "fill the gaps resulting from insufficient government regulation and enforcement, and help to deter industry bad behavior.").

**W. The lack of similar litigation supports certification**

Defendants acknowledge that Plaintiffs' case "is the sole remaining case" seeking to compensate borrowers for Navient's improper servicing of IDR plans. Def. Mem. at 17. This supports certification. *Carrow*, 2019 WL 7184548, at *12 (finding the superiority requirement met because there was "no parallel litigation to be concerned about"); *Fabricant*, 202 F.R.D. at 318 (finding that class treatment would achieve "economies of time, effort and expense" because the defendant

71

"advised the Court that the only other known action was voluntarily dismissed with prejudice.").

The federal and state governments have settled their claims and moved on. So have other private litigants who filed putative class actions. Thus, Plaintiffs are the only hope of compensating the putative class members, given the low odds of individual litigation. Accordingly, a class action would be a superior form of adjudication.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiffs' motion should be granted.

Dated:  April 24, 2026

Respectfully Submitted,

*/s/ Anthony Fiorentino*
Anthony Fiorentino
**FIORENTINO LAW OFFICE**
6119 North Kenmore Ave., Ste. 410
Chicago, IL 60660
(312) 305-2850
anthony@fiorentinolaw.com

*/s/ Daniel A. Edelman*
Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
dedelman@edcombs.com

*/s/ Carlo Sabatini*
Carlo Sabatini, PA 83831

72

**SABATINI LAW FIRM, LLC**
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
carlo@sabatinilawfirm.com

*Counsel for Plaintiffs Jill Ballard,*
*Rebecca Varno, and Mark Pokorni*

## CERTIFICATE OF WORD COUNT

In accordance with Local Rule 7.8, the undersigned hereby certifies that the substantive portion of the Plaintiffs' Reply in Support of Their Motion for Class Certification contains 14,964 words.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

DATED:  April 24, 2026

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on Friday, April 24, 2026, I caused a true and accurate copy of the foregoing document to be filed via the court's CM/ECF online system, which sent notice via email to all counsel of record.

*s/ Daniel A. Edelman*
Daniel A. Edelman