## <u>APPENDIX OF UNPUBLISHED OPINIONS</u>

1.    *Dumont Aircraft Charter, LLC v. Valvano*, 2022 WL 4472457 (M.D. Pa. Sept. 26, 2022)

**1**

Case 3:18-cv-00121-JFS-PJC    Document 265-1    Filed 05/04/26    Page 3 of 9

Dumont Aircraft Charter, LLC v. Valvano, Not Reported in Fed. Supp. (2022)

2022 WL 4472457
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

DUMONT AIRCRAFT CHARTER, LLC, Plaintiff,
v.
James A. VALVANO, et al., Defendants.

CIVIL ACTION NO. 3:22-CV-00572
|
Signed September 26, 2022

**Attorneys and Law Firms**

Gary P. Lightman, Glenn Anthony Manochi, Willam Lyle Stamps, Lightman & Manochi, Plymouth Meeting, PA, for Plaintiff.

Danielle M. Mulcahey, Ryann D. Loftus, Wright, Reihner & Mulcahey, Scranton, PA, for Defendants.

**MEMORANDUM**

KAROLINE MEHALCHICK, Chief United States Magistrate Judge

**\*1** Presently before the Court is a motion to set aside the entry of default filed by Defendants James A. Valvano ("Valvano") and 1732 N. Main Avenue, LLC (the "LLC") (collectively, "Defendants"), on June 21, 2022. (Doc. 12). Plaintiff Dumont Aircraft Charter, LLC ("Dumont") initiated this action by filing a complaint against Defendants on April 20, 2022, seeking a judgment against Defendants for the sums owed under a promissory note in the amount of $363,590.30, as of March 31, 2022. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 21). For the following reasons, Defendants' motion to set aside the entry of default shall be **GRANTED**. (Doc. 12).

**I. BACKGROUND AND PROCEDURAL HISTORY**

Dumont initiated this action on April 20, 2022, by filing a complaint against Defendants, seeking to enforce a promissory note signed by Valvano in favor of Dumont and to foreclose on a mortgage granted by the LLC to secure the debt owed. (Doc. 1). Dumont filed affidavits of service of personal service on May 23, 2022, attesting that Valvano was served on May 11, 2022, and the LLC was served on May 12, 2022.

(Doc. 4; Doc. 5). On June 3, 3033, Dumont filed a request for entry of default. (Doc. 6; Doc. 8). On June 7, 2022, default was entered by the Clerk of Court in favor of Dumont and against Defendants. (Doc. 7). On June 10, 2022, Defendants entered notices of appearance. (Doc. 9; Doc. 10).

On June 21, 2022, Defendants filed the motion to set aside the entry of default, as well as a brief in support. (Doc. 12; Doc. 13). Dumont filed a brief in opposition to Defendants' motion. (Doc. 15). Defendants filed a reply brief on July 19, 2022. (Doc. 16). Dumont filed an application for leave to file a sur-reply brief on July 25, 2022, and the Court asked counsel for Defendants to file a motion for leave to file a sur-reply in accordance with Local Rule 7.7. (Doc. 17). On July 26, 2022, Dumont filed a motion for leave to file a sur-reply. [1] (Doc. 18). Defendants filed a brief in opposition to Dumont's motion on July 28, 2022. (Doc. 20).

