**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI, on behalf of themselves and the class members described herein, | ) | Case No. 3:18-cv-00121-JFS-PJC |
| Plaintiffs, | ) | |
| v. | ) | Judge Joseph F. Saporito, Jr. |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., and NAVIENT SOLUTIONS, LLC, | ) | Magistrate Judge Phillip J. Caraballo |
| Defendants. | ) | ELECTRONICALLY FILED |

# PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Anthony Fiorentino
**FIORENTINO LAW OFFICE**
6119 North Kenmore Ave., Ste. 410
Chicago, IL 60660
(312) 305-2850
anthony@fiorentinolaw.com

Daniel A. Edelman
Tara L. Goodwin
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
Phone (312) 739-4200
dedelman@edcombs.com
tgoodwin@edcombs.com

Carlo Sabatini, PA 838311
**SABATINI LAW FIRM, LLC**
216 N. Blakely St. Dunmore, PA 18512
(570) 341-9000
ecf@bankruptcypa.com

# TABLE OF CONTENTS

TABLE OF CONTENTS....i

TABLE OF AUTHORITIES.... ii

I. INTRODUCTION....1

II. BACKGROUND....1

III. ARGUMENT....2

A. Rule 23(c)(1)(C)....2

B. Navient's obstruction....3

1. Withholding discovery....3

2. Revised classes.....5

3. Concealing evidence....7

4. Withholding evidence.....9

5. Obstructing searches....11

6. More obstruction.....13

7. More extensions.....14

8. ED's searches.....15

9. Misrepresentations....17

10. Age of litigation....18

11. Misdirection....19

C. Class modifications....20

D. Forfeiture theory.....23

E. Inapplicable cases. ....................................................................................24

F. Delayed-loan-forgiveness claim. ....................................................................25

IV. CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Butela v. Midland Credit Mgmt. Inc.*,
341 F.R.D. 581 (W.D. Pa. 2022) ....................21

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015) ....................5

*Campbell v. Cnty. of Mercer*,
No. 2:23-CV-00099-CB-KT, 2025 WL 965181 (W.D. Pa. Mar. 31, 2025) ....................24

*Caporale v. EIDP, Inc.*,
No. CV 19-1672-JLH-SRF, 2026 WL 967253 (D. Del. Feb. 10, 2026) ........24

*Daskalea v. Washington Humane Soc.*,
275 F.R.D. 346 (D.D.C. 2011) ....................19

*Gates v. Rohm & Haas Co.*,
265 F.R.D. 208 (E.D. Pa. 2010), *aff'd*, 655 F.3d 255 (3d Cir. 2011) ....................21

*Gomberg v. W. Union Corp.*,
No. CIV. A. 89-8499, 1997 WL 338938 (E.D. Pa. June 16, 1997) ....................19

*Grider v. Keystone Health Plan Cent., Inc.*,
580 F.3d 119 (3d Cir. 2009) ....................10, 15

*Hargrove v. Sleepy's LLC*,
974 F.3d 467 (3d Cir. 2020) ....................2, 11, 23

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
183 F.4th 178 (3d Cir. 2026) ....................3

*In re Boeing Co. Aircraft Sec. Litig.*,
351 F.R.D. 108 (N.D. Ill. 2026) ....................18

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
655 F. Supp. 3d 899 (N.D. Cal. 2023) .................... 1, 12, 18, 23

*In re Fleet*,
76 B.R. 1001 (Bankr. E.D. Pa. 1987) .................... 19, 24

*Joyce v. Colter Energy Servs. USA, Inc.*,
No. 2:22CV1367, 2024 WL 326664 (W.D. Pa. Jan. 29, 2024) ..........................5, 6

*Little v. Dauphin Cnty.*,
No. 4:24-CV-02169, 2026 WL 2943143 (M.D. Pa. Sept. 30, 2026)................4

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) ..........................................................................22

*Morris v. Computer Credit, Inc.*,
No. 3:09CV1885, 2010 WL 3620188 (M.D. Pa. Sept. 10, 2010)...................24

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978)............................................................................................7

*Packer v. Glenn O. Hawbaker, Inc.*,
699 F. Supp. 3d 333 (M.D. Pa. 2023) ...................................................................2

*Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*,
No. CV 19-513, 2023 WL 4139375 (E.D. Pa. June 22, 2023).............................12

*Philbin v. Brett Dinovi & Assocs.*,
No. 21-CV-20402, 2024 WL 1907192 (D.N.J. Jan. 10, 2024) .......................24

