**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI, on behalf of themselves and the class members described herein, | ) | |
| | ) | Case No. 3:18-cv-00121-JFS-PJC |
| Plaintiffs, | ) | |
| v. | ) | Judge Joseph F. Saporito, Jr. |
| | ) | |
| NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., and NAVIENT SOLUTIONS, LLC, | ) | Magistrate Judge Phillip J. Caraballo |
| | ) | |
| Defendants. | ) | ELECTRONICALLY FILED |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR OBJECTIONS TO THE REPORT AND RECOMMENDATION ON CLASS CERTIFICATION**

Anthony Fiorentino
**FIORENTINO LAW OFFICE**
6119 North Kenmore Ave., Ste. 410
Chicago, IL 60660
(312) 305-2850
anthony@fiorentinolaw.com

Carlo Sabatini, PA 838311
**SABATINI LAW FIRM, LLC**
216 N. Blakely St. Dunmore, PA 18512
(570) 341-9000
ecf@bankruptcypa.com

Daniel A. Edelman
Tara L. Goodwin
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
Phone (312) 739-4200
dedelman@edcombs.com
tgoodwin@edcombs.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Denial with prejudice is improper. ..... 1

1. No examination of procedural history. ..... 1

2. Additional evidence could be outcome-determinative. ..... 4

3. Navient cites inapplicable case law. ..... 8

B. Class definitions. ..... 9

1. Ballard's narrowed class was timely. ..... 9

2. *Webb* and *Gates* do not support Navient. ..... 12

3. Navient misinterprets Judge Carlson's order. ..... 12

C. No choice-of-law analysis. ..... 13

D. Plaintiffs can establish causation. ..... 13

E. Navient's arguments involving individualized inquiries are baseless. 15

1. Damages inquiries may be individualized. ..... 16

2. Plaintiffs do not need opinion testimony from Aton. ..... 17

F. Navient's overbreadth theory is unsupportable. ..... 18

G. The Rosenthal Act claim was ignored. ..... 18

H. The R&R failed to consider dropping out-of-state claims. ................21

I. Reliance can be established classwide. ............................................22

III. CONCLUSION ..........................................................................................23

# Table of Authorities

## Cases

*Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund*,
29 F.3d 863 (3d Cir. 1994)....................2

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)....................14

*Asbestos Prods. Liab. Litig.*,
718 F.3d 236 (3d Cir. 2013)....................2

*Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
183 F.4th 178 (3d Cir. 2026)....................3, 20

*Bateman v. Am. Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010)....................19

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015)....................11, 18, 21

*Chedwick v. UPMC*,
No. CIV.A. 07-806, 2011 WL 1559792 (W.D. Pa. Apr. 21, 2011)....................8

*Chen v. Amtrak*,
No. 18-3617, 2019 WL 5294419 (E.D. Pa. Oct. 18, 2019)....................16

*Chiang v. Veneman*,
385 F.3d 256 (3d Cir. 2004)....................16

*Chocolate Confectionary Antitrust Litig.*,
289 F.R.D. 200 (M.D. Pa. 2012) ....................................................................15

*Finberg v. Sullivan*,
634 F.2d 50 (3d Cir. 1980)...............................................................................11

*Gates v. Rohm & Haas Co.*,
265 F.R.D. 208 (E.D. Pa. 2010), *aff'd*, 655 F.3d 255 (3d Cir. 2011) ...................12

*Gonzales v. Arrow Fin. Servs.*,
660 F.3d 1055 (9th Cir. 2011)..........................................................................19

*Gutierrez v. Johnson & Johnson*,
269 F.R.D. 430 (D.N.J. 2010)...........................................................................8

*Harmon v. Sussex Cnty.*,
810 F. App'x 139 (3d Cir. 2020).................................................................8, 10

*Hildebrand v. Allegheny Cnty.*,
923 F.3d 128 (3d Cir. 2019)...............................................................................1

*Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008)..............................................................................15

*Lemp v. Seterus, Inc.*,
No. 2:18-cv-01313, 2022 WL 912960 (E.D. Cal. Mar. 29, 2022) .......................20

*Mielo v. Steak 'n Shake Operations, Inc.*,
897 F.3d 467 (3d Cir. 2018)...............................................................................9

*Mindek v. Rigatti*,
964 F.2d 1369 (3d Cir. 1992)....................................................................2

*Modafinil Antitrust Litig.*,
837 F.3d 238 (3d Cir. 2016)....................................................................3

*Mwantembe v. TD Bank, N.A.*,
268 F.R.D. 548 (E.D. Pa. 2010)..............................................................19

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015)....................................................................16

*Perry v. Stewart Title Co.*,
756 F.2d 1197 (5th Cir. 1985)..................................................................20

*Poulis v. State Farm Fire & Cas. Co.*,
747 F.2d 863 (3d Cir. 1984)....................................................................2

*Powers v. Lycoming Engines*,
328 Fed. App'x. 121 (3d Cir. 2009)........................................................13

*Progressive Cas. Ins. Co. v. Delaney*,
No. 2:11-CV-00678-LRH, 2014 WL 3563467 (D. Nev. July 18, 2014)...............7

*Suboxone Antitrust Litig.*,
967 F.3d 264 (3d Cir. 2020)....................................................................16

*United States ex rel. Cressman v. Solid Waste Servs., Inc.*,
665 F. App'x 166 (3d Cir. 2016)..............................................................2

*Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
337 F.R.D. 610 (D.N.J. 2020)..................................................................7

*Wallach v. Eaton Corp.*,
837 F.3d 356 (3d Cir. 2016) ....................................................................11

*Webb v. Discovery Prop. & Cas. Ins.*,
No. 3:08-CV-01607, 2014 WL 105608 (M.D. Pa. Jan. 9, 2014)..........................12

**Statutes**

28 U.S.C. § 636(b)(1)........................................................................................8

32B Am. Jur. 2d Federal Courts § 1494..................................................................10

34 C.F.R. § 682.215(e) ............................................................................ 14, 16

C.F.R. § 682.215(a)(2) ..........................................................................................20

Cal. Civ. Code § 1788.30(a)...................................................................................19

Rule 23(b)(3)...........................................................................................................14

Rule 72(b)(3)..............................................................................................................8

Existence of Identifiable Class, 1 McLaughlin on Class Actions § 4:2 (22nd ed.)...9

Federal Practice and Procedure § 1790 (2023).......................................................12

# I. INTRODUCTION

Plaintiffs will first address why, contrary to Navient's assertions, the R&R's recommendation to deny certification of Ballard's and Pokorni's proposed classes with prejudice should be rejected. Then, Plaintiffs will discuss why Navient's arguments do not support denying certification of Ballard's class.

# II. ARGUMENT

## A. Denial with prejudice is improper.

### 1. No examination of procedural history.

According to Defendants, the R&R correctly determined that denial of certification with prejudice is appropriate for Ballard's and Pokorni's classes because this case has been pending for "over eight years." Doc. 303 at 23. That argument rests on the R&R's conclusion that Plaintiffs engaged in "undue delay." R&R at 97. However, the R&R cites no action (or inaction) by Plaintiffs that delayed this litigation. R&R at 97-98. It simply assumes that Plaintiffs, not Defendants, are responsible for the age of this case and should be penalized for it.

The Third Circuit has "repeatedly acknowledged" that dismissals with prejudice are "drastic sanctions that must be a sanction of last, not first, resort." *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 132 (3d Cir. 2019). Six factors must be considered before dismissing a case with prejudice on account of delay: 1) The extent of the plaintiff's personal responsibility; 2) prejudice caused by a failure to

meet deadlines and respond to discovery; 3) a history of dilatoriness; 4) whether the party's conduct was willful; 5) the meritoriousness of the claim; and 6) the effectiveness of sanctions other than dismissal. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984).

The *Poulis* factors must be considered whenever a dismissal with prejudice is "punitive" in nature. *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). Here, the recommendation was punitive because it cited "undue delay" as its basis. R&R at 97.

In weighing the *Poulis* factors, "the procedural history of each case must be examined." *In re Asbestos Prods. Liab. Litig.*, 718 F.3d 236, 246 (3d Cir. 2013). "If the case is close, doubts should be resolved in favor of reaching a decision on the merits." *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund,* 29 F.3d 863, 870 (3d Cir. 1994).

Because the R&R examined no procedural history, its with-prejudice recommendation should be rejected. *See United States ex rel. Cressman v. Solid Waste Servs., Inc.*, 665 F. App'x 166, 169 (3d Cir. 2016) ("We conclude that the District Court abused its discretion…the record does not show any evidence that the District Court considered the *Poulis* factors before dismissing this case [with prejudice].").

Additionally, it is error to overemphasize the age of a case when performing a Rule 23 analysis. In *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 246 (3d Cir. 2016), the plaintiffs moved for certification after "more than eight years of litigation," and the district court placed "particular emphasis" on the "exhaustive discovery" and "extensive history" of the case. *Id.* at 246-247. The Third Circuit held that the district court "abused its discretion by improperly emphasizing the late stage of the proceeding" because this factor had "no place" in the analysis. *Id.* at 249. More recently, in *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 183 F.4th 178 (3d Cir. 2026), the Third Circuit remanded a class action that had been pending for **19 years** and permitted discovery to be reopened. Plaintiffs' case has been pending less than half as long.

Neither Navient nor the R&R cites a case in which the litigation's age *alone* supported denial of certification with prejudice. Such a rule would incentivize defendants to engage in dilatory tactics. Indeed, the R&R found that Plaintiffs' counsel demonstrated their adequacy under Rule 23(g) by remaining "committed to this action for over seven years." R&R at 48. How can a years-long commitment to this case weigh *in favor* of certification, but simultaneously support denial of certification *with prejudice*?