This action arises from Valvano's alleged breach of a certain $400,000.00 promissory note (the "Promissory Note"), which was part of a settlement agreement ("Settlement Agreement") between Dumont and Defendants, for a loan advanced by Dumont to enable Valvano to pay off a bank loan that Defendants owed and for which they were in default. (Doc. 1, at 3-7). In the Settlement Agreement, the parties settled four pending lawsuits, all arising from Valvano's failure to pay Dumont for a debt he incurred in connection with Dumont managing Valvano's business aircraft: (1) *VGH Aviation, LLC v. Dumont Aircraft Charter, LLC*, No. 3:17-CV-734 (M.D. Pa. Apr. 25, 2017); (2) *VHG Aviation, LLC v. Dumont Aircraft Charter, LLC*, No. 3:17-CV-735 (M.D. Pa. Apr. 25, 2017); (3) *TSE Global Aviation, LLC v. Dumont Aircraft Charter, LLC*, No. 3:17-CV-624 (M.D. Pa. Apr. 12, 2017); and (4) *Dumont v. TSE Global Aviation, LLC*, No. 1:17-CV-656 (D. Del. May 31, 2017). (Doc. 1, at 4). Under the Settlement Agreement, Dumont loaned Valvano the sum of $400,000.00 (the "Dumont Loan"), which is evidenced by the Promissory Note, signed by Valvano, as Maker, in favor of Dumont, as Payee, and dated May 31, 2018. (Doc. 1, at 4-5; Doc. 1-1, at 2-9; Doc. 1-2, at 2-8). The Promissory Note is secured by a security agreement and mortgage, granted by the LLC in favor of Dumont, with respect to two (2) real properties located in the City of Scranton, County of Lackawanna, Pennsylvania (the "Properties"). (Doc. 1, at 5; Doc. 1-2, at 3). The mortgage was duly recorded in the Office of the Recorder of Deeds of Lackawanna County on August 29, 2018. (Doc. 1, at 5; Doc. 1-3, at 2).

**\*2** The terms of the Promissory Note provide for interest on the unpaid principal at the rate of five percent (5%) per annum and require Valvano, as maker, to pay all costs and expenses, including attorneys' fees and costs, incurred by Dumont to collect upon the Dumont Loan. (Doc. 1, at 5-6; Doc. 1-2, at 2). In addition, the Promissory Note requires Valvano to make monthly payments of $5,000, commencing on July 1, 2018, and continuing on the same day of each calendar month thereafter, until the Dumont Loan is repaid in full, with interest and all applicable costs. (Doc. 1, at 6; Doc. 1-2, at 2). The Promissory Note provides that failure to timely repay the Dumont Loan, and to cure said default within ten (10) days after notice of default, is an event of default. (Doc. 1, at 6; Doc. 1-2, at 3). Upon default, the Promissory Note provides that the entire unpaid principal sum of the note, plus all interest accrued thereon, plus all other sums due and payable to Dumont under the Promissory Note, are due and payable immediately, without presentment, demand, notice of nonpayment protest, notice of protest, or other notice of dishonor. (Doc. 1, at 6; Doc. 1-2, at 3-4).

In the complaint, Dumont asserts claims for breach of contract, unjust enrichment/quantum meruit, and mortgage foreclosure. (Doc. 1, at 8-11). Dumont argues Valvano has defaulted in repaying the Dumont Loan because the last payment made by Valvano was on September 14, 2020, and no further monthly payments have been made thereafter. (Doc. 1, at 6). Dumont contends it notified Valvano of his default in repaying the Dumont Loan and that Valvano failed to timely cure his payment defaults to date. (Doc. 1, at 6). As relief, Dumont seeks (1) judgment against Valvano for all sums owed under the Promissory Note and other loan documents, including the security agreement and mortgage, as well as payment of all costs and expenses, including attorneys' fees and costs, incurred by Dumont to collect upon the Dumont Loan; and (2) judgment of mortgage foreclosure in its favor against Defendants and a foreclosure sale of the Properties subject to the mortgage. (Doc. 1, at 7-8). Dumont claims that as of March 31, 2022, the amount due and payable from Valvano is $363,590.30, which includes the remaining principal in the amount of $337,178.01 and accrued interest in the amount of $26,412.29. (Doc. 1, at 7).

The motion to set aside the entry of default has been fully briefed and is ripe for disposition. (Doc. 12; Doc. 13; Doc. 15; Doc. 18).

## II. LEGAL STANDARD

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure. Under subsection (a) of that rule, the Clerk of Court is instructed to enter a *default* against a defendant who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). "Entry of a default is a prerequisite to entry of a *default judgment* under Rule 55(b)." *Sys. Indus., Inc. v. Han*, 105 F.R.D. 72, 74 (E.D. Pa. 1985) (emphasis in original); *see also Enigwe v. Gainey*, Civil Action No. 10-684, 2012 WL 213510, at \*2 (E.D. Pa. Jan. 23, 2012) ("[A] default judgment under Rule 55(b) must be preceded by entry of a *default* under Rule 55(a).") (emphasis in original).