*Siino v. Foresters Life Ins. & Annuity Co.*,
No. 20-cv-02904-JST, 2022 WL 20184654 (N.D. Cal. July 26, 2022).................2

*Thorne v. Pep Boys Manny Moe & Jack Inc.*,
980 F.3d 879 (3d Cir. 2020) ..........................................................................25

*Wallach v. Eaton Corp.*,
837 F.3d 356 (3d Cir. 2016)...........................................................................20

*Webb v. Discovery Prop. & Cas. Ins. Co.*,
No. 3:08-CV-01607, 2014 WL 105608, n.3 (M.D. Pa. Jan. 9, 2014)..................21

*Weisfeld v. Sun Chem. Corp.*,
84 F. App'x 257 (3d Cir. 2004) .......................................................................13

*Weitzner v. Sanofi Pasteur, Inc.*,
7 F. Supp. 3d 460 (M.D. Pa. 2014), *aff'd*, 819 F.3d 61 (3d Cir. 2016) ..........24

*Weitzner v. Sanofi Pasteur, Inc.*,
No. 3:11-CV-02198, 2017 WL 3894888, (M.D. Pa. Sept. 6, 2017),
*aff'd,* 909 F.3d 604 (3d Cir. 2018) ....................6

*Wharton v. Superintendent Graterford SCI*,
95 F.4th 140 (3d Cir. 2024) ....................11

**Rules and Regulations**

Fed. R. Civ. P. 37(b)(2) ....................10

Rule 16 ....................2

Rule 16(b)(4) ....................2, 3

Rule 23(c)(1)(C) ....................2

Rule 34(a) ....................10

**Statutes**

20 U.S.C. § 1085(l) ....................11

**Other Authorities**

Newberg and Rubenstein on Class Actions § 7:28 ....................22

## I. INTRODUCTION

Navient's request for denial with prejudice of Varno's Forbearance Classes fails because renewed certification motions do not require "good cause." Even if that standard applied, it would not support Defendants, who seek to exploit delays they created. Navient:

- Sought **18 extensions** of discovery and briefing deadlines;
- Delayed computer searches to identify class members for **two years** after the Court ordered them, and **four years** after Plaintiffs requested them; and
- **Purged electronic data** that should have been produced, forcing Plaintiffs to obtain it from the Department of Education (ED).

This case resembles a recent class action where the defendants "had the audacity to accuse the plaintiffs' lawyers of delaying the case" after obstructing "reasonable efforts to obtain obviously relevant discovery," then proceeded to "gaslight" the court about their "concerted, bad-faith effort to throw obstacle after obstacle in front of the plaintiffs." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 904 (N.D. Cal. 2023).

## II. BACKGROUND

During the class period, Defendants managed a portfolio of federal "direct" loans owned by ED under a servicing contract, and a portfolio of federal "FFEL" loans owned by Navient. Plaintiffs' classes include borrowers in both portfolios.

## III. ARGUMENT

### A. Rule 23(c)(1)(C).

According to Defendants, renewed certification motions require "good cause" under Rule 16(b)(4) because they seek to modify the scheduling order. Doc. 292 at 13-14 (citing *Siino v. Foresters Life Ins. & Annuity Co*., No. 20-cv-02904-JST, 2022 WL 20184654 (N.D. Cal. July 26, 2022)). Perhaps in California; not in the Third Circuit.

Rule 23(c)(1)(C) states: "An order that grants or denies class certification may be altered or amended before final judgment." In *Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020), the defendant argued that renewed certification motions must satisfy the standard for motions to reconsider. The court held:

> Concern about parties getting a second opportunity [at class certification] cannot override the language of Rule 23(c)(1)(C), which allows for multiple bites at the apple throughout the litigation, and that does not impose an additional requirement on parties to prove a change in law or show new evidence to succeed on a renewed motion for certification…[W]e know no reason why plaintiffs who can cabin more clearly their class, and meet the other Rule 23 requirements, should be barred from succeeding on a renewed motion...

*Id*. at 476. If the reconsideration standard "cannot override" Rule 23(c)(1)(C), neither can Rule 16. *Packer v. Glenn O. Hawbaker, Inc.*, 699 F. Supp. 3d 333, 339

(M.D. Pa. 2023) (Brann, J.) (holding that certification rulings are "prospective and subject to change as the case develops.").

Navient also argues that certification of Varno's classes should be denied with prejudice because the R&R's recommendations on Ballard's class "apply equally" to Varno. Doc. 292 at 19. Ballard's class was analyzed under Rule 23. Varno's were not. Doc. 278 at 27 (declining to analyze Varno's classes without additional briefing).