2. Additional evidence could be outcome-determinative.

Navient argues that a renewed certification motion "would be futile" because any "additional opportunity to offer evidence of record" would not change the outcome. Doc. 303 at 22. In fact, Plaintiffs have obtained the very evidence that the R&R deemed necessary to analyze Ballard's narrowed class: the number of class members who were eligible for IDR renewal. *See* R&R at 68. That evidence was produced when Navient performed its first round of computer searches to identify Ballard's class members. However, the week discovery closed, Navient represented that the search results were erroneous, then replaced them with alternative data, using an undisclosed search methodology. As a result, the original search results never entered into the record.

On May 5, 2025, Defendants served the results of a computer search for borrowers in Ballard's class. The search identified 2,524 individuals who meet the class criteria. *See* Exhibit 1, May 2025 Search Results, at 3. The parties' agreement regarding the search methodology was set forth in Navient's discovery response:

> [T]he term "deemed complete" is not a status used within Defendants' servicing system. Accordingly, ***as discussed with counsel for Plaintiffs***, Defendants have substituted the status "approved" in the place of "deemed complete."

Ex. 1 at 3 (emphasis added). In other words, the parties agreed that "deemed complete" should be interpreted to mean "approved" for purposes of identifying

Ballard's class. Thus, all 2,524 class members were borrowers whose IDR renewal applications were approved.

Four months later, on September 15, 2025 – *the last day of discovery* – the Court held a case management conference. During that conference, defense counsel announced that Navient made an "error" in the computer searches and needed to redo them. *See* Exhibit 2, Affidavit of Anthony Fiorentino, at ¶ 2. Defense counsel did not explain the nature of the "error," but he assured that the updated results would not prejudice Plaintiffs because they would increase class membership. *Id.*

That afternoon, Plaintiffs' counsel called defense counsel and asked for more information about the "error" and how it was discovered. *Id.* at ¶ 3. Defense counsel declined to explain; he stated that this information would be provided in Navient's forthcoming discovery response. *Id.*

Four days later, Navient produced an updated head count for Ballard's class: 5,548 borrowers (doubling the class size). Doc. 208-28 at 3. However, the discovery response did not explain how the May 2025 search results were erroneous. It merely stated that "expanded source data" was used to provide a "broader view" of when borrowers entered or exited IDR plans. Doc. 208-28 at 2. **The discovery response did not disclose any changes to the parties' agreed-upon search methodology.** *Id.*

On October 22, 2025, Navient served the report of its expert, [redacted]

One month later, Plaintiffs moved for certification. Doc. 208. Relying on Navient's representation that the May 2025 search results were in "error," Plaintiffs adduced the September 2025 search results. Doc. 208 at 38. The R&R analyzed those results and found that Ballard's class was overbroad because it included at least two IDR applicants who were ineligible for IDR renewal. R&R at 68.

[redacted] Those individuals could not have been included in the

search unless Navient had deviated from the agreed-upon search methodology: that only "approved" applicants would be included. Ex. 1 at 3. Plaintiffs were never notified of this change in methodology. And, because discovery was closed, they were unable to depose any witnesses about how the September 2025 search was conducted. Because Navient unilaterally altered the agreed-upon search methodology *after* close of discovery, without notifying Plaintiffs, Ballard should be permitted to renew her motion and adduce the original search results.

In *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 337 F.R.D. 610 (D.N.J. 2020), the parties agreed on a computer search methodology based on negotiated search terms, but two weeks before the production deadline, the defendants announced that they were utilizing an "alternative" methodology. *Id.* at 613-14. This was deemed improper because the new methodology was disclosed "late in the game," and was "unilaterally adopted and implemented" after "months of negotiations and argument over search terms." *Id.* at 619.

In *Progressive Cas. Ins. Co. v. Delaney*, No. 2:11-CV-00678-LRH, 2014 WL 3563467, at *1-2 (D. Nev. July 18, 2014), the parties "met and conferred" and agreed on a set of computer "search terms." *Id.* at *6. Later, the producing party adopted a different methodology and "implemented it without input or consultation from the [opposing party's] counsel." *Id.* at *4. The court criticized this approach because there was no disclosure of "the process and the methodology." *Id.* at *10.

Given Navient's lack of transparency, and the production of material evidence after close of discovery, Ballard should be permitted to adduce the original search results in a renewed motion. *See Gutierrez v. Johnson & Johnson*, 269 F.R.D. 430, 434 (D.N.J. 2010) (holding that a renewed certification motion is appropriate when there are "developments in the factual background, a modified proposed class definition…or any other changes which may cure defects earlier found by the court.").[1]

3. Navient cites inapplicable case law.

To support denial of certification with prejudice, Navient cites *Chedwick v. UPMC*, No. CIV.A. 07-806, 2011 WL 1559792 (W.D. Pa. Apr. 21, 2011). There, the plaintiff's certification motion was *not* denied with prejudice; the court merely encouraged the plaintiffs to "concentrate their efforts" on individual claims because their class theory of unlawful discrimination had been rejected by the Third Circuit. *Id*. at *3. Navient points to no precedent that bars Plaintiffs' theories of classwide relief. In fact, this Court has already ruled that Plaintiffs pleaded valid claims. Doc. 57.

---

[1] The foregoing rebuttal evidence is proper because it refutes Navient's claim that offering additional evidence in a renewed motion would be "futile." Doc. 303 at 22. *See Harmon v. Sussex Cnty.*, 810 F. App'x 139, 142 (3d Cir. 2020) (endorsing the rule that evidence may be attached to a reply brief if it is "responsive to positions" raised in the opposition brief.) *See also* 28 U.S.C. § 636(b)(1) and Rule 72(b)(3), authorizing judges to receive evidence when ruling on objections to a magistrate judge's report.

Navient also cites *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 491 (3d Cir. 2018). There, the Third Circuit remanded so the plaintiffs could present "a newly-formulated class definition free of the Rule 23(a) deficiencies" identified by the court. *Id.* at 490–91. *Mielo* does not support denial of certification with prejudice.

**B. Class definitions.**

1. Ballard's narrowed class was timely.

Defendants argue that the R&R properly rejected Ballard's narrowed class as a "belated suggestion raised in a reply brief" because Navient "did not have an opportunity to respond." Doc. 303 at 7. This inverts the facts.

In their opposition brief, Defendants argued that Ballard's class was overinclusive because it encompassed borrowers who were ineligible for IDR renewal. Doc. 231 at 13. This contention was based on the September 2025 search results, which were produced *after* close of discovery. Doc. 232-2 at n.230; n.231.

Plaintiffs responded to this belated evidence by limiting the class to "approved" applicants. Doc. 260 at 44. This was standard practice. *See* Existence of Identifiable Class, 1 McLaughlin on Class Actions § 4:2 (22nd ed.) ("There is near-consensus that the plaintiff may narrow the class definition during the class certification process."). However, at oral argument, defense counsel asserted that this was improper:

> The critical piece that's missing is that piece that they actually qualified for renewal. My colleagues in their reply brief in support of their class certification say, "Well, we can add another element to the search; we can add, 'approved,' to the search." No, you can't. You can't do that in a reply brief. You can't do that after everybody worked from the same search criteria, and you don't get a mulligan here.

Doc. 276 at 24:16-24. Once again, Navient inverts the facts. "Approved" was the originally agreed-upon search term, but Defendants secretly changed the search methodology after close of discovery, claiming they made an "error" (*i.e.*, mulligan), then replaced the May 2025 search results with new data that supported their overbreadth theory.

Despite those facts, Navient continues to argue that proposing a narrowed class definition in a reply brief is improper. If that were the rule, plaintiffs would have no way of responding to an overbreadth challenge first raised in an opposition brief. *See* 32B Am. Jur. 2d Federal Courts § 1494 ("proposing a narrower class" is a common response to arguments that a "class as originally defined was overbroad"). Thus, Plaintiffs' reply brief was the proper vehicle for Ballard's narrowed class definition. *See Harmon*, 810 F. App'x at 142 (stating that reply briefs may respond to arguments "raised for the first time in [the non-movant's] opposition" brief.).

In *Wallach v. Eaton Corp.*, 837 F.3d 356 (3d Cir. 2016), a standing challenge was raised in the defendant's brief opposing certification. When the plaintiffs moved for intervention of class representatives, the district court denied the request as untimely. *Id*. at 373-74. This was error because the defendants "did not bring their challenge to [the plaintiff's] standing until five years into the litigation, thereby bringing upon themselves any prejudice stemming from" it. *Id*. at 378. Similarly, the R&R permitted Navient's late-stage overbreadth challenge – based on evidence produced after close of discovery – but barred Plaintiffs from responding to it.

Navient defends the R&R's reasoning by arguing that "a court *may* – but is not *required* to – modify a class definition under Rule 23(c)(1)." Doc. 303 at 8. That is beside the point. The error was failing to ***consider*** Ballard's narrowed class. R&R at 69. In *Byrd v. Aaron's Inc*., 784 F.3d 154, 166 (3d Cir. 2015), the plaintiff "redefined the proposed classes," but the district court analyzed the "old" class definition. This was error because the original definition was no longer "germane" to the "relevant bases for class membership." *Id*. at 167.

In *Finberg v. Sullivan*, 634 F.2d 50, 64 (3d Cir. 1980), the Third Circuit vacated a denial of certification and stated: "The problem [of overbreadth] identified by the district court might well be remedied by requiring a more specific or a narrower definition of classes. *The district court should not deny certification*

*on account of such problems without* ***considering the possibility*** *of redefining the classes*." *Id*. at n.9 (emphasis added). Thus, if a plaintiff narrows her class to satisfy Rule 23, a rigorous analysis must consider the narrowed definition.