Once the entry of default under Rule 55(a) is entered, the party seeking default judgment is still not entitled to such. *Malibu Media, LLC v. Everson*, No. 4:19-CV-01048, 2021 WL 84180, at \*1 (M.D. Pa. Jan. 11, 2021). Rather, "a court is required to exercise sound judicial discretion in deciding whether to enter default judgment." *Kibbie v. BP/ Citibank*, No. 3:CV-08-1804, 2010 WL 2573845, at \*2 (M.D. Pa. 2010). In making this determination, courts use three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). "[W]hen a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment under Rule 55(c)." *Deutsche Bank Nat. Trust Co. v. Strunz*, No. 1:12-CV-01678, 2013 WL 122644, at \*1 (M.D. Pa. 2013).

**\*3** Additionally, "[a] decision to set aside an entry of default ... 'is left primarily to the discretion of the district court.' " *Bailey v. United Airlines*, 279 F.3d 194, 204 (3d Cir. 2002) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)). "The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In general, Courts disfavor the default procedure "because the interests of justice are best served by obtaining a decision on the merits." *Momah v. Albert Einstein Medical Center*, 161 F.R.D. 304, 307 (E.D. Pa. 1995) (citing *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir.1982); *Medunic v. Lederer*, 533 F.2d 891, 893–94 (3d Cir.1976)). As such, "Rule 55(c) motions are construed liberally in favor of the movant." *Momah*, 161 F.R.D. at 307 (citing *Hamilton v. Edell*, 67 F.R.D. 18, 20 (E.D. Pa. 1975)).

## III. DISCUSSION

Defendants move to set aside the entry of default on two grounds. First, Defendants argue Dumont failed to effect service upon them under Rule 4(e) of the Federal Rules of Civil Procedure. (Doc. 13, at 3). Second, Defendants contend that, applying the factors established by the Third Circuit, good cause to set aside the entry of default exists under Rule 55(c). (Doc. 12, at 3-4; Doc 13, at 3-6). In opposition, Dumont argues Defendants were properly served, they have failed to set forth meritorious defenses, and there is no valid legal reason to set aside the entry of default because "[D]efendants have not alleged and do not have any meritorious defense to Dumont's claims and because Valvano actually received the benefit of the money that Dumont is seeking in this lawsuit." (Doc. 15, at 5).

### A. SERVICE UPON DEFENDANTS

Defendants contends that entry of default must be set aside because they were not properly served. (Doc. 13, at 2). Dumont asserts that proper service was made upon Defendants and that the Court should not set aside the entry of default. (Doc. 15, at 1). District courts in the Third Circuit have found a showing of improper service sufficient to vacate an entry of default. *See Santiago v. Progressive N. Ins. Co.*, No. 1:18-CV-01635, 2019 WL 1354142, at *2 (M.D. Pa. Mar. 26, 2019) (vacating the entry of default due to a defect in service of process); *Callan v. Patel*, No. 15-CV-2357, 2017 WL 4310071, at *4 (M.D. Pa. Sept. 28, 2017) (setting aside the entry of default because the defendant was not properly served).

First, Defendants state Valvano was not properly served with the complaint on May 11, 2022, as averred in Dumont's affidavit of service (Doc. 4) because the individual served at Valvano's home, Alexa Chomko, is Valvano's stepdaughter, who is not a resident at Valvano's home, but rather resides in Philadelphia, Pennsylvania. (Doc. 13, at 2-3). Thus, Defendants claim Valvano had no obligation to answer or otherwise respond to Dumont's complaint.[2] (Doc. 13, at 3). In response, Dumont argues "service upon any adult person 'in charge of such residence,' is presumptively valid service under both Pa. R. Civ. P. 402(a)(2)(i) and F. R. Civ. P. 4." (Doc. 15, at 7). Dumont contends "[n]either the rule, not the caselaw, suggest that an adult step-daughter is exempt from the plain meaning of the services rules." (Doc. 15, at 7). Further, Dumont avers Defendants do not refute that the stepdaughter

was not "in charge of [his] residence" at the time she was served. (Doc. 18, at 5).