Varno's classes involve different servicing errors, regulatory provisions, and state statutes. Doc. 208 at 48-53. Certification of her classes cannot be denied with prejudice without a rigorous analysis of her claims. *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 183 F.4th 178, 195 (3d Cir. 2026) ("Rule 23 requires rigorous consideration of all the evidence and arguments offered by the parties.").

**B. Navient's obstruction.**

If Rule 16(b)(4) applied, it would support Plaintiffs, who have diligently prosecuted this case, despite Navient's years-long obstruction.

**1. Withholding discovery.**

The First Amended Complaint ("FAC") was filed in May 2018. Ballard alleged that Navient failed to renew her Income-Driven-Repayment (IDR) plan, causing interest to capitalize. Doc. 29, ¶¶ 56-68. Varno pleaded that Navient

enrolled her in unnecessary forbearances during IDR processing, causing interest capitalization. *Id.* ¶¶ 69-77. Pokorni alleged that Navient improperly delayed his IDR enrollment. *Id.* ¶¶ 78-86. In July 2018, Navient filed a motion to dismiss, but due to docket congestion, it was not denied until April 2021. Doc. 57.

Plaintiffs' 2021 discovery requests sought computer searches to identify class members. Doc. 83-1. *See Little v. Dauphin Cnty.*, No. 4:24-CV-02169, 2026 WL 2943143, at *5 (M.D. Pa. Sept. 30, 2026) (noting that the Third Circuit permits discovery of class members "at the pre-certification stage."). Defendants requested a two-month extension to respond. Docs. 81-4; 81-6. Plaintiffs concurred, provided that Navient would not oppose a motion to amend or add parties after the December 2021 deadline. Doc. 81-5 at 2. Navient agreed. *Id.*

Defendants answered discovery in January 2022, but did not identify class members. They claimed the classes were "overbroad" because they included borrowers whose IDR applications were "not complete." Docs. 208-24 at 28-33; 208-35 at 2. Plaintiffs advised that Navient must identify the classes, notwithstanding any overbreadth theories. Doc. 81-8. Defendants replied, "We disagree." Doc. 208-35 at 2.

Parties do "not have the unilateral prerogative to determine the scope of discovery" based on "their own theories of the case" because they lack "authority to determine class certification." *Joyce v. Colter Energy Servs. USA, Inc.*, No. 2:22CV1367, 2024 WL 326664, at *2 (W.D. Pa. Jan. 29, 2024). *See also Byrd v. Aaron's Inc.*, 784 F.3d 154, 169 (3d Cir. 2015) (holding that overbreadth challenges are decided by the Court "within the rubric of the relevant Rule 23 requirements.").

However, given Defendants' refusal, Plaintiffs proceeded to depose Navient's Vice President of Loan Servicing, Jeffrey Stine, so that his testimony could provide a basis for classes Navient would accept.

**2. Revised classes.**

[redacted]

In August 2022, Plaintiffs propounded five revised classes, based on Stine's testimony. Doc. 208-25. Ballard's class was limited to borrowers whose

renewal applications were "complete and timely." *Id*. at 6. Varno's two classes involved improper forbearance enrollment. *Id*. at 6-7.

Defendants refused to perform computer searches because the FAC did not contain the revised definitions. Docs. 81-12 at 2; 208-26 at 2. This was improper because "a court is not bound by the class definition proposed in the complaint." *Weitzner v. Sanofi Pasteur*, *Inc.*, No. 3:11-CV-02198, 2017 WL 3894888, at *9 (M.D. Pa. Sept. 6, 2017), *aff'd,* 909 F.3d 604 (3d Cir. 2018). *See also Joyce*, 2024 WL 326664, at *1 (holding that discovery is not limited to specific class definitions unless the court "entered an order limiting the class.").

Nonetheless, to advance discovery, Plaintiffs agreed to amend the pleadings. Doc. 81-5. They expected no opposition, given the parties' agreement, but Defendants reneged, opposing the amendments as untimely. They claimed the agreement permitted adding *parties* after the deadline, not *pleadings*. Doc. 86 at 15. This was a bad-faith breach. The agreement specifically referred to the "deadline to amend and add parties." Doc. 81-5 at 2.

Because Navient breached its promise – after exploiting a 60-day extension – nine months were wasted on motion practice. In June 2023, the Second Amended Complaint ("SAC") was filed. It proposed five nationwide classes. Doc. 80-1, ¶ 95.