2. *Webb* and *Gates* do not support Navient.

In *Webb v. Discovery Prop. & Cas. Ins.*, No. 3:08-CV-01607, 2014 WL 105608 (M.D. Pa. Jan. 9, 2014), and *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208 (E.D. Pa. 2010), *aff'd*, 655 F.3d 255 (3d Cir. 2011), the district courts analyzed class definitions that were modified in a reply brief. Navient attempts to distinguish those cases by claiming that the defendants "consented" to the modifications. Doc. 303 at 7-8. Nothing in either opinion supports that claim. If a defendant's consent were needed to narrow the class, plaintiffs would always be at the defendant's mercy at the certification stage.

3. Navient misinterprets Judge Carlson's order.

According to Navient, Judge Carlson's order (Doc. 88) did not "suggest the Court should endorse a new proposed class definition raised for the first time in Plaintiffs' class certification reply." Doc. 303 at 9. In fact, Judge Carlson noted that, under Rule 23(c), plaintiffs may modify class definitions during "the certification stage," to "cure unforeseen problems that emerge." Doc. 88 at 14 (citing Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1790 (2023)).

**C. No choice-of-law analysis.**

According to Navient, "Plaintiffs urge the Court to reject the R&R's choice-of-law analysis." Doc. 303 at 13. That is not Plaintiffs' contention. The R&R did not *perform* a choice-of-law analysis. Defendants admit this. They acknowledge that the R&R did not "expressly hold" that multiple state laws apply to the contract claims, but its "conclusion" – that *every* state's common law applies – is "evident from the R&R's determination." Doc. 303 at 14. That was precisely the error: reaching a conclusory finding with no analysis.

Plaintiffs explained why Pennsylvania common law governs all contract claims. Doc. 260 at 64. The R&R ignored this analysis but did not conduct its own. It found that variations between state laws rendered this case unmanageable, without explaining why multiple state laws apply in the first place. R&R at 81-90. That was error. *Powers v. Lycoming Engines*, 328 Fed. App'x. 121, 124-128 (3d Cir. 2009) (vacating and remanding with instructions to conduct a choice-of-law analysis because a "necessary precondition to deciding Rule 23 issues is a determination of the state whose law will apply.").

**D. Plaintiffs can establish causation.**

According to Navient, the R&R correctly determined that predominance was lacking because Plaintiffs failed to "show through classwide proof that interest capitalized because of IDR cancellation." Doc. 303 at 11. In fact, Plaintiffs have

established, through unrebutted testimony, that all members of Ballard's class would offer the same proof of causation at trial:

1. Under 34 C.F.R. § 682.215(e), when borrowers timely submit an IDR renewal application, the servicer must maintain the income-driven payments until the application is processed, and interest may not be capitalized.
2. Ballard's narrowed class includes IDR-eligible borrowers who timely submitted a complete IDR renewal application, but nonetheless had their plans canceled. Doc. 260 at 54–55.

[redacted]

Because this evidence is sufficient to prove all class members' claims, there is no basis for Navient's claim that "litigating the Ballard class would require more than 78,000 mini-trials." Doc. 303 at 19-20.

Whether Plaintiffs *succeed* at trial makes no difference for certification purposes. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class

predominate, not that those questions will be answered, on the merits, in favor of the class.") (emphasis in original). *See also In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 219 (M.D. Pa. 2012) (holding that "turning class certification into a mini-trial" would run "dangerously close to stepping on the toes of the Seventh Amendment by preempting the jury's factual findings.").

The burden at certification is not to prove the class's injuries, but to demonstrate that they can be established "at trial through evidence that is common to the class." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311–12 (3d Cir. 2008). Because Plaintiffs have a viable method of establishing causation at trial with common proof, they have satisfied Rule 23.

**E. Navient's arguments involving individualized inquiries are baseless.**

Navient argues that predominance is not satisfied because "account-by-account inquiries" would be needed to determine damages. Doc. 303 at 16. This assertion rests on the claim that Lisa Aton "did not know" whether the figures on ED's spreadsheet were causally related to IDR expiration. *Id*. Plaintiffs dispute that contention, but even if it were true, Navient's argument would fail for two reasons: 1) The need for individualized inquiries involving damages does not defeat predominance; and 2) Plaintiffs do not need opinion testimony from [redacted] to establish causation.

1. <u>Damages inquiries may be individualized.</u>

"It has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Chiang v. Veneman*, 385 F.3d 256, 273 (3d Cir. 2004). *See also In re Suboxone Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020) (holding that "individualized determinations" on damages "are of no consequence in determining whether there are common questions concerning liability" and "do not ordinarily preclude the use of the class action device.").

IDR plan *expiration* establishes liability for Ballard's narrowed class because, under 34 C.F.R. § 682.215(e), loan servicers may not cancel the borrower's income-driven payments if a complete IDR renewal application is timely submitted. How much interest capitalized when the plan expired is a *damages* question, which may be individualized. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374–75 (3d Cir. 2015) ("Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well-nigh universal.").

Navient's reliance on *Chen v. Amtrak*, No. 18-3617, 2019 WL 5294419 (E.D. Pa. Oct. 18, 2019) is misplaced. There, the evidence did not establish whether the defendant sprayed injury-causing herbicide on all class members'

properties. Thus, individualized inquiries were needed to determine *liability*, not damages.

2. <u>Plaintiffs do not need opinion testimony from Aton.</u>

Navient argues that Ballard cannot establish causation with common proof because [redacted] "did not know" whether the interest capitalizations on ED's spreadsheet were caused by IDR expiration. Doc. 303 at 16. As stated above, Plaintiffs dispute this claim, but regardless, [redacted] testimony is not needed to establish causation. It can be proved with the testimony of Navient's own officials. [redacted] Navient has offered no evidence to rebut that claim. Thus, ED's spreadsheet, combined with the testimony of Navient's officials, establishes a causal link between IDR expiration and the contemporaneous interest capitalizations. Opinion testimony from [redacted] – a records custodian – is not needed.

### F. Navient's overbreadth theory is unsupportable.

According to Navient, the R&R correctly determined that Ballard's class was overbroad because the September 2025 search results – produced after close of discovery – included at least two borrowers who did not qualify for IDR renewal "due to income ineligibility." Doc. 303 at 10. This is irrelevant because Plaintiffs are not required "to identify all class members at class certification." *Byrd*, 784 F.3d at 163. They need only demonstrate that "class members *can* be identified." *Id.* (emphasis in original).

Thus, the question is: Can Defendants identify all borrowers in Ballard's class who, during the class period, were eligible for IDR renewal? Yes. They already have. [redacted] Because Navient has already disclosed the number of IDR-eligible borrowers in Ballard's class – 2,524 – the issue of IDR eligibility will not predominate over common issues.

### G. The Rosenthal Act claim was ignored.

The R&R disposed of Ballard's Rosenthal Act claim in a footnote with no analysis. R&R at n.7. Defendants suggest that this omission was harmless because

the "same manageability and predominance concerns permeating the Ballard Class with respect to the breach of contract and other statutory causes of action would apply to the Rosenthal Act claim." Doc. 303 at 21. In fact, the Rosenthal Act claim involves different elements of proof, which are *especially* suitable for class treatment.

The Rosenthal Act allows plaintiffs to recover statutory damages in class actions. *See Gonzales v. Arrow Fin. Servs.*, 660 F.3d 1055 (9th Cir. 2011). Thus, if calculating actual damages raises manageability issues, those concerns would not apply to statutory damages under the Rosenthal Act. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 717-19 (9th Cir. 2010) (holding that, when a proposed class seeks both actual and statutory damages, the latter can be awarded uniformly to the class, even if such relief is "disproportionate" to the actual losses. *Id*.

Additionally, the R&R's manageability analysis would not apply to the Rosenthal Act claim because only one state's law is involved. *See Mwantembe v. TD Bank*, *N.A*., 268 F.R.D. 548, 562 (E.D. Pa. 2010) ("Because this is not a nationwide class, choice-of-law issues are not present.").

Moreover, the Rosenthal Act does not require proof of reliance. A plaintiff need only establish that she suffered damages "as a result of the violation." Cal. Civ. Code § 1788.30(a). Thus, the R&R's reliance analysis would not apply to this claim. According to the R&R's own reasoning, the Rosenthal Act claim is the most

suitable for class treatment; yet it received no analysis. That was error. *Avandia*, 183 F.4th at 195 ("Rule 23 requires rigorous consideration of all the evidence and arguments offered by the parties.").

Defendants now attempt to supply the missing analysis. They argue that the Rosenthal Act requires proof "that all class members' student loans were in default." Doc. 303 at 20, citing *Lemp v. Seterus, Inc.*, No. 2:18-cv-01313, 2022 WL 912960 (E.D. Cal. Mar. 29, 2022). *Lemp* says nothing about default with respect to the Rosenthal Act or student loans.

There, a homeowner brought a class action against his mortgage servicer under the Rosenthal Act and the Fair Debt Collection Practices Act (FDCPA). Under the FDCPA, the definition of "debt collector" excludes mortgage servicers, except those who collect payments from a "borrower whose account is in default." *Id*. at *3. Thus, "individual inquiries" were "required to prove a core element of liability" under the FDCPA. *Id*. This exception does *not* apply to the Rosenthal Act. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (holding that, whereas the definition of "debt collector" under the FDCPA excludes mortgage servicers, "the Rosenthal Act does not so limit the definition of 'debt collector.'").