**\*4** Under Federal Rule of Civil Procedure 4(e)(2)(B), "an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by: ... leaving a copy of [both the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]" Fed. R. Civ. P. 4(e)(2)(B). Pennsylvania Rule of Civil Procedure 402(a) permits personal service: "(1) by handing a copy to the defendant; or (2) by handing a copy (i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence."

Dumont's affidavit of service as to Valvano states that Dumont's process server delivered a copy of the complaint to "Alexa Valvano as Daughter" at Valvano's usual place of abode. (Doc. 4, at 1). Significantly, Defendants readily concede that Valvano's stepdaughter accepted service of process at Valvano's legal residence. (Doc. 13, at 3). Furthermore, Dumont's process server's handing of the service documents to Valvano's stepdaughter constituted effective service of Valvano. *See* Fed. R. Civ. P. 4(e)(2)(B); Pa. R. Civ. P. 402(a)(2)(i). In light of the affidavit of service submitted by Dumont, the Court that the mere assertion that service is improper because the stepdaughter is not a permanent resident of Valvano's place of abode does not rebut the presumption of proper service. *See Drury v. Zingarelli*, 180 A.2d 104, 105 (1962) (service upon mother-in-law, who was not a permanent resident at defendant's residence, was valid). The contention that Defendants had no obligation to answer or otherwise respond to Dumont's complaint because Valvano's stepdaughter did not reside at his place of abode is a bare assertion of Defendants. (Doc. 13, at 3). However, "a bare allegation by a defendant that he was improperly served cannot be allowed to belie the private process server's return. Such a holding would overwhelm the clerk's office with these claims." *FROF, Inc. v. Harris*, 695 F. Supp. 827, 829 (E.D. Pa. 1988); *see also Lautman v. Loewen Grp., Inc.*, No. 99-75, 2000 WL 772818, at *10 (E.D. Pa. June 15, 2000) (finding an assertion unsupported by any corroborating evidence is insufficient to rebut the proper service of process by a process server). Accordingly, the Court finds that Dumont effectuated proper service upon Valvano.

Case 3:18-cv-00121-JFS-PJC    Document 265-1    Filed 05/04/26    Page 6 of 9

Dumont Aircraft Charter, LLC v. Valvano, Not Reported in Fed. Supp. (2022)

Second, Defendants claim the LLC was not properly served with the complaint on May 12, 2022, as averred in Dumont's affidavit of service (Doc. 5) because the affidavit "indicates service was made at 347 Rear Main Street, Dickson City, Pennsylvania upon an unnamed individual." (Doc. 13, at 3). Defendants claim the individual served "is not an officer or manager of [the LLC] or any way authorized to accept service on behalf of [the LLC]," and "was an on-site independent contractor performing mechanical work for another company distinct from [the LLC]." (Doc. 13, at 3). Thus, Defendants claim the LLC had no obligation to answer or otherwise respond to Dumont's complaint. (Doc. 13, at 3). In opposition, Dumont argues service was proper where "[t]he process service affirmed under oath that the 'Operations Manager,' who refused to provide their name, represented that they were employed by [the LLC] and authorized to accept service." (Doc. 15, at 8). Dumont asserts it satisfied the rules of Pennsylvania regarding service of process by service the Operations Manager, "who stated that Mr. Valvano is out of town and does not know when he will return," and "that he would give all documents and our card to Attorney Tunis, their attorney." (Doc. 15, at 8) (citing Doc. 5, at 1). Further, Dumont contends Defendants do not deny the Operations Manager was not, at the time of service, the person for the time being, in charge of the LLC's place of business. (Doc. 18, at 5).