**3. Concealing evidence.**

Under Rule 23(d), courts may "require a defendant's cooperation in identifying the class members." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 355 (1978). Accordingly, in July 2023, the Court ***ordered*** Navient to compile the "data elements" for all classes and produce that information by August 31, 2023 "to the extent it is available and can be compiled." Doc. 91. At Defendants' request, the deadline was extended to September 28, 2023. Doc. 96.

On September 14, 2023, Navient served an attestation from its Chief IT Officer, Patrick Theurer, stating that only one class – Pokorni's "Improper Delay" class – was ascertainable with a computer search. Doc. 208-27 at 6-11.

On October 4, 2023 (a week after the *extended* deadline), Navient produced *partial* results for Pokorni's class, [redacted] Doc. 99-2 at 6-7. Navient's discovery responses explained:

> Because of the novation of its servicing contract with ED in October 2021, [Navient] does not have data on its servicing system that would allow for the search with respect to borrowers whose loans were originated by ED. That data was transferred, pursuant to ED requirements, in connection with the novation.

Doc. 99-2 at 7. Defendants had not previously notified Plaintiffs of the novation. Its timing is significant.

On October 18, 2021, Plaintiffs requested identification of class members in *both* portfolios and instructed Navient to state whether any relevant data had been "transferred to a third party." Doc. 81-3 at 5, 10-11. *At that moment*, Defendants were transferring ED's servicing data, but this was never disclosed. Doc. 208-24. Plaintiffs' discovery requests also sought any "extensions, modifications and amendments" to Navient's servicing contract. Doc. 81-3 at 16. Defendants executed the novation three weeks earlier, on September 28, 2021.[1] Doc. 101-1 at 2. But they did not produce it to Plaintiffs.

Plaintiffs demanded the novation before Theurer's deposition, which was scheduled for October 27, 2023. Docs. 99 at 2; 101 at 4-5. Defendants refused to produce it, so Plaintiffs sought a Court order. Doc. 99. Defendants then filed a docket letter, claiming that Navient conveyed "custody of, and access to, the ED servicing data to Maximus," another loan servicer, and therefore did "not have access to the ED data on a live system." Doc. 101 at 2-3. They also denied that the novation fell within Plaintiffs' discovery requests. *Id*. at 5. The Court disagreed, ordering production before Theurer's deposition. Doc. 103.

[1] Navient's discovery response (Doc. 99-2 at 7) falsely states that the novation occurred in "October 2021."

Because the novation was subject to a protective order (Doc. 73), it required no redactions, but Navient did not produce it until November 14, 2023, a month after Plaintiffs demanded it. This pushed Theurer's deposition to December 19, 2023, the earliest alternative date offered. Doc. 231-4 at 1. The novation states:

[redacted]

Doc. 231-4 at 245-251.

**4. Withholding evidence.**

[redacted]

[redacted] Thus, when Plaintiffs requested identification of class members in August 2022, Defendants ***knew*** they were purging responsive evidence from Navient's database.

The copy of ED's servicing data fell squarely within Rule 34(a), which includes "electronically-stored information" in "any medium from which information can be obtained" that is within the responding party's "possession, custody, or control." By failing to inspect that data, Navient violated the Court's order to compile the relevant data "to the extent it is available and can be compiled." Doc. 91. *See also* Fed. R. Civ. P. 37(b)(2) (authorizing sanctions against parties "for not obeying a discovery order").

The Third Circuit condemns such tactics. In *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 135 (3d Cir. 2009), the defendants "denied the existence of documents that plaintiffs had sought throughout discovery," claiming they were "destroyed," when, in fact, 60 boxes of responsive records were in storage. The

court found that the defendants "impeded discovery" by withholding the documents. *Id.* at 138. *See also Hargrove*, 974 F.3d at 483 (holding that defendants may not "thwart" certification by failing to preserve documents they have "an obligation to keep").

Additionally, Navient's docket letter was misleading. It stated that Defendants did "not have access to the ED data ***on a live system***." Doc. 101 at 3 (emphasis added). This implied a lack of custody, but the data was in storage. Such equivocations are sanctionable because the duty of candor prohibits statements "that are literally true but actually misleading." *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 148 (3d Cir. 2024).

**5. Obstructing searches.**

Defendants manufactured hairsplitting excuses to avoid identifying class members in Navient's portfolio. One of Varno's classes was allegedly unidentifiable because it excluded defaulted borrowers without defining "default." Doc. 208-27 at 7-8. But the term is defined statutorily. *See* 20 U.S.C. § 1085(l).