Moreover, the issue of default could not possibly raise individualized issues in this case because Ballard's class members were all IDR enrollees. *See* 34 C.F.R. § 682.215(a)(2), which excludes defaulted borrowers from IDR enrollment.

The R&R's failure to analyze the Rosenthal Act claim was error. *Byrd*, 784 F.3d at 169 (holding that district courts must conduct a rigorous analysis of the Rule 23 requirements on all important issues "in the first instance.").

**H. The R&R failed to consider dropping out-of-state claims.**

According to Navient, "Plaintiffs contend that the R&R erred in failing to certify a Pennsylvania law class." Doc. 303 at 14. That is not Plaintiffs' contention. The error was failing to ***consider*** Plaintiffs' proposal of dropping out-of-state claims to render this case manageable. Doc. 294 at 19-22. The R&R dismissed this option as a "conditional, noncommittal proposal." R&R at 96.

To defend this reasoning, Navient argues that the proposal was "waived" because it took up "one sentence" and was not raised "during oral argument." Doc. 303 at n.7; 15. These assertions contradict the very R&R Navient seeks to defend. *See* R&R at 74 (stating that Plaintiffs "repeatedly suggest (in their reply brief and at oral argument) that, should the Court find various hurdles in their attempts to seek certification, it could allow [them] to proceed under the UTPCPL, and abandon the other state law claims.").

In any event, Rule 23 arguments must receive rigorous consideration, no matter how succinctly they are made. In *Byrd*, 784 F.3d at 169, the plaintiff inserted a footnote in his certification reply brief to explain why the proposed classes were ascertainable. He elaborated on that argument in his objections to the

magistrate judge's report (which found that the classes were *not* ascertainable). *Id*. Because the district court "summarily adopted" the magistrate judge's report, the Third Circuit was "left to wonder" why the ascertainability argument was "inadequate." *Id*. at 170. Accordingly, the denial of certification was reversed as an abuse of discretion. *Id*. at 165, 172. This illustrates that even arguments introduced in a *footnote* require rigorous consideration.

Here, Plaintiffs' certification reply brief raised the possibility of dropping out-of-state claims to render this case manageable. Doc. 260 at 72-73. That proposal has now been reiterated in these objections, so it was not forfeited. The R&R erred by excluding that option from consideration.

**I. Reliance can be established classwide.**

Ballard's UTPCPL claim requires proof of reliance. As explained in a 2015 CFPB report, the wrongful cancellation of an IDR plan leaves borrowers with three options: 1) miss a payment; 2) make an inflated payment; or 3) request forbearance. Doc. 208-8 at 6. Plaintiffs argued that each option entails reliance on a fraudulent bill sent to all class members. Doc. 260 at 32-33. Thus, reliance can be proved on a classwide basis.

Rather than addressing this argument on the merits, Defendants assert that the CFPB report "is not evidence." Doc. 303 at 17. However, they do not dispute that any borrower whose IDR plan is canceled would face those three options.

They attack the admissibility of the CFPB report, but ignore the underlying facts. The R&R makes the same error, omitting any discussion of this argument.

## III. CONCLUSION

As per Plaintiffs' opening brief (Doc. 294), they respectfully request:

1. Certification of Ballard's narrowed class, with claims under the Servicing Contract and UTPCPL;
2. Certification of Ballard's California subclass, with claims under the MPN and Rosenthal Act;
3. For Pokorni's classes, denial without prejudice and limited discovery to cure the deficiencies raised in the R&R;
4. For Varno's classes, denial without prejudice.

Respectfully submitted,

*<u>/s/ Anthony Fiorentino</u>*
Anthony Fiorentino

*<u>/s/ Daniel A. Edelman</u>*
Daniel A. Edelman

Anthony Fiorentino
**FIORENTINO LAW OFFICE**
6119 North Kenmore Ave., Ste. 410
Chicago, IL 60660
(312) 305-2850
anthony@fiorentinolaw.com

Carlo Sabatini, PA 838311
**SABATINI LAW FIRM, LLC**
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000
ecf@bankruptcypa.com

Daniel A. Edelman
Tara L. Goodwin
**EDELMAN, COMBS,**
**LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
Phone (312) 739-4200
dedelman@edcombs.com
tgoodwin@edcombs.com

# CERTIFICATE OF WORD COUNT

In accordance with Local Rule 7.8, the undersigned hereby certifies that the substantive portion of the Plaintiffs' Reply in Support of their Objections to the Report and Recommendation on Class Certification contains 4,999 words.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

DATED: November 23, 2026

# CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on November 23, 2026, I caused a true and accurate copy of the foregoing redacted Plaintiffs' Reply in Support of their Objections to the Report and Recommendation on Class Certification to be filed via the court's CM/ECF online system, causing a copy to be sent to all counsel of record.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI on behalf of themselves and the class members described herein,<br><br>Plaintiffs,<br>v.<br><br>NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., AND NAVIENT SOLUTIONS, LLC,<br><br>Defendants. | Civil No. 3:18-cv-00121-JFS-PJC |

**DEFENDANT NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC.'S, AND NAVIENT SOLUTIONS, LLC'S RESPONSES TO PLAINTIFFS' REQUEST FOR COMPUTER SEARCHES**

Defendant Navient Corporation ("Navient Corp.")[1] and Navient Solutions, LLC, formerly known as Navient Solutions, Inc. ("NSL") (collectively "Defendants"), through undersigned counsel and pursuant to the Stipulation and Order dated March 4, 2025 [ECF No. 153], hereby responds to Plaintiffs' Request for Computer Searches (the "Request") propounded by plaintiffs Jill Ballard, Rebecca Varno, and Mark Pokorni (collectively, "Plaintiffs"). In so doing, Defendants incorporate the

[1] As indicated in Navient Corp.'s Answer to Plaintiffs' Third Amended Complaint, Navient Corp. "does not originate, service, or collect on student loans and does not have any contractual or other relationship with Plaintiffs." *See, e.g.,* Navient Corp's Answer to Plaintiff's Third Amended Complaint at ¶3 [ECF No. 140 at 1-2]. Accordingly, the information provided in these responses is in the possession, custody and control of NSL and not Navient Corp.



Document Ref: QNLKA-GTIFA-R87X6-GYQWW

Objections to the Computer Requests served on January 31, 2025.

## PRELIMINARY STATEMENT

Defendants respond to the Requests based upon an investigation NSL conducted related to the Requests. By responding to the Requests, Defendants waive none of their rights. By way of example, and not limiting any of Defendants' rights to raise further procedural and substantive arguments related to this purported class action, the numerical headcounts provided below do not support class certification in this matter as there are significant individualized issues as to all four searches requested by Plaintiffs. Moreover, the purported legal grounds upon which the search terms are based lack merit. Without in any way obligating themselves to do so, Defendants reserve the right: (A) to make subsequent revisions, supplementation or amendments to these Responses based upon any information, evidence, documents, facts and things that hereafter may be discovered, or the relevance of which may hereafter be discovered; and (B) to produce, introduce or rely upon additional or subsequently acquired or discovered writings, evidence and information at trial or in any pretrial proceedings held herein. Defendants incorporate this Preliminary Statement into each Response herein as if fully set forth.

## SEARCH REQUESTS

**SEARCH NO. 1:**

1) On or after January 16, 2012, the borrower was enrolled in an IDR plan.

2) The borrower submitted an IDR renewal application, which was received by Defendants within 90 days or less prior to the renewal deadline.
3) The borrower's partial financial hardship status expired, at which time the borrower's payments were recalculated under the standard repayment plan.
4) At the time the application received its first review, it was deemed complete.

**California sub-class:** Members of the Class who were living in California when the events stated in subpart C occurred.

**OBJECTIONS TO SEARCH NO. 1:**

Defendants object to this Request on the grounds that: (i) it is not limited to a time period relevant or even proximate to the events at issue in this action; (ii) it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of this action; (iii) it seeks confidential, proprietary business information; (iv) it is overbroad, unduly burdensome, and harassing; and (v) it assumes or suggests facts that are inconsistent with applicable federal guidelines governing student loan servicing. Defendants further object that the term "deemed complete" is not a status used within Defendants' servicing system. Accordingly, as discussed with counsel for Plaintiffs, Defendants have substituted the status "approved" in the place of "deemed complete." Without waiving and subject to these objections, Defendants respond as follows:

**RESPONSE:**

Based on the data available to NSL on its servicing system, there are 2,524



Document Ref: QNLKA-GTIFA-R87X6-GYQWW

borrowers with loans originated under the Federal Family Education Loan Program ("FFELP") that meet the search criteria for Search No. 1. There are 292 California borrowers with FFELP loans that meet the criteria, assuming that a borrower lived in California at some time from January 12, 2012 to June 30, 2024.

**SEARCH NO. 2:**

1) On or after January 16, 2012, the borrower was enrolled in an IDR plan.
2) The IDR plan was not renewed before the annual renewal deadline, at which point the borrower's Partial Financial Hardship (PFH) status expired, and payments were recalculated under the standard repayment plan.
3) After the expiration of the borrower's PFH status, Defendants enrolled the borrower in a discretionary forbearance, based on the borrower's oral affirmation, and the posting date of the forbearance was within the 90-day period which began 30 days before the PFH status expired. (For example, if the PFH status expired on May 1, 2015, then the 90-day period would begin on April 1, 2015 and would end on June 30, 2015.)
4) At the time of the enrollment in the discretionary forbearance, the loan was not in default, with "default" being defined as a period of 270 days without any payments.

**New York sub-class**: Members of the Class who were living in New York when the events stated in subpart C occurred.

**Illinois sub-class**: Members of the Class who were living in Illinois when the



Document Ref: QNLKA-GTIFA-R87X6-GYQWW

events stated in subpart C occurred.