**\*5** Service of process upon a corporation or similar business entity is accomplished "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent." Fed. R. Civ. P. (e)(1)(B). The Federal Rules also recognize service as valid if it is conducted in the United States and in accordance with either the state law of the jurisdiction in which the district court sits or the state law of the place of service. *See* Fed. R. Civ. P. 4(e)(1). The Pennsylvania Rules of Civil Procedure provide that service is effective upon a corporation or similar business entity if a copy of the summons and complaint are provided to one of the following:

(1) an executive officer, partner or trustee of the corporation or similar entity, or

(2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or

(3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

Pa. R. Civ. P. 424.

Pennsylvania also allows substitute service through handing to "an individual with some direct connection to the party to be served or one whom the process server determines to be authorized, on the basis of her representation of authority, as evidenced by the affidavit of service." *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 486 (3d Cir.1993) (interpreting Pennsylvania R. Civ. P. 402(a)(2)(iii) and holding that a building receptionist "with no employment ties to the defendant" was not authorized to receive service for him)

Here, the Court finds that Dumont's method of service was permissible. According to Dumont's affidavit of service as to the LLC, the Operations Manager's assertion that he was in fact authorized to accept service for the LCC and that he would give all documents to the LLC's attorney served to qualify him for substitute service. (Doc. 5, at 1); *see Grand Entm't Grp.*, 988 F.2d at 486 Furthermore, Dumont's process server's handing of the documents to the Operations Manager constituted effective service of the LLC. *See* Pa. R. Civ. P. 424(2) (allowing for service of a corporation by handing a copy to the manager of the business). In light of the affidavit of service submitted by Dumont, the Court "finds that a presumption exists in favor of proper service, which Defendants have failed to rebut." *J & J Sports Prods., Inc. v. Weiner, No. CIV.A. 13-6470, 2014 WL 1096171, at \*5 (E.D. Pa. Mar. 20, 2014)*. The contention that Defendants never received the complaint because the Operations Manager was an on-site independent contractor not authorized to accept service on behalf of the LLC is supported only by the bare assertion of Defendants. (Doc. 13, at 3). However, as noted *supra*, "a bare allegation by a defendant that he was improperly served cannot be allowed to belie the private process server's return. Such a holding would overwhelm the clerk's office with these claims." *FROF, Inc.*, 695 F. Supp. at 829; *see also Lautman*, 2000 WL 772818, at \*10. Accordingly, the Court finds that Dumont effectuated proper service upon the LLC.

**B.** MOTION TO SET ASIDE ENTRY OF DEFAULT
Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a final default under Rule 60(b)." As noted *supra*, the Third Circuit requires the district court to consider the following factors in exercising its discretion in granting or denying a motion to set aside a default under

Case 3:18-cv-00121-JFS-PJC    Document 265-1    Filed 05/04/26    Page 7 of 9

Dumont Aircraft Charter, LLC v. Valvano, Not Reported in Fed. Supp. (2022)

Rule 55(c) or a default judgment under Rule 60(b): "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain, 210 F.3d at 164*. Here, the Court finds that consideration of the above-mentioned factors weighs in favor of setting aside the entry of default. *$55,518.05 in U.S. Currency, 728 F.2d at 195*.

### 1. Prejudice to Plaintiff

 **\*6** The first factor for consideration centers on whether vacating the entry of default would result in prejudice to Dumont. "Prejudice exists if circumstances have changed since entry of the default such that plaintiff's ability to litigate its claim is now impaired in some material way or if relevant evidence has become lost or unavailable." *Accu-Weather, Inc. v. Reuters Ltd., 779 F. Supp. 801, 802 (M.D. Pa. 1991)* (citing *Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987)*). Additionally, " '[d]elay in realizing satisfaction on a claim rarely serves to establish' [a sufficient] degree of prejudice." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, 175 F. App'x 519, 523-24 (3d Cir. 2006)* (quoting *Feliciano, 691 F.2d at 656-57*). Dumont has not alleged, nor does the record indicate, that there are any overriding concerns of this nature such that special harm or prejudice would result to him if the entry of default were vacated. (Doc. 15). While Dumont may be subjected to some additional delays in realizing the satisfaction of his claims, nothing in this case indicates that his overall ability to pursue his claims would suffer. *See Daughtry v. Kauffman, No. 3:17-CV-0442, 2019 WL 118600, at \*2 (M.D. Pa. Jan. 7, 2019)* (setting aside entry of default where plaintiff failed to demonstrate his inability to litigate his claims in a material way or whether relevant evidence will become lost or unavailable). Therefore, the first factor weighs in favor of setting aside the entry of default against Defendants.