Ballard's class was allegedly unidentifiable because it included borrowers whose income-driven payments were "canceled," but Navient refers to this event as "calculat[ion] under the standard payment plan." Doc. 208-27 at 7. This was a difference in terminology, not a feasibility issue.

Similar tactics were used in *In re Facebook*, where the defendant declined to identify class members because the plaintiffs' search queries included terms that Facebook "did not use." 655 F. Supp. 3d at 914. This resulted in so much "back and forth" over terminology that the searches were still not completed "nearly three years after the plaintiffs' first request." *Id*. This was evidence of "bad faith." *Id*. at 928.

Another asserted basis for refusing to perform the searches was Navient's defense theories. Ballard's class was not identified because it encompassed applications that arrived two days before the deadline, which did not provide "adequate" processing time, and would place Navient "in an unfair situation." Theurer Dep. 139-140. Thus, according to Navient, the class was "overly-inclusive." *Id.* at 139:12-18. One of Varno's classes was not identified because it included borrowers eligible for payments "as low as $0, for an extended period of time." Doc. 208-27 at 8. This was a theory of damages, not a feasibility issue.

Theurer admitted that these issues did not prevent computer searches. Theurer Dep. 117:9-118:12, 172:19-173:6. Thus, the classes should have been identified. *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. CV 19-513, 2023 WL 4139375, at *4 (E.D. Pa. June 22, 2023) ("A party from whom discovery is sought may not dictate the scope of discovery based on their own view of the parties' respective theories of the case.").

Theurer admitted that, with minor adjustments of the query language, four classes were ascertainable. *Id*. at 148:15-152:22, 180:1-184:4, 192:1-198:13. These adjustments were terminological, involving no changes to Plaintiffs' theories of liability. *Id*.

Theurer identified only one class criterion that, as a practical matter, precluded computer searches: the damages element. He claimed that "the reason" why interest capitalizes is "not reflected in a manner that allows for systematic identification." Doc. 208-27 at 6-9. Accordingly, Plaintiffs eliminated this criterion from the class definitions. Doc. 118-3 at ¶ 95. However, they later discovered that Navient was, in fact, capable of extracting this data. *See* Section (III)(b)(8), *infra*.

**6. More obstruction.**

Three days after Theurer's deposition, Plaintiffs propounded revised search queries, incorporating his clarifications, and requested that Navient proceed with computer searches. Doc. 208-30 at 2. Defendants refused because the query language was not word-for-word identical with the class definitions. Doc. 208-31 at 2. This was improper because 1) Navient had not sought a protective order to stay the court-ordered searches; and 2) courts are not "bound by the class definition proposed in the complaint." *Weisfeld v. Sun Chem. Corp.*, 84 F. App'x 257, 259 (3d Cir. 2004).

To resolve this dispute, Plaintiffs moved to file the Third Amended Complaint ("TAC"), which imported the revised query language into the class definitions. Doc. 118-2. Defendants opposed Plaintiffs' motion, then requested a briefing extension. Doc. 124. In December 2024, the TAC was finally permitted. Doc. 136. Navient then sought to extend its deadline to answer the complaint.

**7. More extensions.**

In February 2025, Navient sought another 60-day extension on the computer searches. Doc. 145 at 4. This was **19 months** after the Court ordered them. To justify the request, Navient filed a docket letter, stating: "In January of 2024, six years after the first Complaint in this case was filed, Plaintiffs served four requests seeking the number of individuals that fell within the ambit of…proposed new class definitions." Doc. 146.

This letter provided a misleading account to Judge Caraballo, who was recently assigned to the case. Ballard requested computer searches in **October 2021**; Varno, in **August 2022**. Years later, neither had received results.

Nonetheless, the deadline was extended to May 5, 2025. Doc. 153. However, Defendants did not produce final head counts until September 19, 2025 – *four months later*. Doc. 208-28. This was:

- ***four days*** after close of discovery;
- ***two years*** after the original deadline; and

- ***four years*** after Plaintiffs' initial request.

Such delays are evidence of bad faith. *Grider*, 580 F.3d at 125, 135, and 138 (finding that defendants "impeded discovery" by repeatedly denying their ability to produce relevant data for "years after plaintiffs' initial requests," then produced it on "the last day of class discovery.").

**8. ED's searches.**

Because Navient refused to inspect ED's servicing data, Plaintiffs obtained it from ED. On February 19, 2025, they subpoenaed computer searches to identify class members in ED's portfolio, and "a data compilation" stating how much interest capitalized "in connection with the transactions" for each class. Doc. 212-2.