**OBJECTIONS TO SEARCH NO. 2:**

Defendants object to this Request on the grounds that: (i) it is not limited to a time period relevant or even proximate to the events at issue in this action; (ii) it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of this action; (iii) it seeks confidential, proprietary business information; (iv) it is overbroad, unduly burdensome, and harassing; and (v) it assumes or suggests facts that are inconsistent with applicable federal guidelines governing student loan servicing. Without waiving and subject to these objections, Defendants respond as follows:

**RESPONSE TO SEARCH NO. 2:**

Based on the data available to NSL on its servicing system, there are 132,795 borrowers with FFELP loans that meet the search criteria for Search No. 2. There are 7,340 New York borrowers with FFELP loans that meet the criteria for Search No. 2, assuming that a borrower lived in New York at some time from January 16, 2012 to June 30, 2024. There are 5,854 Illinois borrowers with FFELP loans that meet the criteria, assuming that a borrower lived in Illinois at some time from January 16, 2012 to July 30, 2024.

**SEARCH NO. 3:**

1) On or after January 16, 2012, the borrower submitted an application to enroll in



Document Ref: QNLKA-GTIFA-R87X6-GYQWW

an IDR plan.

2) Defendants enrolled the borrower in a 60-day, "non-capping" administrative forbearance, which was in effect while that application was under review.

3) During the 60-day administrative forbearance period, the borrower's account status changed from administrative forbearance status to discretionary forbearance status, and the discretionary forbearance was supported by oral affirmation.

**New York sub-class:** Members of the Class who were living in New York when the events stated in subpart B occurred.

**OBJECTIONS TO SEARCH NO. 3:**

Defendants object to this Request on the grounds that: (i) it is not limited to a time period relevant or even proximate to the events at issue in this action; (ii) it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of this action; (iii) it seeks confidential, proprietary business information; (iv) it is overbroad, unduly burdensome, and harassing; and (v) it assumes or suggests facts that are inconsistent with applicable federal guidelines governing student loan servicing. Without waiving and subject to these objections, Defendants respond as follows:

**RESPONSE TO SEARCH NO. 3:**

Based on the data available to NSL on its servicing system, there are 109 borrowers with FFELP loans that meet the search criteria for Search No 3. There are



Document Ref: QNLKA-GTIFA-R87X6-GYQWW

3 New York borrowers with FFELP loans that meet the criteria, assuming that a borrower lived in New York at some time from January 16, 2012 to June 30, 2024.

**SEARCH NO. 4:**

1) On or after January 16, 2012, the borrower applied to enroll in, or to renew, an IDR plan.
2) The borrower submitted a completed IDR application, accompanied by proof of income, which was subsequently approved by Navient.
3) Navient did not fully process the application until 45 days or more after it was received.

**Illinois sub-class**: Members of the Class who were living in Illinois when the events in subpart c. occurred.

**RESPONSE TO SEARCH NO. 4:**

Defendants object to this Request on the grounds that: (i) it is not limited to a time period relevant or even proximate to the events at issue in this action; (ii) it seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of this action; (iii) it seeks confidential, proprietary business information; (iv) it is overbroad, unduly burdensome, and harassing; and (v) it assumes or suggests facts that are inconsistent with applicable federal guidelines governing student loan servicing. Without waiving and subject to these objections, Defendants respond as follows:

**RESPONSE:**



Document Ref: QNLKA-GTIFA-R87X6-GYQWW

Subject to, and without waiving, the general and specific objections, Defendants are willing to meet and confer with counsel for Plaintiffs to discuss the scope of the demanded production and a reasonable production schedule.

**SUPPLEMENTAL RESPONSE TO SEARCH NO. 4:**

Based on the data available to NSL on its servicing system, there are 23,410 borrowers with FFELP loans that meet the search criteria for the class. There are 1,410 Illinois borrowers with FFELP loans that meet the criteria, assuming that a borrower lived in Illinois at some time from January 16, 2012 to June 30, 2024.

Dated: May 5, 2025

Respectfully submitted,

*/s/ Jonathan Marmo*

Jonathan Marmo (PA ID 312669)
HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, PA 19103
(215) 252-9600
Jonathan.marmo@hklaw.com

Cory Eichhorn (admitted pro hac vice)
Florida Bar No. 576761
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799
cory.eichhorn@hklaw.com

Daniel T. Brier
Donna A. Walsh
Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503



Document Ref: QNLKA-GTIFA-R87X6-GYQWW

T: 570-342-6100
dbrier@mbklaw.com
dwalsh@mbklaw.com

**VERIFICATION**

I, Patrick Theurer, am the Vice President and Chief Information Officer at Navient Solutions, LLC ("NSL"), a party to this action, and am authorized to make this Verification on its behalf. I have read Defendants' Responses to Plaintiffs' Request for Computer Searches (the "Responses"). I am informed and believe, including based on information that I have received during the course of my employment at NSL, as well as a review of records and information maintained by or belonging to NSL, that the matters set forth in the Responses are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 5th day of May 2025, in Wilkes-Barre, Pennsylvania.

Patrick Theurer

______________________________
Patrick Theurer



Document Ref: QNLKA-GTIFA-R87X6-GYQWW

## CERTIFICATE OF SERVICE

I hereby certify that, on May 5, 2025, a copy of the foregoing DEFENDANT NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC.'S, AND NAVIENT SOLUTIONS, LLC'S RESPONSES TO PLAINTIFFS' REQUEST FOR COMPUTER SEARCHES was served via electronic mail on the parties listed below.

Carlo Sabatini
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
carlo@bankruptcypa.com
Daniel A. Edelman
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
dedelman@edcombs.com
cmiller@edcombs.com
Anthony Fiorentino
FIORENTINO LAW OFFICES LTD.
432 N. Clark St., Suite 202
Chicago, Illinois 60654
anthony@fiorentinolaw.net



Document Ref: QNLKA-GTIFA-R87X6-GYQWW

# CERTIFICATE *of* SIGNATURE

REF. NUMBER
QNLKA-GTIFA-R87X6-GYQWW

DOCUMENT COMPLETED BY ALL PARTIES ON
05 MAY 2025 20:26:22 UTC

| SIGNER | TIMESTAMP | SIGNATURE |
|---|---|---|
| EMAIL<br>PATRICK.THEURER@NAVIENT.COM<br>SHARED VIA<br>LINK | SENT<br>05 MAY 2025 20:23:15 UTC<br>VIEWED<br>05 MAY 2025 20:25:38 UTC<br>SIGNED<br>05 MAY 2025 20:26:22 UTC | Patrick Theurer<br>IP ADDRESS<br>167.104.7.3<br>LOCATION<br>WILMINGTON, UNITED STATES |

Signed with PandaDoc

# **EXHIBIT 2**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JILL BALLARD, REBECCA VARNO, and MARK POKORNI, on behalf of themselves and the class members described herein,<br><br>Plaintiff,<br><br>vs.<br><br>NAVIENT CORPORATION, NAVIENT SOLUTIONS, INC., AND NAVIENT SOLUTIONS, LLC,<br><br>Defendants. | No. 3:18-cv-00121-JFS-PJC<br><br>Judge Joseph F. Saporito, Jr.<br><br>**Magistrate Judge Phillip J. Caraballo**<br><br>ELECTRONICALLY FILED |

**AFFIDAVIT OF ANTHONY FIORENTINO**

I, Anthony Fiorentino, declare the following:

1. I am counsel of record in the instant case.

2. On September 15, 2025, the day discovery closed in this case, the Court held a telephonic case management conference. During that conference, defense counsel Cory Eichhorn announced that Navient made an "error" in the computer searches that were served on March 5, 2025, and that Navient needed to serve updated results. Mr. Eichhorn did not explain the "error," but he assured that the new results would not be prejudicial because they would increase class membership.

3. On the afternoon of September 15, 2025, I called Mr. Eichhorn and asked for more information about the error and how it was discovered. He declined to explain, but stated that this information would be included in Navient's forthcoming discovery response.

4. On November 7, 2026, I reread the expert report of Navient's expert, Dr. Ang. Upon rereading footnote 227, I realized, for the first time, that the computer search results produced in May 2025 were not the result of a computational "error." They were replaced because Navient's expert believed that the original computer search was inconsistent with the operative complaint.

5. At no time did Defendants ever notify Plaintiffs that the second round of computer searches deviated from the parties' agreed-upon search methodology.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 11, 2026 s/Anthony Fiorentino

Anthony Fiorentino

# APPENDIX

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 16-1971

UNITED STATES OF AMERICA EX REL
GARY CRESSMAN,
Appellant

v.

SOLID WASTE SERVICES, INC., T/D/B/A J.P. Mascaro & Sons

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-13-cv-05693)
District Judge: Honorable Nitza I. Quinones Alejandro

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 8, 2016

Before: FISHER, KRAUSE and GREENBERG, *Circuit Judges*.

(Filed: December 13, 2016)

OPINION[*]

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FISHER, *Circuit Judge*.

In *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), we held that a district court must consider six factors[1] before it may dismiss a case as a sanction before trial on the merits. Relying on *Poulis*, Appellant Gary Cressman appeals from the order of the United States District Court for the Eastern District of Pennsylvania dismissing his qui tam action as a sanction for failure to prosecute. For the reasons that follow, we will vacate the dismissal and remand this case for further proceedings.

I.

On September 30, 2013, Cressman filed a qui tam action alleging that the Defendant, Solid Waste Services, Inc., violated the False Claims Act ("FCA")[2] by falsely certifying that it was disposing of leached water in compliance with government regulations. The government declined to intervene, and, after denying a motion to dismiss the complaint, the District Court ordered the parties to file their initial disclosures within 14 days. When Cressman failed to do so, the Defendant filed a motion to compel and for sanctions. Ruling on that motion, the District Court ordered Cressman to produce his disclosures within seven days.