### 2. Defendants' Meritorious Defense

The second factor for consideration focuses on whether Defendants have established a meritorious defense for trial. "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.' " *§ 55,518 in U.S. Currency, 728 F.2d at 195* (quoting *Tozer v. Charles A. Krause Mill. Co., 189 F.2d 242, 244 (3d Cir.*

1951)). "In other words, there would be no reason to set aside the entry of default if [Defendants] could not demonstrate some possibility of success on the merits." *Clowney v. URS/ AECOM, URS Fed. Servs., No. CV 3:17-0223, 2018 WL 487843, at \*2 (M.D. Pa. Jan. 19, 2018)*. "[A] defendant must merely show that it has a defense to the action which at least has merit on its face." *Paradise v. Com. Fin. Sys., Inc., No. 3:13-cv-00001, 2014 WL 4717966, at \* 2 (M.D. Pa. Sept. 22, 2014)*. To understand whether Defendants could establish such a defense, the Court must undertake a brief inquiry into the case's underlying merits.

Here, Dumont brings claims of breach of contract, unjust enrichment/quantum meruit, and mortgage foreclosure. (Doc. 1, at 8-11). Dumont argues Valvano has defaulted in repaying the Dumont Loan because the last payment made by Valvano was on September 14, 2020, and no further monthly payments have been made thereafter. (Doc. 1, at 6). Dumont contends it notified Valvano of his default in repaying the Dumont Loan and that Valvano failed to timely cure his payment defaults to date. (Doc. 1, at 6). Defendants, in turn, assert that Dumont's complaint pertains to a default under the Promissory Note and mortgage, which Defendants contend Dumont procured through fraud and misconduct.[3] (Doc. 13, at 5). In response, Dumont contends "[a]n examination of the facts in this action explain why Defendants are unable to make allegations which support their fraud claims," pointing to the facts that Defendants were represented by counsel when negotiating the Settlement Agreement and Defendants made twenty-one (21) payments of principal and interest on Dumont's loan before Defendants failed to make further payments. (Doc. 18, at 6-7).

Though Defendants do not provide allegations or facts to support this contention, if the veracity of an argument for fraud or misconduct were to be established at trial, it would afford Defendants a defense to the claims against it. While this implies nothing about Defendants' actual likelihood of prevailing at trial, Defendants' asserted defenses are nonetheless potentially meritorious. (Doc. 13, at 5); *see Emcaso Ins. Co. v. Sambrick, 834 F.2d 71, 7 (3d Cir. 1987)* (internal citations omitted) ("We need not decide the legal issue at this time; it is sufficient that [defendants]'s proffered defense is not "facially unmeritorious."). Accordingly, this factor also weighs in favor of setting aside the entry of default against Defendants.

### 3. Defendants' Culpable Conduct

Case 3:18-cv-00121-JFS-PJC   Document 265-1   Filed 05/04/26   Page 8 of 9

Dumont Aircraft Charter, LLC v. Valvano, Not Reported in Fed. Supp. (2022)

**\*7** The final factor for consideration asks whether the entry of default resulted from Defendants' culpable conduct. For these purposes, culpable conduct means "dilatory behavior that is willful or in bad faith." *Dizzley v. Friends Rehab. Program, Inc.*, 202 F.R.D. 146, 148 (E.D. Pa. 2001) (citing *Gross*, 700 F.2d at 124). " 'Mere negligence' " on the part of the defendant does not satisfy the culpability standard." *Daughtry*, 2019 WL 118600, at \*3 (quoting *Hritz*, 732 F.2d at 1183). Further, courts consider "the extent to which the error is attributable exclusively to defendant['s] counsel." *Momah*, 161 F.R.D. at 308 (citing *Interior Finish Contractors Assoc. v. Drywall Finishers Local Union No. 1955*, 625 F. Supp. 1233, 1239 (E.D. Pa. 1985)). As noted *supra*, any grounds that would be sufficient to justify vacating a default judgment under Rule 60(b) are more than sufficient to satisfy the "good cause" standard for vacating an entry of default under Rule 55(c). *See Feliciano*, 691 F.2d at 656. Included among those permissible grounds are "mistake, inadvertence, surprise, or excusable neglect" as well as "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