In November 2025, ED produced the data, providing substantially more evidence than Navient had produced in four years. Doc. 260-36. [redacted] This proved that Navient misrepresented its ability to identify transactions involving capitalization.

[redacted]

[redacted] Thus, Navient could have identified relevant transactions involving interest capitalization, just as ED did.

This was corroborated in February 2026, when Pokorni received $963.29 from the CFPB's settlement with Navient. Doc. 260-12 at 1. The CFPB announced: "By steering struggling borrowers into forbearance – where interest continues to accrue and capitalize – Navient's illegal actions led numerous borrowers to pay additional interest charges." *See* https://www.consumerfinance.gov/archive/newsroom/cfpb-bans-navient-from-federal-student-loan-servicing-and-orders-the-company-to-pay-120-million-for-wide-ranging-student-lending-failures/ (Sept. 12, 2024) (last visited October 20, 2026).

Pokorni's award shows that damages based on interest capitalization are ascertainable. [redacted]

**9. Misrepresentations.**

After receiving ED's data compilation, Plaintiffs served it on Defendants and moved for certification four days later – a week ahead of their deadline. Docs. 168, 208.

Navient immediately moved to strike the evidence, claiming that Plaintiffs had "never referenced a data compilation or interest capitalization figures," which was a "data dump" at the "eleventh hour," and "grossly prejudicial." Doc. 198 at 1-3. These were false claims.

In February 2025, Plaintiffs served Navient with the subpoena to ED. Doc. 212-1 at 4. In March, Defendants objected to the subpoena's request for a "data compilation that states the amount of any interest capitalizations," claiming it was "overbroad." *Id*. at 3. However, in May 2025, they agreed to a compilation of "interest capitalization figures" if it was limited to "the relevant class period." Docs. 212-3 at 1; 212-4 at 2.

Defendants made misrepresentations to the Court that concealed their lack of diligence. After receiving Plaintiffs' subpoena, they had **six months** before discovery closed (September 15, 2025) to notice a Rule 45 deposition of the official preparing the data compilation, and to ask that this deposition be incorporated into the case management schedule. They did neither.

In a subsequent filing, Defendants dropped their motion to strike, but sought a 60-day extension on their opposition brief, and the reopening of discovery – *in the middle of certification briefing* – to depose Lisa Aton, the official who prepared ED's data. Doc. 211. These requests were granted.

**10. Age of litigation.**

At oral argument, Navient repeatedly alluded to the age of this case, hoping it would be blamed on Plaintiffs. Doc. 276 at 16, 22, 74, 89, 113. They failed to mention their **18 extensions**. Docs. 19, 26, 27, 31, 35, 37, 46, 75, 84, 97, 122, 138, 170, 180, 185, 211, 222, 229. By comparison, Plaintiffs sought three. Docs. 164, 187, 242.[2]

Now, Navient insists that, "after almost nine years of litigation," the "class aspects of this case must end." Doc. 292 at 5-6. Facebook used similar rhetoric, arguing that the "case [was] out of control," and that it was "time for the plaintiffs to be told 'no mas, no mas.'" *In re Facebook*, 655 F. Supp. 3d at 924. The court found that such bombast could "only be described as an effort to gaslight their opponents (and the Court)." *Id*. at 927.

The age of this case demonstrates Plaintiffs' years-long dedication to the classes. *See In re Boeing Co. Aircraft Sec. Litig.*, 351 F.R.D. 108, 122 (N.D. Ill. 2026) ("Plaintiffs have demonstrated their commitment to fairly and adequately

[2] These tallies exclude four extensions sought jointly. Docs. 41, 65, 82, 279.

protect the interests of the class by vigorously prosecuting this action on behalf of themselves and all other class members over at least five years.”); *Daskalea v. Washington Humane Soc.*, 275 F.R.D. 346, 377 (D.D.C. 2011) (finding a class representative adequate because he actively participated in the case “during the seven years it [had] been pending.”).

*See also In re Fleet*, 76 B.R. 1001, 1006 (Bankr. E.D. Pa. 1987) (rejecting arguments that certification was untimely, given “the lack of cooperation of the defendants” in producing discovery “when ordered to do so.”); *Gomberg v. W. Union Corp.*, No. CIV. A. 89-8499, 1997 WL 338938, at *5 (E.D. Pa. June 16, 1997) (rejecting arguments of prejudice from delayed certification because “none of these alleged prejudicial effects were caused by plaintiff’s delay.”).