---

[1] The factors are: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Poulis*, 747 F.2d at 868 (emphasis removed).

[2] 31 U.S.C. § 3729 *et seq*.

Cressman filed his initial disclosures eight days after that second order was filed. That same day, the Defendant moved for sanctions, requesting that Cressman's complaint be dismissed with prejudice for his failure to produce his initial disclosures in a timely fashion. Cressman failed to respond and the Court ordered Cressman to show cause why the matter should not be dismissed. In that order, the District Court indicated that "[failure to respond] shall be deemed a failure to prosecute and comply with this Court's Orders, and will result in dismissal of this action."[3]

Cressman failed to respond again and on March 21, 2016, the District Court dismissed Cressman's suit with prejudice for failure to prosecute.[4] Later that day, Cressman moved the District Court to reconsider, vacate, or rescind that dismissal because the District Court did not balance the six *Poulis* factors.[5] The Defendant responded, arguing that the *Poulis* factors made dismissal appropriate in this case. On March 28, 2016, the District Court entered a single-sentence order denying Cressman's motion to vacate.[6] This appeal followed.

II.

The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3730. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. "We review a dismissal for failure to prosecute . . . for an abuse of

---

[3] J.A. 218A.
[4] J.A. 234A.
[5] J.A. 230A-31A.
[6] J.A. 284A.

discretion, but the district court must have considered less severe sanctions."[7] "In determining whether a District Court has abused its discretion . . . we will be guided by the manner in which the court balanced the *Poulis* factors."[8]

III.

On appeal, Cressman argues that the District Court abused its discretion because it failed to weigh the *Poulis* factors before dismissing this case, and because a balancing of the *Poulis* factors favors reinstatement of the case for adjudication on the merits. Because we agree with Cressman's first argument, we will not consider the second, and we will vacate and remand for the reasons stated below.

A.

Although "[b]oth the Federal Rules of Civil Procedure and a court's inherent authority to control its docket empower a district court to dismiss a case as a sanction for failure to follow procedural rules or court orders," we have long "recognized that 'dismissals with prejudice . . . are drastic sanctions.'"[9] Accordingly, "in *Poulis* we enumerated six factors a district court must consider before it dismisses a case pursuant to such authority."[10] Since *Poulis*, we have explained that "consideration and balancing

---

[7] *Jewelcor Inc. v. Asia Commercial Co.*, 11 F.3d 394, 397 (3d Cir. 1993).

[8] *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988) (quoting *Ali v. Sims*, 788 F.2d 954, 957 (3d Cir. 1986)).

[9] *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013) (quoting *Poulis*, 747 F.2d at 867).

[10] *Id.*

of *all six* of the factors" is "required."[11] We have added that "it is imperative that the District Court have a full understanding of the surrounding facts and circumstances pertinent to the *Poulis* factors before it undertakes its analysis"[12] and grants a dismissal.

Applying those principles here, we conclude that the District Court abused its discretion for two reasons. First, the record does not show any evidence that the District Court considered the *Poulis* factors before dismissing this case. Indeed, far from weighing them, the District Court did not mention *Poulis* at all.

Second, contrary to the Defendant's claims otherwise, our decision in *Asbestos Products* does not dictate a different conclusion. In that case, we affirmed the District Court's dismissal of twelve cases for the Plaintiffs' non-compliance with an administrative order and indicated that our review of a dismissal should be "more measured" when a plaintiff is given "an opportunity to present arguments against dismissal."[13] Nonetheless, in affirming the District Court's dismissal with prejudice, "we ha[d] little difficulty concluding that the District Court considered and weighed the [*Poulis*] factors" because, "[w]hile [the District Court] did not explicitly weigh all the factors," it "clearly considered" their applicability.[14] Unlike in *Asbestos Products*, where

---

[11] *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 162 (3d Cir. 2003) (emphasis in original); *see also In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 246 (3d Cir. 2013) ("We have required district courts to consider these factors because dismissal with prejudice is, undeniably, a drastic sanction.").

[12] *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008).

[13] *In re Asbestos Prods.*, 718 F.3d at 247-48.

[14] *Id*. at 248.

the district court had previously "discuss[ed] the *Poulis* factors" and the parties "addressed them fully in their briefs," we have no basis to infer that the District Court considered their applicability here.[15]

IV.

Accordingly, because it was an abuse of discretion for the District Court to dismiss Cressman's complaint without considering the *Poulis* factors, we will vacate the District Court's dismissal order and remand this case to the trial court for further proceedings.[16]

---

[15] *Id.*

[16] Since this error alone warrants remand, we take no position on whether dismissal is an appropriate sanction upon a proper balancing of the *Poulis* factors—our holding is simply that the District Court must consider these factors before this action is dismissed.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 19-3263

SANDRA HARMON,
Appellant

v.

SUSSEX COUNTY, State of Delaware Administration; TODD LAWSON;
CONSTABLE MIKE CASTELLO; KELLY PASSWATER

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-17-cv-01817)
District Judge: Honorable Richard G. Andrews

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 1, 2020

Before: SHWARTZ, RESTREPO and NYGAARD, Circuit Judges

(Opinion filed: April 8, 2020)

OPINION[*]

PER CURIAM

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Sandra Harmon appeals the District Court's order granting summary judgment to the defendants. For the reasons detailed below, we will affirm the District Court's judgment.

Harmon owned real property in Rehoboth Beach, Delaware. In April 2017, a Sussex County constable performed an inspection of the property and determined that, due to serious fire damage, the home was unsafe and unfit for human occupancy. As a result, Sussex County issued a "demolition order," which directed the owner of the property to raze and remove the structure on or before June 24, 2017. The order further provided that if the owner did not comply, Sussex County would do so itself and charge the owner. Harmon objected, and Sussex County, through Michael Costello, its government affairs manager, agreed to stay any demolition pending her appeal to the County Board of Adjustments and Appeals.

Harmon filed an appeal. However, Costello, who processed her filing, informed her that there was a $600 filing fee and that if she did not pay the fee by September 13, 2017, her scheduled hearing would be canceled. Harmon did not pay the fee, and on September 14, 2017, an assistant attorney for Sussex County informed Harmon that her hearing had, in fact, been canceled. Demolition began shortly thereafter.

In January 2018, Sussex County commenced a monition[1] action to collect delinquent sewer and water bills and demolition costs. A sheriff posted notice on the

---

[1] "Monition" is "a legal process in the nature of a summons or citation to appear and answer (as in default of performing some certain act)." Monition, Merriam-Webster's Unabridged Dictionary (2016).

property on January 23, 2018. Harmon challenged these proceedings in Delaware state court, to no avail, and on June 19, 2018, a sheriff's sale was held and the property was sold.

In her complaint in District Court, Harmon alleged that the defendants—Sussex County, Costello, and two other Sussex County employees—had violated her constitutional right to enjoy her property, violated her due process rights, and had conspired to deprive African-Americans of their beach property. The defendants filed a motion for summary judgment, which the District Court granted. The Court concluded that the record failed to support any of Harmon's claims.[2] Harmon then filed a timely notice of appeal.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the grant of summary judgment de novo, applying the same standard as the District Court. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper if, viewing the record in the light most favorable to Harmon, there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. See Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

---

[2] Harmon also filed a motion for reconsideration, which the District Court denied. Because Harmon did not timely file a new or amended notice of appeal encompassing the order denying her motion for reconsideration, we lack jurisdiction to consider that order. See Fed. R. App. P. 4(a)(4)(B)(ii); Carrascosa v. McGuire, 520 F.3d 249, 253–54 (3d Cir. 2008).

On appeal, Harmon raises three arguments.[3] First, she contends that the defendants violated her constitutional rights by inventing the $600 filing fee, which they have applied only in her case and not in cases involving other litigants. We agree with the District Court that the record does not support this claim. Sussex County Code § 71-31 provides that "[e]ach Board of Appeals shall adopt and publish rules and regulations as may be necessary to govern its administrative procedures and proceedings." The Board of Adjustments and Appeals has promulgated rules and procedures, which specifically provide that any appeal "shall be accompanied with the proper fee." ECF No. 30 at 27 (Rules of Procedure of the Board of Adjustments and Appeals of Sussex County, Delaware ¶ 14.1). While the rules and procedures do not themselves quantity the fee, the Board's website provides that "[a] fee of $600.00 shall accompany such notice of appeal." Id. at 30 (Sussex County Board of Adjustments and Appeals, https://sussexcountyde.gov/board-adjustments-and-appeals). Harmon has presented no evidence that this $600 fee is not uniformly applied. See generally Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) ("In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the

[3] We will consider only those issues that Harmon raised in her opening brief. See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." (quotation marks, alteration omitted); Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that pro se litigants "must abide by the same rules that apply to all other litigants").

pleadings, legal memoranda, or oral argument."). Accordingly, we discern no error in this part of the District Court's decision.[4]

Next, Harmon argues that the defendants improperly used the monition method of collecting delinquent taxes when that method is available only when the property has an unknown owner. The District Court rejected this claim on the ground that Harmon had not raised it in her complaint and could not amend her complaint through arguments presented in a response to the defendants' motion for summary judgment. See ECF No. 76 at 12 n.10. This was permissible. See Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

Moreover, as the defendants argue in their brief, Harmon's claim lacks merit. In 1947, the Delaware legislature authorized the monitions method as an additional way to collect taxes. See Del. Code Ann. Tit. 9, § 8721; Riley v. Banks, 62 A.2d 229, 233–34 (Del. Super. Ct. 1948). That method was available regardless of whether the property's owner was known. See Robins v. Garvine, 136 A.2d 549, 550 (Del. 1957) (discussing use of monition method in case where the owner's identity was known). In 2005, the legislature amended the statute to insert a new subsection permitting tax collecting

---

[4] Harmon also argues that her case should have been disposed of by the Board of Appeals itself, not Costello. However, she points to no authority, and we have found none, that requires a dismissal for failure to pay the filing fee to be accomplished by the Board rather than an administrator. Cf. 3d Cir. L.A.R. 3.3(a) ("If a proceeding is docketed without prepayment of the applicable docketing fee, the appellant must pay the fee within 14 days after docketing. If the appellant fails to do so, the clerk is authorized to dismiss the appeal.").

authorities to "initiate and complete the monitions process against any property designated by the authority as having an unknown owner for a continuous period in excess of 5 years." Del. Code Ann. Tit. 9, § 8722(d). This subsection permits tax collectors to use the monition method in this additional situation; it does not purport to limit the remainder of the statute and change longstanding practice. See generally State v. Fletcher, 974 A.2d 188, 194 (Del. 2009) ("This policy has been Delaware law for over fifty years, and should not be changed in the absence of a clear statutory mandate." (footnote omitted)). Accordingly, even if Harmon had properly pleaded this claim, she would be entitled to no relief.