Here, Defendants claim they "acted within a reasonable time period to rectify the default, such that no undue delay has been caused." (Doc. 13, at 6). Further, Defendants aver their failure to timely respond to Dumont's complaint was not willful, intentional, reckless, or in bad faith because Defendants were not properly served with the summons and the complaint. (Doc. 13, at 5; Doc. 16, at 3). In opposition, Dumont asserts "Defendants, while represented by counsel and after agreeing to accept service, simply ignored their payment obligations to [Dumont] after their counsel negotiated the specific settlement terms that Defendants wanted and Defendants performed under the Settlement Agreement for more than a year." (Doc. 15, at 6).

In resolving all doubts in favor of Defendants as required, the Court finds Defendants' conduct did not rise to the level of culpable conduct. Defendants' explanation for its failure to answer Dumont's complaint may demonstrate negligence that had a dilatory result, but it does not demonstrate dilatory intent or bad faith. Even if Defendants had acted willfully or in bad faith, a weighing of the applicable factors suggests that entry of default should be set aside as Dumont has failed to demonstrate prejudice and Defendants have presented a meritorious defense. *See Dizzley, 202 F.R.D. at 148* (citation omitted). Therefore, this factor weighs in favor of setting aside the entry of default.

This Court has weighed the aforementioned factors and concludes that the factors weigh in favor of setting aside the entry of default. *See Chamberlain*, 210 F.3d at 164. Dumont has not asserted how it has been prejudiced by any delay, Defendants have presented meritorious defenses to the complaint, and Defendants have not demonstrated dilatory intent or bad faith. Accordingly, the Court concludes that it is proper to set aside the entry of default entered against Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to set aside the entry of default is **GRANTED**. (Doc. 12).

An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4472457

---

## Footnotes

1    Upon consideration of Dumont's motion for leave to file a sur-reply in opposition to Defendants' motion to set aside entry of default, wherein Dumont contends a sur-reply is necessary to address the arguments and absence of arguments contained in Defendants' reply brief, the Court exercises its discretion to grant Dumont's motion for leave to file a sur-reply. (Doc. 18); *see Hess Fence & Supply Co. v. U.S. Fid. & Guar. Co.*, No. 4:04-CV-2648, 2006 WL 3325445 (M.D. Pa. Oct. 12, 2006) (decision on whether to grant leave to file a sur-reply is left to sound discretion of court); *Akers v. Beal Bank*, 760 F. Supp. 2d 1, 3 (D.D.C. 2011) (same). The Clerk of Court will be instructed to enter the sur-reply attached to Dumont's motion as a separate filing on the docket. (Doc. 18, at 4-8).

2    In the reply brief to the motion to set aside, Defendants argue for the first time that service of process is also improper because the Pennsylvania Rules of Civil Procedure provide that service must be made by the sheriff and that parties cannot combine provisions of federal and state law to effectuate service. (Doc. 16, at 4). Because Defendants did not raise this argument in their initial brief in support of their motion, the Court declines to address this newly raised argument as to why service was improper. *See United States v. Medeiros*, 710 F.Supp. 106, 109 (M.D. Pa. 1989) ("It is improper for a party to present a new argument in [a] reply brief."); *United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) (declining "to address any issue raised for the first time in a reply brief").

3    In their reply brief to their motion, Defendants raise an additional meritorious defense, arguing that this matter must be submitted to confidential and binding arbitration per the terms of the Settlement Agreement. (Doc. 16, at 9-10). As noted *supra*, the Court declines to address this newly raised meritorious defense. *See Medeiros*, 710 F. Supp. at 109; *Martin*, 454 F.Supp.2d at 281 n.3.

---

**End of Document**                                            © 2026 Thomson Reuters. No claim to original U.S. Government Works.