**11. Misdirection.**

Navient did not contest adequacy of counsel under Rule 23(g). That would have required examining the procedural history, revealing Navient’s years-long obstruction. Instead, Navient sowed confusion over Plaintiff’s response to a last-minute overbreadth challenge.

Defendants argued in their opposition brief – *for the first time* – that Ballard’s class was overinclusive because it encompassed two borrowers who were ineligible for IDR renewal. Doc. 231 at 13. Plaintiffs responded in their reply brief, limiting the class to “approved” applicants. Doc. 260 at 44.

At oral argument, Defendants implied that Ballard's response was untimely: "Plaintiffs can't define the class. We're eight years into litigation. They're still changing class definitions at the last minute." Doc. 276 at 89. This inverted the facts. *Navient* waited eight years to raise its overbreadth challenge. Ballard responded immediately. Nonetheless, this specious argument worked. The R&R quoted it to support denial of Ballard's motion with prejudice. Doc. 278 at 96.

The same error was made in *Wallach v. Eaton Corp.*, 837 F.3d 356 (3d Cir. 2016). The defendants raised a standing challenge – for the first time – in their brief opposing certification. The plaintiffs promptly moved to substitute class representatives, but the district court denied the request as untimely. *Id*. at 373-74. This was error because the defendants "did not bring their challenge to [the plaintiff's] standing until ***five years*** into the litigation, thereby bringing upon themselves any prejudice stemming from" it. *Id*. at 378 (emphasis in original). The R&R made the same error, permitting Navient's last-minute overbreadth challenge, but foreclosing any response to it. Doc. 278 at 69.

**C. Class modifications.**

Navient claims that modifying the class definitions "after the close of class discovery" is "late-stage gamesmanship." Doc. 292 at 9. In fact, classes are

frequently modified during class certification, *which routinely occurs after close of discovery*. Defendants' own authority proves the point.

Navient cites *Webb v. Discovery Prop. & Cas. Ins. Co.*, No. 3:08-CV-01607, 2014 WL 105608, n.3 (M.D. Pa. Jan. 9, 2014), in which the court held that "***issues*** raised for the first time in a Reply Brief" may not be considered (emphasis added). However, the court *permitted* consideration of a "different class definition" proposed in the plaintiff's reply brief to address "issues raised in Defendants' Brief in Opposition to class certification." *Id*. n.2. Thus, a modified ***class definition*** is not a ***new issue***.

*See also Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 215 (E.D. Pa. 2010), *aff'd*, 655 F.3d 255 (3d Cir. 2011) (permitting "substantially modified" class definitions proposed in the plaintiffs' reply brief); *Butela v. Midland Credit Mgmt. Inc.*, 341 F.R.D. 581, 590 (W.D. Pa. 2022) (permitting amendment of class definitions in the plaintiff's reply brief because "formulating a workable class definition generally requires ongoing refinement and give-and-take.").

This process of refinement produced the Modified Forbearance Class. Defendants refused to execute computer searches until the class definitions were *word-for-word* identical with computerized search queries. *See* Section (III)(b)(6), *supra*. This resulted in definitions with abstruse terms such as "posting date" and "non-capping." Doc. 118-3 at ¶ 95.

That kind of jargon creates notice issues. *See* 3 Newberg and Rubenstein on Class Actions § 7:28 (6th ed.) ("If the class definition is murky and a potential absent class member cannot ascertain whether she is or is not a member of the class, she will not know how to proceed, a situation raising due process concerns.") (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591–92 (3d Cir. 2012)).

To address this concern, Plaintiffs combined the criteria from Varno's two forbearance classes into a single class, described in layman's terms. Doc. 208 at 51. This raised no new issues because all criteria were pulled from the existing forbearance classes.

Navient objected, claiming the class was prejudicial because it expanded class membership. Doc. 232 at 31. In fact, combining the classes would have *benefited* Navient [redacted]

Nonetheless, to resolve Navient's objection, Plaintiffs reverted to the original definitions. But instead of ending the dispute, this became fodder for more misdirection. At oral argument, Navient asserted that, by *withdrawing* the Modified Forbearance Class, Plaintiffs were playing a game of "whack-a-mole," which was "very prejudicial." Doc. 276 at 86.

Facebook used similar rhetoric, arguing that the plaintiffs' "unfocused whack-a-mole process" was a "scattershot approach to litigation." *In re Facebook*, 655 F. Supp. 3d at 924. The defendants so distorted the plaintiffs' reasonable concessions that the court wondered if the plaintiffs "began to question their own sanity." *Id.* at 927.