Finally, Harmon argues that the District Court violated D. Del. LR 7.1.3(c)(2) by refusing to strike a transcript that the defendants attached to their reply brief in support of their motion for summary judgment. See Rule 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."). However, the transcript bore on an issue[5] that Harmon raised for the first time in her opposition to the motion for summary judgment. The District Court did not abuse its considerable discretion to manage the proceedings by considering this evidence. See United States v. Schiff, 602 F.3d 152, 176 (3d Cir. 2010) ("We give a district court broad discretion in its rulings concerning case management[.]"); Wilmot v. Marriott Hurghada Mgmt., Inc., No. CV 15-618-RGA-MPT, 2016 WL 2599092, at *4 (D. Del. May 5, 2016) (concluding that "arguments in a reply

[5] The transcript related to the issue of whether the monition order was based in part on the demolition costs.

brief responsive to positions and new information raised in an opposition brief do not violate D. Del. LR 7.1.3(c)(2)”).

Accordingly, we will affirm the District Court’s judgment.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 07-4710

---

CHARLES POWERS, ON HIS OWN BEHALF
AND ON BEHALF OF THE CLASS DEFINED HEREIN;
CYNTHIA ANN POWERS

v.

LYCOMING ENGINES, A DIVISION OF AVCO CORPORATION;
AVCO CORPORATION; TEXTRON, INC.

(E.D. Pa. No. 06-cv-02993)

PLANE TIME, LLC,
on its own behalf and on behalf
of all others similarly situated

v.

LYCOMING ENGINES,
a Division of Avco Corporation;
AVCO CORPORATION; TEXTRON, INC.

(E.D. Pa. No. 06-cv-04228)

Avco Corporation, Appellant

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
District Judge: Honorable Timothy J. Savage

---

ARGUED DECEMBER 1, 2008

Before: AMBRO, WEIS and VAN ANTWERPEN, Circuit Judges.

(Filed: March 31, 2009)

---

Catherine B. Slavin, Esquire (ARGUED)
Cozen O'Connor
1900 Market Street, 3rd Floor
Philadelphia, PA 19103

Attorney for Appellant AVCO Corporation, on behalf of its Lycoming Engines Division

Joseph F. Roda, Esquire (ARGUED)
Michele S. Burkholder, Esquire
RodaNast, P.C.
801 Estelle Drive
Lancaster, PA 17601

Terrianne A. Benedetto, Esq.
Jonathan Shub, Esq.
Seeger Weiss
1515 Market Street, Suite 1380
Philadelphia, PA 19102

Attorneys for Appellees Charles Powers, Cynthia Powers and Plane Time, LLC

---

OPINION

---

WEIS, Circuit Judge.

Defendants appeal from a District Court's order granting the plaintiffs' motion to certify a class action. We conclude that the Court's choice-of-law analysis was incomplete and did not support certification. Accordingly, we will vacate and remand for further consideration.

The parties are well aware of the facts and because this opinion is not precedential, we need not repeat in detail the events giving rise to the claim.

Plaintiffs in this putative nationwide class action are purchasers of aircraft equipped with engines produced by defendants. The amended complaint asserts that the crankshafts in the engines are defective, similar models have failed in a number of instances, and are more vulnerable to stresses in their ordinary and foreseeable use. Two causes of action remain in the case -- theories of unjust enrichment and breach of implied warranty of merchantability, both grounded in state law.

The District Court certified a class of,

> "All persons or entities who reside in the District of Columbia or any state, except California, who, before April 11, 2006 purchased an aircraft subject to Lycoming Mandatory Service Bulletin 569A and either: (a) currently own that aircraft; or (b) sold that aircraft on or after April 11, 2006. The Class shall be divided into two sublcasses consisting of: (a) those who currently own the subject aircraft and (b) those who sold the aircraft on or after April 11, 2006."

We granted leave to appeal and now review the District Court's decision to certify a class under an abuse of discretion standard. Danvers Motor Co., Inc. v. Ford Motor Co., 543 F.3d 141, 147 (3d Cir. 2008).

The Federal Rules of Civil Procedure list the requirements plaintiffs must satisfy before a class may be certified. They must meet "all of the [subsections] of Rule

23(a) and come within one provision of Rule 23(b)." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 624 (3d Cir. 1996), aff'd sub nom., Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997). They must show

> "(1) [numerosity, i.e.,] the class is so numerous that joinder of all members is impracticable;
> (2) [commonality, i.e.,] there are questions of law or fact common to the class;
> (3) [typicality, i.e.,] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) [adequacy of representation, i.e.,] the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).

The subsection of Rule 23(b) relevant here directs plaintiffs to demonstrate predominance and superiority, i.e., "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

To determine if the requirements of the Rule have been satisfied, a district court must conduct a rigorous analysis. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008). The mandates "set out in Rule 23 are not mere pleading rules." Id. at 316. Unless each requirement is actually met, a class cannot be certified.

Id. at 320.

When conducting its strict inquiry, a “court may ‘delve beyond the pleadings to determine whether the requirements for class certification are satisfied.’” Id. at 316 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 167 (3d Cir. 2001)). “An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met.” Id. Courts may inquire into a claim’s merits and “‘consider the substantive elements of the plaintiffs’ case in order to envision the form that a trial on those issues would take.’” Id. at 317 (quoting Newton, 259 F.3d at 166).

Review of the merits becomes especially important when considering the predominance requirement of Rule 23(b)(3). Id. at 310-11. “[T]he ‘nature of the evidence that will suffice to resolve a question determines whether the question is common or individual.’” Id. at 311 (quoting Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005)). Therefore, “‘a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.’” Id. (quoting In re New Motor Vehicles Can. Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008)). Class certification is not proper “[i]f proof of the essential elements of the cause of action requires individual treatment.” Id. (quoting Newton, 259 F.3d at 172).

In the matter before us, the District Court determined that plaintiffs had

complied with the requirements of Rule 23. After first conducting a choice-of-law analysis, the Court concluded that Pennsylvania law uniformly applied to both causes of action and that the numerosity, commonality, typicality, and adequacy of representation elements of Rule 23(a) were present. In addition, predominance and superiority of a class action were evident to the Court, satisfying Rule 23(b)(3). When addressing superiority, the Court noted that because Pennsylvania law applied to all class members, the case could easily be managed at trial.

The District Court was correct to begin its analysis by considering choice of law. A necessary precondition to deciding Rule 23 issues is a determination of the state whose law will apply. See Huber v. Taylor, 469 F.3d 67, 82-83 (3d. Cir. 2006) (consideration of the requirements for certification must be conducted in light of the correct jurisdiction's law); see also Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 309-10 (5th Cir. 2000) (error in choice-of-law analysis resulted in an abuse of discretion "on the issue of predominance under Rule 23(b)(3)" and required decertification of the class); Castano v. Am. Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996) ("that a court know[s] which law will apply before making a predominance determination is especially important when there may be differences in state law"). We exercise plenary review over the District Court's choice-of-law analysis to determine which state's substantive law governs. Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006).

In diversity cases such as this, attempts to structure and certify nationwide classes involving plaintiffs in all fifty states often turn on whether the law of a single state

or multiple states should be applied. Irreconcilable conflicts can be an impediment to certification because they can offset the analysis of the legal commonality, typicality, and adequacy requirements of Rule 23(a), and the superiority and predominance factors of Rule 23(b)(3). For example, we have observed that nationwide class action movants must credibly demonstrate, through an "extensive analysis" of state law variances, "that class certification does not present insuperable obstacles." In re Sch. Asbestos Litig., 789 F.2d 996, 1010 (3d Cir. 1986). This comprehensive analysis is necessary because aggregate class action should not alter the applicable substantive legal rights of the plaintiffs. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821 (1985) (constitutional limitations on choice of law apply even in nationwide class actions); see also Amchem Prods., 83 F.3d at 627 (court must conduct an "individualized choice of law analysis to each plaintiff's claims" even in nationwide class actions).

Because plaintiffs commenced their action in Pennsylvania, we look to that state's law on conflicts. Huber, 469 F.3d at 73-74. Pennsylvania has "adopted a flexible choice of law rule which weighs the interests [its] sister-states may have in the transaction." Commonwealth v. Eichinger, 915 A.2d 1122, 1133 (Pa. 2007); see also Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964). Application of that rule requires a multi-faceted analysis, Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230-31 (3d Cir. 2007), and since the inquiry "is issue-specific, different states' laws may apply to different issues in a single case." Berg Chilling Sys., Inc., 435 F.3d at 462.