**D. Forfeiture theory.**

Defendants claim that Plaintiffs "forfeited the ability to seek certification of the forbearance classes by failing to address those classes in their Motion for Certification." Doc. 292 at 5. This argument is baseless.

The Modified Forbearance Class *combined* the criteria of the forbearance classes in the TAC, and was therefore based on the same legal theories of unlawful forbearance enrollment. Those theories received **21 pages** of discussion in Plaintiffs' certification brief. Doc. 208 at 18-21, 23-25, 28-34, 36-37, 49, 51, 52-54.

Additionally, Navient cites no case in which a class definition absent from *one* certification motion was deemed "forfeited" from any subsequent motion. That would contravene *Hargrove*, 974 F.3d at 476-77, which held that plaintiffs who offer a "clearer definition" of the classes should not be barred from "succeeding on a renewed motion."

**E. Inapplicable cases.**

Navient cites cases in which a plaintiff was barred from renewing a certification motion, but none are on point. In *Campbell v. Cnty. of Mercer*, No. 2:23-CV-00099-CB-KT, 2025 WL 965181 (W.D. Pa. Mar. 31, 2025), the plaintiff's theory of unconstitutional strip searches was "precluded under binding legal authority." Here, Plaintiffs pleaded valid claims. Doc. 57.

In *Philbin v. Brett Dinovi & Assocs.*, No. 21-CV-20402, 2024 WL 1907192 (D.N.J. Jan. 10, 2024), and *Caporale v. EIDP, Inc.*, No. CV 19-1672-JLH-SRF, 2026 WL 967253 (D. Del. Feb. 10, 2026), plaintiffs sought to move for certification long after the court-ordered deadline. Here, Plaintiffs filed a week early. Docs. 168, 208.

In *Morris v. Computer Credit, Inc.*, No. 3:09CV1885, 2010 WL 3620188 (M.D. Pa. Sept. 10, 2010), a certification motion was untimely under Local Rule 23.3's 90-day deadline. Here, that deadline never applied because Navient's Rule 12(b)(6) motion was pending for two years. *See In re Fleet*, 76 B.R. at 1006 (disregarding the 90-day deadline where the defendant's motion to dismiss was held "under advisement for over two years," delaying certification).

*See also Weitzner v. Sanofi Pasteur, Inc.*, 7 F. Supp. 3d 460, 466 (M.D. Pa. 2014), *aff'd*, 819 F.3d 61 (3d Cir. 2016) (holding that, notwithstanding the

90-day deadline, "normally a date for filing a motion for class certification appears in the case's case management order.").

**F. Delayed-loan-forgiveness claim.**

Navient seeks dismissal of Pokorni's delayed-loan-forgiveness claim with prejudice. Doc. 292 at 22-23. This Court already declined to dismiss that claim on the pleadings. Doc. 256. Moreover, dismissal on standing grounds "reflects a lack of jurisdiction" and should therefore be without prejudice. *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020).

## IV. CONCLUSION

Plaintiffs respectfully request that the Court overrule Navient's objections, adopt the R&R's recommendation that certification of the Forbearance Classes be denied without prejudice, and deny Navient's request to dismiss Pokorni's delayed-loan-forgiveness claim with prejudice.

Respectfully submitted,

*/s/ Anthony Fiorentino*
Anthony Fiorentino

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Anthony Fiorentino
**FIORENTINO LAW OFFICE**
6119 North Kenmore Ave., Ste. 410
Chicago, IL 60660
(312) 305-2850
anthony@fiorentinolaw.com

Carlo Sabatini, PA 838311
**SABATINI LAW FIRM, LLC**
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
ecf@bankruptcypa.com

Daniel A. Edelman
Tara L. Goodwin
**EDELMAN, COMBS,**
**LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
Phone (312) 739-4200
dedelman@edcombs.com
tgoodwin@edcombs.com

## **CERTIFICATE OF WORD COUNT**

In accordance with Local Rule 7.8, the undersigned hereby certifies that the substantive portion of the Plaintiffs' Response to Defendants' Objections to Magistrate Judge's Report and Recommendation contains 4,999 words.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

DATED: October 23, 2026

**CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, hereby certify that on October 23, 2026, I caused a true and accurate copy of the foregoing document to be filed via the court's CM/ECF online system, which sent notice via email to all counsel of record.

*/s/ Daniel A. Edelman*
Daniel A. Edelman