The first level of scrutiny considers whether "an *actual* or real conflict

[exists] between the potentially applicable laws." Hammersmith, 480 F.3d at 230. Then, "[i]f there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' [(i.e., no interest)] situation." Id. A district court must conduct a deeper analysis only where "*both* jurisdictions' interests would be impaired by the application of the other's laws (i.e., there is a true conflict)." Id.

The second level of scrutiny affects only true conflicts and when they exist, the Court must "determine which state has the 'greater interest in the application of its law.'" Id. at 231 (quoting Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)). Pennsylvania requires that courts making that determination use a "combination of the approaches of both the Restatement II (contacts establishing significant relationships) and interests analysis (qualitative appraisal of the relevant States' policies with respect to the controversy)." Id. (quoting Melville v. Am. Home Assurance Co., 584 F.2d 1306, 1311 (3d Cir. 1978)) (internal quotations omitted).

It is not enough to simply count the states' contacts; they should be weighed "on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue." Id. (quoting Shields v. Consol. Rail Corp., 810 F.2d 397, 400 (3d Cir. 1987)) (alteration in original) (internal quotations omitted).

Once the survey has been completed and a choice of law is made, the Court must then consider whether applying that law to all plaintiffs and class members violates the Due Process and Full Faith and Credit Clauses. "[F]or a State's substantive law to be

selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13 (1981) (plurality opinion); see generally, 1 Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 5:46 (4th ed. 2007).

Determining whether such contacts and interests exist requires an individualized scrutiny of "the claims asserted by each member of the plaintiff class." Shutts, 472 U.S. at 821-22; see also Amchem Prods., 83 F.3d at 627 (explaining that Shutts requires an individualized choice-of-law analysis even in nationwide class actions); In re St. Jude Med., Inc., 425 F.3d 1116, 1120 (8th Cir. 2005) (same). The expectations of the parties constitute "an important element" in the inquiry. Shutts, 472 U.S. at 822.

Our review of the record persuades us that the choice-of-law examination here had its shortcomings. As one instance, the District Court observed in its unjust enrichment analysis that a true conflict existed between the relevant states' laws because Pennsylvania and some others preclude recovery if the parties had an express contract.[1] Believing unjust enrichment to be a hybrid of contract and tort law, the Court purportedly weighed the factors from sections 188 (concerning contracts) and 148 (relating to torts involving fraud and misrepresentation) of the Restatement (Second) Conflict of Laws and

[1] We are also doubtful that the first step in the choice-of-law analysis was fully explored by the Court in the unjust enrichment claim and its relevant subsidiary issues.

concluded that Pennsylvania "has the most significant relationship to the transaction and the parties." Defendants were sued in Pennsylvania, manufactured the crankshafts there, "issued service bulletins and instructions . . . about the crankshafts . . . in Pennsylvania, and plan[] to replace [them] [t]here."[2]

Contacts relevant to plaintiffs, the Court presumed, "took place in their home states where they purchased, operate, and moor their aircraft." Those contacts were of minor significance, however, because the mobility of a plane permitted it to "have been purchased and transported from a state other than a plaintiff's home state" and the crankshafts are "part of aircraft manufactured by others, [making it] unlikely that the plaintiffs purchased the aircraft in reliance on anything [defendants] may have represented."

Pennsylvania, however, does not consider unjust enrichment to be either an action in tort or contract. Unjust enrichment, rather, an equitable remedy and synonym for *quantum meruit*, is "a form of restitution." Mitchell v. Moore, 729 A.2d 1200, 1202 n.2 (Pa. Super. Ct. 1999); see also Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co., 933 A.2d 664, 667 (Pa. Super. Ct. 2007); Sack v. Feinman, 432 A.2d 971, 974 (Pa. 1981) (citing Restatement of Restitution § 1 (1937) as a source for the elements of an unjust enrichment claim); Meehan v. Cheltenham Twp., 189 A.2d 593, 595 (Pa. 1963) (same).

---

[2] The record reveals that Lycoming Engines, though located in Pennsylvania, is a division of AVCO Corporation, a Delaware corporation with its principal place of business in Rhode Island. We note also that defendants contend the crankshafts were forged in Texas.

The Restatement views restitution as an area of the law "which is neither contract nor tort." Restatement (Second) of Conflict of Laws § 221 introductory note (1971).

If there is a claim under Pennsylvania law that falls within the scope of restitution under the Restatement (Second) Conflict of Laws,[3] the following factors should have been addressed in the choice-of-law examination: (1) the place where the parties' relationship was centered; (2) the state where defendants received the alleged benefit or enrichment; (3) the location where the act bestowing the enrichment or benefit was done; (4) the parties' domicile, residence, place of business, and place of incorporation; and (5) the jurisdiction "where a physical thing . . . , which was substantially related to the enrichment, was situated at the time of the enrichment." Id. § 221(2) (1971).

The Court's analysis of the unjust enrichment issue lacked any discussion of the policies underlying the various states' laws permitting or precluding such a claim when an express contract exists. The District Court failed to "weigh the [Restatement] contacts on a qualitative scale according to their relation to the policies and interests underlying the . . . issue." Hammersmith, 480 F.3d at 231 (quoting Shields, 810 F.2d at

---

[3] Although we have found no instance in which Pennsylvania has adopted section 221, our case law, in explaining the state's choice-of-law approach, directs courts to "use the Second Restatement of Conflict of laws as a starting point." Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 463 (3d Cir. 2006). "[T]o properly apply the Second Restatement and remain true to the spirit of Pennsylvania's 'flexible approach,' [courts] must . . . characterize the particular issue . . . in order to settle on a given section of the Restatement for guidance." Id. Because Pennsylvania considers unjust enrichment to be a form of restitution, we believe applying section 221 would be proper.

400).

In another phase of the choice-of-law analysis, the Court observed that a true conflict exists between Pennsylvania and the states which mandate that plaintiffs demonstrate privity of contract in a claim for breach of the implied warranty of merchantability. After describing several of the reasons certain jurisdictions require privity, the Court concluded that Pennsylvania law governed because, among other things, "[t]he manufacturer is located in Pennsylvania" and the privity states' interests in protecting their resident manufacturers will not be impinged.

The Court did not conduct an intensive multi-step choice-of-law analysis on the breach of warranty issue, as is required in Pennsylvania. Its treatment of the choice-of-law issue lacked a satisfactory discussion of the relevant Restatement factors, here "(1) the place of contracting; (2) the place of negotiation . . .; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." Id. at 233. Similarly, the Court again failed to perform a sufficient qualitative weighing of the contacts "according to their relation to the policies and interests underlying the . . . issue." Id. at 231 (quoting Shields, 810 F.2d at 400). The qualitative weighing which occurred was questionable.

A proper application of Pennsylvania's choice-of-law principles may have indicated that the law of more than one state governs the parties' dispute. Other Courts of

Appeals have confronted similar scenarios. See, e.g., In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018 (7th Cir. 2002); Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 725 n.6 (11th Cir. 1987).

Attempting to apply the law of a multiplicity of jurisdictions can present problems of manageability for class certification under Rule 23(b)(3).[4] See In re Bridgestone/Firestone, Inc., 288 F.3d at 1018 ("[b]ecause these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable"); In re Am. Med. Sys., Inc., 75 F.3d 1069, 1085 (6th Cir. 1996) ("[i]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law").

If a complete choice-of-law analysis had been conducted and indicated that more than one jurisdiction's law applied, consideration should have been given to "whether variations in state laws present the types of insuperable obstacles which render

---

[4] We note that plaintiffs did not present a plan to cope with the various theories of liability or damages, which is becoming a commonplace requirement in class-action litigation. See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 319 (3d Cir. 2008). A plan may be particularly important in this type of nationwide class action following our decision in In re Hydrogen Peroxide, where we made clear that "conditional" certification is no longer acceptable. Id. at 318-19. Instead, each Rule 23 requirement must be subject to a rigorous analysis prior to certification. Id. at 316, 320.

In Bristow v. Lycoming Engines, No. Civ. S-06-1947 LKK/GGH, 2008 WL 850306 (E.D. Cal. Mar. 28, 2008), a case based on the same crankshaft defect and applying the law of only one state, class-action status was vacated because the plaintiff was unable to show class-wide damages and the manageability plan failed to resolve the problem.

class action litigation unmanageable." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 529 (3d Cir. 2004). Another relevant inquiry would have been "whether varying state laws [could] be grouped by shared elements and applied as a unit in such a way that the litigation class is manageable." Id.; see also In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 315 (3d Cir. 1998) (finding various states' laws could be applied in this fashion); In re Sch. Asbestos Litig., 789 F.2d at 1010-11 (plaintiffs made "a credible showing" that a class action could be managed in this fashion).

We conclude that the District Court's choice-of-law exploration was insufficient and, consequently, the inquiry into Rule 23's predominance and superiority requirements rested on questionable premises. An order certifying a class under such circumstances requires a remand for an entirely new choice-of-law determination for both the unjust enrichment and breach of implied warranty claims. See In re St. Jude Med., Inc., 425 F.3d at 1120-21 (failure to adequately evaluate choice-of-law issue necessitates remand). Once a complete choice-of-law analysis has been conducted, a reevaluation of whether plaintiffs have satisfied Rule 23's requirements for class certification will be appropriate. See Huber, 469 F.3d at 82-83.

The Order of the District Court is vacated and the case is remanded for further proceedings consistent with this Opinion.

---